UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of All Others**
**Similarly Situated,**

   **Plaintiff,**        **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.,**

   **Defendants.**

_____/

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I. Introduction

The Court should dismiss the Complaint's collective action claims under the Equal Pay Act ("collective claims"), and Plaintiff's individual wage claims under the EPA and Section 1981, for the following reasons:

1. The collective and individual claims should be dismissed because those claims are brought under the EPA, which is a part of the FLSA; under the FLSA there is no enterprise coverage for a nonprofit political campaign that is not operated for a business purpose, and there are no allegations that could establish individual FLSA coverage for putative members of the collective;

2. The collective claims should be dismissed because the Complaint fails to allege any facts that could support a finding that putative class members have job duties "substantially equal" to their purported male comparators;

3. The collective claims should be dismissed because the Complaint fails to allege any facts that could support a finding that putative class members were paid less than their purported male comparators;

4.    Plaintiff's individual wage claims should be dismissed because the Complaint fails to allege facts sufficient to support a finding that any purported comparator had duties that were "substantially equal" to Plaintiff's duties; and

5.    Plaintiff alleges no facts sufficient to state a plausible claim for pay discrimination based on race under Section 1981.

These and other bases for dismissal are set forth in more detail below.

## II.    The EPA Claims Should Be Dismissed because there Are No Allegations that Could Establish FLSA Coverage

Because the EPA is part of the FLSA, the first step in establishing an EPA claim is to prove FLSA coverage.  *See Ferguson v. Neighborhood Housing Servs., Inc.*, 780 F.2d 549, 551-52 (6th Cir. 1986) (the EPA covers only employees engaged in commerce or employed by an enterprise engaged in commerce, as those terms are defined by the FLSA).  There are two ways an employee might be covered under the FLSA:  "enterprise" coverage and "individual" coverage.  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).  Where there is enterprise coverage, all of the enterprise's employees are covered by the FLSA.  Even in the absence of enterprise coverage, an individual may be covered by the FLSA "when 'a substantial part of the employee's work is related to interstate commerce.'"  *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) (internal citations omitted); *see also Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943).  The FLSA "regulate[s] only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006) (citing *McLeod v. Threlkeld,* 319 U.S. 491 (1943)).

### A.    Enterprise Coverage

For enterprise coverage, the defendant "must constitute an 'enterprise engaged in commerce or in the production of goods for commerce,'" and the plaintiff must be an

"employee" within the meaning of the FLSA. *Tony & Susan Alamo Found.*, 471 U.S. at 295. An "enterprise" means "the related activities performed . . . by any person or persons for a common **business** purpose . . . ." 29 U.S.C. § 203(r)(1) (emphasis added). Activities of nonprofit groups, if "not performed for a business purpose," are excluded from coverage. *Tony & Susan Alamo Found.*, 471 U.S. at 297 (citation and internal quote marks omitted).

Because a non-profit might engage in activities for a business purpose, the fact that a defendant is a non-profit is not necessarily dispositive. According to this Court, "the test is an 'economic reality test,' where the focus is on whether the enterprise is primarily engaged in competition in the public with ordinary commercial enterprises." *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1293-94 (M.D. Fla. 2005) (citing *Tony & Susan Alamo Found.*; other citations and internal quote marks omitted). *See also Reagor v. Okmulgee County Fam. Res. Ctr., Inc.*, 501 Fed. Appx. 805, 809 (10th Cir. 2012)) ("the question is whether the non-profit is primarily engaging in competition in the public with commercial enterprises." Further, the enterprise must have an "annual gross volume of sales made or business done" that "is not less than $500,000." 29 U.S.C. §§ 203(s)(1)(A)(i) & (ii).

The Court can, and should, enter judgment on the pleadings on the issue of enterprise coverage. The Complaint makes it clear that Defendant Donald J. Trump for President, Inc. (the "Campaign")(the only Defendant named in the EPA claim) is a political campaign. The Court can take judicial notice of the fact that the Campaign is a nonprofit entity,[1] and a principal

