**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (*pro hac vice*)
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

**TYCKO & ZAVAREEI LLP**
Tanya S. Koshy (*pro hac vice*)
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

*Counsel for Plaintiff*
*(Additional counsel listed on signature page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## (TAMPA DIVISION)

|  |  |
|---|---|
| **ALVA JOHNSON,** *Individually and On Behalf of All Others Similarly Situated,* | |
| Plaintiff, | **CASE NO. 8:19-cv-00475-WFJ-SPF** |
| vs. | |
| **DONALD J. TRUMP,** *In his Individual Capacity* and **DONALD J. TRUMP FOR PRESIDENT, INC.,** | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  LEGAL STANDARD ....................................................................................................2

III. ARGUMENT .................................................................................................................3

    A.  Admissibility is Not a Relevant Consideration on a Motion to Strike, Especially at This Early Stage of the Litigation..............................................................................................................3

    B.  The Trump Allegations are Relevant to Ms. Johnson's Battery Claim...........................5

        1.  The Trump Allegations are Relevant to Prove Defendant Trump's Intent. ...........................5

        2.  The Trump Allegations Demonstrate that Defendant Trump had Knowledge of the Wrongfulness of his Actions and the Fact that They Were Likely to Harm Ms. Johnson. ...........7

        3.  The Trump Allegations are Also Relevant Because they Demonstrate Defendant Trump's Course of Conduct, Pattern of Behavior, and/or Habit of Kissing and Touching Women Without their Consent...........................................................................................................9

        4.  Ms. Johnson's Allegations Regarding the "Access Hollywood" Tape are Relevant Because They Demonstrate the Effect of Defendant Trump's Actions on Ms. Johnson. .......................10

    C.  The Trump Allegations are Relevant to Ms. Johnson's Equal Pay Act Claim..........................11

    D.  The Trump Allegations are Not Scandalous. ..................................................................12

    E.  The Trump Allegations Are Otherwise Properly Pled, and Defendants' Miscellaneous Arguments to the Contrary are Unpersuasive...........................................................................15

    F.  The Trump Allegations Do Not Prejudice Either Defendant.......................................17

IV. CONCLUSION............................................................................................................20

Plaintiff Alva Johnson hereby responds to Defendant Donald J. Trump and Donald J. Trump for President, Inc.'s (collectively, "Defendants"') Motion to Strike, and respectfully requests that the Court deny the Motion in its entirety.

## I.    INTRODUCTION

On February 25, 2019, Ms. Johnson filed a Complaint alleging that Defendant Donald J. Trump kissed her on the mouth during a 2016 Campaign "meet-and-greet" event in Tampa, Florida, without her consent and in the presence of several other people; that the unwanted kiss amounted to common law battery and caused her emotional distress, humiliation, loss of dignity, and invasion of privacy; and that, consistent with her demand for punitive damages, Defendant Trump acted with "malice, moral turpitude, wantonness, willfulness, and reckless indifference to the rights of others" and "had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Plaintiff would result." Complaint, Dkt. No. 1 at 33. In addition to her civil battery claim, Ms. Johnson's Complaint includes claims for unequal pay due to race (under 42 U.S.C. § 1981) and gender (under the Equal Pay Act, 29 U.S.C. §§ 206, *et seq.*).

On May 10, 2019, Defendants filed a Motion to Strike certain portions of Ms. Johnson's Complaint, including references to Defendant Trump's own statements regarding his habit of kissing women without their consent, and the allegations of nineteen other women who have publicly claimed that Defendant Trump subjected them to unwanted kissing and/or otherwise touched them inappropriately (collectively, "the Trump Allegations"). Defendants seek to exclude the Trump Allegations on the basis that they are "scandalous, immaterial, and prejudicial," and in support of their Motion, assert that Ms. Johnson included these allegations in her Complaint "for the purpose of casting Mr. Trump and the Campaign in a derogatory light" (*Id.* at 12) and "damag[ing] Mr. Trump politically and his reelection Campaign" *Id.* These accusations are not only baseless, they are intended solely to impugn Ms. Johnson's motives (ironically, the same thing Defendants accuse Ms. Johnson of doing to them).  Contrary to Defendants' representations, Ms. Johnson's allegations are carefully pled and aimed at proving necessary elements of her claims.

Specifically, the Trump Allegations are relevant to Defendant Trump's motive and intent in

kissing Ms. Johnson; his absence of mistake in kissing her on the mouth; his habit of doing so to other women; his knowledge that doing so was wrongful and likely to result in injury or harm to Ms. Johnson; and the effects of his actions on Ms. Johnson. Additionally, the passages describing Defendant Trump's public statements about his attitudes towards women are relevant to Ms. Johnson's Equal Pay Act claims in that they tend to show that sexism pervaded the Campaign at the highest levels of leadership.

Similarly fatal to their Motion, Defendants have failed to provide any explanation of how they will be unfairly prejudiced if the Trump Allegations are not stricken. They merely suggest, with no support, that the allegations may hurt Defendant Trump's prospects of reelection in the 2020 presidential race. This is rank speculation and has no bearing on the question of whether evidence can be stricken from the Complaint. Further, the relevant standard on a Motion to Strike is not prejudice, but rather *undue* prejudice. The mere fact that the Trump Allegations may be harmful to Defendant Trump's positions and/or standing in this case because they support Ms. Johnson's claims does not render them unduly prejudicial. In fact, Defendants cannot show that they will be unduly prejudiced by the Trump Allegations because these allegations are part and parcel of Ms. Johnson's case and have already been widely publicized by a variety of major media outlets.

