UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of All Others**
**Similarly Situated,**

       **Plaintiff,**                      **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR PRESIDENT, INC.,**

       **Defendants.**

_____/

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION

**I.**    **Introduction**

A plaintiff seeking conditional certification of a collective action must proffer **evidence**

to show both that (1) there are other similarly situated individuals, and that (2) similarly situated

individuals desire to opt in to the lawsuit.  *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562,

1567 (11th Cir. 1991) (citations omitted).  Here, Plaintiff has done neither.

Unsupported assertions are insufficient to satisfy Plaintiff's burden at the conditional

certification stage.  *Id.* at 1567 (citations omitted).  As explained in detail below, Plaintiff's

claims that there are similarly situated individuals are mere conclusory assertions without

evidentiary support and cannot satisfy her burden of proof.

Moreover, conditional certification may not be used to determine **whether** others desire

to join.  *See, e.g.*, *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220-21 (M.D.

Fla. 2003) (citing *Dybach*, 942 F.2d at 1567-68 (other citation omitted)); *Kubiak v. S.W.*

*Cowboy, Inc.,* No. 3:12-cv-1306-J-34JRK, 2014 U.S. Dist. LEXIS 80225, *36 (M.D. Fla. June 12, 2014) (citation omitted).  Here, the declarations proffered with Plaintiff's motion **do not even mention** (in conclusory fashion or otherwise) **any desire – by anyone** – to opt in; instead, Plaintiff's motion simply invites the Court to speculate and assume – without any true supporting evidence – that others desire to join.

Accordingly, the motion for certification is facially deficient and should be denied.

## II.    Relevant Legal Standards for Conditional Certification of an EPA Claim

### A.    General Standard

Before certifying a case as a collective action, a "district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."[1]  Plaintiff bears the burden to demonstrate that the class she proposes should be conditionally certified.[2] This includes the "burden of showing that additional employees are interested in opting into the case."[3]  According to the Eleventh Circuit, unsupported conclusory assertions are insufficient to satisfy Plaintiff's burden at the conditional certification stage.[4]  As a result, the court cannot conditionally certify a collective action based on unsupported, conclusory assertions by Plaintiff, by other declarants, or by Plaintiff's counsel.[5]

---

[1] *Dybach*, 942 F.2d at 1567-68 (11th Cir. 1991).

[2] *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996).

[3] *See Kessler v. Lifesafer Serv. Providers, LLC*, No. 6:06-cv-1442-Orl-19JGG, 2007 U.S. Dist. LEXIS 102490, at *8 (M.D. Fla. Apr. 26, 2007), *affirmed by, adopted by, motion denied by*, 2007 U.S. Dist. LEXIS 38276 (M.D. Fla. May 25, 2007).

[4] *See Dybach*, 942 F.2d at 1567; *Haynes v. Singer Co.*, 696 F.2d 884, 887-88 (11th Cir. 1983).

[5] *Wallace v. Club Climaxxx, Inc.*, No. 1:17-cv-22585-UU, 2018 U.S. Dist. LEXIS 194127 at *6 (S.D. Fla. May 11, 2018) (citing *Haynes*, 696 F.2d at 887-88).  *See also Gibbs v. MLK Express Servs., LLC*, No. 2:18-cv-434-FtM-38MRM, 2019 U.S. Dist. LEXIS 78007, at *29-30 (M.D. Fla. Mar. 28, 2019) ("Vague and conclusory allegations are insufficient to show that conditional certification is appropriate.") (citations omitted); *Parker v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 U.S. Dist. LEXIS 184589, at *4-5 (M.D. Fla. Apr. 2, 2014) (conclusory affidavits are insufficient to support conditional certification) (citation omitted); *Lee v. Sky Plumbing, Inc.*, No. 6:09-cv-2109-Orl-31DAB, 2010 U.S. Dist.

**B.** **Conditional Certification Cannot Be Used to Determine *Whether* Others Desire To Join**

"Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit."[6]  Plaintiff must proffer evidence, before conditional certification, that similarly situated individuals desire to join.[7]

**C.** **Eleventh Circuit Unequivocally Defines "Conclusory" Assertions**

A statement is conclusory if it "[e]xpress[es] a factual inference without stating the underlying facts on which the inference is based."[8]  A statement that the declarant performed the same work as her purported comparators is, "by definition, conclusory."[9]  The Eleventh Circuit also has said that a statement that plaintiffs were treated differently because of protected class status is a statement that "epitomizes speculation."[10]

---

LEXIS 26286, at *6-7 (M.D. Fla. Mar. 1, 2010) (denying motion for conditional certification where "[t]he conclusory allegations of one other putatively similarly situated employee . . . fall well-short of the detailed allegations required to support collective treatment.").

[6] *Kubiak*, 2014 LEXIS 80225*, *36 (M.D. Fla. June 12, 2014) (emphasis in original) (citation omitted); *accord Mackenzie*, above (citing *Dybach*); *Kessler*, 2007 U.S. Dist. LEXIS 102490, at *8 (M.D. Fla. Apr. 26, 2007), *affirmed by, adopted by, motion denied by*, 2007 U.S. Dist. LEXIS 38276 (M.D. Fla. May 25, 2007).

[7] *See Dybach*, *McKenzie*, *Kubiak*, and *Kessler*, above.  In *Kubiak*, plaintiffs, servers at a restaurant, claimed their employer violated the FLSA by requiring them to participate in an unlawful tip pooling arrangement.  2014 U.S. Dist. LEXIS 80225, at *36.  At the time of the motion for conditional certification, there were three named plaintiffs and six others who had filed notices of consent to join.  *Id.* Plaintiffs contended that there were more than 200 other servers who had been subjected to the same unlawful policy.  *Id.*  Plaintiff's declarations stated that they "believe[d]" or "kn[e]w" that others would like to join if they would not be subject to retaliation, but they did not identify, by name, anyone who desired to opt in.  *Id.* at 19-21.  After holding that the Plaintiff must proffer evidence before conditional certification showing that similarly situated individuals desire to join, *id.* at 36, this Court held that "Plaintiffs' conclusory statements and 'mere belief or unsupported expectations' that others desire to join, without providing any specific facts to support their belief that other employees are interested in opting in, do not provide a sufficient basis for certification").  *Id.* at *49 (citations omitted).

[8] *Hamilton v. Sikorsky Aircraft Corp.*, ___ Fed. Appx. ___, No. 18-11378, 2019 U.S. App. LEXIS 2561, at *12-13 (11th Cir. Jan. 25, 2019) (citing Black's Law Dictionary (10th ed. 2014)).

[9] *Id.* (evaluating a statement that declarant "performed the same work as [her] white, male colleagues who were L5s").

[10] *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (allegation that plaintiffs were "denied promotions . . . and treated differently than similarly situated white employees solely because of [] race").

3

### D.    Establishing that a Comparator Is "Similarly Situated"

To prove a violation of the EPA, Plaintiff must prove the Campaign "paid employees of opposite genders different wages for equal work for jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions."[11]  The Eleventh Circuit's construction of the EPA requires the positions be "substantially equal."[12]  The "substantially equal" inquiry "focuses on the primary duties of each job, not those which are incidental or insubstantial."[13]

## III.    Summary of Facts[14]

Plaintiff's motion asks the Court to conditionally certify her EPA claim as a collective action, under 29 U.S.C. § 216(b).   The "evidence" Plaintiff proffers in support of conditional certification consists only of (1) her own declaration ("Plaintiff's Dec.," Doc. 34-5), (2) the declaration of Omarosa Manigault Newman ("Newman Dec.," Doc. 34-3), and (3) the declaration of statistician Phillip M. Johnson ("P. Johnson Dec.," Doc. 34-4).  Plaintiff's Declaration and Newman's Declaration are both made "based upon personal knowledge and/or upon information and belief."[15]

None of the declarations proffer any **evidence** of any individual similarly situated to Plaintiff, and **none of the declarations even asserts**, much less proffers evidence, that anyone

---

[11] *Hamilton*, 2019 U.S. App. LEXIS 2561, at *9 (citations omitted).
[12] *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir. 1985).
[13] *Miranda v. B & B Cash Grocery Stores, Inc.*, Case No. 88-1735-CIV-T-10C, 1990 U.S. Dist. LEXIS 9350, at *14-16 (M.D. Fla. May 4, 1990) (citing *Goodrich v. International Bh'd. of Elec. Wkrs., AFL-CIO*, 815 F.2d 1519, 1524 (D.C. Cir. 1987)).
[14] Many of the allegations in the Complaint, in Plaintiff's motion for certification, and in the declarations Plaintiff proffers in support of her motion, are blatantly false.  This response focuses on issues and facts pertinent to conditional certification.  The Campaign has not endeavored to address each of Plaintiff's false and misleading contentions, and in some cases assumes that the allegations made by Plaintiff and her declarants are true.  Accordingly, any failure to challenge in this memorandum a contention by Plaintiff or one of her declarants should not be deemed as an admission, express or tacit, of the truth or accuracy of any of Plaintiff's assertions or any of the assertions in the declarations proffered by Plaintiff.
[15] Doc. 34-5, p.2, ¶ 1; Doc. 34-3, p.2, ¶ 1.

(similarly situated or otherwise) desires to join this action.

