# EXHIBIT 1

| Page | Conclusory Statements |
|---|---|
| 2 | "Plaintiff has provided substantial evidence demonstrating that, at all relevant times, Defendant DJTFP maintained a common policy, uniformly applicable to all members of the putative collective, of paying female employees less than their male counterparts for the same or similar work." |
| 3 | "Plaintiff presents anecdotal and documentary evidence of widespread gender-based pay discrimination, which demonstrates that DJTFP's discriminatory compensation policies applied to all members of the proposed collective, regardless of their geographical locations or official job titles." |
| 5 | "Plaintiff[] . . . has provided ample factual support for her allegations that the pay discrimination she experienced was the result of a common discriminatory scheme which affected all female Campaign staffers." |
| 6 | "*[A]ll* of DJTFP's paid staffers were members of a select group of "senior" staffers, expected to demonstrate similar high levels of skill and dedication, report up in the same hierarchies, and follow the same Campaign-wide policies and procedures."  (emphasis in original) |
|  | "[O]n information and belief, every paid DJTFP staffer was required to sign an identical nondisclosure agreement as a condition of employment."  (emphasis added) |
|  | "[A]lmost all of DJTFP's paid staffers were tasked generally with coordinating the Campaign's voter outreach via campaign field offices and/or the media." |
| 7 | "Ms. Manigault Newman believes that Defendant DJTFP paid her less than male employees who performed the same or similar job duties under similar working conditions." (emphasis added) |
|  | "[A]ll paid staff of DJTFP performed work that required substantially similar skill, effort and responsibility." |
|  | "Plaintiff has amply demonstrated that she is similarly situated to both members of the putative collective and their male counterparts with respect to job duties and expectations." |
|  | "Throughout the 2016 election cycle, Plaintiff was significantly underpaid compared to many of her male Campaign counterparts." |
|  | "This compensation was considerably lower than that paid to male Campaign staff who had the same responsibilities as she did, and lower even than male Campaign staff who had fewer responsibilities than she did." |
|  | Statements about duties and wages of Sidney Bowdeidge, Matt Ciepielowski, Austin Browning, David Chiokadze and Tony Ledbetter. |
| 11 | "Given the fact  that, as described *supra*, all DJTFP employees were required to sign restrictive nondisclosure agreements as a condition of employment, it is likely that other women wished to challenge the Campaign's discriminatory pay policies but were prevented from doing so due to fear of professional or legal retaliation." |
| 12 | "DJTFP's knowledge of the pervasive gender pay disparity among its employees is indisputable, given that campaigns are required to track disbursements and report them to the FEC." |

|    | |
|----|-----------------------------------------------------------------------------|
|    | "[T]hroughout the campaign, the discriminatory pay policies described above were established, enforced, and encouraged by DJTFP's top leadership, including then-candidate Trump himself." |
| 13 | "EXHIBIT[] C . . . [is] the declaration of a similarly situated DJTFP staffer, Omarosa Manigault Newman . . . ." |
|    | "These declarations [Doc 34-3, Doc. 34-4 and Doc. 34-5], along with the other evidence provided by Plaintiff, meet or exceed what courts in this Circuit and throughout the country have deemed sufficient for conditional certification." |
|    | "[A]ll paid Campaign staffers were required to sign restrictive nondisclosure agreements." |
|    | "[T]he Campaign's standard NDA is indefinite in duration and geographic scope, contains an exceedingly broad non-disparagement clause, applies to third-party individuals and commercial entities not directly connected with the Campaign, and threatens violators with significant legal consequences." |
| 14 | NDAs procured by the Campaign "serve as a serious deterrent to women wishing to come forward with allegations of pay discrimination . . . ." |
|    | "It is likely that, after . . . notice is issued and potential collective members are informed that other, similarly situated employees are pursuing their legal rights under the EPA, more women will feel empowered to opt in." |
|    | "Plaintiff has also provided evidence that all of DJTFP's offices constitute a single "establishment" under the EPA." |
|    | "Plaintiff and members of the proposed collective were subject to a common practice or scheme on the part of DJTFP's leadership to pay female employees significantly less than their male peers, a scheme which DJTFP effectuated through centralized Campaign policies and decision-making. Policies and decision-making emanated from Trump Tower, which served as the campaign's headquarters." |
|    | "Plaintiff and members of the proposed collective were all primarily involved in voter engagement efforts on behalf of the Campaign, meaning that there was 'significant functional interrelationship between the work of the employees in the various locations.'" |
| 15 | "Plaintiff has shown that all of DJTFP's offices across the U.S. are part of the same establishment under the EPA." |
| 16 | "Defendant DJTFP is clearly an "enterprise" as defined by the FLSA . . . ." |
| 17 | "[V]oter engagement efforts [of members of the proposed collective] involved both regularly using the instrumentalities of interstate commerce and, in many cases, interstate travel." |
|    | Voter engagement efforts of members of the proposed collective "included, among other things, crafting Campaign communications to be disseminated nationwide via TV, radio, and social media; phone-banking and overseeing phone-banking, which consisted of making phone calls to voters nationwide; travelling to, setting up, and managing Campaign 'field' offices in multiple states; emailing Campaign workers and voters nationwide; and distributing and overseeing the distribution of Campaign "collateral" such as yard signs and bumper stickers, which were shipped from state to state throughout the election." |

| 19 | "Plaintiff has introduced ample evidence that the she performed substantially equivalent work to members of the proposed collective for purposes of the EPA, and that she and all of the members of the proposed collective are "similarly situated" with regard to their EPA claims." |