UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
Individually and On Behalf of All Others
Similarly Situated,

      Plaintiff,                                 Case No. 8:19-cv-00475-WFJ-SPF

v.

DONALD J. TRUMP,
In his Individual Capacity and
DONALD J. TRUMP FOR PRESIDENT, INC.,

      Defendants.
_____/

## DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

### I. The Response Mischaracterizes Applicable Law

Plaintiff has falsely represented that *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) "made clear that, in a FLSA collective action, whether putative collective members are 'similarly situated' to the plaintiff is a question that should not be addressed on a motion to dismiss, but should instead be evaluated, at the earliest, on conditional certification." Doc. 39, at 11.[1]  The *Dybach* Court said nothing of the sort.  Instead, *Dybach* established, in the Eleventh Circuit, the principle that a district court may authorize notice to putative class members, but only after "satisfy[ing] itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' . . . ." 942 F.2d at 1562.  *Dybach* did not even mention motions to dismiss, much less state the proposition asserted by Plaintiff.[2]  There is

---

[1] *See also* Doc. 39 at 12, where Plaintiff characterizes this as "binding precedent."
[2] *Dybach* did refer to an earlier case, *Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983), where the court declined to reach the question of whether district courts have authority to order notice to putative class members because plaintiff proffered only unsupported assertions that FLSA violations were

nothing, whatsoever, in *Dybach* to suggest that the pleading requirements that apply generally to all claims, for some reason do not apply to collective action claims.[3]

Plaintiff goes on – again falsely – to contend that "the majority of courts in this circuit have adhered to the Eleventh Circuit's instruction that whether putative collective members are 'similarly situated' should be addressed, at the earliest, on a motion for conditional certification, not on a motion to dismiss." Doc. 39, at 13. As explained, there has been no such "instruction" from the Eleventh Circuit. Further, Plaintiff cites only three district court decisions in support of his contention that this is the majority view, and only one of them actually supports the contention. Plaintiff cites *Tucker*,[4] but that case addressed a motion to compel discovery, and had nothing to do with motions to dismiss. Plaintiff cites *Hyskaj*,[5] which did hold that "dismissal of the collective would be premature," but it did so **only after** first finding that Plaintiff's allegations were "more than conclusory," and therefore sufficient to survive a motion to dismiss.

The one case Plaintiff proffers that stands for the cited proposition is *Puleo*,[6] but there, the Court cited no authority whatsoever in support of its two-sentence analysis. Moreover, *Puleo* was issued in 2008. More recently, in 2017, Judge Bucklew carefully considered *Puleo* and various other authorities, rejected *Puleo*, and followed *Dyer*, one of the cases supporting and cited in Defendant's Motion to Dismiss, and criticized by Plaintiff in her response. *See Poggi v.*

---

widespread and others would join. Like *Dybach*, *Haynes* did not discuss whether the plaintiff's complaint was sufficient to survive a motion to dismiss.

[3] In fact, *Dybach*, at least implicitly, recognized the distinction between the pleading stage and the certification stage, and thereby confirmed (implicitly) that allegations of collective claims are subject to the same pleading standards as other claims. Specifically, by holding that, at the certification stage, the court should "satisfy itself" that "there <u>are</u>" similarly situated employees who desire to opt in, *Dybach* recognized that a plaintiff at the certification stage is required to do more than simply allege specific facts, as required by *Iqbal* and *Twombly*, instead, at the certification stage, she must proffer evidence.

[4] Doc. 39, at 11 (citing *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687 (M.D. Fla. 1994)).

[5] *Id.* (citing *Hyskaj v. New York New York Pizza, LLC*, No. 8:18-cv-00397-MSS-TGW, 2018 WL 7459261 (M.D. Fla. Nov. 14, 2018)).

[6] *Id.* (citing *Puleo v. SMG Prop. Mgmt.*, No. 6:08-cv-86-Orl-22DAB, 2008 WL 3889727 (M.D. Fla. Aug. 20, 2008)).

*Humana, Inc.*, No. 8:17-cv-433-T-24 MAP, 2017 U.S. Dist. LEXIS 53427 (M.D. Fla. Apr. 7, 2017). According to Judge Bucklew, dismissal of collective action claims <u>is</u> proper where a complaint fails to allege sufficient facts in support those claims. Further, according to Judge Bucklew, in an FLSA case alleging a failure to pay minimum wages and/or overtime, the plaintiff must, at a minimum, identify the job titles of the putative class members she claims are similarly situated, and must include "information about the **specific** pay provision that is resulting in the FLSA violation." 2017 U.S. Dist. LEXIS 53427, at *7-8 (emphasis added). While we will not repeat here the arguments in our motion to dismiss concerning *St. Croix v. Genentech*, we write further to point out that *St. Croix* was decided by Judge Covington in 2012, also after *Puleo*, and granted a motion to dismiss collective action claims.

