# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ALVA JOHNSON,**
*Individually and On Behalf of All Others*
*Similarly Situated*                               **Case No.: 8:19-cv-475-T-02SPF**

       **Plaintiff,**

**vs.**

**DONALD J. TRUMP**
*In his Individual Capacity* and
**DONALD J. TRUMP FOR PRESIDENT,
INC.,**

       **Defendants,**
_____/

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION

Plaintiff Alva Johnson hereby submits this Reply in Support of her Motion to Conditionally Certify Collective Action (Dkt. No. 34), and respectfully requests that the Court grant her Motion.

## I.    INTRODUCTION

In their Opposition, Defendants rely heavily on the argument that Ms. Johnson's allegations are "conclusory" and "without evidentiary support." But contrary to Defendants' assertions, Ms. Johnson's Motion for Conditional Certification contains ample factual support for her claims that (a) she is similarly situated to members of the proposed Collective, and (b) there are other Trump Campaign employees who wish to opt in. Accordingly, her Motion should be granted.[1]

## II.    ARGUMENT

### A.  The Legal Standard Applicable to Ms. Johnson's Motion for Conditional Certification is Far More Lenient than Defendants Suggest.

In order to prevail on a motion for conditional certification of an Equal Pay Act collective action, a plaintiff need only demonstrate a "reasonable basis for their claim of class-wide

---

[1] Several of Defendants' arguments are not addressed in this Reply either due to space constraints or because they are sufficiently rebutted in the opening memorandum. However, by omitting a discussion of these arguments, Plaintiff does not in any way concede that they are valid or should be accepted by the Court.

discrimination." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir.2008). The Eleventh Circuit has described this standard as being "not particularly stringent," "fairly lenient," "flexible," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir.2008). In fact, the Eleventh Circuit has gone as far as to note that a "district court's broad discretion at the notice stage [when deciding whether to conditionally certify a class] is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion." *Id.* As a result, motions for conditional certification are typically granted. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001).

The leniency of the applicable standard is informed in part by the fact that, as is the scenario here, a court generally has "minimal evidence" at the conditional certification stage. *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir.2003) (citation omitted). And Defendants can—and generally do—challenge certification later, after further evidence has been gathered, "in the virtually-inevitable motion for decertification." *Reyes v. AT & T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1331–32 (S.D. Fla. 2010) (citation omitted).

In order to succeed at the conditional certification stage, a plaintiff need only show, in a manner sufficient to satisfy the permissive standard outlined above, that "there is a reasonable basis to believe that: (1) there are other employees of the Defendant who desire to opt-in and (2) that these other employees are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *See Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1355 (S.D. Fla. 2011). As detailed more fully herein, Ms. Johnson has done exactly that.

### B. Ms. Johnson has Proffered Sufficient Evidence to Demonstrate at this Early Stage a Reasonable Basis to Believe that She is Similarly Situated to Putative Collective Members, Including Omarosa Manigault Newman.

Contrary to Defendants' assertion that Ms. Johnson's Motion contains nothing more than conclusory allegations, she has set forth numerous facts supporting her claim that she is similarly situated to members of the putative Collective, defined as "[a]ll women employed by Defendant Donald J. Trump for President, Inc. from May 13, 2016 to the present." Motion at 1. For instance,

2

the Motion explains:

- The Campaign's paid staff was a small and exclusive group. *See* Motion at 6. Of the millions of people working on behalf of the Campaign, only about one hundred (or less) were paid staffers at any given time. *Id.* As such, all of the Campaign's paid staffers were, in an important sense, "senior" staffers, "expected to demonstrate similar high levels of skill and dedication, report up in the same hierarchies, and follow the same Campaign-wide policies." *Id.*
- Like Ms. Johnson, almost all of the Campaign's paid staffers were tasked generally with coordinating the Campaign's voter outreach via campaign field offices and/or the media. *Id.*
- Further, every paid Campaign staffer was required to sign an identical nondisclosure agreement as a condition of employment.[2] *See id.*
- Plaintiff's preliminary analysis of the available data reveals gender-based pay disparities across the proposed collective, strongly suggesting that all paid staffers were subject to the same discriminatory compensation scheme. *See id.* at 9.

