```
 1                UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                       TAMPA DIVISION

 3
                  Docket No. 8:19-cv-00475-WFJ-SPF
 4

 5      . . . . . . . . . . . . . . .
                                      :
 6      ALVA JOHNSON,                 :
        Individually and On Behalf of :
 7      All Others Similarly Situated,:
                                      :
 8              Plaintiff,            :   Tampa, Florida
                                      :   June 5, 2019
 9              v.                    :   8:54 a.m. - 10:52 a.m.
                                      :
10      DONALD J. TRUMP,              :
        In his Individual Capacity,   :
11      and                           :
        DONALD J. TRUMP FOR PRESIDENT,:
12      INC.,                         :
                                      :
13              Defendants.           :
        . . . . . . . . . . . . . . .
14

15

16              TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE WILLIAM F. JUNG
17              UNITED STATES DISTRICT JUDGE

18      APPEARANCES:

19
        Counsel for Plaintiff:    Janet R. Varnell
20                                Varnell & Warwick, P.A.
                                  Post Office Box 1870
21                                Lady Lake, Florida  32158

22
                                  Hassan A. Zavareei
23                                Katherine M. Aizpuru
                                  Tycko & Zavareei, LLP
24                                1828 L Street Northwest
                                  Suite 1000
25                                Washington, D.C.  20036
```

Case 8:19-cv-00475-WFJ-SPF   Document 54   Filed 06/10/19   Page 2 of 144 PageID 514

2

```
1

2    APPEARANCES: (continued)

3

     Counsel for Plaintiff:      Karla Gilbride
4                                Public Justice PC
                                 1620 L St Northwest
5                                Suite 630
                                 Washington, D.C.  20036
6

7

8    Counsel for Defendants:     Tracey K. Jaensch
                                 Dawn Siler-Nixon
9                                FordHarrison, LLP
                                 101 East Kennedy Boulevard
10                               Suite 900
                                 Tampa, Florida 33602
11

12   Counsel for Defendants:     Charles J. Harder
                                 Harder LLP
13                               132 South Rodeo Drive
                                 Fourth Floor
14                               Beverly Hills, California  90212

15

16   Court Reporter:      Nikki L. Peters, RPR, CRR, CRC, FPR
                          Federal Official Court Reporter
17                        801 North Florida Avenue, Second Floor
                          Tampa, Florida  33602
18                        courttranscripts@outlook.com

19

20   Proceedings recorded by mechanical stenography.
     Transcript produced by Computer-Aided Transcription.

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
 1                   P R O C E E D I N G S

 2            THE COURT:  Good morning, everyone.  All right.

 3    Let's call the case, please.

 4            THE COURTROOM DEPUTY:  Yes, Your Honor.  In the

 5    matter of Alva Johnson v. Donald J. Trump and Donald

 6    J. Trump For President, Inc., Case No. 8:19-cv-475.

 7            Counsel, please state your appearances, starting

 8    with counsel for the plaintiff.

 9            MS. VARNELL:  Good morning, Your Honor.

10    Janet Varnell from The Villages, Florida, for the plaintiff,

11    Alva Johnson.

12            MR. ZAVAREEI:  Good morning, Your Honor.

13    Hassan Zavareei from Tycko & Zavareei in Washington, D.C.,

14    on behalf of Plaintiff Alva Johnson and the putative

15    collective.

16            MS. AIZPURU:  Good morning, Your Honor.

17    Katherine Aizpuru from the law firm of Tycko & Zavareei in

18    Washington, D.C., on behalf of Plaintiff Alva Johnson and

19    the putative collective.

20            MS. GILBRIDE:  Good morning, Your Honor.

21    Karla Gilbride of Public Justice for plaintiff and the

22    putative collective.

23            THE COURT:  Good morning.

24            And defendants.

25            MR. HARDER:  Good morning, Your Honor.
```

1  Charles Harder for defendants President Donald Trump and

2  Donald J. Trump For President, Inc.

3          **MS. JAENSCH:**  Tracey Jaensch, J-A-E-N-S-C-H,

4  FordHarrison, for defense.

5          **MS. SILER-NIXON:**  And Dawn Siler-Nixon with

6  FordHarrison on behalf of the defendants Donald J. Trump and

7  Donald J. Trump For President, Inc.

8          **THE COURT:**  Well, good morning, everybody, and

9  thank you for coming.  It's always nice to have such

10 high-quality lawyering on both sides.  It really is.

11         I've read pretty much everything at least once.

12 Just a couple of thoughts.  We don't have any time limit

13 here.  This isn't 15 minutes, hurry up, sit down.  So I

14 don't want anybody to leave here this morning feeling like

15 they didn't get their full say.

16         Just continuing in the housekeeping matters a

17 little bit, it sure looks like this case might need a little

18 more hands-on management than some.  So don't be shy about

19 sending -- as long as you copy your colleagues -- chambers'

20 email, if there's an issue.  As I tell people, I'm the CEO

21 of the courtroom.  Shameeka Olden is the COO of the

22 courtroom.  So you can call her.  You can send chambers

23 emails.

24         We'll try and pay attention.  Sometimes these

25 cases get sort of in a computer war.  And if there's not a

1    pending motion -- and there's quite a few of them, of

2    course, on the computer, and they don't get as quickly

3    attended to as they should.  So don't be shy.  This is a

4    track three.  So we have a little bit more time because of

5    the collective claim.  It goes to the Clerk, puts it in

6    what's called a track three.

7              Just as a preference, I know we're going to have

8    some discovery issues.  My preference would just be to kind

9    of do it the traditional way, motion to compel, response.

10   Obviously, if you want to move things or there's a short

11   time frame, file your response.  You don't have to wait.  I

12   think you get a total of 17 days, file it in four days, and

13   then alert Ms. Olden, "Hey, this response, it would be nice

14   to get this heard."  And I'll try and handle it rather than

15   give you a referral to the magistrate judge.  Then it kind

16   of has to go through two calendars.

17             Let's see.  What else?  If you have clients or

18   whatever, I personally don't like the electronic, whatever

19   you want to call it, equipment rule that we have.  But no

20   one asked my opinion.  But if you have clients or paralegals

21   or somebody you need to get some stuff in here, even

22   telephones, just give Ms. Olden enough time.  It's a done

23   deal.  Sometimes clients want to come and watch or whatever.

24   And we'd be delighted for them to bring their phones in or

25   whatever they need, just you're going to need an order, and

```
 1    we'll get you one.  But please do us a favor and send an

 2    email a couple of days ahead of time.

 3           Okay.  So we have noticed the motion to strike,

 4    the motion to dismiss, and then sort of a case management

 5    notice.  I thought we'd talk about those three things.  And

 6    I've read, at least one time, every motion and every

 7    response.

 8           Whatever we want to call it, I call it class

 9    certification.  It's not technically class certification.

10    My thought was to do that -- and, of course, I understand

11    there's a local rule that says file, file, file.  I think

12    that's going to be changed.  It never made a whole lot of

13    sense to me.

14           My thought was to do the notice -- the motion to

15    notice collective, or whatever term we want to use, after

16    the pleadings were at rest.  But I can do it -- you know,

17    both parties say, "No, no, we want that decided sort of

18    contemporaneous with the motions to dismiss," that's fine.

19    I've read that too.  But I don't want to argue it today

20    because we've got enough on our plate.  But we could set a

21    telephonic argument, so everybody doesn't have to come in

22    from out of town, even as early as next week or later this

23    week on that.

24           If everyone wants to go, "No, no, no, we don't

25    want to wait.  We want that done right now," my thought was
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    to just take it kind of a step at a time and start paying a

2    little attention to it now that it's at issue after the

3    pleadings are at rest.  They may be at rest in an hour and a

4    half if I deny all your motions.

5         And along those lines, and then I'm done here with

6    my soliloquy, I'm happy to -- you know, some judges don't

7    like taking parties on the phone.  I'm happy to do that.  If

8    someone is out of town, it's a motion to compel, we got

9    these six interrogatory answers.  There's always an element

10   where -- when I was practicing law, "I want to be there

11   because it's more corporeal, and I'm not a distended voice

12   on the phone."  So I'll do everything I can to treat the

13   voice on the phone equal with the live body.  And you are

14   welcome at any time, in any hearing, to attend by phone.  So

15   that's basically it on sort of housekeeping.

16        Why don't I just ask Movant to address both the

17   motion to strike and the motion to dismiss, and then

18   we'll -- if I can use the term, we'll kick it over to

19   respondent to respond.  I don't anticipate I'm going to rule

20   from the bench this morning, so that will drop it down two

21   stress notches anyway.  And then after that we can go back

22   and forth as long as you want.  I got all morning.  We'll

23   talk a little bit about kind of scheduling and that type of

24   stuff.  Will that work for everybody?

25             (No response.)

                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

1        **THE COURT:**  Movant, tell me about your two

2   motions.  I'm taking notes.

3        **MR. HARDER:**  Thank you, Your Honor.

4   Charles Harder.

5        **THE COURT:**  One other little thing.  I am

6   delighted for you to stand at the podium, but you don't have

7   to.  You can sit.  As long as I can hear you, you can sit.

8   You know, you can prance around the courtroom, if you

9   wanted.  That would probably be distracting.  But any way

10  you-all want to do it.  And there's no rule where one person

11  speaks and that means the others must shut their mouths.  If

12  Ms. Jaensch has a point and she represents the same client,

13  I don't care.  She can stand up and say, "Oh, Mr. Harder

14  forgot X, Y, Z."  So have at it.

15       **MR. HARDER:**  Thank you, Your Honor.  I will be

16  addressing the motion to strike.  Ms. Jaensch will be

17  addressing the motion to dismiss.

18       **THE COURT:**  Okay.

19       **MR. HARDER:**  I don't want to repeat what's already

20  in the papers.  I understand that Your Honor has read them.

21  I do want to just focus the Court on a few things, though

22  there may be a little bit of repeat or overlap, but I'm

23  trying to avoid it.  Your Honor, FRCP 8 states that there

24  should be a short, plain statement in the complaint, and in

25  our situation, the complaint is anything but a short and

1  plain statement.

2            We cited to a case called *Verfuerth* from 2014.

3  It's a U.S. District Court of Wisconsin case which said a

4  typical federal complaint is 4 to 12 pages long.  Here we

5  have a complaint that's almost 40 pages and 171 paragraphs

6  in length.

7            **THE COURT:**  And how do those poor plaintiffs deal

8  with this, though?  So it's too long, it's too long, 4 to 12

9  pages, but then you say they haven't said enough on their

10  labor claim, they don't have enough, it's too short.

11            **MR. HARDER:**  Yes, Your Honor.  The problem we have

12  is because they're trying to litigate 20 cases at once when

13  this case is just one case.

14            I will be addressing the battery claim against the

15  President, and Ms. Jaensch will be addressing the

16  discrimination claims against --

17            **THE COURT:**  You do understand that there's a bit

18  of a rub there because Ms. Jaensch is going to tell me

19  there's not enough and they have insufficient facts to

20  notice a collective; it needs more.

21            **MR. HARDER:**  I understand, Your Honor.  I think

22  the complaint suffers from a lot of defects.  One is that

23  they don't allege enough for the discrimination claim.  The

24  other is that they're trying to litigate 20 cases for the

25  battery claim when they should be litigating one case for

1    the battery claim.  The case of *Clinton v. Jones* says that

2    there is no immunity from suit for a sitting president;

3    however, the Court is required to keep the case limited in

4    scope.  And the problem with the complaint is that it does

5    anything but that.  It tries to expand the scope.

6              **THE COURT:**  Doesn't *Clinton v. Jones* also say that

7    the President has to sit for a deposition?  Didn't it say

8    that?

9              **MR. HARDER:**  It did require him to sit for a

10   deposition.

11             **THE COURT:**  Okay.  All right.  Go ahead.

12             **MR. HARDER:**  But it was a different situation.

13   We'll be addressing that down the road.

14             **THE COURT:**  Okay.  Yes.  Maybe at a later time.

15             **MR. HARDER:**  Your Honor, before the presidential

16   election, there were numerous people who came out with all

17   sorts of allegations, and that's something that often

18   happens when you have an election or something political

19   where people make allegations.  And, oftentimes, they're not

20   true.  There was a situation a year ago where a woman named

21   Julie Swetnick accused U.S. Supreme Court nominee

22   Brett Kavanaugh of harassment.  He flatly denied it.  She

23   was discredited, and later she admitted that she made the

24   whole thing up.  And she was referred for prosecution.  It

25   happens in the political word, and it's happened in this

1    situation as well.

2          The allegations that have been made by accusers

3    have been denied, and they have nothing to do with

4    Ms. Johnson.  People from 12 years back, all the way to 37

5    years back, have made allegations.  They've never proven

6    anything, not in any court, not in any tribunal.  And the

7    plaintiff is trying to take advantage of all sorts of

8    allegations from 12 years to 37 years ago that has nothing

9    to do with Ms. Johnson.

10          Ms. Johnson's battery claim focuses on a

11    particular moment in time on August 24th, 2016, in a

12    campaign RV where there were seven eyewitnesses -- in

13    addition to the parties, seven eyewitnesses.  And they're

14    all going to say, across the board, that absolutely nothing

15    happened.  So in order to overcome what Ms. Johnson realizes

16    is going to be the evidence -- because she was there -- her

17    lawyers are trying to turn this case into 19 other cases

18    where there were accusations that do not pertain to that

19    moment in time.  They do not pertain to the year 2016.  They

20    do not pertain to the campaign RV or anything that happened.

21    They want to make this battery case something that has

22    nothing to do with the actual events and events that

23    allegedly transpired 12 years and 37 years ago and in

24    between.

25          The plaintiff would like to have lots and lots and

1    lots and lots of depositions in this case.  They've asked

2    for at least 60 or 70 initial depositions.  And when you

3    think about it, the F.R.C.P. allows 10 depositions per side

4    when there is a lawsuit.  And if you were to multiply this

5    case into 20 cases, which is what the plaintiff would like

6    to do, you're ending up with possibly 400 depositions, and

7    that's exactly what they'd like to have, regarding 20

8    different accusations against the President.

9         And *Clinton v. Jones* says you have to limit the

10   case against a sitting president.  It would potentially

11   paralyze the presidency if every time somebody had a claim

12   they could multiply it into 20 and have 400 depositions.

13        So for all the reasons in our papers, which you've

14   read, and all the legal authorities which we've cited -- and

15   we've cited to U.S. Supreme Court cases, Eleventh Circuit

16   cases, U.S. District Court cases -- they all say that there

17   needs to be a limitation in scope.  They say that the

18   complaint needs to be -- at least as far as the battery

19   claim, it needs to be short and simple.  You allege that

20   Mr. Trump allegedly touched without consent and that there

21   are damages.  That's a battery claim.

22        **THE COURT:**  Is it in any way relevant that they

23   allege that the nature of the battery is sort of a behavior

24   that's been done before, sort of the grasping of the hand,

25   the holding of the hand, and the kissing?  I mean, they say

```
 1    it's sort of like a modus -- well, they use the term modus

 2    operandi, which it's -- is that relevant?

 3              MR. HARDER:  It's not relevant.

 4              THE COURT:  Isn't that sort of the hallmark of

 5    404(b)?

 6              MR. HARDER:  Exactly, Your Honor.  It's the exact

 7    type of evidence that's excluded from a trial.

 8              I mean, think about it.  If there's a trial here,

 9    you're going to have seven people who are not employed by

10    anyone, who are not parties to the case, who are neutral

11    eyewitnesses, who are all, across the board, going to say

12    nothing happened.  And Ms. Johnson is going to say something

13    did happen.  And how confusing is it to a jury if you have

14    19 accusers from 12 years ago --

15              THE COURT:  All right.  Well --

16              MR. HARDER:  -- to 37 years ago --

17              THE COURT:  Yeah.

18              MR. HARDER:  -- saying, well, something

19    happened --

20              THE COURT:  All right.  So forget the 19.  But

21    suppose there were two that said, "I had a very unfortunate

22    experience.  He grabbed my hand.  He leaned in and gave me

23    a" -- there were two.  Okay?  Not 19.  Okay.  Might

24    Plaintiff offer that as indicative of motive or plan?

25              MR. HARDER:  Your Honor, the case we --
```

1     **THE COURT:** Wouldn't that be relevant to show

2 motive or plan, this is what this person does, this is a

3 plan, he carries out this plan?

4     **MR. HARDER:** Well, Your Honor, the cases that

5 we've cited to say no, that's not allowed. We've cited to

6 the *U.S. v. Horner* case, which is an Eleventh Circuit case

7 from two years ago. We've cited to *Goulah v. Ford Motor*,

8 another Eleventh Circuit case from 1997. There's a modus

9 operandi evidence case, *Becker v. Arco*, from the

10 Third Circuit. The year was 2000. All of these cases say

11 in a situation like what we have, it's not allowed.

12     Intent or motive evidence has also been excluded

13 by the Tenth Circuit in 2002 in a case called

14 *Wilson v. Muckala* where there were prior acts of harassment

15 in a sexual harassment case. And the Third Circuit said

16 that's excluded. And that particular case said the prior

17 acts did not occur at the same workplace, and so they were

18 too far afield.

19     And here we have something that happened in a

20 campaign RV that Plaintiff is alleging. And then you've got

21 other people alleging things that happened decades ago in

22 completely different places, under completely different

23 situations, none of which has been proven and all of which

24 have been denied.

25     There's another case, *Hudson v. District of*

1    *Columbia*, D.C., Circuit from 2009, where a police officer's

2    prior uses of force was held to be inadmissible in an

3    excessive force case.

4              And then we have the line of cases regarding

5    propensity evidence, meaning that the defendants supposedly

6    had a propensity to do certain things and we want to bring

7    in prior conduct to show that.  We cited the *U.S. v. Sanders*

8    case from the Fourth Circuit, 1992, which says prior

9    convictions for assault were inadmissible in an assault case

10   to show or attempt to show a propensity.  In the

11   *U.S. v. Commanche* case from the Tenth Circuit, 2009 -- all

12   of these say it's improper for a variety of reasons.  And

13   one of the main ones is because we're going to have seven

14   people who are going to testify, if this ever gets anywhere,

15   that this never actually happened.  And then if you bring in

16   people who say, "Oh, 12 years ago, 37 years ago, something

17   happened," in a completely different context, very confusing

18   for a jury.  Because the focus is on what happened in the

19   campaign RV in 2016, not what happened 12 years earlier or

20   37 years earlier.

21             And the *Clinton v. Jones* case, again, Your Honor,

22   holds that, particularly with a sitting president, you have

23   to have a very limited scope of the case.  It's one thing to

24   allow the case as to the battery claim that's at issue.

25   It's a completely other situation when you allow other

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    accusers to come in, because that requires us to do

2    discovery.  Because it may be that these accusers completely

3    made it up.

4            And it's very difficult for a defendant to go back

5    37 years and find people who were witnesses who can say,

6    "Oh, it never happened."  Because 37 years ago, people

7    forget, people pass away, people move and can't be located.

8    It's unfair.  It's tremendously prejudicial on the defense.

9    And it expounds, it multiplies, exponentially, discovery.

10   It turns one case into two cases or three cases and the

11   discovery that's associated with it.

12           **THE COURT:**  If we do the labor piece, I mean,

13   there could easily be a dozen depos on that side of the case

14   alone, right?  I mean, I'm not there.  I haven't read

15   anything close to being there.  So let's say that happens.

16   You're going to want to depose each of those joinder

17   plaintiffs, aren't you?  I mean, there might be 10.  There

18   might be 8.

19           **MR. HARDER:**  Well, if there is a joinder

20   plaintiff, we would want to depose them.  We haven't seen

21   any yet.

22           **THE COURT:**  So we're going to be at more than 10

23   depos, for sure, if the FLSA matter proceeds, right?

24           **MR. HARDER:**  I don't necessarily think so, but

25   it's conceivable.

1          **THE COURT:**  Well, you just told me there were six

2    or seven.  So there's six people they need to depose, right,

3    six or seven?

4          **MR. HARDER:**  Well, I mean --

5          **THE COURT:**  So under the rules, they got three

6    left?  I mean, we're going to have a few more depos than the

7    10.

8          **MR. HARDER:**  I understand, Your Honor.

9          **MS. JAENSCH:**  Your Honor, those depositions are

10   going to be against the campaign, not the sitting president.

11         **THE COURT:**  All right.  Well --

12         **MR. HARDER:**  The campaign has one witness who can

13   talk about what other employees did, what their job duties

14   are, and what their pay was.

15         **THE COURT:**  The rule reads 10 depos per side.  So

16   we'll have to deal with that.

17         **MR. HARDER:**  I understand.

18         **THE COURT:**  Go ahead.

19         **MR. HARDER:**  Also, Your Honor, even if Your Honor

20   allows an eleventh deposition, that doesn't mean they're

21   entitled to 60 or 70 depositions.  That means if you grant

22   an eleventh deposition, that's one more on top of the 10,

23   and it's important to hold the line to what actually needs

24   to happen as opposed to their wish list.

25         Let's talk about the scandalous nature of the

1    allegations.  I'm not going to get into quoting from them,

2    but there's a whole line of cases about how when there's a

3    motion to strike scandalous allegations, it's not disfavored

4    by the courts.  In fact, the courts very often strike out

5    scandalous allegations, allegations that are designed to

6    impugn the integrity or the reputation of the defense.  The

7    case of *Asher & Simmons* from 2013, it's a U.S. District

8    Court case from Maryland, which talks about the scandalous

9    allegations being improper and being stricken.

10           **THE COURT:**  Here's another question:  Are any

11   prior acts relevant?  They're requesting punitive damages.

12   And, again, I'm not making any prediction on that, but are

13   prior acts relevant as to punitive damages?

14           **MR. HARDER:**  To my knowledge, no.  I don't know

15   if --

16           **THE COURT:**  So if Exxon gets sued for leaking oil

17   and killing all the otters in Tampa Bay -- there are some --

18   the fact that they did it three years ago in Galveston Bay

19   and killed all the otters -- this is a hypothetical, of

20   course -- and they did it in Chesapeake Bay five years ago

21   and killed all the otters, that's not relevant as to punies?

22           **MR. HARDER:**  That's a different cause of action,

23   and it's a different factual situation than ours.

24           **THE COURT:**  I'm talking about prior acts of

25   misconduct.  Is that relevant to punitive damages?

1          **MR. HARDER:**  My understanding is no.  I haven't

2    fully researched the issue; however, it's a different

3    situation here.  Nothing has been proven by -- this prior

4    act, nothing has been proven.  These are just allegations.

5          **THE COURT:**  Well, I know.  And your colleague

6    behind you is going to say, "Well, absolutely, Judge.  I'm

7    ready to prove it right now, if you'd let me."

8          **MR. HARDER:**  Well, we'd have to have a whole

9    litigation over it, though.

10         **THE COURT:**  They're saying, "We're fixing to prove

11   it."

12         **MR. HARDER:**  We have a right to discovery.  We

13   have a right to question that person.

14         **THE COURT:**  Right.  Of course.

15         **MR. HARDER:**  We have a right to find out their

16   documents.  We have a right to find all the other

17   eyewitnesses.

18         **THE COURT:**  Okay.  So --

19         **MR. HARDER:**  We have a right to see if they --

20         **THE COURT:**  So your answer on the punies --

21         **MR. HARDER:**  -- sent out a text message saying, "I

22   had the most wonderful time yesterday."

23         **THE COURT:**  So your answer on the punies is you

24   don't know?

25         **MR. HARDER:**  My answer on the punies is I believe

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    that it's not allowed, but I don't know for certain.

2              But, Your Honor, this case, when you read the

3    papers and you take it within the context of the overall

4    case where the plaintiffs and their -- the plaintiff and her

5    lawyers went to the media immediately with tweets and

6    Facebook posts and media interviews, repeating over and over

7    again all the scandalous nature of this case, and you

8    consider the organization that's bringing this, this is a --

9    it's a political case.  It's a political situation.  It's a

10   political agenda, using this Court to carry out a political

11   agenda, which is "Let's cost the President his reelection."

12   That's the thrust of what this case is about.

13             "Let's turn it into 20 cases.  Let's depose 60,

14   70-plus people.  Let's paralyze the campaign.  Let's

15   paralyze the President.  Let's make him look bad, and let's

16   use a court to do that."  That's what's going on, and it's

17   improper.

18             And the cases say that scandalous pleadings are

19   improper, and that's what we have here where they bring out

20   all these allegations of things that may or may not have

21   happened.  They're citing to news articles, which are

22   hearsay, which are inherently unreliable.  And they're

23   trying to prove something that never happened in a campaign

24   RV but saying that 19 other people, or two people, or

25   however many you want to consider, had allegations from 12

```
1   years ago to 37 years ago, in completely different contexts,

2   all of which have been denied, none of which have been

3   proven.  And it was so long ago it hamstrings us to do

4   discovery even if discovery was allowed.  But I don't think

5   discovery should be allowed.  There shouldn't be a

6   multiplying of the discovery in this case or of the trial.

7           I believe I've covered my portion of this, if you

8   have any questions.

9           THE COURT:  Thank you.

10          Let me ask the plaintiff.  Did you-all separate

11  out your argument, or is one person doing all of it?

12          MR. ZAVAREEI:  I'm doing all of it, Your Honor.

13          THE COURT:  Okay.  Well, then we'll hear from

14  Ms. Jaensch on the labor side, and then we'll hear from you.

15  Thank you.

16          MR. ZAVAREEI:  Thank you, Judge.

17          MS. JAENSCH:  May it please the Court, Your Honor.

18          THE COURT:  Of course.

19          MS. JAENSCH:  The claims against the campaign are,

20  I want to say, unique in the history of jurisprudence.  I

21  have -- and I would bet that Plaintiff's counsel has also --

22  researched extensively to see any case ever in the history

23  of jurisprudence where a political campaign has been sued

24  for FLSA violations.  And I will submit to Your Honor that

25  the only case that I've seen in researching this for a long
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    time is this *Katz* case that is currently pending in the

2    Eastern District of Pennsylvania.

3                **THE COURT:**  I read that.

4                **MS. JAENSCH:**  And that is literally the only case

5    there is.  And I suspect the reason that that is the case is

6    because political campaigns, by their very nature, are not

7    enterprises that are covered by the FLSA because they're not

8    engaged in commerce.  They are engaged in political speech.

9    Their sole purpose and function is to elect candidates and

10   do public outreach.  They don't produce goods.  They're not

11   engaged in commerce.

12               And the *Katz* case did find that and dismissed the

13   complaint.  Now, there is a third amended complaint that's

14   pending which has not been ruled on yet where they've

15   bolstered the claims in the case.  But they made very

16   similar allegations to the kind of -- well, I mean, they're

17   not even allegations in the complaint, frankly.  They're

18   just allegations that are in the papers that were filed.

19               The complaint itself -- and we're not suggesting

20   the complaint is too short.  We're saying that the

21   allegations that exist in the complaint that relate to the

22   EPA and 1981 claims are insufficient to state a plausible

23   claim.  We're not saying it's too short.  People can make a

24   complaint as long as they want.

25               **THE COURT:**  And not to just be difficult, but so

1   the guy that sweeps up the floor at the Jones campaign

2   headquarters, they don't have to pay him overtime?

3          **MS. JAENSCH:**  Yes.  Correct, Your Honor.

4          **THE COURT:**  They don't?

5          **MS. JAENSCH:**  They do not.

6          **THE COURT:**  All right.  Okay.

7          **MS. JAENSCH:**  Now, I'm not suggesting that --

8   there may be that that person can establish individual

9   coverage.  Maybe there is a situation -- I mean, there are

10  two ways to establish coverage.  One is through enterprise,

11  and one is through individual coverage.  However, in

12  collective action, you would have to have enterprise

13  coverage.  Otherwise, you would have to plead and prove that

14  every individual person was engaged in commerce, in

15  interstate commerce.

16         **THE COURT:**  Is there any case law that says that a

17  collective action must travel on enterprise coverage?

18         **MS. JAENSCH:**  Well, it is not that it must --

19         **THE COURT:**  Your statement makes intuitive sense.

20         **MS. JAENSCH:**  Yes.  Well, I don't have a case

21  that's directly on all fours, but I probably could find one.

22  But the inquiry on substantial equality in an individual

23  case is made on a case-by-case basis, as is individual

24  coverage.  The individual employee -- and I guess I could

25  say that the *Tony and Susan Alamo Foundation v. Secretary of*

1   *Labor*, which is a Supreme Court case --

2           **THE COURT:**  I read that too.

3           **MS. JAENSCH:**  -- does sort of imply that you have

4   to show that the eleemosynary portions of whatever an

5   employee is doing would not be covered by the individual

6   coverage.  If they were doing activities that were engaged

7   in interstate commerce, those activities have to be the

8   substantial part of what they're doing.  And so the Court

9   has to make that determination on an individual basis by

10  employee.  So the person that sweeps the floor is virtually

11  certain to not be individually covered even for a

12  corporate --

13          **THE COURT:**  Because in your view there's no

14  enterprise coverage?

15          **MS. JAENSCH:**  Well, the person who sweeps the

16  floor probably is also not covered by individual coverage

17  because they're not engaged in interstate commerce.

18          **THE COURT:**  There's no enterprise coverage, and

19  this person is just sweeping the floor.  Now, what if this

20  person sets up and attends rallies in Alabama and goes

21  around and now is in charge of Winnebagos on interstate

22  highways up and down Florida and all that stuff?  Is she

23  qualified, based on what she did, for individual coverage?

24          **MS. JAENSCH:**  Again, that's, to some extent, going

25  to be a factual determination.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    **THE COURT:**  Well, in the complaint we have to

2    accept those as true.

3    **MS. JAENSCH:**  I understand.  But she hasn't

4    alleged that in the complaint.  All she said in the

5    complaint is that she traveled around and dealt with RVs in

6    Florida.

7    **THE COURT:**  Well, a little more than that.  Didn't

8    she participate in Alabama with Senator Sessions when he

9    endorsed, and it was a big smashing success and all that?

10   **MS. JAENSCH:**  It may be that she will be able to

11   plead individual coverage.  She hasn't so far.  That would

12   not establish a collective -- that would not establish her

13   ability to be a representative of a collective action.  So

14   let me first say that.  She could not be a representative,

15   even if she established individual coverage, of a collective

16   action because there is no enterprise coverage.

17   **THE COURT:**  There's no enterprise coverage.

