## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALVA JOHNSON, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.                                     Case No. 8:19-cv-00475-T-02SPF

DONALD J. TRUMP FOR PRESIDENT, INC.,
DONALD J. TRUMP, in his individual capacity,

     Defendants.

_____/

## **ORDER**

This matter comes to the Court on a Motion to Strike Portions of Plaintiff's Complaint from Defendant Donald J. Trump ("Trump") and Donald J. Trump for President, Inc. ("DJTPI"), Dkt. 30, and a Motion to Dismiss Plaintiff's Complaint from DJTPI, Dkt. 32. Plaintiff has filed oppositions in response to both motions, Dkt. 38-39, to which Defendants have replied, Dkt. 43-44. The Court heard argument from all counsel on June 5, 2019.

Plaintiff's three-count Complaint alleges battery by Defendant Trump in Count I. Dkt. 1 at 33. Plaintiff also seeks recovery against DJTPI for wage-based gender discrimination in violation of the Equal Pay Act (Count II) and race discrimination under 42 U.S.C. § 1981 (Count III). *Id.* at 34-36.

As currently stated, the Complaint presents a political lawsuit, not a tort and wages lawsuit. Plaintiff will receive a fair day in court, but the Court will try a tort and wages dispute—not a political one. If Plaintiff wishes to make a political statement or bring a claim for political purposes, this is not the forum.

The Court dismisses the Complaint without prejudice. Plaintiff may file an amended complaint within thirty days consistent with this order. In reciting the facts as alleged, the Court considers well-pled facts as true for both a motion to dismiss, *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted), and a motion to strike, *DeJesus v. Cigna Corp.*, No. 6:17-cv-1208-ORL-41TBS, 2018 WL 375579, at *2 (M.D. Fla. Jan. 11, 2018) (citation omitted).

<u>AS TO COUNT ONE</u>

Plaintiff was a campaign worker for DJTPI during Defendant Trump's presidential election. Count I alleges that at an August 24, 2016 election rally for Defendant Trump in Tampa, Defendant Trump grabbed Plaintiff by the hand, held her hand, and then kissed her without her consent. Plaintiff further alleges that she turned her head to avoid the kiss, and Defendant kissed her on the side of her mouth. She felt humiliated by this contact and, shortly thereafter, she was disappointed because her coworkers were aware of the incident and were joking about it.

On October 7, 2016, a recording became public in which Defendant Trump stated in part, "You know I'm automatically attracted to beautiful – I just start kissing them. It's like a magnet. Just kiss. I don't even wait." Dkt. 1 at 15-16. Plaintiff heard the statement, which contained highly lascivious portions. On October 14, 2016, Plaintiff moved out of her housing with the campaign and, two days later, emailed the head of human resources for the campaign to let her know that Plaintiff was leaving the campaign. Plaintiff alleges she has suffered damages by the battery, and she seeks money damages for her injury.

Though this simple battery appears to have lasted perhaps 10-15 seconds, Plaintiff has spent 29 pages and 115 paragraphs in the Complaint setting it forth. Many of these allegations describe 19 unrelated incidents involving women upon whom Defendant Trump allegedly committed nonconsensual acts, over the past four decades with differing circumstances.

These 19 separate incidents, all of which Plaintiff seeks to prove through discovery and use at trial, vary in terms of age and circumstance. Most of the incidents do not resemble the present allegation; some do. For example, Plaintiff hopes to prove and introduce at trial evidence that Defendant Trump "was like an octopus" when groping one woman on a commercial flight in the early 1980s, Dkt. 1 at 23, or that 15 years before the instant claim he entered a dressing room where beauty contestants were unclothed, *id.* at 25-26. These allegations, salacious and in

floral language, appear to come from media reports. Indeed, in attempting to set forth a cause of action for simple battery, the Complaint cites approximately 40 different media reports or newspaper articles.

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have "broad discretion" in this determination. *DeJesus*, 2018 WL 375579, at *2 (citations omitted). The motion's purpose is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Slone v. Judd*, No. 809-CV-1175-T-27TGW, 2009 WL 5214984, at *1 (M.D. Fla. Dec. 29, 2009) (citation omitted).

Even if the above allegations do not constitute a "scandalous matter," they are nonetheless immaterial and impertinent to Plaintiff's simple battery claim. Plaintiff argues that evidence of such prior incidents will be admissible under Rule 404(b) of the Federal Rules of Evidence to prove Defendant Trump's motive, intent, knowledge, and absence of mistake for the battery. Dkt. 38 at 3-4, 16. In other words, these prior incidents would establish Defendant's actionable state of mind because he committed such acts in the past.

