**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

      **Plaintiff,**                                    **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

      **Defendants.**
_____/


**DECLARATION OF CHARLES J. HARDER IN SUPPORT OF**
**MOTION TO COMPEL FURTHER RESPONSES TO**
**REQUESTS FOR ADMISSION AND INTERROGATORIES**

      1.     I am an attorney at law duly admitted *pro hac vice* to practice before this court

and am a partner with the law firm of Harder LLP, attorneys for defendants Donald J. Trump

("Mr. Trump") and Donald J. Trump for President, Inc. (the "Campaign") (collectively,

"Defendants") herein.  I have personal and firsthand knowledge of the matters set forth in this

declaration and, if called and sworn as a witness, I could and would testify competently thereto

under oath.

      2.     On May 2, 2019, my firm caused counsel for plaintiff Alva Johnson ("Plaintiff")

to be personally served with the Campaign's first sets of requests for admission and

interrogatories together with its first set of requests for production of documents.

3.      Following a meet and confer discussion, the Campaign re-served the same discovery requests on May 7, 2019.  Attached hereto as **Exhibit A** is a true and correct copy of Defendant Donald J. Trump for President, Inc.'s First Requests for Admission to Plaintiff dated May 7, 2019.  Attached hereto as **Exhibit B** is a true and correct copy of Defendant Donald J. Trump for President, Inc.'s First Set of Interrogatories to Plaintiff dated May 7, 2019.

4.      Attached hereto as **Exhibits C and D**, respectively, are true and correct copies of Plaintiff's Responses and Objections to Defendant Donald J. Trump for President, Inc.'s First Set of Requests for Admission and First Set of Interrogatories to Plaintiff, which we received by email on June 6, 2019.

5.      Defendants have in good faith conferred or attempted to confer with Plaintiff in an effort to obtain the discovery sought without court action.  My office transmitted to Plaintiff's counsel a meet and confer letter regarding her inadequate written discovery responses on June 7, 2019.  A true and correct copy of that letter dated is attached hereto as **Exhibit E**.  Plaintiff's counsel responded on June 12, 2019 with a meet and confer letter, a true and correct copy of which is attached hereto as **Exhibit F**.

6.      Counsel for Plaintiff and Defendants participated in a discovery meet and confer call on June 13, 2019.  We were unable to reach a sufficient agreement on the matters contained in the accompanying motion.  Attached hereto as **Exhibit G** is a true and correct copy of a letter that we received from Plaintiff's counsel later the same day.

7.      Counsel for the parties are currently negotiating a confidentiality stipulation governing the treatment of confidential information produced in discovery.  Until a formal confidentiality stipulated has been finalized and signed, Defendants and their counsel agree to carefully treat any information designated "Confidential" by Plaintiff as such, and will not

2

disclose or disseminate it to third parties or file it in the public record.  I communicated this fact

to Plaintiff's counsel during our call on June 13, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of June, 2019, at Los Angeles, California.


*/s/ Charles J. Harder*
CHARLES J. HARDER

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

        **Plaintiff,**                         **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

        **Defendants.**

_____/

**DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S**
**FIRST REQUESTS FOR ADMISSION TO PLAINTIFF**

       Defendant Donald J. Trump for President, Inc., a Virginia corporation, by and through its

undersigned counsel, and pursuant to Federal Rule of Civil Procedure 36, hereby serves its First

Requests for Admission to Plaintiff. Pursuant to Rule 36, Plaintiff is required to answer the

following requests for admission, in writing and under oath, within 30 days from the date of

service hereof.

**DEFINITIONS AND INSTRUCTIONS**

       (a)     "You," "Your," "Yourself," and "Plaintiff" shall mean Alva Johnson and anyone

acting on her behalf.

       (b)     "Trump" shall mean defendant Donald J. Trump.

       (c)     The "Campaign" shall mean defendant Donald J. Trump for President, Inc., a

Virginia corporation.

1

(d)      "Defendants" shall collectively refer to defendants Trump and the Campaign.

(e)      The term "person" or "persons" shall include, but not be limited to, natural persons, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, organizations, business entities, or any other form of business, governmental, public, or charitable entity.

(f)      "All" includes the word "any" and "any" includes the word "all."

(g)      "Each" includes the word "every" and "every" includes the word "each."

(h)      The term "individual" shall mean any natural person.

(i)      A masculine, feminine, or gender-free pronoun shall not exclude the other, or both, genders.

(j)      "Lawsuit" refers to the case of Johnson v. Trump *et al.*, Case No. 8:19-cv-00475-WFJ-SPF, pending in the United States district Court for the Middle District of Florida, Tampa Division.

(k)      "Complaint" refers to Plaintiff's complaint filed in the Lawsuit.

(l)      Unless otherwise indicated, all words and terms used in this request shall have the same meaning as in Plaintiff's Complaint.

(m)      "Allegation(s)" as used herein refers to the factual and legal allegations and claims asserted in Plaintiff's Complaint.

## REQUESTS FOR ADMISSION

1.      Admit that You met Trump in person only twice.

2.      Admit that, the first time You met Trump, he did not touch You.

3.      Admit that Count I alleged in Your Complaint for battery is not based on anything that Trump did the first time You met him.

4.      Admit that the second time You met Trump was on August 24, 2016 at a Campaign event in Tampa, Florida as alleged in Paragraphs 56 through 70 of Your Complaint.

5.      Admit that Count I alleged in Your Complaint for battery is based entirely on Trump's alleged actions on August 24, 2016 at a Campaign event in Tampa, Florida.

6.      Admit that Trump only ever touched You once, *i.e.*, on August 24, 2016 at a Campaign event in Tampa, Florida.

7.      Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump grasped [Your] hand and did not let go," as alleged in Paragraph 63 of Your Complaint.

8.      Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump said "he knew [You] had been on the road for a long time and that [You] had been doing a great job," as alleged in Paragraph 63 of Your Complaint.

9.      Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump said "that he would not forget about [You], and that he was going to take care of [You]," as alleged in Paragraph 63 of Your Complaint.

10.      Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "[a]s Defendant Trump spoke, he tightened his grip on [Your] hand and leaned toward [You]," as alleged in Paragraph 64 of Your Complaint.

11.      Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump "moved close enough that [You] could feel his breath on [Your] skin," as alleged in Paragraph 64 of Your Complaint.

12.    Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, You "suddenly realized that Defendant Trump was trying to kiss [You] on the mouth," as alleged in Paragraph 65 of Your Complaint.

13.    Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, You "attempted to avoid [Trump kissing You on the mouth] by turning [Your] head to the right," as alleged in Paragraph 65 of Your Complaint.

14.    Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump kissed [You] anyway, and the kiss landed on the corner of [Your] mouth," as alleged in Paragraph 65 of Your Complaint.

15.    Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump's kiss on [Your] mouth was intentional . . . deliberate and required intention," as alleged in Paragraph 66 of Your Complaint.

16.    Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump engaged in "predatory" behavior and "sexually predatory conduct" towards You, as alleged repeatedly in Your Complaint.

17.    Admit that the attorney discussed in Paragraphs 83–87 and 90–94 of Your Complaint is Adam Horowitz.

18.    Admit that, while employed by the Campaign, you were "forcibly kissed by the President himself during a campaign rally in Florida in front of several other people," as alleged in a Public Justice press release.

19.    Admit that, "[a]fter the kiss in October 2016, which was around the same time as the release of the recording of Trump discussing inappropriate and predatory treatment towards

women with Billy Bush in 2005, [You] left the campaign, traumatized," as alleged in a Public Justice press release.

20.     Admit that You were subjected to "touching and kissing at the hands of President Trump," as alleged in a Public Justice press release.

21.     Admit that You stated, "this predatory behavior should not be minimized, especially when committed by the most powerful man in the world," referring to Trump, as reported in a Public Justice press release.

22.     Admit that You sought a position with the White House after Trump won the general presidential election.

23.     Admit that You sought a position with the United States Embassy in Portugal.

24.     Admit that, during Your tenure as Director of Outreach and Coalitions for the Campaign, You were "in charge of building volunteer capacity in North Alabama," as alleged in Paragraph 32 of Your Complaint.

25.     Admit that Your "skills shined most brightly" when You helped organize Campaign rallies, as alleged in Paragraph 33 of Your Complaint.

26.     Admit that You worked as Director of Outreach and Coalitions for the Campaign only from January 2016 until the Alabama primary, on March 1, 2016.

27.     Admit that, during Your role as part of the National Strike Team, You were the primary point of contact for campaign accessories that came in from out of state, as alleged in Paragraph 43 of Your Complaint.

28.     Admit that, during Your role as part of the National Strike Team, You set yourself apart from other Campaign employees by seeking out communities of color wherever You traveled, as alleged in Paragraph 45 of Your Complaint.

29.     Admit that Your most important responsibility as a member of the Campaign's Florida operations was managing the Trump RVs, as alleged in Paragraph 51 of Your Complaint.

30.     Admit that You were the Campaign employee primarily responsible for selecting the vendor who provided the RVs, as alleged in Paragraph 52 of Your Complaint.

31.     Admit that You were the Campaign employee primarily responsible for hiring drivers and operators of the RVs, as alleged in Paragraph 52 of Your Complaint.

32.     Admit that You were the Campaign employee primarily responsible for identifying events at which the RVs would appear, as alleged in Paragraph 52 of Your Complaint.

33.     Admit that You were the Campaign employee primarily responsible for arranging for the RVs to visit remote areas of Florida, as alleged in Paragraph 53 of Your Complaint.

34.     Admit that, during Your time on the National Strike Team, the Campaign paid for Your travel, meals and lodging, in addition to paying your wages.

35.     Admit that, during Your time working for the Campaign in Florida, the Campaign paid for Your travel, meals and lodging, in addition to paying your wages.

36.     Admit that You accepted employment with the Campaign voluntarily.

37.     Admit that, during Your employment with the Campaign, the Campaign paid You wages on a periodic basis, and that You were aware of the amount of wages You were receiving.

38.     Admit that, according to the United States Census Bureau, Alabama had the fifth lowest median household income among the 50 states during 2016.


Dated this 7th day of May, 2019.

**[Signature appears on next page]**

HARDER LLP


*/s/* Charles J. Harder
Charles J. Harder
CHarder@HarderLLP.com
Admitted *Pro Hac Vice*
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212
Telephone:  (424) 203-1600
Facsimile: (424) 203-1601

Dawn Siler-Nixon
Florida Bar No. 993360
DSiler-Nixon@FordHarrison.com
Tracey K. Jaensch
Florida Bar No. 907057
TJaensch@FordHarrison.com
FORD**HARRISON** LLP
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Attorneys for Defendants
Donald J. Trump and
Donald J. Trump for President, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2019, I caused Defendant Donald J. Trump for President, Inc.'s First Set of Requests for Admission to Plaintiff to be served on all counsel of record by email at the following addresses:

| | |
|---|---|
| Janet Varnell<br>Varnell & Warwick, PA<br>P.O. Box 1870<br>Lady Lakes, FL  32158-1870<br>jvarnell@varnellandwarwick.com<br>Attorney for Plaintiff | Hassan A. Zavareei<br>Katherine M. Aizpuru<br>Rebecca Azhdam<br>Tycko & Zavareei LLP<br>1828 L Street NW, Suite 1000<br>Washington, D.C.  20036<br>hzavareei@tzlegal.com<br>kaizpuru@tzlegal.com<br>razhdam@tzlegal.com<br>Attorney for Plaintiff |
| F. Paul Bland<br>Karla Gilbride<br>Public Justice, P.C.<br>1620 L Street NW, Suite 630<br>Washington, DC  20036<br>pbland@publicjustice.net<br>kgilbride@publicjustice.net<br>Attorney for Plaintiff | Jennifer Bennett<br>Public Justice, P.C.<br>475 14th Street, Suite 610<br>Oakland, CA  94612<br>jbennett@publicjustice.net<br>Attorney for Plaintiff |

By: /s/ Steven Frackman

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

      **Plaintiff,**                          **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

      **Defendants.**

_____/

**DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.'S**
**FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Defendant Donald J. Trump for President, Inc., a Virginia corporation, by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 33, hereby serves its First Set of Interrogatories to Plaintiff. Pursuant to Rule 33, Plaintiff is required to answer the following interrogatories, in writing and under oath, within 30 days from the date of service hereof.

**DEFINITIONS**

The following definitions apply to each of the interrogatories:

(a)      "You," "Your," "Yourself," and "Plaintiff" shall mean Alva Johnson and anyone acting on her behalf.

(b)      "Trump" shall mean defendant Donald J. Trump.

1

(c)     The "Campaign" shall mean defendant Donald J. Trump for President, Inc., a Virginia corporation.

(d)     "Defendants" shall collectively refer to defendants Trump and the Campaign.

(e)     "Care," "custody," "control," or "possession" shall mean any item held by You or any of Your representatives, however designated, including Your attorneys.

(f)     The term "person" or "persons" shall include, but not be limited to, natural persons, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, organizations, business entities, or any other form of business, governmental, public, or charitable entity.

(g)     The term "state all facts" means to set out every aspect of every fact, circumstance, omission, or course of conduct known to You relating in any way to the matter inquired about, including without limitation, the date(s), time(s), and place(s), and/or the geographical location(s) thereof; the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, and the identity of all Documents relating thereto; if anything was said by any person, the identity of each such person and each such oral statement; and if the oral statement, in whole or in part, was contained, reported, summarized, or referred to in any Documents, the identity of each such Document.

(h)     "Identify," "identity," or "identification" when used with respect to a document or documents means you are required to state, with respect to each document:

      (i)     the date;

      (ii)     a description sufficient for identification;

      (iii)     the subject matter and content of the document;

      (iv)     the document's location;

2

(v)     the custodian of the document; and,

(vi)    the custodian's address and phone number.

As used herein, the term "identify" or "identification" when used in reference to a natural person means to state, with respect to each document:

(i)     his or her full name;

(ii)    present address or last known address;

(iii)   last known home and work telephone number; and,

(iv)    his or her last known present employment position and business affiliation.

When used in reference to a person other than a natural person, "identify" or "identification" means to state, with respect to each document:

(i)     whether such person is a corporation, partnership or other organization;

(ii)    the name;

(iii)   present and last known address; and,

(iv)    a principal place of its business.

Once any person has been identified properly it shall be sufficient thereafter when identifying that same person to state his, her or its name only.

(i)     "Document(s)" shall mean and refer to all written materials, graphic matter, handwriting, typewriting, audio or video tape recordings, however produced or reproduced, of every kind and description, including, but not limited to, all originals, copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise) and drafts of the following items, whether printed or recorded (through a sound, video or other electronic, magnetic or

3

digital recording system) or reproduced by hand, including, but not limited to, letters, correspondence, memoranda, records, spreadsheets, summaries of personal conversations or interviews, minutes or records or notes of meetings or conferences, diary entries, note pads, notebooks, postcards, "Post-It" notes, stenographic notes, notes, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, logs, calendars, appointment books, charts, graphs, data sheets, pictures, photographs, illustrations, blueprints, drawings, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, Communications (as defined herein), electronically transmitted messages ("email"), "instant" messages or "IM" messages, text messages, voice mail messages, WhatsApp messages (or messages from any similar types of applications), website postings, social media postings, including but not limited to Facebook, Twitter and Instagram, electronically stored information, advertising materials and any other writings, papers and tangible things of whatever description whatsoever, including, but not limited to, any information contained in any computer, even if not yet printed out, within Respondent's actual or constructive possession, custody or control.

(j)     "All" includes the word "any" and "any" includes the word "all."

(k)     "Each" includes the word "every" and "every" includes the word "each."

