# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

**Plaintiff,**                                    **Case No. 8:19-cv-00475-WFJ-SPF**

v.

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

**Defendants.**

_____/

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, defendants Donald J. Trump ("Mr. Trump") and Donald J. Trump for President, Inc. (the "Campaign") (collectively, "Defendants") hereby move this Court for entry of a protective order (1) preventing Mr. Trump from being deposed in this action, and (2) protecting Defendants from Plaintiff Alva Johnson's ("Plaintiff") extensive, irrelevant, oppressive and unduly burdensome written discovery requests, many of which pertain to subjects that the Court struck from Plaintiff's operative pleading and prohibited from being included in any future amended complaint.[1]

---

[1] Should the Court wish to have oral argument on this motion, counsel for Defendants request either August 8 or August 19, 2019, to coincide with already-planned East Coast trips of Defendants' lead counsel, Mr. Harder.

I.      **INTRODUCTION**

Plaintiff's first cause of action against Mr. Trump for battery arises entirely out of a single exchange between the two which lasted only seconds, on August 24, 2016, inside of a campaign recreational vehicle ("RV") filled with several other people including staff members, volunteers, supporters, members of the U.S. Secret Service, and then-Attorney General of the State of Florida, Pamela Bondi.  Complaint, Feb. 25, 2019 [Dkt. No. 1] ¶¶ 56–74, 128–133.

A video recording of the exchange between Plaintiff and Mr. Trump (a presidential candidate at the time) is attached as **Exhibit A** to the accompanying Declaration of Brian Hayes, a campaign volunteer at the time.  Mr. Hayes was one of the many people inside of the RV and took the 15-second video on his smart phone (the "Video").  The Video also can be viewed at the following URL address: www.HarderLLP.com/JohnsonVideo.  A slow-motion excerpt of the Video, at 25% speed, is available at the same URL, and is attached as **Exhibit O** to the accompanying Declaration of Charles J. Harder ("Harder Decl.").[2]

The Video shows Plaintiff talking to Mr. Trump, stating that she had just been "away from my family for eight months for you."  The two have a very brief, innocent interaction that is *mutual*—and not forcible.  Right after the exchange, in which *Plaintiff appears to kiss Mr. Trump* (or kisses the air next to his face), *Plaintiff smiles*, and then Plaintiff repeats the words, "eight months for you."  Plaintiff then immediately says to Mr. Trump: "We're going to get you in the White House and I'll see you in February."

Plaintiff confirmed in her deposition on July 8, 2019 that the Video depicts her exchange with Mr. Trump—the entire basis for her battery count—and also that she spoke the words "We're going to get you in the White House and I'll see you in February."  Harder Decl., Ex. B.

---

[2] Exhibits A and O have been manually submitted to the Court on USB flash drives concurrently with the filing of this motion.

This interaction, depicted in the Video, was the one and only time the two ever spoke or had physical contact in the year 2016.  (The only other occasion in her life where Plaintiff spoke to Mr. Trump or had physical contact with him was when she first met him on or about November 21, 2015, at a campaign event, where she shook his hand and told him she looked forward to joining his campaign.)

The Video shows that Plaintiff's allegations in the Complaint that Mr. Trump "forcibly" kissed her, and kissed her "on the mouth," are entirely false.  In watching the Video, the only conclusion a reasonable person could reach is that the exchange was an innocent moment between a dedicated campaign staffer and the candidate for whom she was working—who was appreciative that she had just spent eight months away from her family on the campaign trail for his campaign.  Then, after this very brief exchange, in which she appears to kiss him (or the air next to his face), she smiles, and then says "We're going to get you in the White House and I'll see you in February," meaning right after the Inauguration, which is held on January 20 after every Presidential election.

If Plaintiff had been attacked, as she alleges, one would expect a far different response than telling him she'll help him get elected President of the United States.  That is the response of a person who is moved in a *positive way* by her candidate's show of appreciation and recognition of her dedicated service to his campaign.  Moreover, the fact that the two are surrounded by campaign workers, supporters, members of law enforcement and the state's then-Attorney General, in a small space, further suggests that an attack like the one Plaintiff alleges in her Complaint is all the more impossible.

The Video proves that Plaintiff has no legitimate claim for battery.  It also proves that Plaintiff and her counsel have lied repeatedly to this Court.  In her Complaint, in her verified

interrogatory responses, and in numerous papers that she filed with this Court including motions, oppositions, and reports, Plaintiff: (i) repeatedly called the exchange a "forcible" kiss "on her mouth" (the Video disproves both); (ii) repeatedly said that Mr. Trump grabbed her hand and would not let go (the Video disproves this); (iii) repeatedly said she turned her head to the right (the Video show she turned left); (iv) repeatedly alleged specific dialog between them (disproved by the Video); and (v) repeatedly called Mr. Trump a "predator" because of the exchange between them (disproved by the Video).

Also relevant is the fact that Plaintiff's counsel is an advocacy organization comprised of supporters of Democratic Party candidates, including the current Democratic Party presidential front-runner Vice President Joe Biden and former Democratic Party presidential nominee Secretary Hillary Clinton, who was defeated by Mr. Trump in 2016.  Harder Decl., Ex. S. Plaintiff, her counsel, and this advocacy group engaged in a thorough, coordinated media campaign immediately after filing this lawsuit to publicize to the media on a massive scale Plaintiff's false and scurrilous battery claim against President Trump, in an obvious effort to damage the President's reputation and chances at re-election.  Harder Decl., Ex. T; *see also id.* Exs. P–R, attaching documents produced by Plaintiff's counsel showing that Plaintiff sent an email to the current Presidential campaign of California Senator Kamala Harris (currently a top contender for the Democratic Party nomination) making specific reference to her discrimination claims in this lawsuit, and also an exchange of emails with Plaintiff's friend who states: "…focus on any of these states to help **make sure Trump does not get reelected**: Texas, Florida, Ohio, Georgia and North Carolina" (emphasis added).  It could not be clearer that Plaintiff, her counsel and the advocacy group brought this lawsuit to use this Court as a means to wage a political fight against President Trump and his campaign.

All of the foregoing warrant a protective order, preventing President Trump from being deposed, and severely limiting the scope of discovery in this case.

The battery claim against Mr. Trump is unmeritorious and frivolous.  "Frivolous claims, a category with which the courts are quite familiar, generally can be handled expeditiously and ordinarily can be terminated with **little or no involvement by the person sued**."  *Jones v. Clinton*, 72 F.3d 1354, 1362 (8th Cir. 1996), *aff'd*, *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (emphasis added) ("Most frivolous and vexatious litigation is terminated at the pleading stage or on summary judgment, with **little if any personal involvement by the defendant**") (emphasis added).

In addition, and importantly, Mr. Trump lacks any discoverable percipient knowledge regarding any of Plaintiff's claims.  In his accompanying Declaration, President Trump states that he does not know Plaintiff or have any recollection of their interactions.  Declaration of Donald J. Trump ¶ 2.  He also states that he was not responsible for setting the salaries of the Campaign's employees—the Campaign was.  *Id.* ¶ 3.  There is no reason to force the President of the United States to take time away from his important duties on behalf of the United States to sit for a deposition in this case, particularly given his lack of percipient knowledge, the lack of merit of the battery claim against him, and the political motives of the Plaintiff, her lawyers and the advocacy group "Public Justice."

Should any deposition be permitted (and Defendants submit that none should be permitted at all), Mr. Trump requests that the deposition be limited to written questions or, alternatively, that Mr. Trump's responses to Plaintiff's written interrogatories be accepted in lieu of written deposition questions.  If a live deposition were to be permitted at all (yet here, it is unwarranted), Mr. Trump requests that it be limited to no more than one hour, on very specific

and narrow subject areas relating to the two occasions where Plaintiff and Mr. Trump actually

met, and any communications and/or documents that Mr. Trump may be aware of regarding

same.

## II.   PROCEDURAL HISTORY

### A.   Plaintiff's Allegations

On February 25, 2019, Plaintiff filed this lawsuit against Mr. Trump for battery, and

against his re-election campaign for unequal pay based on gender and race, respectively.

*Compare*, *Clinton*, 520 U.S. at 702 ("in the more than 200-year history of the Republic, only

three sitting Presidents have been subjected to suits for their private actions").

In her first count, Plaintiff alleged (among other things) that "Defendant Trump grasped

her hand and did not let go.  He told her he knew she had been on the road for a long time and

that she had been doing a great job.  He also told Ms. Johnson that he would not forget about her,

and that he was going to take care of her."  Complaint, [Dkt. No. 1] ¶ 63.  "[H]e tightened his

grip on Ms. Johnson's hand and leaned towards her.  He moved close enough that she could feel

his breath on her skin."  *Id.* ¶ 64.

Plaintiff claimed she "suddenly realized that Defendant Trump was trying to **kiss her on**

**the mouth**, and attempted to avoid this by turning her head **to the right**.  Defendant Trump

kissed her anyway, and **the kiss landed on the corner of her mouth**."  *Id.* ¶ 65 (emphasis

added); *accord*, Harder Decl. Ex. N [Plaintiff's Responses and Objections to Defendant Donald

J. Trump for President, Inc.'s Second Set of Interrogatories] at 9, 13 (same, verified under oath).

Defendants moved to strike portions of Plaintiff's pleading pursuant to Federal Rule of

Civil Procedure 12(f) [Dkt. No. 30], and also to dismiss Counts II and III under Rule 12(b)(6) for

failure to state a claim [Dkt. No. 32].  On June 14, 2019, following a complete adversarial

briefing and nearly two hours of extensive in-person oral argument on June 5, 2019 [Dkt. No.

54], the Court **granted** Defendants' motions in their entirety and **dismissed** the Complaint

without prejudice, in a fully-researched and thoroughly-reasoned fifteen-page ruling. [Dkt. No.

55].  Plaintiff has not yet filed an amended complaint.

### B.    Plaintiff's Written Discovery Requests

In light of the Court's ruling, counsel for Defendants requested that Plaintiff's attorneys

confirm that they and their client would withdraw various discovery requests to Mr. Trump[3]

pertaining to the subjects that the Court struck from her Complaint and prohibited from being

included in a future amended complaint.  Harder Decl., Ex. C.  Defendants further requested the

following:

> Please also let me know if Plaintiff will agree not to propound any further
> discovery, or ask deposition questions, on the subject matter of the
> aforementioned discovery items, and instead to limit discovery to the allegations
> by Ms. Johnson regarding her personal situation, and not the allegations of third
> parties.  As you know, we are planning to file a motion for protective order by
> July 10 to, among other things, limit the scope of discovery, and your stipulation
> to the foregoing would go a long way toward resolving the parties' discovery
> disputes to be addressed in that anticipated motion, and also be consistent with the
> Court's Order of last week.

*Id.*  But Plaintiff's counsel refused to so stipulate or even withdraw the offending requests,

thereby necessitating this motion.  *Id.*

---

[3] Specifically: Plaintiff's Request for Admission Nos. 8–10, 35–152, 163–169, 185–190, 197–205 and 210–212; Request for Production Nos. 10, 18, 22, 25–27, 32–35, 38–58 and 62; and Interrogatory Nos. 1 and 5.

C.      **Deposition of U.S. President Donald J. Trump**

Plaintiff unilaterally served a Notice of Deposition of Defendant Donald J. Trump,

purporting to specify a deposition date of July 10, 2019.  Harder Decl., Ex. D.  Defendants

categorically object to his deposition because, among other reasons, Mr. Trump is an extremely

high-ranking government official who lacks any unique first-hand knowledge related to this

litigation or other necessary information that cannot be obtained through other less burdensome

or intrusive means.  Trump Decl. ¶¶ 2–3, Harder Decl., Exs. E, F.

The Court directed Defendants to bring this motion "no later than July 10, 2019,

concerning [Mr. Trump's] participation in discovery."  Order on Case Management Report, June

17, 2019 [Dkt. No. 58] at 1; *see also* Transcript, June 5, 2019 [Dkt. No. 54] at 81:2–82:13,

83:24–84:2.

III.    **ARGUMENT**

A.      **Mr. Trump Need Not and Should Not Be Deposed In This Case**

1.      **Mr. Trump Is the Highest-Ranking Government Official in the Nation**

The sitting President of the United States is, by virtue of his or her extraordinary position,

certainly no "ordinary individual" while in office.  *United States v. Nixon*, 418 U.S. 683, 714

(1974) (quoting *United States v. Burr*, 25 F. Cas. 30 (1807)).  Rather, the Chief Executive

"occupies a unique office with powers and responsibilities so vast and important that the public

interest demands that he devote his undivided time and attention to his public duties."  *Clinton v.*

*Jones*, 520 U.S. 681, 697 (1997).  "Former Presidents, from George Washington to George Bush,

have consistently endorsed [this] characterization of the office," with which the United States

Supreme Court likewise has "no dispute."  *Id.* at 698.

"[T]he Presidency concentrates executive authority 'in a single head in whose choice the

8

whole Nation has a part, making him the focus of public hopes and expectations. In drama, magnitude and finality his decisions so far overshadow any others that almost alone he fills the public eye and ear.'" *Id.* (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 653 (1952) (Jackson, J., concurring)). "We have, in short, long recognized the 'unique position in the constitutional scheme' that this office occupies." *Id.* at 698–99 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982)).

> Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government. . . . [The] President must concern himself with matters likely to arouse the most intense feelings. Yet, as our decisions have recognized, it is in precisely such cases that there exists the greatest public interest in providing an official the maximum ability to deal fearlessly and impartially with the duties of his office. This concern is compelling where the officeholder must make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system. Nor can the sheer prominence of the President's office be ignored.

*Fitzgerald*, 457 U.S. at 751–53 (1982) (citations and quotations omitted). It is therefore of utmost importance to not "distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.* at 753.

### 2. *Clinton v. Jones*, 520 U.S. 681 (1997)

During the hearing on Defendants' motions to strike and dismiss, the Court asked, "Doesn't *Clinton v. Jones* also say that the President has to sit for a deposition?" Transcript,

June 5, 2019 [Dkt. No. 54] at 10:6–7.  The *Clinton* case was not concerned with depositions specifically or even discovery generally, but instead whether, if "a private citizen . . . seeks to recover damages from the current occupant of that office based on actions allegedly taken before his term began," federal courts should "defer such litigation until his term ends . . . ."  *Clinton*, 520 U.S. at 684; *accord*, *Jones*, 72 F.3d at 1558 ("the precise issue before us today [is] whether the President is entitled to immunity for the duration of his presidency when sued for his unofficial actions").  The Court held that courts are not required to stay all private actions against the President until he or she leaves office.

The Court emphasized that the acute importance of the President's duties (as discussed *supra*) must be taken into account in the management of such litigation.  "[T]he potential burdens on the President . . . are appropriate matters for the District Court to evaluate in its management of the case.  The high respect that is owed to the office of the Chief Executive, though not justifying a rule of categorical immunity, is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery."  *Clinton*, 520 U.S. at 707.

### 3.      Plaintiff Does Not Demonstrate Exceptional Circumstances

Despite the foregoing, and even in the face of undeniable evidence that Plaintiff's battery claim is unfounded and frivolous by virtue of the Video disproving Plaintiff's allegations, Plaintiff's counsel nonetheless insists that President Trump be personally deposed in this case, and unilaterally noticed his deposition for July 10, 2019.

"[T]o depose a high-ranking government official, a party must demonstrate **exceptional circumstances** justifying the deposition—for example, that the official has **unique first-hand knowledge** related to the litigated claims or that the **necessary information cannot be obtained through other, less burdensome or intrusive means**."  *Lederman v. New York City Dept. of*

*Parks*, 731 F.3d 199, 203 (2d Cir. 2013) (emphasis added) (affirming protective order barring

depositions of New York City mayor and former deputy mayor); *see also*, *e.g.*, *Bogan v. City of*

*Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (holding "Mayor Menino is a high ranking

government official and therefore is not subject to being deposed absent a demonstrated need");

*Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997) (holding "the superintendent of the

Chicago police is a busy official who should not be taken away from his work to spend hours or

days answering lawyers' questions unless there is a real need"); *Kyle Engineering Co. v. Kleppe*,

600 F.2d 226, 231–32 (9th Cir. 1979) (holding that "[h]eads of government agencies are not

normally subject to deposition, and the district court's order directing Kleppe to answer

interrogations in lieu of a deposition does not appear unreasonable") (citation omitted).

　　　Plaintiff comes nowhere close to demonstrating the exceptional sort of circumstances that

might justify taking the deposition of the President of the United States.  To the contrary, her

attempt to depose Mr. Trump in this case appears calculated to harass him, waste his valuable

time, and obtain responses that could serve as news fodder and further political attacks again him

(beyond the 84+ communications with media that Plaintiff, her counsel and Public Justice

engaged in within the first few days of filing the Complaint, including multiple national

television news interviews, a press release, numerous tweets, numerous Facebook posts, multiple

website posts, and an op-ed piece written by Plaintiff's counsel).  Harder Decl., Ex. T; *see also*

Order, June 14, 2019 [Dkt. No. 55] at 2 ("the Complaint presents a political lawsuit, not a tort

and wages lawsuit.  Plaintiff will receive a fair day in court, but the Court will try a tort and

wages dispute—not a political one.  If Plaintiff wishes to make a political statement or bring a

claim for political purposes, this is not the forum."); *see also* Transcript, June 5, 2019 [Dkt. No.

54] at 37:22–24 (Court to Plaintiff's counsel: "You know, let's don't pretend.  Okay?  This is all

about politics.  All right?  I've read your complaint.").

It is important to bear in mind that only one of Plaintiff' three counts, for battery, was alleged against the President personally.  *See* Complaint, Feb. 25, 2019 [Dkt. No. 1] ¶¶ 128–133. Plaintiff's other two causes of action were directed solely at the Campaign for unequal pay based on gender and race.  *See id.* ¶¶ 134–148.  Mr. Trump lacks any unique first-hand knowledge regarding any of Plaintiff's claims.  Trump Decl. ¶¶ 2–3; *accord*, Harder Decl., Ex. E, F.

Moreover, all three of Plaintiff's claims were dismissed pursuant to the Court's order. Order, June 14, 2019 [Dkt. No. 55].  It remains unclear which, if any, of Plaintiff's claims she will refile.  Mr. Trump's counsel has placed Plaintiff and her counsel on notice that, should she re-file her battery claim, Rule 11 sanctions proceedings would be commenced.  Harder Decl., Ex. U.

### B.  Alternatively, Any Deposition of Mr. Trump Would Necessitate Strict Limits

If and only if the Court first concludes that Plaintiff has met her heavy burden of demonstrating the necessary exceptional circumstances required to justify a live deposition of President Trump pursuant to the aforementioned legal authorities, and despite the frivolity of Plaintiff's battery claim and Mr. Trump's lack of discoverable knowledge, then reasonable limitations would need to be imposed by Court order.  These include limitations on the subject matters of questioning, limited timing, and a location that accounts for the President's concerns and also the logistics and expense related to U.S. Secret Service protection, among other issues.

> What is needed . . . is . . . judicial case management sensitive to the burdens of the
> presidency and the demands of the President's schedule.  The trial court has broad
> discretion to control the scheduling of events in matters on its docket.  We have
> every confidence that the District Court will exercise its discretion in such a way
> that this lawsuit may move forward with the reasonable dispatch that is desirable

in all cases, without creating scheduling conflicts that would thwart the President's performance of his official duties.

*Jones*, 72 F.3d at 1361.

"Although scheduling problems may arise, there is no reason to assume that the district courts will be either unable to accommodate the President's needs or unfaithful to the tradition— especially in matters involving national security—of giving 'the utmost deference to Presidential responsibilities.'" *Id.* at 709 (quoting *United States v. Nixon*, 418 U.S. at 710); *see also id.* at 702 ("the case at hand, if properly managed by the District Court, . . . appears to us highly unlikely to occupy any substantial amount of petitioner's time").

Specifically (and without limitation), should the Court order a deposition of Mr. Trump, Defendants request that it be taken by written questions, or alternatively that Mr. Trump's responses to Plaintiff's interrogatories propounded to him suffice. Alternatively, Defendants would request that any live deposition of Mr. Trump:

- last no longer than one hour total;

- take place over telephone or videoconference rather than in person;

- be transcribed only and not recorded via audio or video means; and

- be strictly limited in scope of questioning.

**C.    Court Intervention Is Needed to Protect Defendants from Burdensome and Harassing Written Discovery Requests Regarding Irrelevant Issues**

"This is a very simple battery and wages case and the Court will treat it as such." (Order, June 25, 2019 [Dkt. No. 65] at 1). Notwithstanding the simplicity of this case, Plaintiff, her attorneys and advocacy organization, which also is counsel of record, have exercised little or no restraint in unleashing an abusive deluge of written discovery on Defendants, which has included

13

so far:

- 213 Requests for Admission to Mr. Trump;

- 100 Requests for Admission to the Campaign;

- 62 Document Requests to Mr. Trump;

- 59 Document Requests to the Campaign;

- 6 Interrogatories to Mr. Trump; and

- 18 Interrogatories to the Campaign;

Harder Decl., Exs. G–M.

The vast majority of Plaintiff's discovery does not touch on matters legitimately at issue in this litigation, and was not proper even prior to the Court's ruling on Defendants' motions to dismiss and strike [Dkt. No. 55].  The discovery is patently unreasonable, unduly burdensome and intended primarily to harass, cause unnecessary delay, or needlessly increase the cost of litigation.  Fed. R. Civ. P. 11, 37(c)(1).  Among other things, the improper and abusive written discovery requests cover such wholly irrelevant topics as:

- the "19 unrelated incidents involving women upon whom Defendant Trump allegedly committed nonconsensual acts, over the past four decades with differing circumstances" (*see e.g.* RFAs to Mr. Trump Nos. 8–10, 35–152, 185–190, RFPs to Mr. Trump Nos. 10, 18, 22, 25–27, 32–35, 38–58, 62, Interrogatories to Mr. Trump Nos. 1, 5, RFPs to Campaign No. 41, Interrogatories to Campaign Nos. 10–15), which are irrelevant and inadmissible (Order, June 14, 2019 [Dkt. No. 55] at 3);

- confidential nondisclosure agreements between Mr. Trump, the Campaign or any Trump Entity and **any and all third persons** (*see e.g.* RFAs to Mr. Trump Nos. 165–196, RFPs to Campaign Nos. 25–29);

14

- the Miss USA and Miss Teen USA pageants (*see e.g.* RFAs to Mr. Trump Nos. 49–51, 201, RFPs to Mr. Trump Nos. 51, 53–54);

- *The Howard Stern Show* (*see e.g.* RFAs to Mr. Trump Nos. 47–48, 200);

- television programs such as *Apprentice*, *Celebrity Apprentice* and *Access Hollywood* (*see e.g.* RFAs to Mr. Trump Nos. 10, RFPs to Mr. Trump No. 17, RFPs to Campaign No. 47, 57);

- "comments to women other than Alva Johnson regarding their physical appearance" (*see e.g.* RFAs to Mr. Trump No. 8);

- numerous unrelated and inadmissible Twitter posts (Tweets) made by Mr. Trump (*see e.g.*  RFAs to Mr. Trump Nos. 89, 93, 101, 132–137, 160, 206–209, 213);

- "all manner of sexual conduct, including kissing" in which Mr. Trump has engaged (*see e.g.* RFAs to Mr. Trump Nos. 133, 135, 137, 139, 141, 143, 145, 148, 150–152, 165–169, RFPs to Mr. Trump Nos. 10, 18, 22, 25–27, 32–33, 38–39, 62, Interrogatories to Mr. Trump Nos. 1, 5, RFPs to Campaign No. 11);

- racial slurs, tropes, and other racially offensive language (*see e.g.* RFPs to Mr. Trump Nos. 17, 28, RFPs to Campaign Nos. 39, 40); and

- any document from any source at any point in time ever containing the word "n*gger," "bitch," "slut," "whore," "f*ck," "whites," "harassment," "sexual predator," "sexual misconduct," "discriminate," "discrimination" or "discriminating" (*see e.g.* RFPs to Campaign Nos. 42–46, 48–52).

Similarly, by way of illustration, Plaintiff is demanding personal and confidential data regarding all "Potential Collective Members," *i.e.*, every last paid female employee of the Campaign for a period of several years (*see e.g.* RFPs to Campaign No. 6)—without regard to

the ongoing absence of a collective action certification.  *See* Order, June 14, 2019 [Dkt. No. 55] at 14–15.

Plaintiff even seeks to discover the protected work product of Defendants' attorneys by demanding that they surrender extensive details about each person interviewed in the course of their investigation of the allegations contained in Plaintiff's Complaint (*see e.g.* Interrogatories to Mr. Trump No. 6, Interrogatories to Campaign No. 6), which is prohibited.  *See Upjohn Co. v. United States*, 449 U.S. 383, 399–400 (1981); *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)).

Defendants therefore request that the protective order to be issued by the Court limit the scope of Plaintiff's discovery in this case to the subjects of:  Ms. Johnson; her work for the Campaign; her actions after working for the Campaign; a comparison on Plaintiff's title, responsibilities and salary with male and white Campaign employees with the same or substantially similar titles and responsibilities in the same geographic area during the same time period.  Defendants further request that the Court issue a protective order against Plaintiff's extensive, irrelevant, oppressive and unduly burdensome written discovery, including but not limited to the following:

- Written Discovery to Mr. Trump:

    o Document Demand Nos. 10, 17–18, 22, 25–28, 32–35, 38–58 and 62.

    o Interrogatory Nos. 1 and 5.

    o Request for Admission Nos. 8–10 and 35–213.

- Written Discovery to the Campaign:

    o Document Demand Nos. 6, 11, 25–29, 39–52 and 57.

    o Interrogatory Nos. 3, 6 and 10–15.

      o   Request for Admission Nos. 93–95.

Unfortunately, such a protective order is necessary because of Plaintiff's multiple and repeated abuses of discovery, and refusal to withdraw such discovery following Defendants' good faith efforts during the meet and confer process.

## IV.    <u>CONCLUSION</u>

Plaintiff's unbridled abuse of the discovery process, even while she knows full well that her battery claim is frivolous, warrants an appropriate protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure (1) preventing Mr. Trump from being deposed in this action and (2) protecting Defendants from Plaintiff's extensive, irrelevant, oppressive and unduly burdensome written discovery requests.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), counsel for Mr. Trump and the Campaign has conferred with counsel for Plaintiff, who opposes all other relief requested herein.

Dated this 10th day of July, 2019       Respectfully Submitted,

                                   */s/ Charles J. Harder*

                                   Charles J. Harder
                                   Trial Counsel
                                   CHarder@HarderLLP.com
                                   Admitted *Pro Hac Vice*
                                   HARDER LLP
                                   132 S. Rodeo Drive, Fourth Floor
                                   Beverly Hills, California  90212
                                   Telephone:  (424) 203-1600
                                   Facsimile:  (424) 203-1601

                                   Dawn Siler-Nixon
                                   Florida Bar No. 993360
                                   DSiler-Nixon@FordHarrison.com

Tracey K. Jaensch
Florida Bar No. 907057
TJaensch@FordHarrison.com
FORD**HARRISON** LLP
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile:  (813) 261-7899

Attorneys for Defendants
Donald J. Trump and
Donald J. Trump for President, Inc.

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 10, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of All Others
Similarly Situated,**

       **Plaintiff,**             **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,
In his Individual Capacity and
DONALD J. TRUMP FOR
PRESIDENT, INC.**

       **Defendants.**

_____/

### DECLARATION OF DONALD J. TRUMP IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

1.    I, Donald J. Trump, am the 45th President of the United States and a defendant herein. I have personal and firsthand knowledge of the matters set forth in this declaration.

