**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ALVA JOHNSON,**
**Individually and On Behalf of All Others**
**Similarly Situated,**

      **Plaintiff,**                              **Case No. 8:19-cv-00475-WFJ-SPF**

**v.**

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR**
**PRESIDENT, INC.**

      **Defendants.**

_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ENTRY OF COURT-ORDERED ESI PROTOCOL AND SCHEDULE FOR AGREEING TO SEARCH TERMS

Defendants Donald J. Trump ("Mr. Trump") and Donald J. Trump for President, Inc. (the "Campaign") (collectively, "Defendants") submit the following opposition to the motion of Plaintiff Alva Johnson ("Plaintiff") for entry of a court-ordered ESI protocol and schedule for agreeing to search terms (the "Motion"). For the reasons set forth below, Defendants oppose the entry of any ESI protocol whatsoever pertaining to Mr. Trump. However, attached hereto as **Exhibit A** is a redlined version of Plaintiff's proposed ESI protocol that is acceptable to the Campaign **only**. The Campaign's primary substantive revision to Plaintiff's proposed ESI Protocol relates to the procedure for determining appropriate custodians and search terms. Defendants strenuously object to the custodians and search terms proposed by Plaintiff. Further, because Plaintiff currently has no operative pleading on file, it is premature for the parties to discuss, or for the Court to order, specific custodians or search terms.

1

## I.  <u>INTRODUCTION</u>

Plaintiff's proposed ESI Protocol (the "Proposed ESI Protocol") includes vastly overbroad, oppressive, unduly burdensome and largely irrelevant lists of proposed custodians and search terms, and is a major part of Plaintiff's efforts, from the outset, to turn this case into a political lawsuit.  *See e.g.* [Dkt. No. 55, p. 2] ("the Complaint presents a political lawsuit, not a tort and wages lawsuit.")  Not surprisingly, Plaintiff fails to make any effort whatsoever in the Motion to establish that her proposed custodians or search terms are reasonable or necessary – because they are not.

As the Court stated in its June 14, 2019 Order, "[t]his is a very simple battery and wages case and the Court will treat it as such."  [Dkt No. 55, p. 1.]  However, Plaintiff is attempting to use the Proposed ESI Protocol to engage in a massive fishing expedition for documents within Defendants' universal electronic systems, searching for documents containing a variety of offensive terms including "n*gger," "porch monkey," "coon" and "sexual predator," as well as documents pertaining to numerous employees of the Campaign who have nothing or virtually nothing to do with this case, other than they may have worked on the 2016 Trump campaign in some capacity.  Plaintiff has also requested all documents from the Campaign containing, among other offensive terms, "bitch," "slut" and "whore," and will presumably also seek to include those words as search terms.

Plaintiff and her counsel are seeking to make this litigation as burdensome, time-consuming, expensive, complicated and harassing as they possibly can, in the hopes of finding embarrassing documents irrelevant to the case that could somehow be used to inflict political damage on President Trump and his re-election campaign, as well as diverting resources and attention from the Campaign's purpose of re-electing the President, and obtaining that "needle in

a haystack" document that Plaintiff's counsel and advocacy group can release to the national news media to publicly embarrass President Trump and the Campaign.  The activities of Plaintiff and her counsel since the filing of this lawsuit, from the content of the Complaint (much of which has been stricken) to the more than 85 communications they have had with members of the news media and on social media platforms, including national television news interviews, national print media interviews, press releases, dozens of tweets, dozens of Facebook posts, posting content on Plaintiff's law firms' websites and social media, posting content at Public Justice's website and social media, and publishing an opinion article about the case at NBC News, are all designed to cause as much negative publicity and harm to the President and the Campaign as possible.

Plaintiff's only claim against Mr. Trump involved an allegation of, in the Court's words, a "simple battery."  [Dkt. No. 55, pp. 3, 4, 8, 14.]  As demonstrated by the video attached to the Declaration of Brian Hayes filed on July 10, 2019 [Dkt. No. 73-2] (the "Video"), the alleged incident involves a brief exchange between Plaintiff and Mr. Trump, which lasted only seconds, inside of a Campaign recreational vehicle, surrounded by campaign workers, volunteers, supporters, and multiple members of law enforcement, including the state's then-Attorney General.[1]  The Video confirms that Plaintiff's battery claim against Mr. Trump is unmeritorious and also frivolous, and that Plaintiff's allegations that Mr. Trump "forcibly" kissed her, and kissed her on the "mouth," are both completely false.