---

[1] *See* the New York State Department of State, Division of Corporations, Entity Information website, at https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_token=92485E367FA807F5EB347A4E8E7B0D7734C28F4FD266F3F6BE194B4EF785DF9214C1F91E7E721A0B02EB9B6DD7A83FE0&p_nameid=5BAB1AD5703AE64E&p_corpid=1A36DD806AD5BD12&p_captcha=11051&p_captcha_check=92485E367FA807F5EB347A4E8E7B0D7734C28F4FD266F3F6BE194B4EF785DF92E1125606158A002645B483D80B38F1C2&p_entity_name=donald%20j%2E%20trump%20for%20president&p_name_type=A&p_search_type=CONTAINS&p_srch_results_page=0 (last visited May 6, 2019).

campaign committee.[2]  As explained above, the FLSA extends enterprise coverage only to entities operated for a business purpose.  **Because the Campaign is not operated for a business purpose, its activities are excluded from coverage under the FLSA.**  *See* 29 U.S.C. § 203(r)(1) (defining "enterprise"); *see also Tony & Susan Alamo Found.*, above.

An argument that a political campaign's activities are covered by the FLSA was recently considered, and rejected, in *Katz v. DNC Servs. Corp.*, No. 16-5800, 2018 U.S. Dist. LEXIS 17002 (E.D. Pa. Feb. 2, 2018).  In that case, a group of campaign workers brought an FLSA collective action against the DNC and state democratic parties.  While the Court noted that nonprofits are not *per se* exempt from the FLSA's coverage, it then applied the well-established test for determining FLSA coverage for a nonexempt entity:  "[T]he question is whether the non-profit is **primarily** engaging in competition in the public with commercial enterprises."  *Id.* at *16-17 (citing *Reagor*, 501 Fed. Appx. at 809).  The *Katz* Court found that the campaign was not covered by the FLSA, and dismissed the action. The same result should obtain here.

Alternatively, the Court should dismiss the EPA claims, because there are no allegations whatsoever that could support a finding of enterprise coverage.  There is no allegation that the Campaign is an "enterprise," no allegation that its activities were performed for a "business purpose," no allegation that it "engaged in commerce," no allegation that the Campaign was engaged in the production of goods, no allegation of competition with commercial enterprises, and no allegation that it had an annual gross volume of "sales made or business done" of at least $500,000.  Accordingly, there is nothing in the Complaint that could support a finding that the Campaign was an enterprise engaged in commerce or in the production of goods for commerce.

---

[2] *See* FEC committee data, at https://www.fec.gov/data/committee/C00580100/?tab=about-committee (last visited May 6, 2019).

B.      **Individual Coverage**

For individual coverage to apply under the FLSA, Plaintiff must establish that she was (1) engaged in commerce or (2) engaged in the production of goods for commerce. *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 U.S.C. § 207(a)(1)).  It is not enough to be engaged in activities that merely affect commerce; instead, Plaintiff's activities must "constitute" interstate commerce.  *Thorne* at 1266 (citing *McLeod v. Threlkeld*, 319 U.S. 491 (1943)).  To meet this test, Plaintiff "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by **regularly** using the instrumentalities of interstate commerce in [her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel."   *Thorne*, 448 F.3d at 1266 (citing *McLeod*, 319 U.S. at 493-98; other citations omitted) (first emphasis added, second emphasis in *Thorne*). Purchasing goods that have previously moved in interstate commerce and engaging in credit card transactions are insufficient.  *Thorne*, 448 F.3d at 1266-69.  Similarly, occasional use of telephones or other electronic devices to communicate across state lines is not enough.  *See Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (allegation that job duties included contacting out of state insurance companies by phone and fax insufficient, in the absence of allegations concerning how much of plaintiff's time was spent conducting those activities).

An employee only engages in commerce under the FLSA "when 'a substantial part of the employee's work is related to interstate commerce,' [and] activities that 'simply affect or indirectly relate to interstate commerce' are insufficient to plead individual coverage." *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) (internal citations omitted); *see also Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943) (employee is covered by FLSA "[i]f a substantial

part of [the employee's] activities related to" movement of goods in interstate commerce). Indeed, for individual coverage to attach, "the employee must be 'so closely related to the movement of the commerce as to be part of it,' as opposed to simply performing activities that 'affect or indirectly related to interstate commerce.'" *Locke*, 690 F. Supp. 2d at 90 (quoting *McLeod*, 319 U.S. at 497); *see also Kitchings*, 393 F. Supp. 2d at 1292-93 and notes 25, 26.