As with most motions to strike, the instant Motion is a "time waster," and should be denied. *See Ammirati v. Bonati*, 1994 WL 34175, at *1 (M.D. Fla. Feb. 2, 1994)

## II.    LEGAL STANDARD

Although a party may move pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," such motions "are generally disfavored by the court." *Boat Raising & Reclamation v. Victory, a 56' Dania Custom Boat*, 2007 WL 9718694, at *1 (M.D. Fla. Jan. 11, 2007) ("Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts … It is a drastic remedy to be resorted to only when required for the purposes of justice."); *Exhibit Icons, LLC v. XP Cos.*, 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009) (same). A court will not grant a motion to strike unless the "challenged

allegations have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995); *see also Augustus v. Bd. of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."); *Ammirati*, 1994 WL 34175, at *1 (motions to strike "are not favored, often being considered 'time wasters' …").

        With respect to prejudice, this Court has held that "[e]ven if the offending matter literally is within one or more of the categories set forth in Rule 12(f), the motion to strike should be denied when the court believes that no prejudice could result from the challenged allegations." *Pardo v. Fleetwood Motor Homes of PA, Inc.*, 2005 WL 3113215, at *1 (M.D. Fla. Nov. 20, 2005) (internal quotation omitted). "Mere assertions by the moving party that he or she is prejudiced are insufficient" and "prejudice is not assumed simply by the inclusion of a verbose, conclusory, or evidentiary matter." *S.D. v. St. Johns Cty. Sch. Dist.*, 2009 WL 1941482, at *3 (M.D. Fla. July 7, 2009). Additionally, the relevant question is not whether a party will be prejudiced by the inclusion of unflattering allegations, but rather whether a party will be "*unduly* prejudiced" if the allegations are not stricken. *See Embler v. Walker Elec. Sys. of Fla., Inc.*, 2006 WL 1406366, at *1 (M.D. Fla. May 18, 2006) (emphasis added).  It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action. As long as the allegations "have a possible relation to the controversy," they are not unduly prejudicial. *O'Keefe v. Darnell*, 192 F. Supp. 2d 1351, 1361 (M.D. Fla. 2002).

## III.   ARGUMENT

### A.   Admissibility is Not a Relevant Consideration on a Motion to Strike, Especially at This Early Stage of the Litigation.

        Defendants devote a great deal of attention in their Motion to the argument that Ms. Johnson's allegations are inadmissible under the Federal Rules of Evidence. *See* Motion at 3 (characterizing Ms. Johnson's references to Defendant Trump's treatment of other women as "a blatant attempt to use past alleged conduct or character evidence to support her claims, which is

expressly prohibited by Federal Rule of Evidence 404.”); Motion at 11 (repeating the phrase “not admissible” twice in bold letters).

First, Defendants misstate the Rules of Evidence. Rule 404(b) expressly provides that evidence of a party’s prior bad acts may be admissible as “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Fed. R. Evid. 404(b). Indeed, Rule 404(b) “‘is a rule of inclusion,’ and relevant prior bad acts evidence[,] like other relevant evidence, should not lightly be excluded if it is central to [a party’s] case.” *United States v. Abreu–Jimenez*, 2013 WL 4731348, at *6 (11th Cir. Sept.4, 2013) (citations omitted). Thus, while Rule 404(b) does not permit the admission of “evidence of other crimes, wrongs or acts … to prove the character of a person in order to show action in conformity therewith,” it is simply incorrect to state that evidence of prior bad acts is never admissible or would not be admissible in this case.

More to the point, however, the admissibility of the allegations is not an appropriate consideration in determining whether the allegations should be stricken:

> A complaint, however, ‘is not evidence, and the admissibility of any evidence which might prejudice [d]efendants [should] be resolved in a later stage of the litigation … Ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.’

*S.D. v. St. Johns Cty. Sch. Dist.*, 2009 WL 1941482, at *3–4 (M.D. Fla. July 7, 2009) (citing *Jackson v. Grupo Industrial Hotelero*, 2008 WL 4648999, at *14 (S.D. Fla. Oct.20, 2008)); *see also Holler v. SFCA, Inc.*, 2010 WL 11597145, at *4 (N.D. Ga. Apr. 8, 2010) (“Without deciding whether any of the alleged facts or exhibits are admissible as evidence … the Court denies SFCA’s motion to strike.”)[1]

---

[1] *See also Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1369 (S.D. Fla. 2004) (finding that, though the products of settlement negotiations are typically inadmissible, they should not be stricken from plaintiff's complaint because “courts should not tamper with the pleadings unless there is a strong reason for so doing”); *In re Parks*, 2010 WL 4807065, at *2 (M.D. Fla. Nov. 18, 2010) (finding that certain material related to relevant legal and factual questions should not be stricken, and stating “[t]his Court makes no determination, however, as to whether the Investigation Report as a whole or any portion of its contents are admissible in this matter”); *Malibu Media, LLC v. Dreer*, 2015 WL 12852317, at *2 (M.D. Fla. Jan. 5, 2015) (observing that “Defendant has failed to show how allegations based on purportedly inadmissible evidence are ‘redundant, immaterial, impertinent, or scandalous.’”); *Dang v. Honda Motor Co., Ltd*, 2015 WL 12830489, at *5 (M.D. Fla. Mar. 25, 2015) (“Defendant TK Holdings’ motion to dismiss or strike all reference

In short, the admissibility of Ms. Johnson's allegations is not relevant at this stage.