Instead, other than boilerplate, and brief descriptions of Plaintiff's and Newman's own

jobs, the sum total that Plaintiff proffers is:

1.  Identical conclusory assertions by Plaintiff and Newman that Defendant had "uniform compensation policies and practices [governing] all components of . . . pay" for "[a]ll employees."[16]

2.  Identical conclusory assertions by Plaintiff and Newman that each "believe[s]" that Defendant paid women less than men for "perform[ing] the same or similar job duties under similar working conditions."[17]  There is no description of job duties of anyone, male or female, other than Plaintiff and Newman.

3.  Plaintiff's vague, conclusory assertion that five (5) men had **unspecified job duties** similar to hers but were paid more than she was paid.[18]

4.  Newman's conclusory assertion that one (1) man had **unspecified job duties** similar to hers but was paid more than she was paid.[19]

5.  P. Johnson's flawed statistical analysis fails to provide specific information about any similarly situated individual, and provides only average compensation data without any analysis of whether men and women were paid similar wages for similar work, and, when carefully examined, **actually shows that women and men were paid nearly exactly the same**.[20]

Repeating for emphasis, Plaintiff has not proffered **any** evidence that **any** individual

desires to join this action.[21]

---

[16] Doc. 34-5, p.3, ¶ 7; Doc. 34-3, p.3, ¶ 5.  There is no description of those supposed policies and practices.

[17] Doc. 34-5, p.3, ¶ 8; Doc. 34-3, p.3, ¶ 6.

[18] Doc. 34-5, p.3, ¶ 9.  Plaintiff made additional allegations concerning the job duties of these five in her Complaint.  As explained in detail in Defendant's motion to dismiss, to the extent additional allegations were made, they actually showed that the job duties of the purported comparators were not similar to Plaintiff's duties, within the meaning of the EPA.  *See* Doc. 32, at 14-19, which Defendant incorporates herein by reference.

[19] Doc. 34-3, p.3, ¶ 6.

[20] Doc. 34-4, and *see* below.

[21] Plaintiff focuses her arguments on authorities granting conditional certification based on small numbers of declarations.  "However, it is not the number of the affidavits that necessarily triggers conditional certification, but instead the content of them that matters." *Alvarez v. Uno Rest. Assocs.*, 2018 U.S. Dist. LEXIS 84745 at *7 (S.D. Fla. May 21, 2018) (emphasis in original).

## IV.   Further Discussion of Facts and Application of Law to Facts

### A.   Plaintiff's Declaration and Newman's Declaration

In the Eleventh Circuit, "statements in affidavits that are based, in part, upon information and belief" are "mere conclusions and unsupported factual allegations."[22]  Because Plaintiff's Declaration and Newman's Declaration are both made "based upon personal knowledge and/or upon information and belief,"[23] they are not "proper evidence,"[24] but instead are "mere unsupported conclusions and factual allegations."[25]  Because in the Eleventh Circuit conditional certification may not be based on conclusory assertions,[26] the Court should ignore Plaintiff's and Newman's Declarations, and should give them no weight whatsoever.

Even if the declarations stated that they were made entirely on supposed personal knowledge, under the Eleventh Circuit's definition of "conclusory," *see* above, Plaintiff's Declaration and Newman's Declaration offer nothing but conclusory assertions that there are other female employees who were similarly situated to Plaintiff.  Moreover, there is **no** allegation – conclusory or otherwise – that any individual desires to join this action.

### 1.   Plaintiff Has Not Proffered Any Evidentiary Basis for Finding that Others Were Similarly Situated to Plaintiff

Plaintiff completely fails to carry her burden of showing there are other, similarly situated individuals. Plaintiff's and Newman's Declarations do not even attempt to identify any similarity (much less substantial similarity) between Plaintiff and any putative class member with respect

---

[22] *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 865 (11th Cir. 2017) (citation omitted); *see also Monex Fin. Servs. v. Nova Info. Sys.*, No. 6:08-mc-137-Orl-31KRS, 2008 U.S. Dist. LEXIS 104100, at *1 n.2 (M.D. Fla. Dec. 15, 2008) (declaration made on information and belief does not constitute proper evidence).
[23] Doc. 34-5, p.2, ¶ 1; Doc. 34-3, p.2, ¶ 1.
[24] *Monex*, above.
[25] *Bagwell*, above.
[26] *Dybach*, above.

to job duties, working conditions or the like.  Nor do they identify any other woman with job duties similar to a male employee, much less one who was paid less.

Instead, using identical language, the two (2) declarations make **only** two (2) conclusory assertions that relate to any alleged similarity between Plaintiff and others:  (1) Defendant had unspecified "uniform compensation policies and practices [governing] all components of . . . pay" for "[a]ll employees," and (2) declarants "believe" that Defendant paid women less than men for "perform[ing] the same or similar job duties under similar working conditions."[27]

As to the first of these assertions (that Defendant had uniform pay policies), the declarations do not even attempt to describe the terms of the supposed policies.[28]  They also give no indication of their personal knowledge concerning the supposed policies, do not state whether the policies were in writing, or when or by whom they were promulgated, or when or how they were communicated to employees, or how declarants know who the policies were applied to (or how they know that the policies were uniformly applied), or any other information about the policies. In fact, the declarations do not even state that the supposed policies made distinctions between men and women.  For all one can tell from the declarations, the purported uniform policy may have stated, "Men and women must be given equal pay for equal work."  The declarations offer no evidentiary foundation, whatsoever, for their scant conclusory assertions. All Plaintiff has proffered in this regard is bald, unsupported conclusory assertions that the Campaign had uniform pay policies, the particulars of which are left to the Court's imagination.

The second assertion (declarants' "belief" that Defendant paid women less than men for

---

[27] Doc. 34-5, p.3, ¶¶ 7 and 8; Doc. 34-3, p.3, ¶¶ 5 and 6.
[28] *See Carruthers v. Keiser Sch., Inc.*, No. 8:09-cv-2641-T-33TGW, 2010 U.S. Dist. LEXIS 133186, at *7-8 (M.D. Fla. Dec. 3, 2010) (rejecting attempt to support conditional certification with allegations of common policy, where plaintiff failed to articulate the policy beyond merely stating that the employer had a policy of failing to pay plaintiffs and similarly situated employees for working through meal breaks).

similar work), "epitomizes" the type of assertion the Eleventh Circuit held to be conclusory and insufficient to support conditional certification.  A declarant's "belief," is **not** evidence.[29]

Still further, the declarations do not describe, much less provide evidence, of the job duties of any women other than the two (2) declarants, or of any purportedly comparable men, and they do not describe, much less provide evidence, of the pay of any other women, or of any purportedly comparable men.  In sum, there is nothing other than the bald allegations of the declarants' own beliefs to suggest that any other women were paid less than men for substantially similar work, *i.e.*, there is no evidence of any similarly situated women.

### 2.  Plaintiff Has Not Proffered Any Evidentiary Basis for a Finding that Newman Was Similarly Situated to Plaintiff

The declarations are also insufficient to establish that Newman is similarly situated to Plaintiff with respect to alleged EPA violations.[30]  As an initial matter, Plaintiff has not argued that she and Newman are similar with respect to their job duties.[31]  Instead, her motion is based on conclusory assertions[32] that she and Newman were similarly situated because (1) they both

---

[29] *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000).

[30] Newman was never an employee of the Donald J. Trump for President, Inc. As a result, Defendant plans to move to strike Newman's affidavit and request an evidentiary hearing on the basis that she was not an employee (and therefore lacks standing to proceed under the EPA). *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000).

[31] In fact, the declarations make it clear that the job duties of the two were **not** substantially similar. *Compare* Newman Dec. ¶ 4 (Newman's duties included "advising the Campaign regarding African American outreach, conducting outreach via media and events for African American and women's coalitions, speaking at Republican Party events, and preparing communications to be distributed to the media") *with* Plaintiff's Dec. ¶¶ 5 and 6 (Plaintiff's duties included managing Campaign RVs, onboarding staff and other human resources activities, helping to distribute yard signs and bumper stickers, planning volunteer events, coordinating rallies, managing volunteers, organizing campaign rallies, minority outreach, speaking at Republican political gatherings, and assisting with drafting of campaign communications).

[32] Conclusory assertions should be stricken or, if not, then disregarded.  *See, e.g., Huggins v. Marriott Ownership Resorts, Inc.,* No. 6:07-cv-1514-Orl-22KRS, 2008 U.S. Dist. LEXIS 14805, at *12 (M.D. Fla. Feb. 27, 2008); *Underwriters at Lloyds v. Fedex Freight Sys.,* No. 8:07-CV-212-T-EAJ, 2008 U.S. Dist. LEXIS 55823, at *4-5 (M.D. Fla. July 23, 2008).  A list of conclusory statements that should be stricken is attached as Exhibit 1.

supposedly were subject to a uniform pay policy and (2)(a) Plaintiff supposedly was paid less than the male employees to whom she wants to compare herself, and (b) Newman supposedly was paid less than a different male employee to whom Newman wants to compare herself.

The primary problem with Plaintiff's effort to show that she and Newman were similarly situated is that these assertions are not supported by any evidence.  The absence of evidence to support the conclusory assertion of a supposed uniform policy is explained above.