Plaintiff compounds her misrepresentations still further by going on to cite *Dybach* for the proposition that it is "especially improper" to dismiss a collective action where there is a "considerable probability" that the plaintiff will be able to proffer evidence of similarly situated employees who desire to opt in. *Id.* Again, *Dybach* said nothing of the sort. *Dybach* did cite a probability that plaintiff could proffer such evidence as a reason to reach the question of whether a district court may authorize notice to putative class members, but it said nothing at all about the standards for dismissing a collective action. In any case, other than conclusory allegations, there is no support for Plaintiff's suggestion, in this case, that there is a considerable probability that she will be able to proffer such evidence.

Plaintiff tries again to confuse the Court by pointing out that in *St. Croix*, this Court cited *Morgan v. Dollar Stores*, 551 F.3d 1233, 1259-60 (11th Cir. 2008) in support of its holding. Plaintiff suggests that this brings *St. Croix's* holding into question, because *Morgan* was concerned with the showing required for conditional certification. What Plaintiff fails to point

3

out is that *St. Croix* cited *Morgan* not as authority for the proposition that it is appropriate to address insufficiency of collective action allegations by a motion to dismiss, but rather simply as one of the cases setting out the elements of an EPA claim. The fact that this Court, in *St. Croix*, found those elements in *Morgan* does nothing to impugn this Court's holding in *St. Croix*. To the contrary, *St. Croix's* holding was firmly based on application of *Iqbal*, *Twombly*, and *Morgan* – all binding precedents.

The point of all of this is that Plaintiff is just wrong. To survive a motion to dismiss her collective claims, Plaintiff was required to plead in her Complaint specific facts (not mere conclusions or recitations of the elements) showing that that there are similarly situated employees who desire to join. *See, e.g.*, *Iqbal*, *Twombly*, and *Morgan*.

## II.     Plaintiff's Motion for Certification Is Not Relevant to the Motion to Dismiss

Plaintiff argues that the Court should not dismiss her Complaint because she has proffered "evidence," "information" and "preliminary data" in her motion for conditional certification. As explained in Defendant's response to the motion for certification, Plaintiff's supposed "evidence" is provided on information and belief, and therefore is not competent evidence. *See* Doc. 42. In any case, a motion to dismiss is decided based on the complaint, not on extraneous matters. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).

## III.    Plaintiff's Response Relies on Formulaic Recitations of the Elements of Her Claim, rather than Allegations of Fact.

*Iqbal* makes it clear that mere formulaic recitations of the elements of a claim are insufficient to survive a motion to dismiss:

> Respondent pleads that petitioners "maliciously agreed to subject [him]" to harsh conditions of confinement ". . . solely on account of [his] religion, race, and/or national origin . . . ." The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions . . . amount to nothing more than

4

> a "formulaic recitation of the elements" of a constitutional discrimination claim . . . . As such, the allegations are conclusory and not entitled to be assumed true.

556 U.S. 662, 680-81 (citations omitted). Plaintiff's collective action allegations are strikingly similar to those found insufficient in *Iqbal*. Plaintiff's Response identifies the allegations she claims support the collective claims, beginning at Doc. 39, p. 13. After first referring to allegations about her **own** job and her **own** purported comparators, she cites ¶¶ 113-19 of her Complaint. ¶¶ 113 and 114 make conclusory allegations about **Plaintiff** and **her** purported comparators; they do not make allegations concerning putative class members or **their** comparators. Channeling *Iqbal*, ¶ 115 assumes, without supporting facts or any allegation that any putative class member was paid less than any man **for substantially equal work**, that Defendant "knew" it was underpaying unspecified female staff relative to unspecified male employees because of its duty to report pay information to the FEC and because of a newspaper report. Again channeling *Iqbal*, ¶ 116 makes the conclusory allegation, without any supporting facts, that the Campaign willfully paid female employees less than male employees.[7] ¶ 117 is about Plaintiff, only. ¶ 118 makes the conclusory allegation, again without any factual support for collective claims, that "discriminatory pay was part of a larger culture of racists and sexist behavior." ¶ 119 alleges that Plaintiff witnessed racist and sexist remarks. Here, she does (finally!) mention some specific facts, but none of them have to do with pay.

Plaintiff's response then cites ¶¶ 122-27 of the Complaint. ¶ 122 merely states that Plaintiff is asserting claims "on behalf of all female Campaign employee who were paid less than male employees doing the same or similar work." Similarly, ¶ 123 states, without any supporting facts, that Plaintiff and the putative class members "are similarly situated in that they were female Campaign staff who were affected by policies and practices with the purpose and

---

[7] Again, there is no indication of job duties or whether the men and women held similar positions.

5

effect of denying them equal compensation for the same or similar work because of their gender." These are mere conclusory allegations and recitations of the elements of the cause of action, which *Iqbal* and *Twombly* say are insufficient.[8]  ¶ 124 is just a conclusory allegation that "similarly situated collective members" "would benefit from the issuance of a court-supervised notice . . . and the opportunity to join."  ¶ 125 is simply a recitation of what Plaintiff contends to be "**questions** of law and fact common to Ms. Johnson and the collective," and does not include any allegations of fact (emphasis added).  ¶ 126 is simply a conclusory statement that Plaintiffs claims are similar to those of the putative class members.  Finally, ¶ 127 is simply an unadorned conclusory assertion that Plaintiff and the putative class "(a) are similarly situated and (b) are or were subject to the Campaign's [supposed] common compensation policies, practices, and procedures and centralized decision-making resulting in unequal pay based on sex by failing to compensate members of the collective at a level commensurate with male employees who perform substantially equal work and/or hold equivalent levels, job titles and positions."  Again, there are no **facts** alleged to support these conclusory allegations.