Importantly, as Ms. Johnson's Motion explains, "information regarding individual Campaign workers' job duties is largely within the exclusive knowledge and control of Defendant and cannot be obtained without formal discovery."[3] Motion at 5.[4]

Ms. Johnson has likewise adequately demonstrated that she is similarly situated to Ms. Newman.[5]  Defendants inexplicably claim that "Plaintiff has not argued that she and Newman are

---

[2] Indeed, notice is particularly important here given the chilling effect of the NDA.  *See* Motion at 12 (given the NDA, "it is likely that other women wished to challenge the Campaign's discriminatory pay policies but were prevented from doing so due to fear of professional or legal retaliation … after such notice is issued and potential collective members are informed that other, similarly situated employees are pursuing their legal rights under the EPA, more women will feel empowered to opt in.").  At least one Court has already confirmed that the Trump Campaign NDA's arbitration clause (which contributes to its overall deterrent effect) cannot be interpreted to apply to a plaintiff's affirmative claims arising out of her employment.  *See Denson v. Trump for President, Inc.,* 2018 WL 4568430, at *2 (S.D.N.Y. Aug. 30, 2018).  Thus, notice would also serve a corrective function here.

[3] Even so, Ms. Johnson includes in her Motion, as well as her Complaint, detailed descriptions regarding the job duties of five individuals, most of whom she is personally acquainted with.  These duties (and the ways in which they are similar to Ms. Johsons's duties) are described in detail in Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. No. 39 at 16-18).

[4] *See, e.g., Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n.2 (11th Cir.2003) (quoting *Hipp,* 252 F.3d at 1216) (noting that where, as here, a court has minimal evidence from the parties and discovery has not been completed, the typical result is that the motion is granted).

[5] To the extent Defendants argue that Ms. Newman was not properly an employee of the Campaign, resolving this question will involve a fact-intensive inquiry into the "economic reality" of her employment—an inquiry not appropriate for resolution on a Motion for Conditional Certification.  *See, e.g. Carrera v. UPS Supply Chain Solutions, Inc.* 2011 WL 1303151 (S.D. Fla. 2011)(certifying a nationwide class of couriers that had been classified as "independent contractors"); *Coats v. Nashville Limo Bus,* 2011 WL 308403 (M.D.Tenn. Jan. 27, 2011)(granting conditional certification to truck drivers classified as independent contractors without

similar with respect to their job duties." Opp'n at 8. However, the Motion lists both women's job duties and notes that, like Ms. Johnson, a major facet of Ms. Newman's job was voter outreach and publicity on behalf of the Campaign. Motion at 6-7. The Motion goes on to confirm that Ms. Newman believes she was subject to the same discriminatory pay policies as Ms. Johnson. *Id.* at 7. Thus, Ms. Johnson has adequately shown that she is sufficiently similarly situated to Ms. Newman in terms of both her job responsibilities and her pay provisions to warrant conditional certification.[6]

### C. Ms. Johnson has Likewise Presented Sufficient Evidence to Demonstrate at this Early Stage a Reasonable Basis to Believe that Others Wish to Opt In.

First and foremost, Ms. Johnson need not identify particular individuals who wish to opt in or produce affidavits from such individuals in order to succeed on a motion for conditional certification.[7] Nevertheless, Ms. Johnson has attached to her Motion a declaration from Ms. Newman, a similarly situated Campaign staffer. The declaration states: "I believe that Donald J. Trump for President, Inc. paid me and other similarly situated female employees less than male employees who performed the same or similar job duties under similar working conditions." Motion, Exhibit 2. Defendants are incorrect that Ms. Newman's declaration must contain the magic words "I wish to opt in" in order to be valid or persuasive. Ms. Newman's statement, based on her own personal knowledge, that the Campaign paid her and similarly situated women less than their male counterparts for similar work is sufficient to support a reasonable belief that others wish to opt in. In any event, Plaintiff's Motion makes clear that "Ms. Newman has already stepped forward to voice her willingness to opt in to this collective action." Additionally, attached hereto as Exhibit 1 is a Consent to Join form signed by Ms. Newman, confirming definitively that she wishes to join this

---

conducting economic reality factor analysis); *Labrie v. UPS Supply Chain Solutions*, 2009 WL 723599 (N.D.Cal. March 18, 2009) (same).