18   **MS. JAENSCH:**  So that's number one.  She'd have to

19   plead that the individuals who desire to opt in are

20   themselves all individually covered.  I would submit to the

21   Court that the simple use of interstate commerce does not

22   establish individual coverage where the interstate commerce

23   has no relationship at all to commerce.  In other words, if

24   you were a minister --

25   **THE COURT:**  Sold $3 million worth of red hats.

1    **MS. JAENSCH:**  Well, Your Honor, there are -- and I

2    looked at this.

3         **THE COURT:**  Some of them are white.

4         **MS. JAENSCH:**  The Federal Election Commission has

5    determined that the sale of hats and pins and things like

6    that as an inducement -- I mean, it's not even a sale.

7    They're simply inducements for campaign contributions.  And

8    I have a copy of this for everyone.  But an inducement to

9    the contributor to give money is not an item for commercial

10   sale.  It's strictly for the purposes of inducing a

11   contribution to the campaign.

12        **THE COURT:**  Yes.

13        **MS. JAENSCH:**  Just like having a dinner is.  Just

14   like having a dinner where, of course, okay, you're buying

15   things, you're selling things, you're renting hotels, you're

16   doing all kinds of things, that doesn't make it -- doesn't

17   make a political campaign a commercial enterprise.  It

18   doesn't make it in competition with anybody else.  The

19   arguments -- again, nothing pled in the complaint but all of

20   these extraneous arguments that are based on newspaper

21   articles and things like that, that have been pled through

22   the response opposition, says, "Well, the campaign spent a

23   million dollars, and then they sold these hats.  And people

24   contributed money.  And there were other people who tried to

25   have licenses, and those people tried to compete by selling

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    hats."  So what?  The purpose of the campaign is to elect a

2    candidate.  That is speech.  That is protected by the First

3    Amendment.

4         **THE COURT:**  So the religious activity of the Alamo

5    Foundation, no?

6         **MS. JAENSCH:**  Well, exactly.  I mean, The Alamo

7    Foundation case is the exact -- I guess the representative

8    kind of case that shows when it's not religious activity.  I

9    mean, in that case they were running a grocery store.  They

10   were running a hog farm.  They didn't even take donations

11   from the public, and they had recovering drug addicts

12   working for free.

13        I mean, a campaign, like a church, is comprised of

14   volunteers, employees, independent contractors, all kinds of

15   people whose sole function is to elect someone to public

16   office.  And the fact that in doing that and inducing people

17   to contribute or to vote they buy and sell hats and things

18   like that, the Federal Election Commission has said that

19   that is not a sale.  That is an inducement for the

20   contributor to give money.  And that is Advisory Opinion

21   1975-15 which had to do with payments of royalties to a

22   campaign committee and to a candidate.

23        And as it related to the campaign, the Federal

24   Election Commission said that "It is the Commission's view

25   that when a campaign sells described items" -- in this case

1    it was, I think, hats and some pins -- "it is engaging in an

2    activity to raise funds and to build support for the

3    candidate.  As a general matter, a person who transmits

4    money to a political committee or candidate, any portion of

5    which is available to be spent for the purpose of

6    influencing a federal election, has made a contribution in

7    the full amount of the funds so transmitted."

8            So unlike situations where -- and there have been

9    some court cases where they have sort of struggled with

10   "Okay.  Well, if you are given a trip and the trip was

11   donated by a travel agency, the person who buys it gets

12   something of value."  And so there's a question about

13   whether that is just purely a charitable contribution even

14   under the tax laws.  But in this case, even under the tax

15   laws, that would be a political contribution.  It would not

16   be something -- you are not receiving something of value

17   even if there is some other company that's trying to sell

18   hats.  The campaign, when it does it, is not competing with

19   other people who sell hats.

20           But, again, none of that is alleged in the

21   complaint.  Nothing in the complaint about that.  They don't

22   even allege that $500,000 in sales occurred.  But I'm

23   suggesting that even if they could allege that, there would

24   not be enterprise coverage in this case.  That is what the

25   *Katz* court found where the allegation was that the

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1   Democratic National Committee was selling data on campaign

2   contributors through this database that was being operated

3   by the DNC.  And the Court did hold that even if that's

4   true, that was not --

5          THE COURT:  And is that on appeal?  Where is that

6   now?

7          MS. JAENSCH:  No.  They have a third amended

8   complaint.

9          THE COURT:  Okay.  That's right.  That's right.

10  It was without prejudice.

11         MS. JAENSCH:  Yeah.  So we'll see.  There was an

12  issue, as well, about whether or not it exceeded 500,000.

13  So here we're not going to have that issue.  I mean, there's

14  millions of dollars at stake in terms of hats and all that

15  type stuff.  So we're not going to dispute that the numbers

16  are there.  The issue is that that's just not a sale.  It's

17  not a sale under the enterprise coverage portion.

18         The greater question would be if Ms. Johnson

19  amends the complaint, does she allege things that are

20  sufficient to establish individual coverage?  I can't know

21  that because the complaint literally just talks about that

22  she was in charge of moving RVs within Florida and writing

23  things for the campaign, talking about things in the

24  campaign, outreach.  So while it is true --

25         THE COURT:  I can't infer that?

1          **MS. JAENSCH:** Pardon me?

2          **THE COURT:** You're saying it would be improper to

3     infer that based on what a political campaign does?

4          **MS. JAENSCH:** I'm saying their argument is that

5     she used the phones and that she used the computers and that

6     there's cases that say that just using phones and

7     computers -- but those have to do with using those things in

8     connection with interstate commerce. It's not ancillary to

9     interstate commerce. It's not "I'm using a telephone call

10    to set up a hotel room or moving of RVs for the purpose of,

11    again, just political speech." That's not the standard.

12    But, again, I can't speak to that because these are things

13    that are just argued in a motion, not really alleged in the

14    complaint.

15         The further argument, again, on the collective

16    piece of things, is that -- and the opposition papers say

17    this over and over and over inexplicably. And that is the

18    EPA claims are unique. They are not Title VII claims. They

19    did not file a charge. They did not go through the

20    administrative procedures. They have a 1981 claim which can

21    be brought without going through those hoops. And they have

22    an EPA claim which is under the FLSA.

23         These are unique claims, particularly the EPA

24    claim. And it requires a higher standard than a Title VII

25    wage claim. It requires that the plaintiff establish and

1   plead elements that the plaintiff -- or in the case of a

2   collective action, the others who are similarly situated --

3   were paid less than men for substantially equal work.  Not

4   everyone in the National Strike Team did things, and so

5   they're all going to be --

6          THE COURT:  Well, doesn't she say that?  I mean,

7   she says that, doesn't she?  She lists about five males and

8   says --

9          MS. JAENSCH:  Well, I mean, the people that she

10  listed highlight the point that this just doesn't state a

11  plausible claim.  One of the people she said was, like,

12  mowing the lawns.  The other person is, like, the head of --

13  the director of communications.  That's not what she was

14  doing.  She isn't director of communications.

15          She says she was moving RVs around in Florida

16  mostly.  In fact, her allegation was that the most important

17  thing that she did regarding her own duties was, if I

18  recall, to do African-American outreach and to organize the

19  RVs in Florida after she left the primary in Alabama.  She

20  says that Matt Ciepielowski, which is at paragraph 112 --

21  there's no indication of what that person did.

22  Austin Browning, who's at paragraph 112(c), there's no

23  duties listed, wages, nothing, just says he's a teenager.

24          Their argument is, essentially, a comparable worth

25  argument, which has been rejected over and over again by the

1  Eleventh Circuit and every other court.  The allegation that

2  people who are less qualified but do things that aren't

3  worth the same should be not paid the same or should be paid

4  less, that's a comparable worth argument.  That is not an

5  Equal Pay Act argument.  And that's what the argument is

6  with regard to this Austin Browning.  The allegation is

7  "This person is a teenager.  They have no qualifications at

8  all, yet they worked on the strike team and did things."

9  Well, that's not the same as being the outreach person for

10  African-American contributors or being in charge and moving

11  RVs all throughout Florida.

12         The other one, paragraph 75, well, he's the chief

13  of staff for Florida.  How is that person in any way doing

14  an equal thing?  Of course, it's not been pled.  So I'm

15  making a summary judgment argument here.  I mean, these

16  haven't been pled.  And the Middle District of Florida has

17  said that at a minimum, under *Iqbal*, you do have to plead

18  what the difference in wages is and you do have to plead

19  what the duties were.

20         **THE COURT:**  So paragraph 112 is not sufficient in

21  your view?

22         **MS. JAENSCH:**  Not only not sufficient, but if

23  Your Honor were to rule, judgment on the pleadings on those

24  allegations, they would not state a plausible claim under

25  the EPA because it shows that some of these people are

```
 1   clearly not performing substantially equal work based on the

 2   pleadings.

 3           THE COURT:  She actually says some of them

 4   performed less and got more money.

 5           MS. JAENSCH:  Right.  Less.  That's --

 6           THE COURT:  I mean, "The white guy did less than I

 7   did and got paid more."  I mean, that's what she's saying.

 8           MS. JAENSCH:  That's exactly not an Equal Pay Act

 9   claim.

10           THE COURT:  Why not?  Because --

11           MS. JAENSCH:  Because that's comparable worth.

12   Comparable worth means --

13           THE COURT:  I guess I don't -- all right.  So let

14   me just tell you what's in my mind, and you correct me.

15           MS. JAENSCH:  Okay.

16           THE COURT:  I was discriminated against because of

17   my race, and here's six people that I say did what I did or

18   less and were paid more.  So this teenager was paid more,

19   and he was the favored race.  And I got paid less, and I did

20   more.  That doesn't show discrimination based on race?

21           MS. JAENSCH:  No.

22           THE COURT:  Okay.

23           MS. JAENSCH:  Under 1981, the prima facie case is

24   that the comparator performed similar duties and was treated

25   differently.  And that's true in every kind of
```

                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

1   discrimination case.  So, for example, if I'm disciplined

2   for lying and someone else is disciplined for throwing away

3   food, and we're differently disciplined but one person is a

4   different race, that's evidence of nothing.  It has to be

5   that, as a prima facie case --

6           THE COURT:  Apples to apples.

7           MS. JAENSCH:  It has to be apples to apples.

8           THE COURT:  So if I'm the African-American

9   chairman.  And I get a hundred dollars, and the white lawn

10  mower guy gets 120, that means nothing?

11          MS. JAENSCH:  Exactly, Your Honor.  Otherwise, the

12  Court would be in the business of being a personnel policy

13  manager.

14          THE COURT:  Okay.

15          MS. JAENSCH:  That's like me coming in and saying,

16  "I think I am worth more" -- and this is where the

17  comparable worth argument is.  "I think I'm a better lawyer

18  than Mr. Harder" --

19          THE COURT:  So it has to be apples to apples.

20          MS. JAENSCH:  -- "so I should be paid more because

21  I'm better."

22          THE COURT:  I understand.

23          MS. JAENSCH:  So that's why I say that these

24  allegations not only are insufficient to have a plausible

25  case, they are indicative of not having a plausible case.

1   Because the people that she alleges, there is no indication

2   in the pleadings that they do anything remotely -- not just

3   not similar, but certainly not substantially equal to.

4           **THE COURT:**   That's why they want to take their

5   depos, I guess.

6           **MS. JAENSCH:**   Well, I understand that, but that's

7   not -- I mean, the two cases that we cited that

8   Judge Covington ruled on and -- I'm going blank on the

9   judge's name.  But the more recent cases are very clear that

10  in FLSA cases and EPA-type cases, you don't get to just

11  search for people.  You don't get to say, "Well, there might

12  be someone who's similarly situated to me."  If you want a

13  collective action, you've got to identify who are those

14  people.

15          And one thing I've learned in this case, which I

16  didn't know, frankly, is how unique a campaign is from an

17  employment standpoint.  And I understand Your Honor cannot

18  take things outside of the pleadings, but if I can just say

19  for context, if you were to go on the FEC website, which is

20  what sort of Plaintiff's counsel kind of refers to this

21  public record FEC website, you would see that there are

22  hundreds of people who are shown to have received money.

23  And they are independent contractors, as an example.

24  Because maybe they work in one state.  So they might work

25  for the campaign for a month, and they might do outreach in

1   that state for that month.  They're an independent

2   contractor.  Well, they're not even going to be covered by

3   the EPA, assuming that we can establish that they're

4   independent contractors.  So a campaign is very finite.

5   It's unlike any corporation that I've seen, right?  Because

6   these employees only work there during the campaign.  And

7   they have independent contractors.  They have all these

8   different people.  It's this very short period of time, and

9   then they don't work there anymore.

10          So this case, we're really not likely to be

11   talking about large numbers of people.  I think there may

12   have been 18 women that were actually employed by this

13   campaign.  So we'll be getting into those kinds of things.

14   But this isn't one of these collective actions where, if we

15   go nationwide, we're going to just have hundreds and

16   hundreds and thousands of people, unless we go into all

17   these independent contractors maybe.

18          So I only raise that to say that it would not be

19   that difficult to plead the duties and the comparators to

20   show what the allegations are.  Otherwise, we're sort of

21   shooting in the dark to say, "What does this person do?

22   What does this teenager do?"  That's just not -- that's not

23   something that we're supposed to answer that is in an EPA

24   case or even in a 1981 case.  Because in a 1981 case, again,

25   it still has to be -- I mean, it's a lesser standard, but it

1    still has to be similar.  And maybe she'll be able to pled

2    that.

3            But from a collective action standpoint, this is

4    incredibly deficient, despite being long, to establish that

5    there are women out there who worked for the campaign, who

6    did the substantially equal thing that Ms. Johnson did, that

7    desire to join because men, unidentified, in the campaign

8    were doing the substantially equal thing and paid more.

9    There's just no allegation that suggests that.

10           Does Your Honor have any further questions?

11           **THE COURT:**  I don't.  I appreciate your

12   presentation very much.

13           Everybody okay?  If I see a hand up, we'll take a

14   break.  Otherwise, we'll keep going.

15           Okay.  Counsel, quick question.  Count III, the

16   1981, that's against the campaign; is that correct?

17           **MR. ZAVAREEI:**  Yes, Your Honor.

18           **THE COURT:**  I may have dreamt it.  I thought

19   paragraph -- maybe I was late at night reading this.  I

20   think there might be a typo in 143, in paragraph 143.

21           Okay.  So let's just talk for a minute.  And I'm,

22   of course, going to give you your full say.  You know, let's

23   don't pretend.  Okay?  This is all about politics.  All

24   right?  I've read your complaint.

25           Mr. Harder is a very clever guy.  And he's got a

1 real sharp friend.  And here's what he's going to do.  Okay?

2 His friend.  This is all hypothetical.

3          There was a female not that long ago,

4 African-American, I think, who said, "Joe Biden grabbed me

5 or nuzzled up to me and made me very uncomfortable."  So his

6 buddy, the Republican team, is going to get that lady and

7 file suit.  And then they're going to list the gal, the

8 biker lady that he was sitting on her lap or vice versa, and

9 they're going to list the little girl, Senator Coons's

10 daughter -- who's, by the way, the world's greatest guy,

11 Senator Coons.  And they're going to say, "Ah, we got a

12 battery.  We want to go depose so-and-so because

13 Senator Biden ten years ago nuzzled up to her."

14          And I understand the Democrats would take great

15 umbrage of that and say, "It's all untrue.  It doesn't

16 compare.  Donald Trump is much, much worse."

17          But would that be a proper complaint?  And, if

18 not -- because I would say it wouldn't be -- what's that say

19 about yours?  I mean, you're going back to 1994 where he

20 tried to grab some gal or something?

21          So let's just talk about that.  Aren't you doing

22 just what I hypothesize that some sharpy Republican out in

23 California, some sharp lawyer, would try and do against

24 Biden?  I understand that certainly the Democrats would say

25 it's greatly different in impact and effect.  But, I mean,

```
 1  what's the difference?

 2          Isn't this -- the word is philippic, okay, which

 3  was Cicero, in the 2nd century B.C., would give speeches

 4  against Philip of Macedon.  You know, "He's a horrible man.

 5  He's got a bad character."  So it came into English usage as

 6  a noun.  Isn't this just a philippic really?

 7          I mean, go ahead, with that preface.

 8      MR. ZAVAREEI:  Thank you, Your Honor.  I'm going

 9  to try and answer that question first, and then I'm going to

10  proceed to my argument, if I may.

11          Your Honor, that case isn't before us.  But let's

12  assume that, if we could, that if somebody came forward and

13  said that Vice President Biden's touches were

14  inappropriate --

15      THE COURT:  Well, she did.  Okay?  You know she

16  did.  I know she did.  I'm not saying it happened.

17      MR. ZAVAREEI:  No.  But I'm saying if she sued.

18  Let's say she sued for --

19      THE COURT:  And they got every other one where he

20  got too close to some gal or whatever and put that in the

21  complaint back 20, 30 years like you have.  Okay?

22      MR. ZAVAREEI:  So the question would be whether it

23  is admissible and whether or not there's an exception or a

24  reason under Rule 404 where this would come into evidence,

25  right?  Does it go to intent?  Does it go to knowledge?  Or
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    does it go to habit?  Those are the three issues here.

2            THE COURT:  Right.

3            MR. ZAVAREEI:  Now, Your Honor, that's going to

4    have to be -- it's going to depend on what we're talking

5    about.  I mean, we sort of know the facts based on what

6    we've read in the news about Vice President Biden and the

7    things that he's done and whether or not that would

8    constitute battery, but the first question is would that be

9    battery in the first instance?  Is putting your arm around

10   somebody or snuggling with somebody to comfort them, is

11   that --

12           THE COURT:  That lady said that it was unwanted

13   contact.  Okay?

14           MR. ZAVAREEI:  So if she were to bring a lawsuit

15   for that and she wanted to prove that what Biden was doing

16   was part of a habit of unwanted conduct and there was

17   evidence of that, she could use that habit evidence,

18   Your Honor.  There is an Eleventh Circuit opinion that is

19   directly on point with respect to habit evidence.  I think

20   the most important --

21           THE COURT:  Is it a battery?

22           MR. ZAVAREEI:  That case was not a battery,

23   Your Honor, but there are other battery cases.

24           THE COURT:  What was the habit?

25           MR. ZAVAREEI:  So in that case -- this was the

1   *Loughan v. Firestone* case.  And in that case it was an

2   employee who was a mechanic and the tires exploded while he

3   was changing them.  And he sued Firestone, saying the tires

4   were defective.  And Firestone's defense was "No, this guy

5   is drunk."

6           There was no evidence that he was drunk.  There

7   was nobody who testified that he was drunk.  But they

8   brought in evidence to show that it was his habit to drink

9   before work.  There was evidence that he brought a cooler of

10  beer to work.  There was evidence from his superiors that he

11  drank at work.  There was evidence from his coworkers that

12  he drank at work.

13          Those same people, though -- this is really

14  important, Your Honor -- said, "On that particular day, we

15  have no evidence or reason to believe he was drinking.  But

16  that was his habit."  And the Court allowed that evidence in

17  in order to show that he acted in conformity with that

18  habit.  Because habit evidence is a very particular -- it's

19  different than motive or intent or knowledge.  With respect

20  to habit evidence -- which I submit that we have here,

21  Your Honor.  With respect to habit evidence, you can bring

22  in evidence of prior actions to show that someone acted in

23  conformity with that habit.

24          **THE COURT:**  And how does that --

25          **MR. ZAVAREEI:**  It's distinct from character

```
 1    evidence in that regard.

 2              THE COURT:  That's a very fine distinction.

 3              MR. ZAVAREEI:  It is, Your Honor, but I would

 4    really urge you to read this decision.  And if I may point

 5    out a couple of things that are from the decision, when they

 6    cite to McCormick on Evidence, the Eleventh Circuit

 7    describes that character evidence is a general trait like

 8    honesty or temperance or peacefulness.  But when you're

 9    talking about habit evidence, what you're talking about is,

10    quote, "One's regular response to a repeated specific

11    situation.  The doing of the habitual acts may become

12    semi-automatic."  And the Court also held that the more

13    evidence you have of that, the better to prove that it's a

14    habit.

15              And so here, Your Honor, what we've got is --

16    let's strip out the allegations of groping and other

17    misconduct.  Let's just stick to the defendant's own words

18    where he says that "I just start kissing them.  It's like a

19    magnet.  Just kiss.  I don't even wait."

20              THE COURT:  All right.

21              MR. ZAVAREEI:  That's an admission that he has the

22    habit.

23              THE COURT:  Yes.  You know what, and it's a very

24    telling admission, because it talks about kissing.  It's

25    also 11 years ancient from the tort.
```

1          **MR. ZAVAREEI:**  But --

2          **THE COURT:**  Just hold on.  I mean, I've dealt with

3    404(b) evidence a lot.  Okay?  I tried a five-month jury

4    trial in here on your side of the table.  Actually, I was

5    defense, criminal.  And we had a week of 404(b) evidence.

6    And there are temporal issues maybe.  And once you get to

7    about 10 years, it starts to get a little questionable.

8          Go ahead.

9          **MR. ZAVAREEI:**  I understand that.  Absolutely,

10   Your Honor.

11         But let's keep in mind the most recent incident

12   was -- I don't know why my friend insists that the most

13   recent incident we have is 12 years ago.  The most recent

14   incident was against Katy Tur in 2015 where she described

15   exactly what happened to Ms. Johnson here and describes

16   exactly how that made her feel.  Other incidents are in

17   2000 -- just talking about kisses, kisses alone, 2011, 2007,

18   2005 -- three incidents in 2005.

19         And, yes, it does go back.  But, Your Honor, the

20   more recent cases suggest that you can go back at least as

21   far as 15 years.  There's no hard-and-fast temporal line.

22   The question is, really, how similar these acts are and

23   whether they're probative.

24         **THE COURT:**  And let me ask you this.  We get a lot

25   of -- a lot, and I'm still learning the field -- Title VII

1   cases, hostile work environment cases.  I know the Eleventh

2   Circuit's case law, as I understand it, this would not

3   qualify.  This would be summary judgment material on a

4   hostile work, sexual harassment, if the employee said, "You

5   created a hostile work environment because you touched me,

6   you kissed me without my will."  I'm pretty sure that this

7   wouldn't qualify under the Eleventh Circuit cases.

8          Now, it's a battery, so it's different.  But

9   aren't you bringing -- maybe I'm wrong, but I don't think so

10  because there's quite a few cases.  A claim that he held her

11  hand and kissed her on the side of her mouth, she didn't --

12  it was unconsented, of course -- a claim that would fail if

13  you claim that this was an employer creating a sexual

14  harassment/hostile work environment?

15         **MR. ZAVAREEI:**  I think that's absolutely right.  I

16  don't agree with that, with the law.  But, yes, absolutely,

17  Your Honor, it would not be sufficient to create a hostile

18  work environment.  But that's not the case that we have

19  here.  What we have here, Your Honor, is a litigant who's

20  before you, like any other litigant, bringing a case of

21  battery against a person who happens to be the President of

22  the United States.

23         **THE COURT:**  And she is entitled to have that day

24  in court.  There is no doubt about it.

25         **MR. ZAVAREEI:**  And, Your Honor, my friend quoted

1   from *Clinton v. Jones* and cited to *Clinton v. Jones*.   I

2   would submit to you, Your Honor, the most important aspect

3   of that case is the language that states:  "Like every other

4   citizen who properly invokes the Court's jurisdiction,

5   Respondent has the right to the orderly disposition of her

6   claims."  And what we have here, Your Honor, is an effort to

7   completely deprive her of a right to orderly dispose of her

8   case.  What they're trying to do is cut her off at the pass.

9        THE COURT:  Well, let's talk about

10   *Clinton v. Jones* because it cuts both ways on both of you.

11        I may be wrong, but I don't think the plaintiff in

12   *Clinton v. Jones* -- and you can correct me, maybe, after

13   this hearing, but I don't think the plaintiff said, "Well,

14   he -- six years ago at the Camelot Motel, he groped" --

15   whatever her name was -- "Ms. Broaddrick, and then he rubbed

16   up to Kathleen Willey."  I don't think she threw all of the

17   other allegations in the complaint like you have.  I don't

18   think.  Okay?  So if I'm wrong, correct me.

19        So I think that she simply said, "He battered me,"

20   or whatever he did, "assaulted me, and I want my damages."

21        MR. ZAVAREEI:  Well, Your Honor, that was not part

22   of the Supreme Court decision, whether she said that or not.

23        THE COURT:  It's part of the district court

24   decision, I think.

25        MR. ZAVAREEI:  Well, I'd have to look at that,

1    Your Honor.  I apologize.  I'm not aware of that.

2           THE COURT:  I think that's the case.

3           MR. ZAVAREEI:  But what I would say, Your Honor,

4    is that my client, just like any other litigant, is entitled

5    to allege her case and prove her case as she sees fit.  The

6    Supreme Court decision with respect to *Clinton v. Jones* does

7    not say anything at all about other evidence.  There's just

8    nothing in there about it.  What it says clearly is that

9    anybody who sues the President of the United States must be

10   treated like any other litigant.

11          THE COURT:  You are completely correct.

12          MR. ZAVAREEI:  So what we have here is a motion to

13   strike --

14          THE COURT:  So if someone came in -- putting aside

15   all the politics, I agree with you.  She is entitled to be

16   treated as any other plaintiff.  She has pled an injury.

17   It's a real injury.  I don't doubt for a minute that,

18   accepting her facts as true, she was very injured as a tort

19   victim, accepting her facts as true.

20          But suppose she was just Sally Smith and he was

21   Johnny Jones from Tennessee and we're in here on diversity.

22   Because that's what you said, and I agree with you.  She

23   should be treated as any other tort person.  So this

24   happened in 2016.  So am I going to let Sally Smith, the

25   normal plaintiff, say that 36 years before the battery, that

1    Mr. Nobody Defendant grabbed some gal in an airplane?

2    Thirty-six years?

3              **MR. ZAVAREEI:**  You might not, Your Honor.  But

4    you --

5              **THE COURT:**  Of course I wouldn't.  And you

6    wouldn't either, would you?  So put aside the politics and

7    that he's got everybody riled up and the whole bit.  Okay?

8    Thirty-six years before Ms. Smith and Mr. Jones -- so Smith

9    is saying, "He battered me in 2016."  And I'm going to let

10   her say about Mr. Jones, "But 36 years before he grabbed

11   some gal's front in an airplane" in the complaint?  Come on.

12   Really?

13             **MR. ZAVAREEI:**  Well, Your Honor, at the

14   appropriate stage, in a motion in limine, I wouldn't be

15   shocked or surprised if you said, "That's too remote.  We're

16   not going to let that in."  But what we have instead is a

17   highly disfavored motion where what my friend is trying to

18   do is say, "The only evidence you're allowed to have in this

19   case is he said, she said, and the other people in the RV.

20   That's what discovery should be limited to.  That's all that

21   should be allowed to happen."  And we say, "Hold on."

22             **THE COURT:**  You say, "We want to try 20 tort

23   claims."

24             **MR. ZAVAREEI:**  Well, we don't say we want to try

25   20 tort claims.

1    **THE COURT:**  Didn't you tell me there were 19 other

2  people you want to depose, other victims?

3    **MR. ZAVAREEI:**  Yes, Your Honor.  Absolutely.

4    **THE COURT:**  Sounds like 20.  Nineteen plus one,

5  right?  Then they would have to depose that person and say,

6  "Well, did you seek psychological counseling?  Well, let's

7  go get those records.  And who else was there?  Well, the

8  person saw it from the corner.  Well, let's" -- I mean,

9  isn't that what you want?

10    **MR. ZAVAREEI:**  Your Honor, I think we are entitled

11  to bring that evidence in.  And that's not even before the

12  Court right now.

13    **THE COURT:**  How many depositions do you -- well,

14  it is.  I'm allowed to ask the breadth and depth of your

15  complaint.  How many depositions do you think you're talking

16  about?

17    **MR. ZAVAREEI:**  Well, Mr. Harder said 60 to 70.  I

18  don't know where that number came from.  We identified, I

19  think, 45 witnesses.  But, Your Honor, keep in mind, that's

20  not --

21    **THE COURT:**  Well, I know 26 right now:  The

22  plaintiff, plus 19, plus the 6 witnesses you say.

23    **MR. ZAVAREEI:**  That's right.

24    **THE COURT:**  There's 26, and we haven't even gotten

25  to the labor case yet, right?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

49

```
1              MR. ZAVAREEI:  Exactly.

2              THE COURT:  There might be another two dozen.

3              MR. ZAVAREEI:  Exactly.  Well, I don't know if

4    it's two dozen, but it's certainly all the comparators, all

5    of the people who opt in if we're granted conditional

6    certification.

7              THE COURT:  Have you ever seen -- because, to me,

8    this evidence you want in on the battery is 404(b), okay?

9    I've never seen it pled.  I've never seen -- usually it

10   comes up in criminal cases because quite -- to just tell the

11   truth, civil cases never go to trial.  I usually don't see

12   the 404(b) pled.  You understand your sort of complaint, the

13   sort of 404(b), sort of swallows up the tort?

14             MR. ZAVAREEI:  I certainly appreciate that

15   criticism.  I don't agree with it, but I understand that,

16   Your Honor.  Because I think here -- the reason I don't

17   agree with it, Your Honor, is because I think it is --

18   particularly in light of what we have of people denying her

19   version of events and saying it didn't happen -- that this

20   is the strongest supporting evidence that she has to show

21   that, actually, that's not true, Your Honor, and also to

22   show the intent and also to show the knowledge.  That is

23   really important evidence here.

24             And, you know, one of the things they want to

25   strike are his own admissions, his admissions that he made.
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    Those aren't scandalous.  We didn't make those up.  Those

2    are things that the defendant said himself.  So the idea

3    that somehow there's something scandalous about that,

4    Your Honor, is just not fair.  These are things that the

5    defendant put into issue; we didn't.

6              **THE COURT:**  Eleven years before the tort.  So I

7    guess there's no --

8              **MR. ZAVAREEI:**  Well --

9              **THE COURT:**  Does temporal proximity mean nothing?

10             **MR. ZAVAREEI:**  It does.  It does mean something,

11   Your Honor.  And I would not be surprised if you wanted to

12   limit it and say, "Okay.  We're only going to go back 15

13   years."

14             But what I would say, Your Honor, with respect to

15   the Access Hollywood recording, you say that was 11 years

16   ago.  But when it came out, that was the event that's got a

17   lot to do with this case.  That was the event that -- you

18   want to talk about whether it shows intent or knowledge.  To

19   Ms. Johnson, it did.  That was when she realized exactly

20   what had happened to her and exactly what his intent was.