To find as Plaintiff urges would ignore the first line of that rule, which states: "**Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)

4

(emphasis in original). Defendants rightly suggest that this claim of 404(b)

admissibility runs afoul of the basic admonition:

> In order . . . to admit evidence under Rule 404(b),
> a court must be able to articulate a way in which the
> tendered evidence logically tends to establish or refute
> a material fact in issue, and that chain of logic must
> include no link involving an inference that a bad person
> is disposed to do bad acts.

*Becker v. ARCO Chemical Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (citation

omitted); *see also Wilson v. Muckala*, 303 F.3d 1207, 1217 (10th Cir. 2002)

(citation omitted) (finding that "alleged previous harassment cannot be used to

show that a defendant harassed a plaintiff on a specific subsequent occasion");

*Hudson v. District of Columbia*, 558 F.3d 526, 532 (D.C. Cir. 2009) (same: police

battery, misconduct). Plaintiff counters that whether this evidence is admissible at

trial is a matter for a motion in limine or for summary judgment. But Plaintiff does

not cite to any persuasive authority that has allowed potential Rule 404(b) material

to be pled in the Complaint, and the cases that Plaintiff does rely on for 404(b)

admissibility are distinguishable.

Plaintiff next argues that the prior incidents are offered to establish habit and

would therefore be admissible under Rule 406 of the Federal Rules of Evidence.

Dkt. 38 at 11. Although the Eleventh Circuit has noted "[t]he difficulty in

distinguishing inadmissible character evidence from admissible habit evidence,"

*Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985),

5

Plaintiff's allegations plainly do not constitute proper proof of habit; they are, again, proof of character or propensity. In essence, Plaintiff seeks to prove that Defendant acted in conformity with an alleged character and propensity to commit nonconsensual acts on August 24, 2016 at the Tampa rally. Rule 404(a) of the Federal Rules of Evidence bars such evidence.

To paraphrase Dean McCormick, character and habit are "close akin." *Loughan*, 749 F.2d at 1524 (citing McCormick on Evidence, § 195 at 462-63). Character is a generalized description of one's disposition with respect to a general trait; habit, on the other hand, is more specific and describes one's regular and repeated response to a recurring event. *Id.* This might include descending a particular stairway two stairs at a time, giving the hand signal for a left turn, alighting from railway cars while they are moving, or, as in *Loughan*, a regular practice of drinking at work. *Id.* This habitual action might become semi-autonomous. *Id.* In *Loughan*, for example, the court found habit through a "regular practice" that evinced a "uniform pattern of behavior" spanning "an extended period of time." *Id.* at 1523-24. In other words, a habit is a behavior repeated so often as to become a reflex.

Judge Weinstein characterizes habit as more than a tendency to act in a given manner; it is a degree of uniform response that requires semi-automatic conduct. 2 Weinstein's Federal Evidence at 406-3 and n.5 (2d ed. 2019). Weinstein

further observes that "prior criminal acts do not constitute admissible evidence of a 'habit' to commit those acts." *Id.* at 406-5. Indeed, the acts alleged here (including some from the early 1980s and 1990s and dissimilar to the alleged kiss) no more establish habit than did the four prior convictions for public intoxication spanning a 3.5-year period in *Reyes v. Missouri Pac. R.R. Co.*, 589 F.2d 791 (5th Cir. 1979).[4]

Plaintiff wishes to prove that over the past 35-plus years Defendant acted inappropriately with other women in a wide variety of circumstances. In fact, Plaintiff alleges that only one of the 19 prior incidents happened during the presidential campaign. At least as alleged here, an individual's decision to make a romantic advance when that individual determines an opportunity has presented itself is not such a regular, unthinking response. And even if such an action is in line with the individual's character, evidence of that character is inadmissible.

Plaintiff's allegations, accepted as true at this stage in litigation, do not establish admissible evidence of Defendant Trump's habit to commit battery against women. It is instead character evidence unsaved by Rule 406 of the Federal Rules of Evidence. As that rule's advisory committee notes state: "Much evidence is excluded simply because of failure to achieve the status of habit. . . . [E]vidence

---

[4] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

of other assaults is inadmissible to prove the instant one in a civil assault action."
(citing Annot., 66 A.L.R. 2d 806). This is unchanged by Plaintiff's argument that
such evidence is necessary because Defendants have proffered that the witnesses
will favor Defendant Trump. The Federal Rules of Evidence must still apply.