(l)     The term "individual" shall mean any natural person.

(m)     A masculine, feminine, or gender-free pronoun shall not exclude the other, or both, genders.

(n)     "Relating to," "relate to," "regarding," and "concerning" shall be construed in their broadest sense and shall mean directly or indirectly describing, setting forth, discussing,

mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part.

(o)     To "describe" any fact, act, occurrence, omission, or series of facts, occurrences, or omissions means to provide the following information:

(i)     The identity of each and every person who has knowledge of the fact, act, occurrence, omission, or series of facts, acts, occurrences, or omissions;

(ii)     The date(s) of each fact, act, omission, or occurrence;

(iii)     A narrative description of each fact, act, occurrence, omission or series of facts, acts, occurrences, or omissions; and,

(iv)     The identity of each and every document related to the fact, act, occurrence, omission, or series of facts, acts, occurrences, or omissions.

(p)     "Date" shall mean the precise month, day, and year as is permitted by your knowledge and the documents and information available to you.

(q)     "Lawsuit" refers to the case of Johnson v. Trump *et al.*, Case No. 8:19-cv-00475-WFJ-SPF, pending in the United States district Court for the Middle District of Florida, Tampa Division.

(r)     "Complaint" refers to Plaintiff's complaint filed in the Lawsuit.

(s)     Unless otherwise indicated, all words and terms used in this request shall have the same meaning as in Plaintiff's Complaint.

(t)     "Allegation(s)" as used herein refers to the factual and legal allegations and claims asserted in Plaintiff's Complaint.

If you object to an interrogatory, please respond to the extent you do not object.

## INTERROGATORIES

1.      State all facts that refer to, relate to, support or negate Count I alleged in Your Complaint for battery, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential addresses and business and residential telephone numbers of each such witness.

2.      State all facts that refer to, relate to, support or negate Count II alleged in Your Complaint for unequal pay based on gender, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential addresses and business and residential telephone numbers of each such witness.

3.      State all facts that refer to, relate to, support or negate Count III alleged in Your Complaint for unequal pay based on race, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential addresses and business and residential telephone numbers of each such witness.

4.      State all facts that refer to, relate to, support or negate Your collective action allegations in Paragraphs 120 through 127 of the Complaint, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential addresses and business and residential telephone numbers of each such witness.

6

5.     State all facts that refer or relate to the positions you held while employed with the Campaign, including, but not limited to, the dates of all employment applications You prepared and submitted, all interviews you attended, all duties and functions performed and the identity of each decision maker or person thereat, connected therewith, or who has knowledge thereof, the name, employer, business and residential addresses and business and residential telephone numbers of each such witness, and the name, employer, address and telephone number of each person.

6.     State all facts that refer or relate to any job applications by You following Your separation from the Campaign, including, but not limited to, all employment applications You prepared and submitted to the White House, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, the name, employer, business and residential addresses and business and residential telephone numbers of each such witness, and the name, employer, address and telephone number of each person whom You know, contacted, engaged with or responded to at each such prospective employer.

7.     State all facts regarding Communications that You have had with any attorneys, other than your present counsel, from August 24, 2016 until the present relating to your Allegations herein against Defendants or either of them, including identifying with specificity each such Communication and the name, address and telephone number of each attorney.

8.     State all facts regarding comparators alleged in the Complaint, including all names, positions held, dates of positions held, job duties and functions in all positions held, dates in each position, current employer, business and residential addresses and business and residential telephone numbers for each such person.

7

9.      State all facts regarding Communications that You have had with any therapists from January 1, 2014 until the present, including identifying with specificity each such Communication, the name, address and telephone number of each therapist and the dates of all therapy sessions.

10.     Identify all doctors, nurses, therapists and all other types of medical and/or health care professionals with whom You have communicated or consulted from January 1, 2016 until the present.

11.     Identify all medications that You have consumed from August 1, 2016 until the present, including but not limited to all prescriptions and over-the-counter medicines, vitamins/supplements and products including aspirin, ibuprofen and acetaminophen, and including the date ranges and dosages which you consumed, were prescribed to consume and actually consumed of each such medication.

12.     If Your response to each request for admission served concurrently with these interrogatories is not an unqualified admission then, for each, state all facts that refer to, relate to, support or negate Your response, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential addresses and business and residential telephone numbers of each such witness.


Dated this 7th day of May, 2019.

**[Signature appears on next page]**

8

HARDER LLP


*/s/* Charles J. Harder

Charles J. Harder
CHarder@HarderLLP.com
Admitted *Pro Hac Vice*
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA  90212
Telephone:  (424) 203-1600
Facsimile: (424) 203-1601

Dawn Siler-Nixon
Florida Bar No. 993360
DSiler-Nixon@FordHarrison.com
Tracey K. Jaensch
Florida Bar No. 907057
TJaensch@FordHarrison.com
FORD**HARRISON** LLP
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Attorneys for Defendants
Donald J. Trump and
Donald J. Trump for President, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2019, I caused Defendant Donald J. Trump for President, Inc.'s First Set of Interrogatories to Plaintiff to be served on all counsel of record by email at the following addresses:

| | |
|---|---|
| Janet Varnell<br>Varnell & Warwick, PA<br>P.O. Box 1870<br>Lady Lakes, FL  32158-1870<br>jvarnell@varnellandwarwick.com<br>Attorney for Plaintiff | Hassan A. Zavareei<br>Katherine M. Aizpuru<br>Rebecca Azhdam<br>Tycko & Zavareei LLP<br>1828 L Street NW, Suite 1000<br>Washington, D.C.  20036<br>hzavareei@tzlegal.com<br>kaizpuru@tzlegal.com<br>razhdam@tzlegal.com<br>Attorney for Plaintiff |
| F. Paul Bland<br>Karla Gilbride<br>Public Justice, P.C.<br>1620 L Street NW, Suite 630<br>Washington, DC  20036<br>pbland@publicjustice.net<br>kgilbride@publicjustice.net<br>Attorney for Plaintiff | Jennifer Bennett<br>Public Justice, P.C.<br>475 14th Street, Suite 610<br>Oakland, CA  94612<br>jbennett@publicjustice.net<br>Attorney for Plaintiff |

By: /s/ Steven Frackman

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.**<br><br>**Defendant.** | **Case No. 8:19-cv-00475-WFJ-SPF** |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT DONALD J.**
**TRUMP FOR PRESIDENT, INC.'S FIRST SET OF REQUESTS FOR ADMISSION TO**
**PLAINTIFF**

Plaintiff Alva Johnson objects and responds to Defendant Donald J. Trump for President, Inc.'s

First Set of Requests for Admission to Plaintiff, served May 7, 2019, as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff's investigation and development of all facts and circumstances relating to

this action are ongoing. These responses and objections are made without prejudice to, and are not a

waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Requests for Admission

propounded by the Donald J. Trump for President, Inc. (the "Campaign"), Plaintiff does not waive,

and hereby expressly reserves, her right to assert any and all objections to the admissibility of such

responses into evidence in this action, or in any other proceedings, on any and all grounds including

but not limited to competency, relevance, materiality, and privilege. Plaintiff makes the responses

and objections herein without in any way implying that she considers the Requests for Admission,

and responses to the Requests for Admission, relevant or material to the subject matter of this action.

3.      Plaintiff will provide information that is presently within her personal knowledge, possession, custody, or control. Her possession, custody, or control does not include information that is publicly available and does not include any constructive possession conferred by Plaintiff's right or power to compel the production of documents or information from third parties.

4.      A response to a Request for Admission stating objections or indicating that documents may be produced shall not be deemed or construed to mean that there are, in fact, responsive documents or that Plaintiff acquiesces in the characterization of the conduct or activities described in the Request for Admission or the definitions and/or instructions to the Request for Admission.

5.      "Trump" and "Defendant Trump" refer to Defendant Donald J. Trump.

6.      These responses are made without prejudice to the attorney client privilege between Plaintiff and current counsel and may not be construed as a subject matter waiver.

## <u>GENERAL OBJECTIONS</u>

The following objections are incorporated by reference into each of Plaintiff's specific responses below.

1.      Plaintiff objects to the "Definitions," "Instructions," and to each discovery request to the extent they propose to impose any requirement or discovery obligation on Plaintiff greater than or different than those imposed by the Federal Rules of Civil Procedure and the applicable rules of this Court.

2.      Plaintiff's discovery and investigation with respect to the issues in this case are ongoing. The following responses and objections are provided without prejudice to Plaintiff's right

to revise or supplement these responses and objections based on subsequent discovery or investigation.

3.       Plaintiff objects to the Requests for Admission to the extent that they seek documents or information that is protected by the attorney-client privilege, constitutes attorney work product, was prepared in anticipation of litigation or for trial, or is otherwise privileged from discovery. Inadvertent disclosure of any privileged documents or information in response to the Requests for Admission shall not constitute a waiver of any applicable privilege.

4.       Plaintiff objects to the Requests for Admission as premature (at this stage of the litigation) to the extent they involve opinions or contentions that relate to fact or the application of law to fact, to the extent they seek expert discovery, and to the extent that they call for documents or information that will be produced and/or discovered through upcoming discovery.

5.       No response to a Request for Admission shall be deemed to constitute any agreement or concession that the subject matter of the Requests for Admission is relevant to this action, and all responses shall be made without waiving or intending to waive any objection, including but not limited to objections as to relevance, privilege, or admissibility.

6.       Plaintiff objects to each Request for Admission to the extent that it is duplicative of another Request for Admission, or that it asks Plaintiff to provide information that has already been produced to Defendant. Plaintiff reserves the right to produce documents or information that may be responsive to multiple discovery requests only once.

7.       Plaintiff objects to each Request for Admission to the extent that it asks Plaintiff to provide information that Defendant can know or which Defendant is responsible for knowing.

8.     Plaintiff objects to each Request for Admission to the extent that it calls for documents or information already within Defendant's possession, custody, or control or publicly available and just as easily obtainable by Defendant as they are by Plaintiff.

9.     Plaintiff objects to the Requests for Admission to the extent that they are vague, ambiguous, overly broad, unduly burdensome, and oppressive.

10.     Plaintiff objects to the Requests for Admission to the extent that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in time period.

11.     Plaintiff objects to the Requests for Admission to the extent they assume facts that are not in evidence. By responding to the Requests for Admission, Plaintiff does not admit, concede, or agree with any explicit or implicit assumption made in the Requests for Admission.

12.     Plaintiff objects to the Requests for Admission to the extent that they seek to define terms and/or characterize the evidence in this matter, and to the extent that they contain terms or concepts that are vague, ambiguous, and/or otherwise unintelligible. To the extent that Plaintiff adopts any terms or characterizations used by Defendant in these Requests for Admission, such adoption is specifically limited solely to these responses.

13.     Plaintiff objects to the Requests for Admission to the extent that they seek production of sensitive confidential personal information.

14.     Plaintiff expressly incorporates each of these General Objections into each response below. No response shall be understood as, nor is it intended to be, a waiver of any General Objection or specific objection that may be separately stated in response to any Request for Admission.

–4–

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION 1:** Admit that You met Trump in person only twice.

**RESPONSE TO REQUEST FOR ADMISSION 1:**

Plaintiff denies Request for Admission ("RFA") 1.

**REQUEST FOR ADMISSION 2:** Admit that, the first time You met Trump, he did not touch You.

**RESPONSE TO REQUEST FOR ADMISSION 2:**

Plaintiff denies RFA 2.

**REQUEST FOR ADMISSION 3:** Admit that Count I alleged in Your Complaint for battery is not based on anything that Trump did the first time You met him.

**RESPONSE TO REQUEST FOR ADMISSION 3:**

Plaintiff specifically objects to RFA 3 because it calls for a legal conclusion. Plaintiff further objects to RFA 3 because the phrase "anything that Trump did" is impermissibly vague.

Subject to and notwithstanding the foregoing objections, Plaintiff denies RFA 3.

**REQUEST FOR ADMISSION 4:** Admit that the second time You met Trump was on August 24, 2016 at a Campaign event in Tampa, Florida as alleged in Paragraphs 56 through 70 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 4:**

Plaintiff denies RFA 4.

**REQUEST FOR ADMISSION 5:** Admit that Count I alleged in Your Complaint for battery is based entirely on Trump's alleged actions on August 24, 2016 at a Campaign event in Tampa, Florida.

**RESPONSE TO REQUEST FOR ADMISSION 5:** Plaintiff specifically objects to RFA 5 because it calls for a legal conclusion. Plaintiff further objects to RFA 5 because the phrase "based entirely" is impermissibly vague and ambiguous.

Subject to and notwithstanding the foregoing objections, Plaintiff denies RFA 5.

**REQUEST FOR ADMISSION 6:** Admit that Trump only ever touched You once, *i.e.*, on August 24, 2016 at a Campaign event in Tampa, Florida.

**RESPONSE TO REQUEST FOR ADMISSION 6:**

Plaintiff denies RFA 6.

**REQUEST FOR ADMISSION 7:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump grasped [Your] hand and did not let go," as alleged in Paragraph 63 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 7:**

Plaintiff admits RFA 7.

**REQUEST FOR ADMISSION 8:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump said "he knew [You] had been on the road for a long time and that [You] had been doing a great job," as alleged in Paragraph 63 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 8:**

Plaintiff admits RFA 8.

**REQUEST FOR ADMISSION 9:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump said "that he would not forget about [You,] and that he was going to take care of [You]" as alleged in Paragraph 63 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 9:**

Plaintiff admits RFA 9.

**REQUEST FOR ADMISSION 10:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "[a]s Defendant Trump spoke, he tightened his grip on [Your] hand and leaned toward [You]," as alleged in paragraph 64 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 10:**

    Plaintiff admits RFA 10.

**REQUEST FOR ADMISSION 11:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump "moved close enough that [You] could feel his breath on [Your] skin," as alleged in Paragraph 64 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 11:**

    Plaintiff admits RFA 11.

**REQUEST FOR ADMISSION 12:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, You "suddenly realized that Defendant Trump was trying to kiss [You] on the mouth," as alleged in Paragraph 65 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 12:**

    Plaintiff admits RFA 12.

**REQUEST FOR ADMISSION 13:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, You "attempted to avoid [Trump kissing You on the mouth] by turning [Your] head to the right," as alleged in Paragraph 65 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 13:**

    Plaintiff admits RFA 13.

**REQUEST FOR ADMISSION 14:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump kissed [You] anyway, and the kiss landed on the corner of [Your] mouth," as alleged in Paragraph 65 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 14:**

    Plaintiff admits RFA 14.

**REQUEST FOR ADMISSION 15:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, "Defendant Trump's kiss on [Your] mouth was intentional . . . deliberate and required intention," as alleged in Paragraph 66 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 15:**

    Plaintiff specifically objects to RFA 15 because it calls for a legal conclusion.

    Subject to and notwithstanding the foregoing objections, Plaintiff admits that Defendant has accurately quoted Paragraph 66 of the Complaint and further admits that it is her belief, based on Defendant Trump's actions, including that Defendant Trump navigated around the bill of her baseball cap, together with his admissions of sexual predation, and the accounts of other victims, that Defendant Trump acted deliberately and intentionally when he kissed her on the mouth at an August 24, 2016 Campaign event in Tampa, Florida.

**REQUEST FOR ADMISSION 16:** Admit that, during the August 24, 2016 Campaign event in Tampa, Florida, Trump engaged in "predatory" behavior and "sexually predatory conduct" towards You, as alleged repeatedly in your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 16:**

    Plaintiff admits RFA 16.

**REQUEST FOR ADMISSION 17:** Admit that the attorney discussed in Paragraphs 83-87 and 90-94 of Your Complaint is Adam Horowitz.