2.    I do not know plaintiff Alva Johnson or recall having any interactions with her.

3.    At all times relevant hereto, Donald J. Trump for President, Inc. was responsible for setting the specific salaries of its various employees. I was not.

/ / /

[*Page 2 of Declaration in* Johnson v. Trump, *et al.*]

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of July, 2019, at Washington, D.C.

DONALD J. TRUMP

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 10, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

<div align="center">

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

</div>

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

      **Plaintiff,**                        **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

      **Defendants.**

_____/

<div align="center">

**<u>DECLARATION OF BRIAN HAYES</u>**

</div>

1.      I participated in the 2016 United States presidential election campaign as a volunteer for Donald J. Trump for President.  I have personal and firsthand knowledge of the matters set forth in this declaration and, if called and sworn as a witness, I could and would testify competently thereto under oath.

2.      I was present in the recreational vehicle when Alva Johnson encountered Donald Trump during a campaign event on August 24, 2016 in Tampa, Florida.

3.      Using the video camera function on my personal mobile telephone, I recorded their brief interaction.

4.      Attached hereto as Exhibit A is a true and correct copy of my audiovisual recording of that encounter, which has not been edited or otherwise altered in any way.

<div align="center">

1

</div>

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 day of July, 2019, at Orlando, Florida.

BRIAN HAYES

2

# Exhibit A
# Manually Filed

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

19

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

   **Plaintiff,**        **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

   **Defendants.**

_____/

**DECLARATION OF CHARLES J. HARDER IN SUPPORT**
**OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

  1.  I am an attorney at law duly admitted *pro hac vice* to practice before this Court

and am a partner with the law firm of Harder LLP, attorneys for defendants Donald J. Trump

("Mr. Trump") and Donald J. Trump for President, Inc. (the "Campaign") (collectively,

"Defendants") herein.  I have personal and firsthand knowledge of the matters set forth in this

declaration and, if called and sworn as a witness, I could and would testify competently thereto

under oath.

  2.  Attached hereto as **Exhibit B** are true and correct copies of excerpts from the

transcript of the deposition of Alva Johnson, which I conducted on July 8, 2019 in Washington,

D.C.

  3.  Attached hereto as **Exhibit C** is a true and correct copy of an email exchange

between Defendants' counsel and Plaintiff's counsel from June 18 through 19, 2019 regarding

1

Plaintiff's discovery requests.

4.      Attached hereto as **Exhibit D** is a true and correct copy of Plaintiff's Notice of

Deposition of Defendant Donald J. Trump, which Plaintiff's counsel unilaterally served and

which specifies a deposition date of July 10, 2019.

5.      Attached hereto as **Exhibit E** is a true and correct copy of excerpts from

Mr. Trump's responses to Plaintiff's Interrogatories.

6.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from

Mr. Trump's responses to Plaintiff's Requests for Admission.

7.      Attached hereto as **Exhibit G** is a true and correct copy of Plaintiff's First

Requests for Production of Documents to Defendant Donald J. Trump for President, Inc.

8.      Attached hereto as **Exhibit H** is a true and correct copy of Plaintiff's Second

Requests for Production of Documents to Defendant Donald J. Trump for President, Inc.

9.      Attached hereto as **Exhibit I** is a true and correct copy of Plaintiff's First

Requests for Production of Documents to Defendant Donald J. Trump.

10.     Attached hereto as **Exhibit J** is a true and correct copy of Plaintiff's First Set of

Interrogatories to Defendant Donald J. Trump for President, Inc.

11.     Attached hereto as **Exhibit K** is a true and correct copy of Plaintiff's First Set of

Interrogatories to Defendant Donald J. Trump.

12.     Attached hereto as **Exhibit L** is a true and correct copy of Plaintiff's First Set of

Requests for Admission to Defendant Donald J. Trump for President, Inc.

13.     Attached hereto as **Exhibit M** is a true and correct copy of Plaintiff's First Set of

Requests for Admission to Defendant Donald J. Trump.

14.     Attached hereto as **Exhibit N** is a true and correct copy of Plaintiff's Responses and Objections to Defendant Donald J. Trump for President, Inc.'s Second Set of Interrogatories to Plaintiff.

15.     Attached hereto as **Exhibit O** is an excerpt of Brian Hayes' audiovisual recording of the August 24, 2016 encounter between Plaintiff and Mr. Trump, which has been digitally slowed down to 25% of 100% speed.

16.     Attached hereto as **Exhibit P** is a redacted copy of an email message produced by Plaintiff during discovery in this action as P004862.  It has been edited to obscure Plaintiff's email address.

17.     Attached hereto as **Exhibit Q** is a true and correct copy of an email message produced by Plaintiff during discovery in this action as P004928–P004930.  Although initially designated as "Confidential" pursuant to the parties' stipulation and protective order [Dkt. Nos. 61, 61-1 and 62], Plaintiff's counsel subsequently withdrew that designation in an email message dated July 5, 2019, a true and correct copy of which is attached hereto as **Exhibit R**.

18.     Attached hereto as **Exhibit S** are true and correct copies of public records reflecting political campaign contributions by several of Plaintiff's attorneys in this case.

19.     Attached hereto as **Exhibit T** is a chart compiled by my then-associate, Theodore Nguyen.  Working at my direction and under my supervision, he searched the Internet for media interviews, posts and articles by Plaintiff and her counsel, and then recorded them in the attached chart.

20.     Attached hereto as **Exhibit U** is a true and correct copy of a letter from me to Plaintiff's counsel dated July 10, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of July, 2019, at Los Angeles, California.


_/s/ Charles J. Harder_____
CHARLES J. HARDER

# EXHIBIT B

```
1              UNITED STATES DISTRICT COURT

2               MIDDLE DISTRICT OF FLORIDA

3                    TAMPA DIVISION

4    ALVA JOHNSON, Individually    :

5    and On Behalf of All Others   :

6    Similarly Situated,           :

7                    Plaintiff, :

8       v.                        : Case No.

9    DONALD J. TRUMP, In his       : 8:19-cv-00475-WFJ-SPF

10   Individual Capacity and DONALD :

11   J. TRUMP FOR PRESIDENT, INC.   : CONTAINS CONFIDENTIAL

12                  Defendants.: INFORMATION

13                  -----------

14        Videotaped Deposition of ALVA JOHNSON

15                  Washington, DC

16              Monday, July 8, 2019

17                   10:30 a.m.

18

19

20

21

22

23   Job No.:  251565

24   Pages:  1 - 366

25   Reported By:  Dawn M. Hart, RPR/RMR/CRR
```

1      Videotaped deposition of Alva Johnson, held at

2   the law offices of:

3

4           FORD & HARRISON, LLP

5           1300 19th Street, Northwest

6           Suite 620

7           Washington, DC 20036

8           (202) 719-2000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          Pursuant to Notice, before Dawn M. Hart,

24   RPR/RMR/CRR and Notary Public in and for the District

25   of Columbia.

CONTAINS CONFIDENTIAL INFORMATION
Transcript of Alva Johnson
Conducted on July 8, 2019                                    3

```
 1            A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFF:

 3        HASSAN A. ZAVAREEI, ESQUIRE

 4        KATHERINE M. AIZPURU, ESQUIRE

 5        TYCKO & ZAVAREEI LLP

 6        1828 L Street, Northwest

 7        Suite 1000

 8        Washington, DC 20036

 9        (202) 973-0900

10

11        JENNIFER BENNETT, ESQUIRE

12        Public Justice

13        475 14th Street

14        Suite 610

15        Oakland, California 94612

16        (510) 622-8213

17

18

19

20

21

22

23

24

25
```

```
 1          A P P E A R A N C E S (Continued)

 2   ON BEHALF OF THE DEFENDANTS:

 3        CHARLES J. HARDER, ESQUIRE

 4        HARDER LLP

 5        132 S. Rodeo Drive, Fourth Floor

 6        Beverly Hills, California 90212

 7        (424) 203-1600

 8

 9        DAWN SILER-NIXON, ESQUIRE

10        FORD HARRISON

11        101 East Kennedy Boulevard

12        Suite 900

13        Tampa, Florida 33602

14        (813) 261-7818

15

16

17

18

19   ALSO PRESENT:  Dustin Thomason, Videographer

20

21

22

23

24

25
```

| 1 | | 13:34:50 |
| 2 | | 13:34:54 |
| 3 | | 13:34:55 |
| 4 | | 13:34:56 |
| 5 | | 13:35:01 |
| 6 | | 13:35:04 |
| 7 | | 13:35:07 |
| 8 | | 13:35:10 |
| 9 | Q    So the video that I played for you earlier | 13:35:13 |
| 10 | that you've watched several times now, that's a | 13:35:15 |
| 11 | depiction of what happened inside of the RV between | 13:35:19 |
| 12 | you and Mr. Trump? | 13:35:21 |
| 13 | A    That was the day, yes. | 13:35:23 |
| 14 | Q    And that's what happened? | 13:35:24 |
| 15 | A    That is what -- that is what happened. | 13:35:26 |
| 16 | | 13:35:29 |
| 17 | | 13:35:32 |
| 18 | | 13:35:36 |
| 19 | | 13:35:40 |
| 20 | | 13:35:41 |
| 21 | | 13:35:44 |
| 22 | | 13:35:47 |
| 23 | | 13:35:48 |
| 24 | | 13:35:50 |
| 25 | | 13:35:51 |

CONTAINS CONFIDENTIAL INFORMATION
Transcript of Alva Johnson
Conducted on July 8, 2019                          102

| | | |
|---|---|---|
| 1 | | 13:46:58 |
| 2 | | 13:47:00 |
| 3 | | 13:47:01 |
| 4 | | 13:47:06 |
| 5 | | 13:47:08 |
| 6 | | 13:47:15 |
| 7 | | 13:47:16 |
| 8 | | 13:47:18 |
| 9 | | 13:47:19 |
| 10 | | 13:47:21 |
| 11 | | 13:47:21 |
| 12 | | 13:47:23 |
| 13 | | 13:47:24 |
| 14 | | 13:47:24 |
| 15 | | 13:47:25 |
| 16 | | 13:47:26 |
| 17 | | 13:47:26 |
| 18 | | 13:47:27 |
| 19 | | 13:47:29 |
| 20 | Q    So let's -- let's watch it again.   There's a | 13:47:29 |
| 21 | kiss, and then you say -- you repeat "eight months for | 13:47:32 |
| 22 | you; we're going to get you in the White House; I'll | 13:47:35 |
| 23 | see you in February." | 13:47:37 |
| 24 | A    Okay. | 13:47:39 |
| 25 | (Video played.) | 13:47:40 |

CONTAINS CONFIDENTIAL INFORMATION
Transcript of Alva Johnson
Conducted on July 8, 2019                                        103

1        Q     Those were your words?                          13:47:46

2        A     Sounds like my voice.                           13:47:47

3        Q     So you said them?                               13:47:49

4        A     Yes, it sounds like my voice.                   13:47:51

5                                                               13:48:17

6                                                               13:48:19

7                                                               13:48:20

8                                                               13:48:21

9                                                               13:48:29

10                                                              13:48:33

11                                                              13:48:37

12                                                              13:48:40

13                                                              13:48:46

14                                                              13:48:50

15                                                              13:48:56

16                                                              13:49:02

17                                                              13:49:07

18                                                              13:49:12

19                                                              13:49:17

20                                                              13:49:19

21                                                              13:49:23

22                                                              13:49:27

23                                                              13:49:31

24                                                              13:49:35

25                                                              13:49:39

CONTAINS CONFIDENTIAL INFORMATION
Transcript of Alva Johnson
Conducted on July 8, 2019                                    366

```
 1          CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

 2          I, Dawn M. Hart, the officer before whom the

 3     foregoing deposition was taken, do hereby certify that

 4     the foregoing transcript is a true and

 5     correct record of the testimony given; that said

 6     testimony was taken by me stenographically and

 7     thereafter reduced to typewriting under my direction;

 8     that reading and signing was requested; and that I am

 9     neither counsel for, related to, nor employed by any

10     of the parties to this case and have no interest,

11     financial or otherwise, in its outcome.

12          IN WITNESS WHEREOF, I have hereunto set my

13     hand and affixed my notarial seal this 10th day

14     of July, 2019.

15     My commission expires:

16     July 14, 2020

17

18     _____

19     NOTARY IN AND FOR THE

20     DISTRICT OF COLUMBIA

21

22

23

24

25
```

# EXHIBIT C

| | |
|---|---|
| **From:** | Hassan Zavareei <hzavareei@tzlegal.com> |
| **Sent:** | Wednesday, June 19, 2019 12:31 PM |
| **To:** | Charles Harder; Katherine Aizpuru |
| **Cc:** | Ryan Stonerock; Henry Self; Steven Frackman; Dawn Siler-Nixon; Tracey Jaensch; Janet Varnell; bwarwick@varnellandwarwick.com; Tanya S. Koshy; Jennifer Bennett; PBLAND@publicjustice.net; Karla Gilbride; Nicole Porzenheim; Melat Kiros |
| **Subject:** | RE: Johnson v. Donald J. Trump for President, et al. |
| **Attachments:** | 2019.06.19 Redline of ESI protocol.docx |

Charles,

Because of the upcoming deposition of Ms. Johnson, we are not comfortable with a third extension. Just as defendants want to ensure they have all the necessary documents from Ms. Johnson before her deposition, we want to ensure we have all of the documents from the Defendants.

More to the point, I think we need to finalize the ESI Protocol, agree on custodians, agree on search terms, and complete our ESI searches as soon as possible. Otherwise I do not see how we can ensure that the productions are complete before the depositions begin. It is for this reason that we are not rushing into depositions.

To that end, I have attached a redline of the ESI protocol. I accepted all of your edits and put my revisions (which are mostly reinsertions of certain provisions you deleted) in redline. You will see that we cannot agree to the changes you propose that serve to merely kick the can down the road. We think these issues should be resolved now so that we can have certainty and get to work. I ask for a call to try to work this out today or tomorrow.

With respect to your request for a stipulation, I see no need for that. If you believe your discovery obligations have been modified by the Court's order, please just lodge objections to the applicable discovery requests. If we disagree with you, we will meet and confer. If we cannot agree we will file a motion to compel. That is how these issues are supposed to be resolved and we do note believe it is appropriate to deviate from that process here.

Thanks,

Hassan

_____



Hassan Zavareei  ◾  Tycko & Zavareei llp  ◾  www.tzlegal.com
1828 L Street, NW  ◾  Suite 1000  ◾  Washington, DC 20036
p 202.973.0910 (direct)  ◾  f 202.973.0950

This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information.  If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way.  If you have received this message by mistake, please call us immediately and destroy the email message.

**From:** Charles Harder <charder@harderllp.com>
**Sent:** Tuesday, June 18, 2019 7:05 PM
**To:** Hassan Zavareei <hzavareei@tzlegal.com>; Katherine Aizpuru <kaizpuru@tzlegal.com>
**Cc:** Ryan Stonerock <RStonerock@harderllp.com>; Henry Self <hself@harderllp.com>; Steven Frackman <sfrackman@harderllp.com>; Dawn Siler-Nixon <DSiler-Nixon@fordharrison.com>; Tracey Jaensch <TJAENSCH@fordharrison.com>; Janet Varnell <jvarnell@varnellandwarwick.com>; bwarwick@varnellandwarwick.com;

Tanya S. Koshy <tkoshy@tzlegal.com>; Jennifer Bennett <JBennett@publicjustice.net>; PBLAND@publicjustice.net; Karla Gilbride <KGilbride@publicjustice.net>; Nicole Porzenheim <nporzenheim@tzlegal.com>; Melat Kiros <mkiros@tzlegal.com>
**Subject:** RE: Johnson v. Donald J. Trump for President, et al.

Dear Mr. Zavareei:

The Court's order of last Friday has required us to make changes to our objections and draft responses to Plaintiff's voluminous written discovery.  Moreover, our client reps. are occupied with the official launch of the re-election campaign in Orlando today.  Therefore, I am writing to request an additional 7 days to provide you with responses to Set One of all written discovery propounded to both defendants.  Please let me know if this additional extension is acceptable.

Also, in light of the Court's order last week, please let me know if Plaintiff will withdraw the following discovery items, which pertain to the subjects that the Court struck from the Complaint and prohibited from being included in a future amended complaint:

RFAs:  8-10, 35-152, 163-169, 185-190, 197-205, 210-212

RPDs:  10, 18, 22, 25-27, 32-35, 38-58, 62

ROGs:  1, 5

Please also let me know if Plaintiff will agree not to propound any further discovery, or ask deposition questions, on the subject matter of the aforementioned discovery items, and instead to limit discovery to the allegations by Ms. Johnson regarding her personal situation, and not the allegations of third parties.  As you know, we are planning to file a motion for protective order by July 10 to, among other things, limit the scope of discovery, and your stipulation to the foregoing would go a long way toward resolving the parties' discovery disputes to be addressed in that anticipated motion, and also be consistent with the Court's Order of last week.  Should you wish to discuss the specific parameters of such a stipulation, we can be available for a conference call later this week.

Sincerely,

Charles Harder



**CHARLES J. HARDER**

HARDER LLP
132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS CA 90212
TEL (424) 203-1600
CHARDER@HARDERLLP.COM
www.HARDERLLP.COM

Confidentiality Notice: The information contained in this email and any attachments to it is intended only for the use of the intended recipient and may be confidential and/or privileged.  If any recipient of this communication is not the intended recipient, the unauthorized use, disclosure or copying of this email and any accompanying attachments or other information contained herein is strictly prohibited, and may be unlawful.  If you have received this communication

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)**

| | |
|---|---|
| **ALVA JOHNSON,** *Individually and On Behalf of All Others Similarly Situated,* | |
| Plaintiff, | **CASE NO. 8:19-cv-00475-WFJ-SPF** |
| vs. | |
| **DONALD J. TRUMP,** *In his Individual Capacity* and **DONALD J. TRUMP FOR PRESIDENT, INC.,** | |
| Defendants. | |

**PLAINTIFF'S NOTICE OF DEPOSITION OF
DEFENDANT DONALD J. TRUMP**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiff Alva Johnson, by and through her undersigned attorneys, will take the deposition upon oral examination under oath of Defendant Donald J. Trump on July 10, 2019, beginning at 9:00 a.m. The deposition shall be held at the Law Offices of Tycko and Zavareei, LLP, 1828 L Street NW, Suite 1000, Washington, DC 20036, before an officer authorized by law to administer oaths for use at the trial in this case.

PLEASE TAKE FURTHER NOTICE that the deposition, if not completed on the date specified, will continue day to day, excluding Sundays and holidays, until completed, at the same location, or at such time and place as may be mutually agreed upon by the parties' counsel.

PLEASE TAKE FURTHER NOTICE that the deposition will be recorded stenographically, will be videotaped, and may be recorded through the instant visual display of testimony using LiveNote or a similar software.

DATED: May 10, 2019.                    Respectfully submitted,

/s/ Hassan A. Zavareei
Hassan A. Zavareei (*pro hac vice* forthcoming)
Trial Counsel
Katherine M. Aizpuru (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
P: (202) 417-3667
F: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
**VARNELL & WARWICK, PA**
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice* forthcoming)
Karla Gilbride (*pro hac vice* forthcoming)
**PUBLIC JUSTICE, P.C.**
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice* forthcoming)
**PUBLIC JUSTICE, P.C.**
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff Alva Johnson*

3

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 10, 2019, the foregoing document was served, with

the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

      **Plaintiff,**                        **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

      **Defendants.**

_____/

## DEFENDANT DONALD J. TRUMP'S OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

      Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Donald J. Trump

("Mr. Trump" or "Defendant"), submits his Objections and Responses to plaintiff, Alva

Johnson's ("Plaintiff") First Set of Interrogatories, as follows:

### PRELIMINARY STATEMENT

      The following Responses, and each of them, are based upon information and documents

presently available to and located by Defendant and his attorneys.  Defendant has no personal

recollection of any interactions with Plaintiff inside the RV in Tampa, Florida on August 24,

2016 or in Birmingham, Alabama on November 21, 2015.  Accordingly, any Responses relating

to those matters are based upon information available to Defendant's attorneys through

reasonable inquiry.

      The following Responses, and each of them, are made without prejudice to Defendant's

**2. Describe in detail what you allege occurred when you visited a Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016, starting from when you entered the RV through the point at which you exited the RV.**

**OBJECTIONS:**   Defendant objects to this Interrogatory on the grounds it seeks production of information that is protected by the attorney-client privilege, work product immunity, common interest doctrine, and/or any other applicable privilege or immunity.   Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous, including as to the terms "[d]escribe in detail" and "what you allege occurred when you visited a Campaign recreational vehicle."

**RESPONSE:**   Subject to and without waiving the foregoing general and specific objections, and to the extent Defendant reasonably understands this Interrogatory, Defendant responds as follows:

Defendant has no personal recollection of what occurred inside the RV in Tampa, Florida on August 24, 2016, but denies that he forcibly kissed Plaintiff, kissed her mouth or "grasped" her hand, as alleged in the Complaint.   Any and all interactions between Plaintiff and Defendant, at all times, were professional and considerate.

Investigation and discovery are ongoing and Defendant reserves the right to amend and/or supplement the response to this Interrogatory.


**3. WITHDRAWN BY PLAINTIFF**


**4. Identify every person with whom you have discussed Alva Johnson and state the date, time, location, and substance of the conversation.**

**OBJECTIONS:**   Defendant objects to this Interrogatory on the grounds it seeks production of information that is protected by the attorney-client privilege, work product immunity, common interest doctrine, and/or any other applicable privilege or immunity.   *See Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981); *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir.

including with regard to the information sought by this Interrogatory.

      **RESPONSE**:  Based on the foregoing objections, Defendant does not respond to this

Interrogatory.

Dated this 20th day of June, 2019

                    */s/ Charles J. Harder*
                    Charles J. Harder
                    Trial Counsel
                    CHarder@HarderLLP.com
                    Admitted *Pro Hac Vice*
                    HARDER LLP
                    132 S. Rodeo Drive, Fourth Floor
                    Beverly Hills, California 90212
                    Telephone:  (424) 203-1600
                    Facsimile:  (424) 203-1601

                    Dawn Siler-Nixon
                    Florida Bar No. 993360
                    DSiler-Nixon@FordHarrison.com
                    Tracey K. Jaensch
                    Florida Bar No. 907057
                    TJaensch@FordHarrison.com
                    FORD**HARRISON** LLP
                    101 E. Kennedy Blvd., Suite 900
                    Tampa, Florida 33602
                    Telephone: (813) 261-7800
                    Facsimile:  (813) 261-7899

                    Attorneys for Defendants
                    Donald J. Trump and
                    Donald J. Trump for President, Inc.

## <u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 20, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

# EXHIBIT F

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

       **Plaintiff,**                        **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

       **Defendants.**

_____/

### DEFENDANT DONALD J. TRUMP'S OBJECTIONS AND RESPONSES
### TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, defendant Donald J. Trump ("Mr. Trump" or "Defendant"), submits his Objections and Responses to plaintiff, Alva Johnson's ("Plaintiff") First Set of Requests for Admission, as follows:

### PRELIMINARY STATEMENT

      The following Responses, and each of them, are based upon information and documents presently available to and located by Defendant and his attorneys.  Defendant has no personal recollection of any interactions with Plaintiff inside the RV in Tampa, Florida on August 24, 2016 or in Birmingham, Alabama on November 21, 2015.  Accordingly, any Responses relating to those matters are based upon information available to Defendant's attorneys through reasonable inquiry.

      Defendant has not completed an investigation of the facts or discovery proceedings in

                                     

related to Defendant and/or any third-party, deemed to be valuable, confidential or sensitive by Defendant. Defendants will be filing a Motion for Protective Order regarding the improper discovery sought by Plaintiff in this action and to properly limit the scope of discovery, including with regard to the information sought by this Request.

**RESPONSE**: Based on the foregoing objections, Defendant does not respond to this Request.

Dated this 20th day of June, 2019

/s/ *Charles J. Harder*
Charles J. Harder
Trial Counsel
CHarder@HarderLLP.com
Admitted *Pro Hac Vice*
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
Facsimile: (424) 203-1601

Dawn Siler-Nixon
Florida Bar No. 993360
DSiler-Nixon@FordHarrison.com
Tracey K. Jaensch
Florida Bar No. 907057
TJaensch@FordHarrison.com
FORD**HARRISON** LLP
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

Attorneys for Defendants
Donald J. Trump and
Donald J. Trump for President, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 20, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

_/s/ Charles J. Harder_____
Attorney

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

**Plaintiff,**

**v.**

**Case No. 8:19-cv-00475-WFJ-SPF**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

**Defendant.**

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Alva Johnson hereby requests that Defendant Donald J. Trump for President, Inc. ("Campaign") produce the documents and tangible things described below for inspection and copying, within thirty (30) days, at the office of Tycko & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, D.C. 20036.

## I.     DEFINITIONS

1.     "Document" and "Documents" ("Document(s)") should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith. "Document(s)" includes all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in Defendant's

possession, custody or control or known to Defendant regardless of physical location.
"Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or
literal substance, including papers, correspondence, records, tables, charts, analysis, graphs,
schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books,
letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books,
periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes,
contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers,
notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer
printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire
recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages, transcripts,
offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries,
calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape,
instant messages, text messages, messages sent through any encrypted application (including, but not
limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the
manner in which produced.

2.      ""And" means "or" and "or" means "and," as necessary to call for the broadest
possible construction and to bring within the scope of this request any information that may
otherwise be construed to be outside its scope.

3.      "Communication(s)" means  the transmission, sending, or receipt of information of
any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or
between two or more persons by or through any means including, but not limited to, speech,
writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but
not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape,

photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-
ROM discs, other removable or transportable media, sound, radio, or video signals,
telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm,
microfiche, photographic film of all type, or other media of any kind.

4.      As used herein, the words "relate to," "refer to," "with respect to," "reflect,"
"regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing,
consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any
way, or having any logical or factual connection with the subject matter identified in a discovery
request.

5.      The term "individual" or "person" as used herein, shall include without limitation
any individual, natural person, and entity of every type and description, including (without
limitation) any firm, partnership, association, joint venture, public or private corporation,
proprietorship, government entity, organization, other business enterprise, group of natural persons,
or other entity that has a separate legal existence.

6.      Words in the singular include the plural, and vice versa. The past tense includes the
present tense when the clear meaning is not distorted by the change of tense.

7.      The term "each" as used herein shall be construed to mean "all" and the term "all"
as used herein shall be construed to mean "each" when necessary to bring within the scope of the
discovery request all responses that might otherwise be construed to be outside of its scope.

8.       "You" "Campaign" or "Your" shall mean Donald J. Trump for President, Inc., its
subsidiaries, affiliated companies, parent companies, predecessor companies, successor companies,
officers, directors, employees, agents, representatives, and all persons acting or purporting to act on

their behalf. In accordance with Local Rule 26(a), this definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

9.       "Plaintiff" shall mean Plaintiff Alva Johnson.

10.      "Legal Proceeding" means any dispute resolution proceeding, whether in court, arbitration, an administrative agency, or any other forum.

11.       "Non-disclosure Agreement" or "NDA" means any contract or agreement between, on the one hand, the Campaign and, on the other hand, any other person, which prohibits (or contains any provision prohibiting) signatories from disclosing information about Donald J. Trump's personal life, political affairs, and/or business affairs; disclosing communications with You or Donald J. Trump or or any Trump Entity; or disparaging You, Donald J. Trump, members of his family or any Trump Entity. NDAs also include any agreement that contain a nondisclosure or nondisparagement provision as described in the previous sentence, even if it also includes other provisions.