Given the simple (false) battery claim against Mr. Trump, the entry of any ESI protocol applying to him, much less the onerous Proposed ESI Protocol, would be completely unwarranted.  *See Clinton v. Jones*, 520 U.S. 681, 697 (1997) ("the potential burdens on the

---

[1] A copy of the Video may also be viewed at the following URL address: www.HarderLLP.com/JohnsonVideo.

President…are appropriate matters for the District Court to evaluate in its management of the case.  The high respect that is owed to the office of the Chief Executive…should inform the conduct of the entire proceeding, including the timing and scope of discovery.")  Moreover, Mr. Trump was not responsible for setting the specific salaries of the Campaign's various employees. [Dkt. No. 73-1.]  The Proposed ESI Protocol would impose a massive burden on the sitting President of the United States and, pursuant to its terms, Plaintiff could seek to require a search of the President's cell phones, laptop and desktop computers, tablets and servers for various search terms that have nothing to do with Plaintiff's meritless battery claim.  Any ESI protocol applying to Mr. Trump would also raise national security issues, and run afoul of several legal privileges vested in the Office of the President.  The Video should speak for itself, and no obligations regarding Mr. Trump's production of documents beyond those required by the Federal Rules of Civil Procedure and applicable privilege law should be imposed upon him.

With respect to Plaintiff's wage discrimination claims against the Campaign, these claims involve a comparison of Plaintiff's wages with those paid to employees who had the same or substantially the same title and qualifications, and performed substantially the same duties and responsibilities in the same geographic territory and time period.  *See* 29 U.S.C. § 206(d)(1)) (Under the EPA, Plaintiff must establish that the Campaign paid Plaintiff less than it paid "employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions"); *Arafat v. Sch. Bd. of Broward Cty.*, 549 F.App'x 872, 874 (11th Cir. 2013) (Under 42 U.S.C. § 1981, Plaintiff must show that the Campaign paid her less than white employees who were "similarly situated to the plaintiff in all relevant respects.")  The documents relevant to these claims can be located through a diligent search for responsive documents in locations where they

exist or may exist, and without the Proposed ESI Protocol and its vastly overbroad, oppressive, unduly burdensome and largely irrelevant list of proposed custodians and search terms.

Notwithstanding the foregoing, and in an effort to cooperate in good faith, attached hereto as Exhibit A is a redlined version of the Proposed ESI Protocol that is acceptable to the Campaign **only** (the "Revised ESI Protocol"). Because Defendants emphatically object to the list of custodians and search terms proposed by Plaintiff, and Plaintiff does not currently have an operative pleading on file, the Revised ESI Protocol provides that Plaintiff and the Campaign shall meet and confer in good faith regarding custodians and search terms within ten (10) business days of the filing of Plaintiff's First Amended Complaint (the "FAC"). The Revised ESI Protocol further provides that, if no agreement is reached during this meet and confer process, either party may apply to the Court for a determination, and the opposing party shall have at least seven (7) business days for the preparation and filing of an opposition.[2]

At this stage of the proceedings, it would be premature for specific custodians and search terms to be selected before Defendants have had a reasonable opportunity to analyze Plaintiff's First Amended Complaint. For example, Plaintiff may elect to not re-file her battery claim in light of the Video and Mr. Trump's notice that Rule 11 sanctions will be pursued, or Plaintiff may add or remove allegations relating to her wage discrimination claims in response to the Court's June 14, 2019 Order. Any changes from the Complaint to the FAC likely would bear upon the discussion of appropriate custodians and/or search terms. It would be a waste of the

---

[2] Lead counsel for Defendants, Charles J. Harder, will be out of the office on a long-planned vacation with his family from July 11, 2019 through July 26, 2019. As a result, Defendants respectfully request that any further hearing regarding custodians and/or search terms take place after Mr. Harder returns from vacation. Further, Mr. Harder is currently available to attend an in-person hearing in Tampa, Florida on August 8 or 19, 2019.

parties' and the Court's time and resources to discuss custodians and search terms prior to ten (10) business days following the filing of the FAC.

For these reasons set forth herein, Defendants respectfully request that the Court deny the Motion in its entirety, or in the alternative, deny the Motion as to Mr. Trump and enter the **Revised** ESI Protocol as to the Campaign **only**.