There are no allegations in the Complaint, whatsoever, concerning the specific job duties of any putative class member. Accordingly, there is nothing in the Complaint that could support a finding that any putative class member was engaged in commerce or in the production of goods for commerce. The Complaint is devoid of **any** allegations that could establish individual coverage as to any putative class member, and therefore fails to state a claim of individual coverage as to the putative class members. Because the Complaint has no allegations that could establish either enterprise coverage or individual coverage as to putative class members, all EPA claims brought on behalf of the putative collective should be dismissed.

The Complaint includes extensive allegations about the named Plaintiff's own job duties and responsibilities. Viewed superficially, those allegations might seem to sufficiently allege that the named Plaintiff was, individually, engaged in commerce. However, a closer examination reveals that Plaintiff alleges no facts to support the conclusion that she was a transportation or communication industry employee or that she used supplies that previously moved in interstate commerce. It is clear from the face of the Complaint that although Plaintiff purchased supplies, she did so for the purpose of using the supplies in whichever state she happened to be in at the time. She was not incorporating the supplies into goods to be sold in another state, and was not transporting them for sale in another state. There is no allegation of any commercial or business purpose in any of Plaintiff's activities. Most importantly, there is

nothing in the Complaint that could support a conclusion that "a substantial part of [Plaintiff's] work [was] related to interstate commerce," or that she "regularly us[ed] the instrumentalities of interstate commerce in [her] work."  The Complaint fails to state a claim of individual coverage as to the named Plaintiff, and Plaintiff's individual EPA claims should be dismissed as well.

III.   **The Collective Claims Should Be Dismissed because the Complaint Makes Only Conclusory Assertions of Similar Work and Pay Disparities**

The Complaint's allegations in support of the collective claims are exactly like allegations that the Eleventh Circuit has said (1) "epitomize" conclusory allegations, and (2) are "by definition" conclusory.  The Supreme Court held that claims based on such conclusory allegations must be dismissed.  Therefore, dismissal of Plaintiff's class claims is mandated by Supreme Court and Eleventh Circuit case law, as explained more fully below.

A complaint should be dismissed where its factual allegations fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007).  A claim is facially plausible only "when the plaintiff pleads **factual** content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (emphasis added).  The Court must determine both whether the complaint addresses all of the material elements of the claim and also whether the elements are addressed with "factual material sufficient to raise the right to relief beyond mere speculation."  *Allmond v. Bank of Am.*, No. 3:07-CV-186-J-33JRK, 2008 WL 205320, at *3 (M.D. Fla. Jan. 23, 2008).  Mere conclusory statements do not satisfy *Twombly's* facial plausibility standard.  *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 555).

Of particular significance to the issues presented here, the Supreme Court has said that mere recitations of the elements of the claim, couched as statements of fact, are insufficient. *Twombly,* 550 U.S. at 555.  Therefore, summary allegations that a defendant has done what the

law prohibits are insufficient to survive a motion to dismiss. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008) (bare allegation that plaintiffs were denied promotions because of race held insufficient to state a claim); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. Appx. 934, 938 (Fed. Cir. 2015) ("[s]imply repeating the legal conclusion that the defendants induced infringement [of a patent]" does not satisfy *Iqbal's* requirement to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Iqbal*, 556 U.S. at 678); *E.E.O.C. v. Port Authority of New York and New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014) ("*Twombly* and *Iqbal* require . . . pleading sufficient **nonconclusory** factual matter to set forth a claim that is plausible on its face") (emphasis added).

This Court has applied these general principles when dismissing FLSA collective action claims[3] at the pleading stage. *See, e.g., St. Croix v. Genentech, Inc.*, No. 8:12-cv-891-T-33EAJ, 2012 U.S. Dist. LEXIS 86742, at *6-7 (M.D. Fla. June 22, 2012).[4]  In *St. Croix*, Judge Covington applied *Iqbal* and *Twombly* and dismissed FLSA collective action claims at the pleading stage where the complaint included a mere conclusory allegation that "numerous individuals were similarly situated" to the named plaintiff, but failed to specify the job duties or pay provisions of