**B.      The Trump Allegations are Relevant to Ms. Johnson's Battery Claim.**

The Motion should also be denied because the Trump Allegations are highly relevant to Ms. Johnson's battery claims. *See Gonzalez v. Palms of S. Beach, Inc.*, No. 14-CIV-22232, 2014 WL 3908210, at *3 (S.D. Fla. Aug. 7, 2014) (denying motion to strike "allegation of Defendant's inappropriate treatment of women" and "allegations of other unknown discriminatory practices" because both were "at least minimally related to Gonzalez's claims of race and gender discrimination."). Under Florida law, "battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. Dist. Ct. App. 2005). "The defendant must have done some positive and affirmative act ... which must cause, and must be intended to cause, an unpermitted contact." *Sullivan v. Atl. Fed. Sav. & Loan Ass'n.*, 454 So. 2d 52, 55 (Fla. Dist. Ct. App. 1984) (citing W. Prosser, Law of Torts, § 9, at 35-36 (4th ed. 1971)). In order to justify a punitive damages award for battery, a plaintiff must show that the defendant engaged in intentional misconduct or acted with gross negligence. Fla. Stat. Ann. § 768.72 "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.*

1. *The Trump Allegations are Relevant to Prove Defendant Trump's Intent.*

The allegations Defendants seek to strike are directly relevant to Defendant Trump's intent in kissing Ms. Johnson without her consent. Intent is an essential element of a battery claim under Florida law and, as Florida courts have observed, intent to commit battery is "rarely subject to direct proof but must be established based on surrounding circumstances." *See Bostic v. State*, 638 So.2d 613

---

to other accidents or incidents is more properly asserted prior to trial after the evidentiary record is developed.").

(Fla. 5th DCA 1994). Courts in this Circuit have repeatedly endorsed the use of "prior bad acts" evidence in order to demonstrate intent under similar circumstances. For instance, in *Shinholster v. Langston*, 2008 WL 4762306, at *5–7 (S.D. Ga. Oct. 28, 2008), the Court found that evidence of similar acts of abuse by the same defendant was relevant and admissible to show the defendant's intent to abusively beat plaintiff. *See also Hooks v. Langston*, 2007 WL 1831800 (S.D.Ga.2007) (prior assaults by correctional officer were admissible to show intent to harm and common plan to abuse inmates); *Gardner v. Jones*, 315 F. App'x 87 (10th Cir. 2009) (admission of prior bad acts evidence that defendant had a history of "peeking" into women's windows was properly determined to be relevant to his intent to commit attempted sexual battery); *Milner v. Safeway Stores, Inc.*, 2006 WL 89828, at *2 (D.D.C. Jan. 13, 2006) (in a civil battery case, information regarding previous acts of battery by defendant was relevant and admissible to show "motive or intent.")

Notably, evidence of a defendant's prior mistreatment of women has been found to be highly relevant to the question of intent, especially in the analogous context of Title VII sexual harassment cases where, as in battery cases, intent is an element of the underlying cause of action. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1300–01 (11th Cir. 2001) ("… [Rule 404(b)] does not preclude the introduction of such evidence to demonstrate a defendant's … intent, pattern, etc. Evidence of Neal's harassment of other women who worked under him is arguably admissible for one or more of these acceptable purposes."); *Walters v. Cent. Fla. Invests. Inc.*, 2006 WL 821858 at *8 (M.D. Fla. Mar. 28, 2006) ("Evidence of McGriff's harassment of other women who worked under him may be admitted to show … intent"); *Washington v. Sch. Bd. of Miami-Dade Cty.*, 2002 WL 31056088, at *1 (S.D. Fla. July 18, 2002) ("The Court notes that Defendant William's treatment of these other three women is strikingly similar to that of Plaintiff … Thus, to the extent the testimony serves as evidence of Defendant William's motive, opportunity, intent … it is admissible.").

Perhaps the most probative evidence of Defendant Trump's intent to commit battery and kiss Ms. Johnson without her consent is his admission, captured on the *Access Hollywood* tape, that he habitually kisses women without their consent: "You know I'm automatically attracted to beautiful—I just start kissing them. It's like a magnet. Just kiss. I don't even wait." Complaint at 1.

6

Indeed, the *Access Hollywood* tape reveals that Defendant Trump's habit of kissing women against their will is part of an intentional scheme of predatory behavior, which often escalates into more serious forms of sexual misconduct, *viz.*, "grab 'em by the pussy." *Id.*

Ms. Johnson's allegations that Defendant Trump has been accused of sexual misconduct by at least nineteen women, eight of whom allege that he kissed them without their consent, are also central to her battery claim. Several of these accusations include details that are strikingly similar to those alleged by Ms. Johnson and graphically described by Defendant Trump on the *Access Hollywood* tape. For instance, both Cathy Heller and Rachel Crooks claim that Defendant Trump grabbed their hands and would not let got before kissing them on the mouth. And, like Ms. Johnson, Temple Taggart, Cathy Heller, Rachel Crooks, Natasha Stoynoff, Summer Zervos, and Katy Tur allege that Defendant Trump kissed them on the mouth despite not being intimately acquainted with them and/or only knowing them in a professional capacity. Likewise, video footage of Defendant Trump's interaction with Jennifer Hawkins demonstrates that it unfolded in a similar fashion to his battery of Ms. Johnson, in that  (a) he tried to kiss Ms. Hawkins on the mouth in the presence of other people, and (b) he was undeterred by the fact that she tried to turn her head to avoid the kiss. These allegations are relevant because they demonstrate that Defendant Trump's kissing of Ms. Johnson without her consent was intentional, and not the result of an accident or misunderstanding. In other words, they tend to show that Defendant Trump "inflict[ed] a harmful or offensive contact upon" Ms. Johnson "with the intent to cause such contact." *Quilling*, 894 So. 2d at 1063.