Regarding the conclusory assertion that Plaintiff was paid less than male comparators, Plaintiff's Declaration points to the same five (5) male employees she identified as comparators in her Complaint, but her declaration does not proffer any evidence at all concerning the five. Instead, she simply makes the conclusory assertions that their work required substantially equal skill, effort, and responsibility as hers, and they were paid more.  Perhaps that's a good start, but it is not close to sufficient.  First, the standard for conditional certification requires more than conclusory assertions.  Second, "the EPA requires a showing of a substantial identity of job **functions**,"[33] and the "substantially equal" inquiry "focuses on the primary duties of each job."[34] Accordingly, generalities and conclusory assertions will not suffice.  Plaintiff's Declaration fails to even offer conclusory assertions about the purported comparators' primary duties or other job functions; instead, Plaintiff offers only conclusory generalities.  As there is no evidentiary basis for a finding that Plaintiff's primary duties were substantially equal to the primary duties of her

---

[33] *Brown v. Macon-Bibb Cnty. Planning & Zoning Comm'n*, Civil Action No. 5:07-cv-161(HL), 2009 U.S. Dist. LEXIS 56945, at *13 (M.D. Ga. July 6, 2009) (emphasis added) (citing *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972)).  *See also Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir. 1985) (positions must be "substantially equal").
[34] *Miranda v. B & B Cash Grocery Stores, Inc.*, Case No. 88-1735-CIV-T-10C, 1990 U.S. Dist. LEXIS 9350, at *14-16 (M.D. Fla. May 4, 1990) (citation omitted).  Moreover, "it is well-established that comparable worth claims are not cognizable under the EPA."  *Brown* at *13 (M.D. Ga. July 6, 2009) (citing *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 801 (11th Cir. 1992); other citations omitted).

purported comparators, the Court cannot conclude that Plaintiff and her purported comparators had substantially similar duties.[35]

As with Plaintiff's Declaration, Newman offers only generalities and conclusory assertions, devoid of any evidentiary basis for a finding of substantial identity of job functions, based on the primary duties of her job and that of her purported comparator.  In fact, **Newman does not even provide her comparator's job title or even a conclusory description of his duties**.  She does not state, even in conclusory fashion, his **rate of pay**, or identify **other compensation** her purported comparator may have received.  Nor does she provide **any evidentiary basis** for her conclusory assertion that her purported comparator was paid more.

In sum, there is no evidentiary basis for a finding that Plaintiff and Newman were similarly situated.  The assertions of a policy or practice of paying women less than men for substantially similar work are vague and conclusory, without evidentiary support.  Neither declaration proffered any **evidence** of comparator(s) with substantially similar job duties.  Neither declaration proffered any **evidence** of pay less than any male comparator.  Accordingly, neither declaration provides any evidentiary basis for this Court to find that Newman was similar to Plaintiff with respect to the alleged EPA violation.

### 3.    Plaintiff Has Not Proffered Any Evidentiary Basis for a Finding that Similarly Situated Individuals Desire to Join

Even if Plaintiff proffered evidence of similarly situated individuals, which she has not, before the Court can conditionally certify a collective action, Plaintiff must also proffer evidence that similarly situated individuals **desire to opt in**.[36]  Plaintiff's and Newman's Declarations offer nothing, whatsoever – not even conclusory allegations or speculation.  Plaintiff's

---

[35] The allegations in the Complaint concerning these five (5) are similarly deficient, as explained in the Campaign's Motion to Dismiss, Doc. 32, at 14-19.
[36] *See Dybach*, above.

Declaration does not assert that others desire to join, and Newman does not state even that **she** desires to join,[37] much less that she knows of others who wish to join.[38]

> ### B. P. Johnson's Declaration Also Is Insufficient To Support Conditional Certification

There are many deficiencies in P. Johnson's Declaration which render it unsuitable for consideration. These include technical deficiencies in the data analysis, errors in the application and the failure to provide evidentiary support either for the contention that there are individuals similarly situated to Plaintiff, or for the contention that others desire to opt in.

> #### 1. P. Johnson's Declaration Provides No Support for a Conclusion that Others Desire to Join

The P. Johnson Declaration does not even assert, let alone proffer evidence, that anyone else desires to opt-in. Because Plaintiff's and Newman's Declarations share this same fatality, Plaintiff is left with only her attorneys' unsupported assertions on this key requirement for conditional certification. Because an attorney's unsupported assertions is insufficient to support conditional certification,[39] the Court should deny Plaintiff's motion on this ground alone.

> #### 2. P. Johnson Failed To Account for a Key Aspect of the Data that Forms the Basis for His Conclusions

P. Johnson's Declaration shows that approximately 10% of those employed by the Campaign were a select group, paid on average approximately twice what other Campaign

---

[37] The assertion in Plaintiff's Motion, at 6-7, that Newman, in her Declaration, "voice[d] her willingness to opt in," is simply false. There is no such statement in Newman's Declaration.

[38] *See Kessler*, 2007 U.S. Dist. LEXIS 102490, at *8 (M.D. Fla. Apr. 26, 2007), *affirmed by, adopted by, motion denied by*, 2007 U.S. Dist. LEXIS 38276 (M.D. Fla. May 25, 2007) (The plaintiff proffered his own affidavit and that of one other person who expressed an interest in joining the suit. This Court denied conditional certification because the affidavits failed to provide specific facts supporting the plaintiff's belief that others desired to join.). *See also Sandate v. Makotek, LLC*, No. 6:06-cv-601, 2006 U.S. Dist. LEXIS 70596, *6-7 (M.D. Fla. Sept. 28, 2006) (affirming Magistrate Judge's recommendation to deny motion for conditional certification where plaintiff failed to show that any similarly situated employee was interested in joining the suit, except for one who had filed a consent to join).

[39] *Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir. 1983).

staffers were paid.  While P. Johnson does not discuss this group,[40] we know they were different than the others both because of their higher pay and because (according to P. Johnson) their employment **continued after** the election.  The pay of women in this select group was 99% of the pay of men in this group.  Even though pay of men and women in this group was nearly identical, for reasons explained below, including this different group of employees in P. Johnson's analysis **corrupted his calculations** and **led to a mistaken conclusion**.

A logical analysis of the data exposes this flaw.  The analysis works backwards from Figure 2 of P. Johnson's report, Doc. 34-4, page 11 (all references to "Figures" are to P. Johnson charts that exclude what he refers to as "key staff and advisors").[41]  Figure 2 shows that staffing numbers dropped approximately 90%, from 186 in November 2016 (when the election took place), to 18 in December 2016 (after the election).  The next step is to look at the mean compensation data in Figure 3, on page 12.  Figure 3 shows that for the 18 who remained after the campaign ended, monthly compensation averaged $8,807 for women, and $8,902 for men.  In earlier months when the campaign was fully staffed, Figure 3 shows that average compensation varied, nearly always between $3,000 and $5,000.  So, during the campaign, when approximately ten times as many people were employed, average compensation was about one-half of average compensation after the campaign ended; average compensation of the few who remained employed after the election was nearly double the average for the larger group employed during the campaign.

The P. Johnson Declaration does not offer any other information about the 18 employed after the campaign ended, such as who they were, when they were hired, or why their average

---

[40] To be clear, we are not referring to the group that P. Johnson refers to as "key staff and advisors," which he has discussed separately.

[41] As mentioned above, for present purposes, we assume – without confirming or conceding – the veracity of P. Johnson's understanding of the underlying data.

pay was approximately two times the average pay of the more complete group of Campaign staffers.

The next step in the logical analysis is to note that 15 of these high earners were men, and only 3 were women, a 5-to-1 ratio.  This does nothing to support Plaintiff's EPA claim, because the women in this group, on average, earned 99% of what the men earned.  But it does mean that among this group, a high percentage of the total employee compensation was paid to men ($133,523 compared to $26,421 to women, in December 2016, according to Figure 2).

The next step is to examine the effect of including these 18 relatively highly compensated, and predominantly male, employees in the analysis of average wages for the larger number employed during the campaign.  Among employees generally, the ratio of men to women (according to P. Johnson's data) was approximately 2-to-1.  The ratio was much higher, 5-to-1, among the 18 highly-compensated post-election employees.  Therefore, even though average compensation among the 18 was almost identical for men and women, the inclusion of the 18 highly-compensated post-election employees with the pre-election campaign employees, works to significantly increase the average monthly compensation for men much more than for women.