That's it – that is all the Complaint alleges and all the Response cites as allegations in support of the collective claims.  There are no **factual** allegations that could support a finding that there is a collective of women, paid less than men, for substantially equal work.  **Critically, there are no allegations, whatsoever, that anyone desires to join this lawsuit**.

Defendant refers the Court to its Motion to Dismiss, describing *Iqbal* and *Twombly's* requirement that a Complaint state more than conclusory allegations, and the Eleventh Circuit's decisions in *Hamilton* and *Davis*, defining "conclusory." Doc. 32 at 11, 14.  Despite Plaintiff's insistence that her allegations are sufficient, the allegations of collective claims in the Complaint,

---

[8] *See Twombly*, 556 U.S. at 680-81.

including those cited in Plaintiff's Response, are mere conclusory allegations.

As to Plaintiff's individual claim, Defendant refers the Court to the Complaint itself, and to Defendant's Motion to Dismiss, Doc. 32, at 14-19. As explained there, Plaintiff's allegations about job duties of her alleged comparators are scant, conclusory, and therefore insufficient to satisfy her burden, in an EPA case, to plead facts sufficient to establish that there are male comparators with "substantially equal" job duties. *See* Doc 32, at 9 (EPA requires substantially equal job duties); *Poggi*, above (complaint must include "information about the specific pay provision that is resulting in the FLSA violation"); *St. Croix*, above (complaint must allege job duties and pay provisions of putative class members, or other specific facts showing putative class members are similarly situated); *Iqbal* (complaint must plead sufficient **facts**; conclusory allegations are insufficient).[9]

The Complaint does allege that some of Plaintiff's purported comparators shared **some** of her job duties, but there is nothing that could support a finding that any comparator was in a "substantially equal" job. The Response's discussion of Mr. Bowdidge is instructive. The Response points out that the Complaint alleges that both Plaintiff and Mr. Bowdidge were members of the "National Strike Team." The cited paragraphs of the Complaint allege that as a member of the Team, Plaintiff was responsible for (1) recruiting and managing volunteers, (2) planning outings for volunteers, (3) organizing a volunteer appreciation event, (4) helping

---

[9] Plaintiff appears to argue that the Court could find sufficient similarity based on comparable worth. *See* Response at 17, citing *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586 (11th Cir. 1994) for the proposition that a sufficient similarity in duties may be "judged by over-arching similarities, including comparable goals." In fact, "it is well-established that comparable worth claims are not cognizable under the EPA." *Brown v. Macon-Bibb Cnty. Planning & Zoning Comm'n*, No. 5:07-cv-161(HL), 2009 U.S. Dist. LEXIS 56945, at *13 (M.D. Ga. July 6, 2009)  (citing *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 801 (11th Cir. 1992); other citations omitted). Moreover, *Mulhall* did not base its finding on comparable worth, but rather referred to the "strict similarity requirement imposed in EPA cases," 19 F.3d at 593, and devoted seven full paragraphs to describing the similarities between the positions at issue. *Id.* at 593-95.

coordinate rallies, (5) serving as the point of contact for campaign accessories, (6) transforming local offices into home bases for volunteers and supporters, (7) distributing signs and stickers, (8) conducting outreach to minorities, (9) making sure that signs were placed in minority neighborhoods, and (10) conducting door-knocking in minority neighborhoods. Cpt. ¶¶ 42-45. However, as to Mr. Bowdidge, the Complaint alleges only that he was responsible for recruiting and managing volunteers. Cpt. ¶ 112(a). So, other than the fact that they were both members of the "Team," the only alleged similarity is that they (for a time) shared **one** job duty, out of at least **ten** job duties performed by Plaintiff.[10] Defendant refers the Court to the arguments in its Motion to Dismiss, Doc. 32, at 15-18, regarding allegations concerning Plaintiff's other purported comparators, and the degree of similarity required for Plaintiff's Section 1981 claim,

Respectfully submitted,

FORD**HARRISON** LLP

/s/ Tracey K. Jaensch
Tracey K. Jaensch
Florida Bar No. 907057
tjaensch@fordharrison.com
Dawn Siler-Nixon
Florida Bar No. 993360
Dsiler-nixon@fordharrison.com
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Charles J. Harder
charder@harderllp.com
*Pro Hac Vice Admitted*
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
Telephone: (424) 203-1600

Attorneys for Defendants
Donald J. Trump
Donald J. Trump For President, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send a notice of electronic filing to all counsel of record.

WSACTIVELLP:10562816.1

/s/ Dawn Siler-Nixon
Attorney

---

[10] The Response, at 19, alleges that "[a]ll of the members of the National Strike Team shared the same duties and responsibilities," and that Austin Browning "was not given more responsibilities that justified being paid . . . more than" Plaintiff, but those allegations do not appear in the Complaint.