[6] *Cf. Henderson v. Holiday CVS, LLC*, 2010 WL 1854111, at *3 (S.D. Fla. May 11, 2010) (rejecting "Defendants' argument [that others in the proposed collective] are not similarly situated" because "to adopt that argument, the Court would have to indulge in a fact finding determination on the merits, which is improper at this stage of the litigation")

[7] *See, e.g., Vondriska v. Premier Mortg. Funding, Inc.*, 564 F.Supp.2d 1330, 1334 (M.D. Fla. 2007) ("Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, *or expert evidence on the existence of other similarly-situated employees*" (emphasis added)); *Bernal v. Vankar Enterprises, Inc.*, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008) (conditionally certifying collective based on plaintiff's complaint and plaintiff's affidavit alone).

action.[8]  Additionally, shortly before the filing of this Reply, Plaintiff's counsel was contacted by another female Campaign employee, Corina Cotenescu, who wishes to opt in and has provided information indicating that she was underpaid relative to similarly situated male Campaign employees. Attached hereto as Exhibits 3 and 4, respectively, are Ms. Cotenescu's declaration and Consent to Join form.

Dr. Phillip Johnson's May 13, 2019 declaration similarly supports Ms. Johnson's claim that there are other, similarly situated employees who wish to opt in. Specifically, the declaration explains that the available data shows a significant disparity between compensation paid to men and compensation paid to women, and that a disparity of this type and magnitude is suggestive of discrimination. Dr. Johnson's declaration also sheds light on the number of women employed by the Campaign and thus the scope of the proposed Collective. Dr. Johnson's analysis reveals that, during the relevant period, the Campaign employed seventy-seven women. It stands to reason that, if all of these women were subject to the same discriminatory compensation scheme, as alleged by Plaintiff and Ms. Newman and as suggested by Dr. Johnson's analysis, there will be other women who wish to opt in once notice is issued.[9]

### D.  The Declarations of Ms. Johnson and Ms. Newman Should be Considered by the Court.

Defendants argue that the declarations of Ms. Johnson and Ms. Newman should be given "no weight whatsoever" because they are "based upon personal knowledge and/or upon information and belief" and are thus not "proper evidence." However, there is nothing improper about declarations in support of conditional certification that are based on personal knowledge or that include statements based on information and belief. *See Chapman v. Fred's Stores of Tennessee, Inc.*, No. 2:08-CV-01247-HGD, 2013 WL 12253432, at *2 (N.D. Ala. Mar. 15, 2013). In arguing to the contrary, Defendants attempt to import standards from outside the conditional certification context. *See, e.g.*, Opp'n 6 n.2 (citing *Bagwell v. Morgan Cty. Comm'n*, 676 F. App'x 863 (11th Cir. 2017), which

---

[8] Also attached hereto as Exhibit 2 is the signed Consent to Join form of Ms. Johnson.
[9] *Cf., e.g., Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at *2 (S.D. Fla. May 17, 2006) (approving conditional certification, despite the fact that "Plaintiff does not quantify, either exactly or approximately, how many other laborers were adversely affected by the complained of pay practice.").

involved the Rule 56 Summary Judgment standard, rather than the far more lenient standard applicable to conditional certification); *id.* (citing *Monex Fin. Servs. Ltd. v. Nova Info. Sys., Inc.*, 2008 WL 5235135 (M.D. Fla. Dec. 15, 2008), which was decided in the context of an emergency application and motion to enforce a subpoena). But Courts in this Circuit have found that the stricter standards from other contexts like summary judgment do not apply to motions for conditional certification and the affidavits that accompany them. *See, e.g., Chapman*, 2013 WL 12253432, at *2; *Reyes*, 759 F. Supp. 2d at 1332 (confirming that affidavits accompanying conditional certification motions may be made based upon personal knowledge, and explaining that the Rule 56 standard should not apply on conditional certification because, unlike summary judgment motions, motions for conditional certification are typically made before the parties have a chance to exchange discovery). Courts do not conduct credibility determinations or look beyond a declarant's assertion that the declaration is made on personal knowledge at the conditional certification stage.[10] Credibility determinations are reserved for the decertification stage.  Thus, the declarations of Ms. Johnson and Ms. Newman should be considered and given appropriate weight by the Court.