21   Because he told her.  He told all of us what his intent was.

22             And so the idea that we need to strike his own

23   words that are so critical to what happened here, when she

24   left the campaign, when she hired a lawyer, went to see a

25   therapist and never came back, that somehow that should be

1    stricken from the complaint, Your Honor, is I think without

2    merit.

3            And, again, to get back to the standard of where

4    we started, what we're talking about here is a motion to

5    strike.  We're not here on a motion in limine.  We're not

6    here on an issue of whether or not -- a summary judgment

7    motion, whether or not this can come into evidence.

8            And so, you know, these are motions that have been

9    called time-wasters, extremely disfavored by the Court.  And

10   there's a reason for that.  Because what they're trying to

11   do, Your Honor, and what they've made clear, is they want to

12   narrow the scope of discovery in this case.  Well, if they

13   want to do that, they have to file a motion for protective

14   order or some other proper means to limit the scope of

15   discovery.  A motion to strike, Your Honor, is not the

16   appropriate vehicle to kneecap Plaintiff's case, which is

17   exactly what my friend is trying to do with this motion.

18           Your Honor, with respect to -- so I talked about

19   habit evidence and the importance of the *Loughan* case.

20   There's also a case from the Southern District of Iowa where

21   a male supervisor, pattern evidence and habit evidence of

22   groping other --

23           **THE COURT:**  What was the cause of action?

24           **MR. ZAVAREEI:**  Battery, Your Honor.

25           **THE COURT:**  Okay.

1          **MR. ZAVAREEI:**  And that habit evidence was

2    admissible in that case.  And that is *Beard v. Flying J*,

3    116 F.Supp. 2d 1077.

4          And so that's with respect to habit.  One thing is

5    worth pointing out, Your Honor.  They don't cite any cases

6    refuting our cases with respect to habit.  What they say is

7    "Well, you can't prove modus operandi."  Well, we're not

8    trying to prove modus operandi.

9          Your Honor, it sounds like you've done some

10   criminal work in the past.  Modus operandi is only available

11   to prove identity, to say, "Well, this is the guy who tied

12   up the victim in a certain way or used a certain knot.  We

13   can use MO to prove identity."  That's distinct from habit

14   evidence, and that's not what we're talking about.

15         So really what we have here is basically an

16   unrebutted argument with respect to habit evidence because

17   they haven't cited anything or haven't really responded to

18   that argument.  But more importantly, Your Honor, with

19   respect to intent, we've cited a number of cases that show

20   that prior assaults are admissible with respect to intent to

21   harm.  And we've also cited cases with respect to knowledge

22   and showing that knowledge can be proven by prior acts to

23   show punitive damages.  The example that you gave, there are

24   some cases that we cite in Footnote 2 of our brief that go

25   to that.  But, yes, absolutely, Your Honor, that prior bad

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    acts can be used to show knowledge and intent.

2            With respect to the defendants' Rule 8(a)

3    argument, Your Honor, again, they made a couple of arguments

4    that were not in their original brief.  And it's improper in

5    this Court to make new arguments on the reply.  But even if

6    those arguments were properly before the Court, the two

7    cases that they cite are not on point.  They involve

8    complaints that were 96 pages long or 425 paragraphs of

9    unnecessary material.

10            And with respect to sort of the primary question

11   of whether or not we're talking about something that was

12   scandalous, Your Honor, they haven't presented anything to

13   show that these types of allegations are somewhat

14   scandalous.  What we're talking about here, when you're

15   dealing with scandalous, the examples that we have are

16   referring to a workplace as a concentration camp, claiming

17   that people were brainwashed, tortured, or treated like

18   Chinese Communists or that somebody was a convicted felon

19   when that has absolutely nothing to do with the case.

20   That's not what we have here, Your Honor.  These facts were

21   very carefully pled in order to support her allegations with

22   respect to intent, knowledge, and habit.

23            With respect to remoteness in time, Your Honor, I

24   would submit to you that the more recent case of

25   *United States v. LeCroy* from the Eleventh Circuit allowed

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    prior bad acts going back as long as 15 years.  And I don't

2    think that there is a hard-and-fast rule.  But we certainly

3    do understand that remoteness in time is relevant.  And

4    also, Your Honor, I would say that it would be totally

5    within the Court's discretion, and we wouldn't disagree

6    with, if the Court said, "Well, not only is this habit

7    evidence too remote, but it's not really exactly what

8    happened here."  So, for instance, we alleged groping,

9    incidents of groping.

10            **THE COURT:**  Give me that Eleventh Circuit cite.  I

11   know it's in your papers, and I probably got it in mine.

12            **MR. ZAVAREEI:**  Sure.  It's

13   *United States v. LeCroy*, and it's 441 F.3d 917 [sic].

14   That's a 2006 case.

15            So, Your Honor, if, for instance -- I think

16   remoteness in time is one thing, but also remoteness in

17   similarity could also be a factor.  So if we were before the

18   Court on a properly noticed motion to restrict discovery,

19   for instance, and Defendants were saying, "Well, look, these

20   sorts of incidents are not -- they don't really show habit

21   because it's too dissimilar.  It's not really the same sort

22   of thing," I think that would be a potentially very strong

23   argument with respect to certain of the incidents that are

24   not necessarily as similar.  But with respect to at least

25   nine incidents, Your Honor, that relate to involuntary

1   kisses, they couldn't be more precisely on all fours and

2   more similar to the conduct alleged by Plaintiff.

3          Your Honor, with respect to prejudice, Defendants

4   don't really explain how they're prejudiced by this.  They

5   ascribe motives to the plaintiff.  They say that our motive

6   is to harm the President in his reelection.  There's no

7   basis for that, Your Honor.  This case is about our client's

8   case.  We do seek to hold the President accountable for his

9   actions.  We do believe that he has engaged in sexually

10  predatory behavior, and we intend to hold him responsible

11  for that to the extent that we can within the bounds of the

12  law.  But they can't just come in here without evidence and

13  accuse us of some other motive and use that as a basis for

14  their motion to strike.  There's just no basis for that,

15  Your Honor.

16          **THE COURT:**  You kind of led into that with your

17  philippic.  But, I mean, you know, 38 years, he's on some

18  plane or something.

19          All right.  Sorry.  Go ahead.

20          **MR. ZAVAREEI:**  No.  That's fine, Your Honor.  I

21  think it's -- before I move on to the Equal Pay Act case,

22  I'd just ask if there are any other questions with respect

23  to the motion to strike issues that you have that I can

24  respond to?

25          **THE COURT:**  And I have read everything once.  Give

56

```
1   me your -- if you can, and maybe if I put you on the spot,

2   your colleague can hand you up a note.  Give me your best

3   three cases on habit.  Because I have to tell you, my

4   background here is in criminal law.  And 404(b) is moved in

5   all the time.  So what you're saying is this habit evidence

6   is not particularly under 404(b), it's simply under habit or

7   practice; is that correct?

8          MR. ZAVAREEI:  Yes, Your Honor.

9          THE COURT:  Okay.  It's a different animal than

10  404(b).  So before you sit down, I want your best, just your

11  rock solid, best three cases on habit.  You know, you want

12  nine prior incidences in.  And I'm going to read them real

13  close.

14         MR. ZAVAREEI:  Okay.  Your Honor, again, I would

15  point back to the Loughan case, Eleventh Circuit case from

16  1985, 749 F.2d 1519, and the Beard v. Flying J,

17  116 F.Supp. 2d 1077 from the Southern District of Iowa.

18  Those are my best two.  And --

19         THE COURT:  Hold on.  That's 749 F.2d 1519?

20         MR. ZAVAREEI:  Yes, Your Honor.  749 F.2d 1519.

21         And, Your Honor, this is a very detailed

22  discussion.

23         (Court was at ease.)

24         MR. ZAVAREEI:  Yes, Your Honor.  My colleague

25  provided another case, which is Foshee v. LVNV Funding,
```

```
1    which is Northern District of Alabama, so within this
2    circuit, 2012 WL 4761746.
3            THE COURT:  All right.  Okay.  I understand your
4    case on the tort piece, if you want to move over to the
5    labor claim.
6            MR. ZAVAREEI:  Thank you, Your Honor.
7            So I'm going to address first with respect to the
8    Fair Labor Standards Act the question of whether or not
9    there's individual coverage or enterprise coverage.  What my
10   friend has argued is, essentially, that campaigns cannot
11   ever be -- that there's some sort of hard-and-fast rule that
12   electoral campaigns cannot be considered enterprises under
13   the Fair Labor Standards Act.  And the Katz case is her
14   primary authority for that proposition.  But that's not what
15   the Katz case held.
16           The Katz case was, actually, is there an
17   enterprise in the first place?  Because the local Democratic
18   party was trying to bootstrap onto the activities of the
19   National party.  And the Court in Katz said, "Well, you
20   haven't shown that these two things are even a common
21   enterprise, let alone get to the question of whether or not
22   they're engaging in interstate commerce."
23           So, Your Honor, that case, really, is not on all
24   fours.  Maybe it will be.  Maybe when they come forward with
25   the amended complaint, as my friend said that they are
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1   working on, we'll have another ruling that might be more on

2   point.  But right now it's not.

3          And what we have to look at, Your Honor, is sort

4   of the economic realities of what's going on.  It doesn't

5   matter if it's a nonprofit.  It doesn't matter what the FEC

6   says how these transactions should be treated.  The fact of

7   the matter is that millions of dollars in commerce were

8   conducted by the campaign.  And, by definition, it was

9   interstate commerce.  The hats were produced in one state,

10   shipped to another state, and sold.

11          So with respect to the enterprise, I don't think

12   there's a fair question as to whether or not enterprise

13   liability has been established.

14          Now, it is probably a fair question as to whether

15   or not we've sufficiently alleged that.  We believe the

16   Court can take judicial notice of the items that we included

17   in our brief.  But, if not, we'd ask that we be given leave

18   to amend, if the Court believes that's necessary.

19        **THE COURT:**  And just so everybody knows, we're in

20   the Eleventh Circuit.  So nobody is getting put out of

21   court.  Okay?  A motion to dismiss is usually just a motion

22   to restate.

23        Go ahead.

24        **MR. ZAVAREEI:**  Thank you, Your Honor.

25        And, respectfully, Your Honor, I don't think that

1    the questions with respect to whether there's individual

2    coverage or enterprise coverage, they -- I didn't address

3    those in the reply brief because I just don't think there's

4    anything there, Your Honor.  That's not an issue that we are

5    concerned about.  We think that, as my friend noted, the

6    issue of the amount of sales, we're not disputing the

7    500,000.  And as she also said, "I'm making a summary

8    judgment argument in that context."  And I think that's

9    exactly what this is, Your Honor.  This is a summary

10   judgment argument.

11           THE COURT:  Well, she also says you never pled it.

12   So it's your position that you sufficiently pled that the

13   FLSA applies.  I'm not really sure I saw that, you know,

14   because it's enterprise in excess of 500,000 and/or that

15   Plaintiff was extensively engaged in interstate commerce.

16   The last one we tried in here -- actually, it was a month

17   ago -- and it was, like, janitors at a hotel.  And I said

18   there's no interstate commerce there.  It was a little

19   mom-and-pop hotel.  But I think she's saying that you didn't

20   allege those things.

21           MR. ZAVAREEI:  Well, she's also saying that -- she

22   said that our allegations as included in our --

23           THE COURT:  That you can't, and because it's --

24   based on these facts, you couldn't make it anyway.

25           MR. ZAVAREEI:  Right.  Even if the stuff that was

```
 1   in our response was heard by the Court, that that wouldn't
 2   be enough.  And we respectfully disagree.  We think that
 3   that is more than sufficient, Your Honor.
 4          With respect to the substance of the Equal Pay Act
 5   claim and whether Ms. Johnson has alleged sufficient claims
 6   to go forward and to defeat a motion to dismiss, I think
 7   it's important to note, Your Honor, that most of the
 8   district courts in this district, in the Eleventh Circuit,
 9   have held that that's more appropriate for the next motion
10   on the Court's docket, which is a motion for conditional
11   certification.  We are planning on filing a reply brief
12   either today or tomorrow.  So that should be fully briefed
13   and ready for the Court's consideration soon.  But we
14   believe that that's where that issue should be taken up,
15   Your Honor, not here on a motion to dismiss and certainly
16   not based on the arguments that they have made here with
17   respect to whether or not we have alleged sufficiently that
18   there are comparators who were engaged in substantially
19   equal work.
20          The standard set forth by the United States
21   Supreme Court in the *Corning Glass Works* case and then
22   followed by the Eleventh Circuit in *Miranda v. BNB Cash
23   Grocery* established that the plaintiff need not prove that
24   the job held by her male comparator is identical to hers.
25   She must demonstrate only that the skill, effort, and
```

61

```
1   responsibility required in the performance of the jobs are

2   substantially equal.  And my friend stated that it's not

3   enough that if your job responsibilities were more than a

4   comparator.  In fact, Your Honor, there is an Eleventh

5   Circuit case that holds otherwise.  It's the

6   Mulhall v. Advanced Securities, Inc., case at 19 F.3d 586.

7   And in that case they found --

8           THE COURT:  86 or 36?

9           MR. ZAVAREEI:  586, Your Honor.

10          THE COURT:  All right.  Thank you.

11          MR. ZAVAREEI:  In that case, the comparator had

12   less responsibility than the plaintiff, and the Court held,

13   quote, "If anything, we believe a jury could conclude that

14   plaintiff's position, because of its diverse components,

15   took greater efforts than did the controller's," and found

16   that the person who had less responsibility was an adequate

17   comparator.

18          Your Honor, the other thing to keep in mind here

19   is, is that, as the Eleventh Circuit has held, that the EPA

20   is a broadly remedial -- I'm sorry, the U.S. Supreme Court.

21   It's a broadly remedial statute, and it "should be construed

22   and applied so as to fulfill the underlying purposes which

23   Congress sought to achieve."  And that's from the Corning

24   case, Your Honor.

25          And here what we're trying to do is -- or what
```

1    defense counsel is trying to do is to basically say, "Well,

2    because everybody didn't have the same job responsibilities

3    and the same job titles, that you can't really have a

4    comparator."  But, Your Honor, that's not the standard.

5    It's true that they don't all have the same job titles.

6            But what we're talking about is the idea that

7    there are a lot of industries and a lot of businesses

8    today -- much different than back in the 60's when the Equal

9    Pay Act was established.  Businesses are very different now.

10   People don't always have the exact same job title.  It's not

11   like a factory job where you've got foremen and you've got

12   linemen and you've got a day shift versus a night shift like

13   you had, I think, in the *Corning* case.  Instead, Your Honor,

14   what you have are people who share responsibilities.  Some

15   people have more responsibilities than the other.  And the

16   question really becomes -- you have to go down to the

17   standard of whether or not the responsibilities are

18   substantially equal.  And we believe that we have alleged

19   that with respect to the comparators that we have set forth.

20           We have five comparators, Your Honor, who either

21   had similar or less responsibilities than the plaintiff.

22   And we believe that that is more than sufficient in this

23   case.

24           Your Honor, if you don't have any further

25   questions, I believe I'm done.

1      **THE COURT:**  Well, thank you.

2      I'm going to pitch it back to the other side, and

3  then I'll give you the final word here.

4      **MR. ZAVAREEI:**  Thank you, Your Honor.

5      **THE COURT:**  And I know this is in the pleadings,

6  Mr. Harder, but Mr. Zavareei gave me his four greatest hits

7  on habit, whatever you want to call it, practice and habit.

8  So if I sit down those -- and I'm going to, okay, hit my

9  little print button, read those.  Then I'm going to turn to

10 your stack; I'm going to read those.  So give me your four

11 best on that to show that he's wrong.  I want case law.  If

12 you need to --

13     **MR. HARDER:**  Your Honor, yeah, I mentioned them

14 earlier.  *U.S. v. Horner*.

15     **THE COURT:**  Give me the cites.

16     **MR. HARDER:**  853 F.3d 1201, Eleventh Circuit,

17 2017; *Goulah* -- G-O-U-L-A-H -- *v. Ford Motor Company*,

18 118 F.3d 1478.  It's an Eleventh Circuit 1997 case.

19 *Becker v. Arco*, 207 F.3d 176.  That's a Third Circuit 2000.

20 *Wilson v. Muckala* -- M-U-C-K-A-L-A -- 303 F.3d 1207.  That's

21 a Tenth Circuit 2002 case.  *Hudson v. District of Columbia*,

22 558 F.3d 526.  It's a D.C. Circuit 2009 case.

23     **THE COURT:**  All right.  That's all I want.

24     **MR. HARDER:**  Can I just give you one more,

25 Your Honor?

 1              **THE COURT:**  Sure.

 2              **MR. HARDER:**  *U.S. v. Sanders*, 964 F.2d 295.  It's

 3     a Fourth Circuit 1992 case.

 4              **THE COURT:**  All right.  So I want you to have your

 5     say.  We'll give it to Ms. Jaensch, and then we'll let

 6     Mr. Zavareei close up.

 7              **MR. HARDER:**  Thank you, Your Honor.  Just very

 8     briefly.

 9              I listened carefully to my colleague talk about

10     the *Loughan v. Firestone* case, which he described as a

11     situation where there was a habit of an employee who was, I

12     assume, installing tires, that he would drink before work,

13     meaning he would drink, I assume, daily before work in the

14     time period immediately preceding when he installed the

15     tires onto the plaintiff's car.  It's the same time period.

16     It's the same workplace.  It's the same job.  And it's an

17     everyday, repeated occurrence.

18              What we have here are accusations in completely

19     different settings, nothing within the same time period as

20     Ms. Johnson.  Nothing.  I think their most recent case

21     that's in their complaint goes back six years.  And I

22     apologize that I was describing the time period as 12 years.

23     Because I did see a 2013 incident or alleged incident from a

24     Ms. -- something Pageant, which, of course, is completely

25     different.

1          There's no allegations that during the campaign

2    anything like this ever occurred.  That would be a similar

3    time period.  The campaign occurred in 2015 in the primary

4    and then 2016, which is the primary and the general

5    election.

6          Mr. Trump came into contact with thousands of

7    women during that time.  And nobody ever complained.  He

8    would have meet-and-greets and campaign events and all kinds

9    of things where he would shake hands.  He would say, "Hi.

10   Nice to see you," things like that.  Nobody ever complained.

11         So they have to go all the way back to at least

12   six years before and beyond and beyond and beyond.  It

13   couldn't be further from a situation like *Loughan*.  And I

14   think that when you look at the cases that they have cited

15   to and they're describing, those are completely different

16   factual situations that we're dealing with.  And they're

17   trying to make them sound similar, but they're actually

18   very, very far afield.

19         I know we've talked a lot about *Clinton v. Jones*

20   and my client quoted orderly disposition of her claims.

21   That's what we want as well.  We want an orderly disposition

22   of her claims.  And that would involve litigation over her

23   claim and not litigation over other people's accusations

24   that have never been proven, go far back in time, and have

25   nothing to do with this situation.  They've never met

1   Ms. Johnson.  They have nothing to do with Ms. Johnson.

2   They weren't in the campaign RV.  They weren't even on the

3   campaign.  And a lot of these people are political enemies,

4   I mean, bringing more into the politics of it.

5           Your Honor, with regard to punitive damages,

6   Your Honor asked a question, and I had forgotten this

7   because I usually practice in California or New York.  But

8   my Florida counsel reminded me that in Florida state, the

9   plaintiff must do a proffer to the Court before she can even

10  plead punitive damages.

11          **THE COURT:**  I noticed that in your pleading.  I'm

12  not sure that's true in federal court even under an *Erie*

13  tort.

14          **MR. HARDER:**  I'll let my Florida counsel address

15  that.

16          **THE COURT:**  Believe you me, I've done many punie

17  proffers in state court, some successful and some not.  But

18  I don't think in federal court -- notwithstanding that the

19  underlying tort is a Florida tort, I don't think that

20  that -- you can't even allege it in state Court.  Okay?  I'm

21  pretty sure that's not the case in federal practice.

22          Anyway, go ahead.

23          **MR. HARDER:**  And, Your Honor, with respect to

24  habit evidence, my Florida counsel informed me that using

25  habit to establish that something did happen or did not

1    happen is improper.  It's one thing to use it to establish

2    an intent if intent is an element of the claim.  In the

3    battery situation, intent isn't part of the elements of the

4    cause of action.  You have touching, you have lack of

5    consent, and you have alleged damages.  But you don't need

6    to get --

7          **THE COURT:**  Battery is an intentional tort.  You

8    can't negligently or accidently commit a battery.  But here

9    the issue is digital.  It's either on or off.  Okay?  Either

10   it happened or it didn't.  Because there's not going to be

11   any defense that he accidently kissed her, allegedly, or

12   accidently bumped into her.

13         **MR. HARDER:**  But, Your Honor, to go back six years

14   and say there was a beauty contestant who claims to have

15   been groped, which is a different claim, I don't see how

16   that has any relevance to an allegation of a forcible kiss.

17         **THE COURT:**  I understand your point.  I understand

18   your point.  Thank you.

19         **MR. HARDER:**  That's all I have, Your Honor.  Thank

20   you.

21         **THE COURT:**  All right.  And, Ms. Jaensch, I did

22   notice this.  And Mr. Zavareei pointed it out.  In your

23   reply brief, you didn't touch on that jurisdictional FLSA

24   piece, enterprise versus individual.  Now, what you're

25   saying is, yes, whether the campaign did all this stuff, it

```
 1   just doesn't apply, millions of dollars -- they probably --
 2   I don't know, but they probably bought radio and TV ads all
 3   over.  The FLSA just doesn't apply to a political campaign.
 4   That's what you're saying?
 5          MS. JAENSCH:  Yes.  I mean, I'm not saying that
 6   there could not be a factual scenario like the Supreme Court
 7   case that we were talking about in which a charity engages
 8   in substantial commerce activity.
 9          THE COURT:  A presidential political campaign, it
10   does not apply is what you're saying?  Because they are not
11   in commerce, they're something else?
12          MS. JAENSCH:  Well, again, I don't know about the
13   universe of presidential campaigns.
14          THE COURT:  Just this one.
15          MS. JAENSCH:  But what's been pled about this,
16   about selling hats -- that's not even pled -- but the
17   argument that selling hats or any of that, that would not,
18   as a matter of law, be sufficient to establish enterprise
19   coverage because, as Mr. Zavareei said, the economic
20   realities are that is not commerce.  That is not for the
21   purposes of profit.  It is for the purposes of
22   First Amendment speech and the election of a candidate like
23   a church, where they may do ancillary things that are
24   commercial in the sense that they're doing things that raise
25   money.  But --
```

 1              **THE COURT:**  When Christ the King has a carnival,

 2    they make millions.  The FLSA does not apply to the Catholic

 3    church.

 4              **MS. JAENSCH:**  Exactly, Your Honor.  Again, I don't

 5    know what all the facts would be.  But here, the 500,000 has

 6    to be in sales.  These aren't sales.  They're inducements

 7    for donations.  So the fact that we concede the number, that

 8    number is going to be true for hotels.  It's going to be

 9    true for what they spend on dinners that people come to.

10    But that's --

11              **THE COURT:**  Bumper stickers, whatever.

12              **MS. JAENSCH:**  But they're donating.  That's what

13    they do.  So I don't rely entirely on *Katz*.  I --

14              **THE COURT:**  But that fabulous -- yes.  And that

15    was my next point.  I didn't mean to interrupt.  That

16    polestar principle which you're offering -- I'm not saying

17    it's wrong, but what else is there besides *Katz*, just the

18    statute?

19              **MS. JAENSCH:**  No, Your Honor.  The entire series

20    of cases that relate to charitable organizations that I've

21    cited, including the Supreme Court case and the other cases

22    that relate to religious and this eleemosynary.

23              **THE COURT:**  That is the weirdest --

24              **MS. JAENSCH:**  I just --

25              **THE COURT:**  -- eleemosynary.

1          **MS. JAENSCH:**  Eleemosynary.

2          **THE COURT:**  As soon as you say that, you've

3   identified yourself as a lawyer.

4          **MS. JAENSCH:**  So I'll give you an example:  A

5   Kid's Place in Tampa.  They bring in children who are

6   abused, disabled.  Okay.  Do they buy things?  Yes.  But

7   they're not in competition with anybody.

8               And those Supreme Court cases, and the Eleventh

9   Circuit cases, and all the cases that we cited that relate

10  to charities, are the primary focus of the Court has to

11  be -- for enterprise coverage -- does the entity engage in

12  activities that are competitive with ordinary, commercial

13  enterprises?  And a campaign, I assert, based on those

14  cases, does not and -- does not do that or at least the

15  allegations that were pled about this campaign would not

16  establish that as a matter of law.

17              I concede that there is some possibility that

18  there could be individual coverage if it's pled, and we'll

19  have to deal with that.  But I haven't seen cases on that

20  other than the *Katz* case that relate to the kind of commerce

21  that's being asserted with any political campaigns.  So

22  that's the only reason why I say the charitable cases come

23  down in an individual -- for individual coverage to what are

24  the primary duties?  And are they predominantly charitable,

25  or are they predominantly commercial in some way?  And do

1    they involve interstate commerce as the primary function of

2    that job?  And I just don't know the answer to that.  But it

3    hasn't been pled, and it needs to be something that we can

4    address.

5           But as to the enterprise coverage, I submit I have

6    seen nothing that would indicate that this should be treated

7    any differently than a church for purposes of the notion

8    that it does not compete in the commercial sphere with other

9    ordinary businesses.

10          The other important point, Your Honor, on this

11   issue of *Iqbal*, I vehemently disagree that a motion to

12   dismiss is not an appropriate vehicle for looking at the

13   allegations in a collective case.  That is absolutely not

14   true, and it doesn't even make sense logically that you

15   could just plead anything and then file a motion for

16   conditional certification, and then we would have to argue

17   it at that stage.  The pleadings have got to establish the

18   entitlement to a collective action.  And while there are

19   some allegations about what her duties are, there are no

20   allegations about what the duties are of this purported

21   class.

22          The sum total of all of the allegations that

23   relate to the putative class members are in complaint

24   paragraphs 120, 122, 123, 124, 127, and 135.  And every

25   single one of them say something to the effect of female

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  campaign employees were paid less than male employees doing

2  the same or similar work; female campaign staff were

3  affected by unnamed policies and practices with the purpose

4  and effect of denying them equal compensation for the same

5  or similar work.

6          Paragraph 124:  "There are many similarly situated

7  collective members."

8          127:  "Ms. Johnson and the collective are or were

9  subject to the campaign's common policies, practices and

10  procedures, and centralized decision-making based on sex by

11  failing to compensate members of the collective at a level

12  commensurate with male employees who performed substantially

13  equal work and/or hold equivalent positions."

14          And Judge Bucklew, in *Poggi v. Humana*, which is a

15  Middle District Case that we've cited --

16          **THE COURT:**  Awful.  I read that.  That's a pretty

17  threadbare complaint in that one, wasn't it?  I mean, the

18  guy basically said nothing.

19          **MS. JAENSCH:**  Well, I'm suggesting as to the

20  collective action, this complaint also says nothing.  It

21  says it a bunch of times, but it literally says nothing

22  about these class members, who they are, what are the

23  positions that they hold, who are the comparators to the

24  rest of the class.

25          You can't just sort of say that you're an

 1   individual representative and that you do RVs and you do

 2   outreach and you do campaign communications and you open up

 3   stuff and that every single person in the National Strike

 4   Team, or anybody else in the campaign -- we don't know,

 5   unnamed people -- are subject to an unnamed policy/practice

 6   of paying women less than men.  We hear absolutely nothing

 7   in the complaint about, who are these people who are in the

 8   collective?  What are their duties?  And that's what that

 9   case speaks to.

10           And I will submit that, for example, in *Hamilton*,

11   which is an Eleventh Circuit case, the Court said that these

12   same type of allegations are the epitome of conclusory.  It

13   says:  "Hamilton takes exception to characterizing her

14   statement as conclusory but stating with nothing more than

15   she, quote, 'performed the same work as her white male

16   colleagues who were L-5,' is, by definition, conclusory.  It

17   expresses a factual inference without stating the underlying

18   facts in which the inference is based.  And that's at

19   *Hamilton*, which is a 2019 case, U.S. App. Lexis 2561 at 12

20   to 13.

21           The allegations as to the collective, Your Honor,

22   are the epitome of conclusory.  They say nothing to what the

23   collective representatives -- who they are, what policy,

24   specifically, that they have been subjected to with regard

25   to equal pay.  It says nothing as to them.  So as to the

1  collective allegations, there is no sufficient allegation

2  that apprises the defendant of what the claim is.

3           As to the individual claims, we would submit that

4  the pleading is a comparable worth pleading.  It is

5  insufficient to have a plausible claim for recovery either

6  under 1981 or the EPA.  And the plaintiff's argument that

7  they have shown some sort of substantial likelihood of

8  success on the merits -- which wouldn't be the standard for

9  a motion to dismiss anyway, but I would submit that's not

10  the case.  In fact, it's the opposite.  The individuals that

11  they have alleged who are comparators on the face of the

12  complaint are not comparators under the EPA in 1981.

13           Do you have any further questions, Your Honor?

14           **THE COURT:**  No.  I appreciate it very much.

15           All right.  On these two motions, Mr. Zavareei,

16  you want to close up for us?

17           **MR. ZAVAREEI:**  Yes, Your Honor.  Thank you.

18           So I'm just going to try and address the points

19  made by my colleagues as they made them.

20           First, with respect to the *Loughan* case, the

21  Eleventh Circuit case relating to habit evidence, my friend

22  said that the allegations in that of habit evidence were not

23  remote in time.  That's inaccurate.  Actually, the habit

24  evidence went back from 1968 to 1974, and it wasn't just

25  what happened right before that day as he represented.  So I

1   believe that case is actually more on point than he's giving

2   it credit for.

3            Also with respect to -- I keep hearing that

4   everything goes back six years and nothing happened in the

5   campaign, which is disregarding the allegations in paragraph

6   101(h) regarding Katy Tur, who was kissed on the campaign by

7   Donald Trump.  So that's the most recent one.

8            There are also other allegations that we've

9   learned of since we filed the complaint by other women who

10  were also working on the campaign, Your Honor.  And so if we

11  have to make a showing at some point, which we hope that we

12  will be allowed to do, we would like to be able to present

13  that to Your Honor and for the Court to make a decision as

14  to what is too remote, what is too dissimilar.  And we

15  believe that we're entitled, we have the right to do that in

16  this case.

17           And, Your Honor, I just also want to emphasize

18  that although we did emphasize and talk a lot about habit,

19  that is not the only basis here.  We are not giving up on

20  the cases that we cited that support the notion that prior

21  acts similar to acts of battery are relevant for purposes of

22  showing intent and knowledge.

23           And with respect to the punitive damages proffer,

24  Your Honor, the statute that was cited in the reply brief is

25  a Florida statute that relates to punitive damages in

1    nursing homes.  The statute that we rely on is the general

2    punitive damages statute and doesn't have such a

3    requirement.

4           And what I think is more substantive, Your Honor,

5    and a really important point is Mr. Harder said that habit

6    can't be used to show something happened.  That's exactly

7    wrong, Your Honor, and the Eleventh Circuit specifically

8    said that's exactly wrong.  I'm just going to read briefly

9    from a section of that decision.

10          "*Loughan* argues that because no direct evidence

11   was presented that he had anything to drink at the time of

12   the accident, it was improper to admit evidence to establish

13   his habit of drinking on the job.  We reject this reasoning

14   because proof of habit is through indirect evidence offered

15   to prove that the conduct of a person conformed with his

16   routine practice."

17          So, Your Honor -- and there's other language in

18   that case to the same design, which is really habit is

19   different than all these other prior -- as you pointed out,

20   different than 404(b) evidence.  This is a very particular

21   type of evidence.  And it can be -- if the Court determines

22   it's appropriate, if we can show that it's a habit, that can

23   be used in absence of other evidence, like in this case, in

24   the *Loughan* case, where there was no evidence that he was

25   drinking at the time, to prove that he was, in fact,

1   drinking.  It's indirect evidence of that, that he was

2   conforming with that habit and the Eleventh Circuit has so

3   held.

4           With respect to the issues regarding the campaign

5   and whether or not it is commercial enterprise under the

6   FLSA, there's a standard that my friend used that is not

7   anywhere in the statute or in any of the cases, which is

8   whether it was for the purpose of profit.  Well, we know,

9   Your Honor, that that is not the standard.  Nonprofits can

10  be found to have had enterprise liability based on their

11  commercial activity.  The question is -- Salvation Army, for

12  example, it's a nonprofit but was found to have been

13  engaging in commercial enterprises based on the

14  transactions.  What you have to look at is what was going

15  on, not the purpose.

16          If we're going to get into the purpose,

17  Your Honor, which I submit we don't have to, but there's

18  legions of evidence, including in the Mueller report and in

19  the emoluments clause case, that the whole purpose of the

20  campaign was to increase the defendant's brand and to make

21  him money and to raise profits.  I don't think that's the

22  standard, Your Honor.  I don't think we want to go there.

23  But if that's required, we would be able to present evidence

24  to meet that standard.

25          My friend also said that we don't allege enough to

1    establish a collective action.  Your Honor, the cases that

2    say that you have to do something more than a conclusory

3    allegation, what they say, what is more than conclusory in

4    those cases are two things.  You have to identify the

5    position of the people in the collective action, and you

6    have to identify the statute or the type of discrimination

7    that you're alleging.  Well, with respect to the statute,

8    we've alleged EPA.  It's sex discrimination.  So we've

9    certainly met that.

10           With respect to the positions, Your Honor, it's

11   like trying to fit a square peg in a round hole here.  It

12   doesn't match the way this organization was set up.  The

13   titles and positions were ad hoc.  There's probably no two

14   people in the same organization with the exact same title.

15   So that's just not something that could be done here.  But

16   that doesn't kick us out of court because we can't do

17   something that doesn't match the facts on the ground.  And

18   that is something that we can establish at the trial of the

19   case.

20           And, lastly, Your Honor, I would draw your

21   attention to the *Carter v. West* case, which is an Eleventh

22   Circuit case wherein the collective action was affirmed

23   where the only allegations were that the collective action

24   consisted of all females employed by Defendant who suffered

25   wage discrimination.  And that was without regard to their

```
 1    specific duties or job title.