Plaintiff also argues that the 19 other incidents, or at least a portion of them,
are relevant to Plaintiff's punitive damages claim. Although Plaintiff has stated a
claim for unconsented contact, this simple battery does not, as alleged, equate to
the malicious conduct sufficient to support punitive damages. For example, the
conduct alleged would be insufficient to support a sexual harassment or hostile
work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000. *See, e.g.*, *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246-47 (11th Cir.
1999) (collecting cases). Plaintiff's lawyer acknowledged this at the hearing. It
would be incongruous to find that, at least as alleged here, conduct which fails to
state a claim for sexual harassment would be so outrageous and oppressive to
entitle the victim to punitive damages in tort. Perhaps some behavior of Defendant
Trump vis-à-vis Plaintiff will be established during discovery that would support
punitive damages for this battery, but none is currently pled.

Furthermore, apart from the evidence's questionable admissibility and
obfuscation of the instant cause of action (or, put differently, its immateriality
under Rule 12(f)), setting the many allegations forth in this manner is contrary to

Rule 8(a) of the Federal Rules of Civil Procedure and, at best, constitutes surplusage. Indeed, Plaintiff has brought a lengthy philippic, not a "short and plain statement of the grounds . . . [and] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). All of the 19 prior instances against individuals other than Plaintiff are stricken from the Complaint, and Plaintiff may not reallege them in an amended complaint.

<u>AS TO COUNTS TWO AND THREE</u>

Plaintiff brings Count II against DJTPI under the Fair Labor Standards Act, 29 U.S.C. § 206, *et. seq.* ("FLSA"), as amended by the Equal Pay Act of 1963. Plaintiff alleges that she was paid less than similarly situated male colleagues because of her gender. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (citation omitted) ("An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'"). Plaintiff also seeks a court-produced notice to potential co-plaintiffs, to solicit joinder and a collective action as contemplated by 29 U.S.C. § 216(b). Plaintiff requests declaratory and injunctive relief in addition to money damages. Count III is against DJTPI for wage-based race discrimination under 42 U.S.C. § 1981.

DJTPI moves to dismiss Counts II and III. To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

For Count II, DJTPI correctly argues that Plaintiff's allegations fail to establish FLSA coverage under either an "enterprise" or "individual" coverage theory. *See, e.g.*, *Gonzalez v. Unidad of Miami Beach, Inc.*, No. 11-20649-CIV, 2011 WL 2983671, at *1 (S.D. Fla. July 22, 2011) (finding complaint in FLSA case must contain factual allegations establishing coverage). It is, first of all, unclear whether enterprise coverage can apply to a political campaign. 29 U.S.C. § 203(r)(1) (defining "enterprise" as "the related activities performed . . . by any person or persons for a common *business* purpose") (emphasis added); *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296-98 (1985) (finding nonprofit's commercial activities constitute "enterprise" under the FLSA); *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1293-94 (M.D. Fla. 2005) (citation omitted) ("The test is an 'economic reality

test,' where the focus is on whether 'the enterprise is primarily engaged in competition in the public with ordinary commercial enterprises.'").

The district court in an ongoing Pennsylvania case found no such coverage where the complaint lacked allegations that "would suggest that commercial competition was a primary, secondary, or even tertiary endeavor" for a defendant. *Katz v. DNC Servs. Corp.*, No. 16-5800, 2018 WL 692164, at *6 (E.D. Pa. Feb. 2, 2018). Plaintiff's Complaint is similarly devoid of allegations to establish enterprise coverage; such allegations must be pled in the complaint, not stated in a response to a motion to dismiss.

Secondly, while Plaintiff does plead some facts that are relevant to the question of individual coverage, she does not plead with sufficient specificity to establish such coverage. It is not enough for Plaintiff as an employee to use the instrumentalities of interstate commerce; she must *regularly* use them. *See Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citations omitted). For example, while organizing the travel of recreational vehicles and purchasing out-of-state supplies for the campaign may be relevant, so too is the frequency and scope of this work. *See, e.g.*, Dkt. 1 ¶¶ 43, 51-55; *see also Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (allegation that job duties included contacting out-of-state companies by phone and fax insufficient in the absence of allegations concerning how much of plaintiff's time was spent

conducting those activities). Moreover, any interstate nexus as it relates to conducting outreach, opening volunteer offices, and organizing rallies is not clear from the face of the Complaint. Dkt. 1 ¶¶ 30, 35, 41, 45.