**RESPONSE TO REQUEST FOR ADMISSION 17:**

    Plaintiff admits RFA 17.

**REQUEST FOR ADMISSION 18:** Admit that, while employed by the Campaign, you were "forcibly kissed by the President himself during a campaign rally in Florida in front of several other people," as alleged in a Public Justice press release.

**RESPONSE TO REQUEST FOR ADMISSION 18:**

Plaintiff specifically objects to RFA 18 because it is vague as to the press release in question. Plaintiff further objects to RFA 18 because it assumes facts not in evidence.

Subject to and notwithstanding the foregoing objections, Plaintiff admits that she was forcibly kissed by Trump during a campaign event in Florida, as alleged in the Complaint. Plaintiff further admits that Trump is currently the President of the United States. Plaintiff further admits that Defendant has accurately quoted from a case brief available on the Public Justice website. Plaintiff otherwise denies RFA 18 as written.

**REQUEST FOR ADMISSION 19:** Admit that, "[a]fter the kiss in October 2016, which was around the same time as the release of the recording of Trump discussing inappropriate and predatory treatment towards women with Billy Bush in 2005, [You] left the Campaign, traumatized," as alleged in a Public Justice press release.

**RESPONSE TO REQUEST FOR ADMISSION 19:**

Plaintiff specifically objects to RFA 19 because it is vague as to the press release in question. Plaintiff further objects to RFA 19 because it assumes facts not in evidence.

Subject to and notwithstanding the foregoing objections, Plaintiff admits that Defendant has accurately quoted from a case brief formerly available on the Public Justice website. Plaintiff further admits that the release of the recording of Trump discussing inappropriate and predatory treatment towards women with Billy Bush in 2005 occurred in October 2016. Plaintiff further admits that she

left the Campaign, traumatized, in October 2016, after Trump forcibly kissed her at a Campaign

event on August 24, 2016. Plaintiff otherwise denies RFA 19 as written.

**REQUEST FOR ADMISSION 20:** Admit that You were subjected to "touching and kissing at

the hands of President Trump," as alleged in a Public Justice press release.

**RESPONSE TO REQUEST FOR ADMISSION 20:**

Plaintiff specifically objects to RFA 20 because it is vague as to the press release in question.

Subject to and notwithstanding the foregoing objections, Plaintiff admits that Defendant has

accurately quoted from a case brief available on the Public Justice website. Plaintiff further admits

that she was subjected to touching and kissing at the hands of Trump on August 24, 2016. Plaintiff

further admits that Trump is currently President of the United States. Plaintiff otherwise denies

RFA 20 as written.

**REQUEST FOR ADMISSION 21:** Admit that You stated, "this predatory behavior should not

be minimized, especially when committed by the most powerful man in the world," referring to

Trump, as reported in a Public Justice press release.

**RESPONSE TO REQUEST FOR ADMISSION 21:**

Plaintiff specifically objects to RFA 21 because it is vague as to the press release in question.

Subject to and notwithstanding the foregoing objections, Plaintiff admits RFA 21.

**REQUEST FOR ADMISSION 22:** Admit that You sought a position with the White House after

Trump won the general presidential election.

**RESPONSE TO REQUEST FOR ADMISSION 22:**

Plaintiff specifically objects to RFA 22 because the information that it seeks is not relevant

to Plaintiff's claims for battery, unequal pay based on sex, or unequal pay based on race. Whether

Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is

not relevant to whether the Campaign underpaid her relative to white and/or male staffers performing the same or substantially the same work. Whether Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is not relevant to whether Defendant Trump forcibly kissed her.

**REQUEST FOR ADMISSION 23:** Admit that You sought a position with the United States Embassy in Portugal.

**RESPONSE TO REQUEST FOR ADMISSION 23:**

Plaintiff specifically objects to RFA 23 because the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on sex, or unequal pay based on race. Whether Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is not relevant to whether the Campaign underpaid her relative to white and/or male staffers performing the same or substantially the same work. Whether Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is not relevant to whether Defendant Trump forcibly kissed her.

**REQUEST FOR ADMISSION 24:** Admit that, during Your tenure as Director of Outreach and Coalitions for the Campaign, You were "in charge of building volunteer capacity in North Alabama," as alleged in Paragraph 32 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 24:**

Plaintiff admits that in addition to her other duties as Director of Outreach and Coalitions, she was in charge of building volunteer capacity in North Alabama.

**REQUEST FOR ADMISSION 25:** Admit that Your "skills shined most brightly" when You helped organize Campaign rallies, as alleged in Paragraph 33 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 25:**

Plaintiff admits that her skills shined most brightly when she helped organize Campaign rallies, which were a critical part of the Campaign's success in the primary and general elections, as alleged in Paragraph 33 of the Complaint.

**REQUEST FOR ADMISSION 26:** Admit that You worked as Director of Outreach and Coalitions for the Campaign only from January 2016 until the Alabama Primary, on March 1, 2016.

**RESPONSE TO REQUEST FOR ADMISSION 26:**

Plaintiff objects to RFA 26 because "only" is impermissibly vague and ambiguous.

Subject to and notwithstanding the foregoing objections, Plaintiff admits that she worked as Director of Outreach and Coalitions for the Campaign from January 2016 through March 1, 2016, but otherwise denies that she worked as Director of Outreach and Coalitions for the Campaign "only" from January 2016 until the Alabama Primary, on March 1, 2016.

**REQUEST FOR ADMISSION 27:** Admit that, during Your role as part of the National Strike Team, You were the primary point of contact for campaign accessories that came in from out of state, as alleged in Paragraph 43 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 27:**

Plaintiff denies RFA 27.

**REQUEST FOR ADMISSION 28:** Admit that, during Your role as part of the National Strike Team, You set yourself apart from other Campaign employees by seeking out communities of color wherever You traveled as alleged in Paragraph 45 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 28:**

Plaintiff denies RFA 28.

**REQUEST FOR ADMISSION 29:** Admit that Your most important responsibility as a member of the Campaign's Florida operations was managing the Trump RVs, as alleged in Paragraph 51 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 29:**

Plaintiff admits RFA 29.

**REQUEST FOR ADMISSION 30:** Admit that You were the Campaign employee primarily responsible for selecting the vendor who provided the RVs, as alleged in Paragraph 52 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 30:**

Plaintiff denies RFA 30.

**REQUEST FOR ADMISSION 31:** Admit that You were the Campaign employee primarily responsible for hiring drivers and operators of the RVs, as alleged in Paragraph 52 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 31:**

Plaintiff denies RFA 31.

**REQUEST FOR ADMISSION 32:** Admit that You were the Campaign employee primarily responsible for identifying events at which the RVs would appear, as alleged in Paragraph 52 of Your Complaint.

**RESPONSE TO REQUEST FOR ADMISSION 32:**

Plaintiff denies RFA 32.

**REQUEST FOR ADMISSION 33:** Admit that You were the Campaign employee primarily responsible for arranging for the RVs to visit remote areas of Florida, as alleged in Paragraph 53 of Your Complaint.

−13−

**RESPONSE TO REQUEST FOR ADMISSION 33:**

Plaintiff denies RFA 33.

**REQUEST FOR ADMISSION 34:** Admit that, during Your time on the National Strike Team, the Campaign paid for Your travel, meals, and lodging, in addition to paying your wages.

**RESPONSE TO REQUEST FOR ADMISSION 34:**

Plaintiff specifically objects to RFA 34 because it is impermissibly vague and ambiguous. Plaintiff further objects to RFA 34 as compound because it refers to travel, meals, and lodging, and does not specify which travel, meals, and lodging it is referring to.

**REQUEST FOR ADMISSION 35:** Admit that, during Your time working for the Campaign in Florida, the Campaign paid for Your travel, meals and lodging, in addition to paying your wages.

**RESPONSE TO REQUEST FOR ADMISSION 35:**

Plaintiff specifically objects to RFA 35 because it is impermissibly vague and ambiguous. Plaintiff further objects to RFA 35 as compound because it refers to travel, meals, and lodging, and does not specify which travel, meals, and lodging it is referring to.

**REQUEST FOR ADMISSION 36:** Admit that You accepted employment with the Campaign voluntarily.

**RESPONSE TO REQUEST FOR ADMISSION 36:**

Plaintiff specifically objects to RFA 36 as impermissibly vague and ambiguous.

**REQUEST FOR ADMISSION 37:** Admit that, during Your employment with the Campaign, the Campaign paid You wages on a periodic basis, and that You were aware of the amount of wages You were receiving.

**RESPONSE TO REQUEST FOR ADMISSION 37:**

Plaintiff specifically objects to RFA 37 as it calls for a legal conclusion. Plaintiff further objects to RFA 37 because it is compound and because it is vague and ambiguous.

**REQUEST FOR ADMISSION 38:** Admit that, according to the United States Census Bureau, Alabama had the fifth lowest median household income among the 50 states during 2016.

**RESPONSE TO REQUEST FOR ADMISSION 38:**

Plaintiff specifically objects to RFA 38 because it seeks information that is not relevant to any of Plaintiff's claims in this case. Alabama's median income is not relevant to whether Trump committed the tort of battery against Plaintiff or whether the Campaign underpaid Plaintiff relative to white employees and male employees. Plaintiff further objects to this Request because it seeks information outside Plaintiff's knowledge, possession, custody, or control, and which is equally accessible to Defendant because it is in the possession, custody, or control of a third party.

Date: June 6, 2019                                 Respectfully submitted,

                                                   _/s/ Hassan A. Zavareei_____
                                                   Hassan A. Zavareei (*pro hac vice*)
                                                   Katherine M. Aizpuru (*pro hac vice*)
                                                   TYCKO & ZAVAREEI LLP
                                                   1828 L Street, N.W., Suite 1000
                                                   Washington, D.C. 20036
                                                   Telephone: 202-973-0900
                                                   Facsimile: 202-973-0950
                                                   hzavareei@tzlegal.com
                                                   kaizpuru@tzlegal.com

                                                   Tanya S. Koshy (*pro hac vice*)
                                                   TYCKO & ZAVAREEI LLP
                                                   1970 Broadway, Suite 1070
                                                   Oakland, CA 94612
                                                   P: (510) 250-3298

–15–

F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 6, 2019, the foregoing document was served, with the

consent of all parties, by electronic mail on counsel of record for Defendants.

<u>/s/ Hassan A. Zavareei</u>
Hassan A. Zavareei

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,**<br><br>     **Plaintiff,**<br><br> **v.**<br><br>**DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.**<br><br>    **Defendant.** | **Case No. 8:19-cv-00475-WFJ-SPF** |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT DONALD J.**
**TRUMP FOR PRESIDENT, INC.'S FIRST SET OF INTERROGATORIES TO**
**PLAINTIFF**

Plaintiff Alva Johnson objects and responds to Defendant Donald J. Trump for President, Inc.'s First Set of Interrogatories, served May 7, 2019, as follows:

**PRELIMINARY STATEMENT**

1.  Plaintiff's investigation and development of all facts and circumstances relating to this action are ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.  By making the accompanying responses and objections to Interrogatories propounded by the Defendant Donald J. Trump for President, Inc. (the "Campaign") and/or Defendant Donald J. Trump ("Defendant Trump") (collectively, "Defendants"), Plaintiff does not waive, and hereby expressly reserves, her right to assert any and all objections to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including but not limited to competency, relevance, materiality, and privilege. Plaintiff makes the

responses and objections herein without in any way implying that she considers the Interrogatories, and responses to the Interrogatories, relevant or material to the subject matter of this action.

3.     Plaintiff will provide information that is presently within her personal knowledge, possession, custody, or control. Her possession, custody, or control does not include information that is publicly available and does not include any constructive possession conferred by Plaintiff's right or power to compel the production of documents or information from third parties.

4.     A response to an Interrogatory stating objections or indicating that documents may be produced shall not be deemed or construed to mean that there are, in fact, responsive documents, or that Plaintiff acquiesces in the characterization of the conduct or activities described in the Interrogatory or the definitions and/or instructions to the Interrogatory.

5.     These responses are made without prejudice to the attorney client privilege between Plaintiff and current counsel and may not be construed as a subject matter waiver.

## **GENERAL OBJECTIONS**

The following objections are incorporated by reference into each of Plaintiff's specific responses below.

1.     Plaintiff objects to the "Definitions," "Instructions," and to each Interrogatory to the extent that they propose to impose any requirement or discovery obligation on Plaintiff greater than or different than those imposed by the Federal Rules of Civil Procedure and the applicable rules of this Court.

2.     Plaintiff's discovery and investigation with respect to the issues in this case are ongoing. The following responses and objections are provided without prejudice to Plaintiff's right to revise or supplement these responses and objections based on subsequent discovery or investigation.

–2–

3.       Plaintiff objects to the Interrogatories to the extent that they seek documents or information that is protected by the attorney-client privilege, constitute attorney work product, were prepared in anticipation of litigation or for trial, or are otherwise privileged from discovery. Inadvertent disclosure of any privileged documents or information in response to the Interrogatories shall not constitute a waiver of any applicable privilege.

4.       Plaintiff objects to the Interrogatories as premature (at this stage of the litigation) to the extent that they involve opinions or contentions that relate to fact, or the application of law to fact, and to the extent that they call for documents or information that will be produced and/or discovered through upcoming discovery.

5.       No response to an Interrogatory shall be deemed to constitute any agreement or concession that the subject matter of the Interrogatory is relevant to this action, and all responses shall be made without waiving or intending to waive any objection, including but not limited to objections as to relevance, privilege, or admissibility.

6.       Plaintiff objects to each Interrogatory to the extent that it is duplicative of other Interrogatories or asks Plaintiff to provide information that has already been produced to Defendant. Plaintiff reserves the right to produce documents or information that may be responsive to multiple discovery requests, including Interrogatories, only once.

7.       Plaintiff objects to each Interrogatory to the extent that it asks Plaintiff to provide information that Defendant can know or which Defendant is responsible for knowing.

8.       Plaintiff objects to each Interrogatory to the extent that it calls for documents or information already within in Defendant's possession, custody, or control or publicly available and just as easily obtainable by Defendant as they are by Plaintiff.

–3–

9.      Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, and oppressive.

10.     Plaintiff objects to the Interrogatories to the extent that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in time period.

11.     Plaintiff objects to the Interrogatories to the extent that they assume facts that are not in evidence. By responding to these Interrogatories, Plaintiff does not admit, concede, or agree with any explicit or implicit assumption made in the Interrogatories.

12.     Plaintiff objects to the Interrogatories to the extent that they seek to define terms and/or characterize the evidence in this matter, and to the extent that they contain terms or concepts that are vague, ambiguous, and/or otherwise unintelligible. To the extent that Plaintiff adopts any terms or characterizations used by Defendant in these Interrogatories, such adoption is specifically limited solely to these responses.

13.     Plaintiff objects to the Interrogatories to the extent that they seek disclosure of "all facts" on the grounds that such Interrogatory is premature, overly broad, impermissibly vague, and unduly burdensome.

14.     Plaintiff objects to the Interrogatories to the extent that they seek production of sensitive confidential personal information.

15.     Plaintiff expressly incorporates each of these General Objections into each response below. No response shall be understood as, nor is it intended to be, a waiver to any General Objection or specific objection that may be separately stated in response to any Interrogatory.