12.      "Sexual Behavior" has the normal colloquial meaning, and shall include all manner of sexual conduct, including kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal intercourse, contact with any private parts (including genitalia, breasts, and buttocks), and sexual banter and joking, whether consensual or non-consensual.

13.      "Staff" includes current and former employees, independent contractors, consultants, interns, and any other individuals receiving or who received compensation in exchange for services.

14.      "Trump Entity" means any entity, partnership, trust, or organization that, in whole or in part, was created by or for the benefit of Donald J. Trump and/or is controlled or owned by Donald J. Trump.

## II.    INSTRUCTIONS

1.      You are required, in responding to these document requests, to obtain and produce all documents in your possession, available to you, or under your control, or in the possession of, available to, or under the control of your attorneys or agents. To be specific, this means you must search the email files, electronic files, and paper files of **_all_** Staff and other agents of the Campaign for responsive documents.

2.      Where a specified document is requested, such request shall not be interpreted to exclude any other documents where it is known that such other documents contain information relevant to the request.

3.      If a document described by the request was, but no longer is in existence or in your control, you shall state:

      a.      the present or last known location of that document;

      b.      the names and addresses of all persons with knowledge of the contents of that document; and

      c.      why the document is no longer in existence or in your control.

4.      This request represents a continuing request for production.  Therefore, if a document described by this request is not in existence or in your control at the time of the first response to this request, but later comes into existence or into your control, you must immediately produce that document.

5.      If any document called for by these requests is withheld under any claim of privilege, state separately with respect to each document as to which a privilege is claimed:

      a.      the number and particular part of the document request to which the supposed privileged information is responsive;

b.      a description of the document;

c.      the basis upon which the privilege is claimed;

d.      the author of the document, the person(s) to whom the document was addressed, and any other person(s) to whom the document or any copy thereof was provided or shown; and

e.      the identity of each person (other than the attorneys representing you in this action) to whom the contents of the allegedly privileged communication contained in the document have been disclosed, either orally or in writing.

6.      To the extent you deem a particular request to be irrelevant, over broad, or unduly burdensome, you shall respond to the request to the extent that you deem the request permissible.

7.      Each request that seeks documents relating in any way to communications, to, from or within a business and/or corporate or governmental entity, is hereby designated to mean, and should be construed to include, all documents relating to communications by and between representatives, employees, agents, attorneys, and/or servants of the business and/or corporate and/or governmental entity.

8.      The instructions are amplified by the definitions, and the documents requested in these requests are amplified by the definitions and instructions.  You should respond to each request in the context of the definitions and instructions.

9.      Documents shall be produced in the form in which you keep them in the ordinary course of business.  In particular, electronically stored information shall be produced in electronic form and searchable to the same extent as you maintain such information in the ordinary course of business.

## III.   DOCUMENTS REQUESTED

1.      All documents relating to or referencing Alva Johnson, including but not limited to documents relating to Alva Johnson's employment by the Campaign.

2.      All documents reflecting communications concerning or referencing Alva Johnson received or sent by You or anyone acting on Your behalf.

3.      All communications sent or received by Alva Johnson on any Campaign email or messaging account.

4.      All documents referencing or relating to any decision by You to promote, demote, reassign, offer a position to, or revoke the offer of a position to Alva Johnson.

5.      All documents identifying, describing, and/or listing Your various offices, regions, units, or divisions within which paid Campaign Staff work(ed), including but not limited to organizational charts, lists of Your office locations, and telephone or e-mail lists or directories.

6.      Computerized, machine-readable, and computer-manipulable data containing the following information for Alva Johnson and Potential Collective Members (defined as all paid female employees from May 6, 2016 to the present): (1) name; (2) last known address; (3) last known telephone number; (4) last known email address; (5) job position, including job title, job code, job level, salary grade, and organizational information regarding the area of the Campaign to which the job position belongs or belonged and (6) pay history showing each Potential Collective Member's salary and changes thereto over time.

7.      All documents reflecting your policies and procedures for setting compensation amounts for Campaign Staff, including all information regarding the qualifications of, and any qualities or information considered by You in making compensation decisions with respect to Staff of the Campaign.

–7–

8.      All documents that refer or relate to Your efforts to comply with federal, state, local, and other antidiscrimination laws, including statutes, regulations, common law, executive directives, and other sources of law.  This request includes internal and external investigations, communications with government entities, and internal and external reports on compliance.

9.      All documents that refer or relate to complaints of gender discrimination made by Your applicants, potential applicants, independent contractors, and employees, including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, and actual or threatened Legal Proceedings.

10.     All documents that refer or relate to complaints of race discrimination made by Your applicants, potential applicants, independent contractors, and employees, including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, and actual or threatened Legal Proceedings.

11.     All documents that refer or relate to complaints about Donald J. Trump's Sexual Behavior made by Your applicants, potential applicants, independent contractors, and employees, including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, and actual or threatened Legal Proceedings.

12.     All documents that refer or relate to internal and external investigations, studies, analyses, and considerations of the sex of Your employees.

13.     All documents that refer or relate to internal and external investigations, studies, analyses, and considerations of the race of Your employees.

14.     All documents that refer or relate to any changes to Your compensation policies or processes during the 2016 presidential campaign.

15.     All documents reflecting pay records for any Campaign Staff, including but not limited to employees.

16.     All documents that refer or relate to document management and retention policies for Your departments, units and/or divisions that have responsibility for human resources, hiring, compensation, and payroll administration.

17.     All electronic data retention policies, including all documents reflecting changes in those policies and the reasons for those changes.

18.     All documents reflecting the identities of all persons present at the Tampa, Florida Campaign rally on August 24, 2016, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump.

19.     All documents relating or referring to all persons, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump, present at the Tampa, Florida Campaign rally, including, without limitation their complete personnel records.

20.     All communications sent or received by any persons, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump, present at the Tampa, Florida Campaign rally on any Campaign email or messaging account.

21.     All documents reflecting the identities of members of the media or press, including reporters, journalists, bloggers, and social media influencers, present at the Tampa, Florida Campaign rally on August 24, 2016.

22.     All documents reflecting the identities all persons, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump, who entered the Campaign RV along with Donald J. Trump at the Tampa, Florida Campaign rally.

23.     All documents relating or referring to persons, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump, who entered the Campaign RV along with Donald J. Trump at the Tampa, Florida Campaign rally, including without limitation their complete personnel records.

24.     All communications sent or received by any persons, including Campaign Staff, Campaign volunteers, security personnel, and guests of the Campaign or Donald J. Trump, present at the Tampa, Florida Campaign rally on any Campaign email or messaging account.

25.     All nondisclosure agreements (NDAs) executed or purportedly executed by Campaign Staff.

26.     All documents that refer or relate to Your attempts (including through actual or threatened Legal Proceedings) to enforce NDAs executed or purportedly executed by Campaign Staff.

27.     All NDAs executed or purportedly executed by Campaign volunteers.

28.     All documents that refer or relate to Your attempts (including through actual or threatened Legal Proceedings) to enforce NDAs executed or purportedly executed by Campaign volunteers.

29.     All agreements between Campaign Staff and You.

30.     All documents reflecting press credentials issued by the Campaign or lists of media organizations or their representatives for or including events in Florida.

31.     All documents relating to or referencing Alva Johnson's work as Director of Outreach and Coalitions for the Campaign, including but not limited to her work involving outreach to organizations and minority groups, volunteer capacity building, and coordination of rallies.

32.     All documents relating to or referencing Alva Johnson's work on the National Strike Team, including but not limited to her work involving outreach to minority groups, recruitment and

management of volunteers, distribution of campaign "collateral" (including yard signs, bumper stickers, and other merchandise), and coordination of rallies.

33.      All documents relating to or referencing Alva Johnson's work on the Campaign's Florida team, including but not limited to her work involving the onboarding of new staff, the crafting of Campaign communications, and the management of the Campaign's Recreational Vehicles ("RVs").

34.      All documents reflecting press credentials issued by the Campaign for or including events in Florida.

35.      All photographs, videos or other recordings of the August 24, 2016 Campaign rally in Tampa, Florida, including any photographs, videos, or other recordings taken at the rally location on that day before or after the rally.

36.      All photographs, videos, or other recordings of Donald J. Trump's tour of a Campaign recreational vehicle ("RV") on August 24, 2016 in Tampa, Florida.

37.      All photographs, videos, or other recordings of the inside of the Campaign RV taken on August 24, 2016 in Tampa, Florida.

38.      All photographs, videos or other recordings of Alva Johnson.

39.      All photographs, videos or other recordings of Donald J. Trump using racial slurs and tropes, including but not limited to the word "nigger" and the statement "laziness is a trait in blacks."

40.      All documents reflecting allegations or instances of the use of racial slurs or racially offensive language by any Campaign staff or by Donald J. Trump.

41.      All documents reflecting allegations or instances of sexual misconduct of any kind, including but not limited to unwanted kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal intercourse, contact with any private parts (including genitalia, breasts, and buttocks), sexual banter and/or sexual joking, by Donald J. Trump.

42.     All documents containing the word "nigger."

43.     All documents containing the word "bitch."

44.     All documents containing the word "slut."

45.     All documents containing the word "whore."

46.     All documents containing the word "fuck."

47.     All documents containing the words "Access Hollywood."

48.     All documents containing the word "whites."

49.     All documents containing the word "harassment."

50.     All documents containing the words "sexual predator."

51.     All documents containing the words "sexual misconduct."

52.     All documents containing the words "discriminate," "discrimination," and "discriminating."

53.     All documents regarding allegations or instances of racial discrimination, including but not limited to pay disparity based on race, committed or allegedly committed by any Campaign Staff or by Donald J. Trump.

54.     All documents reflecting allegations or instances of gender discrimination, including but not limited to pay disparity based on gender, committed or allegedly committed by any Campaign Staff or by Donald J. Trump.

55.     All documents reflecting correspondence regarding Your compensation policies by any campaign staff or by Donald J. Trump.

56.     All documents you intend to use to support any affirmative defense set forth in your Answer to the Complaint filed in this case.

–12–

Date: May 7, 2019

Respectfully submitted,

 /s/ Hassan A. Zavareei
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

–14–

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

**Plaintiff,**                              **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

**Defendant.**

---

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Alva Johnson

hereby requests that Defendant Donald J. Trump for President, Inc. produce the documents and

tangible things described below for inspection and copying, within thirty (30) days, at the office of

Tycko & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, D.C. 20036.

## I.        DEFINITIONS

1.        "Document" and "Documents" ("Document(s)") should be interpreted in their broadest

possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean

the complete original (or complete copy where the original is unavailable) and each non-identical copy

(where different from the original because of notes made on the copy or otherwise) of any writing or

record, as well as any attachment thereto or enclosure therewith. "Document(s)" includes all written,

typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of

any kind or nature, however produced or reproduced; any form of collected data for use with electronic

data processing equipment; any physical object or thing, and any mechanical or electronic visual or

sound recordings now or formerly in Defendant's possession, custody or control or known to

Defendant regardless of physical location. "Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or literal substance, including papers, correspondence, records, tables, charts, analysis, graphs, schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books, letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books, periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes, contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers, notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages, transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape, instant messages, text messages, messages sent through any encrypted application (including, but not limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the manner in which produced.

2.      "And" means "or" and "or" means "and," as necessary to call for the broadest possible construction and to bring within the scope of this request any information that may otherwise be construed to be outside its scope.

3.      "Communication(s)" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or

–2–

transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

4.      As used herein, the words "relate to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

5.      The term "individual" or "person" as used herein, shall include without limitation any individual, natural person, and entity of every type and description, including (without limitation) any firm, partnership, association, joint venture, public or private corporation, proprietorship, government entity, organization, other business enterprise, group of natural persons, or other entity that has a separate legal existence.

6.      Words in the singular include the plural, and vice versa. The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

7.      The term "each" as used herein shall be construed to mean "all" and the term "all" as used herein shall be construed to mean "each" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.       "You" or "Your" or "Campaign" means Donald J. Trump for President, Inc., its subsidiaries, affiliated companies, parent companies, predecessor companies, successor companies, officers, directors, employees, agents, representatives, and all persons acting or purporting to act on their behalf. In accordance with Local Rule 26(a), this definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

–3–

9.      "Staff" includes current and former employees, independent contractors, consultants, interns, and any other individuals receiving or who received compensation in exchange for services.

## II.      INSTRUCTIONS

1.      You are required, in responding to these document requests, to obtain and produce all documents in your possession, available to you, or under your control, or in the possession of, available to, or under the control of your attorneys or agents.

2.      Where a specified document is requested, such request shall not be interpreted to exclude any other documents where it is known that such other documents contain information relevant to the request.

3.      If a document described by the request was, but no longer is in existence or in your control, you shall state:

      a.      the present or last known location of that document;

      b.      the names and addresses of all persons with knowledge of the contents of that document; and

      c.      why the document is no longer in existence or in your control.

4.      If You object to a document request, you must state whether you are withholding documents pursuant to that objection.

5.      For each request you must provide bates numbers for all documents produced pursuant to that request.

6.      This request represents a continuing request for production.  Therefore, if a document described by this request is not in existence or in your control at the time of the first response to this request, but later comes into existence or into your control, you must immediately produce that document.

–4–

7.      If any document called for by these requests is withheld under any claim of privilege, state separately with respect to each document as to which a privilege is claimed:

a.      the number and particular part of the document request to which the supposed privileged information is responsive;

b.      a description of the document;

c.      the basis upon which the privilege is claimed;

d.      the author of the document, the person(s) to whom the document was addressed, and any other person(s) to whom the document or any copy thereof was provided or shown; and

e.      the identity of each person (other than the attorneys representing you in this action) to whom the contents of the allegedly privileged communication contained in the document have been disclosed, either orally or in writing.

8.      To the extent you deem a particular request to be irrelevant, over broad, or unduly burdensome, you shall respond to the request to the extent that you deem the request permissible.

9.      Each request that seeks documents relating in any way to communications, to, from or within a business and/or corporate or governmental entity, is hereby designated to mean, and should be construed to include, all documents relating to communications by and between representatives, employees, agents, attorneys, and/or servants of the business and/or corporate and/or governmental entity.

10.      The instructions are amplified by the definitions, and the documents requested in these requests are amplified by the definitions and instructions.  You should respond to each request in the context of the definitions and instructions.

11.      Documents shall be produced in the form in which you keep them in the ordinary

–5–

course of business.  In particular, electronically stored information shall be produced in electronic form and searchable to the same extent as you maintain such information in the ordinary course of business.

### III.    DOCUMENTS REQUESTED

57.    On or about October 7, 2016, *The Washington Post* published an article about an "extremely lewd conversation about women" between Defendant Donald J. Trump ("Defendant Trump") and television host Billy Bush during a 2005 episode of *Access Hollywood*. That same day, the *Post* released a recording of the conversation (the "*Access Hollywood* Tape"). In the recording, Defendant Trump can be heard stating, *inter alia*, "Yeah, that's her. With the gold. I better use some Tic Tacs just in case I start kissing her. You know I'm automatically attracted to beautiful – I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything. . . . Grab 'em by the pussy. You can do anything." Please produce all Documents and Communications concerning or referring to the *Access Hollywood* Tape, including, but not limited to, emails to or from Campaign Staff concerning or referring to the *Access Hollywood* Tape, text messages to or from Campaign Staff concerning or referring to the *Access Hollywood* Tape, and Documents and Communications concerning or referring to media coverage of the *Access Hollywood* Tape.

Date: May 20, 2019                                   Respectfully submitted,

                                    /s/ Hassan A. Zavareei
                                   Hassan A. Zavareei (*pro hac vice*)
                                   Katherine M. Aizpuru (*pro hac vice*)
                                   TYCKO & ZAVAREEI LLP
                                   1828 L Street, N.W., Suite 1000
                                   Washington, D.C. 20036
                                   Telephone: 202-973-0900
                                   Facsimile: 202-973-0950
                                   hzavareei@tzlegal.com
                                   kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

–7–

# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,**<br><br>**Plaintiff/Relator,**<br><br>v.<br><br>**DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.**<br><br>**Defendant.** | **Case No. 8:19-cv-00475-WFJ-SPF** |

<u>**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO**</u>
<u>**DEFENDANT DONALD J. TRUMP**</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Alva Johnson

hereby requests that Defendant Donald J. Trump ("Defendant") produce the documents and

tangible things described below for inspection and copying, within thirty (30) days, at the office of

Tycko & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, D.C. 20036.

## I.      DEFINITIONS

1.      "Document" and "Documents" ("Document(s)") should be interpreted in their broadest

possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean

the complete original (or complete copy where the original is unavailable) and each non-identical copy

(where different from the original because of notes made on the copy or otherwise) of any writing or

record, as well as any attachment thereto or enclosure therewith. "Document(s)" includes all written,

typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of

any kind or nature, however produced or reproduced; any form of collected data for use with electronic

data processing equipment; any physical object or thing, and any mechanical or electronic visual or

sound recordings now or formerly in Defendant's possession, custody or control or known to

Defendant regardless of physical location. "Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or literal substance, including papers, correspondence, records, tables, charts, analysis, graphs, schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books, letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books, periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes, contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers, notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages, transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape, instant messages, text messages, messages sent through any encrypted application (including, but not limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the manner in which produced.

2.      "And" means "or" and "or" means "and," as necessary to call for the broadest possible construction and to bring within the scope of this request any information that may otherwise be construed to be outside its scope.

3.      "Communication(s)" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes,

telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

4.      As used herein, the words "relate to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

5.      The term "individual" or "person" as used herein, shall include without limitation any individual, natural person, and entity of every type and description, including (without limitation) any firm, partnership, association, joint venture, public or private corporation, proprietorship, government entity, organization, other business enterprise, group of natural persons, or other entity that has a separate legal existence.

6.      Words in the singular include the plural, and vice versa.  The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

7.      The term "each" as used herein shall be construed to mean "all" and the term "all" as used herein shall be construed to mean "each" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.       "You" or "Your" means Donald J. Trump.

9.      "Campaign" means Donald J. Trump for President, Inc., its subsidiaries, affiliated companies, parent companies, predecessor companies, successor companies, officers, directors, employees, agents, representatives, and all persons acting or purporting to act on their behalf. In accordance with Local Rule 26(a), this definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

10.      "Declaration" means a statement signed or otherwise executed by You, including sworn declarations, affidavits, attestations, interrogatory responses or any other statements, and including

statements signed by hand, through electronic means such as DocuSign or Adobe Sign, or any other means.

11.     "Legal Proceeding" means any dispute resolution proceeding, whether in court, arbitration, an administrative agency, or any other forum.

12.     "Non-disclosure Agreement" or "NDA" means any contract or agreement between, on the one hand, You, anyone acting on Your behalf, the Campaign, or any Trump Entity, and, on the other hand, any other person, which prohibits (or contains any provision prohibiting) signatories from disclosing information about Your personal life, political affairs, and/or business affairs; disclosing communications with You or any Trump Entity; or disparaging You, members of Your family or any Trump Entity. NDAs also include any agreement that contain a nondisclosure or nondisparagement provision as described in the previous sentence, even if it also includes other provisions.

13.      "Sexual Behavior" has the normal colloquial meaning, and shall include all manner of sexual conduct, including kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal intercourse, contact with any private parts (including genitalia, breasts, and buttocks), and sexual banter and joking, whether consensual or non-consensual.

14.     "Staff" includes current and former employees, independent contractors, consultants, interns, and any other individuals receiving or who received compensation in exchange for services.

15.     "Trump Entity" means any entity, partnership, trust, or organization that, in whole or in part, was created by or for the benefit of Donald J. Trump and/or is controlled or owned by Donald J. Trump.

## II.     INSTRUCTIONS

1.     You are required, in responding to these document requests, to obtain and produce all documents in your possession, available to you, or under your control, or in the possession of, available to, or under the control of your attorneys or agents.

2.      Where a specified document is requested, such request shall not be interpreted to exclude any other documents where it is known that such other documents contain information relevant to the request.

3.      If a document described by the request was, but no longer is in existence or in your control, you shall state:

      a.      the present or last known location of that document;

      b.      the names and addresses of all persons with knowledge of the contents of that document; and

      c.      why the document is no longer in existence or in your control.

4.      If You object to a document request, you must state whether you are withholding documents pursuant to that objection.

5.      For each request you must provide bates numbers for all documents produced pursuant to that request.

6.      This request represents a continuing request for production.  Therefore, if a document described by this request is not in existence or in your control at the time of the first response to this request, but later comes into existence or into your control, you must immediately produce that document.

7.      If any document called for by these requests is withheld under any claim of privilege, state separately with respect to each document as to which a privilege is claimed:

      a.      the number and particular part of the document request to which the supposed privileged information is responsive;

      b.      a description of the document;

      c.      the basis upon which the privilege is claimed;

d.      the author of the document, the person(s) to whom the document was addressed, and any other person(s) to whom the document or any copy thereof was provided or shown; and

e.      the identity of each person (other than the attorneys representing you in this action) to whom the contents of the allegedly privileged communication contained in the document have been disclosed, either orally or in writing.

8.      To the extent you deem a particular request to be irrelevant, over broad, or unduly burdensome, you shall respond to the request to the extent that you deem the request permissible.

9.      Each request that seeks documents relating in any way to communications, to, from or within a business and/or corporate or governmental entity, is hereby designated to mean, and should be construed to include, all documents relating to communications by and between representatives, employees, agents, attorneys, and/or servants of the business and/or corporate and/or governmental entity.

10.     The instructions are amplified by the definitions, and the documents requested in these requests are amplified by the definitions and instructions.  You should respond to each request in the context of the definitions and instructions.

11.     Documents shall be produced in the form in which you keep them in the ordinary course of business.  In particular, electronically stored information shall be produced in electronic form and searchable to the same extent as you maintain such information in the ordinary course of business.

### III.   DOCUMENTS REQUESTED

1.      All documents relating to Alva Johnson, including but not limited to Alva Johnson's employment by the Campaign.

–6–

2.      All documents reflecting communications concerning or referencing Alva Johnson received or sent by You or anyone acting on Your behalf.

3.      All documents reflecting communications concerning or referencing Alva Johnson sent by any person acting on behalf of a Trump Entity.

4.      All documents reflecting pay records for any Campaign Staff.

5.      All documents reflecting the identities of any person, including Campaign Staff or volunteers, security personnel, and guests of the Campaign or You, present at the Tampa, Florida Campaign rally on August 24, 2016.

6.      All documents reflecting the identities of members of the media or press, including reporters, journalists, bloggers, and social media influencers, present at the Tampa, Florida Campaign rally on August 24, 2016.

7.      All documents reflecting the identities of any person, including Campaign Staff or volunteers, security personnel, and guests of the Campaign or You, who entered the Campaign recreational vehicle in Tampa, Florida on August 24, 2016.

8.      All documents reflecting the identities of members of the media or press, including reporters, journalists, bloggers, and social media influencers, who entered the Campaign recreational vehicle in Tampa, Florida on August 24, 2016.

9.      All Non-Disclosure Agreements ("NDAs") executed or purportedly executed by Campaign Staff.

10.     All NDAs executed or purportedly executed by women with whom You have engaged in Sexual Behavior.

11.     All agreements between the Campaign and Campaign Staff.

–7–

12.    All documents reflecting press credentials issued by the Campaign or lists of media organizations or their representatives for or including events in Florida.

13.    All photographs, videos or other recordings of the August 24, 2016 Campaign rally in Tampa, Florida, including any photographs, videos, or other recordings taken at the rally location on that day before or after the rally.

14.    All photographs, videos, or other recordings of Your tour of a Campaign recreational vehicle ("RV") on August 24, 2016 in Tampa, Florida.

15.    All photographs, videos, or other recordings of the inside of the Campaign RV taken on August 24, 2016 in Tampa, Florida.

16.    All photographs, videos or other recordings of Alva Johnson.

17.    All audio or video recordings of You using racial slurs and tropes. This request includes (but is not limited to) recordings wherein You use the word "nigger," such as the recordings made on the set of the reality television show, *The Apprentice*.

18.    All documents that refer or relate to complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution) of Sexual Behavior by You.

19.    All documents that refer or relate to complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution) of race discrimination or racial harassment by You.

20.    All documents that refer or relate to complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened

litigation and arbitrations, and other forms of formal or informal alternative dispute resolution) of race discrimination by any Trump Entity or anyone acting on behalf of a Trump Entity.

21.     All documents that refer or relate to complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution) of sex discrimination by any Trump Entity or anyone acting on behalf of a Trump Entity.

22.     All agreements (including settlement agreements and NDAs) between You or anyone acting on Your behalf (including any Trump Entities) and any party concerning allegations or instances of Sexual Behavior.

23.     All documents that refer or relate to any attempts by You or anyone acting on Your behalf (including, but not limited to, through actual or threatened Legal Proceedings) to enforce NDAs signed by Campaign Staff.

24.     All documents that refer or relate to any attempts by any Trump Entity (including, but not limited to, through actual or threatened Legal Proceedings) to enforce NDAs signed by Campaign Staff.

25.     All documents that refer or relate to attempts by You or anyone acting on Your behalf (including, but not limited to, through actual or threatened Legal Proceedings) to enforce NDAs signed by individuals who have made complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities) regarding Your Sexual Behavior.

26.     All documents that refer or relate to any attempts by any Trump Entity (including, but not limited to, through actual and threatened Legal Proceedings) to enforce NDAs signed by individuals who have made complaints (including formal and informal, written and oral, complaints made directly to You and complaints made to other entities) regarding Your Sexual Behavior.

27.     All documents reflecting allegations or instances of unwanted Sexual Behavior by You.

28.     All documents reflecting allegations or instances of the use of racial slurs or racially offensive language by any Campaign Staff or by You.

29.     All documents reflecting allegations or instances of racial discrimination by You or Your Campaign.

30.     All documents reflecting allegations or instances of sex discrimination by You or Your Campaign.

31.     All documents reflecting communications about compensation of Campaign Staff, including communications about determinations of Campaign Staff member compensation.

32.     All agreements by You or anyone acting on Your behalf reflecting the purchase of rights, including any intellectual property rights of any kind, for any story concerning or involving Your Sexual Behavior.

33.     All agreements by any Trump Entity or anyone acting on behalf of a Trump Entity reflecting the purchase of rights, including any intellectual property rights of any kind, for any story concerning Your Sexual Behavior.

34.     All deposition testimony given by You in any other Legal Proceedings concerning allegations of sex discrimination, including, but not limited to, sexual harassment.

35.     All Declarations executed by You concerning allegations of sex discrimination, including, but not limited to, sexual harassment.

36.     All deposition testimony given by You in any other Legal Proceedings concerning allegations of race discrimination.

37.     All Declarations executed by You concerning allegations of race discrimination.

–10–

38.     All deposition testimony given by You in any other Legal Proceedings concerning allegations of Your Sexual Behavior.