## II.   <u>RELEVANT PROCEDURAL HISTORY</u>

Plaintiff devotes the majority of the Motion to characterizing the parties' meet and confer efforts in an attempt to reach an agreed-upon ESI protocol.  Defendants respectfully decline to engage in a tit-for-tat response to Plaintiff's lengthy recitation, other than to note that Defendants disagree with Plaintiff's one-sided characterization of events, and piecemeal discussion of the parties' communications.

It is worth mention that Plaintiff's counsel may have mischaracterized the Court's statements during the June 5, 2019 hearing to give the impression that the Court has already mandated the entry of an ESI protocol.  *See* Motion, p. 2.  The discussion between Mr. Harder and the Court during the June 5 hearing pertained to Plaintiff's deposition and her then-refusal to produce **any documents** prior to the entry of an ESI protocol.  The relevant quotations from the hearing transcript are as follows:

> **MR. HARDER**: … Her counsel has said that they are not going to produce any documents at all unless we agree to a stipulated -- an e-discovery stipulation which goes on for 13 pages. And there's going to be a lot of back-and-forth. And we may not even come to an agreement. It may end up being a motion. We'd like to get her responsive documents, her emails, her text messages, before we take her deposition.

**THE COURT**: All right. Well, you're just going to have to file your motion. I don't want to do this on the fly. Okay? But I will attend to it very quickly. Now, you understand that there's a certain strategy involved, which you've chosen, which is to get this depo "wiki wiki" as they say on Hawaii 5-0. That's fine. But extracting emails and doing search terms and stuff is not always -- there are deadlines. I'm not excusing any lack of production. But it is an issue in these cases. So I hope you understand that.

[Dkt. No. 54, pp. 82:19-83:11.]

Following the June 5 hearing, Plaintiff changed her position and chose to produce 5,483 pages of documents, from more than 225,000 documents assembled from Plaintiff's electronic devices – prior to the entry of an ESI protocol.  Defendants have not stated any objections to the format or content of those documents.   Moreover, Plaintiff is presumably in the process of gathering additional documents, which must be produced on or before July 26, 2019 pursuant to the Court's Order of June 25, 2019.  [Dkt. No. 65.]  Neither Plaintiff nor Defendants require an ESI protocol for such production, nor did the Court mention one in ordering production of these documents.

Meanwhile, the Campaign has produced more than 500 pages of responsive documents, without any need for an ESI protocol, because such a protocol is unnecessary to search for and produce documents.  Plaintiff has not provided any objections to Defendants regarding the form or content of the "paper" documents of that production.[3]  Defendants are continuing to search for

---

[3] Following Plaintiff's deposition, Plaintiff's counsel raised an issue regarding the metadata accompanying 8-hours of video content produced prior to the deposition, and the parties are in the process of meeting and conferring regarding the same.  Plaintiff contends that metadata was intentionally stripped from the video content, but also cites to certain metadata within that

responsive documents, and will produce them at the appropriate time.  Again, no ESI protocol has been necessary for this process.

Plaintiff rushed to file the instant Motion.  Defendants were about to send Plaintiff a further redline to the draft ESI protocol (which is substantially similar to the Revised ESI Protocol attached hereto as Exhibit A) when Plaintiff abruptly cut off the meet and confer process and filed the Motion, thereby delaying the process.  Plaintiff also does not understand or wish to appreciate the inherent complexities associated with a proposed ESI protocol applying to the sitting President of the United States.  The various draft ESI protocols raise sensitive issues that require the input of multiple law firms, consultants and client representatives.  Plaintiff, by contrast, is a single individual.

## III.   **ARGUMENT**

The touchstone of any discovery of electronically stored information is **proportionality**.  "The discovery of ESI should be proportional to the amount in controversy, the nature of the case and the resources of the parties."  *Middle District Discovery: A Handbook on Civil Discovery Practice in the Middle District of Florida* at 24 (2015).  There are six principles that govern issues related to discovery of ESI:

(1) a balancing of the burdens and costs of the discovery against its potential value;

(2) obtaining discovery through the most convenient and least burdensome source;

(3) holding parties responsible for any undue burden, delay, or expense that they cause;

(4) extrinsic information and sampling may assist the analysis of whether discovery is sufficiently important to justify the burden;

---

content.  Defendants had no intention of stripping metadata and are in discussions to provide Plaintiff with any missing metadata for such videos.