---

[3] Plaintiff's collective claims are brought under the EPA, 29 U.S.C. § 206(d), and "[f]or purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of [the EPA] shall be deemed to be unpaid minimum wages or unpaid overtime compensation under [the FLSA]." 29 U.S.C. § 206(d)(3).
[4] Plaintiff may argue that it is improper to dismiss class claims prior to the certification stage, but that is not the law in this Circuit or in this Court. *See, e.g., St. Croix.*  As explained in the well-reasoned decision in *Dyer v. Lara's Trucks, Inc.*, "a motion to dismiss does not . . . simply end-run the certification process by trying certification on the face of the complaint." No. 1:12-CV-1785-TWT, 2013 U.S. Dist. LEXIS 21906, at *8-9 (N.D. Ga. Feb. 19, 2013) (citation and internal quote marks omitted).  Instead, a motion to dismiss tests the sufficiency of the pleadings.  "To survive a motion to dismiss . . . [n]o evidence is required.  The plaintiff's reward for surviving a motion to dismiss is discovery.  Moreover, counsel may have some incentive to keep the claims unspecific to achieve the largest possible class; the motion to dismiss is a defendant's shield against this danger.  On the other hand, to be granted conditional certification, a plaintiff must produce <u>evidence</u> which allows the Court to conclude that a reasonable basis exists for finding[s] that [warrant certification] . . . .  [W]here a complaint fails to sufficiently allege the attributes of the similarly situated employees, the collective action claim may be dismissed at the pleading stage." *Id.* at *9-10 (emphasis added, citations and internal quote marks omitted).

putative class members, or other specific facts supporting the conclusory allegation that the putative class members were similarly situated. *Id.* Similarly, in *Pickering v. Lorillard Tobacco Co.*, the court applied *Iqbal* and *Twombly* and dismissed FLSA collective action claims because the complaint failed to detail the job duties and pay provisions of putative class members. 2011 U.S. Dist. LEXIS 3647, at * 6-7 (M.D. Ala. Jan. 13, 2011). *See generally Kaspers v. Comcast Corp.*, 631 Fed. Appx. 779, 2015 U.S. App. LEXIS 19843 (11th Cir. Nov. 16, 2015) (Eleventh Circuit affirming dismissal of class claims prior to motion for certification). "[C]onclusions masquerading as facts will not prevent dismissal" of class claims. *See generally Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (2004).

This is exactly what we have here: conclusions masquerading as facts.

To prove her class claims (which are brought only under the EPA), Plaintiff must prove that the Campaign "paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Hamilton v. Sikorsky Aircraft Corp.*, ___ Fed. Appx. ___, No. 18-11378, 2019 U.S. App. LEXIS 2561, at *9 (11th Cir. Jan. 25, 2019) (citations omitted). The EPA requires that the positions be "substantially equal." *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir. 1985). The "substantially equal" inquiry "focuses on the primary duties of each job, not those which are incidental or insubstantial." *Miranda v. B & B Cash Grocery Stores, Inc.*, Case No. 88-1735-CIV-T-10C, 1990 U.S. Dist. LEXIS 9350, at *14-16 (M.D. Fla. May 4, 1990) (citing *Goodrich v. International Bh'd. of Elec. Wkrs., AFL-CIO*, 815 F.2d 1519, 1524 (D.C. Cir. 1987).

Instead of pleading **facts** sufficient to establish these elements, the Complaint simply makes the conclusory assertion, **over and over**, that the Campaign paid women less than men,

for similar work. It is not enough for Plaintiff to simply repeat this conclusory assertion (no matter how many times and how many different ways she says it). Plaintiff's failure to provide any specificity to support her conclusory allegations that the putative class members were similarly situated, including the similarity of the job duties or the pay comparison, should result in dismissal of the class claims.

**A.      The Complaint Fails to Allege Specific Facts Concerning the Job Duties of Putative Class Members**

The Complaint's collective allegations are merely conclusory. Every reference to the job duties of putative class members is a mere repetition (in one form or another) of the generalized allegation that the Campaign has done what the law prohibits, *i.e.*, paid women less than men for similar work. The following comprise **all** of the Complaint's allegations concerning the alleged job duties of putative class members:

> Cpt. ¶ 120: The Campaign engaged in systemic gender-based pay discrimination against its female employees. It . . . paid its female employees less than its male employees for the same work."

> Cpt. ¶ 122: "[F]emale Campaign employees . . . were paid less than male employees doing the same or similar work . . . ."

> Cpt. ¶ 123: "[F]emale Campaign staff . . . were affected by policies and practices with the purpose and effect of denying them equal compensation for the same or similar work . . . ."

> Cpt. ¶ 124: "There are many similarly situated collective members . . . ."