2.  *The Trump Allegations Demonstrate that Defendant Trump had Knowledge of the Wrongfulness of his Actions and the Fact that They Were Likely to Harm Ms. Johnson.*

In order to support her request for punitive damages, Ms. Johnson must show that Defendant Trump "had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage."  Fla. Stat. Ann. § 768.72. Courts have frequently declined to strike allegations of past bad conduct demonstrating knowledge—particularly knowledge of the wrongfulness of the conduct at issue. For instance, in

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), defendants sought to strike paragraphs relating to past censures by government agencies in connection with their marketing and sale of other weight loss dietary supplements. *Id.* at 226. The Court found that these paragraphs should not be stricken because they demonstrated that, among other things, defendants knew plaintiffs would rely upon their false representations, and knew that making such false statements about weight loss products was unlawful.[2]

The Trump Allegations are relevant to Defendant Trump's knowledge of the wrongfulness of his actions and the high likelihood that they would harm Ms. Johnson. As described in the Complaint, many of Defendant Trump's victims had already publicly described how his actions had affected them by the time he kissed Ms. Johnson without her consent. For example, Jill Harth sued Defendant Trump for his alleged misconduct and "said that incident caused her a great deal of stress and anxiety and harmed her marriage." Complaint at 20; *see also id.* at 21 ("The kiss caught Ms. Taggart off guard, and left her feeling shocked and embarrassed"); *Id.* at 26-27 ("Paromita Mitra, a Miss Mississippi USA contestant posted a response stating, 'I literally have nightmares about the process,' while another woman, Shanon McAnally, called Ms. Searles's account 'so true and extremely scary.'") The Complaint explicitly alleges Defendant Trump "knows that his behavior is wrong, degrading, and harmful, both because common decency dictates as much and *because several victims of his unwanted advances have publicly stated so.*" *Id.* at 27 (emphasis added). The Trump Allegations support this claim and demonstrate that Defendant Trump kissed Ms. Johnson with the knowledge that doing so was wrongful.

---

[2] *See also Samson Distrib., Inc. v. Kreger*, 2007 WL 2254498, at *4 (M.D. Fla. Aug. 3, 2007) ("the Court finds that the facts alleged in paragraphs 4.9 to 4.14 tend to show Defendant's knowledge of his infringing actions, and thus are relevant to Plaintiff's claim for treble damages [for intentional infringement.]") *Accord Weller v. Textron, Inc.*, 2017 WL 5761597, at *4 (M.D. Pa. Nov. 28, 2017) ("[T]he allegations in paragraphs 23 and 28 go directly to what Defendant knew . . . and what Defendant did with that knowledge. As such, they may be relevant to Plaintiff's request for punitive damages."); *United States v. W.R. Grace*, 455 F. Supp. 2d 1172 (D. Mont. 2006) (in prosecution of mine operator under Clean Air Act, historical evidence of testing performed by defendant was admissible on the issue of whether defendant had "knowingly" endangered anyone); *United States v. Flom*, 2019 WL 974677 (2d Cir. Feb. 27, 2019) (Evidence of earlier uncharged money-laundering scheme in which defendant was involved was admissible other acts evidence, in prosecution for money laundering, as evidence was relevant to defendant's knowledge of fraudulent nature of the scheme).

3. *The Trump Allegations are Also Relevant Because they Demonstrate Defendant Trump's Course of Conduct, Pattern of Behavior, and/or Habit of Kissing and Touching Women Without their Consent.*

Evidence of prior bad acts is admissible and relevant for the purpose of showing a defendant's course of conduct, pattern of behavior, and/or habit. Significantly, "evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice" and "[t]he court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." *United States v. Elmore*, 2017 WL 9473400, at *2 (M.D. Ala. Nov. 2, 2017).

For instance, in *Beard v. Flying J. Inc.*, the Court found that evidence that a male supervisor had sexually harassed other, non-party employees was admissible as habit or pattern evidence in a female employee's battery action against the supervisor. 116 F. Supp. 2d 1077, 1097 (S.D. Iowa 2000), *rev'd in part on other grounds*, 266 F.3d 792 (8th Cir. 2001). The evidence in question included testimony from five employees alleging that defendant had directed sexually explicit comments toward them, and testimony from one additional employee that defendant had "grabbed her crotch." *Id.*

Prior bad acts evidence was also admitted as relevant to defendant's habit in *Foshee v. LVNV Funding, LLC*, 2012 WL 4761746, at *1 (N.D. Ala. Aug. 28, 2012). There, defendant sought to strike paragraphs referring to the history of numerous lawsuits and judgments against it in Alabama for the same or similar conduct (namely, violation of the Fair Debt Collection Practices Act). The Court refused to strike the disputed paragraphs, finding that "[Rule 404] does not preclude the introduction of such evidence to demonstrate a defendant's … pattern" and "[m]oreover …[e]vidence of the habit of a person or of the routine practice of an organization … is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." *Id.*; *see also Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1523-24 (11th Cir. 1985) (holding evidence of prior drinking by plaintiff, including plaintiff's own admission that he carried a cooler of beer in his truck to work regularly, was admissible to show he had a habit of drinking on the job).

Consistent with this authority, allegations regarding Defendant Trump's sexual misconduct on nineteen other occasions, as well as allegations regarding the *Access Hollywood* tape, are relevant to Ms. Johnson's claims. It is difficult to conceive of more compelling "habit" evidence than Defendant's direct admission, captured on tape, that he regularly does exactly what he is accused of doing here—namely, kissing women without waiting for their consent. Likewise, allegations demonstrating that Defendant habitually targets women who are virtual strangers for harassment and abuse; grabs women's hands before kissing them; proceeds to kiss them even when they turn their heads; and kisses them in the presence of other people, *just as he did here*, are corroborative of Ms. Johnson's claims and relevant for the purpose of demonstrating that Defendant Trump acted in accordance with his usual habit in kissing her without her consent.

4. *Ms. Johnson's Allegations Regarding the "Access Hollywood" Tape are Relevant Because They Demonstrate the Effect of Defendant Trump's Actions on Ms. Johnson.*

In addition to being relevant to Defendant Trump's intent, Ms. Johnson's allegations regarding the *Access Hollywood* tape contain information regarding how Defendant's battery affected her, which is relevant to her claim for damages. Indeed, Courts have often denied motions to strike in situations where the disputed material relates to the effect of one party's actions on another. For instance, in *Tennant v. Handi-House Mfg. Co.*, 2018 WL 8248898, at \*1–2 (M.D. Fla. July 26, 2018), the court found that evidence "of the effect that this accident, and the resultant injuries suffered by Mr. Tennant, has had on his relationship with his wife are directly relevant to Mr. Tennant's mental anguish and loss of enjoyment of life. This evidence clearly cannot be excluded because it pertains directly to Mr. Tennant's non-economic damages." *See also Brantley v. Perryman*, 2006 WL 2786880, at \*2 (M.D. Ala. Sept. 27, 2006) ("The Defendant's knowledge of the Plaintiff's prior violations directly affects how she perceived and reacted to the situation at issue in this case. The evidence is not offered to prove character, but to prove the effect upon the Defendant.")