To see the actual effect caused by inclusion of the 18 highly-compensated post-election employees with those employed only during the campaign, we removed them from the May-November data in P. Johnson's Figure 2 and Figure 3, thereby allowing comparison of average wages of the men and women who were employed only during the campaign, and not after; more specifically, we reduced the "Employee Count" in Figure 2, for each month, by 3 women and 15 men, and we reduced the "Total Employee Compensation" in Figure 2, for each month, by

$26,421 for women (the amount earned by the 3 women in December) and by $133,523 for men

(the amount earned by the 15 men in December).  Here are the results:

### Phillip Johnson Figure 2, with His Exclusion of "Key Staff and Advisors" and with High Earners Removed

|  |  | Employee Count | | Total Employee Compensation | |
|---|---|---|---|---|---|
|  | Month (2016) | Female | Male | Female | Male |
| 1. | May | 15 | 30 | 38,536 | 74,562 |
| 2. | June | 16 | 34 | 48,002 | 101,744 |
| 3. | July | 18 | 40 | 53,220 | 142,540 |
| 4. | August | 37 | 76 | 115,798 | 278,707 |
| 5. | September | 51 | 92 | 220,985 | 381,149 |
| 6. | October | 63 | 110 | 276,673 | 493,417 |
| 7. | November | 62 | 106 | 140,800 | 236,757 |

Next, we made similar adjustments to P. Johnson's Figure 3, i.e., we calculated mean

compensation for men and women for each month, the differences between men and women, and

the percent differences, with the 18 highly-compensated post-election employees removed from

the data.  Here are those results:

### Phillip Johnson Figure 3, with His Exclusion of "Key Staff and Advisors" and with High Earners Removed

### Mean Compensation

|  | Month (2016) | Female | Male | Female - Male | Female % of Male |
|---|---|---|---|---|---|
| 1. | May | 2,569 | 2,485 | +84 | 103% |
| 2. | June | 3,000 | 2,992 | +8 | 100+% |
| 3. | July | 2,957 | 3,563 | -606 | 83% |
| 4. | August | 3,130 | 3,667 | -537 | 85% |

| | Month (2016) | Female | Male | Female - Male | Female % of Male |
|---|---|---|---|---|---|
| 5. | September | 4,333 | 4,143 | +190 | 105% |
| 6. | October | 4,392 | 4,486 | -94 | 98% |
| 7. | November | 2,271 | 2,234 | +37 | 102% |
| | May-November | 3,766 | 3,854 | -88 | 98% |

The revised Figure 3 shows that when adjustments are made to eliminate the effect of including the 18 highly-compensated post-election employees, the average monthly wage for women is $3,766, and for men is $3,854, i.e., **women in this group earned 98% of what men earned**.

In other words, the data actually shows that there are two subsets of workers:  one group that continued employment after the campaign ended (which consisted of more highly compensated workers), and one group who worked only through the end of the campaign (and who were paid only about half as much as the highly compensated group).  Significantly, the data shows that in **both** groups, women earned almost exactly the same amount as men (women earned 99% of what men earned in the more highly-compensated group, and women earned 98% of what men earned in the less highly-compensated group).

**3.      P. Johnson's Declaration Provides No Other Support for a Conclusion that Women Were Paid Less than _Similarly Situated_ Men**

Even if P. Johnson's analysis of the data was not flawed, his analysis provides no support for a conclusion that women were paid less then **similarly situated** men.  P. Johnson's conclusions are based solely on data for average monthly compensation.  Yet P. Johnson opines that computation of overall average differences in compensation is just the "initial step" in analysis of pay disparities, which "can be suggestive of" whether there is a discriminatory effect. Doc. 34.4, at p. 5.  The next step, according to P. Johnson, would be to look at employees who

15

are **similarly situated**, and a further step would be **to control for "multiple" non-discriminatory factors**. *Id*.[42]  P. Johnson does not claim to have done **any** of those things, and the data he provides is limited to monthly average compensation.

This would be bad enough if the issue before the Court was simply whether there was discrimination in hiring, promotion or other similar aspects of employment.  Here, however, Plaintiff is seeking conditional certification of an EPA claim, where Plaintiff is specifically tasked with showing that women were paid less than men for substantially equal work, and where the similarly situated analysis focuses on the primary job duties.  P. Johnson's Declaration, looking only at average compensation – without consideration of whether men and women are performing substantially equal work – **does not speak at all to the issue at hand**.

The report provides, at most, assuming the data and P. Johnson's analysis of the data is otherwise valid, monthly average wages for all men and all women employed by the Campaign.  The report does not provide **any** information concerning, or analysis of, job duties.  Without that information, there is nothing in the report that could support a conclusion that any woman was paid less than any man for **substantially similar work**, much less that there is a class of similarly situated women who were paid less than men for substantially similar work.  Simply put, P. Johnson's Declaration clearly does not support Plaintiff's EPA claim, which requires a showing that men and women were paid differently for substantially similar work.

### C.    Miscellaneous other Assertions

---

[42] We understand, of course, that in an EPA case the burden is sometimes on the employer to establish that pay disparities are based on factors other than gender, but that burden arises only after the plaintiff establishes that women were paid less than men for substantially equal work.

16

In addition to the above, Plaintiff's makes a plethora of other assertions that should be ignored because they are not supported by record evidence, are irrelevant or are hearsay.[43]  As just a few examples, Plaintiff cites comments attributed to President Trump in a 2011 book, argues without support that pay policies were established by top leadership, argues that because staff was "lean" all staff members must have been subject to the same policies, offers the purely conclusory assertions that "all paid staff . . . performed work that required substantially similar skill," and cites reports of unequal pay before the time period covered by the proposed class.[44]

## V.   Plaintiff's Proposed Notice Is Improper

For the reasons explained above, the Court should deny Plaintiff's motion, and should not authorize notice to putative class members.  Assuming the Court authorizes notice, because of numerous disagreements about Plaintiff's proposed notice and procedures, the Court should order the parties to meet and confer regarding the content of the notice to putative class members, notice procedures, and the definition of the group to whom it should be sent.[45]

Alternatively, the Court should reject the notice proposed by Plaintiff because it conflicts with applicable case law and encourages improper solicitation.  First, the notice should be sent only to those who worked for the campaign on or after the date three years prior to the date of mailing the notice.[46]  Second, Plaintiff should not be permitted to notify class members of this

---

[43] Hearsay statements are not admissible evidence, and therefore should be stricken from filings that purport to proffer evidence.  *See Edwards v. Nat'l Vision, Inc.,* 568 F. App'x 854, 858 (11th Cir. 2014) (affirming trial court's decision to strike statements of inadmissible hearsay).  A list of hearsay statements that should be stricken is attached as Exhibit 2.

[44] Plaintiff's motion at 5-7, 12.

[45] *See Smith v. AKAL Sec. Inc.*, No. CV-18-01117-PHX-SMB, 2019 U.S. Dist. LEXIS 73517 (D. Ariz. May 1, 2019) (ordering parties to meet and confer concerning content of notice); *Garcia v. Vasilia*, No. H-17-1601, 2018 U.S. Dist. LEXIS 124640, at *22 (S.D. Tex. July 25, 2018) (same).

[46] *See Abdul-Rasheed v. KableLink Commc'ns LLC,* No. 8:13-cv-879-T-24MAP, 2013 U.S. Dist. LEXIS 159632, at *9 (M.D. Fla. Nov. 7, 2013) (providing that notice should only be sent to putative class members who worked for defendant after three years prior to the date of mailing the notice)); *accord Gutescu v. Carey Int'l, Inc.,* 2003 WL 25586749, at *17-18 (S.D. Fla. July 21, 2003); *Rosales v. El*

action via phone call and text messages.  The Supreme Court expressly identified the potential

for abuse as a reason for court-supervised notice.[47]  Allowing Plaintiff or her counsel to

communicate with putative class members by phone or text message would open a wide door for

potential abuse.[48]  Notably, Plaintiff cites no court decision allowing notice by phone, and only

two decisions from outside the Eleventh Circuit allowing notice by text message.  Third, the

Court should reject Plaintiff's request that the Court approve not only notice, but also a reminder

notice.  "Sending a putative class member notice of this action is informative; sending them a

"reminder" is redundant. . . .  [A] reminder 'would be at odds with the purpose for judicial

notice – which is simply to inform potential class members of their rights. Once they receive that

information, it is their responsibility to act as they see fit.'"[49]

Fourth, "notice to the class should not appear to be weighted in favor of one side or the

other."[50]  Therefore, the notice must be revised to present a neutral and balanced description of

the lawsuit.  Fifth, the notice should fully apprise putative class members of the consequences of

a decision to opt in, including the possibility that they would be required to pay a portion of

Defendant's attorneys' fees and costs.[51]  Furthermore, Plaintiff's proposed Notice fails to apprise

the putative class members that they may be required to participate in discovery and to testify at

---

*Michoacana LLC*, No. 2:15-CV-711-FtM-38CM, 2016 U.S. Dist. LEXIS 167686 (M.D. Fla. Oct. 20, 2016), *adopted by*, 2016 U.S. Dist LEXIS 166572 (M.D. Fla. Dec. 2, 2016).
[47] *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170-71 (1989).
[48] *See* Rules 4-7.18 and 4-7.19 of the Rules Regulating The Florida Bar, which prohibit contacting prospective clients by telephone and place substantial restrictions on written solicitations.
[49] *Palma v. Metropcs Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2014 U.S. Dist. LEXIS 7787, at *8 (M.D. Fla. Jan. 22, 2014) (citations omitted).
[50] *See Palma v. Metropcs Wireless, Inc.*, No. 8:13-cv-698-T-33MAP, 2014 U.S. Dist. LEXIS 7787, at *3 (M.D. Fla. Jan. 22, 2014).
[51] *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998) (court may order FLSA plaintiff to pay attorneys' fees and costs of prevailing defendant); *accord Kreager v. Solomon & Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985).

trial.[52]  Sixth, the Court should strike all inflammatory statements.[53]  For the Court's

convenience, a redlined version of the proposed Notice and Consent to Join form, reflecting

Defendant's proposed modifications, with explanatory comments in the margins, is attached as

Exhibit 3.  A "clean" copy of that Exhibit, with redlining "accepted," is attached as Exhibit 4.