### E.  Dr. Phillip Johnson's Analysis is Sound and his Conclusions Should be Credited

As outlined in Dr. Johnson's reply declaration, attached hereto as Exhibit 5, Defendants have manipulated the data in a way that renders their arguments completely invalid. In his review of Defendants' analysis (contained in section B(2) of their Opposition), Dr. Johnson found that "Defendants' calculations are fundamentally flawed and misleading," and that the tables Defendants include are "based on nonsensical computations." Exhibit 5 at 1-2. Specifically, Dr. Johnson explains that Defendants' claim that eighteen employees on the Campaign's payroll for December 2016 were "highly-compensated" and not comparable to the remainder of the class is inaccurate.[11] Nevertheless, Dr. Johnson re-ran the analysis to exclude these eighteen individuals, as Defendants

---

[10] *See, e.g., Lytle v. Lowe's Home Centers, Inc.*, No. 8:12-CV-1848-T-33TBM, 2014 WL 103463, at *2 (M.D. Fla. Jan. 10, 2014) ("[T]he Court does not make credibility determinations or resolve contradictory evidence presented by the parties during the notice stage.")

[11] Including because (a) the higher average compensation of this group is driven by a few individuals, and (b) there was a general increase in compensation after the election victory.

claim to have done in their Opposition. His results are notably different than those reported in the Defendants' Opposition. For example, even excluding these employees, Dr. Johnson found that, in May 2016, the average female compensation was $3,526.87 and the average male compensation was $4,413.67. By contrast, Defendants' report shows these figures as $2,569 and $2,485, respectively. As Dr. Johnson explains, even adopting Defendants' inappropriate exclusions, the pay difference by gender "remains negative in every month and is always greater than the results reported in the Defendants' Opposition." *Id.*

**F. Dr. Johnson's May 13, 2019 Declaration Supports the Conclusion that There is a Reasonable Basis for Believing that Putative Collective Members are Similarly Situated.**

As noted above, Dr. Johnson need not, at this early stage, examine the particular job duties of each individual included in his analysis in order to support a finding that "there is a reasonable basis" for believing that women were paid less than similarly situated men. Nor could he. No discovery has yet been exchanged, and information regarding putative Collective members' job responsibilities is mostly within the control of Defendants.[12] That is why courts apply a lenient standard at this stage. It is sufficient for the purposes of conditional certification that Dr. Johnson has shown that women were consistently paid less than men on average, and that this disparity is unlikely to have occurred by chance.

**G. Defendants' Attempts to Strike Material from Plaintiff's Motion are Without Merit and Should be Rejected.**

Defendants improperly use their Opposition as a vehicle for requesting that the Court strike large portions of Ms. Johnson's Motion, claiming that these passages are "conclusory" and/or "hearsay." Notably, among the alleged hearsay statements Defendants seek to strike are multiple citations to news articles and media reports. Defendants' claim that these passages should be stricken is perplexing, given that they argue earlier in their Opposition that Ms. Johnson and Ms. Newman's declarations should be disregarded because they are based on personal knowledge. If

---

[12] And indeed, within the control of putative Collective members themselves, another factor weighing heavily in favor of allowing Plaintiff to notify them of the existence of this action.

Defendants consider both personal knowledge and publicly available information to be inadmissible, it is difficult to conceive of any evidence that Defendants *would* deem admissible. In any event, Defendants' backdoor motion to strike is both procedurally and substantively inappropriate.