 2            THE COURT:  Give me that cite.  I know it's in

 3    your papers.  Carter v. West.

 4            MS. AIZPURU:  Your Honor, that's 225 F.3d 1258,

 5    Eleventh Circuit 2000.

 6            THE COURT:  Great.  All right.

 7            MR. ZAVAREEI:  Your Honor, in closing, I would say

 8    that we appreciate you having this hearing so early on in

 9    the case, and we appreciate your offer to make your chambers

10    and your personnel available to us.  Maybe it does make

11    sense to talk about some of the issues in the CMC, if you

12    have time to do that this morning, Your Honor.  But we do

13    believe that the two motions should be denied, that the

14    motion to strike is a disfavored motion that's really trying

15    to end-run the rules of evidence and trying to limit the

16    case, and that the motion to dismiss is premature.

17            THE COURT:  All right.  Thank you very much.

18            Yeah.  Let's just talk a little bit about

19    planning.  I saw the depo issue that was brought up is

20    squared away most immediately.

21            Okay.  Here's what I think ought to be done.  I'll

22    get a ruling out.  I hate to use the imperial "we," but I do

23    have a great staff.  And, of course, they're going to help

24    me.

25            We're going to get a ruling out on this no later
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    than a week from Friday.  Okay?  No one gets thrown out of

2    court on motions to dismiss in the Eleventh Circuit.  So if

3    some or one or more parts of the motion is granted, it ain't

4    the ballgame, you know, at least the first or second time

5    through.  About the only time that ever happens is on an

6    insurance coverage thing where they say the bridge fell and

7    the insurance company owes money and you can see in the

8    policy attached to the complaint an exclusion for bridge

9    falling.

10           So I would suggest that I enter a case management

11   order after we get that out but on the heels of that.

12           Just one thing, Mr. Harder -- and there's going to

13   be more than 10 depos in this case.  I'm not saying there's

14   going to be dozens.  But there's some suggestion -- putting

15   aside the President, of course -- that some of these staff

16   people, you were objecting to their deposition.  I'll

17   adjudicate that on the merits.

18           But if they've alleged a comparator -- she's

19   stated a cause of action for battery.  I don't see that as

20   going away.  No matter what happens, she's entitled to her

21   day in court.  I generally don't see a whole lot of people

22   being able to put a bar up and stop reasonable, appropriate

23   discovery.  So I don't know what these names were.  There

24   was four or five people you didn't think should be deposed.

25   I'll hear you out on it.  But right now it sounds a little

1    off to my ear.

2            Now, the President is a different matter, of

3    course.  So we can all read *Clinton v. Jones*.  So what I

4    need you to do is to file a motion for protective order, or

5    whatever you have on that, by the end of this month.  Okay?

6    Whatever you want ruled upon.  And what probably won't work

7    is to string this thing out until May of next year and then

8    say we're too busy in the campaign.  So just read

9    *Clinton v. Jones*, tell me why it doesn't apply, or if it

10   should apply it should be -- because the people in Atlanta

11   grade my papers, and the people in Washington grade their

12   papers.  And we're going to follow what the law is on that.

13           So that's your assignment, by the end of the month

14   to get something filed on your position on -- and, of

15   course, that will hinge, of course, upon our ruling on the

16   motion to dismiss and all that.  I understand.

17           All right.  So that's an assignment for you.  And

18   then, of course, Counsel will have -- you know, I think you

19   get 17 days.  Whatever.  I want to see a reply.  And we'll

20   get that nice and teed up and addressed.  I understand

21   there's arguments on both sides.

22           So then on the collective, we'll get this order

23   out on today's motions.  And then you-all will just chime in

24   and say do you want a ruling on that now?  Do you think we

25   should reconsider X, Y, and Z?  Can we do it with a

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  telephonic hearing?  So that will come out no later than a

2  week from Friday and then -- setting these dates actually

3  motivates me.  Otherwise, it could drift off.

4          You-all just think about it and seasonably, like

5  by the middle of the following week, say, "That's ripe.

6  Rule on it."  Or "No, no, no, we want to reconsider."  Let

7  me know your position on that.  Okay?

8          What else immediately do we need to discuss?

9          **MR. HARDER:**  Your Honor?

10         **THE COURT:**  Yes.

11         **MR. HARDER:**  If I may, is it possible to have

12  until July 10 to file the motion for protective order?

13         **THE COURT:**  Sure.  Of course.

14         **MR. HARDER:**  Thank you.

15         The reason I ask, which goes to my next question

16  or next issue, is Ms. Johnson's going to be appearing for

17  deposition on July 8.  We would like to get her responsive

18  documents.  We've given her 45 days to produce them pursuant

19  to a request for production of documents.  Her counsel has

20  said that they are not going to produce any documents at all

21  unless we agree to a stipulated -- an e-discovery

22  stipulation which goes on for 13 pages.  And there's going

23  to be a lot of back-and-forth.  And we may not even come to

24  an agreement.  It may end up being a motion.

25         We'd like to get her responsive documents, her

1    emails, her text messages, before we take her deposition.

2            **THE COURT:**  All right.  Well, you're just going to

3    have to file your motion.  I don't want to do this on the

4    fly.  Okay?  But I will attend to it very quickly.

5            Now, you understand that there's a certain

6    strategy involved, which you've chosen, which is to get this

7    depo "wiki wiki" as they say on Hawaii 5-0.  That's fine.

8    But extracting emails and doing search terms and stuff is

9    not always -- there are deadlines.  I'm not excusing any

10   lack of production.  But it is an issue in these cases.  So

11   I hope you understand that.

12           **MR. HARDER:**  I do understand that, Your Honor.

13   It's a single individual.  It's her private email account,

14   and it's her private phone.

15           **THE COURT:**  I got that.  And you'll --

16           **MR. HARDER:**  It shouldn't take more than --

17           **THE COURT:**  And you'll make argument --

18           **MR. HARDER:**  -- 30 days or so.

19           **THE COURT:**  And you'll make that argument to me,

20   and I will rule.  And we'll rule on that right away if you

21   want to get that filed, if that's in dispute.  And then

22   they'll file a quick response.  And you are entitled to take

23   that deposition, as they are, with, of course, the caveat

24   that I'm going to have a limited number.  The only one in my

25   present opinion that's in dispute is whether the individual

1    defendant -- and you're going to file something by July 10th

2    on that.  Okay?

3          All right.  What else am I missing?  Anything else

4    on your mind?  I just don't want anybody to leave here and

5    say, "I wish I would have told him X."

6          **MS. JAENSCH:**  Your Honor, on the motion for

7    collective action, there have not been any consent to joins

8    filed.  I don't know if that is coming or not, but that's a

9    requirement.

10         **THE COURT:**  Okay.  Well, take that up when you

11   decide -- after this, the order from today will come down.

12   Then if there's a defect in their pleading, you've already

13   pointed it out.  And they may say, "We're ready to be ruled

14   upon."  They may say, "We want to amend."  I'm not sure.

15   And Judge Bucklew does discuss that in her opinion.

16         Okay.  Anything else?  I must say this.  It's such

17   an honor to preside over lawyers of your quality.  So thank

18   you.  I really appreciate it.  All right.

19         **MS. JAENSCH:**  Thank you, Your Honor.

20         **THE COURT:**  So you'll hear from us.  And then I'll

21   want, within half a week or so, to hear back from you on the

22   collective piece.  Okay?  Just email the chambers, copy each

23   other.  Thank you very much.

24         (Proceedings adjourned at 10:52 a.m.)

25

1          **C E R T I F I C A T E**

2

3          I certify that the foregoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7    June 10, 2019

8

9    ____s\  Nikki L. Peters_____
     Nikki L. Peters, RPR, CRR, CRC, FPR
10   Federal Official Court Reporter
     United States District Court
11   Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. HARDER:**
[46] 3/24 8/2 8/14
8/18 9/10 9/20 10/8
10/11 10/14 13/2
13/5 13/15 13/17
13/24 14/3 16/18
16/23 17/3 17/7
17/11 17/16 17/18
18/13 18/21 18/25
19/7 19/11 19/14
19/18 19/20 19/24
63/12 63/15 63/23
64/1 64/6 66/13
66/22 67/12 67/18
82/8 82/10 82/13
83/11 83/15 83/17
**MR. ZAVAREEI:**
[51] 3/11 21/11
21/15 37/16 39/7
39/16 39/21 40/2
40/13 40/21 40/24
41/24 42/2 42/20
42/25 43/8 44/14
44/24 45/20 45/24
46/2 46/11 47/2
47/12 47/23 48/2
48/9 48/16 48/22
48/25 49/2 49/13
50/7 50/9 51/23
51/25 54/11 55/19
56/7 56/13 56/19

56/23 57/5 58/23
59/20 59/24 61/8
61/10 63/3 74/16
79/6
**MS. AIZPURU:**
[2] 3/15 79/3
**MS. GILBRIDE:**
[1] 3/19
**MS. JAENSCH:**
[50] 4/2 17/8 21/16
21/18 22/3 23/2
23/4 23/6 23/17
23/19 24/2 24/14
24/23 25/2 25/9
25/17 25/25 26/3
26/12 27/5 29/6
29/10 29/25 30/3
31/8 32/21 33/4
33/7 33/10 33/14
33/20 33/22 34/6
34/10 34/14 34/19
34/22 35/5 68/4
68/11 68/14 69/3
69/11 69/18 69/23
69/25 70/3 72/18
84/5 84/18
**MS.**
**SILER-NIXON:**
[1] 4/4
**MS. VARNELL:**
[1] 3/8
**THE COURT:**
[146]

**THE**
**COURTROOM**
**DEPUTY:** [1] 3/3

**$**
$3 [1] 25/25
$500,000 [1] 28/22

**'**
'performed [1]
73/15

**1**
10 [10] 12/3 16/17
16/22 17/7 17/15
17/22 43/7 80/13
82/12 85/7
1000 [1] 1/24
101 [2] 2/9 75/6
1077 [2] 52/3 56/17
10:52 [2] 1/9 84/24
10th [1] 84/1
11 [2] 42/25 50/15
112 [3] 31/20 31/22
32/20
116 F.Supp. 2d [1]
56/17
116 F.Supp. 2d
1077 [1] 52/3
118 F.3d [1] 63/18
12 [12] 9/4 9/8 11/4
11/8 11/23 13/14
15/16 15/19 20/25
43/13 64/22 73/19

# 1

120 [2]  34/10 71/24
1201 [1]  63/16
1207 [1]  63/20
122 [1]  71/24
123 [1]  71/24
124 [2]  71/24 72/6
1258 [1]  79/4
127 [2]  71/24 72/8
13 [2]  73/20 82/22
132 [1]  2/13
135 [1]  71/24
143 [2]  37/20 37/20
1478 [1]  63/18
15 [5]  4/13 27/21
 43/21 50/12 54/1
1519 [3]  56/16
 56/19 56/20
1620 [1]  2/4
17 [2]  5/12 81/19
171 [1]  9/5
176 [1]  63/19
18 [1]  36/12
1828 [1]  1/24
1870 [1]  1/20
19 [8]  11/17 13/14
 13/20 13/23 20/24
 48/1 48/22 61/6
1968 [1]  74/24
1974 [1]  74/24
1975-15 [1]  27/21
1981 [8]  22/22

36/24 37/16 74/6
74/12
1985 [1]  56/16
1992 [2]  15/8 64/3
1994 [1]  38/19
1997 [2]  14/8 63/18

# 2

20 [10]  9/12 9/24
 12/5 12/7 12/12
 20/13 39/21 47/22
 47/25 48/4
2000 [4]  14/10
 43/17 63/19 79/5
2002 [2]  14/13
 63/21
20036 [2]  1/25 2/5
2005 [2]  43/18
 43/18
2006 [1]  54/14
2007 [1]  43/17
2009 [3]  15/1 15/11
 63/22
2011 [1]  43/17
2012 [1]  57/2
2013 [2]  18/7 64/23
2014 [1]  9/2
2015 [2]  43/14 65/3
2016 [6]  11/11
 11/19 15/19 46/24
 47/9 65/4
2017 [1]  63/17

85/7
207 [1]  63/19
225 [1]  79/4
24th [1]  11/11
2561 [1]  73/19
26 [2]  48/21 48/24
295 [1]  64/2
2d [1]  56/17
2nd [1]  39/3

# 3

30 [2]  39/21 83/18
303 [1]  63/20
32158 [1]  1/21
33602 [2]  2/10 2/17
36 [3]  46/25 47/10
 61/8
37 [9]  11/4 11/8
 11/23 13/16 15/16
 15/20 16/5 16/6
 21/1
38 [1]  55/17

# 4

40 [1]  9/5
400 [2]  12/6 12/12
404 [11]  13/5 39/24
 43/3 43/5 49/8
 49/12 49/13 56/4
 56/6 56/10 76/20
425 [1]  53/8
441 [1]  54/13

# 4

45 [2] 48/19 82/18
475 [1] 3/6
4761746 [1] 57/2

# 5

5,' [1] 73/16
5-0 [1] 83/7
500,000 [4] 29/12
 59/7 59/14 69/5
526 [1] 63/22
558 [1] 63/22
586 [2] 61/6 61/9

# 6

60 [4] 12/2 17/21
 20/13 48/17
60's [1] 62/8
630 [1] 2/5

# 7

70 [3] 12/2 17/21
 48/17
70-plus [1] 20/14
749 [1] 56/19
749 F.2d 1519 [2]
 56/16 56/20
75 [1] 32/12

# 8

801 [1] 2/17
853 [1] 63/16
86 [1] 61/8
8:19-cv-00475-WFJ
-SPF [1] 1/3

# 9

900 [1] 2/10
90212 [1] 2/14
917 [1] 54/13
96 [1] 53/8
964 F.2d 295 [1]
 64/2

# A

a.m [3] 1/9 1/9
 84/24
ability [1] 25/13
able [5] 25/10 37/1
 75/12 77/23 80/22
about [61] 4/18 6/5
 7/23 8/1 12/3 13/8
 17/13 17/25 18/2
 18/8 18/24 20/12
 28/12 28/21 29/12
 29/21 29/23 31/7
 36/11 37/23 38/19
 38/21 40/5 40/6
 42/9 42/9 42/24
 43/7 43/17 44/24
 45/9 46/7 46/8
 47/10 48/16 50/3
 50/18 51/4 51/18
 52/14 53/11 53/14
 55/7 59/5 62/6 64/9
 65/19 68/7 68/12
 68/15 68/16 70/15
 73/7 75/18 79/11
 79/18 80/5 82/4
above [1] 85/5
above-entitled [1]
 85/5
absence [1] 76/23
absolutely [10]
 11/14 19/6 43/9
 44/15 44/16 48/3
 52/25 53/19 71/13
 73/6
abused [1] 70/6
accept [1] 25/2
accepting [2] 46/18
 46/19
Access [1] 50/15
accident [1] 76/12
accidently [3] 67/8
 67/11 67/12
account [1] 83/13
accountable [1]
 55/8
accusations [4]
 11/18 12/8 64/18
 65/23
accuse [1] 55/13
accused [1] 10/21
accusers [4] 11/2
 13/14 16/1 16/2
achieve [1] 61/23
across [2] 11/14

Case 8:19-cv-00475-WFJ-SPF   Document 57   Filed 06/10/19   Page 89 of 144 PageID 601

across... [1] 13/11
act [8] 19/4 32/5
 33/8 55/21 57/8
 57/13 60/4 62/9
acted [2] 41/17
 41/22
action [18] 18/22
 23/12 23/17 25/13
 25/16 31/2 35/13
 37/3 51/23 67/4
 71/18 72/20 78/1
 78/5 78/22 78/23
 80/19 84/7
actions [3] 36/14
 41/22 55/9
activities [4] 24/6
 24/7 57/18 70/12
activity [5] 27/4
 27/8 28/2 68/8
 77/11
acts [12] 14/14
 14/17 18/11 18/13
 18/24 42/11 43/22
 52/22 53/1 54/1
 75/21 75/21
actual [1] 11/22
actually [12] 15/15
 17/23 33/3 36/12
 43/4 49/21 57/16
 59/16 65/17 74/23
 75/1 82/2

addicts [1] 27/11
addition [1] 11/13
address [6] 7/16
 57/7 59/2 66/14
 71/4 74/18
addressed [1] 81/20
addressing [5] 8/16
 8/17 9/14 9/15
 10/13
adequate [1] 61/16
adjourned [1]
 84/24
adjudicate [1]
 80/17
administrative [1]
 30/20
admissible [3]
 39/23 52/2 52/20
admission [2] 42/21
 42/24
admissions [2]
 49/25 49/25
admit [1] 76/12
admitted [1] 10/23
ads [1] 68/2
Advanced [1] 61/6
advantage [1] 11/7
Advisory [1] 27/20
affected [1] 72/3
affirmed [1] 78/22
afield [2] 14/18

African [4] 31/18
 32/10 34/8 38/4
African-American
 [4] 31/18 32/10
 34/8 38/4
after [7] 6/15 7/2
 7/21 31/19 45/12
 80/11 84/11
again [16] 15/21
 18/12 20/7 24/24
 26/19 28/20 30/11
 30/12 30/15 31/25
 36/24 51/3 53/3
 56/14 68/12 69/4
against [12] 9/14
 9/16 12/8 12/10
 17/10 21/19 33/16
 37/16 38/23 39/4
 43/14 44/21
agency [1] 28/11
agenda [2] 20/10
 20/11
ago [21] 10/20 11/8
 11/23 13/14 13/16
 14/7 14/21 15/16
 15/16 16/6 18/18
 18/20 21/1 21/1
 21/3 38/3 38/13
 43/13 45/14 50/16
 59/17
agree [6] 44/16

# A

agree... [5]  46/15 46/22 49/15 49/17 82/21
agreement [1] 82/24
Ah [1]  38/11
ahead [8]  6/2 10/11 17/18 39/7 43/8 55/19 58/23 66/22
Aided [1]  2/20
ain't [1]  80/3
airplane [2]  47/1 47/11
Aizpuru [2]  1/23 3/17
Alabama [4]  24/20 25/8 31/19 57/1
Alamo [3]  23/25 27/4 27/6
alert [1]  5/13
all [92]
allegation [8]  28/25 31/16 32/1 32/6 37/9 67/16 74/1 78/3
allegations [38]  10/17 10/19 11/2 11/5 11/8 18/1 18/3 18/5 18/5 18/9 19/4 20/20 20/25 22/16 22/17 22/18 22/21

42/16 45/17 53/13 53/21 59/22 65/1 70/15 71/13 71/19 71/20 71/22 73/12 73/21 74/1 74/22 75/5 75/8 78/23
allege [10]  9/23 12/19 12/23 28/22 28/23 29/19 46/5 59/20 66/20 77/25
alleged [14]  25/4 28/20 30/13 54/8 55/2 58/15 60/5 60/17 62/18 64/23 67/5 74/11 78/8 80/18
allegedly [3]  11/23 12/20 67/11
alleges [1]  35/1
alleging [3]  14/20 14/21 78/7
allow [2]  15/24 15/25
allowed [11]  14/5 14/11 20/1 21/4 21/5 41/16 47/18 47/21 48/14 53/25 75/12
allows [2]  12/3 17/20
almost [1]  9/5

43/17 57/21
along [1]  7/5
already [2]  8/19 84/12
also [23]  10/6 14/12 17/19 21/21 24/16 42/12 42/25 49/21 49/22 51/20 52/21 54/4 54/16 54/17 59/7 59/11 59/21 72/20 75/3 75/8 75/10 75/17 77/25
although [1]  75/18
ALVA [5]  1/6 3/5 3/11 3/14 3/18
always [4]  4/9 7/9 62/10 83/9
am [4]  8/5 34/16 46/24 84/3
amend [2]  58/18 84/14
amended [3]  22/13 29/7 57/25
Amendment [2]  27/3 68/22
amends [1]  29/19
American [4]  31/18 32/10 34/8 38/4
amount [2]  28/7 59/6
ancient [1]  42/25

# A

ancillary [2] 30/8 68/23
and/or [2] 59/14 72/13
animal [1] 56/9
another [7] 14/8 14/25 18/10 49/2 56/25 58/1 58/10
answer [6] 19/20 19/23 19/25 36/23 39/9 71/2
answers [1] 7/9
anticipate [1] 7/19
any [35] 4/12 7/14 7/14 8/9 11/6 11/6 12/22 16/21 18/10 18/12 21/8 21/22 23/16 28/4 32/13 36/5 37/10 44/20 46/4 46/10 46/16 46/23 52/5 55/22 62/24 67/11 67/16 68/17 70/21 71/7 74/13 77/7 82/20 83/9 84/7
anybody [6] 4/14 26/18 46/9 70/7 73/4 84/4
anymore [1] 36/9
anyone [1] 13/10
anything [16] 8/25

16/15 35/2 46/7 52/17 53/12 59/4 61/13 65/2 71/15 76/11 84/3 84/16
anyway [4] 7/21 59/24 66/22 74/9
anywhere [2] 15/14 77/7
apologize [2] 46/1 64/22
App [1] 73/19
appeal [1] 29/5
appearances [3] 1/18 2/2 3/7
appearing [1] 82/16
apples [6] 34/6 34/6 34/7 34/7 34/19 34/19
applied [1] 61/22
applies [1] 59/13
apply [6] 68/1 68/3 68/10 69/2 81/9 81/10
appreciate [6] 37/11 49/14 74/14 79/8 79/9 84/18
apprises [1] 74/2
appropriate [6] 47/14 51/16 60/9 71/12 76/22 80/22

are [122]
aren't [6] 16/17 32/2 38/21 44/9 50/1 69/6
argue [2] 6/19 71/16
argued [2] 30/13 57/10
argues [1] 76/10
argument [22] 6/21 21/11 30/4 30/15 31/24 31/25 32/4 32/5 32/5 32/15 34/17 39/10 52/16 52/18 53/3 54/23 59/8 59/10 68/17 74/6 83/17 83/19
arguments [7] 26/19 26/20 53/3 53/5 53/6 60/16 81/21
arm [1] 40/9
Army [1] 77/11
around [5] 8/8 24/21 25/5 31/15 40/9
articles [2] 20/21 26/21
as [80] 4/19 4/19 4/20 5/2 5/3 5/7 6/22 6/22 7/22 7/22

## A

as... [70]  8/7 8/7
11/1 12/18 12/18
13/24 15/24 17/24
18/13 18/21 22/24
22/24 23/23 25/2
26/6 27/23 28/3
29/12 32/9 34/5
35/23 39/5 43/20
43/21 44/2 46/5
46/16 46/18 46/18
46/19 46/23 53/16
54/1 54/1 54/24
55/13 57/25 58/12
58/14 59/5 59/7
59/22 61/19 61/22
64/10 64/19 64/22
65/21 68/18 68/19
70/2 70/2 70/3
70/16 71/1 71/5
72/19 73/14 73/15
73/21 73/25 73/25
74/3 74/19 74/25
75/13 76/19 80/19
83/7 83/23
ascribe [1]  55/5
Asher [1]  18/7
aside [3]  46/14 47/6
80/15
ask [7]  7/16 21/10
43/24 48/14 55/22
58/17 82/15
asked [3]  5/20 10/21
66/6
aspect [1]  45/2
assault [2]  15/9
15/9
assaulted [1]  45/20
assaults [1]  52/20
assert [1]  70/13
asserted [1]  70/21
assignment [2]
81/13 81/17
associated [1]
16/11
assume [3]  39/12
64/12 64/13
assuming [1]  36/3
Atlanta [1]  81/10
attached [1]  80/8
attempt [1]  15/10
attend [2]  7/14 83/4
attended [1]  5/3
attends [1]  24/20
attention [3]  4/24
7/2 78/21
August [1]  11/11
Austin [2]  31/22
32/6
Austin Browning
[1]  31/22
authorities [1]
12/14
authority [1]  57/14

## A

automatic [2]
available [3]  28/5
52/10 79/10
Avenue [1]  2/17
avoid [1]  8/23
aware [1]  46/1
away [5]  16/7 34/2
79/20 80/20 83/20
Awful [1]  72/16

## B

B.C [1]  39/3
back [23]  7/21 11/4
11/5 16/4 38/19
39/21 43/19 43/20
50/12 50/25 51/3
54/1 56/15 62/8
63/2 64/21 65/11
65/24 67/13 74/24
75/4 82/23 84/21
back-and-forth [1]
82/23
background [1]
56/4
bad [4]  20/15 39/5
52/25 54/1
ballgame [1]  80/4
bar [1]  80/22
based [13]  24/23
26/20 30/3 33/1
33/20 40/5 59/24
60/16 70/13 72/10
73/18 77/10 77/13

Case 8:19-cv-00475-WFJ-SPF Document 53 Filed 05/01/19 Page 93 of 144 PageID 765

basically [4] 7/15
52/15 62/1 72/18
basis [6] 23/23 24/9
55/7 55/13 55/14
75/19
battered [2] 45/19
47/9
battery [25] 9/14
9/25 10/1 11/10
11/21 12/18 12/21
12/23 15/24 38/12
40/8 40/9 40/21
40/22 40/23 44/8
44/21 46/25 49/8
51/24 67/3 67/7
67/8 75/21 80/19
Bay [3] 18/17 18/18
18/20
be [131]
Beard [2] 52/2
56/16
Beard v. Flying [2]
52/2 56/16
beauty [1] 67/14
because [60] 5/4
6/20 7/11 9/12 9/18
11/16 15/13 15/18
16/1 16/2 16/6 22/6
22/7 24/13 24/17
25/16 29/21 30/12
32/25 33/10 33/11

33/16 34/20 35/1
35/24 36/5 36/24
37/7 38/12 38/18
41/18 42/24 44/5
44/10 45/10 46/22
49/7 49/10 49/16
49/17 50/21 51/10
52/16 54/21 56/3
57/17 59/3 59/14
59/23 61/14 62/2
64/23 66/7 67/10
68/10 68/19 76/10
76/14 78/16 81/10
Becker [2] 14/9
63/19
Becker v. Arco [2]
14/9 63/19
become [1] 42/11
becomes [1] 62/16
been [27] 11/2 11/3
12/24 14/12 14/23
14/24 19/3 19/4
21/2 21/2 21/23
22/14 26/21 28/8
31/25 32/14 32/16
36/12 51/8 58/13
65/24 67/15 68/15
71/3 73/24 77/12
84/7
beer [1] 41/10
before [21] 1/16
10/15 12/24 39/11

44/9 44/20 46/25
47/8 47/10 48/11
50/6 53/6 54/17
55/21 56/10 64/12
64/13 65/12 66/9
74/25 83/1
behalf [4] 1/6 3/14
3/18 4/6
behavior [2] 12/23
55/10
behind [1] 19/6
being [11] 16/15
18/9 18/9 29/2 32/9
32/10 34/12 37/4
70/21 80/22 82/24
believe [14] 19/25
21/7 41/15 55/9
58/15 60/14 61/13
62/18 62/22 62/25
66/16 75/1 75/15
79/13
believes [1] 58/18
bench [1] 7/20
besides [1] 69/17
best [5] 56/2 56/10
56/11 56/18 63/11
bet [1] 21/21
better [3] 34/17
34/21 42/13
between [1] 11/24
Beverly [1] 2/14
beyond [3] 65/12