Ultimately, how and why the FLSA applies to DJTPI is a predicate for an Equal Pay Act claim and should be clearly stated. Plaintiff must set this forth in factual detail in an amended complaint, whether she seeks coverage through an enterprise or individual theory, or both.

With respect to the § 1981 claim, Plaintiff must prove that DJTPI engaged in "purposeful discrimination." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (citations omitted). As such, a showing of disparate impact through a neutral practice alone is insufficient. *Id.* At this stage, Plaintiff's allegations must "support a reasonable expectation that discovery would reveal evidence that [DJTPI] acted with racially-discriminatory animus." *Ford v. Strange*, 580 F. App'x 701, 713 (11th Cir. 2014) (citations, quotation marks, and internal brackets omitted). While disparity in wages can serve as evidence of purposeful discrimination, *e.g.*, *Hill v. Emory Univ.*, 346 F. App'x 390, 395 (11th Cir. 2009), Plaintiff must nonetheless allege that Defendant DJTPI acted with such intent.

Although the Court need not presently resolve the issue, DJTPI also argues that Plaintiff's "comparators" for Counts II and III are insufficient both in detail and in job duty comparison. Dkt. 32 at 7. The comparators must hold positions that

are "substantially equal" to Plaintiff's, *Brock v. Georgia Sw. Coll.*, 765 F.2d 1026, 1032 (11th Cir. 1985), or be "similarly situated to the plaintiff in all relevant respects," *Lee v. Mid-State Land & Timber Co.*, 285 F. App'x 601, 605-06 (11th Cir. 2008). While this seems like a question for summary judgment, the Court does note the issue.

The Complaint does not mention job duties for two of the proposed comparators, Matt Ciepielowski and Austin Browning. Dkt. 1 ¶ 112. David Chiokadze assisted the Communications Director in preparing talking points and written statements, and it is unclear in what ways or to what extent Plaintiff "helped [him] with his work." *Id*. Tony Ledbetter "was responsible for representing the Campaign in the northern part of Florida during the general election, just as [Plaintiff] had been responsible for representing the campaign in the northern part of Alabama during the primaries." *Id*. Yet because Plaintiff does not specify what it means to "represent the Campaign" (and Plaintiff's only listed duty in specifically northern Alabama was "building volunteer capacity"), the Court cannot determine whether the two shared the same job responsibilities. *Id*. And though Sidney Bowdidge "was responsible for volunteer recruitment and management, just like [Plaintiff]," it is unclear whether Bowdidge's duties with respect to volunteers were substantially similar to Plaintiff's. *Id*. ¶¶ 40-44.

13

Lastly, DJTPI argues that the Complaint does not identify or sufficiently describe the purported collective members for Count II, and that no collective action may proceed without greater specificity. The Court prefers that the parties litigate the bona fides of the asserted collective action at the certification stage. *E.g.*, *Puleo v. SMG Prop. Mgmt., Inc.*, No. 6:08-cv-86-Orl-22DAB, 2008 WL 3889727, at *3 (M.D. Fla. Aug. 20, 2008). However, should Plaintiff amend Count II of her Complaint, she would be well-advised to provide more detail concerning potential collective joiners in addition to the wage comparators.

Accordingly, it is **ORDERED**:

The Court grants Defendants' motions. Dkts. 30, 32. The Complaint is dismissed without prejudice. Dkt. 1. Plaintiff may file an amended complaint within thirty days. Plaintiff should allege a simple battery in ten or fewer pages, including relevant factual allegations. Plaintiff should omit all reference to other incidents beyond her own alleged battery and omit any quotes from the press or media reports in her complaint.

The employment discrimination claims in Counts II and III, including relevant factual allegations, may not exceed fifteen pages in total.

The Court previously asked the parties to advise it on how they wished to proceed with the motion to certify a collective action for the opt-in EPA procedure on Count II. The Court will consider that issue (with a noticed telephonic hearing

with counsel) once Count II is refiled and resolved. The Court has not examined

the motion to certify a collective action, Dkt. 34, but if Plaintiff has developed new

information concerning the motion and wishes to amend the motion, Plaintiff may

do so. This should be done well before any such telephonic hearing.

      **DONE AND ORDERED** at Tampa, Florida, on June 14, 2019.


*/s/ William F. Jung*           
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record