<u>**RESPONSES AND OBJECTIONS TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u> **State all facts that refer to, relate to, support or negate Count I alleged in Your Complaint for battery, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business, and residential addresses and business and residential telephone numbers of each such witness.**

<u>**RESPONSE TO INTERROGATORY NO. 1:**</u>

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as the identities and contact information of Campaign volunteers, security personnel, and/or guests of Defendant Trump or the Campaign who have knowledge of the facts and circumstances of Defendant Trump's forced kiss; and the identity(ies) of documents exclusively within the possession, custody, and/or control of the Campaign or Defendant Trump. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that a request for an all-encompassing and detailed narrative of her entire case, including the identity of every witness and document supporting each described fact, is unduly burdensome and oppressive. Such requests, which indiscriminately sweep an entire pleading and require the responding party to provide a running narrative or description of the entire case, are inherently improper and an abuse of the discovery process. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and

perhaps money. It would require Plaintiff to compose a narrative containing, in addition to work product and interpretation, essentially all facts in dispute, including those as yet unknown to Plaintiff, and all possible combinations of all factual positions. This is not an appropriate interrogatory because answering requires the performance of an impossibility. This interrogatory is not even a question. Rather, Defendants are seeking, through preliminary discovery, to require Plaintiff to try the case on paper before discovery has begun. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Because this Interrogatory is improper, Plaintiff will not respond to this Interrogatory.

**INTERROGATORY NO. 2:** State all facts that refer to, relate to, support, or negate Count II alleged in Your Complaint for unequal pay based on gender, including without limitation, the identity of all documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business, and residential addresses and business address and business and residential telephone numbers of each such witness.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as publicly available payroll data; payroll data that is exclusively within Defendants' possession, custody, and control; and information about Campaign staff members' duties, responsibilities, and background that is not presently within Plaintiff's possession but is within Defendant's possession. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that a request for an all-encompassing and detailed narrative of her entire case, including the identity of every witness and document supporting each described fact, is unduly burdensome and oppressive. Such requests, which indiscriminately sweep an entire pleading and require the responding party to provide a running narrative or description of the entire case, are inherently improper and an abuse of the discovery process. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and perhaps money. It would require Plaintiff to compose a narrative containing, in addition to work product and interpretation, essentially all facts

in dispute, including those as yet unknown to Plaintiff, and all possible combinations of all factual positions. This is not an appropriate interrogatory because answering requires the performance of an impossibility. This interrogatory is not even a question. Rather, Defendants are seeking, through preliminary discovery, to require Plaintiff to try the case on paper before discovery has begun. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories, and seeks information already produced in this case. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Because this Interrogatory is improper, Plaintiff will not respond to it.

**INTERROGATORY NO. 3:** State all facts that refer to, relate to, support, or negate Count III alleged in Your Complaint for unequal pay based on race, including without limitation, the identity of all documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business, and residential addresses and business address and business and residential telephone numbers of each such witness.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as publicly available payroll data; payroll data that is exclusively within Defendants' possession, custody, and control; and information about Campaign staff members' duties, responsibilities, and background that is not presently within Plaintiff's possession but is within Defendants' possession. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that a request for an all-encompassing and detailed narrative of her entire case, including the identity of every witness and document supporting each described fact, is unduly burdensome and oppressive. Such requests, which indiscriminately sweep an entire pleading and require the responding party to provide a running narrative or description of the entire case, are inherently improper and an abuse of the discovery process. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and perhaps money. It would require Plaintiff to compose a narrative containing, in addition to work product and interpretation, essentially all facts

in dispute, including those as yet unknown to Plaintiff, and all possible combinations of all factual positions. This is not an appropriate interrogatory because answering requires the performance of an impossibility. This interrogatory is not even a question. Rather, Defendants are seeking, through preliminary discovery, to require Plaintiff to try the case on paper before discovery has begun. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it.  Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories, and seeks information already produced in this case. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Because this Interrogatory is improper, Plaintiff will not respond to it.

**INTERROGATORY NO. 4:** State all facts that refer to, relate to, support, or negate Your collective action allegations in Paragraphs 120 through 127 of the Complaint, including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business, and residential address and business and residential telephone number of each such witness.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as publicly available payroll data; payroll data that is exclusively within Defendants' possession, custody, and control; and information about Campaign staff members' duties, responsibilities, and background that is not presently within Plaintiff's possession but is within Defendants' possession. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that a request for an all-encompassing and detailed narrative of her entire case, including the identity of every witness and document supporting each described fact, is unduly burdensome and oppressive. Such requests, which indiscriminately sweep an entire pleading and require the responding party to provide a running narrative or description of the entire case, are inherently improper and an abuse of the discovery process. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and perhaps money. It would require Plaintiff to compose a narrative containing, in addition to work product and interpretation, essentially all facts

in dispute, including those as yet unknown to Plaintiff, and all possible combinations of all factual positions. This is not an appropriate interrogatory because answering requires the performance of an impossibility. This interrogatory is not even a question. Rather, Defendants are seeking, through preliminary discovery, to require Plaintiff to try the case on paper before discovery has begun. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories and discovery requests. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Because this Interrogatory is improper, Plaintiff will not respond to it.

−12−

**INTERROGATORY NO. 5:** State all facts that refer or relate to the positions you held while employed with the Campaign, including, but not limited to, the dates of all employment applications You prepared and submitted, all interviews you attended, all duties and functions performed and the identity of each decision maker or person thereat, connected therewith, or who has knowledge thereof, the name, employer, business and residential addresses and business and residential telephone numbers of each such witness, and the name, employer, address, and telephone number of each person.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as publicly available payroll data; payroll data that is exclusively within Defendants' possession, custody, and control; and information about Campaign staff members' duties, responsibilities, and background that is not presently within Plaintiff's possession but is within Defendants' possession. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and perhaps money. This is not an appropriate interrogatory because answering requires the performance of an impossibility, *i.e.*, presenting facts not known to Plaintiff. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. Further, this Interrogatory is loaded with

multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories and discovery requests. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows. The following response is in no way intended to be an all-inclusive response comprising "all facts," as such a response is impossible. And this response is subject to further supplementation and modification based on future recollections and further discovery.

In late 2015, Ms. Johnson's stepfather, Dr. Jacob Savage (may be contacted through Plaintiff's counsel), asked Ms. Johnson to help him prepare a proposal to assist Defendant Trump's Campaign with outreach to African Americans. The scope of work proposed included managing logistical aspects of the Trump rallies (including venue selection, event logistics, and volunteers), volunteer efforts (including grassroots efforts, coordinating speaking opportunities, coordinating town hall meetings, outreach to Black churches and Greek organizations, working with local and national media, and being on the road throughout Alabama), and managing the North Alabama

–14–

Campaign office (including selecting and negotiating office locations, setting up and running the office, staffing the office, canvassing, distributing collateral, and identifying opportunities for exposure). Ms. Johnson joined Dr. Savage and Mr. Malcolm Thomas (may be contacted through Plaintiff's counsel) for a meeting with Mr. Chess Bedsole, a family friend and recent addition to the Campaign.

At the meeting, Mr. Bedsole remarked that he was impressed with Ms. Johnson's background and that the Campaign could benefit from her expertise in successfully executing large-scale events. He informed Ms. Johnson that before she could be hired, she would have to meet Defendant Trump in person.

On November 21, 2015, at Mr. Bedsole's invitation, Ms. Johnson and Mr. Thomas attended a rally in Birmingham, where Ms. Johnson met Defendant Trump. Because they were guests of Mr. Bedsole and Ms. Johnson was considering joining the Campaign as staff, Ms. Johnson and Mr. Thomas were allowed to enter a VIP meet-and-greet area typically reserved for significant donors, where Defendant Trump was greeting people and shaking hands. Approximately ten other people were in the meet-and-greet area, including Terry Lathan and Ed Henry. Ms. Johnson waited until the others had an opportunity to shake hands with Defendant Trump, then walked towards him so that she could introduce herself.

As Ms. Johnson approached, Defendant Trump looked her up and down and said, "Oh, beautiful, beautiful, fantastic." Ms. Johnson shook hands with Defendant Trump. She tried to redirect Defendant Trump's attention by telling him that she was a political outsider, like him, and was coming from the private sector to work on the Campaign. Defendant Trump nevertheless continued to ogle Ms. Johnson. Despite this uncomfortable interaction, Ms. Johnson believed that if

−15−

she went to work for the Campaign, she could establish appropriate boundaries with Defendant Trump.

Ultimately, the Campaign did not accept the proposal offered by Ms. Johnson, Dr. Savage, and Mr. Thomas, the Campaign did offer Ms. Johnson a job.  In a telephone conversation, Mr. Bedsole advised Ms. Johnson that the Campaign would not accept the proposal for her, Mr. Thomas, and Dr. Savage to join the Campaign together, but that the Campaign would like to hire her. Ms. Johnson accepted the position.

Between January and March 2016, leading up to the Alabama primary election, Ms. Johnson served as Director of Outreach and Coalitions for the Campaign. She quickly made an impression on Campaign staff and proved herself to be a highly competent leader and a valuable asset to the Campaign. Her responsibilities included speaking to organizations, coordinating rallies, and engaging with diverse communities. As one of the few paid African American Campaign staffers, Ms. Johnson was also responsible for minority outreach throughout Alabama. She visited the so-called "Black Belt" of Alabama, a historic region of the state populated by low-income African American farmers, seeking support from African American voters. She also spoke on behalf of the Campaign at Republican political gatherings, including young Republican and college Republican events, as well as attending GOP Executive Committee meetings on behalf of the Campaign. She was also in charge of building volunteer capacity in North Alabama.

Ms. Johnson was also responsible for helping to organize Campaign rallies, and was very successful in this role. The Campaign rallies were a critical part of the Campaign's success in the primaries and in the general election. One such rally held in Madison County, Ms. Johnson's home county, in February 2016, earned her particular praise from Campaign staff. Just three days before the rally, the Campaign confirmed that Defendant Trump would attend. With only a few days to find

−16−

space to hold the rally, Ms. Johnson coordinated with Deputy State Campaign Director Charles "Chad" Tucker to find a venue, and made numerous phone calls to find a space large enough to accommodate the crowd. She also worked to ensure that the flow of attendees would be efficient and manageable. The event was notable for its large turnout and the surprise endorsement of Defendant Trump by then-senator Jeff Sessions, the first senator to endorse Defendant Trump. Defendant Trump himself touted the size of the crowd, describing the rally as "the biggest crowd of the political season by far. We have 30,000 people. 30,000! Amazing!" He later tweeted "THANK YOU ALABAMA! 32,000 supporters tonight." Two days later, on March 1, 2016, Defendant Trump won the Alabama primary, including Madison County.  The successful rally solidified Ms. Johnson's reputation in the Campaign as a talented strategist and essential member of the team.

As a direct result of her successful contributions to the Alabama primary, Ms. Johnson was assigned to the National Strike Team, an elite group of Campaign staffers who traveled to critical states during the primary season. Shortly after the Alabama primary, Mr. Bedsole called Ms. Johnson and asked her if she could go to Missouri to help with the primary there. He explained that everyone was talking about the victory in Madison County, and the success of the Madison rally, and that the Campaign needed people in Missouri. Ms. Johnson agreed and traveled to Missouri, where she met Stephanie Milligan, who appointed Ms. Johnson to the National Strike Team based on her work in Alabama and Missouri. Ultimately, Ms. Johnson was asked by the Campaign to travel to Missouri, Utah, Wisconsin, Indiana, and California.

Ms. Johnson's role on the National Strike Team involved helping organize and manage local volunteer offices. Opening volunteer offices was a core responsibility of the National Strike Team because the Campaign ordinarily did not operate wide-scale local volunteer offices until a few weeks before a state primary, at which point Ms. Johnson and the rest of the National Strike Team would

arrive to set up an office, build a volunteer base, and generate voter engagement and excitement in advance of the election.

As part of the National Strike Team, Ms. Johnson, like many other members of the National Strike Team, was responsible for recruiting and managing many of the volunteers who conducted phone banking and canvassing for the Campaign. To keep volunteer morale high, Ms. Johnson planned outings for volunteers (like a baseball game, sign waving events, and a firefighters versus police officers basketball game) and organized a volunteer appreciation event called Super Saturday. In addition to her responsibilities overseeing Campaign volunteers, Ms. Johnson also helped local state staff coordinate successful rallies. At these rallies, she served as a point of contact for campaign accessories, like signs and stickers, that came in from out of state. And, in each state to which she traveled, Ms. Johnson helped transform the local office into a home base for volunteers and supporters, where they could pick up yard signs and bumper stickers and take photos.

In addition to these responsibilities, Ms. Johnson continued to conduct outreach to minorities, as she had in Alabama. Wherever she traveled, Ms. Johnson sought out African American communities and other communities of color so that she could make sure the Campaign placed signs, recruited volunteers, and conducted door knocking in those neighborhoods in the weeks leading up to the primary. Defendant Trump secured the Republican nomination for president, thanks in part to Ms. Johnson's hard work, energy, and skills.

After Defendant Trump secured the nomination, the Campaign assembled top staff from across the country to go to Florida, an important battleground state, for the general election campaign. Ms. Johnson was recruited by Mr. Bedsole to join this important team because of her successes in Alabama and on the National Strike Team. Originally, Ms. Johnson was interested in joining the fundraising team, but Mr. Bedsole called her and asked her to come to Florida instead.

–18–

Mr. Bedsole explained that Chad Tucker was already in Florida and had been telling Jennifer Locetta that the Florida team needed Ms. Johnson. Mr. Bedsole told Ms. Johnson that the Campaign needed to find the best people and bring them to Florida. Ms. Johnson agreed to join the Florida Campaign, where she ultimately attained the position of Operations Administrative Director.

Initially, Ms. Johnson was tasked with helping Jennifer Locetta and Karen Giorno with onboarding new staff. Ms. Johnson was able to draw on her experience in human resources for these responsibilities. Ms. Johnson also worked closely with members of the communications team on various projects, including writing statements on behalf of Karen Giorno to be used by the Campaign. Her most important responsibility, though, was managing the famous Trump RVs that navigated the state of Florida in advance of the general election. The RVs were essentially mobile offices for the Campaign and were critical for the Campaign's success in registering and engaging voters. Ms. Johnson selected the vendor who provided the RVs, hired teams to drive and operate the RVs, and identified events at which the RVs would appear, such as football games, rallies, county fairs, and gun shows. Ms. Johnson specifically arranged for the RVs to visit remote areas of Florida that might have otherwise been neglected. The RVs visited 57 out of Florida's 61 counties. And, after Hurricane Hermine, instead of campaigning, Ms. Johnson instructed the North Florida RV team to purchase hundreds of dollars of supplies to deliver to community members who had been impacted by the hurricane. Because of these and many other actions Ms. Johnson took to ensure the RVs were a positive presence in communities across Florida, they became one of the most successful facets of the Campaign's voter engagement efforts.

In September 2016, the Campaign hired Susie Wiles, a well-known Republican strategist from Florida, to replace Karen Giorno as head of the Florida Campaign. After Ms. Wiles joined the Campaign, Ms. Giorno moved to New York City and invited Ms. Johnson to come work with her in

Trump Tower. Ms. Giorno had relied extensively on Ms. Johnson during the Florida campaign and knew that she was a good writer, hard worker, and trusted strategist. She offered Ms. Johnson a salary of $10,000 per month—which represented a raise of $6,000 per month above what Ms. Johnson was making in Florida. Ms. Johnson accepted the promotion so that she could earn a higher salary and gain additional career skills. The night before she left for the new job, the Florida Campaign headquarters threw her a going away party. The next day, Ms. Johnson arrived at the Tampa airport excited for the opportunities that awaited her in New York.