39.     All Declarations executed by You concerning allegations of Your Sexual Behavior.

40.     All documents concerning Jill Harth's allegation that You kissed her and touched her sexually.

41.     All documents concerning Temple Taggart's allegations that You kissed her on more than one occasion.

42.     All documents concerning Cathy Heller's allegations that You attempted to kiss her.

43.     All documents concerning Natasha Stoynoff's allegations that You kissed her.

44.     All documents concerning Rachel Crooks's allegations that You held her hand and kissed her.

45.     All documents concerning Jessica Drake's allegations that You kissed her.

46.     All documents concerning Summer Zervos's allegations that You kissed her and touched her sexually.

47.     All documents concerning Katy Tur's allegation that You kissed her.

48.     All documents concerning Jessica Leeds's allegations that You grabbed her breasts, put Your hands up her skirt, and touched her sexually.

49.     All documents concerning Kristin Anderson allegations that You put her hand up her skirt and touched her sexually.

50.     All documents concerning Lisa Boyne's allegations that she observed You looking up women's skirts and commenting on their underwear and genitalia.

−11−

51.     All documents concerning Mariah Bildado's allegations that You walked into a Miss Teen USA dressing room while contestants were changing and announced, "Don't worry, ladies, I've seen it all before."

52.     All documents concerning Karena Virginia's allegations that You touched her breast.

53.     All documents concerning Bridget Sullivan's allegations that You entered a Miss USA backstage area while contestants were changing.

54.     All documents concerning Tasha Dixon's allegations that You entered a Miss USA dressing room while contestants were naked and stared at them.

55.     All documents concerning Mindy McGillivray's allegations that You touched her sexually.

56.     All documents concerning Ninni Laaksonen's allegations that You touched her sexually.

57.     All documents concerning Cassandra Searles's allegations that You touched her sexually.

58.     All documents concerning Cassandra Searles's allegations that You lined up beauty pageant contestants and treated them "like cattle," including but not limited to documents reflecting Paromitra Mitra's statement that "I literally have nightmares about the process" and Shanon McAnally's statement that Ms. Searles's account was "so true and extremely scary."

59.     All of Your document retention policies, including all documents reflecting changes in those policies and the reasons for those changes.

60.     All of Your electronic data retention policies, including all documents reflecting changes in those policies and the reasons for those changes.

61.     All documents You intend to use to support any affirmative defense set forth in Your Answer to any complaint filed in this case.

62.     All documents produced in any other litigation regarding Your Sexual Behavior.

Date: May 7, 2019

Respectfully submitted,

_/s/ Hassan A. Zavareei_____
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

−13−

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

<u>/s/ Hassan A. Zavareei</u>

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,** | |
| **Plaintiff,**<br>**v.** | **Case No. 8:19-cv-00475-WFJ-SPF** |
| **DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.** | |
| **Defendant.** | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## <u>DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC.</u>

Plaintiff Alva Johnson ("Plaintiff"), by and through her undersigned counsel, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, requests that Defendant Donald J. Trump for President, Inc. ("Campaign") respond to the following written interrogatories under oath within the time prescribed by law.  The following interrogatories are to be considered continuing in nature and must be supplemented or amended to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

## <u>INSTRUCTIONS</u>

1.     These interrogatories are to be answered separately and fully, in writing, within thirty (30) days of the date of service.

2.     You are to answer each interrogatory by providing all responsive information.  If you object to any interrogatory, specify the part to which you object, state your objections, state all factual

and legal justifications that you believe support your objections, and respond to the remainder to which you do not object.

3.      If you cannot respond fully and completely to any interrogatory or part thereof, then answer to the fullest extent possible and state the reason for your inability to provide a full and complete answer.

4.      To the extent that any information called for by any interrogatory is unknown to you, so state and set forth such information as is known to you.  If any estimate can reasonably be made in place of unknown information, set forth your best estimate, clearly designated as such, and describe the basis upon which the estimate is made.

5.      Each interrogatory shall be construed to include information and documents within your knowledge, possession or control as of the date you answer these interrogatories, and any supplemental information, knowledge, data, documents or communications responsive to these interrogatories that is generated, obtained or discovered after the date of your answers.

6.      If you contend that any documents required to be identified herein are protected by attorney-client privilege, the attorney work product doctrine or any other privilege, provide a list of each document and, as to each, state (a) the type of document (*e.g.*, letter, memo, e-mail), (b) name and title or position of the author(s), (c) name and title or position of the recipient(s), including all cc: and bcc: recipient(s), (d) the date of the document, (e) the title or subject matter, (f) the privilege or privileges claimed, and (g) the interrogatory to which the document relates.

7.      You are required to promptly supplement your responses to these interrogatories throughout the duration of this action pursuant to Federal Rule of Civil Procedure 26(e).

8.      All definitions and instruction set forth herein are expressly incorporated by reference into the following interrogatories as if fully set forth therein.

**TIME FRAME OF INTERROGATORIES**

9. Unless otherwise stated, the time period covered by these interrogatories is January 1, 2015 to the present.

## **DEFINITIONS**

10. "You," "Your" and/or "Defendant" means and refers to the above-named Defendant, including its current and former officers, directors, employees, attorneys, agents and representatives, and any affiliated entities.

11. "Document" and "Documents" ("Document(s)") should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith. "Document(s)" includes all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in Defendant's possession, custody or control or known to Defendant regardless of physical location. "Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or literal substance, including papers, correspondence, records, tables, charts, analysis, graphs, schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books, letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books, periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes, contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers, notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire recordings, drawings, forms, catalogues, manuals, tabulations, tweets,

voicemail messages, transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape, instant messages, text messages, messages sent through any encrypted application (including, but not limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the manner in which produced. "Communication" means any oral utterance made, heard or overheard to another person or persons, whether in person or by telephone or otherwise, as well as every written document and every other mode of intentionally conveyed meaning.

12.     To "identify" a person or entity means to state the person or entity's name, current or last-known address and telephone number and, for a person, his or her occupation.

13.     To "identify" a document means to state (a) the date of the document; (b) the title of the document; (c) the author(s) of the document; (d) the recipient(s) of the document, including any cc: or bcc: recipient(s); (e) the title or the subject matter of the document; and (f) the current custodian of the document.

14.     "Complaint" refers to the operative Complaint(s) currently pending against You styled in *Alva Johnson v. Donald J. Trump*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fl.).

15.     "Staff" includes current and former employees, independent contractors, consultants, interns, and any other individuals receiving or who received compensation in exchange for services.

16.     As used herein, the words "relating to" shall mean: pertaining to, referring to, containing, concerning, describing, mentioning, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, controverting and/or contradicting.

17.     Words in the singular include the plural, and vice versa, and the words "and" and "or" include "and/or." The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

## INTERROGATORIES

INTERROGATORY NO. 1:  Identify each person who entered the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016. For Campaign Staff and volunteers, state that person's title.

ANSWER:

INTERROGATORY NO. 2:  Describe in detail all policies, practices and procedures You have or had in place regarding compensation of Staff, including the relationship between pay and performance.

ANSWER:

INTERROGATORY NO. 3: Describe in detail all policies, practices and procedures You have or had in place regarding harassment in the workplace.

ANSWER:

INTERROGATORY NO. 4: Describe in detail all policies, practices and procedures You have or had in place regarding reporting or responding to reports of unlawful discrimination, including racial discrimination or sex discrimination.

ANSWER:

INTERROGATORY NO. 5: Identify all people, including any of Your Staff, with knowledge of any of the allegations contained in Plaintiff's Complaint, and describe their knowledge.

ANSWER:

5

INTERROGATORY NO. 6:  Identify every person, including but not limited to Your Staff, interviewed in the course of Your investigation of the allegations contained in Plaintiff's Complaint, including Your investigation of such allegations prior to the filing of this lawsuit, and for each such person state:

b. The date, time and place he/she was interviewed;

c. The name of each person who interviewed him/her;

d. The reason he/she was interviewed;

e. The subject about which he/she was interviewed.

ANSWER:

INTERROGATORY NO. 7:  Identify all people, including but not limited to any of Your Staff, involved in any personnel decision relating to Alva Johnson, including but not limited to any decision to promote, demote, reassign, offer a position to, or revoke the offer of a position to Ms. Johnson, and for each such person state:

a. The nature of his/her involvement in such employment decision;

b. His/her reasons for making such employment decision.

ANSWER

INTERROGATORY NO. 8:   Identify all complaints by Your Staff of gender-based discrimination, including sexual harassment, alleged to have taken place, including by Donald J. Trump, of which You received notice during the relevant time period, and state:

a. The name and title of the Staff member(s) making the complaint;

b. The allegations or circumstances of each complaint, including the name(s) of any persons named in the complaint;

c. The date(s) of these acts or circumstances;

d. The actions taken by You in response to each complaint;

e. The name and title of the person responsible for investigating each

complaint; and

f. Your final actions on each complaint, including a specification of

all disciplinary actions taken.

ANSWER:

INTERROGATORY NO. 9:   Identify all complaints by Your Staff of racial

discrimination alleged to have taken place, including by Donald J. Trump, of which

You received notice during the relevant time period, and state:

a. The name and title of the Staff member(s) making the complaint;

b. The allegations or circumstances of each complaint, including any persons named in the

complaint;

c. The date(s) of these acts or circumstances;

d. The actions taken by You in response to each complaint;

e. The name and title of the person responsible for investigating each

complaint; and

f. Your final actions on each complaint, including a specification of

all disciplinary actions taken

ANSWER:

INTERROGATORY NO. 10:  Identify all members of Your Staff counseled or disciplined

for sexual harassment or sex discrimination.

ANSWER:


INTERROGATORY NO. 11:  Identify all members of Your Staff counseled or disciplined

for racial harassment or racial discrimination.

ANSWER:

INTERROGATORY NO. 12:  Do You, including any of Your supervisory personnel, have knowledge of inappropriate comments made by members of Your Staff, including Donald J. Trump, about or regarding women, or reason to suspect such comments were made?

ANSWER:

INTERROGATORY NO. 13:  Do You, including any of Your supervisory personnel, have knowledge of inappropriate comments made by members of Your Staff, including Donald J. Trump, about or regarding African Americans, or reason to suspect such comments were made?

ANSWER:

INTERROGATORY NO. 14:  Do You, including any of Your supervisory personnel, have knowledge of or reason to suspect sexual misconduct of any kind, including but not limited to unwanted kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal intercourse, contact with any private parts (including genitalia, breasts, and buttocks), sexual banter and/or sexual joking, perpetrated or alleged to have been perpetrated by any of Your Staff, including Donald J. Trump?

ANSWER:

INTERROGATORY NO. 15:  If you answered any of the preceding three interrogatories in the affirmative, please state:

    a. The acts or circumstances involved;

    b. The dates of their occurrence;

    c. The location of their occurrence;

    d. The names and titles of those involved;

    e. The names and titles of those responsible for investigating the acts and/or circumstances;

    f. The date and a description of action taken by management in response to

the acts and/or circumstances;

g. Whether the acts and/or circumstances continued after management's

response.

ANSWER:

INTERROGATORY NO. 16:   For every EEOC claim or claim filed with any State Civil

Rights agency filed against You, please state:

a. The name, address, sex, and race of the person who filed the claim;

b. The employment history with You of the person who filed the

claim, including job titles and dates;

c. The date the claim was filed;

d. A summary of the claim filed;

e. A description of all the claims filed.

ANSWER:

INTERROGATORY NO. 17:   Has any Staff member or applicant for employment ever

filed an internal complaint with You alleging that You discriminated based on race or gender?

ANSWER:

INTERROGATORY NO. 18:   If the answer to preceding Interrogatory is in the affirmative,

please state with reference to each complaint filed against You:

a. State the name, sex, and race, of the person

who filed the complaint;

a. State the employment history with You of the person who

filed a complaint, including job titles and dates;

b. State the date the Complaint was filed;

c. Describe the charges made in the Complaint;

d. Describe all actions taken on the basis of the Complaint;

e. Attach a copy or state where and when counsel may examine a copy of the

Complaint.

<u>ANSWER</u>:

Date: May 7, 2019                                     Respectfully submitted,

                                                        /s/ Hassan A. Zavareei
                                                     Hassan A. Zavareei (*pro hac vice*)
                                                     Katherine M. Aizpuru (*pro hac vice*)
                                                     TYCKO & ZAVAREEI LLP
                                                     1828 L Street, N.W., Suite 1000
                                                     Washington, D.C. 20036
                                                     Telephone: 202-973-0900
                                                     Facsimile: 202-973-0950
                                                     hzavareei@tzlegal.com
                                                     kaizpuru@tzlegal.com

                                                     Tanya S. Koshy (*pro hac vice*)
                                                     TYCKO & ZAVAREEI LLP
                                                     1970 Broadway, Suite 1070
                                                     Oakland, CA 94612
                                                     P: (510) 250-3298
                                                     F: (202) 973-0950
                                                     tkoshy@tzlegal.com

                                                     Janet Varnell (Fla. Bar No. 71072)
                                                     Brian W. Warwick, (Fla. Bar No. 0605573)
                                                     VARNELL & WARWICK, PA
                                                     P.O. Box 1870
                                                     Lady Lake, FL 32158-1870
                                                     P: 352-753-8600
                                                     F: 352-503-3301
                                                     jvarnell@varnellandwarwick.com
                                                     bwarwick@varnellandwarwick.com

F. Paul Bland (pro hac vice)
Karla Gilbride (pro hac vice)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (pro hac vice)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

12

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

**Plaintiff,**

v.

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

**Defendant.**

**Case No. 8:19-cv-00475-WFJ-SPF**

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT DONALD J. TRUMP

Plaintiff Alva Johnson ("Plaintiff"), by and through her undersigned counsel, pursuant to

Rules 26 and 33 of the Federal Rules of Civil Procedure, requests that Defendant Donald J. Trump.

respond to the following written interrogatories under oath within the time prescribed by law.  The

following interrogatories are to be considered continuing in nature and must be supplemented or

amended to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

## INSTRUCTIONS

1. These interrogatories are to be answered separately and fully, in writing, within thirty

(30) days of the date of service.

2. You are to answer each interrogatory by providing all responsive information.  If you

object to any interrogatory, specify the part to which you object, state your objections, state all factual

and legal justifications that you believe support your objections, and respond to the remainder to

which you do not object.

3.      If you cannot respond fully and completely to any interrogatory or part thereof, then answer to the fullest extent possible and state the reason for your inability to provide a full and complete answer.

4.      To the extent that any information called for by any interrogatory is unknown to you, so state and set forth such information as is known to you.  If any estimate can reasonably be made in place of unknown information, set forth your best estimate, clearly designated as such, and describe the basis upon which the estimate is made.

5.      Each interrogatory shall be construed to include information and documents within your knowledge, possession or control as of the date you answer these interrogatories, and any supplemental information, knowledge, data, documents or communications responsive to these interrogatories that is generated, obtained or discovered after the date of your answers.

6.      If you contend that any documents required to be identified herein are protected by attorney-client privilege, the attorney work product doctrine or any other privilege, provide a list of each document and, as to each, state (a) the type of document (*e.g.*, letter, memo, e-mail), (b) name and title or position of the author(s), (c) name and title or position of the recipient(s), including all cc: and bcc: recipient(s), (d) the date of the document, (e) the title or subject matter, (f) the privilege or privileges claimed, and (g) the interrogatory to which the document relates.

7.      You are required to promptly supplement your responses to these interrogatories throughout the duration of this action pursuant to Federal Rule of Civil Procedure 26(e).

8.      All definitions and instruction set forth herein are expressly incorporated by reference into the following interrogatories as if fully set forth therein.

## TIME FRAME OF INTERROGATORIES

9.      Unless otherwise stated, the time period covered by these interrogatories is January 1, 1980 to the present.

2

**DEFINITIONS**

10.    "You," "Your" and/or "Defendant" means and refers to Donald J. Trump.

11.    "Document" and "Documents" ("Document(s)") should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith. "Document(s)" includes all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in Defendant's possession, custody or control or known to Defendant regardless of physical location. "Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or literal substance, including papers, correspondence, records, tables, charts, analysis, graphs, schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books, letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books, periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes, contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers, notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages, transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape, instant messages, text messages, messages sent through any encrypted application (including, but not limited to, Signal, WhatsApp, and Viber), and any other

matter of any kind, regardless of the manner in which produced. "Communication" means any oral utterance made, heard or overheard to another person or persons, whether in person or by telephone or otherwise, as well as every written document and every other mode of intentionally conveyed meaning.

12.     To "identify" a person or entity means to state the person or entity's name, current or last-known address and telephone number and, for a person, his or her occupation.

13.     To "identify" a document means to state (a) the date of the document; (b) the title of the document; (c) the author(s) of the document; (d) the recipient(s) of the document, including any cc: or bcc: recipient(s); (e) the title or the subject matter of the document; and (f) the current custodian of the document.

14.     "Complaint" refers to the operative Complaint(s) currently pending against You styled in *Alva Johnson v. Donald J. Trump*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fl.).

15.     "Legal Proceeding" means any dispute resolution proceeding, whether in court, arbitration, an administrative agency, or any other forum.

16.     "Sexual Behavior" has the normal colloquial meaning, and shall include all manner of sexual conduct, including kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal intercourse, contact with any private parts (including genitalia, breasts, and buttocks), and sexual banter and joking, whether consensual or non-consensual.

17.     As used herein, the words "relating to" shall mean: pertaining to, referring to, containing, concerning, describing, mentioning, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, controverting and/or contradicting.

18.    Words in the singular include the plural, and vice versa, and the words "and" and "or"
include "and/or." The past tense includes the present tense when the clear meaning is not distorted
by the change of tense.

## INTERROGATORIES

INTERROGATORY NO. 1:   Identify each person that has accused you of any
nonconsensual Sexual Behavior of any kind, from 1980 until the present, and describe each such
accusation in detail, including not only the alleged conduct, but also whether you dispute the
allegation(s), and what you maintain occurred. These allegations include, but are not limited to those
allegations described in Plaintiff's Complaint paragraphs 101(a)-9h) and 103(a)-(j).

ANSWER:

INTERROGATORY NO. 2:  Describe in detail what you allege occurred when you visited a
Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016, starting from when you
entered the RV through the point at which you exited the RV.

ANSWER:

INTERROGATORY NO. 3:   If your response to each request for admission served
concurrently with these interrogatories is not an unqualified admission, then, for each, identify all facts
that refer to, relate to, support or negate Your response. Your response must include, without
limitation, the identity of all Documents relating to these facts and the identities of each person who
has knowledge of or is connected with these facts, including without limitation the name, employer,
business and residential addresses and business and residential telephone numbers of each such
witness.

ANSWER:

INTERROGATORY NO. 4:  Identify every person with whom you have discussed Alva
Johnson and state the date, time, location, and substance of the conversation.

ANSWER:

INTERROGATORY NO. 5:  Identify every Legal Proceeding relating in any manner to your

Sexual Behavior. For each, state the names of the parties, the name of the forum, and the date(s) of

the proceedings.

ANSWER:

INTERROGATORY NO. 6:  Identify each person interviewed in the course of Your

investigation of the allegations contained in Plaintiff's Complaint, including Your investigation of

such allegations prior to the filing of this lawsuit, and state:

b. The date, time and place he/she was interviewed;

c. The name of each person who interviewed him/her;

d. The reason he/she was interviewed;

e. The subject about which he/she was interviewed.

ANSWER:


Date: May 7, 2019                              Respectfully submitted,

                                                 /s/ Hassan A. Zavareei
                                               Hassan A. Zavareei (*pro hac vice*)
                                               Katherine M. Aizpuru (*pro hac vice*)
                                               TYCKO & ZAVAREEI LLP
                                               1828 L Street, N.W., Suite 1000
                                               Washington, D.C. 20036
                                               Telephone: 202-973-0900
                                               Facsimile: 202-973-0950
                                               hzavareei@tzlegal.com
                                               kaizpuru@tzlegal.com

                                               Tanya S. Koshy (pro hac vice)
                                               TYCKO & ZAVAREEI LLP
                                               1970 Broadway, Suite 1070
                                               Oakland, CA 94612
                                               P: (510) 250-3298

F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

<u>/s/ Hassan A. Zavareei</u>

# EXHIBIT L

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |
|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.**<br><br>**Defendant.** | **Case No. 8:19-cv-00475-WFJ-SPF** |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO
DONALD J. TRUMP FOR PRESIDENT, INC.**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff Alva Johnson, by and through her attorneys of record, hereby requests that Defendant Donald J. Trump for President, Inc. ("Campaign") answer the following Requests for Admission in accordance with the Definitions and Instructions below. Defendant's responses should be produced at the law offices of Tycko & Zavareei LLP, Attn: Hassan A. Zavareei, 1828 L St., Suite 1000, NW Washington, District of Columbia, 20036, within thirty (30) days after service.

**DEFINITIONS**

1. "You," "Your" "Campaign" and/or "Defendant" means and refers to Donald J. Trump for President, Inc. and/or any and all other person(s) acting on Donald J. Trump for President, Inc.'s behalf or at Donald J. Trump for President, Inc.'s direction or control, including, but not limited to, present or former employees, staff personnel, agents, servants, consultants, investigators, contractors or subcontractors, advisors, counsel, accountants, representatives, or any other person compensated by you, regardless of whether such compensation is based in whole or in

1

part on commission or some other measure of performance or otherwise and regardless of whether

considered or classified as independent contractors.

2.      "Document" and "Documents" ("Document(s)") should be interpreted in their

broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure

and shall mean the complete original (or complete copy where the original is unavailable) and each

non-identical copy (where different from the original because of notes made on the copy or

otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith.

"Document(s)" includes all written, typewritten, handwritten, printed, computerized, electronically

created or stored, or graphic matter of any kind or nature, however produced or reproduced; any

form of collected data for use with electronic data processing equipment; any physical object or

thing, and any mechanical or electronic visual or sound recordings now or formerly in Defendant's

possession, custody or control or known to Defendant regardless of physical location.

"Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or

literal substance, including papers, correspondence, records, tables, charts, analysis, graphs,

schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books,

letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books,

periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes,

contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers,

notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer

printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire

recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages,

transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency,

diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape,

video tape, instant messages, text messages, messages sent through any encrypted application

(including, but not limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the manner in which produced.

3.      "And" means "or" and "or" means "and," as necessary to call for the broadest possible construction and to bring within the scope of this request any information that may otherwise be construed to be outside its scope.

4.      "Communication(s)" means  the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

5.      As used herein, the words "relate to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

6.      The term "individual" or "person" as used herein, shall include without limitation any individual, natural person, and entity of every type and description, including (without limitation) any firm, partnership, association, joint venture, public or private corporation, proprietorship, government entity, organization, other business enterprise, group of natural persons, or other entity that has a separate legal existence.

7.      Words in the singular include the plural, and vice versa. The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

8.      The term "each" as used herein shall be construed to mean "all" and the term "all" as used herein shall be construed to mean "each" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      "Plaintiff's Complaint" refers to the operative Complaint currently pending against Donald J. Trump in *Alva Johnson v. Donald J. Trump*, Case No. 8:19-cv-00475-WFJ-SPF (M.D. Fl.).

10.     "Litigation" refers to the proceedings in the above-captioned case.

11.     "Non-disclosure Agreement" or "NDA" means any contract or agreement between, on the one hand, the Campaign and, on the other hand, any other person, which prohibits (or contains any provision prohibiting) signatories from disclosing information about Donald J. Trump's personal life, political affairs, and/or business affairs; disclosing communications with You or Donald J. Trump or or any Trump Entity; or disparaging You, Donald J. Trump, members of his family or any Trump Entity. NDAs also include any agreement that contain a nondisclosure or nondisparagement provision as described in the previous sentence, even if it also includes other provisions.

12.      "Plaintiff" refers to Alva Johnson.

13.     "Person" includes any individual, natural person, and entity of every type and description, including (without limitation) any firm, partnership, association, joint venture, public or private corporation, proprietorship, government entity, organization, other business enterprise, group of natural persons, or other entity that has a separate legal existence.

14.     "Staff" includes current and former employees, independent contractors, consultants, interns, and any other individuals receiving or who received compensation in exchange for services.

15.　"Trump Entity" means any entity, partnership, trust, or organization that, in whole or in part, was created by or for the benefit of Donald J. Trump and/or is controlled or owned by Donald J. Trump.

## **INSTRUCTIONS**

1.　Each Request for Admission is to be answered separately and fully, in writing, and under oath within thirty (30) days of the date of service.

2.　Rule 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

3.　Rule 36(a) provides that each matter requested to be admitted is conclusively established and admitted for the purposes of this action unless, within thirty (30) days after service of this request, you serve upon the party making these requests either:  (a) a written statement signed by you or your attorney admitting the request, specifically denying the request, or stating in detail why you are unable to truthfully admit or deny the request; or (b) a written objection signed by your attorney setting forth the grounds for such objection.

4.　Rule 36(a) further requires that any denial by you of a request must fairly meet the substance of the requested admission and that, when good faith requires that an answer be qualified or a part of the request be denied, such qualification or denial must be specific and admit the part of the requested admission that is true.

5.　Lack of information or knowledge is an insufficient basis for failing to admit or deny a request unless you include in your response a certification that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny the request.  Your inquiry is "reasonable" only when (a) you examine any and all documents or tangible things in your possession, custody, or control that refer or relate to the matter requested to be admitted in any way and (b) you make inquiry of your principals, agents, employees, attorneys, representatives, any persons acting or purporting to act on your behalf, and any other person(s) in

active concert or participation with you, whether past or present and without regard to whether or not their relationship with you currently exists or has been terminated.

6.      It is not a sufficient answer that a request presents a genuine issue for trial.  If you deny any request and the truth of the request is eventually proven at trial, Rule 37(c) provides that you may be ordered to pay to the requesting party the reasonable expenses incurred in proving the matters requested to be admitted, including reasonable attorneys' fees.

7.      A party requested to admit that a document contains specified quoted material may not object on the ground that the document "speaks for itself." Such a response is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission.

8.      In accordance with Federal Rule of Civil Procedure 26(e), these Requests for Admission are deemed continuing in nature, so as to require Defendant to file supplemental responses if, as, and when additional or different information becomes available at any time prior to or during trial.

9.      When knowledge or information in the possession of Defendant is requested, such a request includes within its scope knowledge or information within the possession or control of Defendant's agents, representatives, and attorneys.

## REQUESTS FOR ADMISSION

**Request for Admission 1:**

Admit that Alva Johnson was required to meet Donald J. Trump before she was hired by the Campaign.

**Request for Admission 2:**

Admit that You or Your Staff member invited Alva Johnson to attend a campaign rally in Birmingham, Alabama on November 15, 2015.

**Request for Admission 2:**

Admit that Alva Johnson personally met Donald J. Trump at a campaign rally in Birmingham, Alabama on November 15, 2015.

**Request for Admission 3:**

Admit that You hired Alva Johnson in January 2016.

**Request for Admission 4:**

Admit that Alva Johnson was Your employee.

**Request for Admission 5:**

Admit that You sent to Alva Johnson for her signature a nondisclosure agreement (NDA).

**Request for Admission 6:**

Admit that You did not countersign the NDA You sent to Alva Johnson for her signature.

**Request for Admission 7:**

Admit that for the period of January to March 2016, Alva Johnson's title was Director of Outreach and Coalitions.

**Request for Admission 8:**

Admit that Alva Johnson's responsibilities as Director of Outreach and Coalitions included speaking to organizations, coordinating rallies, engaging with diverse communities (including minority groups), and building volunteer capacity.

**Request for Admission 9:**

Admit that Alva Johnson helped coordinate a Campaign rally in Madison, Alabama on or about February 28, 2016.

**Request for Admission 10:**

Admit that Alva Johnson helped secure a venue for the Campaign rally in Madison, Alabama on or about February 28, 2016.

**Request for Admission 11:**

Admit that Alva Johnson was chosen to be a member of the National Strike Team.