(5) nonmonetary factors should be considered when evaluating the burdens and benefits of ESI discovery; and

(6) technologies to reduce cost and burden should be considered in the proportionality analysis.

*Id.*   Here, the burden upon Defendants of the Proposed ESI Protocol, and particularly the overbroad, oppressive, unduly burdensome and largely irrelevant lists of proposed custodians and search terms, is massive, and wholly unjustified for this simple battery and wages case.

Moreover, an ESI agreement between the parties, while encouraged, is not required by the FRCP or case law.  In *Lanard Toys Ltd. v. Dolgencorp, LLC*, 2016 WL 7031326 (M.D. Fla. Jan. 21, 2016), Judge Barksdale held that, where the parties were unlikely to agree on search terms or date ranges, there was **no basis** to grant the plaintiff's motion to compel the defendants to enter into an ESI agreement.  Rather, the Court decided that it would hear and decide any discovery disputes as they arose.  *Id.* at *4 ("In light of the above rulings, the current record, the evident unlikelihood that the parties could agree on any search terms and date ranges, and defense counsel's agreement to provide metadata for any already produced document upon the plaintiff's request and explanation for need, the Court sees no present reason to compel the defendants to enter into an ESI agreement or order the other requested relief.").

Additionally, an ESI protocol, if entered into, need not contain stipulations as to issues in contention between the parties.  For instance, one treatise recommends that parties agree to the following five-paragraph ESI protocol, which does not address issues such as custodians or search terms:

(1) Defendants shall retain possession of the original data through the restoration, data management and document review stages.

(2) Restoration of backup tapes shall proceed on a measured basis, with cost-shifting determinations to be made by the court at each step of the process. Cost-shifting shall be applied for in the method set forth in Rule 26(b)(2) and the Advisory Committee Note attendant thereto.

(3) No party shall waive any claim that information contained on a computer file is privileged because that party produced an inventory, spreadsheet or other survey of the contents of an item upon which data is stored.

(4) Defendants shall produce responsive information contained in stored data files to plaintiffs in TIFF [or PDF] format with Bates numbering and appropriate confidentiality designations, shall produce searchable metadata databases, and shall maintain the original data itself in native format for the duration of the litigation.

(5) If either party seeks relief from the court concerning the scope of information searched or produced, the party producing the information shall not delay working toward the production of information that is not in dispute.

*Rutter Group Practice Guide:  Federal Civil Procedure Before Trial (Nat'l Ed.)* § 11:1876 (2019).

A party seeking to compel the other party to search ESI using particular search terms has the burden of showing that the search terms are **appropriate and reasonable**, which requires **expert analysis** of what terms are likely to yield the desired relevant information.  *United States v. O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) ("Accordingly, if defendants are going to contend that the search terms used by the government were insufficient, they will have to specifically so contend in a motion to compel and their contention must be **based on evidence** that meets the requirements of Rule 702 of the Federal Rules of Evidence [*i.e.,* expert testimony].").  The party must further show "a distinct need based on the size, complexity, and

issues." *Nevro Corp. v. Boston Scientific Corp.*, 2017 WL 2687806 at *3 (N.D. Cal. Jun. 22, 2017) (denying motion to add five additional search terms).

Here, there is no need for the Proposed ESI Protocol, particularly with respect to Mr. Trump, and certainly no basis for including the overbroad, oppressive, unduly burdensome and largely irrelevant lists of custodians and search terms proposed by Plaintiff.  Again, this is a simple case involving whether a battery occurred, and whether Plaintiff suffered wage discrimination.  The issues raised by these claims are simple and straightforward.  Nearly 6,000 pages of documents have already been produced – without an ESI protocol – and the Court has ordered an additional production of documents by Plaintiff on July 26, again, without the need for any ESI protocol.  Neither of the claims in this case requires or justifies a blunderbuss scouring of Defendants' ESI, especially using terms that are calculated to obtain highly prejudicial information rather than relevant evidence.  There are no ESI documents at all regarding the battery claim, other than the Video, that are likely to have any probative value on whether the alleged battery took place.  The wage discrimination claim turns on easily located employment agreements and documents where wages and job duties can be compared.