> Cpt. ¶ 127: "Ms. Johnson and the collective . . . are or were subjected to the Campaign's common compensation policies, practices, and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent . . . positions . . . ."

Cpt. ¶ 135:  The Campaign paid . . . the collective less than similarly-situated male colleagues while performing equal work . . . ." [5]

As the Court can plainly see, there are no specific allegations concerning job duties of the putative class or any of its members.  Instead, Plaintiff makes the same conclusory allegation, over and over, as though by repeating it she can avoid the need to plead specific facts.

The Eleventh Circuit's decision in *Hamilton* eliminates any doubt that might otherwise exist as to whether these allegations are the type of allegations that are "conclusory":

> Hamilton takes exception to characterizing her statement as conclusory, but stating with nothing more that she "performed the same work as [her] white, male colleagues who were L5s" is, by definition, conclusory: It "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (10th ed. 2014).

*Hamilton*, 2019 U.S. App. LEXIS 2561, at *12-13.

Because the Supreme Court held in *Iqbal* that mere conclusory statements do not satisfy *Twombly's* facial plausibility standard, and because it is clear under *Hamilton* that the types of allegations in the Complaint concerning job duties of the putative class members are "by definition, conclusory," Plaintiff's class claims are patently insufficient, and must be dismissed. Stated differently, in the absence of factual allegations concerning the job duties of putative class members, the Complaint cannot possibly support a finding that the duties of putative class members are "substantially equal" to the duties of alleged comparators.

---

[5] The closest the Complaint comes to making any specific factual allegations concerning job duties of any putative class member is the allegation that Lucia Castellan was the Campaign's Head of Human Resources.  Cpt. ¶¶ 88 and 89).  The Complaint does not suggest that any male had similar duties, does not identify Ms. Castellan's wages, and does not allege that any male was paid more than Ms. Castellan.  In fact, the Complaint does not even assert that Ms. Castellan is a member of the putative class of women allegedly paid less than men.

### B.   The Complaint Fails to Allege Specific Facts Concerning the Job Duties of Purported Comparators

The Complaint has the same deficiency with respect to allegations concerning job duties of the supposed male comparators (and concerning any similarity between job duties of the comparators and the unstated job duties of members of the putative class).  Except for the allegations quoted above, the only allegations in the Complaint concerning job duties of men, concern employees to which Plaintiff compares **herself**.[6]  In the absence of allegations about job duties of the purported comparators of putative class members, even if the Complaint included sufficient allegations about job duties of the putative class (which it does not), there is nothing in the Complaint that could support a finding that any purported comparator had job duties "substantially equal" to any member of the putative class.[7]

### C.   The Complaint Fails to Allege Specific Facts Concerning the Wages of Putative Class Members

Another fatal deficiency is that the Complaint fails to allege facts sufficient to establish that female employees were paid less than their purported male comparators.  With respect to

---

[6] The Complaint identifies five men that it claims were in positions comparable to the named Plaintiff's position.  *See* Cpt. ¶ 112(a-e).  There is no allegation that those men are comparators with respect to members of the putative class, no allegation (specific or otherwise) that any putative class member had job duties similar to those men, and no allegation (specific or otherwise) that would allow for a comparison between wages paid to any member of the putative class and any of those men.  As explained below, even as to Plaintiff, the allegations concerning those five are insufficient to state a claim.

[7] Further, even if conclusory allegations were sufficient – which they are not – in the absence of any allegations at all concerning the job duties of members of the putative class and their purported comparators, the most the Complaint could possibly be said to assert is that the work of women had comparable worth to the work of men (although even that is not supported by any specific allegations).  However, "it is well-established that comparable worth claims are not cognizable under the EPA."  *Brown v. Macon-Bibb Cnty. Planning & Zoning Comm'n*, Civil Action No. 5:07-cv-161(HL), 2009 U.S. Dist. LEXIS 56945, at *13 (M.D. Ga. July 6, 2009) (citing *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 801 (11th Cir. 1992); other citations omitted).  Rather, "the EPA requires a showing of a substantial identity of job functions."  *Brown* at *13 (citing *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972)).  The Complaint's complete failure to identify job functions of either the members of the putative class or their purported comparators leaves the pleadings devoid of any allegations which, if proven, could establish a substantial identity of job functions.  For this reason as well, the class claims are fatally deficient, and should be dismissed.

wages of female employees, the Complaint makes mere conclusory recitations of the elements of

the claim (*see, also* III.A.):

> ¶ 111: "Ms. Johnson was also underpaid compared to similarly qualified and less qualified male staffers." . . . Ms. Johnson's experience is not isolated – indeed, the Campaign engaged in systemic gender discrimination in pay against its female employees."