Here, the disputed allegations include the following passages describing the moment in which Ms. Johnson realized that Defendant's actions were definitely intentional and how this realization affected her: "As they listened [to the *Access Hollywood* tape], she felt horrified and sick to

her stomach … Ms. Johnson began to feel panicked, like she couldn't breathe, as she realized that what Defendant Trump had done to her was not an isolated incident, but part of a pattern of predatory behavior towards women" (Complaint at 16); "She was deeply disturbed by the fact that Defendant Trump had not only kissed her, but had also openly bragged that he made a regular practice of kissing women without their consent" (*Id.*).

## C.    The Trump Allegations are Relevant to Ms. Johnson's Equal Pay Act Claim.

Defendants seek to strike all references in Ms. Johnson's Complaint to Defendant Trump's attitudes towards women, including allegations that he has expressed misogynistic viewpoints in the past and "has a long history (which continues to this day) of publicly demeaning, objectifying, and engaging in overtly gendered attacks against female reporters, politicians, media personalities, employees, and others." Complaint at 27.

These allegations are not "impertinent, immaterial, or scandalous." In fact, they are relevant to Ms. Johnson's Equal Pay Act claims. Specifically, they demonstrate that sexism was normalized and promoted by the Trump Campaign and its leadership, up to and including Defendant Trump himself. Though evidence of intent to discriminate is not necessary to prove an Equal Pay Act claim, such evidence may be used to challenge the defense that any pay disparity was based in good faith on bona fide job-related factors—*e.g.*, that a merit or seniority system was implemented in good faith rather than as a cover-up for paying higher wages to men for equal work. *See* 29 U.S.C. § 206(d)(1). Under the burden-shifting framework applicable to Equal Pay Act claims, this is a customary defense. *See, e.g., Fallon v. State of Ill.*, 882 F.2d 1206, 1211 (7th Cir. 1989) ("Once a plaintiff establishes a prima facie case under the Equal Pay Act, the burden of proof shifts to the employer to show that the pay disparity is due to … any other factor other than sex … an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith."). Significantly, Courts have previously endorsed the use of prior bad acts evidence to undermine defendants' claims of good faith in Fair Labor Standards Act ("FLSA") actions. *See, e.g., Black v. Reynolds*, 2016 WL 409815, at *1–2 (S.D. Ala. Feb. 2, 2016) ("evidence of other FLSA actions could

11

be offered as evidence that the defendants lacked objective or subjective good faith. This would be a purpose other than to show the defendants violated the FLSA vis-à -vis the plaintiff and thus would not be barred by Rule 404(b)").

**D.      The Trump Allegations are Not Scandalous.**

Defendants argue that Ms. Johnson's Complaint contains "scandalous" material, and object to Ms. Johnson's use of the words "misogynist," "misogynistic," "predator," and "predatory." These words are not scandalous, but merely reflect the reality of Defendant Trump's conduct.

The term "scandalous" in Rule 12(f) generally refers to any allegation that "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *S.D. v. St. Johns Cty. Sch. Dist.*, 2009 WL 1941482, at *4 (M.D. Fla. July 7, 2009) (citations omitted). "It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Id.* In *Gateway Bottling, Inc. v. Dad's Rootbeer Co.,* for instance, the court noted that "to strike material as scandalous it must be obviously false and unrelated to the subject matter of the action. [ ... ] The facts ... may be unpleasant for plaintiff to have on the record and they certainly contain charges of reprehensible conduct but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action or a defense." 53 F.R.D. 585, 588 (W.D.Pa.1971); *S.D. v. St. Johns Cty. Sch. Dist.* 2009 WL 1941482, at *3–4 (relying on the analysis in *Gateway Bottling* and holding that references to a defendant "as a religious zealot with a personal agenda contrary to his responsibilities as Superintendent" were not scandalous). Importantly, even if an allegation is found to be scandalous, it should not be stricken unless it is also irrelevant. *Gonzalez*, 2014 WL 3908210, at *3 (S.D. Fla. Aug. 7, 2014).

In light of this authority, Defendant Trump's argument that the word "predator" should be stricken as scandalous is without merit—in fact, he openly admitted to being a predator on a nationally syndicated talk radio show with a listening audience of approximately 1.2 million people:[3]

---

[3] *See* David Hinckley, *Howard Stern Rules Satellite Radio*, New York Daily News (May 6, 2008), *available at* https://www.nydailynews.com/entertainment/tv-movies/howard-stern-rules-satellite-radio-article-1.331397.

> HOWARD STERN: Donald, seriously. You know about sexual predators and things
> like that, I mean –
> ROBIN QUIVERS: You are one!
> HOWARD STERN: Alright, look, I wasn't gonna say that –
> DEFENDANT TRUMP: It's true.
> HOWARD STERN: But, uh –
> DEFENDANT TRUMP: It's true.

*See* Complaint at 16. Further, and more importantly, Ms. Johnson's allegation that Defendant Trump is a "predator" who engages in "predatory" behavior are not "obviously false and unrelated to the subject matter of the action." *Gateway Bottling*, 53 F.R.D. at 588. To the contrary, they are borne out by Ms. Johnson's own personal experience, as well as the experiences of nineteen other women. Nor are the words "predator" and "predatory" examples of "repulsive language that detracts from the dignity of the court." *S.D.*, 2009 WL 1941482, at *4. Indeed, courts frequently use these words to describe sexual harassment. *See, e.g., Roberts v. County of Cook*, 2004 WL 1088230, *5 (N.D. Ill. May 12, 2004) ("[t]he victim of harassment should not fear retaliation if she resists sexually predatory behavior by colleagues or supervisors.")