## VI.    Conclusion

Plaintiff claims that she was paid less than men for substantially similar work.  In seeking

conditional certification, Plaintiff has the burden of proffering evidence sufficient to establish

**both** that (1) there are similarly situated individuals, and that (2) similarly situated individuals

desire to opt in.  Plaintiff only submits conclusory allegations, which are insufficient.

As explained above, Plaintiff has not proffered any **evidence** of any similarly situated

putative class members.  Specifically, she has proffered no evidence of other women who were

paid less than men for substantially similar work.  Allegations in Plaintiff's Declaration and the

Newman Declaration of less pay for similar work are purely conclusory assertions without

evidentiary support.  The P. Johnson Declaration is based on a flawed statistical analysis and, in

any case, proffers only average compensation data, without any data that would allow

comparison of men and women holding substantially similar jobs.

In any case, none of the declarations assert, even in conclusory fashion, that anyone else

desires to opt in.

---

[52] *See Cox v. Appliance Direct, Inc.*, No. 6:08-cv-216-Orl-22DAB, 2008 U.S. Dist. LEXIS 65841, at *2-3 (M.D. Fla. Aug. 1, 2008) (agreeing that notice should be revised to state "If you do opt-in you may be required to respond to written questions and requests for documents, sit for depositions and/or testify in court").

[53] *See Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (ST), 2016 U.S. Dist. LEXIS 163171, at *51-52 (E.D.N.Y. Nov. 23, 2016) (directing plaintiff to strike inflammatory text from FLSA notice); *Cruz v. Lawson Software, Inc.*, No. 08-5900 (MJD/JSM), 2009 U.S. Dist. LEXIS 130882, at *33 (D. Minn. Mar. 31, 2009) (text in FLSA notice should not be inflammatory); *Smith*, 2019 U.S. Dist. LEXIS 73517 (D. Ariz. May 1, 2019) (in response to defendant's argument that proposed notice was inflammatory, agreeing that changes to notice were needed and ordering parties to meet and confer).

Because Plaintiff has proffered no evidence to support a finding of similarly situated employees, who desire to opt in, the Court should deny Plaintiff's Motion.

Respectfully submitted,

FORD**HARRISON** LLP

/s/ Dawn Siler-Nixon
Dawn Siler-Nixon
Florida Bar No. 993360
Dsiler-nixon@fordharrison.com
Tracey K. Jaensch
Florida Bar No. 907057
tjaensch@fordharrison.com
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Charles J. Harder
charder@harderllp.com
*Pro Hac Vice Admitted*
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
Telephone: (424) 203-1600

Attorneys for Defendants
Donald J. Trump
Donald J. Trump For President, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send a notice of electronic filing upon the following:

Brian W. Warwick
bwarwick@varnellandwarwick.com
Janet Varnell
jvarnell@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL 32158-1870

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Ste 1000
Washington, D.C. 20036

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway
Suite 1070
Oakland, CA 94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA 94612

/s/ Dawn Siler-Nixon

Attorney

# EXHIBIT 1

| Page | Conclusory Statements |
|------|----------------------|
| 2 | "Plaintiff has provided substantial evidence demonstrating that, at all relevant times, Defendant DJTFP maintained a common policy, uniformly applicable to all members of the putative collective, of paying female employees less than their male counterparts for the same or similar work." |
| 3 | "Plaintiff presents anecdotal and documentary evidence of widespread gender-based pay discrimination, which demonstrates that DJTFP's discriminatory compensation policies applied to all members of the proposed collective, regardless of their geographical locations or official job titles." |
| 5 | "Plaintiff[] . . . has provided ample factual support for her allegations that the pay discrimination she experienced was the result of a common discriminatory scheme which affected all female Campaign staffers." |
| 6 | "*[A]ll* of DJTFP's paid staffers were members of a select group of "senior" staffers, expected to demonstrate similar high levels of skill and dedication, report up in the same hierarchies, and follow the same Campaign-wide policies and procedures."  (emphasis in original) |
| | "[O]n information and belief, every paid DJTFP staffer was required to sign an identical nondisclosure agreement as a condition of employment."  (emphasis added) |
| | "[A]lmost all of DJTFP's paid staffers were tasked generally with coordinating the Campaign's voter outreach via campaign field offices and/or the media." |
| 7 | "Ms. Manigault Newman believes that Defendant DJTFP paid her less than male employees who performed the same or similar job duties under similar working conditions." (emphasis added) |
| | "[A]ll paid staff of DJTFP performed work that required substantially similar skill, effort and responsibility." |
| | "Plaintiff has amply demonstrated that she is similarly situated to both members of the putative collective and their male counterparts with respect to job duties and expectations." |
| | "Throughout the 2016 election cycle, Plaintiff was significantly underpaid compared to many of her male Campaign counterparts." |
| | "This compensation was considerably lower than that paid to male Campaign staff who had the same responsibilities as she did, and lower even than male Campaign staff who had fewer responsibilities than she did." |
| | Statements about duties and wages of Sidney Bowdeidge, Matt Ciepielowski, Austin Browning, David Chiokadze and Tony Ledbetter. |
| 11 | "Given the fact  that, as described *supra*, all DJTFP employees were required to sign restrictive nondisclosure agreements as a condition of employment, it is likely that other women wished to challenge the Campaign's discriminatory pay policies but were prevented from doing so due to fear of professional or legal retaliation." |
| 12 | "DJTFP's knowledge of the pervasive gender pay disparity among its employees is indisputable, given that campaigns are required to track disbursements and report them to the FEC." |

| | |
|---|---|
| | "[T]hroughout the campaign, the discriminatory pay policies described above were established, enforced, and encouraged by DJTFP's top leadership, including then-candidate Trump himself." |
| 13 | "EXHIBIT[] C . . . [is] the declaration of a similarly situated DJTFP staffer, Omarosa Manigault Newman . . . ." |
| | "These declarations [Doc 34-3, Doc. 34-4 and Doc. 34-5], along with the other evidence provided by Plaintiff, meet or exceed what courts in this Circuit and throughout the country have deemed sufficient for conditional certification." |
| | "[A]ll paid Campaign staffers were required to sign restrictive nondisclosure agreements." |
| | "[T]he Campaign's standard NDA is indefinite in duration and geographic scope, contains an exceedingly broad non-disparagement clause, applies to third-party individuals and commercial entities not directly connected with the Campaign, and threatens violators with significant legal consequences." |
| 14 | NDAs procured by the Campaign "serve as a serious deterrent to women wishing to come forward with allegations of pay discrimination . . . ." |
| | "It is likely that, after . . . notice is issued and potential collective members are informed that other, similarly situated employees are pursuing their legal rights under the EPA, more women will feel empowered to opt in." |
| | "Plaintiff has also provided evidence that all of DJTFP's offices constitute a single "establishment" under the EPA." |
| | "Plaintiff and members of the proposed collective were subject to a common practice or scheme on the part of DJTFP's leadership to pay female employees significantly less than their male peers, a scheme which DJTFP effectuated through centralized Campaign policies and decision-making. Policies and decision-making emanated from Trump Tower, which served as the campaign's headquarters." |
| | "Plaintiff and members of the proposed collective were all primarily involved in voter engagement efforts on behalf of the Campaign, meaning that there was 'significant functional interrelationship between the work of the employees in the various locations.'" |
| 15 | "Plaintiff has shown that all of DJTFP's offices across the U.S. are part of the same establishment under the EPA." |
| 16 | "Defendant DJTFP is clearly an "enterprise" as defined by the FLSA . . . ." |
| 17 | "[V]oter engagement efforts [of members of the proposed collective] involved both regularly using the instrumentalities of interstate commerce and, in many cases, interstate travel." |
| | Voter engagement efforts of members of the proposed collective "included, among other things, crafting Campaign communications to be disseminated nationwide via TV, radio, and social media; phone-banking and overseeing phone-banking, which consisted of making phone calls to voters nationwide; travelling to, setting up, and managing Campaign 'field' offices in multiple states; emailing Campaign workers and voters nationwide; and distributing and overseeing the distribution of Campaign "collateral" such as yard signs and bumper stickers, which were shipped from state to state throughout the election." |

| 19 | "Plaintiff has introduced ample evidence that the she performed substantially equivalent work to members of the proposed collective for purposes of the EPA, and that she and all of the members of the proposed collective are "similarly situated" with regard to their EPA claims." |