First, Defendants cite no cases involving conditional certification in support of their hearsay-related arguments.  In the conditional certification context, hearsay may be considered:[13]

> … **the Court finds that it may properly consider hearsay, if necessary, in deciding whether to issue class notice. This approach is consistent with the purpose of conditional certification** which is only a preliminary determination of whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit

*Jewell v. Aaron's, Inc.*, 2012 WL 2477039, at *5 (N.D. Ga. June 28, 2012) (emphasis added).[14]

Defendants' arguments regarding the so-called "conclusory" nature of Ms. Johnson's claims are likewise unavailing. As described *supra*, Ms. Johnson has provided ample factual support for her allegations.  Further, even if these allegations were conclusory, the cases Defendants cite do not support their assertion that "conclusory allegations should be stricken" from a motion for conditional certification. The Court in *Huggins v. Marriott Ownership Resorts, Inc.*, 2008 WL 552590, at *5 (M.D. Fla. Feb. 27, 2008) simply found, on a Motion to Dismiss, that plaintiff's requests for punitive damages should be stricken because they rested on wholly conclusory generalities regarding punitive damages. That is not the case here, nor does the Motion to Dismiss standard apply. Likewise, *Underwriters at Lloyds v. FedEx Freight Sys., Inc.*, 2008 WL 2901049, at *1 (M.D. Fla. July 23, 2008) was decided in the context of summary judgment and, as noted *supra*, the Rule 56 standard does not apply on conditional certification.[15]

---

[13] Even if this were not the case, however, almost all of the passages identified by Defendants fall under recognized hearsay exemptions or exceptions, including because they are (a) party admissions, or (b) not "oral or written assertions" (Fed.R.Evid. 801(a)(1)) but instead describe the conduct of non-declarants.

[14] *See also Coan v. Nightingale Home Healthcare, Inc.*, 2005 WL 1799454, at *1 n. 1 (S.D.Ind.2005) (rejecting, in an FLSA motion to conditionally certify a class, defendant's motion to strike affidavits containing hearsay because plaintiff need not come forward with evidence in a form admissible at trial "at this preliminary stage and for these preliminary purposes")

## III.    CONCLUSION

For the foregoing reasons, Ms. Johnson respectfully requests that the Court grant her

Motion for Conditional Certification of a Collective Action.

DATED: June 6, 2019.                          Respectfully submitted,

/s/ Hassan A. Zavareei
Hassan A. Zavareei (*pro hac vice*)
Trial Counsel
Katherine M. Aizpuru (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
**VARNELL & WARWICK, PA**
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice* )
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
**PUBLIC JUSTICE, P.C.**

475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 6, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Hassan A. Zavareei
Hassan A. Zavareei

# EXHIBIT 1

# Consent To Join Form

I am a woman who was employed by Donald J. Trump for President, Inc. ("DJTFP") between May 13, 2016 and the present.

I choose to participate in the lawsuit titled *Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fla.) to recover monetary damages under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I choose to be represented in this action by the named plaintiff and Tycko & Zavareei LLP, Varnell & Warwick, PA, and Public Justice, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees and costs from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against DJTFP, and/or any related entities or persons potentially liable.

Print Name: Omarosa Manigault Newman

Signature:

Date: June 6, 2019

# EXHIBIT 2

# Consent To Join Form

I am a woman who was employed by Donald J. Trump for President, Inc. ("DJTFP") between May 13, 2016 and the present.

I choose to participate in the lawsuit titled *Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fla.) to recover monetary damages under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I choose to be represented in this action by the named plaintiff and Tycko & Zavareei LLP, Varnell & Warwick, PA, and Public Justice, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees and costs from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against DJTFP, and/or any related entities or persons potentially liable.

Print Name: _Alva Johnson_

Signature: _Alva Johnson_

Date: _6/5/2019_

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ALVA JOHNSON,**
*Individually and On Behalf of All Others*
*Similarly Situated*                                    **Case No.: 8:19-cv-475-T-02SPF**

       **Plaintiff,**

**vs.**

**DONALD J. TRUMP**
*In his Individual Capacity* and
**DONALD J. TRUMP FOR PRESIDENT,
INC.,**

       **Defendant,**
_____/


## DECLARATION OF CORINA COTENESCU

    I, Corina Cotenescu, hereby declare as follows:

1. I make this Declaration based upon personal knowledge and/or upon information and belief.

2. I am over 21 years of age and fully competent to make this declaration. I live in New York. If called and sworn as a witness, I would testify competently as to the facts in this Declaration.