Brett Kavanaugh

# B

beyond... [2] 65/12 65/12
Biden [5] 38/4 38/13 38/24 40/6 40/15
Biden's [1] 39/13
big [1] 25/9
biker [1] 38/8
bit [7] 4/17 5/4 7/23 8/22 9/17 47/7 79/18
blank [1] 35/8
BNB [1] 60/22
board [2] 11/14 13/11
body [1] 7/13
bolstered [1] 22/15
bootstrap [1] 57/18
both [6] 4/10 6/17 7/16 45/10 45/10 81/21
bought [1] 68/2
Boulevard [1] 2/9
bounds [1] 55/11
Box [1] 1/20
brainwashed [1] 53/17
brand [1] 77/20
breadth [1] 48/14
break [1] 37/14
Brett [1] 10/22

[1] 10/22
bridge [2] 80/6 80/8
brief [7] 52/24 53/4 58/17 59/3 60/11 67/23 75/24
briefed [1] 60/12
briefly [2] 64/8 76/8
bring [8] 5/24 15/6 15/15 20/19 40/14 41/21 48/11 70/5
bringing [4] 20/8 44/9 44/20 66/4
Broaddrick [1] 45/15
broadly [2] 61/20 61/21
brought [4] 30/21 41/8 41/9 79/19
Browning [2] 31/22 32/6
Bucklew [2] 72/14 84/15
buddy [1] 38/6
build [1] 28/2
bumped [1] 67/12
Bumper [1] 69/11
bunch [1] 72/21
business [1] 34/12
businesses [3] 62/7 62/9 71/9

busy [1] 81/8
button [1] 63/9
buy [2] 27/17 70/6
buying [1] 26/14
buys [1] 28/11

# C

calendars [1] 5/16
California [3] 2/14 38/23 66/7
call [7] 3/3 4/22 5/19 6/8 6/8 30/9 63/7
called [4] 5/6 9/2 14/13 51/9
came [8] 10/16 39/5 39/12 46/14 48/18 50/16 50/25 65/6
Camelot [1] 45/14
camp [1] 53/16
campaign [55] 11/12 11/20 14/20 15/19 17/10 17/12 20/14 20/23 21/19 21/23 23/1 26/7 26/11 26/17 26/22 27/1 27/13 27/22 27/23 27/25 28/18 29/1 29/23 29/24 30/3 35/16 35/25 36/4 36/6 36/13 37/5 37/7 37/16 50/24 58/8 65/1

C

**campaign... [19]**
65/3 65/8 66/2 66/3
67/25 68/3 68/9
70/13 70/15 72/1
72/2 73/2 73/4 75/5
75/6 75/10 77/4
77/20 81/8
**campaign's [1]**
72/9
**campaigns [5]** 22/6
57/10 57/12 68/13
70/21
**can [41]** 4/22 4/22
6/16 7/12 7/18 7/21
8/7 8/7 8/7 8/8 8/13
16/5 17/12 22/23
23/8 30/20 35/18
36/3 41/21 43/20
45/12 51/7 52/13
52/22 53/1 55/11
55/23 56/1 56/2
58/16 63/24 66/9
71/3 76/21 76/22
76/22 77/9 78/18
80/7 81/3 81/25
**can't [13]** 16/7
29/20 29/25 30/12
52/7 55/12 59/23
62/3 66/20 67/8
72/25 76/6 78/16
**candidate [5]** 27/2

27/22 28/3 28/4
68/22
**candidates [1]** 22/9
**cannot [3]** 35/17
57/10 57/12
**Capacity [1]** 1/10
**car [1]** 64/15
**care [1]** 8/13
**carefully [2]** 53/21
64/9
**carnival [1]** 69/1
**carries [1]** 14/3
**carry [1]** 20/10
**Carter [2]** 78/21
79/3
**Carter v. West [2]**
78/21 79/3
**case [148]**
**case-by-case [1]**
23/23
**cases [52]** 4/25 9/12
9/24 11/17 12/5
12/15 12/16 12/16
14/4 14/10 15/4
16/10 16/10 18/2
20/13 20/18 28/9
30/6 35/7 35/9
35/10 35/10 40/23
43/20 44/1 44/1
44/7 44/10 49/10
49/11 52/5 52/6
52/19 52/21 52/24

53/7 56/3 56/11
65/14 69/20 69/21
70/8 70/9 70/9
70/14 70/19 70/22
75/20 77/7 78/1
78/4 83/10
**Cash [1]** 60/22
**Catholic [1]** 69/2
**cause [4]** 18/22
51/23 67/4 80/19
**caveat [1]** 83/23
**centralized [1]**
72/10
**century [1]** 39/3
**CEO [1]** 4/20
**certain [7]** 15/6
20/1 24/11 52/12
52/12 54/23 83/5
**certainly [7]** 35/3
38/24 49/4 49/14
54/2 60/15 78/9
**certification [5]** 6/9
6/9 49/6 60/11
71/16
**certify [1]** 85/3
**chairman [1]** 34/9
**chambers [3]** 4/22
79/9 84/22
**chambers' [1]** 4/19
**changed [1]** 6/12
**changing [1]** 41/3
**character [3]** 39/5

C

character... [2] 41/25 42/7
characterizing [1] 73/13
charge [4] 24/21 29/22 30/19 32/10
charitable [4] 28/13 69/20 70/22 70/24
charities [1] 70/10
charity [1] 68/7
Charles [3] 2/12 4/1 8/4
Charles Harder [2] 4/1 8/4
Chesapeake [1] 18/20
chief [1] 32/12
children [1] 70/5
chime [1] 81/23
Chinese [1] 53/18
chosen [1] 83/6
Christ [1] 69/1
church [4] 27/13 68/23 69/3 71/7
Cicero [1] 39/3
Ciepielowski [1] 31/20
circuit [36] 12/15 14/6 14/8 14/10 14/13 14/15 15/1

15/8 15/11 32/11 40/18 42/6 44/7 53/25 54/10 56/15 57/2 58/20 60/8 60/22 61/5 61/19 63/16 63/18 63/19 63/21 63/22 64/3 70/9 73/11 74/21 76/7 77/2 78/22 79/5 80/2
Circuit's [1] 44/2
cite [6] 42/6 52/5 52/24 53/7 54/10 79/2
cited [18] 9/2 12/14 12/15 14/5 14/5 14/7 15/7 35/7 45/1 52/17 52/19 52/21 65/14 69/21 70/9 72/15 75/20 75/24
cites [1] 63/15
citing [1] 20/21
citizen [1] 45/4
civil [1] 49/11
claim [29] 5/5 9/10 9/14 9/23 9/25 10/1 11/10 12/11 12/19 12/21 15/24 22/23 30/20 30/22 30/24 30/25 31/11 32/24 33/9 44/10 44/12 44/13 57/5 60/5

65/23 67/2 67/13 74/2 74/5
claiming [1] 53/16
claims [15] 9/16 21/19 22/15 22/22 30/18 30/18 30/23 45/6 47/23 47/25 60/5 65/20 65/22 67/14 74/3
class [6] 6/8 6/9 71/21 71/23 72/22 72/24
clause [1] 77/19
clear [2] 35/9 51/11
clearly [2] 33/1 46/8
Clerk [1] 5/5
clever [1] 37/25
client [3] 8/12 46/4 65/20
client's [1] 55/7
clients [3] 5/17 5/20 5/23
Clinton [12] 10/1 10/6 12/9 15/21 45/1 45/1 45/10 45/12 46/6 65/19 81/3 81/9
Clinton v [1] 45/12
Clinton v. Jones [7] 10/1 10/6 45/1 45/1 45/10 81/3 81/9

**C**

close [5]  16/15 39/20 56/13 64/6 74/16
closing [1]  79/7
CMC [1]  79/11
colleague [4]  19/5 56/2 56/24 64/9
colleagues [3]  4/19 73/16 74/19
collective [33]  3/15 3/19 3/22 5/5 6/15 9/20 23/12 23/17 25/12 25/13 25/15 30/15 31/2 35/13 36/14 37/3 71/13 71/18 72/7 72/8 72/11 72/20 73/8 73/21 73/23 74/1 78/1 78/5 78/22 78/23 81/22 84/7 84/22
Columbia [2]  15/1 63/21
come [13]  5/23 6/21 16/1 39/24 47/11 51/7 55/12 57/24 69/9 70/22 82/1 82/23 84/11
comes [1]  49/10
comfort [1]  40/10
coming [3]  4/9

Commanche [1] 15/11
commensurate [1] 72/12
commerce [21] 22/8 22/11 23/14 23/15 24/7 24/17 25/21 25/22 25/23 30/8 30/9 57/22 58/7 58/9 59/15 59/18 68/8 68/11 68/20 70/20 71/1
commercial [9] 26/9 26/17 68/24 70/12 70/25 71/8 77/5 77/11 77/13
Commission [3] 26/4 27/18 27/24
Commission's [1] 27/24
commit [1]  67/8
committee [3] 27/22 28/4 29/1
common [2]  57/20 72/9
communications [3] 31/13 31/14 73/2
Communists [1] 53/18
company [3]  28/17 63/17 80/7

comparable [6] 31/24 32/4 33/11 33/12 34/17 74/4
comparator [7] 33/24 60/24 61/4 61/11 61/17 62/4 80/18
comparators [8] 36/19 49/4 60/18 62/19 62/20 72/23 74/11 74/12
compare [1]  38/16
compel [2]  5/9 7/8
compensate [1] 72/11
compensation [1] 72/4
compete [2]  26/25 71/8
competing [1] 28/18
competition [2] 26/18 70/7
competitive [1] 70/12
complained [2] 65/7 65/10
complaint [41]  8/24 8/25 9/4 9/5 9/22 10/4 12/18 22/13 22/13 22/17 22/19 22/20 22/21 22/24

C

complaint... [27]
25/1 25/4 25/5
26/19 28/21 28/21
29/8 29/19 29/21
30/14 37/24 38/17
39/21 45/17 47/11
48/15 49/12 51/1
57/25 64/21 71/23
72/17 72/20 73/7
74/12 75/9 80/8
complaints [1]  53/8
completely [11]
14/22 14/22 15/17
15/25 16/2 21/1
45/7 46/11 64/18
64/24 65/15
components [1]
61/14
comprised [1]
27/13
computer [3]  2/20
4/25 5/2
Computer-Aided
[1]  2/20
computers [2]  30/5
30/7
concede [2]  69/7
70/17
conceivable [1]
16/25
concentration [1]

concerned [1]  59/5
conclude [1]  61/13
conclusory [6]
73/12 73/14 73/16
73/22 78/2 78/3
conditional [3]  49/5
60/10 71/16
conduct [4]  15/7
40/16 55/2 76/15
conducted [1]  58/8
conformed [1]
76/15
conforming [1]
77/2
conformity [2]
41/17 41/23
confusing [2]  13/13
15/17
Congress [1]  61/23
connection [1]  30/8
consent [3]  12/20
67/5 84/7
consider [2]  20/8
20/25
consideration [1]
60/13
considered [1]
57/12
consisted [1]  78/24
constitute [1]  40/8
construed [1]  61/21

contact [2]  40/13
65/6
contemporaneous
[1]  6/18
contestant [1]
67/14
context [4]  15/17
20/3 35/19 59/8
contexts [1]  21/1
continued [1]  2/2
continuing [1]  4/16
contractor [1]  36/2
contractors [5]
27/14 35/23 36/4
36/7 36/17
contribute [1]
27/17
contributed [1]
26/24
contribution [4]
26/11 28/6 28/13
28/15
contributions [1]
26/7
contributor [2]
26/9 27/20
contributors [2]
29/2 32/10
controller's [1]
61/15
convicted [1]  53/18
convictions [1]  15/9

# C

COO [1] 4/21
cooler [1] 41/9
Coons [1] 38/11
Coons's [1] 38/9
copy [3] 4/19 26/8
84/22
corner [1] 48/8
Corning [3] 60/21
61/23 62/13
corporate [1] 24/12
corporation [1]
36/5
corporeal [1] 7/11
correct [8] 23/3
33/14 37/16 45/12
45/18 46/11 56/7
85/3
cost [1] 20/11
could [16] 6/20
12/12 16/13 23/21
23/24 25/14 28/23
39/12 40/17 54/17
61/13 68/6 70/18
71/15 78/15 82/3
couldn't [3] 55/1
59/24 65/13
counsel [15] 1/19
2/3 2/8 2/12 3/7 3/8
21/21 35/20 37/15
62/1 66/8 66/14
66/24 81/18 82/19

counseling [1] 48/6
Count [1] 37/15
couple [4] 4/12 6/2
42/5 53/3
course [19] 5/2 6/10
18/20 19/14 21/18
26/14 32/14 37/22
44/12 47/5 64/24
79/23 80/15 81/3
81/15 81/15 81/18
82/13 83/23
court [60] 1/1 2/16
2/16 8/21 9/3 10/3
10/21 11/6 12/15
12/16 18/8 20/10
20/16 21/17 24/1
24/8 25/21 28/9
28/25 29/3 32/1
34/12 41/16 42/12
44/24 45/22 45/23
46/6 48/12 51/9
53/5 53/6 54/6
54/18 56/23 57/19
58/16 58/18 58/21
60/1 60/21 61/12
61/20 66/9 66/12
66/17 66/18 66/20
68/6 69/21 70/8
70/10 73/11 75/13
76/21 78/16 80/2
80/21 85/10 85/10
Court's [4] 45/4

courtroom [3] 4/21
4/22 8/8
courts [3] 18/4 18/4
60/8
courttranscripts [1]
2/18
coverage [29] 23/9
23/10 23/11 23/13
23/17 23/24 24/6
24/14 24/16 24/18
24/23 25/11 25/15
25/16 25/17 25/22
28/24 29/17 29/20
57/9 57/9 59/2 59/2
68/19 70/11 70/18
70/23 71/5 80/6
covered [7] 21/7
22/7 24/5 24/11
24/16 25/20 36/2
Covington [1] 35/8
coworkers [1]
41/11
CRC [2] 2/16 85/9
create [1] 44/17
created [1] 44/5
creating [1] 44/13
credit [1] 75/2
criminal [4] 43/5
49/10 52/10 56/4
critical [1] 50/23
criticism [1] 49/15

65/16

8/6

## C

CRR [2]  2/16 85/9
currently [1]  22/1
cut [1]  45/8
cuts [1]  45/10
cv [2]  1/3 3/6

## D

D.C [6]  1/25 2/5
 3/13 3/18 15/1
 63/22
daily [1]  64/13
damages [12]  12/21
 18/11 18/13 18/25
 45/20 52/23 66/5
 66/10 67/5 75/23
 75/25 76/2
dark [1]  36/21
data [1]  29/1
database [1]  29/2
dates [1]  82/2
daughter [1]  38/10
Dawn [2]  2/8 4/5
day [5]  41/14 44/23
 62/12 74/25 80/21
days [6]  5/12 5/12
 6/2 81/19 82/18
 83/18
deadlines [1]  83/9
deal [4]  5/23 9/7
 17/16 70/19
dealing [2]  53/15

dealt [2]  25/5 43/2
decades [1]  14/21
decide [1]  84/11
decided [1]  6/17
decision [8]  42/4
 42/5 45/22 45/24
 46/6 72/10 75/13
 76/9
decision-making [1]
 72/10
defeat [1]  60/6
defect [1]  84/12
defective [1]  41/4
defects [1]  9/22
defendant [7]  16/4
 47/1 50/2 50/5 74/2
 78/24 84/1
defendant's [2]
 42/17 77/20
defendants [9]  1/13
 2/8 2/12 3/24 4/1
 4/6 15/5 54/19 55/3
defendants' [1]
 53/2
defense [7]  4/4 16/8
 18/6 41/4 43/5 62/1
 67/11
deficient [1]  37/4
definition [2]  58/8
 73/16
delighted [2]  5/24

Democratic [2]
 29/1 57/17
Democrats [2]
 38/14 38/24
demonstrate [1]
 60/25
denied [5]  10/22
 11/3 14/24 21/2
 79/13
deny [1]  7/4
denying [2]  49/18
 72/4
depend [1]  40/4
depo [2]  79/19 83/7
depos [6]  16/13
 16/23 17/6 17/15
 35/5 80/13
depose [7]  16/16
 16/20 17/2 20/13
 38/12 48/2 48/5
deposed [1]  80/24
deposition [8]  10/7
 10/10 17/20 17/22
 80/16 82/17 83/1
 83/23
depositions [9]  12/1
 12/2 12/3 12/6
 12/12 17/9 17/21
 48/13 48/15
deprive [1]  45/7
depth [1]  48/14

described [3]  27/25
43/14 64/10
describes [2]  42/7
43/15
describing [2]
64/22 65/15
design [1]  76/18
designed [1]  18/5
desire [2]  25/19
37/7
despite [1]  37/4
detailed [1]  56/21
determination [2]
24/9 24/25
determined [1]
26/5
determines [1]
76/21
did [36]  10/9 13/13
14/17 17/13 18/18
18/20 21/10 22/12
24/23 29/3 30/19
30/19 31/4 31/17
31/21 32/8 33/6
33/7 33/17 33/17
33/19 37/6 37/6
39/15 39/16 39/16
45/20 48/6 50/19
61/15 64/23 66/25
66/25 67/21 67/25
75/18

didn't [17]  4/15
10/7 25/7 27/10
35/16 44/11 48/1
49/19 50/1 50/5
59/2 59/19 62/2
67/10 67/23 69/15
80/24
difference [2]  32/18
39/1
different [24]  10/12
12/8 14/22 14/22
15/17 18/22 18/23
19/2 21/1 34/4 36/8
38/25 41/19 44/8
56/9 62/8 62/9
64/19 64/25 65/15
67/15 76/19 76/20
81/2
differently [3]
33/25 34/3 71/7
difficult [3]  16/4
22/25 36/19
digital [1]  67/9
dinner [2]  26/13
26/14
dinners [1]  69/9
direct [1]  76/10
directly [2]  23/21
40/19
director [2]  31/13
31/14
disabled [1]  70/6

disagree [3]  54/3
60/2 71/11
disciplined [3]  34/1
34/2 34/3
discovery [15]  5/8
16/2 16/9 16/11
19/12 21/4 21/4
21/5 21/6 47/20
51/12 51/15 54/18
80/23 82/21
discredited [1]
10/23
discretion [1]  54/5
discriminated [1]
33/16
discrimination [7]
9/16 9/23 33/20
34/1 78/6 78/8
78/25
discuss [2]  82/8
84/15
discussion [1]
56/22
disfavored [4]  18/3
47/17 51/9 79/14
dismiss [12]  6/4
6/18 7/17 8/17
58/21 60/6 60/15
71/12 74/9 79/16
80/2 81/16
dismissed [1]  22/12
dispose [1]  45/7

D

disposition [3]  45/5 65/20 65/21
dispute [3]  29/15 83/21 83/25
disputing [1]  59/6
disregarding [1] 75/5
dissimilar [2]  54/21 75/14
distended [1]  7/11
distinct [2]  41/25 52/13
distinction [1]  42/2
distracting [1]  8/9
district [19]  1/1 1/1 1/17 9/3 12/16 14/25 18/7 22/2 32/16 45/23 51/20 56/17 57/1 60/8 60/8 63/21 72/15 85/10 85/11
diverse [1]  61/14
diversity [1]  46/21
DIVISION [1]  1/2
DNC [1]  29/3
do [77]  5/9 6/1 6/10 6/14 6/16 7/7 7/12 8/10 8/21 9/7 9/17 11/3 11/9 11/18 11/19 11/20 11/22 12/6 15/6 16/1

16/12 20/7 21/3 22/10 23/5 27/21 30/7 31/18 32/2 32/17 32/18 35/2 35/25 36/21 36/22 38/1 38/23 45/8 47/18 48/13 48/15 50/17 51/11 51/13 51/17 53/19 54/3 55/8 55/9 61/25 62/1 65/25 66/1 66/9 68/23 69/13 70/6 70/14 70/25 73/1 73/1 73/2 74/13 75/12 75/15 78/2 78/16 79/12 79/12 79/22 81/4 81/24 81/24 81/25 82/8 83/3 83/12
docket [2]  1/3 60/10
documents [5] 19/16 82/18 82/19 82/20 82/25
does [27]  10/4 14/2 24/3 25/21 28/18 29/19 30/3 36/21 36/22 37/10 39/25 39/25 40/1 41/24 43/19 46/6 50/9 50/10 50/10 68/10 69/2 70/11 70/14

84/15
doesn't [21]  6/21 10/6 17/20 26/16 26/16 26/18 31/6 31/7 31/10 33/20 38/15 58/4 58/5 68/1 68/3 71/14 76/2 78/12 78/16 78/17 81/9
doing [16]  21/11 21/12 24/5 24/6 24/8 26/16 27/16 31/14 32/13 37/8 38/21 40/15 42/11 68/24 72/1 83/8
dollars [5]  26/23 29/14 34/9 58/7 68/1
don't [78]  4/12 4/14 4/18 5/2 5/3 5/11 5/18 6/19 6/24 7/6 7/16 7/19 8/6 8/13 8/19 9/10 9/23 16/24 18/14 19/24 20/1 21/4 22/10 23/2 23/4 23/20 28/21 33/13 35/10 35/11 36/9 37/11 37/23 42/19 43/12 44/9 44/16 45/11 45/13 45/16 45/17

## D

don't... [37]  46/17 47/24 48/18 49/3 49/11 49/15 49/16 52/5 54/1 54/20 55/4 58/11 58/25 59/3 62/5 62/10 62/24 66/18 66/19 67/5 67/15 68/2 68/12 69/4 69/13 71/2 73/4 77/17 77/21 77/22 77/25 80/19 80/21 80/23 83/3 84/4 84/8
DONALD [10]  1/10 1/11 3/5 3/5 4/1 4/2 4/6 4/7 38/16 75/7
donated [1]  28/11
donating [1]  69/12
donations [2]  27/10 69/7
done [10]  5/22 6/25 7/5 12/24 40/7 52/9 62/25 66/16 78/15 79/21
doubt [2]  44/24 46/17
down [9]  4/13 7/20 10/13 24/22 56/10 62/16 63/8 70/23 84/11

dozen [3]  16/13 49/2 49/4
dozens [1]  80/14
drank [2]  41/11 41/12
draw [1]  78/20
dreamt [1]  37/18
drift [1]  82/3
drink [4]  41/8 64/12 64/13 76/11
drinking [4]  41/15 76/13 76/25 77/1
Drive [1]  2/13
drop [1]  7/20
drug [1]  27/11
drunk [3]  41/5 41/6 41/7
during [3]  36/6 65/1 65/7
duties [11]  17/13 31/17 31/23 32/19 33/24 36/19 70/24 71/19 71/20 73/8 79/1

## E

e-discovery [1]  82/21
each [2]  16/16 84/22
ear [1]  81/1
earlier [3]  15/19 15/20 63/14

early [2]  6/22 79/8
ease [1]  56/23
easily [1]  16/13
East [1]  2/9
Eastern [1]  22/2
economic [2]  58/4 68/19
effect [3]  38/25 71/25 72/4
effort [2]  45/6 60/25
efforts [1]  61/15
either [6]  47/6 60/12 62/20 67/9 67/9 74/5
elect [3]  22/9 27/1 27/15
election [8]  10/16 10/18 26/4 27/18 27/24 28/6 65/5 68/22
electoral [1]  57/12
electronic [1]  5/18
eleemosynary [4]  24/4 69/22 69/25 70/1
element [2]  7/9 67/2
elements [2]  31/1 67/3
Eleven [1]  50/6
eleventh [28]  12/15

# E

**eleventh...** [27] 14/6 14/8 17/20 17/22 32/1 40/18 42/6 44/1 44/7 53/25 54/10 56/15 58/20 60/8 60/22 61/4 61/19 63/16 63/18 70/8 73/11 74/21 76/7 77/2 78/21 79/5 80/2
**else** [11] 5/17 26/18 34/2 48/7 68/11 69/17 73/4 82/8 84/3 84/3 84/16
**email** [4] 4/20 6/2 83/13 84/22
**emails** [3] 4/23 83/1 83/8
**emoluments** [1] 77/19
**emphasize** [2] 75/17 75/18
**employed** [3] 13/9 36/12 78/24
**employee** [6] 23/24 24/5 24/10 41/2 44/4 64/11
**employees** [6] 17/13 27/14 36/6 72/1 72/1 72/12
**employer** [1] 44/13

**employment** [1] 35/17
**end** [4] 79/15 81/5 81/13 82/24
**end-run** [1] 79/15
**ending** [1] 12/6
**endorsed** [1] 25/9
**enemies** [1] 66/3
**engage** [1] 70/11
**engaged** [9] 22/8 22/8 22/11 23/14 24/6 24/17 55/9 59/15 60/18
**engages** [1] 68/7
**engaging** [3] 28/1 57/22 77/13
**English** [1] 39/5
**enough** [9] 5/22 6/20 9/9 9/10 9/19 9/23 60/2 61/3 77/25
**enter** [1] 80/10
**enterprise** [23] 23/10 23/12 23/17 24/14 24/18 25/16 25/17 26/17 28/24 29/17 57/9 57/17 57/21 58/11 58/12 59/2 59/14 67/24 68/18 70/11 71/5 77/5 77/10
**enterprises** [4] 22/7

**entire** [1] 69/19
**entirely** [1] 69/13
**entitled** [9] 17/21 44/23 46/4 46/15 48/10 75/15 80/20 83/22 85/5
**entitlement** [1] 71/18
**entity** [1] 70/11
**environment** [4] 44/1 44/5 44/14 44/18
**EPA** [12] 22/22 30/18 30/22 30/23 32/25 35/10 36/3 36/23 61/19 74/6 74/12 78/8
**EPA-type** [1] 35/10
**epitome** [2] 73/12 73/22
**equal** [18] 7/13 31/3 32/5 32/14 33/1 33/8 35/3 37/6 37/8 55/21 60/4 60/19 61/2 62/8 62/18 72/4 72/13 73/25
**equality** [1] 23/22
**equipment** [1] 5/19
**equivalent** [1] 72/13

**E**

Erie [1]  66/12
essentially [2]
31/24 57/10
establish [17]  23/8
23/10 25/12 25/12
25/22 29/20 30/25
36/3 37/4 66/25
67/1 68/18 70/16
71/17 76/12 78/1
78/18
established [4]
25/15 58/13 60/23
62/9
even [30]  5/21 6/22
17/19 21/4 22/17
24/11 25/15 26/6
27/10 28/13 28/14
28/17 28/22 28/23
29/3 36/2 36/24
42/19 48/11 48/24
53/5 57/20 59/25
66/2 66/9 66/12
66/20 68/16 71/14
82/23
event [2]  50/16
50/17
events [4]  11/22
11/22 49/19 65/8
ever [8]  15/14
21/22 49/7 57/11
65/2 65/7 65/10

every [10]  6/6 6/6
12/11 23/14 32/1
33/25 39/19 45/3
71/24 73/3
everybody [7]  4/8
6/21 7/24 37/13
47/7 58/19 62/2
everyday [1]  64/17
everyone [4]  3/2
6/24 26/8 31/4
everything [4]  4/11
7/12 55/25 75/4
evidence [59]  11/16
13/7 14/9 14/12
15/5 34/4 39/24
40/17 40/17 40/19
41/6 41/8 41/9
41/10 41/11 41/15
41/16 41/18 41/20
41/21 41/22 42/1
42/6 42/7 42/9
42/13 43/3 43/5
46/7 47/18 48/11
49/8 49/20 49/23
51/7 51/19 51/21
51/21 52/1 52/14
52/16 54/7 55/12
56/5 66/24 74/21
74/22 74/24 76/10
76/12 76/14 76/20
76/21 76/23 76/24

79/15
exact [4]  13/6 27/7
62/10 78/14
exactly [17]  12/7
13/6 27/6 33/8
34/11 43/15 43/16
49/1 49/3 50/19
50/20 51/17 54/7
59/9 69/4 76/6 76/8
example [6]  34/1
35/23 52/23 70/4
73/10 77/12
examples [1]  53/15
exceeded [1]  29/12
exception [2]  39/23
73/13
excess [1]  59/14
excessive [1]  15/3
excluded [3]  13/7
14/12 14/16
exclusion [1]  80/8
excusing [1]  83/9
exist [1]  22/21
expand [1]  10/5
experience [1]
13/22
explain [1]  55/4
exploded [1]  41/2
exponentially [1]
16/9
expounds [1]  16/9

## E

expresses [1] 73/17
extensively [2] 21/22 59/15
extent [2] 24/24 55/11
extracting [1] 83/8
extraneous [1] 26/20
extremely [1] 51/9
Exxon [1] 18/16
eyewitnesses [4] 11/12 11/13 13/11 19/17

## F

F.2d [4] 56/16 56/19 56/20 64/2
F.3d [8] 54/13 61/6 63/16 63/18 63/19 63/20 63/22 79/4
F.R.C.P [1] 12/3
F.Supp. [2] 52/3 56/17
fabulous [1] 69/14
face [1] 74/11
Facebook [1] 20/6
facie [2] 33/23 34/5
fact [9] 18/4 18/18 27/16 31/16 58/6 61/4 69/7 74/10 76/25

factor [1] 54/17
factory [1] 62/11
facts [9] 9/19 40/5 46/18 46/19 53/20 59/24 69/5 73/18 78/17
factual [5] 18/23 24/25 65/16 68/6 73/17
fail [1] 44/12
failing [1] 72/11
fair [5] 50/4 57/8 57/13 58/12 58/14
falling [1] 80/9
far [6] 12/18 14/18 25/11 43/21 65/18 65/24
farm [1] 27/10
fast [3] 43/21 54/2 57/11
favor [1] 6/1
favored [1] 33/19
FEC [3] 35/19 35/21 58/5
federal [10] 2/16 9/4 26/4 27/18 27/23 28/6 66/12 66/18 66/21 85/10
feel [1] 43/16
feeling [1] 4/14
fell [1] 80/6
felon [1] 53/18

female [1] 38/3
71/25 72/2
females [1] 78/24
few [4] 5/1 8/21 17/6 44/10
field [1] 43/25
file [14] 5/11 5/12 6/11 6/11 6/11 30/19 38/7 51/13 71/15 81/4 82/12 83/3 83/22 84/1
filed [5] 22/18 75/9 81/14 83/21 84/8
filing [1] 60/11
final [1] 63/3
find [5] 16/5 19/15 19/16 22/12 23/21
fine [4] 6/18 42/2 55/20 83/7
finite [1] 36/4
Firestone [3] 41/1 41/3 64/10
Firestone's [1] 41/4
firm [1] 3/17
first [10] 25/14 27/2 39/9 40/8 40/9 57/7 57/17 68/22 74/20 80/4
First Amendment [1] 68/22
fit [2] 46/5 78/11
five [5] 18/20 31/7