But just before Ms. Johnson boarded her flight, she got a call from Cassidy Dumbauld, a staffer based in New York, who said, "Alva, there's been a change. You're not going to come to New York." Ms. Dumbauld told Ms. Johnson that Susie Wiles and Steve Bannon, who had been appointed Chief Executive Officer of the Campaign just weeks earlier, had decided that Ms. Johnson should stay in Florida. Ms. Johnson asked what she was supposed to do; she had already told the Florida staff she was leaving, turned in her house keys, and packed her belongings to head to New York. Ms. Dumbauld reassured her that everything would be fine because Mr. Bannon, Ms. Wiles, David Bossie and Ms. Giorno had discussed it the night before.

Ms. Johnson returned to the Florida team and resumed her responsibilities as Operations Administrative Director. Despite her disappointment regarding the position in New York, Ms. Johnson continued to perform her responsibilities in Florida at a high level and work hard to the best of her ability for the Campaign.

Plaintiff also refers Defendants to her forthcoming document production. Discovery is ongoing and Plaintiff reserves the right to supplement this response.

**INTERROGATORY NO. 6: State all facts that refer or relate to any job applications by You following Your separation from the Campaign, including, but not limited to, all employment**

**applications You prepared and submitted to the White House, including without limitation, the identity of all documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, the name, employer, business and residential address and business and residential telephone numbers of each such witness, and the name, employer, address and telephone number of each person whom You know, contacted, engaged with or responded to at each such prospective employer.**

## RESPONSE TO INTERROGATORY NO. 6:

In addition to the above General Objections, Plaintiff objects to this Interrogatory because the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on sex, and unequal pay based on race, nor is it likely to lead to the discovery of relevant evidence. Whether Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is not relevant to whether the Campaign underpaid her relative to white and/or male staffers performing the same or substantially the same work. Whether Plaintiff applied to jobs with organizations other than the Campaign after leaving the Campaign is not relevant to whether Defendant Trump forcibly kissed her. Plaintiff further objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants because it is within the possession of third party(ies) and not within Plaintiff's possession, custody, or control. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that

Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to

obtain information through counsel's mental impressions, conclusions, opinions, or legal theories.

Plaintiff objects to this Interrogatory to the extent that responding would breach the marital

communications privilege or any other spousal privilege. Plaintiff further objects to this

Interrogatory to the extent that it seeks facts outside her personal knowledge. Plaintiff further

objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth

in response to other Interrogatories and discovery requests.

For these reasons, Plaintiff will not respond to this Interrogatory.

**INTERROGATORY NO. 7: State all facts regarding Communications that You have had**

**with any attorneys, other than your present counsel, from August 24, 2016 until the present**

**relating to your Allegations herein against Defendants or either of them, including**

**identifying with specificity each such Communication and the name, address, and**

**telephone number of each attorney.**

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory because

the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on

sex, and unequal pay based on race, nor is it likely to lead to the discovery of relevant evidence.

Plaintiff further objects to this Interrogatory to the extent that it calls for information that is equally

available to Defendants because it is within the possession of third party(ies) and not within

Plaintiff's possession, custody, or control. Plaintiff further objects that a request seeking "all facts" is

facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious

and time-consuming analysis, search, and description of incidental, secondary, and perhaps

irrelevant or trivial details. Plaintiff further objects to this Interrogatory because it seeks disclosure

of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. This Interrogatory seeks to invade the attorney-client privilege because it expressly seeks information relating to privileged communications between Plaintiff and her counsel. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories and discovery requests.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows. The following response is in no way intended to be an all-inclusive response comprised of "all facts," and is subject to further supplementation and modification based on future recollections and further discovery. This response is made without prejudice to the attorney client privilege between Plaintiff and current counsel and may not be construed as a subject matter waiver.

On or about October 12, 2016, Ms. Johnson contacted attorney Adam Horowitz, who at that time worked at the law firm of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. The following day, Ms. Johnson met in person with Mr. Horowitz. She described to Mr. Horowitz how Defendant Trump had forcibly kissed her on a Campaign RV in front of other Campaign personnel. During that in-person meeting, Mr. Horowitz advised Ms. Johnson that he believed she had a strong case. Mr. Horowitz advised Ms. Johnson to quit her job with the Campaign, move out of Campaign housing, and change her telephone number. He also arranged for her to meet with Lisheyna Hurvitz, a therapist, on a complimentary basis. After Ms. Johnson met with Ms. Hurvitz, changed

her phone number, and moved out of Campaign housing, she advised Mr. Horowitz that she had done so. After Ms. Johnson quit the Campaign by emailing Lucia Castellano to let Ms. Castellano know that she was leaving, Ms. Johnson advised Mr. Horowitz of that fact.

Between October 12 and October 28, 2016, Ms. Johnson communicated with Mr. Horowitz on a regular basis via telephone and text message. During those conversations, Mr. Horowitz asked about her emotional state, inquired as to whether she was continuing to see Ms. Hurvitz, and encouraged her to hang in there. On or about October 28, 2016, Mr. Horowitz advised Ms. Johnson that he had spoken with his law partners and decided not to take the case.

In late October 2016, Ms. Johnson left a voicemail for attorney Lawrence Tribe requesting to speak with him about her case. She also spoke with Mr. Tribe's assistant and left a message for Mr. Tribe, which he did not return.

On or about October 31, 2016 Ms. Johnson contacted the law firm of Gibson, Dunn & Crutcher. She spoke with an attorney at that firm on November 1, 2016 and November 3, 2016. Ms. Johnson will not provide details about the substance of these conversations because they are privileged.

In late February 2018, Ms. Johnson contacted Gloria Allred. Ms. Johnson will not provide details about the substance of these conversations because they are privileged.

Ms. Johnson also refers Defendants to her forthcoming document production. Discovery is ongoing and Ms. Johnson reserves the right to supplement this response.

**INTERROGATORY NO. 8:** **State all facts regarding comparators alleged in the Complaint, including all names, positions held, dates of positions held, job duties and functions in all positions held, dates in each position, current employer, business and residential address and business and residential telephone numbers for each such person.**

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory because it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as publicly available payroll data; payroll data that is exclusively within Defendants' possession, custody, and control; and information about Campaign staff members' duties, responsibilities, and background that is not presently within Plaintiff's possession but is within Defendants' possession. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. This Interrogatory is also overly broad and unduly burdensome because it seeks facts that are not yet known to Plaintiff. Thus, this is not an appropriate interrogatory because answering requires the performance of an impossibility. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory

as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories and discovery requests.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows. The following response is in no way intended to be an all-inclusive response comprised of "all facts," and is subject to further supplementation and modification based on future recollections and further discovery.

Sidney Bowdidge, a white man, is a former massage therapist who traveled on the National Strike Team with Ms. Johnson. Like Ms. Johnson, he was responsible for volunteer recruitment and management. Mr. Bowdidge traveled to the same states as Ms. Johnson.

Austin Browning, a white male teenager at the time of the events in the Complaint, was a high school senior when he was hired by the Campaign. He was hired as a field coordinator.

Matt Ciepielowski, a white man, was part of the National Strike Team and traveled to the same states as Ms. Johnson. Mr. Ciepielowski occasionally assisted with managing volunteers. Mr. Ciepielowski also helped provide data regarding volunteer efforts to Trump Tower.

David Chiokadze, a white man, was a member of the Florida team who assisted the Communications Director, Chad Tucker, with preparing talking points and written statements for the Campaign. Ms. Johnson frequently helped Mr. Chiokadze with his work because other members of the team, including Mr. Tucker and Karen Giorno, recognized her ability to prepare talking points and written statements.

–26–

Tony Ledbetter, a white man, was a member of the Florida team. He was responsible for representing the Campaign in the northern part of Florida during the general election, just as Ms. Johnson had been responsible for representing the Campaign in the northern part of Alabama during the primary. His duties as a Field Director were substantially similar to Ms. Johnson's duties as Director of Outreach and Coalitions. Such duties included volunteer recruitment, creating opportunities for the Campaign in those counties, coordinating volunteers in the counties, and otherwise managing voter outreach and engagement for north Florida counties just as Ms. Johnson had for north Alabama.

Discovery is ongoing and Ms. Johnson reserves the right to supplement this response.

**INTERROGATORY NO. 9: State all facts regarding Communications that You have had with any therapists from January 1, 2014 until the present, including identifying with specificity each such Communication, the name, address, and telephone number of each therapist and the dates of all therapy sessions.**

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory because the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on sex, and unequal pay based on race, nor is it likely to lead to the discovery of relevant evidence. Not *every* communication that Plaintiff has had with *any* therapist is relevant to Plaintiff's claims in this case. Plaintiff further objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants because it is within the possession of third party(ies) and not within Plaintiff's possession, custody, or control. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps

irrelevant or trivial details. Plaintiff further objects to this Interrogatory to the extent that it seeks

disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade

counsel's work product privilege in that it calls for a written analysis of the facts and the application

of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial,

seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through

counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff further objects to this

Interrogatory to the extent that it seeks facts outside her personal knowledge. Plaintiff further

objects to this Interrogatory to the extent that it seeks expert analysis because such a request is

premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set

by the Court. Plaintiff further objects to this Interrogatory as unduly burdensome because it is

duplicative of information set forth in response to other Interrogatories and discovery requests.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows:

Plaintiff will respond to this Interrogatory once a protective order has been entered in this case.

**INTERROGATORY NO. 10:** **Identify all doctors, nurses, therapists, and other types of**

**medical and/or health care professionals with whom You have communicated or consulted**

**from January 1, 2016 until the present.**

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory because

the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on

sex, and unequal pay based on race, nor is it likely to lead to the discovery of relevant evidence. Not

*every* health care professional that Plaintiff may have communicated with or consulted since 2016 is

in possession of information relevant to Plaintiff's claims in this case, or information likely lead to

the discovery of relevant facts. This Interrogatory is extremely overbroad because Plaintiff could

have communicated with healthcare professionals without knowing they were healthcare professionals, or could have communicated with healthcare professionals about issues completely unrelated to the issues in this case. Plaintiff further objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants because it is within the possession of third party(ies) and not within Plaintiff's possession, custody, or control. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory as unduly burdensome because it is duplicative of information set forth in response to other Interrogatories and discovery requests.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows: Plaintiff has communicated with Lisheyna Hurvitz and Susannah Smith (who may be contacted through Plaintiff's counsel). Plaintiff will supplement this response once a protective order has been entered in this case.

**INTERROGATORY NO. 11: Identify all medications that You have consumed from August 1, 2016 until the present, including but not limited to all prescriptions and over-the-counter medicines, vitamins/supplements and products including aspirin, ibuprofen and**

**acetaminophen, and including the date ranges and dosages which you consumed, were
prescribed to consume and actually consumed of each such medication.**

**RESPONSE TO INTERROGATORY NO. 11:**

In addition to the above General Objections, Plaintiff objects to this Interrogatory because
the information that it seeks is not relevant to Plaintiff's claims for battery, unequal pay based on
sex, and unequal pay based on race, nor is it likely to lead to the discovery of relevant evidence. Not
every medication that Plaintiff may have consumed since 2016 is relevant to her claims nor is such
information likely to lead to the discovery of admissible information. Requiring Plaintiff to itemize
and list out every time she may have taken ibuprofen, acetaminophen, and/or aspirin, along with
vitamins and/or supplements, is unduly burdensome and oppressive, irrelevant, and
disproportionate to the needs of the case, particularly since Plaintiff has not asserted any physical
injuries associated with her claims. Plaintiff further objects to this Interrogatory to the extent that it
seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony
in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this
Interrogatory as unduly burdensome because it is duplicative of information set forth in response to
other Interrogatories and discovery requests.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows:
Plaintiff will respond to this Interrogatory once a protective order has been entered in this case.

**INTERROGATORY NO. 12: If Your response to each request for admission served
concurrently with these interrogatories is not an unqualified admission then, for each, state
all facts that refer to, relate to, support or negate Your response, including without limitation
the identity of all Documents relating thereto and the identity(ies) of each person thereat,
connected therewith, or who has knowledge thereof, including without limitation the name,**

−30−

**employer, business, and residential addresses and business and residential telephone numbers of each such witness.**

**<u>RESPONSE TO INTERROGATORY NO. 12:</u>**

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control and not within Plaintiff's possession, custody, or control. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that a request for an all-encompassing and detailed narrative of her entire case, including the identity of every witness and document supporting each described fact, is unduly burdensome and oppressive. Such requests, which indiscriminately sweep an entire pleading and require the responding party to provide a running narrative or description of the entire case, are inherently improper and an abuse of the discovery process. Requiring complete, all-inclusive responses to such an interrogatory would require an unreasonable expense of time and energy, and perhaps money. It would require Plaintiff to compose a narrative containing, in addition to work product and interpretation, essentially all facts in dispute, including those as yet unknown to Plaintiff, and all possible combinations of all factual positions. This is not an appropriate interrogatory because answering requires the performance of an impossibility. This interrogatory is not even a question. Rather, Defendants are seeking, through preliminary discovery, to require Plaintiff to try the case on paper before discovery has begun. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all"

−31−

facts are not only unduly broad, but also so vague as to be incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this interrogatory because it attempts to convert Defendant's first set of requests for admission into interrogatories. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all acts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects to this Interrogatory to the extent that it seeks expert analysis because such a request is premature. Plaintiff will provide any expert testimony in due course and pursuant to the schedule set by the Court. Plaintiff further objects to this Interrogatory to the extent that it seeks facts outside her personal knowledge.

Because this Interrogatory is improper, Plaintiff will not respond to it.

Date: June 6, 2019                              Respectfully submitted,

                                                 _/s/ Hassan A. Zavareei_____
                                                Hassan A. Zavareei (*pro hac vice*)
                                                Katherine M. Aizpuru (*pro hac vice*)
                                                TYCKO & ZAVAREEI LLP
                                                1828 L Street, N.W., Suite 1000
                                                Washington, D.C. 20036
                                                Telephone: 202-973-0900
                                                Facsimile: 202-973-0950
                                                hzavareei@tzlegal.com
                                                kaizpuru@tzlegal.com

−32−

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

## <u>VERIFICATION</u>

I, Alva Johnson, declare as follows:

I am plaintiff in the above-captioned case. I have read Plaintiff's Reponses and Objections to Defendant Donald J. Trump for President, Inc.'s First Set of Interrogatories to Plaintiff and know the contents thereof. The responses are true and correct to the best of my knowledge. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 6th day of June, 2019.

DocuSigned by:

_____
55F626D918F04A1...

Alva Johnson

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 6, 2019, the foregoing document was served, with the

consent of all parties, by electronic mail on counsel of record for Defendants.

<u>/s/ Hassan A. Zavareei</u>
Hassan A. Zavareei

# EXHIBIT E



132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS, CA 90212 • 424.203.1600

260 MADISON AVENUE, SIXTEENTH FLOOR
NEW YORK, NY 10016 • 212.799.1400

WWW.HARDERLLP.COM

June 7, 2019

**VIA E-MAIL**
Hassan A. Zavareei
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
hzavareei@tzlegal.com

Re:   **Alva Johnson v. Donald J. Trump for President, Inc.,** *et al.*
        **M.D. Fla. USDC Case No. 8:19-cv-00475**

Dear Mr. Zavareei:

Pursuant to Federal Rule of Civil Procedure 37(a)(1), we write to meet and confer regarding the responses of plaintiff Alva Johnson ("Plaintiff") to defendant Donald J. Trump for President, Inc.'s (the "Campaign") First Requests for Production of Documents, First Set of Interrogatories and First Set of Requests for Admission to Plaintiff.