**Request for Admission 12:**

Admit that Alva Johnson was selected to join the National Strike Team in part because of her satisfactory performance as Director of Outreach and Coalitions in Alabama.

**Request for Admission 13:**

Admit that Alva Johnson's appointment to the National Strike Team was a promotion.

**Request for Admission 14:**

Admit that the National Strike Team traveled to critical states throughout the Republican primaries.

**Request for Admission 15:**

Admit that, as part of the National Strike Team, Alva Johnson's responsibilities included recruiting and managing volunteers, organizing rallies, and distributing campaign collateral.

**Request for Admission 16:**

Admit that, as a part of the National Strike Team, Alva Johnson's responsibilities included conducting minority outreach.

**Request for Admission 17:**

Admit that Alva Johnson traveled to Wisconsin with the National Strike Team.

**Request for Admission 18:**

Admit that Alva Johnson traveled to Utah with the National Strike Team.

**Request for Admission 19:**

Admit that Alva Johnson traveled to Missouri with the National Strike Team.

**Request for Admission 20:**

Admit that Alva Johnson traveled to Indiana with the National Strike Team.

**Request for Admission 21:**

Admit that Alva Johnson traveled to California with the National Strike Team.

**Request for Admission 22:**

Admit that Alva Johnson created a volunteer appreciation event called Super Saturday.

**Request for Admission 23:**

Admit that Alva Johnson helped organize a visit by Donald J. Trump to a polling location in

Wisconsin on or about April 5, 2016.

**Request for Admission 24:**

Admit that Alva Johnson was selected to join Your team in Florida.

**Request for Admission 25:**

Admit that Alva Johnson was selected to join Your team in Florida in part because of her

satisfactory performance as a member of the National Strike Team.

**Request for Admission 26:**

Admit that Alva Johnson's appointment to the Campaign's Florida team was a promotion.

**Request for Admission 27:**

Admit that Alva Johnson's title while employed by You as a member of Your team in

Florida was Operations Administrative Director.

**Request for Admission 28:**

Admit that, while employed by You as a member of Your team in Florida, Alva Johnson's

responsibilities included assisting with the onboarding of new staff and crafting Campaign

communications.

**Request for Admission 29:**

Admit that, while employed by You as a member of Your team in Florida, Alva Johnson was

responsible for helping to manage the Trump Recreational Vehicles (RVs) that travelled throughout

Florida.

**Request for Admission 30:**

Admit that Alva Johnson helped organize a Campaign rally in Tampa, Florida on August 24, 2016.

**Request for Admission 31:**

Admit that when Donald J. Trump arrived for the Campaign rally in Tampa, Florida on August 24, 2016, it was raining.

**Request for Admission 32:**

Admit that, on August 24, 2016, Donald J. Trump entered a Campaign RV in Tampa, Florida.

**Request for Admission 33:**

Admit that, on August 24, 2016, Stephanie Grisham was not present inside the Campaign RV in Tampa, Florida.

**Request for Admission 34:**

Admit that, on August 24, 2016, Sarah Huckabee Sanders was not present inside the Campaign RV in Tampa, Florida.

**Request for Admission 35:**

Admit that, on August 24, 2016, Melania Trump was not present inside the Campaign RV in Tampa, Florida.

**Request for Admission 36:**

Admit that Karen Giorno has been accused of professional misconduct.

**Request for Admission 37:**

Admit that Karen Giorno is Your former employee.

**Request for Admission 38:**

Admit that Alva Johnson called in sick on October 10, 2016.

**Request for Admission 39:**

Admit that You paid for the housing in which Alva Johnson lived in Florida from August 2016 through on or about October 13, 2016.

**Request for Admission 40:**

Admit that You or Your Staff member offered Alva Johnson a job in New York to begin in September 2016.

**Request for Admission 41:**

Admit that You or Your Staff member offered Alva Johnson a job in New York to begin in September 2016 with a salary of $10,000 per month.

**Request for Admission 42:**

Admit that You or Your Staff member offered to pay for Alva Johnson's housing in New York at a budget of $6,000-7,500.

**Request for Admission 43:**

Admit that You or Your Staff member retracted the offer of a job in New York previously made to Alva Johnson.

**Request for Admission 44:**

Admit that Your employee told Alva Johnson that the offer of a job in New York had been withdrawn.

**Request for Admission 45:**

Admit that Alva Johnson moved out of the housing You provided on or about October 14, 2016.

**Request for Admission 46:**

Admit that Alva Johnson resigned from her position with the Campaign by emailing Lucia

11

Castellano on October 16, 2016.

**Request for Admission 47:**

Admit that, from the time Alva Johnson was hired by You in January 2016 to the time she left the Campaign in October 2016, she was a full-time, paid employee of the Campaign.

**Request for Admission 48:**

Admit that, from the time Alva Johnson was hired by You in January 2016 to the time she left the Campaign in October 2016, she did not operate as an independent contractor of the Campaign.

**Request for Admission 49:**

Admit that You are an active entity whose operations are ongoing.

**Request for Admission 50:**

Admit that You are serving and will continue to serve as Donald J. Trump's Campaign Committee for the 2020 presidential election.

**Request for Admission 51:**

Admit that all paid employees of the Campaign were responsible for increasing voter engagement.

**Request for Admission 52:**

Admit that You employed women other than Alva Johnson whose job responsibilities were substantially similar to those of Alva Johnson.

**Request for Admission 53:**

Admit that You employed men whose job responsibilities were substantially similar to those of Alva Johnson.

**Request for Admission 54:**

Admit that You employed white individuals whose job responsibilities were substantially

similar to those of Alva Johnson.

**Request for Admission 55:**

Admit that ultimate decisions regarding compensation of Your employees were and are controlled by Your leadership.

**Request for Admission 56:**

Admit that Your personnel administration for all employees of the Campaign across the country was centralized.

**Request for Admission 57:**

Admit that Your compensation policies were uniform across all locations, regardless of job title or office location.

**Request for Admission 58:**

Admit that You paid Alva Johnson $3,000 per month between January and August 2016.

**Request for Admission 59:**

Admit that You paid Alva Johnson a bonus of $1,000 on August 31, 2016.

**Request for Admission 60:**

Admit that You paid Alva Johnson $4,000 per month between September 2016 and the date she left the campaign.

**Request for Admission 61:**

Admit that You paid Sidney Bowdidge $3,500 per month between March and August 2016, except for April 2016 when he was paid $6,000.

**Request for Admission 62:**

Admit that You paid Sidney Bowdidge $7,000 per month between September 2016 and the end of his affiliation with the campaign.

**Request for Admission 63:**

Admit that You paid Matt Ciepielowski $8,000 per month between January and June 2016, except for April 2016 when he was paid $10,500.

**Request for Admission 64:**

Admit that You paid Matt Ciepielowski $10,000 per month between September 2016 and the end of his affiliation with the campaign.

**Request for Admission 65:**

Admit that You paid Austin Browning $5,618.58 in August 2016.

**Request for Admission 66:**

Admit that You paid Austin Browning $7,817.78 in September 2016.

**Request for Admission 67:**

Admit that You paid Austin Browning $8,592.30 in October 2016.

**Request for Admission 68:**

Admit that You paid Austin Browning $6,421.07 in November 2016.

**Request for Admission 69:**

Admit that You paid David Chiokadze $8,000 in May 2016.

**Request for Admission 70:**

Admit that You paid David Chiokadze $9,003.25 in June 2016.

**Request for Admission 71:**

Admit that You paid David Chiokadze $8,000 in July 2016.

**Request for Admission 72:**

Admit that You paid David Chiokadze $13,148 in August 2016.

**Request for Admission 73:**

Admit that You paid David Chiokadze $8,363.56 in September 2016.

**Request for Admission 74:**

Admit that You paid David Chiokadze and $5,907.90 in October 2016.

**Request for Admission 75:**

Admit that You paid Tony Ledbetter $3,500 per month from January through March 2016.

**Request for Admission 76:**

Admit that You paid Tony Ledbetter $5,500 per month between August and October 2016.

**Request for Admission 77:**

Admit that You knew You were underpaying Alva Johnson relative to her white

counterparts.

**Request for Admission 78:**

Admit that You knew that it was and is illegal to pay white people more than African

American people for substantially equivalent work.

**Request for Admission 79:**

Admit that You knew You were underpaying Alva Johnson relative to her male counterparts.

**Request for Admission 80:**

Admit that You knew that it was and is illegal to pay men more than women for substantially

equivalent work.

**Request for Admission 81:**

Admit that, throughout the campaign, You systematically paid female employees less, on

average, than male employees.

**Request for Admission 82:**

Admit that, throughout the Campaign, You systematically paid female employees less, on

average, than male employees for performing substantially similar work.

**Request for Admission 83:**

Admit that You knew You were systematically underpaying female employees relative to

15

male employees.

**Request for Admission 84:**

Admit that You knew You were systematically underpaying female employees relative to male employees performing substantially similar work.

**Request for Admission 85:**

Admit that employees of the Campaign discussed their concerns regarding the release of a recording of Donald J. Trump using the word "nigger."

**Request for Admission 86:**

Admit that, from the date of its official launch until the present, the Campaign has had less than ten paid African American employees.

**Request for Admission 87:**

Admit that, during the time she was employed by You, Alva Johnson was considered by You to be a senior Campaign official.

**Request for Admission 88:**

Admit that, between January, 2016 and the date she ended her affiliation with the Campaign, Alva Johnson had independent authority and discretion to make decisions on behalf of the Campaign.

**Request for Admission 89:**

Admit that Alva Johnson was not terminated by the You.

**Request for Admission 90:**

Admit that Your personnel records for Alva Johnson contain no disciplinary history.

**Request for Admission 91:**

Admit that Your personnel records for Alva Johnson contain no negative reviews or evaluations.

**Request for Admission 92:**

Admit that, throughout her employment with You, Alva Johnson was generally well-regarded by her supervisors and peers.

**Request for Admission 93:**

Admit that Your applicants, potential applicants, and/or Staff have accused You of sex discrimination, including via formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution.

**Request for Admission 94:**

Admit that Your applicants, potential applicants, and/or Staff have accused You of racial discrimination, including via formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution.

**Request for Admission 95:**

Admit that Your applicants, potential applicants, and/or Staff have accused you of paying women less than similarly situated male employees, including via formal and informal, written and oral, complaints made directly to You and complaints made to other entities, actual and threatened litigation and arbitrations, and other forms of formal or informal alternative dispute resolution.

**Request for Admission 96:**

Admit that, in response to the allegations contained in Plaintiff's Complaint, White House Press Secretary Sarah Huckabee Sanders said: "This accusation is absurd on its face.  This never happened and is directly contradicted by multiple, highly credible eyewitness accounts."

**Request for Admission 97:**

Admit that, in response to the allegations contained in Plaintiff's Complaint, Trump campaign spokesperson Kayleigh McEnany said "The Trump campaign has never discriminated based on race, ethnicity, gender or any other basis.  Any allegation suggesting otherwise is off-base and unfounded."

**Request for Admission 98:**

Admit that, in response to the allegations contained in Plaintiff's Complaint, former Florida Attorney General Pam Bondi said "I was with the president in the RV, and these allegations are false."

**Request for Admission 99:**

Admit that, in response to the allegations contained in Plaintiff's Complaint, Your former employee Karen Giorno said "That absolutely did not happen."

**Request for Admission 100:**

Admit that, in response to the allegations contained in Plaintiff's Complaint, a spokesperson for First Lady Melania Trump said: "I was in the trailer and saw nothing of the sort."

Date: May 7, 2019                          Respectfully submitted,

   /s/ Hassan A. Zavareei    
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the

consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

|  |  |  |
|---|---|---|
| **ALVA JOHNSON,**<br>**Individually and On Behalf of All Others**<br>**Similarly Situated,** |  |  |
|  |  | **Case No. 8:19-cv-00475-WFJ-SPF** |
| **Plaintiff,** |  |  |
| **v.** |  |  |
| **DONALD J. TRUMP,**<br>**In his Individual Capacity and**<br>**DONALD J. TRUMP FOR**<br>**PRESIDENT, INC.** |  |  |
| **Defendant.** |  |  |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT
DONALD J. TRUMP**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff Alva Johnson, by and through her attorneys of record, hereby requests that Defendant Donald J. Trump answer the following Requests for Admission in accordance with the Definitions and Instructions below. Defendant's responses should be produced at the law offices of Tycko & Zavareei LLP, Attn: Hassan A. Zavareei, 1828 L St. NW, Suite 1000, Washington, District of Columbia, 20036, within thirty (30) days after service.

**DEFINITIONS**

1.      "You," "Your" and/or "defendant" means and refers to Donald J. Trump.

2.      "Document" and "Documents" ("Document(s)") should be interpreted in their broadest possible sense within the meaning of Rule 34(a) of the Federal Rules of Civil Procedure and shall mean the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, as well as any attachment thereto or enclosure therewith.

1

"Document(s)" includes all written, typewritten, handwritten, printed, computerized, electronically created or stored, or graphic matter of any kind or nature, however produced or reproduced; any form of collected data for use with electronic data processing equipment; any physical object or thing, and any mechanical or electronic visual or sound recordings now or formerly in Defendant's possession, custody or control or known to Defendant regardless of physical location. "Document(s)" includes all materials and tangible objects conveying or carrying spoken, visual or literal substance, including papers, correspondence, records, tables, charts, analysis, graphs, schedules, reports, spreadsheets, memoranda, journals, notes, logs, calendars, appointment books, letters, telegrams, telecopy, telex and telefacsimile transmissions, messages, studies, books, periodicals, magazines, newspapers, booklets, advertisements, brochures, instructions, minutes, contracts, books of account, orders, invoices, statements, checks, bills, receipts, files, vouchers, notebooks, scrapbooks, data sheets, data processing cards, computer files, computer disks, computer printouts, "e-mail" messages, photographs, negatives, phone recordings, tape recordings, wire recordings, drawings, forms, catalogues, manuals, tabulations, tweets, voicemail messages, transcripts, offers, contracts, bids, proposals, licenses, permits, reports to any government agency, diary entries, calendar entries, drawings, printouts, discs, drives, microfilm, microfiche, audio tape, video tape, instant messages, text messages, messages sent through any encrypted application (including, but not limited to, Signal, WhatsApp, and Viber), and any other matter of any kind, regardless of the manner in which produced.

3.      "And" means "or" and "or" means "and," as necessary to call for the broadest possible construction and to bring within the scope of this request any information that may otherwise be construed to be outside its scope.

4.      "Communication(s)" means  the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by one or more persons and/or

between two or more persons by or through any means including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind (including, but not limited to, e-mail, instant messaging, or other computer linkups), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, telexes, telecopies, facsimile, telegram, microfilm, microfiche, photographic film of all type, or other media of any kind.

5. As used herein, the words "relate to," "refer to," "with respect to," "reflect," "regarding," "pertaining to" or "concerning" means mentioning, discussing, reflecting, containing, consisting of, evidencing, embodying, stating, dealing with, making reference or relating to in any way, or having any logical or factual connection with the subject matter identified in a discovery request.

6. The term "individual" or "person" as used herein, shall include without limitation any individual, natural person, and entity of every type and description, including (without limitation) any firm, partnership, association, joint venture, public or private corporation, proprietorship, government entity, organization, other business enterprise, group of natural persons, or other entity that has a separate legal existence.

7. Words in the singular include the plural, and vice versa. The past tense includes the present tense when the clear meaning is not distorted by the change of tense.

8. The term "each" as used herein shall be construed to mean "all" and the term "all" as used herein shall be construed to mean "each" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9. "Plaintiff" refers to Alva Johnson.

10.     The "Campaign" shall mean defendant Donald J. Trump for President, Inc., its
subsidiaries, affiliated companies, parent companies, predecessor companies, successor companies,
officers, directors, employees, agents, representatives, and all persons acting or purporting to act on
their behalf. In accordance with Local Rule 26(a), this definition is not intended to impose a
discovery obligation on any person who is not a party to the litigation.

11.     "Declaration" means a statement signed or otherwise executed by You, including
sworn declarations, affidavits, attestations, interrogatory responses or any other statements, and
including statements signed by hand, through electronic means such as DocuSign or Adobe Sign, or
any other means.

12.      "Grope" means touching in a sexual manner, including fondling and caressing,
contact with any private parts (including genitalia, breasts, and buttocks).

13.     "Legal Proceeding" means any dispute resolution proceeding, whether in court,
arbitration, an administrative agency, or any other forum.

14.     "Non-disclosure Agreement" or "NDA" means any contract or agreement between,
on the one hand, You, anyone acting on Your behalf, the Campaign, or any Trump Entity, and, on
the other hand, any other person, which prohibits (or contains any provision prohibiting) signatories
from disclosing information about Your personal life, political affairs, and/or business affairs;
disclosing communications with You or any Trump Entity; or disparaging You, members of Your
family or any Trump Entity. NDAs also include any agreement that contain a nondisclosure or
nondisparagement provision as described in the previous sentence, even if it also includes other
provisions.

15.     "Sexual Behavior" has the normal colloquial meaning, and shall include all manner of
sexual conduct, including kissing, groping, fondling, caressing, oral sex, vaginal intercourse, anal

intercourse, contact with any private parts (including genitalia, breasts, and buttocks), and sexual

banter and joking, whether consensual or non-consensual.

16.     "Staff" includes current and former employees, independent contractors, consultants,

interns, and any other individuals receiving or who received compensation in exchange for services.

17.     "Tweet" refers to writing and posting a written statement on the website Twitter,

whether through its web browser, mobile browser, or mobile application.

18.     "Trump Entity" means any entity, partnership, trust, or organization that, in whole or

in part, was created by or for the benefit of Donald J. Trump and/or is controlled or owned by Donald

J. Trump.

## **INSTRUCTIONS**

1.     Each Request for Admission is to be answered separately and fully, in writing, and

under oath within thirty (30) days of the date of service.

2.     Rule 36 of the Federal Rules of Civil Procedure are incorporated herein by reference.

3.     Rule 36(a) provides that each matter requested to be admitted is conclusively

established and admitted for the purposes of this action unless, within thirty (30) days after service

of this request, you serve upon the party making these requests either:  (a) a written statement signed

by You or Your attorney admitting the request, specifically denying the request, or stating in detail

why You are unable to truthfully admit or deny the request; or (b) a written objection signed by

Your attorney setting forth the grounds for such objection.

4.     Rule 36(a) further requires that any denial by You of a request must fairly meet the

substance of the requested admission and that, when good faith requires that an answer be qualified

or a part of the request be denied, such qualification or denial must be specific and admit the part of

the requested admission that is true.

5.      Lack of information or knowledge is an insufficient basis for failing to admit or deny a request unless You include in Your response a certification that You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny the request.  Your inquiry is "reasonable" only when (a) You examine any and all documents or tangible things in Your possession, custody, or control that refer or relate to the matter requested to be admitted in any way and (b) You make inquiry of Your principals, agents, employees, attorneys, representatives, any persons acting or purporting to act on Your behalf, and any other person(s) in active concert or participation with You, whether past or present and without regard to whether or not their relationship with You currently exists or has been terminated.

6.      It is not a sufficient answer that a request presents a genuine issue for trial.  If You deny any request and the truth of the request is eventually proven at trial, Rule 37(c) provides that You may be ordered to pay to the requesting party the reasonable expenses incurred in proving the matters requested to be admitted, including reasonable attorneys' fees.

7.      A party requested to admit that a document contains specified quoted material may not object on the ground that the document "speaks for itself." Such a response is not a legitimate objection but an evasion of the responsibility to either admit or deny a request for admission.

8.      In accordance with Federal Rule of Civil Procedure 26(e), these Requests for Admission are deemed continuing in nature, so as to require Defendant to file supplemental responses if, as, and when additional or different information becomes available at any time prior to or during trial.

9.      When knowledge or information in the possession of Defendant is requested, such a request includes within its scope knowledge or information within the possession or control of Defendant's agents, representatives, and attorneys.

## REQUESTS FOR ADMISSION

**Request for Admission 1:**

Admit that on at least one occasion You kissed Alva Johnson.

**Request for Admission 2:**

Admit that on at least one occasion You kissed Alva Johnson on the lips.

**Request for Admission 3:**

Admit that You were at a Campaign rally in Birmingham, Alabama on November 21, 2015.

**Request for Admission 4:**

Admit that You attended a meet-and-greet before the Campaign rally in Birmingham, Alabama on November 21, 2015.

**Request for Admission 5:**

Admit that You met Alva Johnson at the meet-and-greet before the Campaign rally in Birmingham, Alabama on November 21, 2015.

**Request for Admission 6:**

Admit that as Alva Johnson approached You at the meet-and-greet before the Campaign rally in Birmingham, Alabama on November 21, 2015, You said "beautiful, fantastic."

**Request for Admission 7:**

Admit that, on November 21, 2015, when You said to Alva Johnson "beautiful, fantastic," You were referring to her physical appearance.

**Request for Admission 8:**

Admit that You have made comments to women other than Alva Johnson regarding their physical appearance, when You did not share an intimate relationship with those women.

**Request for Admission 9:**

7

Admit that, in 2017, You commented to the French First Lady, Brigitte Trogneux, "You know, you're in such good shape … beautiful."

**Request for Admission 10:**

Admit that, in 2013, You said to *Celebrity Apprentice* contestant Brande Roderick: "It must be a pretty picture. You dropping to your knee."

**Request for Admission 11:**

Admit that You were in Tampa, Florida on August 24, 2016.

**Request for Admission 12:**

Admit that You attended a Campaign rally in Tampa, Florida on August 24, 2016.

**Request for Admission 13:**

Admit that You met with Campaign Staff and volunteers in Tampa, Florida on August 24, 2016.

**Request for Admission 14:**

Admit that You went inside a Campaign recreational vehicle ("RV") before a Campaign rally on August 24, 2016 in Tampa, Florida.

**Request for Admission 15:**

Admit that You met with Campaign Staff and volunteers in Tampa, Florida on August 24, 2016 inside of a Campaign recreational vehicle ("RV").

**Request for Admission 16:**

Admit that Pamela Jo Bondi was present with You inside of a Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 17:**

Admit that, in 2013, the Donald J. Trump Foundation made a $25,000 donation to a political action committee (PAC) established by Pamela Jo Bondi to support her re-election campaign.

**Request for Admission 18:**

Admit that, in 2016, the IRS concluded that the donation to Pamela Jo Bondi's PAC violated

laws against political contributions from nonprofit organizations, and ordered the Donald J. Trump

Foundation to pay a fine for the illegal contribution.

**Request for Admission 19:**

Admit that Karen Giorno was present with You inside a Campaign recreational vehicle

("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 20:**

Admit that Earl "Tony" Ledbetter was present with You inside of a Campaign recreational

vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 21:**

Admit that Mitch Tyner was present with You inside of a Campaign recreational vehicle

("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 22:**

Admit that Nick Corvino was present with You inside of a Campaign recreational vehicle

("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 23:**

Admit that Alva Johnson was present with You inside of a Campaign recreational vehicle

("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 24:**

Admit that You were wearing a pink tie at the Campaign event in Tampa, Florida on August

24, 2016.

**Request for Admission 25:**

Admit that You posed for pictures on August 24, 2016 inside of a Campaign recreational

vehicle ("RV") in Tampa, Florida.

**Request for Admission 26:**

Admit that You signed autographs on August 24, 2016 inside of a Campaign recreational vehicle ("RV") in Tampa, Florida.

**Request for Admission 27:**

Admit that You grasped Alva Johnson's hand in the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 28:**

Admit that You told Alva Johnson that she was doing a "great job" in the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 29:**

Admit that, at the Campaign event in Tampa, Florida on August 24, 2016, You told Alva Johnson that You would not forget her.

**Request for Admission 30:**

Admit that, at the Campaign event in Tampa, Florida on August 24, 2016, You told Alva Johnson that You would take care of her.

**Request for Admission 31:**

Admit that You intentionally kissed Alva Johnson in the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 32:**

Admit that You did not request Alva Johnson's consent to be kissed by You in the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 33:**

Admit that You knew that Alva Johnson did not wish to be kissed by You in the Campaign

10

recreational vehicle ("RV") in Tampa, Florida on August 24, 2016.

**Request for Admission 34:**

Admit that You knew that Your kissing Alva Johnson in the Campaign recreational vehicle ("RV") in Tampa, Florida on August 24, 2016 would be offensive to her.

**Request for Admission 35:**

Admit that You have kissed women other than Alva Johnson without those women's individual consent.

**Request for Admission 36:**

Admit that You have kissed women other than Alva Johnson without those women's individual consent in the presence of other people.

**Request for Admission 37:**

Admit that You know that Your kissing of women other than Alva Johnson without those women's individual consent has caused those women distress and offense.

**Request for Admission 38:**

Admit that You have Groped women other than Alva Johnson without those women's consent.

**Request for Admission 39:**

Admit that You have Groped women other than Alva Johnson without those women's consent in the presence of other people.

**Request for Admission 40:**

Admit that You know that Your Groping of women other than Alva Johnson without those women's individual consent has caused those women distress and offense.

**Request for Admission 41:**

Admit that in a conversation with Billy Bush You stated: "I moved on her, actually. You

11

know, she was down on Palm Beach. I moved on her, and I failed. I'll admit it."

**Request for Admission 42:**

Admit that in a conversation with Billy Bush You stated: "I did try and fuck her. She was married."

**Request for Admission 43:**

Admit that in a conversation with Billy Bush You stated: "I moved on her very heavily. In fact, I took her out furniture shopping. She wanted to get some furniture. I said, 'I'll show you where they have some nice furniture.' I took her out furniture . . . I moved on her like a bitch. But I couldn't get there. And she was married. Then all of a sudden I see her, she's now got the big phony tits and everything. She's totally changed her look."

**Request for Admission 44:**

Admit that in a conversation with Billy Bush You stated: "Yeah, that's her. With the gold. I better use some Tic Tacs just in case I start kissing her. You know I'm automatically attracted to beautiful – I just start kissing them. It's like a magnet. Just kiss. I don't even wait. And when you're a star, they let you do it. You can do anything."

**Request for Admission 45:**

Admit that in a conversation with Billy Bush You stated "Grab 'em by the pussy. You can do anything."

**Request for Admission 46:**

Admit that when you sated, in a conversation with Billy Bush, "Grab 'em by the pussy. You can do anything" the word " 'em" refers to women.

**Request for Admission 47:**

Admit that You stated You were a sexual predator while appearing on The Howard Stern Show.

**Request for Admission 48:**

Admit that the following exchange occurred on the Howard Stern Show:

"HOWARD STERN: Donald, seriously. You know about sexual predators and

things like that, I mean –

ROBIN QUIVERS: You are one!

HOWARD STERN: Alright, look, I wasn't gonna say that –

You: It's true.

HOWARD STERN: But, uh –

You: It's true."

**Request for Admission 49:**

Admit that You stated "Well, I'll tell you the funniest is that before a show, I'll go backstage

and everyone's getting dressed, and everything else, and you know, no men are anywhere, and I'm

allowed to go in because I'm the owner of the pageant…You know, they're standing there with no

clothes. 'Is everybody OK?' And you see these incredible looking women, and so, I sort of get away

with things like that."

**Request for Admission 50:**

Admit that on multiple occasions You entered the Miss USA contestants' dressing room

while contestants were naked.

**Request for Admission 51:**

Admit that You entered the Miss Teen USA contestants' dressing room while contestants

were changing their clothes.

**Request for Admission 52:**

Admit that on at least one occasion You kissed Jennifer Hawkins.