Finally, there is no basis for any order including specific custodians or search terms at all, since Plaintiff has made no evidentiary showing at all that the custodians or search terms she seeks are likely to reveal discoverable evidence.  Moreover, Plaintiff does not yet have an operative pleading on file.  The search terms suggested by Plaintiff include several highly vulgar and derogatory terms.  There is no showing that anyone ever used these terms, but they also have no relevance to this case (and would likely be excluded in any event as substantially more prejudicial than probative).  Rather, the presence of these vulgarities in Plaintiff's list of search terms indicates that Plaintiff is seeking exactly the sort of politically motivated mass fishing

expedition this Court already condemned when it dismissed the original Complaint.  Plaintiff and her advocacy organization obviously hope to find some utterance somewhere of some derogatory word in some different context that can then be released to the public to inflict political damage upon the President and his re-election effort.

It is widely-known that the mere use of a particular search term that Plaintiff seeks to include (n*gger) by a celebrity can cause massive damage to that celebrity's career.  As one example, TV celebrity chef and restauranteur Paula Deen's entire empire and business, built over decades, became vaporized in a matter of weeks when she made an admission in a deposition that, in the past, she had uttered this word.  Similar examples have occurred with respect to other celebrities include Hulk Hogan, whose employment was terminated and decades old legacy scrubbed from the WWE Hall of Fame, when a surreptitious recording of a conversation with a friend from 8 years earlier, in a private home, surfaced showing him using this word.

To be clear, there is no evidence that Mr. Trump or anyone on the Campaign has ever used such a word, and the issue is completely irrelevant to either the battery or the wage discrimination claims.  However, this fact has not stopped Plaintiff and her advocacy group in their quest to use this lawsuit and Court as a means to wage political warfare, including vastly overbroad discovery into Defendants' ESI.

## IV.   **CONCLUSION**

For these reasons set forth herein, Defendants respectfully request that the Court deny the Motion in its entirety, or in the alternative, deny the Motion as to Mr. Trump and enter the **Revised** ESI Protocol as to the Campaign **only**.

Dated this 10th day of July, 2019   Respectfully Submitted,

             */s/ Charles J. Harder*
             Charles J. Harder
             Trial Counsel
             CHarder@HarderLLP.com
             Admitted *Pro Hac Vice*
             HARDER LLP
             132 S. Rodeo Drive, Fourth Floor
             Beverly Hills, California  90212
             Telephone:  (424) 203-1600
             Facsimile:  (424) 203-1601

             Dawn Siler-Nixon
             Florida Bar No. 993360
             DSiler-Nixon@FordHarrison.com
             Tracey K. Jaensch
             Florida Bar No. 907057
             TJaensch@FordHarrison.com
             FORD**HARRISON** LLP
             101 E. Kennedy Blvd., Suite 900
             Tampa, Florida 33602
             Telephone: (813) 261-7800
             Facsimile:  (813) 261-7899

             Attorneys for Defendants
             Donald J. Trump and
             Donald J. Trump for President, Inc.

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TAMPA
## TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of Herself and**
**All Others Similarly Situated,**

               Case No. 8:19-cv-00475-WFJ-SPF

        **Plaintiff,**

    **vs.**

**DONALD J. TRUMP,**
**In His Individual Capacity and**
**DONALD J. TRUMP**
**FOR PRESIDENT, INC.,**

        **Defendant.**
_____/

### [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS BY PLAINTIFF AND DEFENDANT DONALD J. TRUMP FOR PRESIDENT, INC. ONLY

    **1.**    **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") and paper documents by Plaintiff Alva Johnson ("Plaintiff") and Defendant Donald J. Trump for President, Inc. **only** in the above-captioned case.  This Order shall not govern discovery of ESI and paper documents by Defendant Donald J. Trump ("Mr. Trump"), or otherwise apply to Mr. Trump in any way.  The use of the term "party" or "parties" herein shall not include Mr. Trump.

    **2. COOPERATION**

The parties are required to cooperate in good faith throughout the matter regarding discovery of ESI.