> ¶ 116 "the Campaign willfully paid its female employees less than its male employees."

The Complaint offers nothing other than conclusory assertions on this key element of the class

claims, insufficient to support the class claims alleged therein.

### D.    The Complaint Fails to Allege Specific Facts Concerning the Wages of Purported Comparators

The Complaint has the same deficiency with respect to wages of purported comparators

of the putative class members.  To support this claim, the Complaint offers only the patently

insufficient allegations recounted above.[8]  As with the allegations concerning job duties of

putative class members and their purported comparators, these conclusory allegations are

insufficient under *Iqbal* and *Twombly*, and the Complaint is bereft of any sufficient allegations

on the issue of wages of the putative class members, or of the purported comparators.  Without

such allegations, the Complaint is devoid of allegations sufficient to support a finding that the

putative class members were paid less than their theoretical male comparators.

To prove the class claims, Plaintiff must prove the following key elements, among other

things:  (1) the job duties of putative class members; (2) that class member jobs are "substantially

---

[8] Plaintiff does allege wages of men as her comparators, *see* Cpt. ¶ 112, but there is no allegation or indication that those men are comparators for putative class members.  In any case, in the absence of allegations of fact concerning wages of putative class members, there is nothing that could establish that those men were paid more than putative class members.  There is one other allegation of pay disparity:  "it was reported that men employed by the Campaign made 'about 35% more' than women."  Cpt. ¶ 115.  This allegation is conclusory, and there is no indication whether the persons it compares were performing similar or different work.  Because pay disparities are unlawful only if positions are similar, the absence of information about the similarity of positions for the persons described makes this allegation immaterial.

equal" to jobs of purported comparators; (3) the pay of the putative class members; and (4) that

the comparators were paid more.  It is abundantly clear that the Complaint provides only mere

legal conclusions, masquerading as fact, such as "female Campaign employees . . . were paid less

than male employees doing the same or similar work," *See, e.g.*, Cpt. ¶ 122, to support the class

claims. This is simply not enough.

The Eleventh Circuit's view of these types of allegations is clearly expressed in *Davis v.

Coca-Cola*.  There, Plaintiffs alleged they were "denied promotions . . . and treated differently

than similarly situated white employees solely because of [] race."  516 F.3d at 974.  According

to the Eleventh Circuit, "[t]hat statement epitomizes speculation and therefore does not amount

to [an allegation sufficient] under Rule 8(a)."  *Id.* (citing *Twombly*).  As *Iqbal* held:

> [T]he pleading standard Rule 8 announces . . . demands more than an unadorned,
> the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the elements of a cause of action
> will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]"
> devoid of "further factual enhancement."

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557 (other citations omitted)).

The same result should obtain here. The Complaint includes mere conclusory statements,

and not the recitations of fact required by *Iqbal*, *Twombly*, and their progeny.  *Iqbal*, *Twombly*,

and the numerous authorities cited above all establish that the type of threadbare, conclusory

allegations made in support of the collective claims here, are insufficient to state a claim.

Therefore, the collective claims should be dismissed.

**IV.   Plaintiff's Individual Wage Claims Should Be Dismissed under *Iqbal* and *Twombly***

The Complaint alleges that the Campaign violated both the Equal Pay Act and Section

1981, by paying Plaintiff less because of her gender and her race, respectively.  Plaintiff's

individual wage claims should be dismissed because they suffer from fatal deficiencies similar to

those of the collective claims.  In the alternative, judgment should be entered on the pleadings as to those claims.