Likewise, Ms. Johnson's allegation that Defendant Trump "harbors deeply misogynistic attitudes towards women" (Complaint at 27) is not "obviously false and unrelated to the subject matter of the action" (*Gateway Bottling*, 53 F.R.D. at 588). His attitudes towards women are highly relevant to Ms. Johnson's claims for the reasons described *supra*. Furthermore, his comments, which are referenced in Ms. Johnson's Complaint, clearly and unmistakably reflect misogynistic attitudes. These comments include, for instance: "what did these geniuses expect when they put men & women together?" (regarding sexual assaults in the military); "you could see there was blood coming out of her eyes. Blood coming out of her wherever" (regarding journalist Megyn Kelly); "when I come home and dinner's not ready, I go through the roof" (regarding women's domestic duties); "I think that putting a wife to work is a very dangerous thing." (regarding women in the workplace). *See* Complaint at 27, fn. 33.  Nor does the word "misogynistic" "detract[] from the dignity of the court." *S.D.*, 2009 WL 1941482, at *4. Again, courts regularly use this word to describe behavior that evidences a strong prejudice against women.  *See, e.g., Motley v. Smith*, 2016 WL 3407658, at *8 (E.D. Cal. June 20, 2016) ("the unknown officer's comments alleged here are misogynistic because

… they speak to a belief that women, through their personal choices, somehow become more deserving of becoming victims of domestic abuse.").

Defendants attempt to salvage their argument that Ms. Johnson's allegations are scandalous by citing *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613 (1st Cir. 1988) and *S.E.C. v. Lauer*, 2007 WL 1393917 (S.D. Fla. Apr. 30, 2007). However, the language at issue in those cases was hyperbolic, belligerent, and not based in fact, unlike the language Defendants object to here. Specifically, in *Alvarado-Morales*, plaintiffs used the terms "concentration camp," "brainwash," and "torture" to describe their experiences at a career counseling and training center, and analogized defendants' behavior to that of "Chinese communists in Korea." And in *S.E.C. v. Lauer*, 2007 WL 1393917 (S.D. Fla. Apr. 30, 2007), the Court denied a motion requesting that it take judicial notice of an unsworn personal letter that was "34 pages long and consist[ed] of a rambling recitation of Lauer's often-repeated and completely unsubstantiated invective against the news media, the SEC, SEC personnel individually, the Receiver, and the Court." Both of these cases are inapposite.

The other cases cited in support of Defendants' argument that Ms. Johnson's allegations are generally "impertinent, immaterial, and scandalous" are also easily distinguishable and should be disregarded. Defendants' citation to *Vita Nuova Foods, Inc. v. Vita Nuova Prod., Inc.*, 2008 WL 11331718, at *2 (S.D. Fla. Oct. 24, 2008) is particularly misleading. In their Motion, Defendants note that "the court [in *Vita Nuova Foods*] informed the parties that defendant's inclusion of the aforementioned criminal information 'treads closely' to violating the Florida Rules of Professional Conduct, Rules Regulating the Florida Bar 4-3.1 and 4-3.4(g)," citing these Rules in a footnote and thereby implying that Ms. Johnson's allegations are similarly problematic. However, in that case, defendants had stated in their counterclaim: "Plaintiff has failed to join Humberto Gamez, a Convicted Felon, as an indispensable party to this action." The Court (properly) found that this language was inappropriate, because Mr. Gamez's criminal record had absolutely no bearing on whether or not he was in fact an indispensable party. Here, by contrast, Defendant Trump's prior bad acts bear on his motive, intent, knowledge, willfulness, and lack of mistake, all of which are relevant to Ms. Johnson's causes of action and claims for damages.

14

Similarly, *Dukes v. Miami-Dade Cty.*, 2007 WL 2696775, at *3 (S.D. Fla. Sept. 11, 2007) does not support Defendants' arguments. In that case, the Court granted defendant's motion to strike because, even though plaintiffs had already struck their claims of conspiracy (which the Eleventh Circuit had found were barred), the factual assertions relating to these claims remained in their Complaint. Defendants' reliance on *Fodor v. E. Shipbuilding Grp.*, 2014 WL 50783, at *5 (N.D. Fla. Jan. 7, 2014), is likewise misplaced. In that case, without seeking leave from the Court, plaintiff amended his complaint to add (a) allegations that defendant forged documents, and (b) demands for relief that were criminal in nature. The Court found that, because criminal claims and penalties were not within the scope of a civil cause of action initiated under Title VII and the ADA, these allegations and demands should be stricken.

In sum, Defendants have failed to identify a single case on point, and their conclusory assertion that Ms. Johnson's allegations are scandalous should be rejected.

**E.    The Trump Allegations Are Otherwise Properly Pled, and Defendants' Miscellaneous Arguments to the Contrary are Unpersuasive.**

Interspersed throughout Defendants' Motion are a variety of miscellaneous arguments aimed at demonstrating that Ms. Johnson's allegations are improper and should be stricken. None of these arguments are persuasive.