# EXHIBIT 2

| Page | **Hearsay** |
|---|---|
| 5 | "**[P]ress reports reveal that**, throughout the 2016 campaign cycle, the Trump Campaign's paid staff was a small and exclusive group. *See, e.g.*, Matt Viser, "Donald Trump's Campaign Pays Women Less Than Men," *The Boston Globe*, 4 June 2016, *available at* https://www.bostonglobe.com/news/politics/2016/06/04/donald-trump-campaign-payswomen-less-than-men/V1u0v2MUJiHqhvc5C0W5dO/story.html (noting that the Trump Campaign employed only 113 paid staffers, defined as staff making at least $1,000 per month, in April 2016); Reid Wilson, 'Trump lags behind Clinton in campaign staff, pollsters,' *The Hill*, 22 July 2016, *available at* https://thehill.com/blogs/ballot-box/presidential-races/288867-trump-lags-behind-clinton-in-campaign-staff-pollsters (reporting that 'Trump's campaign was paying salaries to just 68 staffers as of June 30, 2016.')." (emphasis added) |
| 6 | "[T]the Trump Campaign **has said** that it hopes to recruit and train two million volunteers for the 2020 election. *See* Michael Wilner, '"No centrist lane" in Democratic primary, Trump campaign says,' *McClatchy*, 25 April 2019, available at https://www.mcclatchydc.com/news/politics-government/white-house/article229459319.html."  (emphasis added) |
| | "[O]n information and belief, every paid DJTFP staffer was required to sign an identical nondisclosure agreement as a condition of employment. *See, e.g.*, https://www.washingtonpost.com/politics/2019/02/21/trump-campaign-loved-ndas-an-ex-staffer-wants-nullify-them-with-class-action/?utm<sub>a</sub>term=.12315e43664a (noting that, **in 2016, then-candidate Trump 'expressed** his affinity for NDAs and his confidence in the ones he's doled out to his campaign staffers')."  (emphasis added). |
| 10 | "Several other studies of the Campaign's publicly available compensation data have confirmed the substance of Dr. Johnson's preliminary findings. For instance, the Boston Globe conducted an in-depth analysis of the Campaign's April 2016 Federal Election Commission disclosures, and discovered that the women who worked for the Campaign that month made an average of about $4,500, while the men made nearly $6,100-an astonishing thirty-five percent disparity. *See* Matt Viser. 'Donald Trump's Campaign Pays Women Less Than Men,' ***The Boston Globe***, 4 June 2016, *available at* https://www.bostonglobe.com/news/politics/2016/06/04/donald-trump-campaign-payswomen-less-than-men/V1u0v2MUJiHqhvc5C0W5d0/story.html. (emphasis added). |
| | "This pay disparity was evident even when researchers took into account only the Campaign's highest-paid senior staff. For instance, the Boston Globe study cited above found that, of the 15 highest-paid employees, only two were women. Id. Likewise, an analysis of the Campaign's May 2016 financial disclosures revealed that '[n]early all of Trump's highest-paid senior staffers are men: Campaign manager Corey Lewandowski, deputy campaign manager Michael Glassner, chief policy adviser Sam Clovis, and director of social media Dan Scavino were each paid between $12,500 and $20,000 for April and May.  The two female senior staffers - communications director Hope Hicks and national spokeswoman Katrina |

| | |
|---|---|
| | Pierson - were paid $7,700 and $10,486, respectively.' See Laura Basset, 'Donald Trump's Campaign Staff Is 75 Percent Men,' The Huffington Post, 25 May 2016, available at https://www.huffpost.com/entry/donald-trump-male-staff-75ana5745b564e4b055bb1170c0de."  (emphasis added). |
| 11 | "Notably, the gender pay gap observed in these studies continued well into President Trump's tenure in the White House. See Josh Delk and Megan R. Wilson, 'White House releases salaries of top Trump staffers,' The Hill, 30 June 2017, available at https://thehill.com/homenews/administration/340302-white-house-releases-salaries-of-top-trump-staffers (showing that of the twenty-two highest-paid White House employees, only six were women)."  (emphasis added). |
| | "The widespread nature of the EPA violations at issue is further demonstrated by the fact that similar cases have been filed against DJTFP in the past. For instance, in January 2016, an Iowa field organizer named Elizabeth Mae Davidson accused the Trump Campaign of sex discrimination, claiming that men were paid more than women for doing the same work. In an interview, Ms. Davidson said she was paid $2,000 a month and was classified as part-time because she also had a job as a paralegal. However, another district representative, Marc Elcock, was paid more, even though he, too, had a day job. See Trip Gabriel, "Donald Trump Field Organizer Accuses Campaign of Sex Discrimination," The New York Times, 31 Jan. 2016, available at https://www.nytimes.com/2016/02/01/us/politics/trump-field-organizer-accuses-campaign-of-sex-discrimination.html. According to public filings, several men who held the same title as her, including Mr. Elcock, were paid $3,500 to $4,000 a month. Id. Though Ms. Davidson received a right-to-sue letter from the Equal Employment Opportunity Commission, she ultimately opted not to pursue her case against the campaign for undisclosed reasons. See Ryan J. Foley, 'Iowa woman drops gender bias case against Trump campaign, lawyer says,' The Des Moines Register, 3 Jan. 2018, available at https://www.desmoinesregister.com/story/news/crime-and-courts/2018/01/03/iowa-woman-drops-gender-bias-case-against-trump-campaign-lawyer-says/1000565001/."  (emphasis added). |
| 12 | "Defendant Trump has repeatedly made light of the issue of equal pay and has expressed particular disdain for working mothers. For instance, he justified lower pay for women in an interview with Mika Brzezinski for her 2011 book, Knowing Your Value, saying 'an employer could say 'she's not giving me 100 percent. She's giving me 84 percent, and 16 percent is going towards taking care of children.'" See Christina Cauterucci, 'The Trump Campaign Pays its Few Female Employees Much Less than its Male Ones,' Slate, 26 May 2016, available at https://slate.com/human-interest/2016/05/trump-s-campaign-pays-its-few-female-employees-much-less-than-its-male-ones.html. Defendant Trump has also remarked that pumping breast milk in the office is 'disgusting' (see id.); that pregnancy is 'an inconvenience' for an employer (see Basset); and that he opposes the idea of a law requiring employees to pay women and men the same (id.)." (emphasis added). |
| 16 | "DJTFP's very own reelection **campaign Manager has said**: 'We're closing in on selling our one millionth red MAGA [Make America Great Again] hat. You |

|  | know those are 45 bucks a piece. You do the math there really quick, it's $45 million. So those kind of things-this president has changed the game in the way **merchandise**, rallies, the entire experience of being part of the political movement. He's changed it.' *See* David Brennan, 'Donald Trump Campaign Manager Says Nearly 1 Million MAGA Hats Sold, and $45 Million Made,' Newsweek, 29 April 2019, *available at* https://www.newsweek.com/donald-trump-campaign-maga-hats-donations-brad-parscale-2020-1408087." (first emphasis added, second emphasis by Plaintiff). |

# EXHIBIT 3

~~THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION~~

**FordHarrison:**   As pointed out by one of the cases Plaintiff herself cites as supporting her proposed notice procedures, using the Court's name as the heading for the notice may "mislead class members into thinking that the Form was issued by the Court." *Alequin v. Darden Rests., Inc.,* No. 12-61742-CIV-ROSENBAUM/SELTZER, 2013 U.S. Dist. LEXIS 108341, at *5 (S.D. Fla. July 31, 2013)

## Notice of Equal Pay Act lawsuit
## against Donald J. Trump for President, Inc.
## ("DJTFP") on behalf of female employees

### A court authorized this notice. This is not a solicitation from a lawyer.

**TO:**    All women employed by Defendant Donald J. Trump for President, Inc. ("DJTFP") from [date of mailing of notice] ~~May 13, 2016~~ to the present.

**FordHarrison:**   As explained at page 17 (footnote 46) of Defendant's opposition to certification, notice should be sent only to those employed after a date three years prior to mailing of notice.

**DATE:**    , 2019

**RE:**    ~~Equal Pay Act ("EPA") collective action lawsuit against DJTFP alleging that DJTFP discriminated against female employees nationwide by systematically paying them less than male employees for substantially similar work.~~
Lawsuit making allegation, denied by DJTFP, that DJTFP violated the Equal Pay Act ("EPA")

**FordHarrison:**   Plaintiff's proposed reference line creates an unbalanced impression by stating only Plaintiff's allegations.  It should be stated in neutral terms.

*Alva Johnson v. Donald J. Trump, et al.,* Case No. 8:19-cv-00475-WFJ-SPF, pending in the United States District Court for the Middle District of Florida.

### 1.    Why did I get this notice?

The purpose of this notice is to inform you of the existence of a collective action lawsuit against DJTFP. The Court has determined that one or more employees of DJTFP ~~that you~~ may be similarly situated to Alva Johnson, the individual who brought this case. The Court has ordered that this notice be sent to you, so that you can decide whether to join the lawsuit.

**FordHarrison:**   As proposed by Plaintiff, this is not accurate.  The Court, at this stage, will not have made any determination about any individual.

The Court has not ruled on the merits of the lawsuit. The Court has only ruled that it is important that you be notified of the existence of the lawsuit and your opportunity to join the lawsuit, within 60 days from the date of this notice.~~The Court has only ruled that it is important that you be notified of the existence of the lawsuit so that you can protect your rights from expiring by joining the lawsuit.~~

**FordHarrison:**   The last sentence of Plaintiff's proposed Section 1 creates an unbalanced impression by its reference to "protect[ing] your rights."