### My Job Duties at Donald J. Trump for President, Inc.

3. I was employed at Donald J. Trump for President, Inc. in late 2016.

4. My job title was Outreach Associate. My job duties included coordinating outreach to women's groups and other affinity and coalition groups; building up the Campaign's social media presence; and contacting voters, including through email blasts.

**Common Compensation Policies and Centralized Decision-Making
at Donald J. Trump for President, Inc.**

5.  All employees of Donald J. Trump for President, Inc. throughout the country were subjected to the same common and uniform compensation policies and practices. Such policies governed all components of my pay, including initial salary, salary increases, promotional salary increases, bonuses, awards, and incentive pay.

**Unequal Pay for Women at Donald J. Trump for President, Inc.**

6.  I believe that Donald J. Trump for President, Inc. paid me and other similarly situated female employees less than male employees who performed the same or similar job duties under similar working conditions.

7.  I wish to opt in to the above-captioned lawsuit to recover monetary damages under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I declare under penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Dated:   June 6, 2019

Respectfully submitted,

_____
Corina Cotenescu

# EXHIBIT 4

## Consent To Join Form

I am a woman who was employed by Donald J. Trump for President, Inc. ("DJTFP") between May 13, 2016 and the present.

I choose to participate in the lawsuit titled *Alva Johnson v. Donald J. Trump, et al.*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fla.) to recover monetary damages under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 216(b).

I choose to be represented in this action by the named plaintiff and Tycko & Zavareei LLP, Varnell & Warwick, PA, and Public Justice, P.C. ("Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees and costs from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against DJTFP, and/or any related entities or persons potentially liable.

Print Name: _____Corina Cotenescu_____

Signature: _____

Date: _____June 6, 2019_____

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)**

|  |  |  |
|---|---|---|
| **ALVA JOHNSON**, | ) | |
| *Individually and On Behalf of Herself and All* | ) | |
| *Others Similarly Situated*, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:19-cv-00475-WFJ-SPF |
| | ) | |
| v. | ) | **DECLARATION OF PHILLIP M. JOHNSON** |
| | ) | |
| **DONALD J. TRUMP**, | ) | **June 6, 2019** |
| *In his Individual Capacity* and | ) | |
| **DONALD J. TRUMP FOR** | ) | |
| **PRESIDENT, INC.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, Dr. Phillip M. Johnson, declare and state as follows:

1.   I am an economist and a Managing Director at Econ One Research, Inc.

("Econ One"), an economic research and consulting firm with offices in Berkeley, Lafayette, Los

Angeles, Houston, Sacramento, Washington, D.C., and New Delhi. My background and

qualifications are set forth in further detail in my declaration of May 13, 2019 (Dkt. No. 34, Exhibit

#4).[1]

2.   I have been asked by the Plaintiff's counsel to review and analyze section B(2) of

Defendants' Opposition to Plaintiff's Motion for Conditional Certification (Dkt. No. 42), and to

provide my opinions regarding the methodology and conclusions presented in that section.[2]

3.   My analysis reveals that Defendants' calculations are fundamentally flawed and

---

[1] Declaration of Phillip M. Johnson, May 13, 2019.
[2] Defendants' Opposition to Plaintiff's Motion for Conditional Certification (Dkt. No. 42), May 28, 2019
("Defendants' Opposition").

misleading. Defendants' Opposition portrays 18 employees on the Campaign's payroll for December 2016 as "highly-compensated" and not comparable to the remainder of the class.[3] However, this is not accurate given that:

- Higher average compensation of this group is driven in part by a few of the individuals in this group; for example, "MILLER, ELI" was paid $22,500 and "PARSCALE, BRADLEY" was paid $20,000).[4] However, the list also includes lower paid individuals, such as "HAHN, MICHAEL" who in December 2016 was paid $880 and "HARPER, DEVYN" who was paid $2,575.50.[5]

- Compensation generally increased between the primaries and the period after the election victory, meaning many made substantially less prior to December 2016. For example, "ADAMS, ASHTON", was paid $4,500 in the primary, $5,500 in the general election, which jumped to $8,000 after the campaign victory. As another example, "SANDOVAL, CAMILO" was paid $5,000 in the primary and $8,000 in the general election, which jumped to $13,000 after the post-election period.