F

five... [3]  43/3
62/20 80/24
five-month [1]  43/3
fixing [1]  19/10
flatly [1]  10/22
floor [6]  2/13 2/17
23/1 24/10 24/16
24/19
FLORIDA [22]  1/1
1/8 1/21 2/10 2/17
2/17 3/10 24/22
25/6 29/22 31/15
31/19 32/11 32/13
32/16 66/8 66/8
66/14 66/19 66/24
75/25 85/11
FLSA [10]  16/23
21/24 22/7 30/22
35/10 59/13 67/23
68/3 69/2 77/6
fly [1]  83/4
Flying [2]  52/2
56/16
focus [3]  8/21 15/18
70/10
focuses [1]  11/10
follow [1]  81/12
followed [1]  60/22
following [1]  82/5
food [1]  34/3
Footnote [1]  52/24

forced [2]  15/2 15/3
forcible [1]  67/16
Ford [2]  14/7 63/17
FordHarrison [3]
2/9 4/4 4/6
foregoing [1]  85/3
foremen [1]  62/11
forget [2]  13/20
16/7
forgot [1]  8/14
forgotten [1]  66/6
forth [4]  7/22 60/20
62/19 82/23
forward [3]  39/12
57/24 60/6
Foshee [1]  56/25
Foshee v. LVNV [1]
56/25
found [5]  28/25
61/7 61/15 77/10
77/12
Foundation [3]
23/25 27/5 27/7
Foundation v.
Secretary [1]
23/25
four [4]  5/12 63/6
63/10 80/24
fours [3]  23/21 55/1
57/24
Fourth [3]  2/13
15/8 64/3

frame [1]  5/11
frankly [2]  22/17
35/16
FRCP [1]  8/23
free [1]  27/12
Friday [2]  80/1
82/2
friend [13]  38/1
38/2 43/12 44/25
47/17 51/17 57/10
57/25 59/5 61/2
74/21 77/6 77/25
front [1]  47/11
fulfill [1]  61/22
full [3]  4/15 28/7
37/22
fully [2]  19/2 60/12
function [3]  22/9
27/15 71/1
Funding [1]  56/25
funds [2]  28/2 28/7
further [5]  30/15
37/10 62/24 65/13
74/13

G

G-O-U-L-A-H [1]
63/17
gal [4]  38/7 38/20
39/20 47/1
gal's [1]  47/11
Galveston [1]  18/18

# G

gave [3]  13/22
52/23 63/6
general [4]  28/3
42/7 65/4 76/1
generally [1]  80/21
get [31]  4/15 4/25
5/2 5/12 5/14 5/21
6/1 18/1 34/9 35/10
35/11 38/6 43/6
43/7 43/24 48/7
51/3 57/21 67/6
77/16 79/22 79/25
80/11 81/14 81/19
81/20 81/22 82/17
82/25 83/6 83/21
gets [5]  15/14 18/16
28/11 34/10 80/1
getting [2]  36/13
58/20
Gilbride [2]  2/3
3/21
girl [1]  38/9
give [16]  5/15 5/22
26/9 27/20 37/22
39/3 54/10 55/25
56/2 63/3 63/10
63/15 63/24 64/5
70/4 79/2
given [3]  28/10
58/17 82/18
giving [2]  75/1

Glass [1]  60/21
go [31]  5/16 6/24
7/21 10/11 16/4
17/18 30/19 35/19
36/15 36/16 38/12
39/7 39/25 39/25
40/1 43/8 43/19
43/20 48/7 49/11
50/12 52/24 55/19
58/23 60/6 62/16
65/11 65/24 66/22
67/13 77/22
goes [6]  5/5 24/20
64/21 75/4 82/15
82/22
going [70]  5/7 5/25
6/12 7/19 9/18
11/14 11/16 13/9
13/11 13/12 15/13
15/14 16/16 16/22
17/6 17/10 18/1
19/6 20/16 24/24
29/13 29/15 30/21
31/5 35/8 36/2
36/15 37/14 37/22
38/1 38/6 38/7 38/9
38/11 38/19 39/8
39/9 40/3 40/4
46/24 47/9 47/16
50/12 54/1 56/12
57/7 58/4 63/2 63/8

69/8 69/8 74/18
76/8 77/14 77/16
79/23 79/25 80/12
80/14 80/20 81/12
82/16 82/20 82/22
83/2 83/24 84/1
good [8]  3/2 3/9
3/12 3/16 3/20 3/23
3/25 4/8
goods [1]  22/10
got [23]  6/20 7/8
7/22 14/20 17/5
33/4 33/7 33/19
35/13 37/25 38/11
39/5 39/19 39/20
42/15 47/7 50/16
54/11 62/11 62/11
62/12 71/17 83/15
gotten [1]  48/24
Goulah [2]  14/7
63/17
grab [1]  38/20
grabbed [4]  13/22
38/4 47/1 47/10
grade [2]  81/11
81/11
grant [1]  17/21
granted [2]  49/5
80/3
grasping [1]  12/24
great [3]  38/14 79/6

# G

great... [1] 79/23
greater [2] 29/18
61/15
greatest [2] 38/10
63/6
greatly [1] 38/25
greets [1] 65/8
grocery [2] 27/9
60/23
groped [2] 45/14
67/15
groping [4] 42/16
51/22 54/8 54/9
ground [1] 78/17
guess [5] 23/24 27/7
33/13 35/5 50/7
guy [8] 23/1 33/6
34/10 37/25 38/10
41/4 52/11 72/18

# H

habit [44] 40/1
40/16 40/17 40/19
40/24 41/8 41/16
41/18 41/18 41/20
41/21 41/23 42/9
42/14 42/22 51/19
51/21 52/1 52/4
52/6 52/13 52/16
53/22 54/6 54/20
56/3 56/5 56/6

56/11 56/17 63/7
64/11 66/24 66/25
74/21 74/22 74/23
75/18 76/5 76/13
76/14 76/18 76/22
77/2
habitual [1] 42/11
had [16] 12/11
13/21 15/6 19/22
20/25 27/11 27/21
43/5 50/20 61/11
61/16 62/13 62/21
66/6 76/11 77/10
half [2] 7/4 84/21
hallmark [1] 13/4
Hamilton [3] 73/10
73/13 73/19
hamstrings [1] 21/3
hand [6] 12/24
12/25 13/22 37/13
44/11 56/2
handle [1] 5/14
hands [2] 4/18 65/9
hands-on [1] 4/18
happen [6] 13/13
17/24 47/21 49/19
66/25 67/1
happened [24]
10/25 11/15 11/20
13/12 13/19 14/19
14/21 15/15 15/17
15/18 15/19 16/6

63/17 63/17
43/15 46/24 50/20
50/23 54/8 67/10
74/25 75/4 76/6
happens [6] 10/18
10/25 16/15 44/21
80/5 80/20
happy [2] 7/6 7/7
harassment [5]
10/22 14/14 14/15
44/4 44/14
harassment/hostile
[1] 44/14
hard [3] 43/21 54/2
57/11
hard-and-fast [3]
43/21 54/2 57/11
Harder [11] 2/12
2/12 4/1 8/4 8/13
34/18 37/25 48/17
63/6 76/5 80/12
harm [2] 52/21
55/6
has [42] 5/16 8/12
8/20 10/7 11/8
11/21 14/12 14/23
17/12 19/3 19/4
21/21 21/23 22/14
24/9 25/23 26/4
27/18 28/6 31/25
32/16 34/4 34/7
34/19 36/25 37/1

# H

has... [16]  42/21
45/5 46/16 49/20
53/19 55/9 57/10
58/13 60/5 61/19
67/16 69/1 69/5
70/10 77/2 82/19
hasn't [3]  25/3
25/11 71/3
Hassan [2]  1/22
3/13
Hassan Zavareei
[1]  3/13
hate [1]  79/22
hats [12]  25/25 26/5
26/23 27/1 27/17
28/1 28/18 28/19
29/14 58/9 68/16
68/17
have [162]
haven't [11]  9/9
16/14 16/20 19/1
32/16 48/24 52/17
52/17 53/12 57/20
70/19
having [4]  26/13
26/14 34/25 79/8
Hawaii [1]  83/7
he [47]  10/22 13/22
13/22 14/3 25/8
33/19 38/8 38/19
39/19 41/2 41/3

41/10 41/12 41/15
41/17 42/18 42/21
44/10 45/14 45/14
45/15 45/19 45/20
46/20 47/9 47/10
47/19 49/25 50/21
50/21 55/9 64/10
64/12 64/13 64/14
65/7 65/9 65/9
67/11 74/25 76/11
76/24 76/25 77/1
he's [11]  31/23
32/12 37/25 38/1
39/4 39/5 40/7 47/7
55/17 63/11 75/1
head [1]  31/12
headquarters [1]
23/2
hear [7]  8/7 21/13
21/14 73/6 80/25
84/20 84/21
heard [2]  5/14 60/1
hearing [6]  1/16
7/14 45/13 75/3
79/8 82/1
hearsay [1]  20/22
heels [1]  80/11
held [9]  15/2 42/12
44/10 57/15 60/9
60/24 61/12 61/19
77/3

her [47]  4/22 11/16
20/4 25/12 31/16
31/17 38/8 38/13
43/16 44/10 44/11
44/11 45/5 45/7
45/7 45/8 45/15
46/5 46/5 46/18
46/19 47/10 49/18
50/20 50/21 53/21
57/13 60/24 65/20
65/22 65/22 67/11
67/12 71/19 73/13
73/15 80/20 82/17
82/18 82/19 82/25
82/25 83/1 83/1
83/13 83/14 84/15
here [46]  4/13 4/14
5/21 7/5 9/4 13/8
14/19 19/3 20/19
29/13 32/15 40/1
41/20 42/15 43/4
43/15 44/19 44/19
45/6 46/12 46/21
49/16 49/23 50/23
51/4 51/5 51/6
52/15 53/14 53/20
54/8 55/12 56/4
59/16 60/15 60/16
61/18 61/25 63/3
64/18 67/8 69/5
75/19 78/11 78/15

# H

here... [1] 84/4
here's [4] 18/10 33/17 38/1 79/21
hers [1] 60/24
Hey [1] 5/13
Hi [1] 65/9
high [1] 4/10
high-quality [1] 4/10
higher [1] 30/24
highlight [1] 31/10
highly [1] 47/17
highways [1] 24/22
Hills [1] 2/14
him [6] 10/9 20/15 23/2 55/10 77/21 84/5
himself [1] 50/2
hinge [1] 81/15
hired [1] 50/24
his [18] 1/10 20/11 38/2 38/5 41/8 41/10 41/11 41/16 49/25 49/25 50/20 50/21 50/22 55/6 55/8 63/6 76/13 76/15
history [2] 21/20 21/22
hit [1] 63/8
hits [1] 63/6

hog [1] 27/10
hold [9] 17/23 29/3 43/2 47/21 55/8 55/10 56/19 72/13 72/23
holding [1] 12/25
holds [2] 15/22 61/5
hole [1] 78/11
Hollywood [1] 50/15
homes [1] 76/1
honesty [1] 42/8
honor [141]
HONORABLE [1] 1/16
hoops [1] 30/21
hope [2] 75/11 83/11
Horner [2] 14/6 63/14
horrible [1] 39/4
hostile [5] 44/1 44/4 44/5 44/14 44/17
hotel [3] 30/10 59/17 59/19
hotels [2] 26/15 69/8
hour [1] 7/3
housekeeping [2] 4/16 7/15
how [13] 9/7 13/13

41/24 43/16 43/22 48/13 48/15 55/4 58/6 67/15
however [4] 10/3 19/2 20/25 23/11
Hudson [2] 14/25 63/21
Hudson v. District [2] 14/25 63/21
Humana [1] 72/14
hundred [1] 34/9
hundreds [3] 35/22 36/15 36/16
hurry [1] 4/13
hypothesize [1] 38/22
hypothetical [2] 18/19 38/2

# I

I'd [2] 45/25 55/22
I'll [9] 5/14 7/12 63/3 66/14 70/4 79/21 80/16 80/25 84/20
I'm [57] 4/20 7/5 7/6 7/7 7/11 7/19 8/2 8/22 16/14 18/1 18/12 18/24 19/6 21/12 23/7 28/22 30/4 30/9 32/14 34/1 34/8 34/17

**I**

I'm... [35]  34/21
35/8 37/21 39/8
39/9 39/16 39/17
43/25 44/6 44/9
45/18 46/1 47/9
48/14 56/12 57/7
59/7 59/13 61/20
62/25 63/2 63/8
63/9 63/10 66/11
66/20 68/5 69/16
72/19 74/18 76/8
80/13 83/9 83/24
84/14
I've [13]  4/11 6/6
6/19 21/7 21/25
35/15 36/5 37/24
43/2 49/9 49/9
66/16 69/20
idea [3]  50/2 50/22
62/6
identical [1]  60/24
identified [2]  48/18
70/3
identify [3]  35/13
78/4 78/6
identity [2]  52/11
52/13
III [1]  37/15
immediately [4]
20/5 64/14 79/20
82/8

immunity [1]  10/2
impact [1]  38/25
imperial [1]  79/22
imply [1]  24/3
importance [1]
51/19
important [9]
17/23 31/16 40/20
41/14 45/2 49/23
60/7 71/10 76/5
importantly [1]
52/18
improper [8]  15/12
18/9 20/17 20/19
30/2 53/4 67/1
76/12
impugn [1]  18/6
inaccurate [1]
74/23
inadmissible [2]
15/2 15/9
inappropriate [1]
39/14
INC [5]  1/12 3/6
4/2 4/7 61/6
incidences [1]
56/12
incident [5]  43/11
43/13 43/14 64/23
64/23
incidents [6]  43/16
43/18 54/9 54/20

54/23 54/25
included [2]  58/16
59/22
including [2]  69/21
77/18
increase [1]  77/20
incredibly [1]  37/4
independent [6]
27/14 35/23 36/1
36/4 36/7 36/17
indicate [1]  71/6
indication [2]  31/21
35/1
indicative [2]  13/24
34/25
indirect [2]  76/14
77/1
individual [25]
1/10 23/8 23/11
23/14 23/22 23/23
23/24 24/5 24/9
24/16 24/23 25/11
25/15 25/22 29/20
57/9 59/1 67/24
70/18 70/23 70/23
73/1 74/3 83/13
83/25
individually [3]  1/6
24/11 25/20
individuals [2]
25/19 74/10
inducement [3]

# I

inducement... [3] 26/6 26/8 27/19
inducements [2] 26/7 69/6
inducing [2] 26/10 27/16
industries [1] 62/7
inexplicably [1] 30/17
infer [2] 29/25 30/3
inference [2] 73/17 73/18
influencing [1] 28/6
informed [1] 66/24
inherently [1] 20/22
initial [1] 12/2
injured [1] 46/18
injury [2] 46/16 46/17
inquiry [1] 23/22
insists [1] 43/12
installed [1] 64/14
installing [1] 64/12
instance [4] 40/9 54/8 54/15 54/19
instead [2] 47/16 62/13
insufficient [4] 9/19 22/22 34/24 74/5
insurance [2] 80/6

80/7
integrity [1] 18/6
intend [1] 55/10
intent [15] 14/12 39/25 41/19 49/22 50/18 50/20 50/21 52/19 52/20 53/1 53/22 67/2 67/2 67/3 75/22
intentional [1] 67/7
interrogatory [1] 7/9
interrupt [1] 69/15
interstate [13] 23/15 24/7 24/17 24/21 25/21 25/22 30/8 30/9 57/22 58/9 59/15 59/18 71/1
interviews [1] 20/6
intuitive [1] 23/19
invokes [1] 45/4
involuntary [1] 54/25
involve [3] 53/7 65/22 71/1
involved [1] 83/6
Iowa [2] 51/20 56/17
Iqbal [2] 32/17 71/11
is [277]

isn't [3] 9/14 13/11 37/4
31/14 36/14 39/2 39/6 39/11 48/9 67/3
issue [17] 4/20 7/2 15/24 19/2 29/12 29/13 29/16 50/5 51/6 59/4 59/6 60/14 67/9 71/11 79/19 82/16 83/10
issues [6] 5/8 40/1 43/6 55/23 77/4 79/11
it [189]
it's [104]
item [1] 26/9
items [2] 27/25 58/16
its [1] 61/14
itself [1] 22/19

# J

J-A-E-N-S-C-H [1] 4/3
J. [1] 3/6
J. Trump [1] 3/6
Jaensch [9] 2/8 4/3 8/12 8/16 9/15 9/18 21/14 64/5 67/21
Janet [2] 1/19 3/10
Janet Varnell [1] 3/10
janitors [1] 59/17

## J

**job** [12]  17/13 60/24 61/3 62/2 62/3 62/5 62/10 62/11 64/16 71/2 76/13 79/1
**jobs** [1]  61/1
**Joe** [1]  38/4
**Johnny** [1]  46/21
**JOHNSON** [18]  1/6 3/5 3/11 3/14 3/18 11/4 11/9 11/15 13/12 29/18 37/6 43/15 50/19 60/5 64/20 66/1 66/1 72/8
**Johnson v. Donald** [1]  3/5
**Johnson's** [2]  11/10 82/16
**join** [1]  37/7
**joinder** [2]  16/16 16/19
**joins** [1]  84/7
**Jones** [16]  10/1 10/6 12/9 15/21 23/1 45/1 45/1 45/10 45/12 46/6 46/21 47/8 47/10 65/19 81/3 81/9
**judge** [7]  1/17 5/15 19/6 21/16 35/8

**Judge Covington** [1]  35/8
**judge's** [1]  35/9
**judges** [1]  7/6
**judgment** [6]  32/15 32/23 44/3 51/6 59/8 59/10
**judicial** [1]  58/16
**Julie** [1]  10/21
**July** [3]  82/12 82/17 84/1
**June** [2]  1/8 85/7
**JUNG** [1]  1/16
**jurisdiction** [1]  45/4
**jurisdictional** [1]  67/23
**jurisprudence** [2]  21/20 21/23
**jury** [4]  13/13 15/18 43/3 61/13
**just** [76]  4/12 4/16 5/7 5/8 5/22 5/25 7/1 7/16 8/21 9/13 17/1 19/4 22/18 22/25 24/19 26/13 26/13 28/13 29/16 29/21 30/6 30/11 30/13 31/10 31/23 33/14 35/2 35/10 35/18 36/15 36/22 37/9 37/21 38/21 38/22 39/6 42/17 42/18 42/19 43/2 43/17 46/4 46/7 46/20 49/10 50/4 55/12 55/14 55/22 56/10 58/19 58/21 59/3 63/24 64/7 68/1 68/3 68/14 69/17 69/24 71/2 71/15 72/25 74/18 74/24 75/17 76/8 78/15 79/18 80/12 81/8 81/23 82/4 83/2 84/4 84/22
**Justice** [2]  2/4 3/21

## K

**Karla** [2]  2/3 3/21
**Karla Gilbride** [1]  3/21
**Katherine** [2]  1/23 3/17
**Katherine Aizpuru** [1]  3/17
**Kathleen** [1]  45/16
**Katy** [2]  43/14 75/6
**Katz** [10]  22/1 22/12 28/25 57/13 57/15 57/16 57/19 69/13 69/17 70/20
**Kavanaugh** [1]  10/22

# K

keep [6]  10/3 37/14
 43/11 48/19 61/18
 75/3
Kennedy [1]  2/9
kick [2]  7/18 78/16
Kid's [1]  70/5
killed [2]  18/19
 18/21
killing [1]  18/17
kind [10]  5/8 5/15
 7/1 7/23 22/16 27/8
 33/25 35/20 55/16
 70/20
kinds [4]  26/16
 27/14 36/13 65/8
King [1]  69/1
kiss [2]  42/19 67/16
kissed [4]  44/6
 44/11 67/11 75/6
kisses [3]  43/17
 43/17 55/1
kissing [3]  12/25
 42/18 42/24
kneecap [1]  51/16
knot [1]  52/12
know [41]  5/7 6/16
 7/6 8/8 18/14 19/5
 19/24 20/1 29/20
 35/16 37/22 39/4
 39/15 39/16 40/5
 42/23 43/12 44/1

48/18 48/21 49/13
49/24 51/8 54/11
55/17 56/11 59/13
63/5 65/19 68/2
68/12 69/5 71/2
73/4 77/8 79/2 80/4
80/23 81/18 82/7
84/8
knowledge [10]
 18/14 39/25 41/19
 49/22 50/18 52/21
 52/22 53/1 53/22
 75/22
knows [1]  58/19

# L

L-5,' [1]  73/16
labor [8]  9/10 16/12
 21/14 24/1 48/25
 57/5 57/8 57/13
lack [2]  67/4 83/10
lady [4]  1/21 38/6
 38/8 40/12
Lake [1]  1/21
language [2]  45/3
 76/17
lap [1]  38/8
large [1]  36/11
last [1]  59/16
lastly [1]  78/20
late [1]  37/19
later [5]  6/22 10/14
 10/23 79/25 82/1

law [15]  11/13 17/7
 23/16 44/2 44/16
 55/12 56/4 63/11
 68/18 70/16 81/12
lawn [1]  34/9
lawns [1]  31/12
laws [2]  28/14
 28/15
lawsuit [2]  12/4
 40/14
lawyer [4]  34/17
 38/23 50/24 70/3
lawyering [1]  4/10
lawyers [3]  11/17
 20/5 84/17
leaking [1]  18/16
leaned [1]  13/22
learned [2]  35/15
 75/9
learning [1]  43/25
least [9]  4/11 6/6
 12/2 12/18 43/20
 54/24 65/11 70/14
 80/4
leave [3]  4/14 58/17
 84/4
LeCroy [2]  53/25
 54/13
led [1]  55/16
left [3]  17/6 31/19
 50/24
legal [1]  12/14

**L**

legions [1]  77/18
length [1]  9/6
less [13]  31/3 32/2
 32/4 33/4 33/5 33/6
 33/18 33/19 61/12
 61/16 62/21 72/1
 73/6
lesser [1]  36/25
let [12]  19/7 21/10
 25/14 33/13 43/24
 46/24 47/9 47/16
 57/21 64/5 66/14
 82/6
let's [23]  3/3 5/17
 16/15 17/25 20/11
 20/13 20/13 20/14
 20/14 20/15 20/15
 37/21 37/22 38/21
 39/11 39/18 42/16
 42/17 43/11 45/9
 48/6 48/8 79/18
level [1]  72/11
Lexis [1]  73/19
liability [2]  58/13
 77/10
licenses [1]  26/25
light [1]  49/18
like [43]  4/14 4/17
 5/18 7/7 11/25 12/5
 12/7 13/1 14/11
 26/5 26/13 26/14

26/21 27/13 27/18
 31/11 31/12 34/15
 39/21 42/7 42/18
 44/20 45/3 45/17
 46/4 46/10 48/4
 52/9 53/17 59/17
 62/11 62/12 65/2
 65/10 65/13 68/6
 68/22 75/12 76/23
 78/11 82/4 82/17
 82/25
likelihood [1]  74/7
likely [1]  36/10
limine [2]  47/14
 51/5
limit [5]  4/12 12/9
 50/12 51/14 79/15
limitation [1]  12/17
limited [4]  10/3
 15/23 47/20 83/24
line [4]  15/4 17/23
 18/2 43/21
linemen [1]  62/12
lines [1]  7/5
list [3]  17/24 38/7
 38/9
listed [2]  31/10
 31/23
listened [1]  64/9
lists [1]  31/7
literally [3]  22/4
 29/21 72/21

litigant [4]  44/19
 44/20 46/4 46/10
litigate [2]  9/12
 9/24
litigating [1]  9/25
litigation [3]  19/9
 65/22 65/23
little [14]  4/17 4/17
 5/4 7/2 7/23 8/5
 8/22 25/7 38/9 43/7
 59/18 63/9 79/18
 80/25
live [1]  7/13
LLP [3]  1/23 2/9
 2/12
local [2]  6/11 57/17
located [1]  16/7
logically [1]  71/14
long [13]  4/19 7/22
 8/7 9/4 9/8 9/8 21/3
 21/25 22/24 37/4
 38/3 53/8 54/1
look [6]  20/15
 45/25 54/19 58/3
 65/14 77/14
looked [1]  26/2
looking [1]  71/12
looks [1]  4/17
lot [13]  6/12 9/22
 43/3 43/24 43/25
 50/17 62/7 62/7
 65/19 66/3 75/18

**L**

lot... [2]  80/21
  82/23
lots [4]  11/25 11/25
  12/1 12/1
Loughan [8]  41/1
  51/19 56/15 64/10
  65/13 74/20 76/10
  76/24
Loughan v.
  Firestone [1]  41/1
LVNV [1]  56/25
lying [1]  34/2

**M**

M-U-C-K-A-L-A
  [1]  63/20
Macedon [1]  39/4
made [16]  6/12
  10/23 11/2 11/5
  16/3 22/15 23/23
  28/6 38/5 43/16
  49/25 51/11 53/3
  60/16 74/19 74/19
magistrate [1]  5/15
magnet [1]  42/19
main [1]  15/13
make [21]  10/19
  11/21 20/15 22/23
  24/9 26/16 26/17
  26/18 50/1 53/5
  59/24 65/17 69/2

  77/20 79/9 79/10
  83/17 83/19
makes [1]  23/19
making [4]  18/12
  32/15 59/7 72/10
male [5]  51/21
  60/24 72/1 72/12
  73/15
males [1]  31/7
man [1]  39/4
management [3]
  4/18 6/4 80/10
manager [1]  34/13
many [5]  20/25
  48/13 48/15 66/16
  72/6
Maryland [1]  18/8
match [2]  78/12
  78/17
material [2]  44/3
  53/9
Matt [1]  31/20
Matt Ciepielowski
  [1]  31/20
matter [11]  3/5
  16/23 28/3 58/5
  58/5 58/7 68/18
  70/16 80/20 81/2
  85/5
matters [1]  4/16
may [21]  7/3 8/22

  21/17 23/8 25/10
  36/11 37/18 39/10
  42/4 42/11 45/11
  68/23 81/7 82/11
  82/23 82/24 84/13
  84/14
maybe [13]  10/14
  23/9 35/24 36/17
  37/1 37/19 43/6
  44/9 45/12 56/1
  57/24 57/24 79/10
McCormick [1]
  42/6
me [41]  6/13 8/1
  9/18 13/22 17/1
  19/7 21/10 25/14
  30/1 33/14 33/14
  34/15 35/12 38/4
  38/5 38/5 43/24
  44/5 44/6 45/12
  45/18 45/19 45/20
  47/9 48/1 49/7
  54/10 56/1 56/2
  63/6 63/10 63/15
  66/8 66/16 66/24
  79/2 79/24 81/9
  82/3 82/7 83/19
mean [35]  12/25
  13/8 16/12 16/14
  16/17 17/4 17/6
  17/20 22/16 23/9

# M

mean... [25]  26/6 27/6 27/9 27/13 29/13 31/6 31/9 32/15 33/6 33/7 35/7 36/25 38/19 38/25 39/7 40/5 43/2 48/8 50/9 50/10 55/17 66/4 68/5 69/15 72/17

meaning [2]  15/5 64/13

means [5]  8/11 17/21 33/12 34/10 51/14

mechanic [1]  41/2

mechanical [1] 2/19

media [2]  20/5 20/6

meet [2]  65/8 77/24

meet-and-greets [1] 65/8

members [4]  71/23 72/7 72/11 72/22

men [3]  31/3 37/7 73/6

mentioned [1] 63/13

merit [1]  51/2

merits [2]  74/8 80/17

message [1]  19/21

messages [1]  83/1

met [2]  65/25 78/9

middle [5]  1/1 32/16 72/15 82/5 85/11

might [11]  4/17 13/23 16/17 16/18 35/11 35/24 35/25 37/20 47/3 49/2 58/1

million [2]  25/25 26/23

millions [4]  29/14 58/7 68/1 69/2

mind [5]  33/14 43/11 48/19 61/18 84/4

mine [1]  54/11

minimum [1]  32/17

minister [1]  25/24

minute [2]  37/21 46/17

minutes [1]  4/13

Miranda [1]  60/22

Miranda v. BNB [1]  60/22

misconduct [2] 18/25 42/17

missing [1]  84/3

MO [1]  52/13

modus [6]  13/1 13/1 14/8 52/7 52/8

mom [1]  59/19

mom-and-pop [1] 59/19

moment [2]  11/11 11/19

money [9]  26/9 26/24 27/20 28/4 33/4 35/22 68/25 77/21 80/7

month [6]  35/25 36/1 43/3 59/16 81/5 81/13

more [39]  4/18 5/4 7/11 9/20 16/22 17/6 17/22 25/7 33/4 33/7 33/18 33/18 33/20 34/16 34/20 35/9 37/8 42/12 43/20 52/18 53/24 55/1 55/2 58/1 60/3 60/9 61/3 62/15 62/22 63/24 66/4 73/14 75/1 76/4 78/2 78/3 80/3 80/13 83/16

morning [12]  3/2 3/9 3/12 3/16 3/20 3/23 3/25 4/8 4/14 7/20 7/22 79/12

most [11]  19/22 31/16 40/20 43/11

# M

**most...** [7]  43/12
43/13 45/2 60/7
64/20 75/7 79/20
**mostly** [1]  31/16
**Motel** [1]  45/14
**motion** [45]  1/16
5/1 5/9 6/3 6/4 6/6
6/14 7/8 7/17 7/17
8/16 8/17 18/3
30/13 46/12 47/14
47/17 51/4 51/5
51/7 51/13 51/15
51/17 54/18 55/14
55/23 58/21 58/21
60/6 60/9 60/10
60/15 71/11 71/15
74/9 79/14 79/14
79/16 80/3 81/4
81/16 82/12 82/24
83/3 84/6
**motions** [8]  6/18
7/4 8/2 51/8 74/15
79/13 80/2 81/23
**motivates** [1]  82/3
**motive** [6]  13/24
14/2 14/12 41/19
55/5 55/13
**motives** [1]  55/5
**Motor** [2]  14/7
63/17
**mouth** [1]  44/11