Plaintiff has improperly refused to fully respond or produce documents in response to a substantial number of the Campaign's requests. As detailed below, the Campaign's requests are narrowly tailored to seek information and documents directly relevant to this action, and Plaintiff's objections are without merit. In an effort to resolve these matters without involving the Court, the Campaign addresses Plaintiff's objections and responses as follows:

**Plaintiff's Responses to the Campaign's First Set of Requests for Production**

**Request for Production No. 4** seeks Plaintiff's non-privileged communications with others concerning her allegations in this lawsuit and/or facts supporting those allegations. Plaintiff's contention that "[i]t is not possible to understand what documents this Request is seeking" is evasive and without merit. Such documents go to the very heart of Plaintiff's claims, and if she is to be believed, Plaintiff should have nothing to hide as her third-party communications would presumably be consistent with and support her contentions. It is therefore improper for her to refuse to produce any of them.

**Request for Production No. 7** seeks those documents which Plaintiff may use for any purpose associated with this lawsuit, including preparation for testimony and potential trial exhibits. To be clear, this Request is not seeking documents properly subject to the work product doctrine or the attorney-client privilege. The relevance and discoverability of the requested documents is manifest and your client's refusal to provide them is inconsistent with fundamental purposes of civil discovery.

{00100837;1}

June 7, 2019
Re: Alva Johnson v. Donald J. Trump for President, Inc., *et al.*
Page 2

     **Request for Production No. 8** seeks documents (if any) demonstrating that all conditions precedent to bringing this action have occurred, including but not limited to the exhaustion of administrative remedies.  Such documents are relevant to determine whether Plaintiff has complied with all prerequisites necessary to maintain her claims and must be produced.

     **Request for Production Nos. 19–23, 25–27 and 73** seek documents concerning Plaintiff's professional career following her departure from the Campaign.  These documents are relevant and discoverable for a number of reasons, including that her subsequent employment (like her prior jobs) evidence her fair market earning potential.  Moreover, the Campaign is informed that Plaintiff sought to work under the Trump administration in some capacity such as at the United States Embassy in Portugal and even in the White House itself after Mr. Trump won the general presidential election—undermining the credibility of her claimed disgust and aversion to the defendants.  All of the requested documents must therefore be produced.

     **Request for Production No. 24** seeks documents regarding all criminal proceedings against Plaintiff.  Your client's response that, "Absent clarification, Plaintiff interprets this Request to be a Request for documents reflecting criminal convictions within the last ten years" is unacceptable, as the category on its face is not in any way so limited.  Plaintiff must produce all responsive documents, without limitation as to timeframe.

     **Request for Production Nos. 28 and 74–75** seek copies of Plaintiff's written agreements with Public Justice and her attorneys, and her communications with Public Justice. Public Justice is not a law firm; it is a non-profit organization that provides a number of services unrelated to legal representation.  Accordingly, every communication that Plaintiff has had with anyone affiliated with the organization which did not constitute the rendering of legal counsel is discoverable and must be produced.

     Plaintiff did not respond to **Request for Production Nos. 30 or 64**, thereby waiving any objections thereto.  Accordingly, Plaintiff must produce all documents in her possession, custody or control that are responsive to these Requests.

     **Request for Production Nos. 32, 34, 59, 61, 66, 68–69** are routine contention requests seeking copies of any materials that Plaintiff contends support the allegations and claims in her Complaint.  Document demands like these are so routine in civil discovery that their permissibility—indeed, necessity—cannot reasonably be disputed, and responsive documents must be produced.

     **Request for Production No. 56** seeks your client's pertinent medical records.  "Courts have routinely held that, by putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records." *Lozman v. City of Riviera Beach*, 2014 WL 12692766, at *1 (S.D. Fla. May 2, 2014).  Here, Plaintiff has unquestionably placed her medical condition at issue through

June 7, 2019
Re: Alva Johnson v. Donald J. Trump for President, Inc., *et al.*
Page 3

her claims for emotional distress.  (*See e.g.* Complaint, ¶¶ 93,130, 140, 147; Complaint Prayer for Relief Count II, ¶ 13).  Plaintiff must therefore produce the requested medical records.

　　　　**Request for Production No. 83** seeks documents regarding any promotional or publicity activities by Plaintiff, Public Justice and/or anyone acting on her behalf relating to either or both of the defendants, including, but not limited to soliciting, scheduling, organizing or preparing for any media appearances, interviews, statements or press releases.  Plaintiff's response that she will only provide "press statements" and "press releases" is unacceptable, as the category of relevant documents sought is much broader than the subset she has agreed to produce.  Plaintiff must produce all responsive documents without this limitation.

　　　　Finally, in every one of the approximately sixty (60) instances where Plaintiff commits to complying with a Request, her written response indicates that she will only "produce all **relevant**, responsive non-privileged, non-work-product-protected documents" (emphasis added).  Use of the qualifier "relevant" introduces unnecessary ambiguity by suggesting that Plaintiff may possess or control responsive documents that she is withholding based on an improper, unilateral determination that they are irrelevant.  Accordingly, please withdraw this limitation, and confirm that Plaintiff will agree to produce all responsive, non-privileged documents whether or not Plaintiff herself deems them relevant.

## Plaintiff's Responses to the Campaign's First Set of Interrogatories

　　　　**Interrogatory Nos. 1-4** ask Plaintiff to state all facts relating to, supporting or negating each of the claims she has asserted in this action.  Instead of providing a response to these basic Interrogatories, Plaintiff asserts a litany of boilerplate objections, and even contends that answering them "requires the performance of an impossibility," which defies logic.  Plaintiff's refusal to substantively respond to these Interrogatories is clearly improper and the requested information is routinely sought through interrogatory.  *See Arthrex, Inc. v. Parcus Med., LLC,* 2012 WL 12904172, at *2 (M.D. Fla. June 25, 2012) (holding contention interrogatories are "proper" and "constitute a valid and constructive discovery tool."); Fed.R.Civ.P. 33, Advisory Committee Notes, 2007 ("Opinion and contention interrogatories are used routinely.") Accordingly, Plaintiff must fully respond to each of these Interrogatories.

　　　　**Interrogatory No. 6** asks Plaintiff to state all facts regarding any job applications by Plaintiff following her separation from the Campaign.  This Interrogatory is relevant for the reasons stated above in connection with Request for Production Nos. 19–23, 25–27 and 73, and Plaintiff must fully respond thereto.

　　　　**Interrogatory Nos. 9-11** seeks information regarding the medical/heath care professionals seen by Plaintiff and the medications taken by Plaintiff.  Plaintiff's refusal to provide substantive responses to these Interrogatories until entry of a protective order is improper because she has placed her mental health at issue, thereby waiving any potential privacy interests in the requested information.  Accordingly, Plaintiff must immediately provide her substantive responses to these Interrogatories.

June 7, 2019
Re: Alva Johnson v. Donald J. Trump for President, Inc., *et al.*
Page 4

**Interrogatory No. 12** asks Plaintiff to state all facts relating to, supporting or negating any of Plaintiff's responses to the Campaign's Requests for Admission that are not an unqualified admission.  This is also a proper contention interrogatory, which routinely accompanies requests for admission.  In fact, Plaintiff propounded a nearly identical interrogatory on defendant Donald J. Trump (Interrogatory No. 3), only to withdraw it one day before Plaintiff's responses were due, likely in an effort to avoid having to respond to the interrogatory served by the Campaign.  Regardless of Plaintiff's withdrawal of her own interrogatory, she must provide a substantive response to the Campaign's interrogatory.

<u>**Plaintiff's Responses to the Campaign's First Set of Requests for Admission**</u>

**Request for Admission Nos. 22-23** request Plaintiff to admit that she sought a position with the White House following the 2016 election and a position with the United States Embassy in Portugal.  These Requests are relevant for the reasons stated above in connection with Request for Production Nos. 19–23, 25–27 and 73, and Plaintiff must admit or deny them.

**Request for Admissions Nos. 34-35** request Plaintiff to admit that the Campaign paid for her travel, meals and lodging.  Plaintiff's objection that these Requests are "impermissibly vague and ambiguous" is without merit.  Plaintiff does not identify any specific terms she contends to be vague or ambiguous, and there can be no reasonable dispute about the meaning of these Requests or the information sought.  Additionally, Plaintiff's objection that these Requests are compound because each "refers to travel, meals, and lodging and does not specify which travel, meals, and lodging it is referring to" is without merit.  In any event, Plaintiff cannot refuse to respond to these Requests based on a claim that they are compound.  If any portion of a request for admission is true, the party to whom it is directed must admit that portion.  *See* Fed.R.Civ.P. 36(a)(4) ("when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").

**Request for Admission No. 36** asks Plaintiff to admit that she voluntarily accepted employment with the Campaign.  This Request is simple and straightforward, and there is no basis for Plaintiff to object that it is "impermissibly vague and ambiguous."  Plaintiff must admit or deny this Request.

**Request for Admission No. 37** asks Plaintiff to admit that the Campaign paid her wages on a periodic basis and that she was aware of the amount of wages she received.  Plaintiff's refusal to provide a response based on her contention that the Request calls for a legal conclusion is improper.  *See* Fed.R.Civ.P. 36(a)(1)(A) ("A party may serve on any other party a written request to admit…relating to…the application of law to fact.")  Plaintiff's boilerplate objection that the Request is "vague and ambiguous" is also without merit, and she cannot refuse to respond to the Request based on her objection that it is compound.

**Request for Admission No. 38** asks Plaintiff to admit certain findings of the United States Census Bureau regarding household income in Alabama.  This is directly relevant to her claims because, among other things, it reflects a lack of any kind of disparity in the pay she

June 7, 2019
Re: Alva Johnson v. Donald J. Trump for President, Inc., *et al.*
Page 5

received.  Moreover, because Census Bureau information is public and readily available, Plaintiff can easily determine the truth of the Request based on a reasonable inquiry (which she is required to make in providing her responses).

### Conclusion

Please let us know your availability to meet and confer in further detail by telephone next Tuesday, June 11 or Wednesday, June 12, 2019.  If we are unable to resolve these matters, the Campaign will have no choice but to seek appropriate relief from the Court, including a motion to compel and monetary sanctions for Plaintiff's failure to comply with her discovery obligations.

This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of my clients' rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

Sincerely,

CHARLES J. HARDER Of
**HARDER LLP**

cc:   Ryan J. Stonerock, Esq.
      Henry L. Self III, Esq.
      Steven H. Frackman, Esq.
      Dawn Siler-Nixon, Esq.
      Tracey Jaensch, Esq.
      Katherine M. Aizpuru, Esq.
      Janet R. Varnell, Esq.
      Brian W. Warwick, Esq.
      Tanya S. Koshy, Esq.
      Jennifer D. Bennett, Esq.
      F. Paul Bland, Esq.
      Karla A. Gilbride, Esq.

# EXHIBIT F



| | |
|---|---|
| **WASHINGTON DC** | **CALIFORNIA** |
| 1828 L Street, NW \| Suite 1000 | The Tower Building |
| Washington, DC 20036 | 1970 Broadway \| Suite 1070 |
| 202.973.0900 | Oakland, CA 94612 |
| www.tzlegal.com | 510.254.6808 |

June 12, 2019

**<u>VIA EMAIL</u>**

Charles J. Harder
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@harderllp.com

Dear Counsel:

     I write in response to your letter of June 7, 2019 regarding my client's responses to Defendant Donald J. Trump for President, Inc.'s ("the Campaign") First Requests for Production of Documents, First Set of Interrogatories, and First Set of Requests for Admission to Plaintiff. I also write to meet and confer regarding a proposed motion for a protective order and motion for an order regarding discovery of electronically stored information. As I have previously explained, we intend to work with you in good faith on discovery matters in this case. We genuinely hope that any disputes can be resolved cooperatively, without involving the Court. However, Plaintiff's objections to your discovery requests are wholly proper and supported by law.

**Electronically Stored Information**

     Turning first to the issue of electronically stored discovery, in our joint case management report filed with the Court, you agreed that "[t]he parties . . . anticipate entering into a joint stipulation concerning the protocol for handling electronically stored information (ESI)." *See* Dkt. 36 at 6. Consistent with that agreement, I sent you a proposed ESI protocol on May 30, 2019. But instead of acting in accordance with your prior agreement, you asserted for the first time that you would not enter into an ESI protocol in this case. Only after we expressed our intent to seek an order from the Court entering our proposed ESI protocol did you finally agree.

     As I have repeatedly explained, Plaintiff's collection and production of documents does require entry of an ESI protocol, as does Defendants'. With regard to Defendants' forthcoming production (which we expect will be fulsome, given our agreement to multiple extensions of time to respond), your colleague, Tracey Jaensch, stated that "Our plan in responding to your discovery to the Campaign on the pay issues would be to engage in email searches." Part of an ESI protocol is agreeing upon search terms and custodians. You asked what specific ESI we expect to be included in the production; as examples only, we expect that Defendants' production will include, among other things, emails and text messages relating to Ms. Johnson from her colleagues on the Campaign as well as from witnesses to the forced kiss; documents and correspondence relating to Defendant Trump's history of nonconsensual kissing and



**WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

touching of women; and internal documents and correspondence relating to the Campaign's compliance (or lack thereof) with federal law on pay equity; and payroll data—along with other materials responsive to our requests. Identifying responsive documents, ensuring a thorough and complete collection of these documents, and producing them in a usable format requires entry of an ESI protocol. Your proposed approach of running search terms through Outlook on unspecified email accounts is haphazard and unacceptable. And Ms. Jaensch's proposal of cost-shifting at this stage is highly inappropriate. As you are no doubt aware, "[t]he presumption is that the responding party must bear the expense of complying with discovery requests." *Wakefield v. City of Pembroke Pines*, 2006 WL 8431629, at *2 (S.D. Fla. Mar. 16, 2006) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)); *see also Tussing v. Sprinkle*, 2013 WL 1216491, at *1 n.1 (M.D. Fla. Oct. 22, 2013) (denying request for cost-shifting where producing responsive documents would require defendant to shut down his business for a period of time); *Stewart v. Cont'l Cas. Co.*, 2014 WL 12600282, at *4 (S.D. Ala. Jan. 9, 2014) (citation omitted) ("Cost-shifting should be considered only when electronic discovery imposes and 'undue burden or expense' on the responding party."). *Accord Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (stating that "cost-shifting is potentially appropriate only when *inaccessible* data is sought"). Your clients cannot evade their discovery obligations in this case by complaining that an orderly approach to electronic discovery is too expensive.

Hopefully, we can agree on a stipulated ESI protocol tomorrow. But either way, we will not permit your continued obstruction to delay discovery in this case. Thus, if you continue to cause unnecessary delay by refusing to provide concrete suggestions and edits, we intend to seek entry of a Court order implementing our proposed ESI protocol so that discovery in this case can proceed in an orderly fashion.

Notwithstanding your obstruction on the subject of an ESI protocol, we are continuing to move forward expeditiously with document collection and anticipate beginning a rolling production soon. In connection with our eDiscovery vendor, we have collected and begun reviewing documents from multiple sources, including email and physical devices. We have also provided additional devices to our vendor for imaging, and anticipate receiving additional documents from our client via mail in the coming days. We will continue to work with our vendor to gather responsive documents and produce them as promptly as reasonably possible under the circumstances.

### Protective Order

The aforementioned circumstances include an additional item of obstruction on your part: our continuing dispute over an appropriate protective order. While we have produced some written discovery responses and may be in a position to produce some documents prior to entry of a protective order, other documents and written discovery responses include private, sensitive information that we will not produce until the appropriate safeguards are in place. There is



▶ **WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

simply no good reason why you have been unwilling to agree to a straightforward stipulated protective order. We sent you a proposed stipulated protective order on May 30, 2019. Instead of suggesting edits, you sent back a different proposed order. For the reasons stated in my colleague Jennifer Bennett's email of June 3, 2019, your proposed alternative was not in accord with the law, the Federal Rules, and/or best practices regarding confidentiality. We thus requested that you instead offer any changes to our proposed order for consideration.