**Request for Admission 53:**

Admit that prior to kissing Jennifer Hawkins You did not ask for her express consent.

**Request for Admission 54:**

Admit that Jennifer Hawkins did not expressly consent to being kissed by You.

**Request for Admission 55:**

Admit that You knew Jennifer Hawkins did not consent to You kissing her but You kissed her anyway.

**Request for Admission 56:**

Admit that on at least one occasion You kissed Jill Harth.

**Request for Admission 57:**

Admit that prior to kissing Jill Harth You did not ask for her express consent.

**Request for Admission 58:**

Admit that Jill Harth did not expressly consent to being kissed by You.

**Request for Admission 59:**

Admit that You knew Jill Harth did not consent to You kissing her but You kissed her anyway.

**Request for Admission 60:**

Admit that on at least one occasion You kissed Temple Taggart.

**Request for Admission 61:**

Admit that prior to kissing Temple Taggart You did not ask for her express consent.

**Request for Admission 62:**

Admit that Temple Taggart did not expressly consent to being kissed by You.

**Request for Admission 63:**

Admit that You knew Temple Taggart did not consent to You kissing her but You kissed her anyway.

**Request for Admission 64:**

Admit that on at least one occasion You attempted to kiss Cathy Heller.

**Request for Admission 65:**

Admit that prior to attempting to kiss Cathy Heller You did not ask for her express consent.

**Request for Admission 66:**

Admit that Cathy Heller did not expressly consent to being kissed by You.

**Request for Admission 67:**

Admit that You knew Cathy Heller did not consent to You kissing her but You attempted to kiss her anyway.

**Request for Admission 68:**

Admit that on at least one occasion You kissed Rachel Crooks.

**Request for Admission 69:**

Admit that prior to kissing Rachel Crooks You did not ask for her express consent.

**Request for Admission 70:**

Admit that Rachel Crooks did not expressly consent to being kissed by You.

**Request for Admission 71:**

Admit that You knew Rachel Crooks did not consent to You kissing her but You kissed her anyway.

**Request for Admission 72:**

Admit that on at least one occasion You kissed Natasha Stoynoff.

**Request for Admission 73:**

Admit that prior to kissing Natasha Stoynoff You did not ask for her express consent.

**Request for Admission 74:**

Admit that Natasha Stoynoff did not expressly consent to being kissed by You.

15

**Request for Admission 75:**

Admit that You knew Natasha Stoynoff did not consent to You kissing her but You kissed her anyway.

**Request for Admission 76:**

Admit that You stated, in regards to allegations that You kissed Natasha Stoynoff, "[l]ook at her. Look at her words. Tell me what you think. I don't think so."

**Request for Admission 77:**

Admit that on at least one occasion You kissed Jessica Drake.

**Request for Admission 78:**

Admit that prior to kissing Jessica Drake You did not ask for her express consent.

**Request for Admission 79:**

Admit that Jessica Drake did not expressly consent to being kissed by You.

**Request for Admission 80:**

Admit that You knew Jessica Drake did not consent to You kissing her but You kissed her anyway.

**Request for Admission 81:**

Admit that on at least one occasion You kissed Summer Zervos.

**Request for Admission 82:**

Admit that prior to kissing Summer Zervos You did not ask for her express consent.

**Request for Admission 83:**

Admit that Summer Zervos did not expressly consent to being kissed by You.

**Request for Admission 84:**

Admit that You knew Summer Zervos did not consent to You kissing her but You kissed her anyway.

**Request for Admission 85:**

Admit that on at least one occasion You attempted to Grope Summer Zervos.

**Request for Admission 86:**

Admit that prior to Groping Summer Zervos You did not ask for her express consent.

**Request for Admission 87:**

Admit that Summer Zervos did not expressly consent to being Groped by You.

**Request for Admission 88:**

Admit that You knew Summer Zervos did not consent to You Groping her but You Groped her anyway.

**Request for Admission 89:**

Admit that on or about October 15, 2016 You Tweeted that Summer Zervos's allegations that You Groped and kissed her were "fabricated and made-up charges."

**Request for Admission 90:**

Admit that You Tweeted that Summer Zervos's allegations that You Groped and kissed her were a "hoax."

**Request for Admission 91:**

Admit that, at a Campaign rally in North Carolina on or about October 14, 2016, You stated: "These allegations are 100% false . . . They are made up, they never happened . . . It's not hard to find a small handful of people willing to make false smears for personal fame, who knows maybe for financial reasons, political purposes."

**Request for Admission 92:**

Admit that, when You stated that "These allegations are 100% false . . . They are made up, they never happened . . . It's not hard to find a small handful of people willing to make false smears for personal fame, who knows maybe for financial reasons, political purposes," the "allegations" in

question were Summer Zervos's allegations that You Groped and kissed her.

**Request for Admission 93:**

      Admit that on or about October 15, 2016 You Tweeted that Summer Zervos's allegations

that You Groped and kissed her were "false and unsubstantiated charges, and outright lies."

**Request for Admission 94:**

      Admit that on or about October 15, 2016, at a rally in Portsmouth, New Hampshire, You

stated: "[T]oday, the cousin of one of these people, very close to her, wrote a letter that what she

said is a lie. That she was a huge fan of Donald Trump. That she invited Donald Trump to her

restaurant to have dinner, which by the way I didn't go to, didn't even know who the heck we're

talking about here. But these allegations have been, many of them already proven so false."

**Request for Admission 95:**

      Admit that when You stated, "[T]oday, the cousin of one of these people, very close to her,

wrote a letter that what she said is a lie. That she was a huge fan of Donald Trump. That she invited

Donald Trump to her restaurant to have dinner, which by the way I didn't go to, didn't even know

who the heck we're talking about here. But these allegations have been, many of them already

proven so false," "she" and "her" referred to Summer Zervos.

**Request for Admission 96:**

      Admit that when You stated, "[T]oday, the cousin of one of these people, very close to her,

wrote a letter that what she said is a lie. That she was a huge fan of Donald Trump. That she invited

Donald Trump to her restaurant to have dinner, which by the way I didn't go to, didn't even know

who the heck we're talking about here. But these allegations have been, many of them already

proven so false," the "allegations" referred to Summer Zervos's allegations that You Groped and

kissed her.

**Request for Admission 97:**

Admit that on or about October 15, 2016, at a rally in Portsmouth, New Hampshire, You stated "Total lies, and you've been seeing total lies."

**Request for Admission 98:**

Admit that when You stated, "Total lies, and you've been seeing total lies," You were referring to Summer Zervos's allegations that You Groped and kissed her.

**Request for Admission 99:**

Admit that on or about October 15, 2016, at a rally in Portsmouth, New Hampshire, You stated, "false allegations and outright lies, in an effort to elect Hillary Clinton President."

**Request for Admission 100:**

Admit that when You stated "false allegations and outright lies, in an effort to elect Hillary Clinton President," You were referring to Summer Zervos's allegations that You Groped and kissed her.

**Request for Admission 101:**

Admit that on or about October 17, 2016, You Tweeted a statement that included a picture of Summer Zervos and stated, "This is all yet another hoax."

**Request for Admission 102:**

Admit that on at least one occasion You kissed Katy Tur.

**Request for Admission 103:**

Admit that prior to kissing Katy Tur You did not ask for her express consent.

**Request for Admission 104:**

Admit that Katy Tur did not expressly consent to being kissed by You.

**Request for Admission 105:**

Admit that You knew Katy Tur did not consent to You kissing her but You kissed her anyway.

**Request for Admission 106:**

Admit that on at least one occasion You Groped Jessica Leeds.

**Request for Admission 107:**

Admit that prior to Groping Jessica Leeds You did not ask for her express consent.

**Request for Admission 108:**

Admit that Jessica Leeds did not expressly consent to being Groped by You.

**Request for Admission 109:**

Admit that You knew Jessica Leeds did not consent to You Groping her but You Groped

her anyway.

**Request for Admission 110:**

Admit that on at least one occasion You Groped Kristin Anderson.

**Request for Admission 111:**

Admit that prior to Groping Kristin Anderson You did not ask for her express consent.

**Request for Admission 112:**

Admit that Kristin Anderson did not expressly consent to being Groped by You.

**Request for Admission 113:**

Admit that You knew Kristin Anderson did not consent to You Groping her but You

Groped her anyway.

**Request for Admission 114:**

Admit that on at least one occasion You Groped Karena Virginia.

**Request for Admission 115:**

Admit that prior to Groping Karena Virginia You did not ask for her express consent.

**Request for Admission 116:**

Admit that Karena Virginia did not expressly consent to being Groped by You.

20

**Request for Admission 117:**

Admit that You knew Karena Virginia did not consent to You Groping her but You Groped her anyway.

**Request for Admission 118:**

Admit that on at least one occasion You Groped Mindy McGillivray.

**Request for Admission 119:**

Admit that prior to Groping Mindy McGillivray You did not ask for her express consent.

**Request for Admission 120:**

Admit that Mindy McGillivray did not expressly consent to being Groped by You.

**Request for Admission 121:**

Admit that You knew Mindy McGillivray did not consent to You Groping her but You Groped her anyway.

**Request for Admission 122:**

Admit that on at least one occasion You Groped Ninni Laaksonen.

**Request for Admission 123:**

Admit that prior to Groping Ninni Laaksonen You did not ask for her express consent.

**Request for Admission 124:**

Admit that Ninni Laaksonen did not expressly consent to Groped by You.

**Request for Admission 125:**

Admit that You knew Ninni Laaksonen did not consent to You Groping her but You Groped her anyway.

**Request for Admission 126:**

Admit that on at least one occasion You Groped Cassandra Searles.

**Request for Admission 127:**

21

Admit that prior to Groping Cassandra Searles You did not ask for her express consent.

**Request for Admission 128:**

Admit that Cassandra Searles did not expressly consent to being Groped by You.

**Request for Admission 129:**

Admit that You knew Cassandra Searles did not consent to You Groping her but You

Groped her anyway.

**Request for Admission 130:**

Admit that on or about October 15, 2016, at a Campaign rally in Bangor, Maine You stated,

"false allegations and outright lies, in an effort to elect Hillary Clinton president. . . . False stories, all

made up. Lies. Lies. No witnesses, no nothing. All big lies."

**Request for Admission 131:**

Admit that when You stated, "false allegations and outright lies, in an effort to elect Hillary

Clinton president. . . . False stories, all made up. Lies. Lies. No witnesses, no nothing. All big lies,"

You were describing allegations about Your Sexual Behavior.

**Request for Admission 132:**

Admit that on or about October 16, 2016 You Tweeted: "Polls close, but can you believe I

lost large numbers of women voters based on made up events THAT NEVER HAPPENED."

**Request for Admission 133:**

Admit that when You Tweeted, "Polls close, but can you believe I lost large numbers of

women voters based on made up events THAT NEVER HAPPENED," the "made up events

THAT NEVER HAPPENED" referred to allegations about Your Sexual Behavior.

**Request for Admission 134:**

Admit that on or about October 17, 2016 You Tweeted: "Can't believe these totally phoney

[sic] stories, 100% made up by women (many already proven false)."

**Request for Admission 135:**

Admit that when You Tweeted, "Can't believe these totally phoney [sic] stories, 100% made up by women (many already proven false)" You were referring to allegations about Your Sexual Behavior.

**Request for Admission 136:**

Admit that on or about October 17, 2016 You Tweeted that the media had put "women front and center with made-up stories and lies."

**Request for Admission 137:**

Admit that when You Tweeted that the media had put "women front and center with made-up stories and lies" You were referring to allegations regarding Your Sexual Behavior.

**Request for Admission 138:**

Admit that on or about October 17, 2016, at a Campaign rally in Green Bay, Wisconsin, You stated that the media takes "a story, with absolutely nothing, that didn't exist, and they put it front page news because they want to poison the minds of voters."

**Request for Admission 139:**

Admit that when You stated that the media takes "a story, with absolutely nothing, that didn't exist, and they put it front page news because they want to poison the minds of voters" the "story" refers to allegations about Your Sexual Behavior.

**Request for Admission 140:**

Admit that on or about October 17, 2016, at a Campaign rally in Green Bay, Wisconsin, You stated that "They want to put nice sexy headlines up, even though nothing happened. Nothing took place. Even though it's a total fabrication."

**Request for Admission 141:**

Admit that when You stated that "They want to put nice sexy headlines up, even though

23

nothing happened. Nothing took place. Even though it's a total fabrication," "it" referred to allegations about Your Sexual Behavior.

**Request for Admission 142:**

Admit that on or about October 18, 2016, at a Campaign rally at Grand Junction, Colorado, You stated that "The press . . . rigged it from the beginning by telling totally false stories. Most recently about phony allegations . . ."

**Request for Admission 143:**

Admit that when You stated that "The press . . . rigged it from the beginning by telling totally false stories. Most recently about phony allegations . . ." the "phony allegations" referred to allegations about Your Sexual Behavior.

**Request for Admission 144:**

Admit that on or about October 19, 2016, at a presidential debate in Las Vegas, Nevada, You stated that: "I would say the only way – because those stories are all totally false. I have to say that. And I didn't even apologize to my wife, who's sitting right here, because I didn't do anything. I didn't know any of these women—I didn't see these women. These women—the woman on the plane, the – I think they want either fame or her campaign did it."

**Request for Admission 145:**

Admit that when You stated that "I would say the only way – because those stories are all totally false. I have to say that. And I didn't even apologize to my wife, who's sitting right here, because I didn't do anything. I didn't know any of these women—I didn't see these women. These women—the woman on the plane, the – I think they want either fame or her campaign did it," the "stories" referred to allegations about Your Sexual Behavior.

**Request for Admission 146:**

Admit that when You stated that "I would say the only way – because those stories are all

totally false. I have to say that. And I didn't even apologize to my wife, who's sitting right here, because I didn't do anything. I didn't know any of these women—I didn't see these women. These women—the woman on the plane, the – I think they want either fame or her campaign did it," "the woman on the plane" referred to Jessica Leeds.

**Request for Admission 147:**

Admit that on or about October 19, 2016, at a presidential debate in Las Vegas, Nevada, You stated that "I believe, Chris, that she got these people to step forward. If it wasn't, they get their 10 minutes of fame. But they were all totally – it was all fiction. It was lies, and it was fiction."

**Request for Admission 148:**

Admit that when You stated "I believe, Chris, that she got these people to step forward. If it wasn't, they get their 10 minutes of fame. But they were all totally – it was all fiction. It was lies, and it was fiction," "it" referred to allegations about Your Sexual Behavior.

**Request for Admission 149:**

Admit that on or about October 22, 2016, at a Campaign rally at Gettysburg, Pennsylvania, You stated, "Every woman lied when they came forward to hurt my campaign, total fabrication. The events never happened. Never. All of these liars will be sued after the election is over."

**Request for Admission 150:**

Admit that when You stated "Every woman lied when they came forward to hurt my campaign, total fabrication. The events never happened. Never. All of these liars will be sued after the election is over," the "events" referred to allegations about Your Sexual Behavior.

**Request for Admission 151:**

Admit that when You stated "Every woman lied when they came forward to hurt my campaign, total fabrication. The events never happened. Never. All of these liars will be sued after the election is over," "these liars" referred to women who made public statements about Your

25

Sexual Behavior.

**Request for Admission 152:**

Admit that You or individuals acting on Your behalf have bought the rights to stories regarding Your Sexual Behavior to prevent them from becoming public.

**Request for Admission 153:**

Admit that Your real estate company tried to avoid renting apartments to African-Americans in the 1970s.

**Request for Admission 154:**

Admit that You said, in an NBC News interview, "If I were starting off today, I would love to be a well-educated black, because I really believe they do have an actual advantage."

**Request for Admission 155:**

Admit that You said, in a 2016 debate with Hillary Clinton, "Our inner cities, African Americans, Hispanics are living in hell because it's so dangerous. You walk down the street, you get shot."

**Request for Admission 156:**

Admit that You directed the following question to black voters during a campaign event in Michigan: "You're living in poverty; your schools are no good; you have no jobs. What the hell do you have to lose?"

**Request for Admission 157:**

Admit that You have said the word "nigger."

**Request for Admission 158:**

Admit that You have used the word "nigger" to refer to African American people.

**Request for Admission 159:**

Admit that a video recording of You using the word "nigger" exists.

26

**Request for Admission 160:**

Admit that You retweeted an account with the handle "White Genocide."

**Request for Admission 161:**

Admit that You said "laziness is a trait in blacks."

**Request for Admission 162:**

Admit that at a Campaign rally in June 2016 You pointed at an African American attendee and said, "Look at my African American over here. Look at him."

**Request for Admission 163:**

Admit that You told *New York Magazine*, "You have to treat 'em like shit."

**Request for Admission 164:**

Admit that when You told *New York Magazine*, "You have to treat 'em like shit," "'em" referred to women.

**Request for Admission 165:**

Admit that You or someone acting on Your behalf required women with or against whom You have engaged in Sexual Behavior to execute NDAs.

**Request for Admission 166:**

Admit that You or someone acting on Your behalf brought Legal Proceedings to enforce NDAs against women with or against whom You have engaged in Sexual Behavior.

**Request for Admission 167:**

Admit that You or someone acting on Your behalf threatened Legal Proceedings to enforce NDAs against women with or against whom You have engaged in Sexual Behavior.

**Request for Admission 168:**

Admit that women with or against whom you have engaged in Sexual Behavior have executed NDAs as part of settlements of Legal Proceedings involving You.

**Request for Admission 169:**

Admit that women with or against whom you have engaged in Sexual Behavior have executed NDAs as part of settlements of Legal Proceedings involving Trump Entities.

**Request for Admission 170:**

Admit that You or someone acting on Your behalf required Staff of Your Campaign to execute NDAs.

**Request for Admission 171:**

Admit that You or someone acting on Your behalf brought Legal Proceedings against Campaign Staff members to enforce NDAs.

**Request for Admission 172:**

Admit that You or someone acting on Your behalf threatened Legal Proceedings to enforce NDAs against Campaign Staff members.

**Request for Admission 173:**

Admit that Campaign Staff members executed NDAs as part of settlements of Legal Proceedings involving You.

**Request for Admission 174:**

Admit that Campaign Staff members executed NDAs as part of settlements of Legal Proceedings involving the Campaign.

**Request for Admission 175:**

Admit that Campaign Staff members executed NDAs as part of settlements of Legal Proceedings involving Trump Entities.

**Request for Admission 176:**

Admit that You or someone acting on Your behalf required volunteers for Your Campaign to execute NDAs.

**Request for Admission 177:**

Admit that You or someone acting on Your behalf brought Legal Proceedings against Campaign volunteers to enforce NDAs.

**Request for Admission 178:**

Admit that You or someone acting on Your behalf brought Legal Proceedings against former Campaign volunteers to enforce NDAs.

**Request for Admission 179:**

Admit that You or someone acting on Your behalf threatened Legal Proceedings to enforce NDAs against Campaign volunteers.

**Request for Admission 180:**

Admit that You or someone acting on Your behalf threatened Legal Proceedings to enforce NDAs against former Campaign volunteers.

**Request for Admission 181:**

Admit that Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving You.

**Request for Admission 181:**

Admit that former Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving You.

**Request for Admission 182:**

Admit that former Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving the Campaign.

**Request for Admission 183:**

Admit that Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving the Campaign.

**Request for Admission 184:**

Admit that former Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving Trump Entities.

**Request for Admission 184:**

Admit that Campaign volunteers executed NDAs as part of settlements of Legal Proceedings involving Trump Entities.

**Request for Admission 185:**

Admit that You or someone acting on Your behalf required Summer Zervos to execute an NDA.

**Request for Admission 186:**

Admit that You or someone acting on Your behalf required Jessica Denson to execute an NDA.

**Request for Admission 187:**

Admit that You or someone acting on Your behalf brought a Legal Proceeding to enforce an NDA against Jessica Denson.

**Request for Admission 188:**

Admit that You or someone acting on Your behalf required Stephanie Cliffords (a/k/a Stormy Daniels) to execute an NDA.

**Request for Admission 189:**

Admit that You or someone acting on Your behalf required Karen McDougal to execute an NDA.

**Request for Admission 190:**

Admit that You or someone acting on Your behalf threatened to bring a Legal Proceeding against Karen McDougal to enforce an NDA.

**Request for Admission 191:**

Admit that You or someone acting on Your behalf required Elizabeth Mae Davidson to execute an NDA.

**Request for Admission 192:**

Admit that You or someone acting on Your behalf threatened to bring a Legal Proceeding against Elizabeth Mae Davidson to enforce an NDA.

**Request for Admission 193:**

Admit that You or someone acting on Your behalf brought a Legal Proceeding against Elizabeth Mae Davidson to enforce an NDA.

**Request for Admission 194:**

Admit that You or someone acting on Your behalf required Elizabeth Mae Davidson to execute a new NDA subsequent to the first one.

**Request for Admission 195:**

Admit that You or someone acting on Your behalf required Omarosa Manigault to execute an NDA.

**Request for Admission 196:**

Admit that You or someone acting on Your behalf brought a Legal Proceeding against Omarosa Manigault to enforce an NDA.

**Request for Admission 197:**

Admit that in 1991 You told *Esquire* magazine that it "doesn't really matter" what the media writes "as long as you've got a young and beautiful piece of ass."

**Request for Admission 198:**

Admit that in 1992 You said that Katarina Witt "could only be described as attractive if you like a woman with a bad complexion who is built like a linebacker."

**Request for Admission 199:**

Admit that in 1994 You told NBC News that "I think putting a wife to work is a very dangerous thing. Unfortunately, after they're a star, the fun is over for me. It's like a creation process. It's almost like creating a building. It's pretty sad."

**Request for Admission 200:**

Admit that in 1997 You told Howard Stern: "if you're looking for a rocket scientist, don't tune in tonight, but if you're looking for a really beautiful woman, you should watch."

**Request for Admission 201:**

Admit that when You stated, "if you're looking for a rocket scientist, don't tune in tonight, but if you're looking for a really beautiful woman, you should watch" You were referring to the Miss USA Pageant.

**Request for Admission 202:**

Admit that in 1999 You stated, "She made me promise, swear to her that I would never date a girl younger than her. So as she grows older, the field is getting very limited."

**Request for Admission 203:**

Admit that when You stated, "She made me promise, swear to her that I would never date a girl younger than her. So as she grows older, the field is getting very limited," "She" referred to your daughter.

**Request for Admission 204:**

Admit that in in 2006 You stated: "Rosie O'Donnell is disgusting, both inside and out. If you take a look at her, she's a slob … We're all a little chubby but Rosie's just worse than most of us."

**Request for Admission 205:**

Admit that in 2011 You told Elizabeth Beck she was "disgusting" when she asked to take a break to breastfeed her daughter.

**Request for Admission 206:**

Admit that in 2012 You Tweeted that Arianna Huffington "is unattractive both inside and out. I fully understand why her former husband left her for a man- he made a good decision."

**Request for Admission 207:**

Admit that in 2013 You Tweeted: "what did these geniuses expect when they put men & women together?"

**Request for Admission 208:**

Admit that when You Tweeted "what did these geniuses expect when they put men & women together?" You were referring to sexual assault in the military.

**Request for Admission 209:**

Admit that You Tweeted that Megyn Kelly is a "bimbo" in 2015.

**Request for Admission 210:**

Admit that You stated "You could see there was blood coming out of her eyes. Blood coming out of her wherever."

**Request for Admission 211:**

Admit that when You stated "You could see there was blood coming out of her eyes. Blood coming out of her wherever," "her" was referring to Megyn Kelly.

**Request for Admission 212:**

Admit that You called Alicia Machado "Miss Piggy" and "Miss Housekeeping."

**Request for Admission 213:**

Admit that You Tweeted that Mika Brzezinski was "bleeding badly from a face-lift."

Date: May 7, 2019

Respectfully submitted,

 _/s/ Hassan A. Zavareei_
Hassan A. Zavareei (admitted pro hac vice)
Katherine M. Aizpuru (admitted pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

34

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on May 7, 2019, the foregoing document was served, with the consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

<u>/s/ Hassan A. Zavareei</u>

# EXHIBIT N

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

　　　　　　　**Plaintiff,**

　　　　v.

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

　　　　　　　**Defendant.**

**Case No. 8:19-cv-00475-WFJ-SPF**

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT DONALD J.
TRUMP FOR PRESIDENT, INC.'S SECOND SET OF INTERROGATORIES TO
PLAINTIFF**

　　　　Plaintiff Alva Johnson objects and responds to Defendant Donald J. Trump for President, Inc.'s

(the "Campaign") Second Set of Interrogatories, served May 16, 2019, as follows:

**PRELIMINARY STATEMENT**

　　　　1.　　　Plaintiff's investigation and development of all facts and circumstances relating to

this action are ongoing. These responses and objections are made without prejudice to, and are not a

waiver of, Plaintiff's right to rely on other facts or documents at trial.

　　　　2.　　　By making the accompanying responses and objections to Interrogatories

propounded by the Campaign and Defendant Donald J. Trump ("Defendant Trump") (collectively,

"Defendants"), Plaintiff does not waive, and hereby expressly reserves, her right to assert any and all

objections to the admissibility of such responses into evidence in this action, or in any other

proceedings, on any and all grounds including but not limited to competency, relevancy, materiality,

and privilege. Plaintiff makes the responses and objections herein without in any way implying that

she considers the Interrogatories, and responses to the Interrogatories, relevant or material to the

subject matter of this action.

3.      Plaintiff will provide information that is presently within her personal knowledge,

possession, custody, or control. Her possession, custody, or control does not include information

that is publicly available and does not include any constructive possession conferred by Plaintiff's

right or power to compel the production of documents or information from third parties.

4.      A response to an Interrogatory stating that objections or indicating that documents

may be produced shall not be deemed or construed to mean that there are, in fact, responsive

documents or that Plaintiff acquiesces in the characterization of the conduct or activities described

in the Interrogatory or the definitions and/or instructions to the Interrogatory.

## **GENERAL OBJECTIONS**

The following objections are incorporated by reference into each of Plaintiff's specific

responses below.

1.      Plaintiff objects to the "Definitions," "Instructions," and to each discovery request

to the extent they propose to impose any requirement or discovery obligation on Plaintiff greater

than or different than those imposed by the Federal Rules of Civil Procedure and the applicable

rules of this Court.

2.      Plaintiff's discovery and investigation with respect to the issues in this case are

ongoing. The following responses and objections are provided without prejudice to Plaintiff's right

to revise or supplement these responses and objections based on subsequent discovery or

investigation.

3.      Plaintiff objects to the Interrogatories to the extent that they seek documents or

information that is protected by the attorney-client privilege, constitutes attorney work product, was

–2–

prepared in anticipation of litigation or for trial, or is otherwise privileged from discovery. Inadvertent disclosure of any privileged documents or information in response to the Interrogatories shall not constitute a waiver of any applicable privilege.

4.     Plaintiff objects to the Interrogatories as premature (at this stage of the litigation) to the extent they involve opinions or contentions that relate to fact or the application of law to fact and to the extent that they call for documents or information that will be produced and/or discovered through upcoming discovery.

5.     No response to an Interrogatory shall be deemed to constitute any agreement or concession that the subject matter of the Interrogatory is relevant to this action, and all responses shall be made without waiving or intending to waive any objection, including but not limited to objections as to relevance, privilege, or admissibility.

6.     Plaintiff objects to each Interrogatory to the extent that it asks Plaintiff to provide information that has already been produced to Defendant. Plaintiff reserves the right to produce documents or information that may be responsive to multiple requests only once.