    **3. LIAISON**

Within five days of the entry of this Order, the parties must identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI that

is potentially relevant. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of potentially relevant ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The parties must discuss their preservation obligations and needs and must preserve potentially relevant ESI, which will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the potentially relevant ESI in each party's respective possession, custody or control as of the date this litigation was commenced shall be preserved. The parties agree to take reasonable steps to preserve records in a form that will permit the collection and production of metadata referenced in Appendix A.  ~~The following types of ESI should be preserved: data on cell phones, laptop and desktop computers, tablets, and servers (including cloud-based servers).~~

Within ten (10) business days of the filing of Plaintiff's First Amended Complaint, the parties will meet and confer regarding a list of custodians for whom they believe ESI should be preserved.  In the event that the parties cannot reach agreement on custodians within this time frame, either party may apply to the Court for a determination of any outstanding disputes, and the opposing party shall have at least seven (7) business days to prepare and file an opposition to such application. ~~The parties shall preserve ESI for the following custodians:~~

~~1. Donald J. Trump~~

~~2. Karen Giorno~~

~~3. Lucia Castellano~~

4. Cassidy Dumbauld

5. Chess Bedsole

6. Charles ("Chad") Tucker

7. Dennis Beavers

8. Jennifer Locetta

9. Susie Wiles

10. Tony Ledbetter

11. Nick Corvino

12. Beatriz "Bibi" Ramos

13. Stephen Bannon

14. Stephanie Grisham

15. Suzie Jaworowski

16. Elizabeth Mae Davidson

17. Mitch Tyner

18. Sidney Bowdidge

19. Matt Ciepielowski

20. Austin Browning

21. David Chiokadze

22. Corina Cotenscu

23. Alva Johnson

24. Head(s) of payroll for the Campaign

25. Person(s) responsible for making salary determinations for the Campaing

The parties may agree to add or remove custodians as reasonably necessary. They shall

~~take reasonable steps to preserve records in a form that will permit the collection and production of metadata referenced in Appendix A.~~  Notwithstanding the foregoing, the parties may conduct non-ESI collection they believe is appropriate to locate ESI they can specifically identify without an ESI search, and acknowledge that certain metadata fields may not be preserved through such non-ESI collection. The parties will use their best effort to preserve all metadata and will produce the metadata for all ESI (including non-ESI collection electronic documents) in the same format, to allow the receiving party to easily identify any metadata fields that were lost during collection. To the extent a receiving party reasonably believes that the complete metadata for any ESI produced via non-ESI collection is discoverable in accordance with Fed. R. Civ. P. 26, the receiving party may request that the producing party locate and produce the file with the complete metadata for such file, and the producing party shall meet and confer in good faith to agree upon such production.

### 5. SEARCH TERMS AND TIME FRAME FOR SEARCHES

Within ~~five~~ ten (10) business days ~~of the entry of this order~~of the filing of Plaintiff's First Amended Complaint, the parties will meet and confer about search terms, relevant time-frame and other factors to search ESI in order to identify ESI that is the appropriate subject of production in discovery, and avoid identification and production of ESI that is not the appropriate subject of discovery. Pursuant to their duty to cooperate and to reduce the burden in filtering out ESI that is not the appropriate subject of discovery, the parties will work together to agree on targeted search terms and/or search methods. To the extent necessary, the parties will modify search terms based on hit results to tailor the search terms appropriately. Such modification may include the right to add a search term(s) to ensure that responsive and relevant documents are produced. An agreement to run search terms is not an agreement to produce every document that hits on every search term.

In the event that the parties cannot reach agreement ~~on search terms by July 15~~within this time frame, either party may apply to the Court for a determination of any outstanding disputes, and the opposing party shall have at least seven (7) business days to prepare and file an opposition to such application.~~the search terms proposed by Plaintiff shall be used.~~

### 6. PRODUCTION FORMATS

### General Agreement

The parties shall produce documents in native or TIFF image file format, as detailed below. If particular documents warrant a different format, the parties will cooperate regarding the mutually acceptable production of such documents in an alternative format. A party that receives a document produced in TIFF or other format may make a reasonable request to receive the document in its native format based on good cause, and the parties shall meet and confer in good faith regarding such request.

### Production of Certain Files in Native Format

Unredacted Excel documents or spreadsheets; unredacted PowerPoint documents or presentations containing animation, video, or sound; and audio or video files shall be produced in native format.

Microsoft Word or other word-processing documents that contain tracked changes or comments; and structured files may be produced in native format. Alternatively, at the producing party's option, they may be produced as TIFF images, as long as they contain the tracked changes and comments contained in the original.

For each natively produced document, a placeholder TIFF image labeled "File Produced Natively," branded with the corresponding Bates number and confidentiality designation, will also be produced.

Native files will be renamed in the following format: BEGBATES.ext.

**Structured Data**

The parties shall meet and confer regarding the production of structured data as needed. The parties reserve the right to generate and produce reports of structured data in PDF or Excel format.