As with the collective claims, to prove her individual claims, Plaintiff must prove she was paid less than comparators outside her protected classes, **for similar work**.  *Brock*, 765 F.2d at 1032 (11th Cir. 1985) (under EPA, the positions of Plaintiff and her purported comparator must be "substantially equal"); *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (under § 1981 Plaintiff must show "that she and her proffered comparators were similarly situated in all material respects") (citation and internal quote marks omitted).  Specifically Plaintiff's initial burden is to show that she was paid less than male employees "for equal work on those jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions . . ." 29 U.S.C. § 206(d)(1). Plaintiff's Complaint does not clear this hurdle. The Complaint includes detailed allegations about **Plaintiff's** job duties.  However, the allegations concerning duties of purported comparators either fail to support Plaintiff's claims of substantially similar work or are vague or conclusory – and therefore insufficient under *Iqbal* and *Twombly*.[9]  Simply put, there are no allegations in the Complaint sufficient to support a finding that Plaintiff and her alleged comparators had substantially similar job duties.

As explained above, the Complaint includes only conclusory allegations about the duties of unidentified male employees, generally.[10]  To the extent Plaintiff intends to rely on these allegations to establish her own comparators, her reliance is misplaced. As explained above, the allegations do not meet the pleading requirements of *Iqbal*, *Twombly*, and their progeny. The

---

[9] Allegations in a pleading constitute binding judicial admissions.  *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

[10] It is not clear whether Plaintiff intends to point to those male employees as comparators only with respect to putative class members, or with respect to herself as well.

Complaint also identifies five specific white males who Plaintiff claims are her comparators, in subsections of ¶ 112:

**Austin Browning** - The Complaint alleges only that he "was hired during the general election." Cpt. ¶ 112(c).  Because there are no allegations concerning Mr. Browning's job duties, the Complaint's allegations concerning Mr. Browning are insufficient to establish that Mr. Browning's job duties are similar to Plaintiff's job duties.

**Matt Ciepielowski** - The Complaint alleges only that he "was part of the National Strike Team with [Plaintiff], and they traveled to all the same states."  Cpt. ¶ 112(b).  There is no allegation concerning Mr. Ciepielowski's job duties, and no allegation that could establish that his job duties were similar to Plaintiff's job duties.

**Tony Ledbetter** - The Complaint alleges only that he "represent[ed]" the Campaign in the northern part of Florida during the general election, and "had fewer responsibilities than [Plaintiff] did during the general election, because while [Plaintiff] was in charge of operating the RV program throughout the entire state, Mr. Ledbetter was only responsible for a few counties." Cpt. ¶ 112(e).  There are no other allegation concerning Mr. Ledbetter's job duties, and nothing at all about Mr. Ledbetter's specific job duties.  Even assuming they were "fewer" than Plaintiff's duties that would not mean that they were similar, and would say nothing about whether they did, or did not, support a disparity in pay.  As with Messrs. Browning and Ciepielowski, the allegations in the Complaint are insufficient to establish that Mr. Ledbetter's duties were similar to Plaintiff's duties.

**David Chiokadze** - The Complaint's allegations are somewhat more detailed, but they actually show (if true) that Mr. Chiokadze and Plaintiff were **not** in similar jobs.  The Complaint alleges that Mr. Chiokadze "assisted the Communications Director for the Florida team in preparing

talking points and written statements for the Campaign." Cpt. ¶ 112(d).  The Complaint alleges

that Mr. Chiokadze and Plaintiff "worked closely together during the general election in

Florida," and Plaintiff "frequently helped" Mr. Chiokadze with his work.  *Id.*  While we cannot

know from the Complaint what Plaintiff means by "closely" or "frequently," the Complaint

alleges that Plaintiff's "most important responsibility," during her time in Florida (the only

location where Mr. Chiokadze worked, at least as far as we can tell from the Complaint), was

managing RVs that "navigated the state of Florida in advance of the general election." Cpt. ¶ 51.

There is no allegation that Mr. Chiokadze had any responsibility for RVs or any of the other

multiple duties[11] Plaintiff allegedly performed in Florida.   What the Complaint shows (assuming

its allegations are true) is that **one of many** of Plaintiff's **less important** job duties was **helping**

Mr. Chiokadze with **his** work.  There is no allegation that Plaintiff and Mr. Chiokadze shared

Plaintiff's "most important" job duty, and there is no allegation or basis for concluding that they

shared Plaintiff's many other less important duties.  The fact that one of Plaintiff's relatively less

important duties was assisting a male employee in no way establishes that their jobs were

similar.  Thus, Plaintiff's own judicial admissions in the Complaint are fatal to any claim that her

job duties were similar to those of Mr. Chiokadze.