First, Defendants claim that certain of the nineteen allegations of sexual misconduct against Defendant Trump are too remote in time to be relevant here. However, this argument ignores Eleventh Circuit precedent indicating that "prior bad act evidence from ten or even fifteen years earlier [is] not so remote in time as to require exclusion." *United States v. Lecroy,* 441 F.3d 914 (11th Cir. 2006); *see also Cohen v. City of Miami*, 54 F.R.D. 274, 277 (S.D. Fla. 1972) (holding that inclusion of allegations of discrimination dating back thirty years was appropriate because "[s]uch allegations are appropriate to lay a foundation for proof of the present effects of this past discrimination").[4]

---

[4] *See also United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (holding that evidence of prior bad acts that occurred fifteen years prior to the charged offense was admissible to prove intent pursuant to Rule 404(b)); *Boldstar Tech., LLC v. Home Depot, Inc.*, 2008 WL 11320212, at *4–5 (S.D. Fla. Apr. 4, 2008) (ordering, in a civil case, the production of responsive information regarding prior acts of infringement by defendant for the preceding fifteen years)

Here, the majority of the Trump Allegations fall within the fifteen-year lapse considered by the Eleventh Circuit. Further, and importantly, the degree of similarity between a temporally remote prior act and an act alleged by a plaintiff is highly relevant to whether evidence of the prior act should be admitted. *Williams v. Alabama Dep't of Transp.*, 509 F. Supp. 2d 1046, 1061 (M.D. Ala. 2007) ("the court has not been presented with any persuasive reason for it to conclude that the prior civil adjudication is too remote to be admissible … particularly given the substantial similarities between the 'prior bad acts' evidence and the discrimination at issue in this case"). Here, the Trump Allegations are not too remote in time, especially given their striking similarities to Ms. Johnson's own allegations.

Defendants' claim that Ms. Johnson's allegations are a "back-door attempt … to establish an alleged 'pattern and practice' in her pleading with respect to Mr. Trump's alleged 'treatment of women'" is similarly unpersuasive. *See* Motion at 11. Plaintiff does not seek to pursue a "pattern or practice" claim as that term is sometimes understood in, for instance, the discrimination context. *See, e.g., Smith v. City of Lake City, Fla.*, 2012 WL 4772286, at *1 (M.D. Fla. Oct. 8, 2012) (finding that plaintiff could not maintain a "pattern or practice" discrimination claim because his case was not brought as a class action). As the Complaint makes very clear, the allegations regarding other victims are included not because Ms. Johnson seeks relief on behalf of these individuals, but rather because they demonstrate Defendant's intent, knowledge, and willfulness as to *her* individual battery claim. Including the allegations for these reasons is entirely proper, as several courts in this Circuit have confirmed.[5] Further, and as described *supra*, Ms. Johnson's Complaint *does* include an Equal Pay Act

---

[5] *See Foshee v. LVNV Funding, LLC*, 2012 WL 4761746, at *1 (N.D. Ala. Aug. 28, 2012) ("The matters sought to be excluded from the Complaint are relevant to show an alleged pattern of conduct … Plaintiff is only pursuing a claim in her own name and is not, by mentioning an alleged pattern of conduct, attempting to assert a claim on behalf of any other person. Therefore, no confusion or prejudice will be caused …"); *Badilo v. City of Deerfield Beach*, 2013 WL 3762338, at *2 (S.D. Fla. July 16, 2013) ("Instead of attempting to use the 2007 allegations to establish a systematic 'pattern and practice' of discrimination by the City against employees who exercise FMLA rights, Badilo raises the allegations as circumstantial evidence of past retaliation against her … the admissibility and weight of such evidence is a question for another time and is not properly the subject of the pending Motion to Strike."); *Humble v. Cirrus Educ. Grp., Inc.*, No. 5:17-CV-192 (MTT), 2017 WL 6001501, at *6 (M.D. Ga. Dec. 4, 2017) ("[w]hile Humble has asserted her claims in her individual capacity, that does not mean the allegations pertaining to [non-parties] Snow and Campbell are 'immaterial.' Most certainly, they are material to substantiate Humble's claims.").

claim on behalf of other similarly situated individuals, and certain of the Trump Allegations are relevant to these claims.

Finally, to the extent Defendants object to the allegations in Ms. Johnson's Complaint because they are sourced from newspaper articles and/or other media sources (as suggested by Defendants' citation to *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 2007 WL 201261 (S.D. Fla. Jan. 24, 2007)), this is not an appropriate basis for a motion to strike. *See, e.g., Hepp v. Paul Revere Life Ins. Co.*, 2014 WL 3865389, at *7 (M.D. Fla. Aug. 5, 2014) (refusing to strike plaintiff's allegations based on television reports); *Metro. Life Ins. Co. v. Carter*, 2005 WL 1668865, at *2 (M.D. Fla. July 15, 2005) ("the degree of evidentiary support for an allegation is an issue not properly before the Court on a motion to strike"); *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 838 F. Supp. 572, 574–75 (M.D. Fla. 1993) (same).

## F.     The Trump Allegations Do Not Prejudice Either Defendant

Defendants make conclusory assertions that they are prejudiced because the Trump Allegations will invite the inference that Defendant Trump is liable because of previous similar behavior, inflame the jury, blur the relevant issues, and burden Defendants with excess discovery. However, Defendants are not *unduly* prejudiced by the inclusion of the Trump Allegations and have cited no authority to support such a finding. Because Defendants must demonstrate undue prejudice to justify the extraordinary relief of striking portions of a pleading, this failure alone is sufficient to warrant a denial of their Motion. Further, Defendants' claims that the Trump Allegations are intended to disparage Defendant Trump and harm his reelection campaign are baseless, have no bearing on whether the allegations should be stricken, and, ironically, reflect the same improper motives Defendants ascribe to Ms. Johnson.

First, the Trump Allegations are properly included in the complaint for the reasons described *supra*—namely, because they are highly relevant to (a) Defendant Trump's habit, motive, intent, knowledge, and/or lack of mistake in kissing Ms. Johnson without her consent, and (b) the Campaign's good faith, or lack thereof, in basing compensation decisions on factors other than sex.

17

As this Court noted in *O'Keefe v. Darnell*, 192 F. Supp. 2d 1351, 1361 (M.D. Fla. 2002), as long as the allegations "have a possible relation to the controversy," they are not unduly prejudicial.