### 2.    What is this lawsuit about?

Plaintiff Alva Johnson alleges that she and similarly situated female employees were paid less than their male counterparts for performing substantially similar work.  DJTFP disputes these allegations and contends that its compensation policies were lawful.  Plaintiff seeks, among other relief, front-pay, back wages, liquidated damages (in an amount equal to back wages) or interest, attorneys' fees, and litigation costs, for herself and other similarly situated employees.   DJTFP denies that Plaintiff or any member of the proposed class is entitled to additional pay, or to any of the other damages and relief Plaintiff claims.~~Plaintiff Alva Johnson alleges that she and similarly situated female employees nationwide were paid less than their male counterparts for performing substantially similar work, and that this~~

pay disparity was the result of a common scheme carried out by DJTFP's management and upheld via DJTFP's centralized decision-making and policies. Plaintiff seeks, among other relief, front-and back-pay, liquidated damages (in an amount equal to back wages) or interest, attorneys' fees, and litigation costs for herself and other similarly situated employees.

For more information, please visit [insert website].

1

**FordHarrison:** Plaintiff's proposed Section 2 includes an inflammatory reference to a "scheme," and creates an unbalanced impression by stating both Plaintiff's theory of liability and the damages sought, before mentioning Defendant's denial of liability, and by failing to state that Defendant denies that damages are owed.

**FordHarrison:** Defendant has no objection to this term, as long as the website is the website of a claims administrator, and as long as the content of the website is determined by agreement of the parties or by Court Order.

~~DJTFP disputes these allegations and contends that its compensation policies are lawful.~~

**~~1.    How can I join the lawsuit?~~**

~~If you are a potential collective member as defined on page 1, you may choose to join this suit (that is, you may "opt in"). **To opt in, you must submit a "Consent to Join" form by [insert date 90 days from date of mailing]. You can submit the Consent to Join form on the web at [website], by email to [email address], by fax to [fax #], or by mail to [mailing address]. To be timely, the form must be postmarked or received by [insert date 90 days from date of mailing]. A Consent to Join form and stamped envelope are enclosed with this notice.**~~

**~~2.~~    What happens if I join the lawsuit?**

If you file a Consent to Join form, you will become a party to Ms. Johnson's lawsuit.  This means that you will be bound by all orders of the Court, and will be barred from pursuing in any other lawsuit or in any other forum EPA claims similar to those asserted in the lawsuit.  You will be represented by Ms. Johnson and her counsel, and authorize them to make decisions on your behalf regarding the lawsuit, including any settlement.  You may be required to participate in discovery and trial, which may include testifying at a deposition or in court, or both, and providing documents and information, through your lawyers, to DJTFP.  If DJTFP successfully requests that the Court order the Plaintiffs to pay DJTFP's attorneys' fees and/or costs, you could be required to pay a share of those attorneys' fees and costs. ~~If you file a Consent to Join form, you agree that the Court's orders will apply to you, whether they are favorable or unfavorable (that is, whether the Plaintiff wins her case against DJTFP or not). You also agree that you will be represented by the Plaintiff and her counsel and authorize them to make decisions on your behalf regarding the lawsuit, including any settlement. These decisions and agreements will then be binding on you.~~ Plaintiff's attorneys will not charge you directly for their work in this case. If there is no recovery (*i.e.*, if Plaintiff recovers no money from DJTFP), you will not have to pay Ms. Johnson's ~~the~~ attorneys for any of their work. If there is a recovery, Plaintiff's attorneys will receive whatever attorneys' fees the Court orders. Those fees may be subtracted from the recovery obtained from DJTFP, or they may be paid separately by DJTFP, or they may be a combination of the two.

**~~3.~~    What happens if I do not join the lawsuit?**

If you choose not to join this lawsuit, you will not be affected by any judgment in the lawsuit relating to the EPA claim, whether favorable or unfavorable. However, you will not be able to receive any money that may be recovered in the lawsuit. If you choose not to join this lawsuit, you will have the right to file your own lawsuit.  If you do file your own lawsuit, you will have the right to decide whether or not you want to be represented by an attorney, and you and your attorney would decide what obligations you have concerning payment for your attorney' services.  ~~You may file your own lawsuit and select the attorney of your choice at your own expense.~~

**How can I join the lawsuit?**

If you are female and were an employee of DJTFP between [enter date of mailing of Notice] and the present, and if you were paid less than a male employee who was employed by DJTFP in a position with job duties substantially similar to your duties, then you may choose to join this lawsuit (that is, you may "opt in").  To opt in, you must submit a "Consent to Join" form by [enter date 60 days from date of mailing of notice].  You may submit the Consent to Join form by completing the form and mailing it in

**FordHarrison:**    Comparable text has been included in Defendant's proposed Section 2.  In any case, Defendant's perspective on the case should not be separated out from Plaintiff's description as a single line on the next page.

**FordHarrison:**    Section 3 should be moved.  In essence, Section 3 invites the reader to join the lawsuit, before explaining the implications of doing so.  Section 4, "What happens if I join the lawsuit?" should be relabeled as Section 3, Section 5, "What happens if I do not join the lawsuit?" should be relabeled as Section 4, and Section 3 should be moved, so that it follows the new Section 4, and relabeled as Section 5.  Other proposed changes to this section appear below.

**FordHarrison:**    Plaintiff's proposed Section 4, (which we have argued should be Section 3), does not fully apprise the reader of the implications of opting in.  Also, the parenthetical in the first paragraph of Section 4 suggests a limitation on the extent to which an individual who opts in will be bound by court orders.

**FordHarrison:**    Plaintiff's proposed Section 5, (which we have argued should be Section 4), incorrectly suggests that if an individual chooses not to opt in, and to pursue her own lawsuit, she would be required to be represented by counsel and to incur expenses in connection with such representation.

the enclosed, stamped envelope.  To be timely, the mailing must be post-marked on or before the 60th day from the mailing of this notice.

**5.5.   What happens next?**

The lawsuit will proceed.  It may take many months or years for the lawsuit to reach a conclusion.  It may be resolved by a negotiated agreement between the parties, by a court order dismissing the lawsuit, or by trial.  If you join the lawsuit, Plaintiff's counsel may contact you from time to time, to update you on the status of the lawsuit, or to inform you of actions that you may be required to take.  The lawsuit will proceed toward trial, which could take many months or years. If your contact information changes, and you want Plaintiff's counsel to be able to contact you (e.g., to update you about the case, to send you money from any settlement or judgment, etc.), you may provide your updated contact information to Plaintiff's counsel (whose information is available at www.tzlegal.com and in Section 7, below).

*For more information, please visit [insert website].*

2

**FordHarrison:**     Plaintiff's proposed Section 3 (which we have argued should be Section 5) should be revised, for several reasons.  First, it refers to a definition of "potential collective member," which it states is "on page 1," but there is no such definition.  Second, it affords 90 days for opting in when, as argued in Defendant's opposition to certification, the opt in period should be limited to 60 days.  Third, although the notice contemplates that a stamped envelope will be included, which will afford a simple, cost-free means of opting in, with clear verification (by post-mark) as to whether a consent to join was timely, Section 3 proposes allowing consents to be  made via the web, by email or by fax.  Each of those methods creates a risk of uncertainty as to the timeliness of consent to join.  Because enclosing a stamped envelope affords an opportunity to join without cost or burden, there is no reason to allow other methods that could create uncertainty concerning timeliness.  We note that Plaintiff has cited authority for the proposition that notice may be sent by email; she has not cited any authority for allowing consent to be effectuated by email (or by fax or web).

**FordHarrison:**     Plaintiff's proposed Section 6 assumes the individual has decided to join the lawsuit, and creates a misimpression that the lawsuit will proceed to trial, and that counsel will "be able to contact" someone who joins "to send you money."  Both suggestions suggest an outcome, which in turn suggests that the Court has prejudged the case or made determinations favorable to Plaintiff, and tend to create unjustified expectations, and therefore are improper.

**FordHarrison:**     For reasons explained in Defendant's opposition memorandum, putative class members should not be communicating with Class Counsel.

**7.        Your legal representation if you join**

If you choose to join this suit, you will be bound by decisions of Class Counsel, who are named below.  You also have the right to select and be represented by your own counsel.

If you choose to join this suit, you will be represented by the Plaintiffs through their attorneys. The attorneys are

> **FordHarrison:**   Section 7 should advise putative class members of their right to elect to be represented by counsel of their own choosing.

Hassan A. Zavareei
**Trial Counsel**
Katherine M. Aizpuru
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
**VARNELL & WARWICK, PA**
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

Tanya S. Koshy
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

F. Paul Bland Karla
Gilbride **PUBLIC
JUSTICE, P.C.** 1620 L
Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

If you would like further information about this lawsuit or have questions about the procedure or deadline for filing a Consent to Join form, please contact Plaintiffs' counsel.

> **FordHarrison:**   For reasons explained in Defendant's opposition memorandum, putative class members should not be communicating with Class Counsel.

**8.        This notice has been authorized by the Court.**

This notice and its contents have been authorized by the United States District Court for the Middle District of Florida, Tampa Division, the Honorable William F. Jung presiding. The Court has taken no position regarding the merits of Plaintiff's claims or of DJTFP's defenses.

For more information, please visit [insert website]

3

**Consent To Join Form**

I am a woman who was employed by Donald J. Trump for President, Inc. ("DJTFP") between [date of mailing of notice]May 13, 2016 and the present.