4.    Therefore, it is inaccurate to describe all 18 employees as "highly-compensated" and not comparable for the entire class period.

5.    Defendants' Opposition states that the inclusion of these 18 "highly-compensated" individuals drives the compensation difference for the rest of the data.[6] Defendants present a revised version of Figure 2 from my May 13, 2019 declaration. However, their revised table is based on

---

[3] Defendants' Opposition, 12-13.
[4] "Disbursements," Federal Elections Commission United States of America, https://www.fec.gov/data/disbursements/.
[5] Ibid.
[6] Defendants' Opposition, 12-13.

2

nonsensical computations. Instead of removing these 18 individuals from the analysis, it appears that Defendants simply subtracted the total number of employees and total compensation in December 2016 from the total number of employees and total compensation in the earlier months.[7] They then apparently simply recalculated average pay by gender by dividing the resulting figures.[8] This approach and the results it provides are nonsensical for the following reasons:

- Defendants "remove" employees and their supposed compensation from months in which those employees were not actually employed. In fact, only 6 of the 18 "highly-compensated" December 2016 employees were present in the data during the entire analysis period (May through December 2016). The others appeared in later months;

- Defendants subtract incorrect employee compensation amounts even for those who were employed in those months: pay generally increased from the primary to the general election periods, and for some between general and post-election periods. Consequently, Defendants subtract too much;

- As discussed above, I reject the premise that these employees were all highly compensated and inherently different from the others;

- The gender pay averages Defendants calculate and compare do not accurately summarize either the employees they claim or their compensation. The calculated numbers are meaningless.

6. I re-ran the analysis to actually exclude the 18 employees in question, as Defendants implied they had done in their Opposition (though I do not concur that it is appropriate to do so, for the reasons stated above). The results are reported in Figure 1 below. My results are notably different than those reported in the Defendants' Opposition. For example, I found that, in May

---

[7] Defendants' Opposition, 14.
[8] Defendants' Opposition, 14-15.

2016, the average female compensation (excluding employees that appeared in December 2016) was $3,526.87 and the average male compensation was $4,413.67.  By contrast, Defendants' report shows these figures as $2,569 and $2,485, respectively.[9] The pay difference without these 18 employees remains negative in every month and is always greater than the results reported in the Defendants' Opposition.[10]

### Figure 1

### Trump Campaign
### Employee Compensation by Gender
### Excluding Defendants' Selected 18 Employees

| Year -Month | Mean Compensation | | | Percent Diff |
| | Female | Male | Female - Male | |
| | | (Dollars) | | |
| | | | (2) - (3) | (4) / (2) |
| (1) | (2) | (3) | (4) | (5) |
| | Staff Excluding Key Staff and Advisors | | | |
| 1. May 2016 | $ 3,527 | $ 4,414 | $ -887 | -25.1% |
| 2. June 2016 | 3,708 | 4,586 | -877 | -23.7 |
| 3. July 2016 | 3,402 | 4,805 | -1,403 | -41.2 |
| 4. August 2016 | 3,308 | 4,211 | -902 | -27.3 |
| 5. September 2016 | 4,362 | 4,570 | -208 | -4.8 |
| 6. October 2016 | 4,433 | 4,717 | -284 | -6.4 |
| 7. November 2016 | 2,358 | 2,433 | -74 | -3.2 |
| 9. **May-Nov 2016** | **$ 3,601** | **$ 4,127** | **$ -527** | **-14.6%** |

Respectfully submitted,

/s/Phillip M. Johnson
Phillip M. Johnson, Ph.D.
June 6, 2019

---

[9] Defendants' Opposition, 14.
[10] Defendants' Opposition, 14-15.

4