**months** [1]  8/10
**Movant** [2]  7/16
8/1
**move** [4]  5/10 16/7
55/21 57/4
**moved** [1]  56/4
**moving** [4]  29/22
30/10 31/15 32/10
**mower** [1]  34/10
**mowing** [1]  31/12
**Mr** [11]  8/13 34/18
37/25 47/1 47/8
47/10 48/17 63/6
65/6 76/5 80/12
**Mr.** [6]  12/20 63/6
64/6 67/22 68/19
74/15
**Mr. Trump** [1]
12/20
**Mr. Zavareei** [5]
63/6 64/6 67/22
68/19 74/15
**Ms** [1]  64/24
**Ms.** [26]  5/13 5/22
8/12 8/16 9/15 9/18
11/4 11/9 11/10
11/15 13/12 21/14
29/18 37/6 43/15
45/15 47/8 50/19
60/5 64/5 64/20
66/1 66/1 67/21
72/8 82/16

**Ms. Brodderick** [1]
45/15
**Ms. Jaensch** [7]
8/12 8/16 9/15 9/18
21/14 64/5 67/21
**Ms. Johnson** [13]
11/4 11/9 11/15
13/12 29/18 37/6
43/15 50/19 60/5
64/20 66/1 66/1
72/8
**Ms. Johnson's** [2]
11/10 82/16
**Ms. Olden** [2]  5/13
5/22
**Ms. Smith** [1]  47/8
**much** [8]  4/11
37/12 38/16 38/16
62/8 74/14 79/17
84/23
**Muckala** [2]  14/14
63/20
**Mueller** [1]  77/18
**Mulhall** [1]  61/6
**Mulhall v.**
**Advanced** [1]  61/6
**multiplies** [1]  16/9
**multiply** [2]  12/4
12/12
**multiplying** [1]
21/6
**must** [7]  8/11 23/17

# M

**must...** [5]  23/18
46/9 60/25 66/9
84/16
**my** [43]  5/8 5/20
6/10 6/14 6/25 7/6
13/22 18/14 19/1
19/25 21/7 33/14
33/17 39/10 43/12
44/6 44/25 45/20
46/4 47/17 51/17
56/3 56/18 56/24
57/9 57/25 59/5
61/2 63/8 64/9
65/20 66/8 66/14
66/24 69/15 74/19
74/21 77/6 77/25
81/1 81/11 82/15
83/24

# N

**name** [2]  35/9
45/15
**named** [1]  10/20
**names** [1]  80/23
**narrow** [1]  51/12
**National** [4]  29/1
31/4 57/19 73/3
**nationwide** [1]
36/15
**nature** [4]  12/23
17/25 20/7 22/6

**necessarily** [2]
16/24 54/24
**necessary** [1]  58/18
**need** [11]  4/17 5/21
5/25 5/25 17/2
50/22 60/23 63/12
67/5 81/4 82/8
**needs** [6]  9/20
12/17 12/18 12/19
17/23 71/3
**negligently** [1]  67/8
**neutral** [1]  13/10
**never** [12]  6/12
11/5 15/15 16/6
20/23 49/9 49/9
49/11 50/25 59/11
65/24 65/25
**new** [2]  53/5 66/7
**news** [2]  20/21 40/6
**newspaper** [1]
26/20
**next** [6]  6/22 60/9
69/15 81/7 82/15
82/16
**nice** [4]  4/9 5/13
65/10 81/20
**night** [2]  37/19
62/12
**Nikki** [3]  2/16 85/9
85/9
**nine** [2]  54/25
56/12

**Nineteen** [1]  48/4
**Nixon** [2]  2/8 4/5
**no** [52]  1/3 5/19
6/17 6/17 6/24 6/24
6/24 7/25 8/10 10/2
14/5 18/14 19/1
24/13 24/18 25/16
25/17 25/23 27/5
29/7 31/21 31/22
32/7 33/21 35/1
37/9 39/17 41/4
41/6 41/15 43/21
44/24 50/7 55/6
55/14 55/20 59/18
65/1 69/19 71/19
74/1 74/14 76/10
76/24 78/13 79/25
80/1 80/20 82/1
82/6 82/6 82/6
**No.** [1]  3/6
**No. 8:19-cv-475** [1]
3/6
**nobody** [5]  41/7
47/1 58/20 65/7
65/10
**nominee** [1]  10/21
**none** [3]  14/23 21/2
28/20
**nonprofit** [2]  58/5
77/12
**Nonprofits** [1]  77/9
**normal** [1]  46/25

24/19 24/21 29/6

# N

**North [1]** 2/17
**Northern [1]** 57/1
**Northwest [2]** 1/24
2/4
**not [187]**
**notches [1]** 7/21
**note [2]** 56/2 60/7
**noted [1]** 59/5
**notes [1]** 8/2
**nothing [28]** 11/3
11/8 11/14 11/22
13/12 19/3 19/4
26/19 28/21 31/23
34/4 34/10 46/8
50/9 53/19 64/19
64/20 65/25 66/1
71/6 72/18 72/20
72/21 73/6 73/14
73/22 73/25 75/4
**notice [6]** 6/5 6/14
6/15 9/20 58/16
67/22
**noticed [3]** 6/3
54/18 66/11
**notion [2]** 71/7
75/20
**notwithstanding [1]**
66/18
**noun [1]** 39/6
**now [20]** 6/25 7/2
19/7 22/13 23/7

40/3 44/8 48/12
48/21 58/2 58/14
62/9 67/24 80/25
81/2 81/24 83/5
**number [6]** 25/18
48/18 52/19 69/7
69/8 83/24
**numbers [2]** 29/15
36/11
**numerous [1]** 10/16
**nursing [1]** 76/1
**nuzzled [2]** 38/5
38/13

# O

**objecting [1]** 80/16
**Obviously [1]** 5/10
**occur [1]** 14/17
**occurred [3]** 28/22
65/2 65/3
**occurrence [1]**
64/17
**off [4]** 45/8 67/9
81/1 82/3
**offer [2]** 13/24 79/9
**offered [1]** 76/14
**offering [1]** 69/16
**office [2]** 1/20
27/16
**officer's [1]** 15/1
**Official [2]** 2/16
85/10

**often [2]** 10/17 18/4
**oftentimes [1]**
10/19
**Oh [3]** 8/13 15/16
16/6
**oil [1]** 18/16
**okay [47]** 6/3 8/18
10/11 10/14 13/23
13/23 19/18 21/13
23/6 26/14 28/10
29/9 33/15 33/22
34/14 37/13 37/15
37/21 37/23 38/1
39/2 39/15 39/21
40/13 43/3 45/18
47/7 49/8 50/12
51/25 56/9 56/14
57/3 58/21 63/8
66/20 67/9 70/6
79/21 80/1 81/5
82/7 83/4 84/2
84/10 84/16 84/22
**Olden [3]** 4/21 5/13
5/22
**once [4]** 4/11 9/12
43/6 55/25
**one [41]** 5/20 6/1
6/6 8/5 8/10 9/13
9/22 9/25 15/13
15/23 16/10 17/12
17/22 21/11 23/10
23/11 23/21 25/18

one... [23]  31/11
32/12 34/3 35/15
35/24 36/14 39/19
48/4 49/24 52/4
54/16 58/9 59/16
63/24 67/1 68/14
71/25 72/17 75/7
80/1 80/3 80/12
83/24
One's [1]  42/10
ones [1]  15/13
only [16]  21/25
22/4 32/22 34/24
36/6 36/18 47/18
50/12 52/10 54/6
60/25 70/22 75/19
78/23 80/5 83/24
open [1]  73/2
operandi [5]  13/2
14/9 52/7 52/8
52/10
operated [1]  29/2
opinion [5]  5/20
27/20 40/18 83/25
84/15
opposed [1]  17/24
opposite [1]  74/10
opposition [2]
26/22 30/16
opt [2]  25/19 49/5
order [10]  5/25

53/21 80/11 81/4
81/22 82/12 84/11
orderly [4]  45/5
45/7 65/20 65/21
ordinary [2]  70/12
71/9
organization [3]
20/8 78/12 78/14
organizations [1]
69/20
organize [1]  31/18
original [1]  53/4
other [49]  8/5 9/24
11/17 14/21 15/25
15/25 17/13 19/16
20/24 25/23 26/24
28/17 28/19 31/12
32/1 32/12 39/19
40/23 42/16 43/16
44/20 45/3 45/17
46/4 46/7 46/10
46/16 46/23 47/19
48/1 48/2 51/14
51/22 55/13 55/22
61/18 62/15 63/2
65/23 69/21 70/20
71/8 71/10 75/8
75/9 76/17 76/19
76/23 84/23
others [3]  1/7 8/11
31/2

34/11 36/20 37/14
61/5 82/3
otters [3]  18/17
18/19 18/21
ought [1]  79/21
our [12]  6/20 8/25
12/13 52/6 52/24
55/5 55/7 58/17
59/22 59/22 60/1
81/15
ours [1]  18/23
out [29]  6/22 7/8
10/16 14/3 18/4
19/15 19/21 20/10
20/19 21/11 37/5
38/22 42/5 42/16
50/16 52/5 58/20
67/22 76/19 78/16
79/22 79/25 80/1
80/11 80/25 81/7
81/23 82/1 84/13
outlook.com [1]
2/18
outreach [6]  22/10
29/24 31/18 32/9
35/25 73/2
outside [1]  35/18
over [14]  7/18 19/9
20/6 20/6 30/17
30/17 30/17 31/25
31/25 57/4 65/22

O

over... [3]  65/23
 68/3 84/17
overall [1]  20/3
overcome [1]  11/15
overlap [1]  8/22
overtime [1]  23/2
owes [1]  80/7
own [4]  31/17
 42/17 49/25 50/22

P

P.A [1]  1/20
Pageant [1]  64/24
pages [5]  9/4 9/5
 9/9 53/8 82/22
paid [10]  31/3 32/3
 32/3 33/7 33/18
 33/18 33/19 34/20
 37/8 72/1
papers [9]  8/20
 12/13 20/3 22/18
 30/16 54/11 79/3
 81/11 81/12
paragraph [8]
 31/20 31/22 32/12
 32/20 37/19 37/20
 72/6 75/5
paragraphs [3]  9/5
 53/8 71/24
paralegals [1]  5/20
paralyze [3]  12/11

Pardon [1]  30/1
part [5]  24/8 40/16
 45/21 45/23 67/3
participate [1]  25/8
particular [5]
 11/11 14/16 41/14
 41/18 76/20
particularly [4]
 15/22 30/23 49/18
 56/6
parties [4]  6/17 7/7
 11/13 13/10
parts [1]  80/3
party [2]  57/18
 57/19
pass [2]  16/7 45/8
past [1]  52/10
pattern [1]  51/21
pay [9]  4/24 17/14
 23/2 32/5 33/8
 55/21 60/4 62/9
 73/25
paying [2]  7/1 73/6
payments [1]  27/21
PC [1]  2/4
peacefulness [1]
 42/8
peg [1]  78/11
pending [3]  5/1
 22/1 22/14
Pennsylvania [1]

people [55]  4/20
 10/16 10/19 11/4
 13/9 14/21 15/14
 15/16 16/5 16/6
 16/7 16/7 17/2
 20/14 20/24 20/24
 22/23 26/23 26/24
 26/25 27/15 27/16
 28/19 31/9 31/11
 32/2 32/25 33/17
 35/1 35/11 35/14
 35/22 36/8 36/11
 36/16 41/13 47/19
 48/2 49/5 49/18
 53/17 62/10 62/14
 62/15 66/3 69/9
 73/5 73/7 78/5
 78/14 80/16 80/21
 80/24 81/10 81/11
people's [1]  65/23
per [2]  12/3 17/15
performance [1]
 61/1
performed [3]  33/4
 33/24 72/12
performing [1]
 33/1
period [6]  36/8
 64/14 64/15 64/19
 64/22 65/3
person [26]  8/10

# P

person... [25]  14/2
19/13 21/11 23/8
23/14 24/10 24/15
24/19 24/20 28/3
28/11 31/12 31/21
32/7 32/9 32/13
34/3 36/21 44/21
46/23 48/5 48/8
61/16 73/3 76/15
personally [1]  5/18
personnel [2]  34/12
79/10
pertain [3]  11/18
11/19 11/20
Peters [3]  2/16 85/9
85/9
Philip [1]  39/4
philippic [3]  39/2
39/6 55/17
phone [5]  7/7 7/12
7/13 7/14 83/14
phones [3]  5/24
30/5 30/6
piece [5]  16/12
30/16 57/4 67/24
84/22
pins [2]  26/5 28/1
pitch [1]  63/2
place [2]  57/17 70/5
places [1]  14/22
plain [2]  8/24 9/1

plaintiff [30]  1/8
1/19 2/3 3/8 3/10
3/14 3/18 3/21 11/7
11/25 12/5 13/24
14/20 16/20 20/4
21/10 30/25 31/1
45/11 45/13 46/16
46/25 48/22 55/2
55/5 59/15 60/23
61/12 62/21 66/9
plaintiff's [6]  21/21
35/20 51/16 61/14
64/15 74/6
plaintiffs [3]  9/7
16/17 20/4
plan [4]  13/24 14/2
14/3 14/3
plane [1]  55/18
planning [2]  60/11
79/19
plate [1]  6/20
plausible [6]  22/22
31/11 32/24 34/24
34/25 74/5
plead [9]  23/13
25/11 25/19 31/1
32/17 32/18 36/19
66/10 71/15
pleading [4]  66/11
74/4 74/4 84/12
pleadings [9]  6/16
7/3 20/18 32/23

63/2 35/2 35/18
63/5 71/17
please [4]  3/3 3/7
6/1 21/17
pled [16]  26/19
26/21 32/14 32/16
37/1 46/16 49/9
49/12 53/21 59/11
59/12 68/15 68/16
70/15 70/18 71/3
plus [4]  20/14 48/4
48/22 48/22
podium [1]  8/6
Poggi [1]  72/14
Poggi v. Humana
[1]  72/14
point [14]  8/12
31/10 40/19 42/4
53/7 56/15 58/2
67/17 67/18 69/15
71/10 75/1 75/11
76/5
pointed [3]  67/22
76/19 84/13
pointing [1]  52/5
points [1]  74/18
polestar [1]  69/16
police [1]  15/1
policies [2]  72/3
72/9
policy [4]  34/12
73/5 73/23 80/8

Case 3:19-cv-00475-WFJ-SPF   Document 36   Filed 06/10/19   Page 125 of 144 PageID 637

policy/practice [1]
73/5
political [18]  10/18
10/25 20/9 20/9
20/10 20/10 21/23
22/6 22/8 26/17
28/4 28/15 30/3
30/11 66/3 68/3
68/9 70/21
politics [4]  37/23
46/15 47/6 66/4
poor [1]  9/7
pop [1]  59/19
portion [3]  21/7
28/4 29/17
portions [1]  24/4
position [5]  59/12
61/14 78/5 81/14
82/7
positions [4]  72/13
72/23 78/10 78/13
possibility [1]
70/17
possible [1]  82/11
possibly [1]  12/6
Post [1]  1/20
posts [1]  20/6
potentially [2]
12/10 54/22
practice [6]  56/7
63/7 66/7 66/21

practices [2]  72/3
72/9
practicing [1]  7/10
prance [1]  8/8
preceding [1]  64/14
precisely [1]  55/1
predatory [1]  55/10
prediction [1]
18/12
predominantly [2]
70/24 70/25
preface [1]  39/7
preference [2]  5/7
5/8
prejudice [2]  29/10
55/3
prejudiced [1]  55/4
prejudicial [1]  16/8
premature [1]
79/16
present [3]  75/12
77/23 83/25
presentation [1]
37/12
presented [2]  53/12
76/11
preside [1]  84/17
presidency [1]
12/11
president [22]  1/11
3/6 4/1 4/2 4/7 9/15

12/10 15/22 17/10
20/11 20/15 39/13
40/6 44/21 46/9
55/6 55/8 80/15
81/2
presidential [3]
10/15 68/9 68/13
pretend [1]  37/23
pretty [4]  4/11 44/6
66/21 72/16
prima [2]  33/23
34/5
primary [8]  31/19
53/10 57/14 65/3
65/4 70/10 70/24
71/1
principle [1]  69/16
print [1]  63/9
prior [17]  14/14
14/16 15/2 15/7
15/8 18/11 18/13
18/24 19/3 41/22
52/20 52/22 52/25
54/1 56/12 75/20
76/19
private [2]  83/13
83/14
probably [9]  8/9
23/21 24/16 54/11
58/14 68/1 68/2
78/13 81/6

# P

probative [1] 43/23
problem [2] 9/11
10/4
procedures [2]
30/20 72/10
proceed [1] 39/10
proceedings [3]
2/19 84/24 85/4
proceeds [1] 16/23
produce [3] 22/10
82/18 82/20
produced [2] 2/20
58/9
production [2]
82/19 83/10
proffer [2] 66/9
75/23
proffers [1] 66/17
profit [2] 68/21
77/8
profits [1] 77/21
proof [1] 76/14
propensity [3] 15/5
15/6 15/10
proper [2] 38/17
51/14
properly [3] 45/4
53/6 54/18
proposition [1]
57/14
prosecution [1]

protected [1] 27/2
protective [3] 51/13
81/4 82/12
prove [14] 19/7
19/10 20/23 23/13
40/15 42/13 46/5
52/7 52/8 52/11
52/13 60/23 76/15
76/25
proven [7] 11/5
14/23 19/3 19/4
21/3 52/22 65/24
provided [1] 56/25
proximity [1] 50/9
psychological [1]
48/6
public [6] 2/4 3/21
22/10 27/11 27/15
35/21
punie [1] 66/16
punies [4] 18/21
19/20 19/23 19/25
punitive [9] 18/11
18/13 18/25 52/23
66/5 66/10 75/23
75/25 76/2
purely [1] 28/13
purported [1]
71/20
purpose [9] 22/9
27/1 28/5 30/10

77/16 77/19
purposes [6] 26/10
61/22 68/21 68/21
71/7 75/21
pursuant [1] 82/18
put [6] 39/20 47/6
50/5 56/1 58/20
80/22
putative [4] 3/14
3/19 3/22 71/23
puts [1] 5/5
putting [3] 40/9
46/14 80/14

# Q

qualifications [1]
32/7
qualified [2] 24/23
32/2
qualify [2] 44/3
44/7
quality [2] 4/10
84/17
question [18] 18/10
19/13 28/12 29/18
37/15 39/9 39/22
40/8 43/22 53/10
57/8 57/21 58/12
58/14 62/16 66/6
77/11 82/15
questionable [1]
43/7

# Q

questions [6]  21/8
37/10 55/22 59/1
62/25 74/13
quick [2]  37/15
83/22
quickly [2]  5/2 83/4
quite [3]  5/1 44/10
49/10
quote [3]  42/10
61/13 73/15
quoted [2]  44/25
65/20
quoting [1]  18/1

# R

race [4]  33/17
33/19 33/20 34/4
radio [1]  68/2
raise [4]  28/2 36/18
68/24 77/21
rallies [1]  24/20
rather [1]  5/14
read [20]  4/11 6/6
6/19 8/20 12/14
16/14 20/2 22/3
24/2 37/24 40/6
42/4 55/25 56/12
63/9 63/10 72/16
76/8 81/3 81/8
reading [1]  37/19
reads [1]  17/15

ready [3]  19/6
60/13 84/13
real [3]  38/1 46/17
56/12
realities [2]  58/4
68/20
realized [1]  50/19
realizes [1]  11/15
really [23]  4/10
30/13 36/10 39/6
41/13 42/4 43/22
47/12 49/23 52/15
52/17 54/7 54/20
54/21 55/4 57/23
59/13 62/3 62/16
76/5 76/18 79/14
84/18
reason [7]  22/5
39/24 41/15 49/16
51/10 70/22 82/15
reasonable [1]
80/22
reasoning [1]  76/13
reasons [2]  12/13
15/12
recall [1]  31/18
received [1]  35/22
receiving [1]  28/16
recent [8]  35/9
43/11 43/13 43/13
43/20 53/24 64/20
75/7

reconsider [2]
81/25 82/6
record [2]  35/21
85/4
recorded [1]  2/19
recording [1]  50/15
records [1]  48/7
recovering [1]
27/11
recovery [1]  74/5
red [1]  25/25
reelection [2]  20/11
55/6
referral [1]  5/15
referred [1]  10/24
referring [1]  53/16
refers [1]  35/20
refuting [1]  52/6
regard [5]  32/6
42/1 66/5 73/24
78/25
regarding [5]  12/7
15/4 31/17 75/6
77/4
regular [1]  42/10
reject [1]  76/13
rejected [1]  31/25
relate [7]  22/21
54/25 69/20 69/22
70/9 70/20 71/23
related [1]  27/23
relates [1]  75/25

# R

relating [1]  74/21
relationship [1]  25/23
relevance [1]  67/16
relevant [10]  12/22 13/2 13/3 14/1 18/11 18/13 18/21 18/25 54/3 75/21
religious [3]  27/4 27/8 69/22
rely [2]  69/13 76/1
remedial [2]  61/20 61/21
reminded [1]  66/8
remote [4]  47/15 54/7 74/23 75/14
remotely [1]  35/2
remoteness [4]  53/23 54/3 54/16 54/16
renting [1]  26/15
repeat [2]  8/19 8/22
repeated [2]  42/10 64/17
repeating [1]  20/6
reply [6]  53/5 59/3 60/11 67/23 75/24 81/19
report [1]  77/18
Reporter [3]  2/16 2/16 85/10

representative [1]  25/13 25/14 27/7 73/1
representatives [1]  73/23
represented [1]  74/25
represents [1]  8/12
Republican [2]  38/6 38/22
reputation [1]  18/6
request [1]  82/19
requesting [1]  18/11
require [1]  10/9
required [3]  10/3 61/1 77/23
requirement [2]  76/3 84/9
requires [3]  16/1 30/24 30/25
researched [2]  19/2 21/22
researching [1]  21/25
respect [33]  40/19 41/19 41/21 46/6 50/14 51/18 52/4 52/6 52/16 52/19 52/20 52/21 53/2 53/10 53/22 53/23 54/23 54/24 55/3

55/22 57/7 58/10 59/1 60/4 60/17 62/19 66/23 74/20 75/3 75/23 77/4 78/7 78/10
respectfully [2]  58/25 60/2
respond [2]  7/19 55/24
responded [1]  52/17
respondent [2]  7/19 45/5
response [9]  5/9 5/11 5/13 6/7 7/25 26/22 42/10 60/1 83/22
responsibilities [6]  61/3 62/2 62/14 62/15 62/17 62/21
responsibility [3]  61/1 61/12 61/16
responsible [1]  55/10
responsive [2]  82/17 82/25
rest [4]  6/16 7/3 7/3 72/24
restate [1]  58/22
restrict [1]  54/18
right [53]  3/2 6/25 10/11 13/15 13/20

# R

**right... [48]** 16/14
16/23 17/2 17/11
19/7 19/12 19/13
19/14 19/15 19/16
19/19 23/6 29/9
29/9 33/5 33/13
36/5 37/24 39/25
40/2 42/20 44/15
45/5 45/7 48/5
48/12 48/21 48/23
48/25 55/19 57/3
58/2 59/25 61/10
63/23 64/4 67/21
74/15 74/25 75/15
79/6 79/17 80/25
81/17 83/2 83/20
84/3 84/18
**riled [1]** 47/7
**ripe [1]** 82/5
**road [1]** 10/13
**rock [1]** 56/11
**Rodeo [1]** 2/13
**room [1]** 30/10
**round [1]** 78/11
**routine [1]** 76/16
**royalties [1]** 27/21
**RPR [2]** 2/16 85/9
**rub [1]** 9/18
**rubbed [1]** 45/15
**rule [13]** 5/19 6/11
7/19 8/10 17/15

54/2 57/11 82/6
83/20 83/20
**ruled [4]** 22/14 35/8
81/6 84/13
**rules [2]** 17/5 79/15
**ruling [5]** 58/1
79/22 79/25 81/15
81/24
**run [1]** 79/15
**running [2]** 27/9
27/10
**RV [7]** 11/12 11/20
14/20 15/19 20/24
47/19 66/2
**RVs [7]** 25/5 29/22
30/10 31/15 31/19
32/11 73/1

# S

**said [38]** 9/3 9/9
13/21 14/15 14/16
25/4 27/18 27/24
31/11 32/17 38/4
39/13 40/12 41/14
44/4 45/13 45/19
45/22 46/22 47/15
47/19 47/19 48/17
50/2 54/6 57/19
57/25 59/7 59/17
59/22 68/19 72/18
73/11 74/22 76/5
76/8 77/25 82/20

26/10 27/19 29/16
29/17
**sales [4]** 28/22 59/6
69/6 69/6
**Sally [2]** 46/20
46/24
**Salvation [1]** 77/11
**same [22]** 8/12
14/17 32/3 32/3
32/9 41/13 54/21
62/2 62/3 62/5
62/10 64/15 64/16
64/16 64/19 72/2
72/4 73/12 73/15
76/18 78/14 78/14
**Sanders [2]** 15/7
64/2
**saw [3]** 48/8 59/13
79/19
**say [77]** 4/15 6/17
8/13 9/9 10/6 10/7
11/14 12/16 12/17
12/25 13/11 13/12
14/5 14/10 15/12
15/16 16/5 16/15
19/6 20/18 21/20
23/25 25/14 30/6
30/16 31/6 33/17
34/23 35/11 35/18
36/18 36/21 37/22
38/11 38/15 38/18

# S

say... [41] 38/18
38/24 39/18 46/3
46/7 46/25 47/10
47/18 47/21 47/22
47/24 48/5 48/22
50/12 50/14 50/15
52/6 52/11 54/4
55/5 62/1 64/5 65/9
67/14 70/2 70/22
71/25 72/25 73/22
78/2 78/3 79/7 80/6
81/8 81/24 82/5
83/7 84/5 84/13
84/14 84/16
saying [25] 13/18
19/10 19/21 20/24
22/20 22/23 30/2
30/4 33/7 34/15
39/16 39/17 41/3
47/9 49/19 54/19
56/5 59/19 59/21
67/25 68/4 68/5
68/10 69/16 80/13
says [21] 6/11 10/1
12/9 15/8 23/16
26/22 31/7 31/8
31/15 31/20 31/23
33/3 42/18 46/8
58/6 59/11 72/20
72/21 72/21 73/13
73/25

scandalous [13]
17/25 18/3 18/5
18/8 20/7 20/18
50/1 50/3 53/12
53/14 53/15
scenario [1] 68/6
scheduling [1] 7/23
scope [6] 10/4 10/5
12/17 15/23 51/12
51/14
search [2] 35/11
83/8
seasonably [1] 82/4
second [2] 2/17
80/4
Secretary [1] 23/25
section [1] 76/9
Securities [1] 61/6
see [15] 5/17 19/19
21/22 29/11 35/21
37/13 49/11 50/24
64/23 65/10 67/15
80/7 80/19 80/21
81/19
seek [2] 48/6 55/8
seen [8] 16/20
21/25 36/5 49/7
49/9 49/9 70/19
71/6
sees [1] 46/5
sell [3] 27/17 28/17
28/19

selling [5] 26/15
26/25 29/1 68/16
68/17
sells [1] 27/25
semi [1] 42/12
semi-automatic [1]
42/12
Senator [4] 25/8
38/9 38/11 38/13
Senator Biden [1]
38/13
send [2] 4/22 6/1
sending [1] 4/19
sense [5] 6/13 23/19
68/24 71/14 79/11
sent [1] 19/21
separate [1] 21/10
series [1] 69/19
Sessions [1] 25/8
set [5] 6/20 30/10
60/20 62/19 78/12
sets [1] 24/20
setting [1] 82/2
settings [1] 64/19
seven [6] 11/12
11/13 13/9 15/13
17/2 17/3
sex [2] 72/10 78/8
sexual [3] 14/15
44/4 44/13
sexually [1] 55/9
shake [1] 65/9

# S

**Shameeka** [1]  4/21
**share** [1]  62/14
**sharp** [2]  38/1
 38/23
**sharpy** [1]  38/22
**she** [67]  8/12 8/13
 10/22 10/23 10/23
 10/24 11/16 24/22
 24/23 25/3 25/4
 25/5 25/8 25/10
 25/11 25/14 25/15
 29/19 29/22 30/5
 30/5 31/6 31/7 31/7
 31/7 31/9 31/11
 31/13 31/14 31/15
 31/15 31/17 31/19
 31/19 33/3 35/1
 39/15 39/15 39/16
 39/17 39/18 40/14
 40/15 40/17 43/14
 44/11 44/23 45/16
 45/19 45/22 46/5
 46/15 46/16 46/18
 46/20 46/22 47/19
 49/20 50/19 50/23
 50/24 59/7 59/11
 59/21 60/25 66/9
 73/15
**She'd** [1]  25/18
**she'll** [1]  37/1
**she's** [5]  33/7 59/19

**shift** [2]  62/12
 62/12
**shipped** [1]  58/10
**shocked** [1]  47/15
**shooting** [1]  36/21
**short** [8]  5/10 8/24
 8/25 9/10 12/19
 22/20 22/23 36/8
**should** [21]  5/3
 8/24 9/25 21/5 32/3
 32/3 34/20 46/23
 47/20 47/21 50/25
 58/6 60/12 60/14
 61/21 71/6 79/13
 80/24 81/10 81/10
 81/25
**shouldn't** [2]  21/5
 83/16
**show** [21]  14/1 15/7
 15/10 15/10 24/4
 33/20 36/20 41/8
 41/17 41/22 49/20
 49/22 49/22 52/19
 52/23 53/1 53/13
 54/20 63/11 76/6
 76/22
**showing** [3]  52/22
 75/11 75/22
**shown** [3]  35/22
 57/20 74/7
**shows** [3]  27/8

**shut** [1]  8/11
**shy** [2]  4/18 5/3
**sic** [1]  54/13
**side** [7]  12/3 16/13
 17/15 21/14 43/4
 44/11 63/2
**sides** [2]  4/10 81/21
**Siler** [2]  2/8 4/5
**Siler-Nixon** [2]  2/8
 4/5
**similar** [13]  22/16
 33/24 35/3 37/1
 43/22 54/24 55/2
 62/21 65/2 65/17
 72/2 72/5 75/21
**similarity** [1]  54/17
**similarly** [4]  1/7
 31/2 35/12 72/6
**Simmons** [1]  18/7
**simple** [2]  12/19
 25/21
**simply** [3]  26/7
 45/19 56/6
**since** [1]  75/9
**single** [3]  71/25
 73/3 83/13
**sit** [7]  4/13 8/7 8/7
 10/7 10/9 56/10
 63/8
**sitting** [5]  10/2
 12/10 15/22 17/10