On June 5, 2019, not having heard back from you, Ms. Bennett advised that although our discovery responses would be due the following day, we would be unable to produce confidential materials until entry of a protective order. You stated that you would provide "a response" to the proposed protective order. To date, we have not received your response, despite my request on June 6, 2019 that you begin working with us collaboratively to facilitate production of documents.

Again, we will not permit your obstructive tactics to delay the orderly progression of discovery in this case, and to that end we intend to seek an order from the Court entering the protective order that we proposed on May 30. Once the Court has ordered appropriate safeguards of confidential information, we will produce responsive materials (not subject to objection, of course), which, as noted above, we have already begun to collect, as speedily as reasonably possible.

### Responses and Objections to Discovery

Your letter also raised a bevy of complaints about our objections to your numerous discovery requests. Each of these complaints lacks merit. Your contention that the Campaign's requests—many of which feature unbounded and nonspecific demands for "all documents" or "all facts," among other problems—are "narrowly tailored" is simply untrue, and each of our objections to your requests is proper. Your threat of a motion to compel is unfounded, because you cannot compel responses to improper and/or unintelligible discovery requests.

### 1.    Requests for Production of Documents.

**RFP No. 4.** Request for Production ("RFP") No. 4 seeks "all documents and other tangible items in Your possession, custody, control, or otherwise available to You that support, pertain to, or contain any reference to or record of any Communication between You and any person (other than Your lawyer) concerning the Allegations asserted in Your Complaint, and/or facts supporting Your allegations." Thus, your characterization, in your letter, of the Request as seeking merely "non-privileged communication with others concerning her allegations in this lawsuit" does not reflect the actual scope of this vastly overbroad Request. Further, it is not clear what is meant by "documents and other tangible items . . . that support . . . any Communication . . . concerning the Allegations asserted in Your Complaint." What is a document that supports a communication? In any event, Plaintiff will conduct a reasonable inquiry and diligent search and



**WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

produce non-privileged, non-work-product-protected communications with others concerning her allegations in this lawsuit within her possession, custody or control. If any such communications are confidential, they will be produced once a protective order is in place.

**RFP No. 7.** RFP No. 7 seeks "all documents and other tangible items in Your possession, custody, control, or otherwise available to you upon which You may rely in preparation for Your deposition or trial, to which You may refer in preparation for Your testimony at trial, or which You may use for any other purpose associated with this Lawsuit including, but not limited to, those Documents or tangible items that You may use as trial exhibits or demonstrative aids." This RFP is premature. At this stage in the litigation, it is not possible to know what documents and tangible items will be used as trial exhibits or as demonstrative aids. Exhibit lists and the like will be made available in due course and pursuant to the schedule ordered by the Court. Expert reports will likewise be made available in due course and pursuant to the schedule ordered by the Court. In addition, a request for documents and materials that Plaintiff "may" rely on in preparation for her deposition is overbroad and, notwithstanding your clarification that the Request is not seeking materials protected by the work-product or attorney-client privileges, impermissibly vague and not capable of a response. All that being said, with the exception of documents to be made available pursuant to the schedule (trial materials and expert reports) and privileged documents, there are currently no documents that Plaintiff is specifically withholding pursuant to these objections. The problem is that because this RFP is capable of numerous interpretations, Plaintiff cannot say whether there are additional responsive documents that will need to be produced. We would consider clarification as to documents sought by this RFP that are not also already subject to production under other RFPs pursuant to which Plaintiff has agreed to produce documents.

**RFP No. 8.** RFP No. 8 seeks "all documents and other tangible items in Your possession, custody, control, or otherwise available to You supporting Your allegation that all conditions precedent to bringing this Lawsuit have occurred." What conditions precedent are you referring to? Without clarification, it is not possible to respond to this Request.



▶ **WASHINGTON DC**

1828 L Street, NW │ Suite 1000

Washington, DC 20036

202.973.0900

www.tzlegal.com

**CALIFORNIA**

The Tower Building

1970 Broadway │ Suite 1070

Oakland, CA 94612

510.254.6808

        **RFP Nos. 19-23, 25-27, and 73[1]; Interrogatory No. 6[2]; Requests for Admission Nos. 22-23[3].** These RFPs, RFAs, and Interrogatory No. 6 seek information relating to Plaintiff's professional career *after* the relevant events in this case. But as we have already explained, any job search by Plaintiff *after* she left the Campaign is not relevant to whether Defendants underpaid her relative to white and/or male staffers while she was working for the Campaign. *See, e.g.*, *Keeshan v. Eau Claire Cooperative Health Ctrs., Inc.*, 395 F. App'x 987, 993-95 (4th Cir. 2010) (finding that the district court abused its discretion by admitting testimony on plaintiff's post-termination income in case alleging retaliation under Title VII and state law wage claims). And, as the Eighth Circuit recently affirmed in upholding the following jury instruction, "[i]t is not a defense under the Equal Pay Act that a woman may be paid less than a man in the

---

[1] **RFP No. 19** seeks "all Documents and other tangible things in Your possession, custody, control, or otherwise available to You regarding Your search for employment after Your separation from the Campaign, including, but not limited to, copies of all employment applications and accompanying documents or materials (including cover letters or email messages) that You prepared or submitted." **RFP No. 20** seeks "all documents and other tangible things in Your possession, custody, control, or otherwise available to You regarding any job applications by You following your separation from the Campaign, including, but not limited to, copies of all employment applications and accompanying materials (including cover letters or email messages) that You prepared and/or submitted to the White House." **RFP No. 21** seeks "all Documents and other tangible things in Your possession, custody, control, or otherwise available to You regarding any income and benefits received after Your employment with the Campaign." **RFP No. 22** seeks "any and all income tax returns, paycheck stubs, canceled checks, financial diaries, and any other Documents that indicate wages, salaries, and other income or benefits received by You from any source from January 1, 2016 to the present." **RFP No. 23** seeks "all Documents and other tangible things in Your possession, custody, or otherwise available to You that pertain to or contain any reference to or record of Your rate of pay, wages and compensation, and any employment-related benefits You have received from October 2016 to the present." **RFP No. 25** seeks "A copy of Your current resume." **RFP No. 26** seeks "all Documents and other tangible things in Your possession, custody, control, or otherwise available to You that pertain to or contain any reference to or record of all job search efforts in which You have engaged since October 2016, and all offers of employment You have received since October 2016." **RFP No. 27** seeks "All Documents and other tangible things in Your possession, custody, control, or otherwise available to You that pertain to or contain any reference to or record of any Communications since October 2016 between You [and] any past, present, or prospective employer including, but not limited to, letters of reference, discipline or discharge, job offers, applications, or resume." **RFP No. 73** seeks "all Documents in Your possession, custody, control, or otherwise available to You that refer or relate to You seeking a position with the United States Embassy in Portugal."

[2] **Interrogatory No. 6** asks Plaintiff to state "all facts that refer or relate to any job applications by You following your separation from the Campaign . . . including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, the name, employer, business, and residential address and business and residential telephone numbers of each such witness, and the name, employer, address and telephone number of each such person whom You know, contacted, engaged with or responded to at each such prospective employer."

[3] **Request for Admission ("RFA") No. 22** states, "Admit that You sought a position with the White House after Trump won the general presidential election." **RFA No. 23** states, "admit that You sought a position with the United States Embassy in Portugal."



▶ **WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

same position simply because the woman is willing to accept less pay, or because the man demands more pay." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 422 (8th Cir. 2017). Market forces are therefore not a proper defense to Ms. Johnson's discrimination claims. *See id. See also Kunstmann v. Aaron Rents, Inc.*, 2010 WL 11615033, at *4 (N.D. Ala. Sept. 7, 2010) (stating that the "subsequent employment history of plaintiffs no longer employed by [defendant] is irrelevant to the issues presented" in a case under the FLSA); *Harper v. Coates-Clark Orthopedic Surgery & Sports Med. Center, LLC*, 2006 WL 2482501, at *1 (M.D. Fla. Aug. 7, 2006) (evidence of plaintiff's prior and/or subsequent employment was not relevant to plaintiff's overtime claims under the FLSA). *Cf. Pirela v. Village of N. Aurora*, 935 F.3d 909, 912 (7th Cir. 1991) (stating that wage discrimination claims were not barred by res judicata arising from subsequent discharge claims against plaintiff because the later dismissal charges would not be relevant to the wage claims).

Similarly, your contention that documents relating to the Campaign's invitation to Ms. Johnson to apply for a position with the Trump Administration (and her subsequent application to work overseas) are relevant to Defendant Trump's conduct in forcibly kissing Ms. Johnson lacks merit. We will consider any authority you can offer that such evidence is relevant to Ms. Johnson's claims, but at present do not agree that such materials are required to be produced.

**RFP No. 24.** RFP No. 24 seeks "[c]opies of all Documents regarding any and all criminal proceedings against You." This Request is unlimited in time and scope and does not define "criminal proceedings." As written, it is therefore vague and overbroad, and unlikely to lead to the discovery of relevant evidence. In the spirit of good faith and cooperation, instead of objecting wholesale, we have responded consistent with Federal Rule of Evidence 609. You have not offered any arguments to support your position that other materials are discoverable. They are not. *See, e.g., Mayan v. Mayan*, No. 615CV2183ORL18TBS, 2017 WL 1426631, at *9 (M.D. Fla. Apr. 21, 2017) (declining to compel production of a "10 year history of arrests" where plaintiff had already provided "a list of charges in Orange County since he began working for Defendants" because defendant "does not offer any argument why a 10 year history of arrests pertains to any matter pled here").

**RFP Nos. 28 and 74-75.** RFP No. 28 seeks fee arrangements with counsel. RFP Nos. 74-75 seek Ms. Johnson's "written agreement(s) with Public Justice" and "[a]ll documents that constitute, refer or relate to Your Communications with Public Justice." You have not explained why your request for Ms. Johnson's retention agreement(s) with her attorneys are discoverable. That is likely because they are not. *See, e.g., Wynder v. Applied Card Sys., Inc.*, No. 09-80004-CIV-MARRA/JOHNSON, 2009 WL 10667792, at *1-2 (S.D. Fla. Oct. 14, 2009) (stating that "the court finds no connection between the testimony of a plaintiff in an FLSA case and a representation agreement between plaintiff and counsel" and denying motion to compel production). Your assertion that Ms. Johnson does not enjoy attorney-client privilege with regard to communications with Public Justice attorneys is just absurd. Public Justice is in fact a law firm, run by lawyers, and represents clients in lawsuits around the country.  There is no



**WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

requirement that an attorney be employed at a for-profit law firm for the privilege to attach. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 596 (S.D.N.Y. 2015) (finding communications between individual and attorney at a nonprofit "that provides a variety of services to employers, including HR advice and legal services," privileged because the advice given was "legal in nature" even though the nonprofit also provided other kinds of advice).

    **RFP Nos. 30 and 64.** Plaintiff produced responses to RFP Nos. 30 and 64 on June 7, 2019, one day after the deadline. This one-day delay has prejudiced no one and is not a waiver of objections and privileges. *Freedman v. Lincoln National Life Ins. Co.*, No. 3:05-cv-81-J-12HTS, 2006 WL 8439167, at *1 (M.D. Fla. Mar. 23, 2006) (stating that "the proposition that privileges are waived simply by their untimely assertion has been described as unnecessarily draconian" and declining to hold privilege waived where party raised no objections and asserted no privileges until a motion to compel was filed); *FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 606 (M.D. Fla. 1990) ("[F]ailure to assert the attorney-client privilege in a timely manner does not waive the privilege even when the privilege is asserted for the first time in a motion for reconsideration of a district court's order to produce."); *see also Yaldo v. Wayne State Univ.*, No. 2:15-cv-13388, 2016 WL 7178738, at *1 (E.D. Mich. Dec. 9, 2016) (denying motion to compel where responses to interrogatories were "a mere one day late to the interrogatories and roughly only one week late to the requests for production of documents"). Particularly in light of our agreement to multiple extensions of time to your clients, we request the same professional courtesy in this instance.

    **RFP Nos. 32, 34, 59, 61, 66, 68-69[4].** These Requests seek "all documents" supporting various allegations in the Complaint. Apart from being extremely overbroad and vague (it is not

---

[4] **RFP No. 32** seeks "all Documents and Communications supporting Your allegations in Paragraph 6 of the Complaint that 'not only did Ms. Johnson endure forcible kissing by her boss, she experienced race and gender discrimination as one of the few females and one of only a handful of African American people on the Campaign payroll." **RFP No. 34** seeks "all Documents and Communications supporting Your allegations in Paragraph 16 of the Complaint that Plaintiff was 'paid less than her colleagues because o her race and gender. . . . forcibly kissed in public then subjected to humiliating comments from her colleagues that caused her to relive the experience. But she experienced all of these things as a senior member of Defendant Trump's Campaign staff." **RFP No. 59** seeks "all documents and communications supporting Your allegations in Paragraph 111 of the Complaint that 'Ms. Johnson was also underpaid compared to similarly qualified and less qualified male staffers. She did not know this fact until very recently. Ms. Johnson's experience is not isolated—indeed, the Campaign engaged in systemic gender discrimination in pay against its female employees." **RFP No. 61** seeks "all documents and communications supporting Your allegations in paragraphs 113 through 116 of the Complaint regarding what the Campaign purportedly 'knew.'" **RFP No. 66** seeks "All Documents and other tangible items in Your possession, custody, control, or otherwise available to You (including, but not limited to, ledgers, reports, correspondence, notes, contracts, calendars schedules, and memoranda) that refer to, concern, reflect, itemize, describe or relate to the job duties of putative members of "the collective" referred to in Paragraph 121 of the Complaint." **RFP No. 68** seeks "all Documents and Communications supporting Count II alleged in Paragraphs 134 through 141 of the



▶ **WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

clear whether they are seeking privileged materials, expert reports—which will be produced in due course and pursuant to the schedule set by the Court—documents outside Plaintiff's possession, custody or control, publicly available documents, documents in Defendants' possession, or anything else), many of these Requests are compound and unintelligible. For example, RFP No. 59 lists out a few different sentences in the Complaint relating to Ms. Johnson's pay, her knowledge, the knowledge and experiences of others, and the Campaign's conduct. Is the RFP targeted toward each piece, or part? There is no way to tell. As drafted, these Requests are not proper. *See, e.g.*, *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, No. 2:15-cv-219-FtM-29MRM, 2016 WL 7130939, at *6 (M.D. Fla. July 19, 2016) (denying motion to compel because "requesting 'any and all documents' that support a contention in an affirmative defense is not sufficiently particularized and is facially overbroad); *see also CS Bus. Sys. Inc. v. Schar*, No. 5:17-cv-86-Oc-PGBPRL, 2017 WL 8948376, at *3 (M.D. Fla. June 15, 2017) (stating that requests such as "all documents concerning any fact or issue described in the complaint" appeared to "facially overbroad"); Middle District Discovery at 11 ("For example, a request for 'each and every document supporting your claim' or a request for 'the documents you believe support Count I' is objectionably broad in most cases.").

In any event, as with RFP No. 7 above, with the exception of documents to be made available pursuant to the schedule (trial materials and expert reports) and privileged documents, there are currently no documents that Plaintiff is specifically withholding pursuant to these objections. Again, the problem is that because this RFP is capable of numerous interpretations, Plaintiff cannot say whether there are additional responsive documents to be produced. If there are documents responsive to these Requests that you believe are not also responsive to other Requests that Plaintiff has agreed to respond to, we will consider clarification to that effect.