7.     Plaintiff objects to each Interrogatory to the extent that it asks Plaintiff to provide information that Defendant can know or which Defendant is responsible for knowing.

8.     Plaintiff objects to each Interrogatory to the extent that it calls for documents or information already within in Defendant's possession, custody, or control or are publicly available and just as easily obtainable by Defendant as they are by Plaintiff.

9.     Plaintiff objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, and oppressive.

10.     Plaintiff objects to the Interrogatories to the extent that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence and not reasonably limited in time period.

11.     Plaintiff objects to the Interrogatories to the extent they assume facts that are not in evidence. By responding to these requests, Plaintiff does not admit, concede, or agree with any explicit or implicit assumption made in the requests.

12.     Plaintiff objects to the Interrogatories to the extent that they seek to define terms and/or characterize the evidence in this matter, and to the extent that they contain terms or concepts that are vague, ambiguous, and/or otherwise unintelligible. To the extent that Plaintiff adopts any terms or characterizations used by Defendant in these Interrogatories, such adoption is specifically limited solely to these responses.

13.     Plaintiff objects to the Interrogatories to the extent that they are duplicative of one another and/or of other requests contained in Defendant's other discovery requests in this action. Plaintiffs reserve the right to produce documents or information that may be responsive to multiple requests only once.

14.     Plaintiff objects to the Interrogatories to the extent that they seek disclosure of "any" documents or information responsive to a particular Interrogatory on the grounds that such a request is premature, overly broad, and unduly burdensome.

15.     Plaintiff objects to the Interrogatories to the extent that they seek production of sensitive confidential personal information.

16.     Plaintiff expressly incorporates each of these General Objections into each response below. No Response shall be understood as, nor is it intended to be, a waiver to any General Objection or specific objection that may be separately stated in response to any Interrogatory.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 13.** State all facts regarding each time that You ever met Trump in person, including without limitation: the date, time and location of each meeting; all persons who witnessed such meeting (and their contact information); all statements by You, Trump, and all others during each such meeting; whether You and Trump physically touched during that meeting and, if so, describe the physical touch in as much detail as possible; whether You contend that anything about each such meeting was improper and, if so, describe Your contention regarding impropriety in as much detail as possible; identify all persons who have or may have personal knowledge relating to such meeting, and identify all Documents that refer to, relate to, confirm or refute each such meeting, including the information requested in this interrogatory.

## RESPONSE TO INTERROGATORY NO. 13.

In addition to the above General Objections, Plaintiff objects to this Interrogatory to the extent that it calls for information that is equally available to Defendants or is exclusively within Defendants' possession, custody, or control, such as the identities and contact information of Campaign volunteers, security personnel, and/or guests of Defendant Trump or the Campaign who were present each time Plaintiff met Defendant Trump; and the identity(ies) of documents exclusively within the possession, custody, and/or control of the Campaign or Defendant Trump. Plaintiff further objects that a request seeking "all facts" is facially overbroad and unduly burdensome, as requiring each and every fact demands a laborious and time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant or trivial details. Plaintiff further objects that an interrogatory seeking "all facts" is impermissibly vague in that it does not specify what facts or information the interrogatory is seeking. Interrogatories that ask in an undifferentiated way for "all" facts are not only unduly broad, but also so vague as to be

incomprehensible. This Interrogatory is loaded with multiple words of legal significance, all subject to interpretation, and Plaintiff cannot be fairly expected to answer it. Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney-client privilege or attorney work product. This Interrogatory seeks to invade counsel's work product privilege in that it calls for a written analysis of the facts and the application of the law to the facts, seeks to ascertain all facts or other data that Plaintiff intends to offer at trial, seeks Plaintiff's interpretation of the facts, and otherwise seeks to obtain information through counsel's mental impressions, conclusions, opinions, or legal theories. Plaintiff objects to this Interrogatory to the extent that responding would breach the marital communications privilege or any other spousal privilege. Plaintiff further objects that this interrogatory is compound and contains multiple subparts because it seeks facts about multiple different interactions between Plaintiff and Trump, as well as Plaintiff's contentions about impropriety related to each such interaction. Thus, this Interrogatory actually contains three Interrogatories.

Subject to and notwithstanding the foregoing objections, Plaintiff responds as follows. The following response is in no way intended to be an all-inclusive response comprising "all facts," as such a response is impossible. And this response is subject to further supplementation and modification based on future recollections and further discovery.

**First meeting with Trump.**

On November 21, 2015, at Mr. Chess Bedsole's invitation, Ms. Johnson and Mr. Malcolm Thomas (may be contacted through Plaintiff's counsel) attended a rally in Birmingham, where Ms. Johnson met Defendant Trump for the first time. This meeting was arranged because Ms. Johnson, Mr. Thomas, and Ms. Johnson's stepfather, Dr. Jacob Savage (may be contacted through Plaintiff's

counsel), had submitted a proposal to the Campaign, and Mr. Bedsole informed them that before they could be hired they needed to meet Mr. Trump.

Because they were guests of Mr. Bedsole and they were considering joining the Campaign as staff, Ms. Johnson and Mr. Thomas were allowed to enter a VIP meet-and-greet area typically reserved for significant donors, where Defendant Trump was greeting people and shaking hands. This meet-and-greet took place prior to the rally beginning. Approximately ten other people were in the meet-and-greet area, including Terry Lathan and Ed Henry. Ms. Johnson waited until the others had an opportunity to shake hands with Defendant Trump, then walked towards him so that she could introduce herself.

As Ms. Johnson approached, Defendant Trump looked her up and down and said, "Oh, beautiful, beautiful, fantastic." Ms. Johnson shook hands with Defendant Trump. She tried to redirect Defendant Trump's attention by telling him that she was a political outsider, like him, and was coming from the private sector to work on the Campaign. Defendant Trump nevertheless continued to ogle Ms. Johnson.

Despite this uncomfortable interaction, Ms. Johnson believed that if she went to work for the Campaign, she could establish appropriate boundaries with Defendant Trump.

Plaintiff also refers Defendants to her forthcoming document production. Discovery is ongoing and Plaintiff reserves the right to supplement these responses.

**Second meeting with Trump.**

Ms. Johnson met Defendant Trump for the second time during her role on the National Strike Team. On or about April 5, 2016, Ms. Johnson helped coordinate a visit by Defendant Trump to a polling location in Waukesha, Wisconsin. Ms. Johnson helped arrange for volunteers to meet Defendant Trump at the polling location and worked with the security detail to make sure that

volunteers were in the proper places. When Defendant Trump arrived at the polling location, volunteers began to rush towards him. Ms. Johnson told the volunteers to stay back, as did security personnel who were present. Ms. Johnson was allowed into the staff-only area close to Defendant Trump. Ms. Johnson noticed that Defendant Trump was looking at her and she made eye contact with him. He appeared to recognize her and recognize that she was staff.

Plaintiff also refers Defendants to her forthcoming document production. Discovery is ongoing and Plaintiff reserves the right to supplement these responses.

**Third meeting with Trump.**

On August 24, 2016, Ms. Johnson helped organize a Campaign rally in Tampa, Florida. Prior to the rally, Defendant Trump met with volunteers and staff inside one of the Campaign RVs. During that meeting, Defendant Trump forcibly kissed Ms. Johnson without her consent.

When Defendant Trump arrived for the rally, it was raining. Campaign staff ushered him inside the RV to get him out of the rain. Ms. Johnson and other members of the Florida Campaign staff followed him inside. Other persons inside the RV included Pamela Jo Bondi, Earl "Tony" Ledbetter, Mitch Tyner, Karen Giorno, and Nick Corvino. Stephanie Grisham was not on the RV. Sarah Huckabee Sanders was not on the RV. Melania Trump was not on the RV. Ms. Giorno instructed Ms. Johnson to bring some volunteers into the RV to meet Defendant Trump. Ms. Johnson did so. Their names and contact information are presently unknown to Ms. Johnson. Security personnel were also present inside the RV. Their names and contact information are presently unknown to Ms. Johnson.

Inside the RV, Defendant Trump chatted with staff and volunteers, took pictures, and shook hands. After posing for pictures, Defendant Trump sat at a desk in the RV and autographed Campaign signs. Ms. Johnson noticed that Defendant Trump was watching her and appeared to be

attempting to make eye contact with her. After fifteen minutes or so, Secret Service officers told

Defendant Trump that he should leave to go to the rally. As Defendant Trump approached the

door, he passed Ms. Johnson. She told him that she had been on the road since March, away from

her family. She urged him to go in there and "kick ass." When she said "kick ass," he chuckled.

Defendant Trump grasped Ms. Johnson's hand and did not let go. He told her that he knew

she had been on the road for a long time and that she was doing a great job. He also told her that he

would not forget about her, and that he was going to take care of her. As Defendant Trump spoke,

he tightened his grip on Ms. Johnson's hand and leaned towards her. He moved close enough that

Ms. Johnson could feel his breath on her skin. Ms. Johnson suddenly realized that Defendant Trump

was trying to kiss her on the mouth, and attempted to avoid this by turning her head to the right.

Defendant Trump kissed her anyway, and his mouth landed on the corner of her mouth. At the

time, Ms. Johnson was wearing a baseball cap with the bill facing forward. Defendant Trump kissed

Ms. Johnson despite the presence of the bill. Given her baseball cap, Defendant Trump's kiss on Ms.

Johnson's mouth was deliberate and required intention.

Immediately afterwards, the Secret Service personnel ushered Defendant Trump off the RV.

Ms. Johnson stayed in the RV, in shock about what had just transpired. She felt confused and

humiliated. As Ms. Bondi walked off the RV, she glanced at Ms. Johnson and smiled. Ms. Giorno,

walking behind Ms. Bondi, grabbed Ms. Johnson's elbow and gave it an approving tug. Ms. Johnson

was upset that Ms. Giorno and Ms. Bondi reacted this way, since she had not wanted Defendant

Trump to kiss her and felt that it was completely inappropriate. She feared that it would impact how

they viewed her as a colleague and cause them to take her less seriously.

Driving back to Sarasota later that day, Ms. Johnson began to cry. She pulled off the highway

and called her husband, Miguel Rego and told him what had happened. She then called her parents,

Dr. Annie Savage (may be contacted through plaintiff's counsel) and Dr. Jacob Savage (may be contacted through plaintiff's counsel), and told them what had happened. Ms. Johnson also called Gizzelle James and Michael Freese and told them what happened.

On October 7, 2016, the *Washington Post* released audio of the recording between Defendant Trump and Billy Bush in which Defendant Trump bragged about kissing women without their consent and grabbing their genitals (the "*Access Hollywood* tape"). When Ms. Johnson first learned of the *Access Hollywood* tape, she was instantly transported back to the moment in which Defendant Trump singled her out of all the people on his staff and kissed her without her consent. She listened to the recording while sitting in the car with Mr. Rego. As they listened, she felt horrified and sick to her stomach. She told Mr. Rego that the conduct Defendant Trump described in the tape was exactly what he had done to her, and Mr. Rego agreed. Ms. Johnson began to feel panicked, like she couldn't breathe, as she began to realize that what Defendant Trump had done to her was not an isolated incident but part of a pattern of predatory behavior towards women. She remembered how others had treated the improper behavior like a joke and a positive event. She felt disgusted and retraumatized. She knew that she could not stay with the Campaign. On October 10, 2016, Ms. Johnson called in sick. She still felt terrible, physically and emotionally, and could not sleep. She was deeply disturbed by the fact that Defendant Trump had not only kissed her, but had also openly bragged that he made a regular practice of kissing women without their consent.

In the weeks after the *Access Hollywood* tape was released, Ms. Johnson learned of the multitude of other public accusations by other women who had been forcibly kissed, groped, molested, and sexually harassed by Defendant Trump without their consent. The realization that she was not the only person Defendant Trump had forcibly kissed added to Ms. Johnson's considerable distress. The claims of other women who had been forcibly kissed by Defendant Trump

demonstrate that Defendant Trump acted intentionally with regard to Ms. Johnson, reveal his motives, show he did not make a mistake or act inadvertently, and demonstrate that he has a pattern or habit of kissing, groping, and otherwise harassing women without their consent. Kissing women without their permission, in fact, is Trump's modus operandi.

As a direct and proximate result of Defendant Trump's forcible kiss, Ms. Johnson has in the past suffered, and continues to suffer emotional distress, psychological trauma, humiliation, embarrassment, loss of dignity, invasion of privacy, medical expenses, a loss of income and loss of the capacity to enjoy life, and other damages.

Plaintiff also refers Defendants to her forthcoming document production. Discovery is ongoing and Plaintiff reserves the right to supplement these responses.

Date: June 17, 2019

Respectfully submitted,

 /s/ Hassan A. Zavareei
Hassan A. Zavareei (*pro hac vice*)
Katherine M. Aizpuru (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Tanya S. Koshy (*pro hac vice*)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
P: (510) 250-3298
F: (202) 973-0950
tkoshy@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)

–11–

Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 17, 2019, the foregoing document was served, with the

consent of all parties, by electronic mail and U.S. mail on counsel of record for Defendants.

/s/ Hassan A. Zavareei

–12–

## **VERIFICATION**

I, Alva Johnson, declare as follows:

I am plaintiff in the above-captioned case. I have read Plaintiff's Reponses and Objections to Defendant Donald J. Trump for President, Inc.'s Second Set of Interrogatories to Plaintiff and know the contents thereof. The responses are true and correct to the best of my knowledge. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17th day of June, 2019.

Alva Johnson

# EXHIBIT O
## MANUALLY FILED

# EXHIBIT P

| | |
|---|---|
| **From:** | Alva Johnson |
| **Sent:** | Monday, May 20, 2019 4:29 PM EDT |
| **To:** | ["info@kamalaharris.org"] |
| **BCC:** | |
| **Subject:** | I am a woman currently suing the 2016 Trump campaign for unequal pay. Thank you |

**Confidential only as to Plaintiff's email address, phone number, and/or address**

# EXHIBIT Q

| From: | Alva Johnson |
|---|---|
| Sent: | Friday, May 31, 2019 5:56 PM EDT |
| To: | ["Susannah Smith <shas14@gmail.com>"] |
| Subject: | Re: good article |

Hi Susannah,

Thank you so much. I will send the resume and my information to you today. I've been on a call with Kate (my lawyer) since 8am going over the interrogatories, RFA's and document requests for the hearing next week in Tampa.

Can we schedule the meeting for Tuesday? I still have a lot of documents to send and review for the hearing next week.

I'll text you as well and thanks again!

Alva

On Thu, May 30, 2019 at 10:58 PM Susannah Smith <shas14@gmail.com> wrote:
This is the article about the swing states.

I spoke with Susan Viebrock tonight; I could introduce you two tomorrow.  With the introduction and a resume, she will try to help you get a job, as will I.  Maybe you could get your resume to me by tomorrow?  I've got clients until 1; then lunch with a friend at 1:30; perhaps we could meet at Susan's house (between Telluride and Society Turn) tomorrow on my way out to the ranch, maybe around 3 or 3:30?  If not, we could arrange a meeting Tuesday when I'm driving back?  Let me know.  Susannah


Susannah Smith, Ph.D.
P.O. Box 3258
Telluride, CO 81435
shas14@gmail.com
www.creativeteamconsulting.com
970-728-5234; 970-708-0740 cell; 877-861-5436 fax
Licensed psychologist in California, Colorado, Louisiana, Mississippi and Texas

*"When the Last Tree Is Cut Down, the Last Fish Eaten, and the Last Stream Poisoned, You Will Realize That You Cannot Eat Money."*


PRIVILEGED/CONFIDENTIAL COMMUNICATION;
Please be aware that this email server is not a secure form of communication. No confidentiality can be expected. Do not share information that may compromise confidentiality.  Please make use of the encrypted email that I offer if you are my client.  Contact me to set this up for you.
This message and its enclosures are intended only for the person to whom it is addressed.  If you are not the intended recipient please do not copy, disseminate or distribute this message.  If you received

P004928

this message in error please immediately notify the sender and delete this message.   Your participation in this electronic exchange signifies your consent allowing confidential and/or privileged information to be transmitted in this medium. This e-mail and any associated communications, attachment(s) and links are protected under the Electronic Communications Privacy Act 18 U.S.C 2510 et seq and is confidential.

Please consider the environmental impact of printing this email


---------- Forwarded message ---------
From: **Susannah Smith** <shas14@gmail.com>
Date: Thu, May 30, 2019 at 9:29 AM
Subject: Re: good article
To: Marshall Whiting <marshallwhiting@gmail.com>


I didn't send the article; will try to find it again; just sent the states.... found it:

http://www.rasmussenreports.com/public_content/political_commentary/commentary_by_kyle_kondik/the_2020_electoral_college_our_first_look

Several paragraphs down, **The Leans Republican electoral votes (123)**

shas

Susannah Smith, Ph.D.
P.O. Box 3258
Telluride, CO 81435
shas14@gmail.com
www.creativeteamconsulting.com
970-728-5234; 970-708-0740 cell; 877-861-5436 fax
Licensed psychologist in California, Colorado, Louisiana, Mississippi and Texas

*"When the Last Tree Is Cut Down, the Last Fish Eaten, and the Last Stream Poisoned, You Will Realize That You Cannot Eat Money."*

PRIVILEGED/CONFIDENTIAL COMMUNICATION;
Please be aware that this email server is not a secure form of communication. No confidentiality can be expected. Do not share information that may compromise confidentiality.  Please make use of the encrypted email that I offer if you are my client.  Contact me to set this up for you.
This message and its enclosures are intended only for the person to whom it is addressed.  If you are not the intended recipient please do not copy, disseminate or distribute this message.  If you received this message in error please immediately notify the sender and delete this message.   Your participation in this electronic exchange signifies your consent allowing confidential and/or privileged information to be transmitted in this medium. This e-mail and any associated communications, attachment(s) and links are protected under the Electronic Communications Privacy Act 18 U.S.C 2510 et seq and is confidential.

Please consider the environmental impact of printing this email

CONFIDENTIAL

On Thu, May 30, 2019 at 9:20 AM Marshall Whiting <marshallwhiting@gmail.com> wrote:
i cannot find the article in this email. please resend.

## *Marshall Whiting, Ph.D.*
970 729-0031
"We only have what we give. It is in spending ourselves that we become rich." – Isabelle Allende

On May 27, 2019, at 7:06 PM, Susannah Smith <shas14@gmail.com> wrote:

The way I see it, I or we could focus on any of these states to help make sure Trump does not get elected: **Texas, Florida, Ohio, Georgia, and North Carolina.**

**I want to go and help make sure voters can vote, and know what they are voting for**

Susannah Smith, Ph.D.
P.O. Box 3258
Telluride, CO 81435
shas14@gmail.com
www.creativeteamconsulting.com
970-728-5234; 970-708-0740 cell; 877-861-5436 fax
Licensed psychologist in California, Colorado, Louisiana, Mississippi and Texas

***"When the Last Tree Is Cut Down, the Last Fish Eaten, and the Last Stream Poisoned, You Will Realize That You Cannot Eat Money."***

PRIVILEGED/CONFIDENTIAL COMMUNICATION;
Please be aware that this email server is not a secure form of communication. No confidentiality can be expected. Do not share information that may compromise confidentiality. Please make use of the encrypted email that I offer if you are my client. Contact me to set this up for you.
This message and its enclosures are intended only for the person to whom it is addressed. If you are not the intended recipient please do not copy, disseminate or distribute this message. If you received this message in error please immediately notify the sender and delete this message.
 Your participation in this electronic exchange signifies your consent allowing confidential and/or privileged information to be transmitted in this medium. This e-mail and any associated communications, attachment(s) and links are protected under the Electronic Communications Privacy Act 18 U.S.C 2510 et seq and is confidential.

# EXHIBIT R

| | |
|---|---|
| **From:** | Katherine Aizpuru <kaizpuru@tzlegal.com> |
| **Sent:** | Friday, July 5, 2019 10:15 AM |
| **To:** | Henry Self; Hassan Zavareei; Janet Varnell; bwarwick@varnellandwarwick.com; Paul Bland |
| **Cc:** | Jennifer Bennett; Karla Gilbride; Nicole Porzenheim; Charles Harder; Ryan Stonerock; Steven Frackman; Dawn Siler-Nixon; Tracey Jaensch |
| **Subject:** | RE: Plaintiff's first production |

Henry,

Thank you for your email. We will agree to limit the confidentiality designations in P000356, P000358, and P000360 to Ms. Johnson's personally identifying information (address, telephone number, email, social security number, etc) and will re-produce them so designated. We will also agree to withdraw the confidentiality designations from documents P004768, P004919–P004921, P004928–P004932, P004937, and P004959 (again, except to the extent that they contain Ms. Johnson's personally identifying information, which we will continue to designate as confidential).

Because of the holiday, deposition, travel schedules, and other commitments, I can't give you a date certain by which we will re-produce those documents without the designations, but this email should suffice in the meantime.

Regards,
Kate



**Katherine M. Aizpuru** ▪ Associate ▪ Tᴙᴄᴋᴏ & Zᴀᴠᴀʀᴇᴇɪ LLP ▪ www.tzlegal.com
1828 L Street, NW ▪ Suite 1000 ▪ Washington, DC 20036
p 202.417.3667 ▪ f 202.973.0950

Check out our new video!

*This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the email message.*

**From:** Henry Self [mailto:hself@harderllp.com]
**Sent:** Wednesday, July 3, 2019 6:44 PM
**To:** Katherine Aizpuru <kaizpuru@tzlegal.com>; Hassan Zavareei <hzavareei@tzlegal.com>; Janet Varnell <jvarnell@varnellandwarwick.com>; bwarwick@varnellandwarwick.com; Paul Bland <PBLAND@publicjustice.net>
**Cc:** Jennifer Bennett <JBennett@publicjustice.net>; Tanya S. Koshy <tkoshy@tzlegal.com>; Karla Gilbride <KGilbride@publicjustice.net>; Nicole Porzenheim <nporzenheim@tzlegal.com>; Melat Kiros <mkiros@tzlegal.com>; Charles Harder <charder@harderllp.com>; Ryan Stonerock <RStonerock@harderllp.com>; Steven Frackman <sfrackman@harderllp.com>; Dawn Siler-Nixon <DSiler-Nixon@fordharrison.com>; Tracey Jaensch <TJAENSCH@fordharrison.com>
**Subject:** RE: Plaintiff's first production

Dear Counsel:

We write on behalf of defendant Donald J. Trump for President, Inc. (the "Campaign") to meet and confer regarding plaintiff Alva Johnson's ("Plaintiff") erroneous designation of several documents that she produced

on June 21, 2019 as "Confidential" pursuant to the parties' stipulation and protective order [Dkt. Nos. 61, 61-1 and 62].

### P000356, P000358, P000360

This single-page, thrice-produced form appears to be a residential rental application completed by or on behalf of Plaintiff and dated November 11, 2016.  The Campaign has no objection to redacting and protecting the privacy of such personal details in the document as Ms. Johnson's telephone number, address and Social Security number.  However, Ms. Johnson has impermissibly purported to designate the entire page as "Confidential," which is not appropriate.  "If only a portion of the material on a page qualifies for protection, the producing party also must clearly identify the confidential portion(s) (e.g., by making appropriate markings in the margins, but not over text)," as you did on numerous other pages produced by Plaintiff.  Stipulation Governing the Production and Exchange of Confidential Information ¶ 3(a).

### P004768

In this brief six-sentence email message dated May 3, 2019 (two months into the lawsuit), Plaintiff asks Lisheyna Hurvitz for the names of a couple of individuals.  Aside from Ms. Johnson's telephone number and address (which, again, the Campaign has no objection to redacting), this seemingly innocuous document cannot and should not be designated as "Confidential" in its entirety.

### P004919–P004921, P004928–P004932, P004937

These email messages between Plaintiff and her friend in Telluride, Susannah Smith, appear to constitute mundane and non-confidential job search communications.  Although Dr. Smith claims to possess one or more psychology licenses, she also markets herself as an "organizational development consultant" who provides executive coaching services—which, if anything, are what she was rendering to Ms. Johnson here rather than medical care of any kind.  The messages therefore are not "Confidential" other than arguably insofar as they include your client's personal contact information.

### P004959

This audio file seems to be a recording of a telephone call between Plaintiff and Chess Bedsole during which the two discuss many of the allegations asserted in the Complaint.  After issuing more than 85 separate public/press communications about this case, Plaintiff and her counsel cannot claim that her non-privileged discussions of her allegations and related topics are somehow confidential.  Mr. Bedsole is a witness, identified in Paragraphs 20 through 23 and 48 of the Complaint.  Your client's conversation with him about the matters contained in her publicly-filed Complaint are not confidential.

Pursuant to Paragraph 12(b)(i) of the Stipulation Governing the Production and Exchange of Confidential Information, please confirm within the next 10 days that Plaintiff will either completely withdraw each of the foregoing designations or modify them accordingly.

This letter is not intended as a full or complete statement of all relevant facts or applicable law, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of my clients' rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

Sincerely,

Henry Self



**HENRY L. SELF III**
HARDER LLP
<u>HSELF@HARDERLLP.COM</u>
(424) 203-1610

---

**From:** Katherine Aizpuru <<u>kaizpuru@tzlegal.com</u>>
**Sent:** Friday, June 21, 2019 4:10 PM
**To:** Charles Harder <<u>charder@harderllp.com</u>>; Hassan Zavareei <<u>hzavareei@tzlegal.com</u>>; Janet Varnell <<u>jvarnell@varnellandwarwick.com</u>>; <u>bwarwick@varnellandwarwick.com</u>; Paul Bland <<u>PBLAND@publicjustice.net</u>>
**Cc:** Jennifer Bennett <<u>JBennett@publicjustice.net</u>>; Tanya S. Koshy <<u>tkoshy@tzlegal.com</u>>; Karla Gilbride <<u>KGilbride@publicjustice.net</u>>; Nicole Porzenheim <<u>nporzenheim@tzlegal.com</u>>; Melat Kiros <<u>mkiros@tzlegal.com</u>>; Ryan Stonerock <<u>RStonerock@harderllp.com</u>>; Henry Self <<u>hself@harderllp.com</u>>; Steven Frackman <<u>sfrackman@harderllp.com</u>>; Dawn Siler-Nixon <<u>DSiler-Nixon@fordharrison.com</u>>; Tracey Jaensch <<u>TJAENSCH@fordharrison.com</u>>
**Subject:** Plaintiff's first production

Counsel,

Please see the attached. The production has been sent via secure file transfer.

Regards,



**Katherine M. Aizpuru** ▪ Associate ▪ Tᴄʏᴋᴏ & Zᴀᴠᴀʀᴇᴇɪ LLP ▪ <u>www.tzlegal.com</u>
1828 L Street, NW ▪ Suite 1000 ▪ Washington, DC 20036
p 202.417.3667 ▪ f 202.973.0950

Check out our new <u>video</u>!

*This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the email message.*

# EXHIBIT S



Interested in the net worth of Presidential Candidates? | FIND THEIR FILINGS HERE! ›

# Donor Lookup

Advanced Search

First and Last Name of Donor

Displaying records **1 - 50** of 56.