**Image File Production Requirements**

Document images will be provided as single-page TIFF format, using Group 4 compression with at least 300 dots per inch ("dpi") resolution. Images may be reduced by up to 10% to allow for a dedicated space for page numbering and other endorsements of documents. Images will be in black and white, unless color is necessary to understand the meaning of the document.

All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

Each page of a document will be electronically saved into an image file. If a document is more than one page, the unitization of the document and any attachments will be maintained as it existed in the original form and reflected in the load file. The parties will make their best efforts to unitize documents correctly.

**Bates Numbering**

Each All images shall be assigned a unique Bates number, unless there is a legitimate reason not to assign a unique Bates number to a document, in which case the parties shall meet

and confer regarding the same.

### Metadata Production Requirements

The parties shall provide the metadata fields for all ESI produced, to the extent such metadata exists, as noted above and described in Appendix A. ~~The parties shall continue to meet and confer as needed regarding metadata fields.~~ Notwithstanding the foregoing, to facilitate expeditious discovery in this matter, the parties agree that they may collect and produce ESI without metadata and load files if the ESI is readily available in such format without costly and burdensome collection efforts and if collection and production of complete metadata with load files is not feasible.  However, the parties will use their best effort to preserve all metadata identified in Appendix A and will meet and confer regarding the collection and production of metadata and load files for such documents to the extent a receiving party reasonably believes that complete metadata is discoverable in accordance with Fed. R. Civ. P. 26.

### Confidentiality Designations

If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information), or to the terms of a protective order entered by the Court in this case or a confidentiality stipulation entered into by the parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment.

### De-Duplication

A party is only required to produce a single copy of a responsive document. Parties may

globally de-duplicate stand-alone documents or entire document families using hash value matching (such as MD5 or SHA-1 values). ESI that is not an exact duplicate may not be removed. To the extent the parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced. If duplicate responsive documents are removed prior to production, the metadata of the produced documents will, to the extent reasonably possible, include the metadata of the removed documents (such as the names of everyone who had those documents prior to de-duplication).

### Production of Emails

Parent-child relationships (the association between emails and attachments) will be preserved, and attachments to e-mails will not be eliminated from the parent e-mail. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata.

### Production of Paper Documents

A party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents if it chooses. Where OCR is used, the parties agree the following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/~~I~~N). Additionally, the producing party will identify the bates number range(s) of any paper documents produced.

Paper documents should be logically unitized for production to the extent reasonably practicable. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.

Where the documents were organized into groups, such as folders, clipped bundles, and

binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. The parties will make their best efforts to unitize documents correctly.

Where a document, or a document group, such as folder, clipped bundle, or binder, has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

The parties will utilize best efforts to ensure that paper records for a particular document custodian are produced in consecutive Bates stamp order.

## 7. DOCUMENTS PROTECTED FROM DISCOVERY

### Non-Waiver of Protection

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. Nothing in this paragraph shall require a party to produce documents that are protected from disclosure. This paragraph shall be interpreted to provide the greatest protection allowed by Federal Rule of Evidence 502, or otherwise permitted by law.

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**Redactions**

Any redactions made by a party shall be identified as redacted within the "REDACTED" metadata field, and all redactions shall be logged on the privilege log with a notation stating the reason for the redaction. Each party reserves the right to object to any redaction and to seek an order from the Court requiring the producing party to produce an unredacted version after meeting and conferring in an attempt to agree to removal of the redaction.

**Privilege Logs**

Communications involving trial counsel or counsel of record in this action that post-date the filing of the complaint need not be placed on a privilege log. The parties agree to meet and confer to address undue burden related to this requirement. The privilege log will be produced within 30 days of substantial completion of the parties' document production, and supplemented if necessary thereafter.

**"Clawback" of Documents**

Any party that inadvertently discloses or produces a document or ESI that it considers privileged or otherwise protected from discovery will give written notice to the receiving party, identifying the document or ESI in question, the asserted privilege or protection, and the grounds therefor.

Upon receipt of notice of the assertion of privilege or protection over produced documents or ESI, the receiving party will:

(a) to whatever extent it contests the assertion of privilege or protection, promptly so notify the producing party, and maintain the contested documents and ESI in confidence pending resolution of the contest by the parties or the Court; and

(b) to whatever extent the receiving party does not contest the assertion of privilege or

protection, promptly certify in writing to the producing party that it has returned or destroyed the applicable document(s) and/or ESI, and has made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally reasonable diligence will not include disaster recovery media).