**Sidney Bowdidge** - Again, Plaintiff's own judicial admissions defeat her claim that her duties

were similar to those of her purported comparator.  As explained above, the Complaint alleges

that Plaintiff's "most important responsibility" in Florida was managing RVs.  Cpt. ¶ 51.  There

is no allegation that Mr. Bowdidge had **any** responsibility whatsoever for RVs. Although, the

---

[11] The Complaint also alleges many other duties that Plaintiff also performed in Florida, including:  placing signs and knocking on doors, Cpt. ¶ 45, compiling videos of women showing their support for President Trump, Cpt. ¶ 82, assisting with onboarding of new staff, Cpt. ¶ 49, serving as "the" point of contact for Campaign accessories, like signs and stickers, Cpt. ¶ 43, organizing rallies, Cpt. ¶¶ 43, 56 and 117, transforming local offices into home bases for volunteers and supporters, Cpt. ¶ 44, conducting outreach to minorities, Cpt. ¶ 45, organizing and managing local offices, Cpt. ¶ 40, and acting as Operations Administrative Director for the Campaign's Florida operations, Cpt. ¶ 47.  There is no non-conclusory allegation that Mr. Chiokadze had any similar duties.

Complaint does allege that both Plaintiff and Mr. Bowdidge had some responsibility for "volunteer recruitment and management," *See* Cpt. ¶ 112(a), there is no allegation in the Complaint that Mr. Bowdidge shared any of Plaintiff's many other job duties (listed above, fn. 9).[12]   As with Mr. Chiokadze, construing the allegations of the Complaint in favor of the Plaintiff, and assuming them all to be true, the Complaint supports, at most, a conclusion that Plaintiff and Mr. Bowdidge shared **one** of Plaintiff's **less important** duties.  There is no specific allegation that could support a finding that they shared Plaintiff's most important responsibility (managing RVs), or any of her many other less important duties.

Unlike the EPA, Section 1981 requires a showing of "purposeful discrimination," *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).  Plaintiff's allegations must "support a reasonable expectation that discovery would reveal evidence that these Defendants acted with racially-discriminatory animus." *Ford v. Strange*, 580 F. App'x 701, 713 (11th Cir. 2014).  When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals pled must be similarly-situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate civil rights laws." *See Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013)(dismissing claim at motion to dismiss stage).

The Complaint's allegations are insufficient to establish that any of Plaintiff's alleged comparators had job duties "substantially equal" to Plaintiff's or that Plaintiff and her proffered comparators were "similarly situated in all material respects."  Further, as to Messrs. Chiokadze and Bowdidge, the allegations constitute judicial admissions that the comparators do **not** have

---

[12] The Complaint does allege that Mr. Bowdidge was part of the National Strike Team and traveled with Ms. Johnson as part of the National Strike Team, but fails to outline his duties as a member of the strike team except that he "was responsible for volunteer recruitment and management, just like Ms. Johnson."  Cpt. ¶ 112(a).

similar job duties.  Accordingly, the Court should dismiss and/or enter judgment on the pleadings as to Plaintiff's individual wage claims.

WHEREFORE, Defendants respectfully requests that the Court grant Defendants' Motion to Dismiss and enter an Order dismissing with prejudice all of Plaintiff's claims. Defendants further requests an award of its costs and attorneys' fees associated with this Motion and any other relief the Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT AND HEARING

Pursuant to the Federal of Civil Procedure 78 and Local Rule 3.01(j), Defendants hereby request that this matter be set for hearing before this Honorable Court to so the parties can fully articulate the underlying basis for dismissal of the instant matter.

Respectfully submitted,

FORD**HARRISON** LLP

*/s/ Tracey K. Jaensch*
Dawn Siler-Nixon
Florida Bar No. 993360
Dsiler-nixon@fordharrison.com
Tracey K. Jaensch
Florida Bar No. 907057
tjaensch@fordharrison.com
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Charles J. Harder
charder@harderllp.com
*Pro Hac Vice Admitted*
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212
Telephone:  (424) 203-1600

Attorneys for Defendants
Donald J. Trump
Donald J. Trump For President, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send a notice of electronic filing upon the following:

Brian W. Warwick
bwarwick@varnellandwarwick.com
Janet Varnell
jvarnell@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Ste 1000
Washington, D.C.  20036

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway
Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Tracey K. Jaensch*
Attorney

WSACTIVELLP:10515939.6