Further, the Trump Allegations were already well-publicized before Ms. Johnson filed her lawsuit,[6] and courts have previously found that no prejudice exists in similar circumstances:

> Further, Plaintiffs contend, and present evidence to show, that the challenged paragraphs reflect publicly available information; these same allegations have been made in complaints filed against Defendant in other cases. Defendant cannot show significant prejudice from the mere repetition of them in this case.

*Ortiz v. Cooper Tire & Rubber Co.*, 2013 WL 2151674, at *2 (W.D. Okla. May 16, 2013). Defendants fail to explain how allegations that have been covered at length in major reputable news outlets such as the Washington Post, for instance, could possibly cause them undue prejudice in this case.[7] Further, as this Court and its sister courts have recognized, there is minimal risk that material in a complaint will inflame and prejudice the trier of fact, as the jury is generally not shown the complaint. *Ammirati v. Bonati*, 1994 WL 34175, at *2 (M.D. Fla. Feb. 2, 1994) ("In this jurisdiction, jurors are generally not shown the complaint; therefore, there is little threat that the allegedly prejudicial material in the complaint will prejudice the defendant."); *Blake v. Batmasian*, 318 F.R.D. 698, 701 (S.D. Fla. 2017).

Defendants have also included no authority to support their argument that they will be unduly burdened by having to respond to discovery related to the Trump Allegations. As a preliminary matter, a motion to strike is an improper vehicle for an inquiry into whether discovery is too burdensome. This is a concern that should be addressed via formal objections to Ms. Johnson's specific discovery requests. *See, e.g., ProFoot, Inc. v. MSD Consumer Care, Inc.*, 2012 WL 12905082, at *5

---

[6] *See, e.g.*, Meg Kelly, "President Trump and accusations of sexual misconduct: The complete list," Washington Post (November 22, 2017), available at https://www.washingtonpost.com/news/fact-checker/wp/2017/11/22/president-trump-and-accusations-of-sexual-misconduct-the-complete-list/?utm_term=.d547376b8602 (describing in detail nearly every single accusation of sexual misconduct against Defendant Trump, and including direct quotes from victims and corroborators as well as descriptions of Defendant Trump's response to each allegation).

[7] *See Uzlyan v. Solis*, 706 F. Supp. 2d 44, 58 (D.D.C. 2010) ("In the absence of pejorative adjectives characterizing the facts alleged or other colorful language, the fact that a plaintiff's allegations may cast the defendant in a 'derogatory light' is insufficient to warrant the striking of allegations from a complaint.").

(D.N.J. Aug. 16, 2012) ("A motion to strike pursuant to Rule 12(f), however, deals solely with the sufficiency of the Verified Complaint, and does not allow a Court to look beyond the paragraphs in question. The Court cannot, at this juncture, find that discovery will be unduly burdensome."). Moreover, the fact that Defendant Trump has been the subject of a large number of claims of exactly this type cannot now be used as a shield to protect those claims from examination. *See Allen v. Life Ins. Co. of N. Am.*, 267 F.R.D. 407, 415–16 (N.D. Ga. 2009) ("Defendants argue that they will be prejudiced by having to respond to this large quantity of averments…The Court finds that, although needlessly detailed, paragraphs 17 through 86 constitute the heart of plaintiff's complaint … A review of [these paragraphs] reveals that defendants are capable of admitting or denying them").

Relatedly, Defendants' argument that Ms. Johnson's allegations should be stricken because she seeks to turn "discovery of one case into discovery of twenty cases, all within this one case" is unconvincing. This argument was considered and roundly rejected in *U.S. E.E.O.C. v. Suntrust Bank*, 2014 WL 1796681, at *5 (M.D. Fla. May 6, 2014) (a case involving "me too" evidence of sexual harassment). There, the Court found that it was "in a position to effectively and efficiently manage the testimony … to prevent needlessly lengthy questioning of non-parties or the 'mini-trial' effect. In addition, counsel can avoid confusion as to the identities of the Plaintiffs during closing arguments by explaining that [non-party] Rojas seeks no relief in this case." *Id.*

Finally, Defendants' assertion that "Plaintiff inserted the Trump Allegations for the purpose of casting Mr. Trump and the Campaign in a derogatory light, attempting to damage Mr. Trump politically and his reelection …" are completely without merit, not to mention improper and entirely irrelevant to the issues before the Court. *See, e.g., Select Auto. Mgmt., LLC v. Fid. Three, Inc.*, 2007 WL 9723895, at *1–2 (M.D. Fla. June 1, 2007) ("Plaintiff has failed to demonstrate how it will be prejudiced if the allegations remain. Furthermore, Plaintiff is equally guilty of the 'mud-slinging' that it wishes to remedy through this motion.")

As the Court in *Goodman v. Tatton Enterprises, Inc.* observed, "While [the evidence] may turn out to be prejudicial, so is all relevant evidence. But that does not make it *unfairly* prejudicial." 2012

WL 1886529, at *3 (S.D. Fla. May 23, 2012). *See also Gateway Bottling,* 53 F.R.D. at 588 ("the facts ... may be unpleasant for [a party] to have on the record and they certainly contain charges of reprehensible conduct but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action or a defense.").

## IV.   CONCLUSION

Defendants' Motion to Strike fails to show that Ms. Johnson's Complaint contains allegations that are scandalous, immaterial, impertinent or unfairly prejudicial. Accordingly, Plaintiff respectfully requests that Defendants' Motion be denied and Defendants be required to fully answer the Complaint within five days of the Court's Order so the merits of this case can be reached as quickly as possible without further unnecessary delays.


DATED: May 24, 2019.                              Respectfully submitted,

/s/ Hassan A. Zavareei
Hassan A. Zavareei (*pro hac vice*)
Trial Counsel
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
**VARNELL & WARWICK, PA**
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600

F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice* )
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2019, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing

to all counsel of record.

/s/ Hassan A. Zavareei
Hassan A. Zavareei