I choose to participate in the lawsuit titled *Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fla.) to recover monetary damages under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I choose to be represented in this action by the named plaintiff and Tycko & Zavareei LLP, Varnell & Warwick, PA, and Public Justice, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees and costs from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against DJTFP, and/or any related entities or persons potentially liable.

Print Name: _____

Signature: _____

**FordHarrison:**        As explained at page 17 (footnote 46 ) of Defendant's opposition to certification, notice should be sent only to those employed after a date three years prior to mailing of notice.

**FordHarrison:**        This clause suggests that damages will be recovered, and thereby that the Court has made such a determination, and creates unjustified expectations by improperly implying that an individual who chooses to participate will recover monetary damages.

**FordHarrison:**        This paragraph onstitutes an unlawful solicitation to join other lawsuits, and should be stricken.

Date: _____

*PRIVILEGED ATTORNEY-CLIENT COMMUNICATION*

**Additional Information Regarding The Consent To Join Form**

~~This form has been completed with your personal, non-work contact information, so that we (your attorneys) can stay in touch to update you regarding the lawsuit's progress, and so that we can give you your share of any money that is recovered (if any) from DJTFP on your behalf.~~ If any of the information below is incorrect, please provide correct information ~~contact us to correct your information (our contact information is~~ below~~)~~.

Name:

Address:

City, State, Zip: _____

Telephone Number(s): _____

E-Mail Address: _____

- ~~This lawsuit asserts Equal Pay Act claims on behalf of female employees of Donald J. Trump for President, Inc. ("DJTFP") who were systematically paid less than their male counterparts for substantially similar work from May 13, 2016 to the present.~~

**FordHarrison:**   The first sentence should be stricken because it is unnecessary, and assumes that putative class members will select Class Counsel as their attorneys. The second should be modified because, for reasons explained in Defendant's opposition, putative class members should not be communicating with Class Counsel.

**FordHarrison:**   This entire bullet should be stricken because it creates an unbalanced impression by stating only Plaintiff's allegations.  In addition, the text from "who were" to the end should be stricken because it implies that the Court has made a determination, and further is inflammatory.

- ~~It is illegal for any employer to retaliate against an individual for exercising his or her rights (such as by participating in this lawsuit, signing or submitting this document, or talking to attorneys about his or her rights).~~

- ~~If you have any questions or wish to update your contact information, please contact Hassan Zavareei or Kate Aizpuru at Tycko & Zavareei LLP by caling (202) 973-0900, or by emailing hzavareei@tzlegal.com or kaizpuru@tzlegal.com. You may also visit [insert website] for more information.~~

- ~~Please feel free to share this form and information with others who may be eligible to participate in this collective action lawsuit.~~

**FordHarrison:**    This statement should be stricken because it is inflammatory, and constitutes an improper solicitation.  There is no allegation of retaliation in this lawsuit.  *See Reese v. Fla. BC Holdings, LLC*, No. 6:17-cv-1574-Orl-41GJK, 2018 U.S. Dist. LEXIS 73343, at *17 (M.D. Fla. Mar. 16, 2018) (FLSA notice should not include reference to retaliation where Plaintiff has not asserted a **retaliation** claim), *adopted in relevant part by*,2018 U.S. Dist. LEXIS 73892 (M.D. Fla. Apr. 30, 2018).

**FordHarrison:**    For reasons explained in Defendant's opposition memorandum, putative class members should not be communicating with Class Counsel.

**FordHarrison:**    This text improperly invites putative class members to serve as Plaintiff's agents in distributing the notice and encouraging others to opt in. Notice should be supervised by the Court, and should be communicated, if at all, only in accordance with the procedures approved by the Court.  Plaintiff should not be permitted to, in effect, deputize other individuals to encourage others to join.

# EXHIBIT 4

## Notice of Equal Pay Act lawsuit
## against Donald J. Trump for President, Inc.
## ("DJTFP") on behalf of female employees

### A court authorized this notice. This is not a solicitation from a lawyer.

**TO:**   All women employed by Defendant Donald J. Trump for President, Inc. ("DJTFP") from [date of mailing of notice] to the present.

**DATE:**   , 2019

**RE:**   Lawsuit making allegation, denied by DJTFP, that DJTFP violated the Equal Pay Act ("EPA").

*Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF, pending in the United States District Court for the Middle District of Florida.

### 1.     Why did I get this notice?

The purpose of this notice is to inform you of the existence of a collective action lawsuit against DJTFP. The Court has determined that one or more employees of DJTFP may be similarly situated to Alva Johnson, the individual who brought this case. The Court has ordered that this notice be sent to you, so that you can decide whether to join the lawsuit.

The Court has not ruled on the merits of the lawsuit. The Court has only ruled that it is important that you be notified of the existence of the lawsuit and your opportunity to join the lawsuit, within 60 days from the date of this notice.

### 2.     What is this lawsuit about?

Plaintiff Alva Johnson alleges that she and similarly situated female employees were paid less than their male counterparts for performing substantially work.  DJTFP disputes these allegations and contends that its compensation policies were lawful.  Plaintiff seeks, among other relief, front-pay, back wages, liquidated damages (in an amount equal to back wages) or interest, attorneys' fees, and litigation costs, for herself and other similarly situated employees.   DJTFP denies that Plaintiff or any member of the proposed class is entitled to additional pay, or to any of the other damages and relief Plaintiff claims.

1

If you file a Consent to Join form, you will become a party to Ms. Johnson's lawsuit. This means that you will be bound by all orders of the Court, and will be barred from pursuing in any other lawsuit or in any other forum EPA claims similar to those asserted in the lawsuit. You will be represented by Ms. Johnson and her counsel, and authorize them to make decisions on your behalf regarding the lawsuit, including any settlement. You may be required to participate in discovery and trial, which may include testifying at a deposition or in court, or both, and providing documents and information, through your lawyers, to DJTFP. If DJTFP successfully requests that the Court order the Plaintiffs to pay DJTFP's attorneys' fees and/or costs, you could be required to pay a share of those attorneys' fees and costs. Plaintiff's attorneys will not charge you directly for their work in this case. If there is no recovery (*i.e.*, if Plaintiff recovers no money from DJTFP), you will not have to pay Ms. Johnson's attorneys for any of their work. If there is a recovery, Plaintiff's attorneys will receive whatever attorneys' fees the Court orders. Those fees may be subtracted from the recovery obtained from DJTFP, or they may be paid separately by DJTFP, or they may be a combination of the two.

### 4.      What happens if I do not join the lawsuit?

If you choose not to join this lawsuit, you will not be affected by any judgment in the lawsuit relating to the EPA claim, whether favorable or unfavorable. However, you will not be able to receive any money that may be recovered in the lawsuit. If you choose not to join this lawsuit, you will have the right to file your own lawsuit. If you do file your own lawsuit, you will have the right to decide whether or not you want to be represented by an attorney, and you and your attorney would decide what obligations you have concerning payment for your attorney' services.

### 5.      How can I join the lawsuit?

If you are female and were an employee of DJTFP between [enter date of mailing of Notice] and the present, and if you were paid less than a male employee who was employed by DJTFP in a position with job duties substantially similar to your duties, then you may choose to join this lawsuit (that is, you may "opt in"). To opt in, you must submit a "Consent to Join" form by [enter date 60 days from date of mailing of notice]. You may submit the Consent to Join form by completing the form and mailing it in the enclosed, stamped envelope. To be timely, the mailing must be post-marked on or before the 60th day from the mailing of this notice.

### 6.      What happens next?

The lawsuit will proceed. It may take many months or years for the lawsuit to reach a conclusion. It may be resolved by a negotiated agreement between the parties, by a court order dismissing the lawsuit, or by trial. If you join the lawsuit, Plaintiff's counsel may contact you from time to time, to update you on the status of the lawsuit, or to inform you of actions that you may be required to take.

## 7.    Your legal representation if you join

If you choose to join this suit, you will be bound by decisions of Class Counsel, who are named below.  You also have the right to select and be represented by your own counsel.

Hassan A. Zavareei
**Trial Counsel**
Katherine M. Aizpuru
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
**VARNELL & WARWICK, PA**
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

Tanya S. Koshy
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

F. Paul Bland Karla
Gilbride **PUBLIC
JUSTICE, P.C.** 1620 L
Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

## 8.    This notice has been authorized by the Court.

This notice and its contents have been authorized by the United States District Court for the Middle District of Florida, Tampa Division, the Honorable William F. Jung presiding. The Court has taken no position regarding the merits of Plaintiff's claims or of DJTFP's defenses.

3

## Consent To Join Form

I am a woman who was employed by Donald J. Trump for President, Inc. ("DJTFP") between [date of mailing of notice] and the present.

I choose to participate in the lawsuit titled *Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fla.) under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I choose to be represented in this action by the named plaintiff and Tycko & Zavareei LLP, Varnel & Warwick, PA, and Public Justice, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees and costs from any settlement or judgment.

Print Name: _____

Signature: _____

Date: _____

*PROPOSED DOCUMENT - NOT YET AUTHORIZED BY COURT*

### **Additional Information Regarding The Consent To Join Form**

If any of the information below is incorrect, please provide correct information.

Name: _____

Address: _____

City, State, Zip: _____

Telephone Numbers: _____

Email address: _____