Case 8:19-cv-00475-WFJ-SPF Document 117 Filed 11/13/19 Page 132 of 144 PageID 1279

sitting... [1]  38/8
situated [4]  1/7
31/2 35/12 72/6
situation [15]  8/25
10/12 10/20 11/1
14/11 15/25 18/23
19/3 20/9 23/9
42/11 64/11 65/13
65/25 67/3
situations [3]  14/23
28/8 65/16
six [12]  7/9 17/1
17/2 17/3 33/17
45/14 47/2 47/8
64/21 65/12 67/13
75/4
skill [1]  60/25
smashing [1]  25/9
Smith [4]  46/20
46/24 47/8 47/8
snuggling [1]  40/10
so [132]
so-and-so [1]  38/12
sold [3]  25/25 26/23
58/10
sole [2]  22/9 27/15
solid [1]  56/11
soliloquy [1]  7/6
some [36]  4/18 5/8
5/21 7/6 18/17
24/24 26/3 28/1

28/9 28/17 32/25
33/3 38/20 38/22
38/23 39/20 47/1
47/11 51/14 52/9
52/24 55/13 55/17
57/11 62/14 66/17
66/17 70/17 70/25
71/19 74/7 75/11
79/11 80/3 80/14
80/15
somebody [6]  5/21
12/11 39/12 40/10
40/10 53/18
somehow [2]  50/3
50/25
someone [6]  7/8
27/15 34/2 35/12
41/22 46/14
something [29]
10/17 10/18 11/21
13/12 13/18 14/19
15/16 20/23 28/12
28/16 28/16 36/23
38/20 50/3 50/10
53/11 55/18 64/24
66/25 68/11 71/3
71/25 76/6 78/2
78/15 78/17 78/18
81/14 84/1
Sometimes [2]  4/24
5/23
somewhat [1]  53/13

soon [2]  60/11 70/2
sorry [2]  55/19
61/20
sort [22]  4/25 6/4
6/17 7/15 12/23
12/24 13/1 13/4
24/3 28/9 35/20
36/20 40/5 49/12
49/13 49/13 53/10
54/21 57/11 58/3
72/25 74/7
sorts [3]  10/17 11/7
54/20
sought [1]  61/23
sound [1]  65/17
sounds [3]  48/4
52/9 80/25
South [1]  2/13
Southern [2]  51/20
56/17
speak [1]  30/12
speaks [2]  8/11
73/9
specific [2]  42/10
79/1
specifically [2]
73/24 76/7
speech [4]  22/8
27/2 30/11 68/22
speeches [1]  39/3
spend [1]  69/9
spent [2]  26/22 28/5

S

**SPF** [1]  1/3
**sphere** [1]  71/8
**spot** [1]  56/1
**square** [1]  78/11
**squared** [1]  79/20
**St** [1]  2/4
**stack** [1]  63/10
**staff** [4]  32/13 72/2
 79/23 80/15
**stage** [2]  47/14
 71/17
**stake** [1]  29/14
**stand** [2]  8/6 8/13
**standard** [12]
 30/11 30/24 36/25
 51/3 60/20 62/4
 62/17 74/8 77/6
 77/9 77/22 77/24
**Standards** [2]  57/8
 57/13
**standpoint** [2]
 35/17 37/3
**start** [2]  7/1 42/18
**started** [1]  51/4
**starting** [1]  3/7
**starts** [1]  43/7
**state** [11]  3/7 22/22
 31/10 32/24 35/24
 36/1 58/9 58/10
 66/8 66/17 66/20
**stated** [2]  61/2

**statement** [4]  8/24
 9/1 23/19 73/14
**states** [10]  1/1 1/17
 8/23 44/22 45/3
 46/9 53/25 54/13
 60/20 85/10
**stating** [2]  73/14
 73/17
**statute** [9]  61/21
 69/18 75/24 75/25
 76/1 76/2 77/7 78/6
 78/7
**stenography** [1]
 2/19
**step** [1]  7/1
**stick** [1]  42/17
**stickers** [1]  69/11
**still** [3]  36/25 37/1
 43/25
**stipulated** [1]  82/21
**stipulation** [1]
 82/22
**stop** [1]  80/22
**store** [1]  27/9
**strategy** [1]  83/6
**Street** [1]  1/24
**stress** [1]  7/21
**stricken** [2]  18/9
 51/1
**strictly** [1]  26/10
**strike** [16]  6/3 7/17

 32/8 46/13 49/25
 50/22 51/5 51/15
 55/14 55/23 73/3
 79/14
**string** [1]  81/7
**strip** [1]  42/16
**strong** [1]  54/22
**strongest** [1]  49/20
**struggled** [1]  28/9
**stuff** [8]  5/21 7/24
 24/22 29/15 59/25
 67/25 73/3 83/8
**subject** [2]  72/9
 73/5
**subjected** [1]  73/24
**submit** [10]  21/24
 25/20 41/20 45/2
 53/24 71/5 73/10
 74/3 74/9 77/17
**substance** [1]  60/4
**substantial** [4]
 23/22 24/8 68/8
 74/7
**substantially** [9]
 31/3 33/1 35/3 37/6
 37/8 60/18 61/2
 62/18 72/12
**substantive** [1]
 76/4
**success** [2]  25/9
 74/8

S

successful [1]  66/17
such [3]  4/9 76/2
 84/16
sued [5]  18/16
 21/23 39/17 39/18
 41/3
sues [1]  46/9
suffered [1]  78/24
suffers [1]  9/22
sufficient [9]  29/20
 32/20 32/22 44/17
 60/3 60/5 62/22
 68/18 74/1
sufficiently [3]
 58/15 59/12 60/17
suggest [2]  43/20
 80/10
suggesting [4]
 22/19 23/7 28/23
 72/19
suggestion [1]
 80/14
suggests [1]  37/9
suit [2]  10/2 38/7
Suite [3]  1/24 2/5
 2/10
sum [1]  71/22
summary [5]  32/15
 44/3 51/6 59/7 59/9
superiors [1]  41/10
supervisor [1]

support [3]  28/2
 53/21 75/20
supporting [1]
 49/20
suppose [2]  13/21
 46/20
supposed [1]  36/23
supposedly [1]  15/5
Supreme [10]
 10/21 12/15 24/1
 45/22 46/6 60/21
 61/20 68/6 69/21
 70/8
sure [10]  4/17
 16/23 44/6 54/12
 59/13 64/1 66/12
 66/21 82/13 84/14
surprised [2]  47/15
 50/11
Susan [1]  23/25
suspect [1]  22/5
swallows [1]  49/13
sweeping [1]  24/19
sweeps [3]  23/1
 24/10 24/15
Swetnick [1]  10/21
s\ [1]  85/9

T

table [1]  43/4
take [13]  7/1 11/7
 20/3 27/10 35/4

58/16 83/1 83/16
 83/22 84/10
taken [1]  60/14
takes [1]  73/13
taking [2]  7/7 8/2
talk [12]  6/5 7/23
 17/13 17/25 37/21
 38/21 45/9 50/18
 64/9 75/18 79/11
 79/18
talked [2]  51/18
 65/19
talking [14]  18/24
 29/23 36/11 40/4
 42/9 42/9 43/17
 48/15 51/4 52/14
 53/11 53/14 62/6
 68/7
talks [3]  18/8 29/21
 42/24
TAMPA [6]  1/2 1/8
 2/10 2/17 18/17
 70/5
tax [2]  28/14 28/14
team [4]  31/4 32/8
 38/6 73/4
technically [1]  6/9
teed [1]  81/20
teenager [4]  31/23
 32/7 33/18 36/22
telephone [1]  30/9

**telephones [1]  5/22**
**telephonic [2]  6/21 82/1**
**tell [8]  4/20 8/1 9/18 33/14 48/1 49/10 56/3 81/9**
**telling [1]  42/24**
**temperance [1] 42/8**
**temporal [3]  43/6 43/21 50/9**
**ten [1]  38/13**
**Tennessee [1] 46/21**
**Tenth [3]  14/13 15/11 63/21**
**Tenth Circuit [1] 14/13**
**term [3]  6/15 7/18 13/1**
**terms [2]  29/14 83/8**
**testified [1]  41/7**
**testify [1]  15/14**
**text [2]  19/21 83/1**
**than [34]  4/18 5/14 16/22 17/6 18/23 25/7 30/24 31/3 33/6 34/18 41/19 56/9 60/3 61/3 61/12 61/15 62/8**

**62/15 62/21 62/22 70/20 71/7 72/1 73/6 73/14 75/1 76/19 76/20 78/2 78/3 80/1 80/13 82/1 83/16**
**thank [21]  4/9 8/3 8/15 21/9 21/15 21/16 39/8 57/6 58/24 61/10 63/1 63/4 64/7 67/18 67/19 74/17 79/17 82/14 84/17 84/19 84/23**
**that [583]**
**that's [111]**
**their [24]  4/15 5/24 8/11 9/9 17/13 17/14 17/24 19/15 20/4 22/6 22/9 30/4 31/24 35/4 53/4 55/14 64/20 64/21 73/8 77/10 78/25 80/16 81/11 84/12**
**them [18]  5/1 5/24 8/20 16/20 18/1 26/3 33/3 40/10 41/3 42/18 56/12 63/13 65/17 71/25 72/4 73/25 74/19 82/18**
**themselves [1]**

**then [33]  5/13 5/15 6/4 7/5 7/17 7/21 9/9 14/20 15/4 15/15 21/13 21/14 26/23 36/9 38/7 39/9 45/15 48/5 60/21 63/3 63/9 64/5 65/4 71/15 71/16 81/7 81/18 81/22 81/23 82/2 83/21 84/12 84/20**
**therapist [1]  50/25**
**there [88]**
**there's [54]  4/20 4/25 5/1 5/10 6/11 7/9 8/10 9/17 9/19 13/8 14/8 14/25 17/2 18/2 18/2 24/13 24/18 25/17 28/12 29/13 30/6 31/21 31/22 37/9 39/23 43/21 44/10 46/7 48/24 50/3 50/7 51/10 51/20 55/6 55/14 57/9 57/11 58/12 59/1 59/3 59/18 65/1 67/10 76/17 77/6 77/17 78/13 80/12 80/13 80/14 81/21 82/22 83/5 84/12**

**1**

these [38]  4/24 7/9
14/10 15/12 16/2
19/4 20/20 26/20
26/23 30/12 30/23
32/15 32/25 34/23
36/6 36/7 36/14
36/17 43/22 50/4
51/8 53/13 53/20
54/19 57/20 58/6
59/24 66/3 69/6
72/22 73/7 73/11
74/15 76/19 80/15
80/23 82/2 83/10
they [121]
they'd [1]  12/7
they'll [1]  83/22
they're [37]  9/12
9/24 10/19 11/13
17/20 18/11 19/10
20/21 20/22 22/7
22/10 22/16 22/17
24/8 24/17 26/7
31/5 36/1 36/2 36/3
38/7 38/9 38/11
43/23 45/8 51/10
55/4 57/22 65/15
65/16 65/17 68/11
68/24 69/6 69/12
70/7 79/23
they've [6]  11/5
12/1 22/14 51/11

thing [16]  8/5 10/24
15/23 31/17 32/14
35/15 37/6 37/8
52/4 54/16 54/22
61/18 67/1 80/6
80/12 81/7
things [36]  5/10 6/5
8/21 14/21 15/6
20/20 26/5 26/15
26/15 26/16 26/21
27/17 29/19 29/23
29/23 30/7 30/12
30/16 31/4 32/2
32/8 35/18 36/13
40/7 42/5 49/24
50/2 50/4 57/20
59/20 65/9 65/10
68/23 68/24 70/6
78/4
think [54]  5/12
6/11 9/21 12/3 13/8
16/24 21/4 28/1
34/16 34/17 36/11
37/20 38/4 40/19
44/9 44/15 45/11
45/13 45/16 45/18
45/19 45/24 46/2
48/10 48/15 48/19
49/16 49/17 51/1
54/2 54/15 54/22
55/21 58/11 58/25

59/19 60/2 60/6
62/13 64/20 65/14
66/18 66/19 76/4
77/21 77/22 79/21
80/24 81/18 81/24
82/4
third [5]  14/10
14/15 22/13 29/7
63/19
Third Circuit [1]
14/10
Thirty [2]  47/2 47/8
Thirty-six [2]  47/2
47/8
this [122]
those [31]  6/5 7/5
9/7 16/16 17/9 24/7
25/2 26/25 30/7
30/7 30/21 32/23
35/13 36/13 40/1
41/13 48/7 50/1
50/1 50/1 53/6
56/18 59/3 59/20
63/8 63/9 63/10
65/15 70/8 70/13
78/4
though [4]  8/21 9/8
19/9 41/13
thought [5]  6/5
6/10 6/14 6/25
37/18

thoughts [1]  4/12
thousands [2] 36/16 65/6
threadbare [1] 72/17
three [10]  5/4 5/6 6/5 16/10 17/5 18/18 40/1 43/18 56/3 56/11
threw [1]  45/16
through [9]  5/16 23/10 23/11 26/21 29/2 30/19 30/21 76/14 80/5
throughout [1] 32/11
throwing [1]  34/2
thrown [1]  80/1
thrust [1]  20/12
tied [1]  52/11
time [33]  4/12 5/4 5/11 5/22 6/2 6/6 7/1 7/14 10/14 11/11 11/19 12/11 19/22 22/1 36/8 51/9 53/23 54/3 54/16 56/5 64/14 64/15 64/19 64/22 65/3 65/7 65/24 74/23 76/11 76/25 79/12 80/4 80/5

time-wasters [1] 51/9
times [1]  72/21
tires [4]  41/2 41/3 64/12 64/15
title [6]  30/18 30/24 43/25 62/10 78/14 79/1
Title VII [3]  30/18 30/24 43/25
titles [3]  62/3 62/5 78/13
today [4]  6/19 60/12 62/8 84/11
today's [1]  81/23
told [4]  17/1 50/21 50/21 84/5
tomorrow [1]  60/12
Tony [1]  23/25
too [15]  6/19 9/8 9/8 9/10 14/18 22/20 22/23 24/2 39/20 47/15 54/7 54/21 75/14 75/14 81/8
took [1]  61/15
top [1]  17/22
tort [12]  42/25 46/18 46/23 47/22 47/25 49/13 50/6 57/4 66/13 66/19 66/19 67/7

tortured [1]  53/4
total [2]  5/12 71/22
totally [1]  54/4
touch [1]  67/23
touched [2]  12/20 44/5
touches [1]  39/13
touching [1]  67/4
town [2]  6/22 7/8
Tracey [2]  2/8 4/3
track [2]  5/4 5/6
traditional [1]  5/9
trait [1]  42/7
transactions [2] 58/6 77/14
transcript [3]  1/16 2/20 85/4
Transcription [1] 2/20
transmits [1]  28/3
transmitted [1] 28/7
transpired [1] 11/23
travel [2]  23/17 28/11
traveled [1]  25/5
treat [1]  7/12
treated [7]  33/24 46/10 46/16 46/23 53/17 58/6 71/6
tremendously [1]

tremendously... [1] 16/8
trial [6] 13/7 13/8 21/6 43/4 49/11 78/18
tribunal [1] 11/6
tried [5] 26/24 26/25 38/20 43/3 59/16
tries [1] 10/5
trip [2] 28/10 28/10
true [13] 10/20 25/2 29/4 29/24 33/25 46/18 46/19 49/21 62/5 66/12 69/8 69/9 71/14
TRUMP [12] 1/10 1/11 3/5 3/6 4/1 4/2 4/6 4/7 12/20 38/16 65/6 75/7
truth [1] 49/11
try [7] 4/24 5/14 38/23 39/9 47/22 47/24 74/18
trying [19] 8/23 9/12 9/24 11/7 11/17 20/23 28/17 45/8 47/17 51/10 51/17 52/8 57/18 61/25 62/1 65/17 78/11 79/14 79/15

turn [3] 11/17 20/13 63/9
turns [1] 16/10
TV [1] 68/2
tweets [1] 20/5
two [19] 5/16 7/20 8/1 13/21 13/23 14/7 16/10 20/24 23/10 35/7 49/2 49/4 53/6 56/18 57/20 74/15 78/4 78/13 79/13
Tycko [3] 1/23 3/13 3/17
type [7] 7/23 13/7 29/15 35/10 73/12 76/21 78/6
types [1] 53/13
typical [1] 9/4
typo [1] 37/20

## U

U.S [7] 9/3 10/21 12/15 12/16 18/7 61/20 73/19
U.S. [5] 14/6 15/7 15/11 63/14 64/2
U.S. v. Commanche [1] 15/11
U.S. v. Horner [2] 14/6 63/14
U.S. v. Sanders [2]

umbrage [1] 38/15
uncomfortable [1] 38/5
unconsented [1] 44/12
under [18] 14/22 17/5 28/14 28/14 29/17 30/22 32/17 32/24 33/23 39/24 44/7 56/6 56/6 57/12 66/12 74/6 74/12 77/5
underlying [3] 61/22 66/19 73/17
understand [25] 6/10 8/20 9/17 9/21 17/8 17/17 25/3 34/22 35/6 35/17 38/14 38/24 43/9 44/2 49/12 49/15 54/3 57/3 67/17 67/17 81/16 81/20 83/5 83/11 83/12
understanding [1] 19/1
unfair [1] 16/8
unfortunate [1] 13/21
unidentified [1] 37/7
unique [4] 21/20

# U

unique... [3]  30/18 30/23 35/16
UNITED [8]  1/1 1/17 44/22 46/9 53/25 54/13 60/20 85/10
United States v. LeCroy [2]  53/25 54/13
universe [1]  68/13
unless [2]  36/16 82/21
unlike [2]  28/8 36/5
unnamed [3]  72/3 73/5 73/5
unnecessary [1] 53/9
unrebutted [1] 52/16
unreliable [1] 20/22
until [2]  81/7 82/12
untrue [1]  38/15
unwanted [2]  40/12 40/16
up [30]  4/13 8/13 10/24 12/6 16/3 23/1 24/20 24/22 30/10 37/13 38/5 38/13 45/16 47/7 49/10 49/13 50/1

52/12 55/6 72/60/11 64/6 73/2 74/16 75/19 78/12 79/19 80/22 81/20 82/24 84/10
upon [3]  81/6 81/15 84/14
urge [1]  42/4
us [10]  6/1 16/1 21/3 39/11 50/21 55/13 74/16 78/16 79/10 84/20
usage [1]  39/5
use [10]  6/15 7/18 13/1 20/16 25/21 40/17 52/13 55/13 67/1 79/22
used [7]  30/5 30/5 52/12 53/1 76/6 76/23 77/6
uses [1]  15/2
using [5]  20/10 30/6 30/7 30/9 66/24
usually [4]  49/9 49/11 58/21 66/7

# V

v. [33]  3/5 10/1 10/6 14/6 14/9 14/14 14/25 15/7 15/11 23/25 41/1 45/1 45/1 45/10 52/2 53/25 54/13

56/16 56/25 60/22 61/6 63/14 63/17 63/19 63/20 63/21 64/2 64/10 72/14 78/21 79/3 81/3 81/9
v. Firestone [1] 64/10
v. Ford [1]  63/17
value [2]  28/12 28/16
variety [1]  15/12
Varnell [3]  1/19 1/20 3/10
vehemently [1] 71/11
vehicle [2]  51/16 71/12
Verfuerth [1]  9/2
versa [1]  38/8
version [1]  49/19
versus [2]  62/12 67/24
very [29]  13/21 15/17 15/23 16/4 18/4 22/6 22/15 35/9 36/4 36/8 37/12 37/25 38/5 41/18 42/2 42/23 46/18 53/21 54/22 56/21 62/9 64/7 65/18 65/18 74/14

very... [4]  76/20
79/17 83/4 84/23
vice [3]  38/8 39/13
40/6
victim [2]  46/19
52/12
victims [1]  48/2
view [3]  24/13
27/24 32/21
VII [3]  30/18 30/24
43/25
Villages [1]  3/10
violations [1]  21/24
virtually [1]  24/10
voice [2]  7/11 7/13
volunteers [1]
27/14
vote [1]  27/17

# W

wage [2]  30/25
78/25
wages [2]  31/23
32/18
wait [3]  5/11 6/25
42/19
want [56]  4/14 5/10
5/19 5/23 6/8 6/15
6/17 6/19 6/25 6/25
7/10 7/22 8/10 8/19
8/21 11/21 15/6

16/16 16/20 20/25
21/20 22/24 35/4
35/12 38/12 45/20
47/22 47/24 48/2
48/9 49/8 49/24
50/18 51/11 51/13
56/10 56/11 57/4
63/7 63/11 63/23
64/4 65/21 65/21
74/16 75/17 77/22
81/6 81/19 81/24
82/6 83/3 83/21
84/4 84/14 84/21
wanted [3]  8/9
40/15 50/11
wants [1]  6/24
war [1]  4/25
Warwick [1]  1/20
was [114]
Washington [5]
1/25 2/5 3/13 3/18
81/11
wasn't [2]  72/17
74/24
wasters [1]  51/9
watch [1]  5/23
way [10]  5/9 8/9
11/4 12/22 32/13
38/10 52/12 65/11
70/25 78/12
ways [2]  23/10
45/10

we'd [5]  5/24 6/5
19/8 58/17 82/25
we'll [20]  4/24 6/1
7/18 7/18 7/22
10/13 17/16 21/13
21/14 29/11 36/13
37/13 37/14 58/1
64/5 64/5 70/18
81/19 81/22 83/20
we're [38]  5/7
15/13 16/22 17/6
19/10 22/19 22/20
22/23 29/13 29/15
34/3 36/10 36/15
36/20 36/23 40/4
46/21 47/15 49/5
50/12 51/4 51/5
51/5 52/7 52/14
53/11 53/14 58/19
59/6 61/25 62/6
65/16 75/15 77/16
79/25 81/8 81/12
84/13
we've [17]  6/20
12/14 12/15 14/5
14/5 14/7 40/6
42/15 52/19 52/21
58/15 65/19 72/15
75/8 78/8 78/8
82/18
website [2]  35/19

Case 6:19-cv-00475-WFJ-SPF   Document 53   Filed 06/10/19   Page 141 of 144 PageID 653

# W

website... [1]  35/21
week [7]  6/22 6/23 43/5 80/1 82/2 82/5 84/21
weirdest [1]  69/23
welcome [1]  7/14
well [66]  4/8 11/1 13/1 13/15 13/18 14/4 16/19 17/1 17/4 17/11 19/5 19/6 19/8 21/13 22/16 23/18 23/20 24/15 25/1 25/7 26/1 26/22 27/6 28/10 29/12 31/6 31/9 32/9 32/12 35/6 35/11 36/2 39/15 45/9 45/13 45/21 45/25 47/13 47/24 48/6 48/6 48/7 48/8 48/13 48/17 48/21 49/3 50/8 51/12 52/7 52/7 52/11 54/6 54/19 57/19 59/11 59/21 62/1 63/1 65/21 68/12 72/19 77/8 78/7 83/2 84/10
went [3]  20/5 50/24 74/24

were [53]  6/16 10/16 11/12 11/18 12/4 13/21 13/23 14/14 14/17 15/9 16/5 17/1 22/18 24/6 24/6 25/24 26/24 27/9 27/10 31/3 32/19 32/23 33/18 35/19 36/12 37/8 39/13 40/14 41/4 48/1 53/4 53/6 53/8 53/17 53/20 54/17 54/19 58/7 58/9 60/18 61/3 68/7 70/15 72/1 72/2 72/8 73/16 74/22 75/10 78/13 78/23 80/16 80/23
weren't [2]  66/2 66/2
West [2]  78/21 79/3
WFJ [1]  1/3
what [113]
what's [8]  5/6 8/19 20/16 33/14 38/18 39/1 58/4 68/15
whatever [15]  5/18 5/18 5/23 5/25 6/8 6/15 24/4 39/20 45/15 45/20 63/7 69/11 81/5 81/6 81/19

when [24]  7/10 9/12 9/25 10/18 12/2 12/4 15/25 18/2 20/2 25/8 27/8 27/25 28/18 42/5 42/8 50/16 50/19 50/23 50/24 53/14 53/19 57/24 62/8 64/14 65/14 69/1 84/10
where [37]  7/10 8/10 10/19 10/20 11/12 11/18 14/14 15/1 20/4 20/19 21/23 22/14 25/22 26/14 28/8 28/9 28/25 29/5 34/16 36/14 38/19 39/19 39/24 42/18 43/14 47/17 48/18 51/3 51/20 60/14 62/11 64/11 65/9 68/23 76/24 78/23 80/6
wherein [1]  78/22
whether [23]  28/13 29/12 39/22 39/23 40/7 43/23 45/22 50/18 51/6 51/7 53/11 57/8 57/21 58/12 58/14 59/1 60/5 60/17 62/17 67/25 77/5 77/8

# W

whether... [1]  83/25
which [53]  9/3 12/5
12/13 12/14 13/2
14/6 14/23 14/23
15/8 18/8 20/11
20/21 20/22 21/2
21/2 22/14 24/1
27/21 28/5 30/20
30/22 31/20 31/25
35/15 35/19 39/2
41/20 51/16 56/25
57/1 60/10 61/22
64/10 64/24 65/4
67/15 68/7 69/16
72/14 73/11 73/18
73/19 74/8 75/5
75/11 76/18 77/7
77/17 78/21 82/15
82/22 83/6 83/6
while [3]  29/24
41/2 71/18
white [4]  26/3 33/6
34/9 73/15
who [49]  10/16
13/9 13/10 13/10
13/11 15/14 15/16
16/5 16/5 17/12
24/15 25/19 26/24
28/3 28/11 28/19
31/2 32/2 35/13
35/22 37/5 37/5

44/21 45/4 46/9
48/7 49/5 52/11
60/18 61/16 62/14
62/20 64/11 67/14
70/5 72/12 72/22
72/23 73/7 73/7
73/16 73/23 74/11
75/6 75/9 78/24
who's [4]  31/22
35/12 38/10 44/19
whole [7]  6/12
10/24 18/2 19/8
47/7 77/19 80/21
whose [1]  27/15
why [7]  7/16 33/10
34/23 35/4 43/12
70/22 81/9
wiki [2]  83/7 83/7
will [19]  7/20 7/24
8/15 8/16 9/14 9/15
21/24 25/10 44/6
57/24 73/10 75/12
81/15 81/18 81/23
82/1 83/4 83/20
84/11
Willey [1]  45/16
WILLIAM [1]  1/16
Wilson [2]  14/14
63/20
Wilson v. Muckala
[2]  14/14 63/20

Winnebagos [1]
24/21
Wisconsin [1]  9/3
wish [2]  17/24 84/5
within [7]  20/3
29/22 54/5 55/11
57/1 64/19 84/21
without [8]  12/20
29/10 30/21 44/6
51/1 55/12 73/17
78/25
witness [1]  17/12
witnesses [3]  16/5
48/19 48/22
WL [1]  57/2
woman [1]  10/20
women [5]  36/12
37/5 65/7 73/6 75/9
won't [1]  81/6
wonderful [1]
19/22
word [3]  10/25 39/2
63/3
words [3]  25/23
42/17 50/23
work [25]  7/24 31/3
33/1 35/24 35/24
36/6 36/9 41/9
41/10 41/11 41/12
44/1 44/4 44/5
44/14 44/18 52/10
60/19 64/12 64/13

## W

work... [5]  72/2
72/5 72/13 73/15
81/6
worked [2]  32/8
37/5
working [3]  27/12
58/1 75/10
workplace [3]
14/17 53/16 64/16
Works [1]  60/21
world's [1]  38/10
worse [1]  38/16
worth [10]  25/25
31/24 32/3 32/4
33/11 33/12 34/16
34/17 52/5 74/4
would [70]  5/8 5/13
8/9 11/25 12/5
12/10 16/20 21/21
23/12 23/13 24/5
25/11 25/12 25/20
28/15 28/15 28/23
29/18 30/2 32/24
34/12 35/21 36/18
38/14 38/17 38/18
38/23 38/24 39/3
39/22 39/24 40/7
40/8 42/3 44/2 44/3
44/12 44/17 45/2
46/3 47/6 48/5
50/11 50/14 53/24

56/14 64/12 64/13
65/2 65/8 65/9 65/9
65/22 68/17 69/5
70/15 71/6 71/16
74/3 74/9 75/12
77/23 78/20 79/7
80/10 82/17 84/5
wouldn't [9]  14/1
38/18 44/7 47/5
47/6 47/14 54/5
60/1 74/8
writing [1]  29/22
wrong [7]  44/9
45/11 45/18 63/11
69/17 76/7 76/8

## Y

yeah [4]  13/17
29/11 63/13 79/18
year [4]  10/20
11/19 14/10 81/7
years [40]  11/4 11/5
11/8 11/8 11/23
11/23 13/14 13/16
14/7 15/16 15/16
15/19 15/20 16/5
16/6 18/18 18/20
21/1 21/1 38/13
39/21 42/25 43/7
43/13 43/21 45/14
46/25 47/2 47/8
47/10 50/6 50/13

64/21 64/22 65/12
67/13 75/4
yes [21]  3/4 9/11
10/14 23/3 23/20
26/12 37/17 42/23
43/19 44/16 48/3
52/25 56/8 56/20
56/24 67/25 68/5
69/14 70/6 74/17
82/10
yesterday [1]  19/22
yet [4]  16/21 22/14
32/8 48/25
York [1]  66/7
you [211]
you'd [1]  19/7
you'll [4]  83/15
83/17 83/19 84/20
you're [24]  5/25
12/6 13/9 16/16
26/14 26/15 26/15
26/15 30/2 38/19
42/8 42/9 47/18
48/15 53/14 56/5
67/24 68/4 68/10
69/16 72/25 78/7
83/2 84/1
you've [10]  12/13
14/20 35/13 52/9
62/11 62/11 62/12
70/2 83/6 84/12

# Y

**you-all [4]  8/10
21/10 81/23 82/4
your [187]
Your Honor [120]
yours [1]  38/19
yourself [1]  70/3**

# Z

**Zavareei [10]  1/22
1/23 3/13 3/13 3/17
63/6 64/6 67/22
68/19 74/15**