**RFP No. 56.** RFP No. 56 seeks "Unredacted copies of all of Your medical records in Your possession, custody, control, or otherwise available to You from January 1, 2012 until the present." This Request is objectionable for multiple reasons, not least because it inexplicably seeks documents from over four years before the events at issue in this lawsuit. In addition, this document seeks medical records potentially relating to physical ailments that have nothing to do with Ms. Johnson's emotional distress claims. Accordingly, it is overbroad and unduly burdensome. *See, e.g.*, *Hupp v. San Diego Cty.*, No. 12cv0492GPC(RBB), 2013 WL 5408644, at *7-8 (S.D. Cal. Sept. 25, 2013) (granting motion to quash subpoena for complete medical records because the plaintiff "has placed his psychological condition at issue only to the extent it was caused by Defendants' actions. Unlike a typical personal injury case, Plaitiff does not allege a physical injury caused by Defendants that required medical treatment."); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 126 (E.D. Va. 2009) (rejecting request for complete medical records because "a plaintiff seeking emotional distress damages has a right to have discovery limited to

---

Complaint." **RFP No. 69** seeks "all Documents and Communications supporting Count III alleged in Paragraphs 142 through 148 of the Complaint."



▶ **WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

information that is directly relevant to the lawsuit. Defendants may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress.").

**RFP No. 83.** RFP No. 83 seeks "all Documents and Communications that refer or relate to any promotional or publicity activities relating to either or both of the Defendants by You, Public Justice, and/or anyone acting on Your behalf, before and/or after this Lawsuit was filed, including but not limited to soliciting, scheduling, organizing or preparing for any media appearances, interviews, statements or press releases." As drafted, this Request is overly broad, unduly burdensome, and vague because it seeks "all" documents and communications relating to either or both the President of the United States and his campaign—including materials that have nothing whatsoever to do with this case. There are no time limitations on this Request and no limitations as to scope. You have objected to our agreement to produce press statements and press releases, but have not offered any additional clarification as to what, specifically, this Request is seeking.

**Commitment to produce documents.** As your letter recognizes, we have agreed to respond to dozens of your Requests. We will not withdraw our commitment to produce relevant documents where indicated (subject to objections, privilege, and other limitations stated therein). Your overbroad discovery requests have unfortunately required us to restrict our responses in this manner. If, upon review of Plaintiff's production, you believe additional documents ought to have been produced, we can confer on those issues at that time.

**2.     Interrogatories.**

**Interrogatory Nos. 1-4.** Interrogatory Nos. 1-4 ask Plaintiff to state "all facts that refer to, relate to, support or negate" each Count alleged in the Complaint, "including without limitation, the identity of all Documents relating thereto and the identity(ies) of each person thereat, connected therewith, or who has knowledge thereof, including without limitation the name, employer, business and residential address and business and residential telephone numbers of each such witness." These contention interrogatories are overbroad and unduly burdensome because, among other reasons (and stated objections), they sweep in *all* facts (including trivial, incidental facts and secondary accounts), purport to seek facts not yet known to Plaintiff, facts outside her possession, custody, and/or control, and facts not developed through discovery. They are also premature, since discovery has only just begun. Thus, they are improper and objectionable. *See, e.g.*, *Megdal Assocs., LLC v. La-Z-Boy, Inc.*, No. 14-81476-CIV-ZLOCH, 2016 WL 4503337, at *6 (S.D. Fla. Feb. 1, 2016) (finding that interrogatory asking plaintiff to "identify all facts and legal bases that tend to support or refute each and every allegation in the complaint" was overbroad because it "sweeps in not only material facts, but incidental details, secondary accounts, trivial tidbits—even facts supporting allegations that Defendant has admitted"); *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, No. 6:12-cv-1379-ORL-22TBS, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014) (finding that an interrogatory that asks the plaintiff "to provide a detailed explanation of a substantial part of its case before expert



▶ **WASHINGTON DC**
1828 L Street, NW  |  Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway  |  Suite 1070
Oakland, CA 94612
510.254.6808

discovery on these issues has taken place" is "premature, oppressive, and overbroad," and "likely to result in a waste of time and resources"); *Lucero v. Valdez*, 240 F.RD. 591, 594 (D.N.M. 2007) ("Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for 'each and every fact' and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome. . . . Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."); *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) (stating that contention interrogatories are "overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or a defense, such that the answering party is required to provide a narrative account of its case") Roberts *v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989) ("Courts are loathe to requie a party to write basically a portrait of their trial for the other parties."). *See also* Fed. Prac. & Proc. § 2167 (3d. ed. 2015) ("Contention interrogatories may be held unduly broad if they ask in an undifferentiated way for 'all' facts or witnesses that support an opposing party's case."); Middle District Discovery at 16 ("Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive.").

  **Interrogatory No. 6** is addressed above.

  **Interrogatory Nos. 9-11.** Interrogatory No. 9 seeks "all facts regarding Communications that You have had with any therapists from January 1, 2014 until the present, including identifying with specificity each such Communication, the name, address and telephone number of each therapist and the dates of all therapy sessions." Interrogatory No. 10 asks Plaintiff to identify all doctors, nurses, therapists, and all other types of medical and/or health care professionals with whom You have communicated or consulted from January 1, 2016 until the present. And Interrogatory No. 11 asks Plaintiff to identify all medication that she has consumed from August 1, 2016 until the present. As stated, Plaintiff will respond to these interrogatories once an appropriate protection order is in place. Plaintiff has not waived her privacy interests in this sensitive and deeply personal information simply by seeking emotional distress damages. *Sheets v. Sorrento Villas, Section 5, Assoc., Inc.*, No. 8:15-cv-1674-T-30JSS, 2016 WL 11493318, at *3 (M.D. Fla. May 9, 2016) (allowing entry of protective order governing medical records in case alleging emotional distress).

  **Interrogatory No. 12.** Interrogatory No. 12, which asks Plaintiff to state "all facts that refer to, relate to, support or negate Your response" to each Request for Admission ("RFA") which is not an unqualified admission is likewise improper. "Requests for admission are not principally discovery devices, and allowing service of an interrogatory which requests disclosure of all information upon which the denials of each … request[] for admission were based transforms each request into an interrogatory." *Alabama v. Alabama Wood Treating Corp.*, No. 85-0642-CG-C, 2007 WL 9717667, at *17 (S.D. Ala. Feb. 27, 2007) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)) (denying motion to compel response to



**WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

interrogatory seeking "the basis for your denial and … all facts supporting your denial" of each request for admission that was denied).

**3.      Requests for Admission**

      <u>**RFA Nos. 22-23**</u> are addressed above.

      <u>**RFA Nos. 34-35**</u> request that Plaintiff admit that the Campaign paid for her travel, meals, and lodging. Since it is not possible to tell which travel, meals, and/or lodging the RFA is asking about, the RFA is impermissibly vague (as explained in Plaintiff's objections to the same). "A party propounding requests for admissions under Rule 36 bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification." *Uber Promotions, Inc. v. Uber Techs., Inc.*, No. 1:15cv206-MW/GRJ, 2016 WL 9115991, at *2 (N.D. Fla. May 26, 2016). "Requests for admission that are vague or susceptible of more than one interpretation defeat the goal of Rule 36 and are properly objectionable." *Lawrence v. United States*, No. 8:11-cv-2735-T-17AEP, 2012 WL 9491751, at *1 (M.D. Fla. Oct. 3, 2012).

      <u>**RFA No. 36**</u> asks Ms. Johnson to admit that she "accepted employment with the Campaign voluntarily." As explained, this RFA is impermissibly vague. It is unclear what aspects of her "employment" this RFA is asking Ms. Johnson to admit that she "accepted . . . voluntarily," including whether it is asking Ms. Johnson to admit that she accepted an offer of employment, accepted ongoing employment, accepted the terms of employment or compensation offered by the Campaign, or some other aspect of her employment. Again, RFAs that are susceptible of multiple interpretations are properly objectionable.

      <u>**RFA No. 37**</u> asks Ms. Johnson to admit that "during Your employment with the Campaign, the Campaign paid You wages on a periodic basis, and that You were aware of the amount of wages You were receiving." Plaintiff will serve a supplemental response to this RFA.

      <u>**RFA No. 38**</u> states, "Admit that, according to the United States Census Bureau, Alabama had the fifth lowest median household income among the 50 states during 2016." As explained above, economic conditions are not relevant to Ms. Johnson's wage claims. *Dindinger*, 853 F.3d at 422. This RFA is therefore irrelevant and objectionable.

\* \* \*

      This letter is not intended as a full or complete statement of all relevant facts or applicable law or objections or privileges, and nothing herein is intended as (nor should it be deemed to constitute) a waiver or relinquishment of any of my client's rights, remedies, claims, or causes of action, all of which are hereby expressly reserved.



**WASHINGTON DC**
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

**CALIFORNIA**
The Tower Building
1970 Broadway | Suite 1070
Oakland, CA 94612
510.254.6808

We look forward to discussing these issues with you tomorrow at 1:00 p.m. EST.

Regards,

Hassan A. Zavareei


cc:   Katherine M. Aizpuru, Esq.
      Tanya S. Koshy, Esq.
      Janet Varnell, Esq.
      Brian W. Warwick, Esq.
      Jennifer D. Bennett, Esq.
      F. Paul Bland, Esq.
      Karla A. Gilbride, Esq.
      Ryan J. Stonerock, Esq.
      Henry L. Self, Esq.
      Steven H. Frackman, Esq.
      Dawn Siler-Nixon, Esq.
      Tracey Jaensch, Esq.

# EXHIBIT G



| | WASHINGTON DC | CALIFORNIA |
|---|---|---|
| | 1828 L Street, NW \| Suite 1000 | The Tower Building |
| | Washington, DC 20036 | 1970 Broadway \| Suite 1070 |
| | 202.973.0900 | Oakland, CA 94612 |
| | www.tzlegal.com | 510.254.6808 |

**VIA ELECTRONIC MAIL**

June 13, 2019                                     Our File No. 474-01

Charles J. Harder
Harder LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, CA 90212
charder@harderllp.com

      Re:    *Johnson v. Trump,* Case No. 8:19-cv-00475-WFJ-SPF

Dear Counsel:

      Thank you for the productive meet and confer call earlier today. This letter memorializes the topics discussed and the decisions reached as a result of the call. If you believe I have incorrectly stated any of the matters herein, please advise as soon as possible.

<b>Protective Order, ESI Protocol, and Document Production</b>

**Protective Order:** You will circulate a redline of the proposed protective order by the close of business today. Hopefully we can reach agreement on this matter by the end of the week, but if not, we may seek relief from the Court.

**ESI Protocol:** You will circulate a redline of the proposed ESI protocol. Again, we hope we can reach agreement on this matter by the end of the week, but if not, we may seek relief from the Court. We also discussed preliminarily identifying custodians and search terms once you have provided your redline.

**Document production:** We hope to begin our rolling document production by the end of next week. We have uploaded over 145,000 documents into our document review platform and have begun running preliminary searches to substantially narrow the universe of materials to be reviewed and produced. Our review of these documents is underway and we will continue moving forward expeditiously.

      Ms. Jaensch stated that she would provide authority for the position that objections based on relevance are not proper and we will review that authority. We will comply with Rule 26 in making our document production, but at this time will not serve supplemental responses agreeing to produce irrelevant documents.



Charles J. Harder
June 13, 2019
Page 2

<strong><u>Amended Responses</u></strong>

**RFP No. 4:** Pursuant to the clarification provided in your letter, we will provide an amended response to RFP 4 stating that Plaintiff will conduct a reasonable inquiry and diligent search and produce non-privileged, non-work-product-protected communications with others concerning her allegations in this lawsuit within Ms. Johnson's possession, custody, or control. You stated your concern that documents "referring to" communications (such as an email stating, "That was a great conversation," referring to a conversation about the allegations in the lawsuit, or a note summarizing a conversation about the lawsuit) would also need to be produced. We do not dispute this interpretation and would consider such documents to be within the scope of what we have agreed to produce (assuming they are not irrelevant, privileged, or work product).

**RFP No. 8:** We are not aware of any conditions precedent to the filing of this lawsuit, and you did not advise of any that you believe need to have been fulfilled. You stated that the request is seeking documents submitted to government agencies in connection with this claim. Having looked at this issue, we will submit an amended response stating that pursuant to our meet-and-confer, we understand this request to be seeking documents submitted to government agencies in connection with this case, and that no such documents exist.

**RFP No. 30.** Since no responsive documents exist, there is no dispute.

**Interrogatory Nos. 9-11.** Plaintiff will provide a response once a protective order is in place.

**RFA Nos. 34-37.** Plaintiff will serve amended responses.

**RFP No. 83:** Having considered this issue further, we will provide an amended response stating that we will produce all relevant, responsive, non-privileged, non-work-product-protected documents within Ms. Johnson's possession, custody, or control.

<strong><u>Items Requiring Additional Follow-Up</u></strong>

**RFP No. 7.** We will review our response and determine whether a supplemental response is required.

**RFP Nos. 28, 74-75.** During the call, you clarified that these requests are seeking communications with non-lawyers employed at Public Justice, such as communications personnel. We will consider these clarifications.

**RFP Nos. 64, 32, 34, 59, 61, 66, 68-69.** These requests seek "all documents" in a manner that is overbroad and vague. We are willing to consider any case law that you can offer supporting your position that these requests are proper. You also stated that it is acceptable for Plaintiff to produce her documents without indicating to which RFP they are responsive.



Charles J. Harder
June 13, 2019
Page 3

**RFP No. 56:** You agreed to limit the temporal scope of this RFP to August 24, 2014 to present. We will investigate whether responsive documents—other than therapist records, which we have agreed to produce—exist and follow up.

### Items On Which We Not Yet Reached Agreement

**RFP Nos. 19-23, 25-27, 73; Interrogatory No. 6; RFA Nos. 22-23.** In light of our claim for damages based on lost income as a result of the battery, we are willing to consider the position that some of these materials may be relevant. However, as drafted, these requests are overbroad. During the call, Ms. Jaensch stated that Defendants could agree to limit these requests somewhat. If you would be willing to offer proposed limitations, we will consider those.

**RFP No. 24.** We will consider any authority you can provide to support your position that additional responsive materials are discoverable, but at present Plaintiff stands on her objections except, as stated, as to documents regarding criminal convictions within the last ten years.

**Interrogatory Nos. 1-4:** Plaintiff is not required to provide a detailed narrative of "all facts" supporting each of her claims at the outset of this case. We will consider any authority you can provide to support your position that these interrogatories are proper, but at present Plaintiff stands on her objections.

**Interrogatory No. 12:** We will consider any authority you can provide to support your position that this interrogatory is proper, but at present Plaintiff stands on her objections.

**RFA No. 38:** We will consider any authority you can provide to support your position that a response is required, but at present Plaintiff stands on her objections.

Should you wish to discuss these matters further, please provide your availability for a follow-up call.

Regards,

Hassan A. Zavareei

cc:    Katherine M. Aizpuru, Esq.
       Tanya S. Koshy, Esq.
       Janet Varnell, Esq.



Charles J. Harder
June 13, 2019
Page 4

Brian W. Warwick, Esq.
Jennifer D. Bennett, Esq.
F. Paul Bland, Esq.
Karla A. Gilbride, Esq.
Ryan J. Stonerock, Esq.
Henry L. Self, Esq.
Steven H. Frackman, Esq.
Dawn Siler-Nixon, Esq.
Tracey Jaensch, Esq.