(Note: We only display the first 500 records. Need more? Please contact us **requests@crp.org**.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | NOT EMPLOYED | 06-25-2018 | $500.00 | Ojeda, Richard (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 10-09-2012 | $500.00 | Obama, Barack (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20617 | ATTORNEY | 03-30-2012 | $500.00 | McCaskill, Claire (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | ATTORNEY | 02-08-2017 | $250.00 | McCaskill, Claire (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 09-13-2017 | $250.00 | Heckroth, Thomas (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI, LLP | 09-28-2016 | $250.00 | Clinton, Hillary (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCHO ZAVAREEI LLP | 10-05-2018 | $25.00 | Jones, Doug (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 11-28-2017 | $50.00 | Jones, Doug (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 10-31-2016 | $25.00 | Feingold, Russ (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | NOT EMPLOYED | 05-02-2018 | $2,700.00 | Ojeda, Richard (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 11-02-2016 | $500.00 | Feingold, Russ (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | ATTORNEY | 10-17-2018 | $25.00 | McCaskill, Claire (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-01-2018 | $500.00 | Hayes, Jahana (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-05-2018 | $25.00 | Heitkamp, Heidi (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI, LLP | 05-20-2016 | $250.00 | Clinton, Hillary (D) |
| Money to PACs | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-01-2018 | $500.00 | People's House Project |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 09-30-2018 | $500.00 | Porter, Katie (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-15-2017 | $500.00 | Heitkamp, Heidi (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCHO ZAVAREEI LLP | 03-06-2018 | $500.00 | Heenan, John (D) |
| Money to Parties | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-01-2018 | $500.00 | Democratic Senatorial Campaign Cmte (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | Tycko & Zavareei LLP | 10-28-2018 | $250.00 | Porter, Katie (D) |
| Money to Parties | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-14-2018 | $50.00 | Democratic Senatorial Campaign Cmte (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 10-31-2016 | $25.00 | Feingold, Russ (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 12-31-2015 | $500.00 | Feingold, Russ (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCHO ZAVAREEI LLP | 10-28-2018 | $250.00 | Porter, Katie (D) |

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org in Messenger

| | | | | | |
|---|---|---|---|---|---|
| Candidates | BETHESDA, MD 20817 | LLP | | | |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 12-31-2015 | $500.00 | Feingold, Russ (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCHO ZAVAREEI LLP | 10-28-2018 | $250.00 | Porter, Katie (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO ZAVAREEI LLP | 10-01-2018 | $50.00 | Scholten, JD (D) |

**FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE.**

| | | | | | |
|---|---|---|---|---|---|
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO ZAVAREEI LLP | 10-17-2018 | $25.00 | Van Hollen, Chris (D) |
| Money to Candidates | ZAVAREEI, HASSAN BETHESDA, MD 20817 | TYCKO & ZAVAREEI LLP | 11-27-2017 | $500.00 | Watson, Liz (D) |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 05-03-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 03-05-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 07-03-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 11-03-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 04-03-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 08-02-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 11-06-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 04-04-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 08-02-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 05-02-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 03-05-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 08-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 05-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-05-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-05-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 12-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-04-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-02-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-05-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-04-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-02-2018 | $100.00 | American Assn for Justice |

OpenSecrets.org

Hi! We're here to answer any questions you may have.

Log into Messenger

Chat with OpenSecrets.org | Messenger

Find our Donor Lookup useful? Please consider a donation.   DONATE TODAY

| | | | BETHESDA, MD 20817 | | | |
|---|---|---|---|---|---|---|
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 03-05-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 08-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 05-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-05-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-05-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 12-04-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-04-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-02-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 06-05-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 09-04-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-02-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-03-2017 | $100.00 | American Assn for Justice |

NEXT

* Data on individual contributions downloaded from the Federal Election Commission on May 2, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees.**



## We follow the money. You make it possible.

Select an amount to make a donation.

$25    $50    $100    Other    ❤ DONATE TODAY

## Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address    SIGN UP    Follow us on Twitter    Follow us on Facebook

The Center for Responsive Politics
1300 L St NW, Suite 200
Washington, DC 20005
TEL (202) 857-0044
FAX (202) 857-7809

POLITICIANS & ELECTIONS
INFLUENCE & LOBBYING
NEWS & ANALYSIS
RESOURCES
ABOUT US

TAKE ACTION
DONATE
BUY CUSTOM DATA

Find our Donor Lookup useful?
Please consider a donation.    DONATE TODAY

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org · Messenger





Interested in the net worth of Presidential Candidates? | FIND THEIR FILINGS HERE! ›

OpenSecrets.org
Center for Responsive Politics

About | Resources | Sign Up | CFC 93263

Search MENU DONATE

Share Files Easily & Securely!
Protect Existing Storage, Cloud & Application Investments
EGNYTE
Start Free Trial

# Donor Lookup

Advanced Search

First and Last Name of Donor

Displaying records **51 - 56** of 56.

(Note: We only display the first 500 records. Need more? Please contact us **requests@crp.org**.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | Tycko & Zavareei | 12-04-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 11-02-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 12-04-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 07-05-2017 | $100.00 | American Assn for Justice |
| FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE. | | | | | |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-05-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 07-06-2016 | $100.00 | American Assn for Justice |

PREVIOUS

* Data on individual contributions downloaded from the Federal Election Commission on May 1, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees**.

We follow the money. You make it possible.

Select an amount to make a donation.

$25 $50 $100 Other DONATE TODAY

Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address SIGN UP Follow us on Twitter Follow us on Facebook

**The Center for Responsive Politics**
1300 L St NW, Suite 200
Washington, DC 20005
**TEL** (202) 857-0044
**FAX** (202) 857-7809

POLITICIANS & ELECTIONS
INFLUENCE & LOBBYING
NEWS & ANALYSIS
RESOURCES
ABOUT US

TAKE ACTION
DONATE
BUY CUSTOM DATA

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org in Messenger

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

CFC 93263







Interested in the net worth of Presidential Candidates? | FIND THEIR FILINGS HERE! ›

OpenSecrets.org
Center for Responsive Politics

About | Resources | Sign Up | CFC 93263

Search MENU DONATE

Share Files Easily & Securely!
Protect Existing Storage, Cloud & Application Investments
EGNYTE
Start Free Trial

# Donor Lookup

Advanced Search

First and Last Name of Donor

Displaying records **51 - 56** of 56.

(Note: We only display the first 500 records. Need more? Please contact us **requests@crp.org**.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | Tycko & Zavareei | 12-04-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 11-02-2018 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 12-04-2017 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 07-05-2017 | $100.00 | American Assn for Justice |
| FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE. | | | | | |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 10-05-2016 | $100.00 | American Assn for Justice |
| Money to PACs | ZAVAREEI, HASSAN MR ESQ<br>BETHESDA, MD 20817 | TYCKO & ZAVAREEI | 07-06-2016 | $100.00 | American Assn for Justice |

PREVIOUS

* Data on individual contributions downloaded from the Federal Election Commission on May 1, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees**.

We follow the money. You make it possible.

Select an amount to make a donation.

$25 $50 $100 Other DONATE TODAY

Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address SIGN UP Follow us on Twitter Follow us on Facebook

The Center for Responsive Politics
1300 L St NW, Suite 200
Washington, DC 20005
TEL (202) 857-0044
FAX (202) 857-7809

POLITICIANS & ELECTIONS
INFLUENCE & LOBBYING
NEWS & ANALYSIS
RESOURCES
ABOUT US

TAKE ACTION
DONATE
BUY CUSTOM DATA

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org in Messenger

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

CFC 93263

**Interested in the net worth of Presidential Candidates?** FIND THEIR FILINGS HERE! ›

**OpenSecrets.org**
Center for Responsive Politics

About | Resources | Sign Up

Search   | MENU | DONATE

## Donor Lookup

Advanced Search

First and Last Name of Donor

Displaying records **1 - 13** of 13.

(Note: We only display the first 500 records. Need more? Please contact us requests@crp.org.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to Candidates | BLAND, PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-30-2018 | $500.00 | Porter, Katie (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | SEN. JOSEPH R. BIDEN, JR. | 07-19-2007 | $750.00 | Biden, Joseph R Jr (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 06-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 08-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-30-2018 | $250.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 11-20-2017 | $250.00 | Heenan, John (D) |

FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE.

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 07-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to PACs | BLAND, FRANK PAUL, MR<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 04-22-2013 | $250.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 05-19-2018 | $250.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | Public Justice | 01-29-2019 | $500.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 02-28-2018 | $500.00 | American Assn for Justice |
| Money to PACs | BLAND, FRANK PAUL, MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 04-07-2015 | $500.00 | American Assn for Justice |

\* Data on individual contributions downloaded from the Federal Election Commission on May 2, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees.**



## We follow the money. You make it possible.

Select an amount to make a donation.

$25 | $50 | $100 | Other | ♥ DONATE TODAY

## Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address   SIGN UP     Follow us on Twitter     Follow us on Facebook



Displaying records **1 - 13** of 13.

(Note: We only display the first 500 records. Need more? Please contact us requests@crp.org.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to Candidates | BLAND, PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-30-2018 | $500.00 | Porter, Katie (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | SEN. JOSEPH R. BIDEN, JR. | 07-19-2007 | $750.00 | Biden, Joseph R Jr (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 06-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 08-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 09-30-2018 | $250.00 | Baldwin, Tammy (D) |
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 11-20-2017 | $250.00 | Heenan, John (D) |

FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE.

| | | | | | |
|---|---|---|---|---|---|
| Money to Candidates | BLAND, FRANK PAUL<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 07-19-2018 | $500.00 | Baldwin, Tammy (D) |
| Money to PACs | BLAND, FRANK PAUL MR<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 04-22-2013 | $250.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 05-19-2018 | $250.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | Public Justice | 01-29-2019 | $500.00 | American Assn for Justice |
| Money to PACs | BLAND, PAUL MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 02-28-2018 | $500.00 | American Assn for Justice |
| Money to PACs | BLAND, FRANK PAUL MR ESQ<br>SILVER SPRING, MD 20910 | PUBLIC JUSTICE | 04-07-2015 | $500.00 | American Assn for Justice |

\* Data on individual contributions downloaded from the Federal Election Commission on May 2, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees.**



Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.







Document title: Donor Lookup • OpenSecrets
Capture URL: https://www.opensecrets.org/donor-lookup/results?name=katherine+aizpuru
Capture timestamp (UTC): Wed, 10 Jul 2019 17:12:46 GMT



Interested in the net worth of Presidential Candidates? | FIND THEIR FILINGS HERE! ›

OpenSecrets.org
Center for Responsive Politics

About | Resources | Sign Up | CFC 93263

Search MENU DONATE

FAMOUS footwear Buy More, Save More: $10 Off $50, $15 off $75, or $20 off $100. Online Only. Shop Now

# Donor Lookup

Advanced Search

First and Last Name of Donor

Displaying records **1 - 27** of 27.
(Note: We only display the first 500 records. Need more? Please contact us **requests@crp.org**.)

| Category | Contributor | Occupation | Date | Amount | Recipient |
|---|---|---|---|---|---|
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | DiNicola, Ron (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 08-30-2018 | $50.00 | Watson, Liz (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Radinovich, Joe (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Axne, Cindy (D) |
| Money to PACs | GILBRIDE, KARLA BETHESDA, MD 20814 | Public Justice | 08-07-2018 | $100.00 | JStreetPAC |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Long, Carolyn (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-16-2018 | $50.00 | Cockburn, Leslie (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Stevens, Haley (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | Public Justice | 10-30-2018 | $50.00 | Watson, Liz (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Kelly, Brendan (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Scott, George (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Shapiro, David (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 09-30-2018 | $50.00 | Watson, Liz (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-30-2018 | $50.00 | Watson, Liz (D) |
| FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE. | | | | | |
| Money to PACs | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 11-13-2018 | $3.00 | Democracy for America |
| Money to PACs | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-30-2018 | $5.00 | ActBlue |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Jones, Gina (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Golden, Jared (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Eastman, Kara (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Schrier, Kim (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org in Messenger

| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Shapiro, David (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 09-30-2018 | $50.00 | Watson, Liz (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-30-2018 | $50.00 | Watson, Liz (D) |

FEDERAL LAW PROHIBITS THE USE OF CONTRIBUTOR INFORMATION FOR THE PURPOSE OF SOLICITING CONTRIBUTIONS OR FOR ANY COMMERCIAL PURPOSE.

| Money to PACs | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 11-13-2018 | $3.00 | Democracy for America |
| Money to PACs | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-30-2018 | $5.00 | ActBlue |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Jones, Gina (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Golden, Jared (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Eastman, Kara (D) |
| Money to Candidates | GILBRIDE, KARLA BETHESDA, MD 20814 | PUBLIC JUSTICE | 10-05-2018 | $5.00 | Schrier, Kim (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |
| Money to Candidates | GILBRIDE, KARLA MS MEDFORD, MA 02155 | | 12-05-2003 | -$35.00 | Kerry, John (D) |

\* Data on individual contributions downloaded from the Federal Election Commission on May 2, 2019. **Federal law prohibits the use of contributor information for the purpose of soliciting contributions or for any commercial purpose.** Bear in mind that contributions to politicians can also be made through **Political Action Committees.**



## We follow the money. You make it possible.

Select an amount to make a donation.

$25   $50   $100   Other   ♥ DONATE TODAY

## Count Cash & Make Change

Sign up for our newsletter to track money's influence on U.S. elections and public policy.

Email address   SIGN UP   🐦 Follow us on Twitter   f Follow us on Facebook

**The Center for Responsive Politics**
1300 L St NW, Suite 200
Washington, DC 20005
**TEL** (202) 857-0044
**FAX** (202) 857-7809

POLITICIANS & ELECTIONS
INFLUENCE & LOBBYING
NEWS & ANALYSIS
RESOURCES
ABOUT US

TAKE ACTION
DONATE
BUY CUSTOM DATA

Except for the Revolving Door section, content on this site is licensed under a Creative Commons Attribution-Noncommercial-Share Alike 3.0 United States License by OpenSecrets.org. To request permission for commercial use, please contact us.

OpenSecrets.org
Hi! We're here to answer any questions you may have.
Log into Messenger
Chat with OpenSecrets.org · Messenger

Find our Donor Lookup useful?
Please consider a donation.
DONATE TODAY

# EXHIBIT T

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

# **ALVA JOHNSON**

Facebook: https://www.facebook.com/alva.mahaffeyjohnson/

Twitter: Unable to identify a twitter

**SOCIAL MEDIA POSTS**

Facebook

| # | Link |
|---|------|
|   | NONE |

Twitter

| # | Link |
|---|------|
|   | NONE |

**PRESS INTERVIEWS/STATEMENTS**

| # | Date | Publication | Link |
|---|------|-------------|------|
| 1. | 2/25/19 | Washington Post | [Link] |
| 2. | 2/26/19 | All in with Chris Hayes MSNBC | [Link] |
| 3. | 2/25/19 | The New Yorker | [Link] |
| 4. | 3/11/19 | Teen Vogue | [Link] |

SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS

## HASSAN A. ZAVAREEI OF TYCKO & ZAVAREEI LLP

Twitter: https://twitter.com/hzavareei

Facebook:

| # | Link |
|---|------|
|   | NONE |

Twitter:

| # | Link |
|---|------|
| 1. | https://twitter.com/hzavareei/status/1108123742180388872 |
| 2. | https://twitter.com/hzavareei/status/1113554578300121090?s=20 |
| 3. | https://twitter.com/hzavareei/status/1108753704335761408?s=20 |
| 4. | https://twitter.com/hzavareei/status/1105224393398145024?s=20 |
| 5. | https://twitter.com/hzavareei/status/1104918557530472448?s=20 |
| 6. | https://twitter.com/hzavareei/status/1104069365819981824?s=20 |
| 7. | https://twitter.com/hzavareei/status/1101538132493774850?s=20 |
| 8. | https://twitter.com/hzavareei/status/1101537530451775490?s=20 |
| 9. | https://twitter.com/nowthisnews/status/1101231315892891650?s=20 |
| 10. | https://twitter.com/hzavareei/status/1100571652931416064?s=20 |
| 11. | https://twitter.com/hzavareei/status/1100276317679955970?s=20 |
| 12. | https://twitter.com/hzavareei/status/1100272929936416773?s=20 |
| 13. | https://twitter.com/MSNBC/status/1100204079761051648 |
| 14. | https://twitter.com/hzavareei/status/1100218689037709313?s=20 |
| 15. | https://twitter.com/hzavareei/status/1100198214882549760?s=20 |
| 16. | https://twitter.com/hzavareei/status/1100161136610238466?s=20 |
| 17. | https://twitter.com/hzavareei/status/1100112851144970241?s=20 |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

| 18. | https://twitter.com/hzavareei/status/1100041204513865729?s=20 |
|-----|-------------------------------------------------------------|
| 19. | https://twitter.com/hzavareei/status/1100038720034668549?s=20 |
| 20. | https://twitter.com/hzavareei/status/1100034836771864576?s=20 |
| 21. | https://twitter.com/hzavareei/status/1128034104971120640 |
| 22. | https://twitter.com/hzavareei/status/1128030507193659392 |
| 23. | https://twitter.com/hzavareei/status/1128028223227531264 |
| 24. | https://twitter.com/hzavareei/status/1128009489800519680 |
| 25. | https://twitter.com/hzavareei/status/1128009342526029824 |
| 26. | https://twitter.com/hzavareei/status/1128004208907706368 |
| 27. | https://twitter.com/hzavareei/status/1127035741450772480 |

**PRESS INTERVIEWS/ STATEMENTS**

| # | Date | Publication | Link |
|---|------|-------------|------|
| 1. | 2/25/19 | Washington Post | [Link] |
| 2. | 2/25/19 | The Daily Beast | [Link] |
| 3. | 2/25/19 | All in with Chris Hayes MSNBC | [Link] |
| 4. | 3/2/19 | NowThis News | [Link] |
| 5. | 3/4/19 | The Hill | [Link] |
| 6. | 3/7/19 | People | [Link] |
| 7. | 5/10/19 | The Hill | [Link] |
| 8. | 5/13/19 | Vice News | [Link] |
| 9. | 5/13/19 | Washington Post | [Link] |
| 10. | 5/13/19 | Daily Beast | [Link] |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

## <u>KATHERINE M. AIZPURU OF TYCKO & ZAVEREEI LLP</u>

Twitter: https://twitter.com/kaizpuru1

### <u>SOCIAL MEDIA POSTS</u>

Facebook:

| # | Link |
|---|------|
|   | NONE |

Twitter

| # | Link |
|---|------|
| 1. | https://twitter.com/kaizpuru1/status/1100198625563549696 |
| 2. | https://twitter.com/kaizpuru1/status/1100053975712317440 |
| 3. | https://twitter.com/kaizpuru1/status/1108357169718669312 |
| 4. | https://twitter.com/kaizpuru1/status/1100591311227359232 |
| 5. | https://twitter.com/kaizpuru1/status/1100539346040557570 |
| 6. | https://twitter.com/kaizpuru1/status/1100097577716994049 |
| 7. | https://twitter.com/kaizpuru1/status/1100277552470548482 |
| 8. | https://twitter.com/kaizpuru1/status/1100519391672832002 |
| 9. | https://twitter.com/kaizpuru1/status/1100038612668825601 |
| 10. | https://twitter.com/kaizpuru1/status/1127052074599030784 |

### <u>PRESS INTERVIEWS/STATEMENTS</u>

| # | Date | Publication | Link |
|---|------|-------------|------|
| 1. | 2/25/19 | NY Daily News | [Link] |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

## TYCKO & ZAVEREEI LLP

Facebook: https://www.facebook.com/tyckozavareei/

Twitter: https://twitter.com/TyckoZavareei

Homepage: https://www.tzlegal.com/

### SOCIAL MEDIA POSTS

Facebook

| # | Link |
|---|---|
| 1. | https://www.facebook.com/tyckozavareei/posts/2100092266692984?__tn__=-R |
| 2. | https://www.facebook.com/tyckozavareei/posts/2100084510027093?__tn__=-R |
| 3. | https://www.facebook.com/tyckozavareei/posts/2072224252813119?__tn__=-R |
| 4. | https://www.facebook.com/tyckozavareei/posts/2071788426190035?__tn__=-R |
| 5. | https://www.facebook.com/watch/?v=943210969205777 |
| 6. | https://www.facebook.com/tyckozavareei/posts/2069290613106483?__tn__=-R |

Twitter

| # | Link |
|---|---|
| 1. | https://twitter.com/TyckoZavareei/status/1108363658793533440?s=20 |
| 2. | https://twitter.com/TyckoZavareei/status/1108361694227677185?s=20 |
| 3. | https://twitter.com/TyckoZavareei/status/1100868153272352769?s=20 |
| 4. | https://twitter.com/TyckoZavareei/status/1100504525633474561?s=20 |
| 5. | https://twitter.com/TyckoZavareei/status/1100099324736872450?s=20 |

Other

| # | Link |
|---|---|
| 1. | https://www.tzlegal.com/wp-content/uploads/2019/02/Combined-Complaint.pdf |

{00099917;5}

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

## <u>JENNIFER BENNET OF PUBLIC JUSTICE:</u>

**Twitter:** **https://twitter.com/BennJennett**

### <u>SOCIAL MEDIA POSTS</u>

Facebook

| # | Link |
|---|------|
|   | NONE |

Twitter

| # | Link |
|---|------|
|   | NONE |

### <u>PRESS INTERVIEWS/STATEMENTS</u>

| # | Date | Link | Link |
|---|------|------|------|
| 1. | 3/1/19 | NBC News (she wrote an opinion piece on their blog) | [Link] |

SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS

# PAUL BLAND OF PUBLIC JUSTICE:

Twitter: https://twitter.com/FPBland

## SOCIAL MEDIA POSTS

Facebook

| # | Link |
|---|------|
|   | NONE |

Twitter

| # | Link |
|---|------|
| 1. | https://twitter.com/FPBland/status/1100402386521092096 |
| 2. | https://twitter.com/FPBland/status/1105515372789215232 |
| 3. | https://twitter.com/FPBland/status/1101139278560522240 |
| 4. | https://twitter.com/FPBland/status/1108133765652668417 |
| 5. | https://twitter.com/FPBland/status/1101529719210618880 |
| 6. | https://twitter.com/FPBland/status/1104353796795367424 |
| 7. | https://twitter.com/FPBland/status/1100054506308395013 |
| 8. | https://twitter.com/FPBland/status/1108749637349851136 |
| 9. | https://twitter.com/FPBland/status/828660191390494720 |
| 10. | https://twitter.com/FPBland/status/1082709752440733696 |

## PRESS INTERVIEWS/ STATEMENTS

| # | Link |
|---|------|
|   | NONE |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

# PUBLIC JUSTICE

Facebook: https://www.facebook.com/publicjustice

Twitter: https://twitter.com/Public_Justice

Homepage: https://www.publicjustice.net/

**SOCIAL MEDIA POSTS**

Facebook

| # | Link |
|---|------|
| 1. | https://www.facebook.com/publicjustice/posts/10157031874128633 |
| 2. | https://www.facebook.com/publicjustice/posts/10157027666008633 |
| 3. | https://www.facebook.com/publicjustice/posts/10157031981933633 |
| 4. | https://www.facebook.com/publicjustice/posts/10157026703523633 |
| 5. | https://www.facebook.com/publicjustice/posts/10157025870683633 |
| 6. | https://www.facebook.com/publicjustice/posts/10157029613843633 |
| 7. | https://www.facebook.com/publicjustice/posts/10157028462708633 |
| 8. | https://www.facebook.com/publicjustice/posts/10157023539248633 |

Twitter

| # | Link |
|---|------|
| 1. | https://twitter.com/Public_Justice/status/1101528414937382913 |
| 2. | https://twitter.com/Public_Justice/status/1101255645972611073 |
| 3. | https://twitter.com/Public_Justice/status/1101125848382488577 |
| 4. | https://twitter.com/Public_Justice/status/1100871945413890048 |
| 5. | https://twitter.com/Public_Justice/status/1100743945502511104 |
| 6. | https://twitter.com/Public_Justice/status/1100419744107323394 |
| 7. | https://twitter.com/Public_Justice/status/1100049207895965697 |
| 8. | https://twitter.com/Public_Justice/status/1128339941509828608 |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

|  |  |
|--|--|
|  |  |

Other

| # | Link |
|---|------|
| 1. | https://www.publicjustice.net/fighting-trumps-secrecy-agreements-because-justice-for-alva-is-justice-for-all/ |
| 2. | https://www.publicjustice.net/case_brief/johnson-v-trump/ |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

## JANET R. VARNELL OF VARNELL & WARWICK

Twitter: https://twitter.com/4TheLittleGuy

**SOCIAL MEDIA POSTS**

Facebook:

| # | Link |
|---|------|
|   | NONE |

Twitter

| # | Link |
|---|------|
| 1. | https://twitter.com/4TheLittleGuy/status/1100109648273817606 |

**PRESS INTERVIEWS/STATEMENTS**

| # | Link |
|---|------|
|   | NONE |

**SOCIAL MEDIA POSTS AND STATEMENTS TO PRESS**

# VARNELL & WARWICK

Twitter: None

Facebook: https://www.facebook.com/Varnell-Warwick-PA-423883271399749/

Homepage: https://varnellandwarwick.com

## SOCIAL MEDIA POSTS

Facebook

| # | Link |
|---|------|
| 1. | https://www.facebook.com/permalink.php?story_fbid=634655186989222&id=423883271399749&_tn_=-R |
| 2. | https://www.facebook.com/permalink.php?story_fbid=633977957056945&id=423883271399749&_tn_=-R |
| 3. | https://www.facebook.com/permalink.php?story_fbid=633166867138054&id=423883271399749&_tn_=-R |
| 4. | https://www.facebook.com/423883271399749/photos/a.510719146049494/632977753823632/?type=3&theater |

Twitter

| # | Link |
|---|------|
|   | NONE |

# EXHIBIT U



132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS, CA 90212 · 424.203.1600
WWW.HARDERLLP.COM

July 10, 2019

VIA EMAIL AND U.S. MAIL
Hassan A. Zavareei, Esq.
Katherine M. Aizpuru, Esq.
Tanya S. Koshy, Esq.
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, DC 20036

VIA EMAIL AND U.S. MAIL
F. Paul Bland, Esq.
Karla Gillbride, Esq.
Jennifer Bennett, Esq.
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036

VIA EMAIL AND U.S. MAIL
Janet R. Varnell, Esq.
Brian W. Warwick, Esq.
Varnell & Warwick, PA
P.O. Box 1870
Lady Lake, Florida 32158-1870

Re:   **Alva Johnson v. Donald J. Trump,** *et al*.
       **M.D. Fla. USDC Case No. 8:19-cv-00475**

Dear Counsel:

As you know, this law firm represents President Donald J. Trump and Donald J. Trump for President, Inc. As you also are aware, on June 14, 2019, the U.S. District Court in the above-referenced action dismissed the entire Complaint filed by your client, via your offices, with 30 days leave to amend. As that deadline approaches, we write to place each of you and your client, Alva Johnson, on notice that should any amended pleading be filed to include a count for battery or other similar claim based on the innocent interaction between Ms. Johnson and Mr. Trump on August 24, 2016 in Tampa, Florida, then we will have no alternative but to seek sanctions against each of you, your law firms, and your client, Alva Johnson, to the maximum extent available by law, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

It has now been definitively shown beyond any reasonable doubt, by a clear video recording of the event, that absolutely nothing about the parties' very brief interaction that day could possibly give rise to legal liability or damages. Accordingly, any cause of action based thereon was and would be frivolous and without any legitimate legal basis.

Naturally, all of my clients' rights are expressly reserved and none are waived.

Sincerely,

CHARLES J. HARDER Of
**HARDER LLP**

cc:     Dawn Siler-Nixon, Esq.
        Tracey Jaensch, Esq.
        Ryan J. Stonerock, Esq.
        Henry L. Self III, Esq.
        Steven H. Frackman, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 10, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

19