In the event of a contested assertion of privilege or protection over produced documents that cannot be resolved amicably after meeting and conferring in good faith, the party asserting the privilege must bring the contest to the attention of the Court by motion.

### 8. MODIFICATION

This Order may be modified by written agreement of the parties, a Stipulated Order of the parties or by the Court for good cause shown.

### 9. MISCELLANEOUS PROVISIONS

a. This Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this action as imposed by the Federal Rules of Civil Procedure, the Local Rules and/or any other Court Orders. The parties reserve all rights to make objections when responding to document requests. Nothing in this Order establishes any determination as to either the temporal or subject matter scope of discovery in this case.

b. In the event of any dispute between the parties related to this protocol or if the parties are unable to reach agreement on any matters hereunder following their meet and confer efforts, including but not limited to with respect to the issues of Preservation (Section 4 hereto), Searches (Section 5 hereto), Production Format (Section 6 hereto) and Documents Protected from Discovery (Section 7 hereto), the parties shall submit the matter to the Court for determination.

**IT IS ORDERED**

Dated: _____, 2019

_____
HON. WILLIAM JUNG
United States District Judge

**APPENDIX A**
**ESI PRODUCTION METADATA FIELDS**

| Field Name | Content Specifications |
|---|---|
| Author | Author field extracted from the metadata of a non-email document (Note: this does not include sender of an email. See "from" field.) |
| BCC | BCC or blind carbon copy field extracted from an email message |
| BeginAttachmentBates | Unique number identifying the first page or first document of a document attachment(s) |
| BeginBates | Beginning Bates number of document |
| CC | CC or carbon copy field extracted from an email message |
| Company | Company name, present in Office documents and some PDFs |
| CreateDate | Date that a file was created (mm/dd/yyyy format) |
| CreateTime | Time that a file was created |
| CustodianName | Name of the custodian of the file(s) produced (last name, first name) |
| DuplicateCustodians | Identifies duplicate custodian sources for files excluded from production based on MD5 or SHA-1 hash de-duplication |
| DuplicateFilenames | If collected from multiple sources, the name of each additional file |
| DuplicateOriginalFilepath | If collected from multiple sources, the filepath of each additional file |
| EndAttachmentBates | Unique number identifying the last page or last document of a document attachment(s) |
| EndBates | Ending Bates number of document |
| Filename | Filename of the original digital file name |
| From | From field extracted from an email message |
| Hash | MD5 or SHA-1 unique 32 or 40 character hexadecimal value, respectively. A "digital file fingerprint". |
| ImageFilename | Filename to produced ~~PDF~~ TIFF image |
| ImagePath | Path to produced ~~PDF~~ TIFF image |
| LastAccessedDate | The last time a document was opened. Maps to modified date. |
| LastAccessedTime | The last time a document was opened. Maps to modified date |
| LastModifiedDate | Modification date(s) of a non-email document |
| LastModifiedTime | Modification time(s) of a non-email document |
| LastPrintedDate | The last time the document was printed |

[PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

| | |
|---|---|
| LastPrintedTime | The last time the document was printed |
| NativeFilename | Filename to produced native file |
| NativePath | Path to produced native file |
| OCRPath | Path to OCR text file |
| OCRTextFilename | Filename to OCR text file |
| OriginalFilepath | Original filepath of the document |
| PageCount | Number of pages in the document |
| ParentID | ID of the parent of the document |
| ReceivedDate | Received date of an email message (mm/dd/yyyy format) |
| ReceivedTime | Received time of an email message |
| ReferenceID | Cross-reference identifier (if needed) |
| ReviewID | Another identifier (if needed) |
| SendDate | Sent date of an email message (mm/dd/yyyy format) |
| SendTime | Sent time of an email message |
| Subject | Subject (or "re" line) of an email |
| Tags | Tags or codes added by users |
| Title | Title of the document, present in Office documents and some PDFs |
| To | To or Recipient field extracted from an email message |
| Redaction | Populated with a "Yes" if redacted |
| Confidential Designation | The confidential designation endorsed on the document |

[PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 10, 2019, the foregoing document was served, with the consent of all parties, by electronic mail upon the following:

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Janet Varnell
jvarnell@varnellandwarwick.com
Brian W. Warwick
bwarwick@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

*/s/ Charles J. Harder*
Attorney

14