UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of All Others Similarly Situated,**

    **Plaintiff,**    Case No. 8:19-cv-00475-WFJ-SPF

v.

**DONALD J. TRUMP,**
**In his Individual Capacity and**
**DONALD J. TRUMP FOR PRESIDENT, INC.**

    **Defendants.**

_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY

    Defendants Donald J. Trump and Donald J. Trump for President, Inc. (the "Campaign") (collectively, "Defendants") hereby oppose plaintiff Alva Johnson's ("Plaintiff") Motion to Reopen Discovery dated July 26, 2019 [Dkt. No. 85] (the "Motion"), and in support thereof state as follows:

### I.    INTRODUCTION

    Plaintiff's Motion lacks merit and should be denied in its entirety.  The Motion seeks the "original video" shot in the Campaign RV on August 24, 2016.  However, during the meeting and confer process preceding the Motion, Defendants' counsel confirmed to Plaintiff's counsel that Defendants had provided to Plaintiff with **all of the video footage of the interaction between Plaintiff and Mr. Trump** within Defendants' possession, custody or control.

Brian Hayes already confirmed in a declaration [Dkt. No. 73-2] that the video filed in support of Defendant's Motion for Protective Order [Dkt. No. 73] is "a true and correct copy of [his] audiovisual recording" of the interaction between Plaintiff and Mr. Trump in the campaign RV on August 24, 2016 in Tampa, Florida (the "Video"). Filed concurrently with this Opposition is a second Declaration of Mr. Hayes in which he confirms, under penalty of perjury, that the Video is the entire video, and is not an excerpt or clip taken from a longer video. He also confirms, again, that the Video was not edited or altered in any way.

The Video conclusively shows that the interaction between Plaintiff and Mr. Trump in the campaign RV on August 24, 2016 does not constitute a battery. Thus, even if the Motion were granted, it would not yield any additional, relevant information or documents. It would only lead to needless litigation, further driving up the time and resources of the parties and the Court.

The Motion seems to be yet another installment of Plaintiff's political litigation, designed to harass the Defendants, embarrass them in the media, drive up their litigation costs, and conduct discovery in an action where there remains no operative Complaint on file.

The Court was correct in staying discovery pending the filing of an Amended Complaint. There is no reason to upset the Court's well-reasoned Order (and subsequent stipulation by the parties) by granting Plaintiff's meritless Motion.

## II. PROCEDURAL HISTORY

### A. Pleadings

On February 25, 2019, Plaintiff filed this lawsuit against Mr. Trump for battery, and against the Campaign for unequal pay based on gender and race, respectively. Complaint [Dkt. No. 1]. Defendants moved to strike portions of her pleading pursuant to Federal Rule of Civil

Procedure 12(f) [Dkt. No. 30] and to dismiss her pay claims under Rule 12(b)(6) for failure to state a claim [Dkt. No. 32].

On June 14, 2019, following a complete adversarial briefing and nearly two hours of extensive in-person oral argument on June 5, 2019 [Dkt. No. 54], the Court **granted** Defendants' Motions in their entirety and **dismissed** the Complaint without prejudice, in a fully-researched and thoroughly-reasoned 15-page ruling. [Dkt. No. 55].

In dismissing the Complaint, the Court admonished Plaintiff that "the Complaint presents a political lawsuit, not a tort and wages lawsuit. Plaintiff will receive a fair day in court, but the Court will try a tort and wages dispute—not a political one. If Plaintiff wishes to make a political statement or bring a claim for political purposes, this is not the forum." *Id.* at 2.

Plaintiff has yet to file an Amended Complaint.

### B. Motion for Protective Order

On July 10, 2019, Defendants filed a Motion for Protective Order (the "Motion for Protective Order") to prevent Mr. Trump from being deposed in this action, and to protect Defendants from Plaintiff's improper discovery requests. [Dkt. No. 73]. Much of Plaintiff's written discovery pertained to subjects that the Court previously struck from Plaintiff's original Complaint and prohibited from being included in any future Amended Complaint yet, surprisingly, Plaintiff still refused to withdraw any of her written discovery on those same topics.

In support of their Motion for Protective Order, Defendants submitted to the Court (among other things) the Video[1] [Dkt. No. 79] depicting the August 24, 2016 interaction between

---

[1] Defendants also included a slowed-down version of the Video to show that Mr. Trump did not attempt to kiss Plaintiff on the mouth, as she falsely claimed, and did not kiss her mouth, which she also falsely claimed. Both versions of the Video remain available at http://www.HarderLLP.com/JohnsonVideo.

{00102181;2} 3

Plaintiff and Mr. Trump which gives rise to Plaintiff's only claim against Mr. Trump: an allegation of, in the Court's words, a "simple battery." [Dkt. No. 55 at 3, 4, 8, 14.]

The Video shows a brief interaction between Plaintiff and Mr. Trump, which lasted only a few seconds, inside of a Campaign RV, surrounded by campaign workers, volunteers, supporters, and multiple members of law enforcement, including members of the U.S. Secret Service and Florida's then-Attorney General, Pamela Bondi. In the Video, Plaintiff states that she had been away "from my family for eight months for you." The two then exchange a very quick, **mutual** embrace in which Plaintiff kisses Mr. Trump (or the air right next to his cheek).

Mr. Trump did not "forcibly kiss" Plaintiff, nor kiss her mouth, nor attempt to kiss her mouth—as Plaintiff **repeatedly** misrepresented to this Court throughout the first several months of this case, and as Plaintiff stated in written discovery responses (verified under penalty of perjury) and during her deposition (under oath). The Video appears to show that Mr. Trump did not kiss Plaintiff at all—his face is angled **away** from Plaintiff's face at the time Plaintiff kissed him.

The Video also shows that, after the brief physical interaction, Plaintiff **smiles** at Mr. Trump, repeats to him "eight months for you," and then says to him: "We're going to get you in the White House and I'll see you in February," referring to the month shortly after the Presidential Inauguration on January 20, 2017.

Plaintiff's actions and statements are hardly those of a person who had just been attacked by a "sexual predator," as Plaintiff repeatedly, falsely alleged to this Court throughout the first several months of this lawsuit, and as Plaintiff also stated to the national news media in interviews with reporters in the days following the filing of this lawsuit. Rather, these were the words and actions of a dedicated campaign staffer (Plaintiff), who remained supportive of her

{00102181;2}                                  4

candidate immediately following the brief interaction, and also in the days, weeks and months after their interaction.[2]

The following day, on July 11, 2019, the Court held a conference call of all counsel and, speaking "very candidly," stated to Plaintiff's counsel on the record that "we were all a little bit surprised here in chambers to see that tape based on what you had represented," *i.e.*, "conduct [that] was not only sexually predatory but forcible kissing, wanton, willful." Transcript, July 11, 2019 [Dkt. No. 83] at 5:21, 8:16–18, 8:6–8.

Reminding Plaintiff's counsel that "an objective standard" applies, the Court asked:

---

[2] Relevant to Ms. Johnson's dismissed battery claim are the facts that:
    (a) Plaintiff continued to work for the Campaign for six weeks after the interaction,
    (b) Plaintiff never reported the incident to anyone at the Campaign (she admitted this during her deposition),
    (c) Plaintiff's document production of more than 5,100 pages does not include a single negative statement by Plaintiff about Mr. Trump after the interaction in the campaign RV, and
    (d) Plaintiff said numerous very positive statements about Mr. Trump after the interaction in the campaign RV—starting in the days following the interaction and continuing for the following year through 2017. *See, e.g.*, Videotaped Deposition of Alva Johnson, July 8, 2019, at 111:3–11 (Plaintiff admits she continued working for the Campaign and said "a lot of very supportive things about Mr. Trump in those six weeks after the alleged kiss"), Ex. 5 (Email message from Plaintiff, Sept. 26, 2016: "The Boss is doing a phenomenal job tonight!! Keep praying and cheering him on."), Ex. 6 (Text message from Plaintiff, Oct. 8, 2016: "Mr. Trump is doing so well. Holding him up in prayer."), Ex. 27 (Letter of recommendation authored by Plaintiff, signed by Campaign worker and sent to two U.S. Senators, Aug. 18, 2017: "Her **commitment to the President is unwavering**") (emphasis added), Ex. 28 (Letters of recommendation authored by Plaintiff, signed by Republican Men's Club president and sent to two U.S. Senators, Aug. 14, 2017: "She continues to maintain **ardent support for the President and his policies** . . . . She is an early supporter of President Trump and is well known by ex-campaign staff and the President's supporters as **one of his staunchest loyalists**") (emphasis added), Ex. 29 (Email message from Plaintiff, Feb. 22, 2017: Johnson vows to "remain [a] vocal cheerleader[] for President Trump and his policies"). In May 2017, more than eight months after the interaction in the campaign RV, Plaintiff was interviewed on a radio show and, in response to the interviewer's question **whether Plaintiff felt at ease around Mr. Trump**, she replied: "**Oh, absolutely. He's the nicest guy.**" She also said: "**He is more incredible in person than** I think you would even think as you would see him **on TV. He's just the nicest guy.** He really loves his country. He loves his family. **He treats everyone as if they're a part of his family.**" *Id.* at 247:1–18 (emphasis added); *Politics and Moore* (WVNN radio broadcast May 6, 2017), http://www.wvnn.com/politics-and-moore-w-shannon-moore-and-ashley-sat-11am-12pm.

"Is that a battery, a Florida battery?" *Id.* at 7:15, 5–6. The Court further stated: "Mr. Zavareei, you're kind of at an inflection point here. Assuming that this event occurred as it's shown on tape, in drafting this amended pleading, there might be a little bit of reflection, a little objectivity, more distant view of where you're going to go with this." *Id.* at 6:16–20.

### C. Court Order and Stipulation of the Parties

Because the entire case remained in "quite a bit of stasis, actually, pending resolution of the complaint," the Court decided "to wait until we get an operative pleading and the pleading is at rest to see where we go with all this." *Id.* at 9:2–3, 4:9–11. Accordingly, the Court granted Plaintiff extensions of time to file an Amended Complaint and her opposition to the Motion for Protective Order. Clerk's Minutes, July 11, 2019 [Dkt. No. 80].

Following entry of the Court's Order of July 11, 2019, Plaintiff asked Defendants to stipulate to a two-week extension for her to file an Amended Complaint and respond to the Motion for Protective Order. Defendants agreed. *See* Joint Motion to Extend Deadlines, July 12, 2019 [Dkt. No. 81]. The Court granted the stipulation, continued the deadline for Plaintiff's amended pleading until July 29, 2019, and ordered that her opposition to the Motion for Protective Order be filed no later than August 7, 2019. Endorsed Order, July 12, 2019 [Dkt. No. 82].

Less than a week later, Plaintiff served both Defendants with various all-new purported document demands, interrogatories and requests for admission, accompanied by a letter asking them to consent to re-opening discovery and adjourning the just-continued deadline to amend her pleading. *See* Declaration of Hassan A. Zavareei, July 26, 2019 [Dkt. No. 85-2] Ex. 5.

Defendants declined to do so on grounds that: the Video was the complete and accurate video, as already attested to by Brian Hayes; there was no operative complaint on file; the

Court's statements and Order on July 11, 2019; and the parties' just-filed Stipulation, approved by the Court. *See id.* Exs. 4, 6–7. Nevertheless, on July 26, 2019, Plaintiff filed this Motion seeking to re-open discovery regarding the Video, notwithstanding the continued absence of an operative Complaint.

## III.   ARGUMENT

### A.   The Discovery Sought by the Motion is Premature

The goal of Plaintiff's Motion appears to be to conduct formal discovery **before** Plaintiff decides what claims to include in her future amended complaint. To permit her to do so would place the proverbial cart before the horse, inverting the relationship between pleadings and discovery under federal procedural law. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997) ("The scope of allowable discovery is determined by the claims (and defenses) raised in the case").

Discovery "is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that [s]he has filed has any basis in fact." *Lazarre v. JPMorgan Chase Bank, NA*, 780 F.Supp.2d 1320, 1329 n.16 (S.D. Fla. 2011) (citation and quotations omitted). To the contrary, it is fundamental that "facts necessary to state a cause of action must be stated in the complaint and that a plaintiff should not be allowed to file a suit and then conduct discovery to see if [s]he, in fact, has a case." *Id.* (citing, *inter alia*, *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging . . . for evidence of some unknown wrongdoing.")).

> If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided. Conversely, delaying . . . encourages abusive discovery and, if the court ultimately dismisses the claim, imposes unnecessary costs. For these reasons, any

legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible. Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system.

*Chudasama*, 123 F.3d at 1368.

### B. The Additional Discovery Sought Will Make No Difference

The second Declaration of Brian Hayes, filed concurrently with this Opposition, confirms the falsity of Plaintiff's basis for the Motion. Mr. Hayes states, under penalty of perjury, that the 15 second Video depicting the interaction between Plaintiff and Mr. Trump is **the complete video**—and is not an excerpt of a longer video. Declaration of Brian Hayes, July 31, 2019, ¶ 3. He reconfirms that the Video was not edited or altered in any way. *Id.*

As discussed in greater detail below, the Video was produced to Plaintiff during business hours prior to her deposition. It was also reviewed by Plaintiff and her counsel several times while they were alone during a one-hour break during Plaintiff's deposition, **before** she answered any questions about the Video. It is the only video, audio or photo evidence known to Defendants depicting the actual interaction between Plaintiff and Mr. Trump. The Video shows clearly that Ms. Johnson kissed Mr. Trump (or the air next to his face), and then smiled after delivering her kiss, and told him "We're going to get you in the White House and I'll see you in February." (*See also* note 2, *supra*.)

There is no legitimate reason to reopen discovery to allow Plaintiff to pursue discovery regarding the Video. Plaintiff's manufactured issues, such as "when Defendants received that video" and why Defendants produced it when and in the manner that they did [Dkt. No. 85 at 2]

{00102181;2} 8

are irrelevant to the **sole question** at hand—in the Court's words: "Is that a battery, a Florida battery?" Transcript, July 11, 2019, [Dkt. No. 83] at 7:15, 5–6.

Plaintiff and her attorneys have insisted to this Court during the last hearing, and also to the news media following the release of the Video, that the Video depicts the incident at issue, and the incident constitutes a battery. If the Video actually proves Plaintiff's battery claim, as she and her counsel insist, then there is no need to reopen discovery regarding the Video.

C. **Defendants Timely Produced the Video to Plaintiff**

In response to Plaintiff's initial document demands, Defendants served copies of all photographs and videos in their possession, custody or control of the interaction between Plaintiff and Mr. Trump in the Campaign RV on August 24, 2016. These materials were delivered to the office of Plaintiff's lead counsel during business hours prior to Plaintiff's deposition. This production included the Video. Declaration of Hassan A. Zavareei, July 26, 2019 [Dkt. No. 85-1] ¶ 2. The production included other videos because Plaintiff's document demand requested **all videos** in Defendants' possession, custody or control from August 24, 2016 in Tampa, Florida, including the rally, not simply videos from inside the campaign RV or depicting the interaction between Plaintiff and Mr. Trump. *See id.* ¶ 3.

After Defendants produced the Video, and two days before Plaintiff's deposition, Plaintiff's attorney wrote to counsel for Defendants stating: "If you have documents you intend to show Ms. Johnson at your deposition that you have not yet produced, can you please produce those to us today or early tomorrow? We don't want to be surprised by documents we've never seen before."

The next day, Sunday, July 7, 2019, at about 4:30 PM Eastern time, Plaintiff's counsel produced 370 pages of new documents to Defendants, thus indicating that numerous documents

produced on a Sunday evening before the Plaintiff's morning deposition, was acceptable (to Plaintiff).

Plaintiff's deposition commenced at approximately 10:30 a.m. on July 8, 2019. Videotaped Deposition of Alva Johnson, July 8, 2019, at 8:2–8.[3]

During the deposition, on the record, when the Video was first played, Plaintiff's counsel claimed the Video had not been produced in discovery. *Id.* at 76:19–21. Defendants' counsel stated that it was. *Id.* at 76:22–77:24. Plaintiff and her counsel then took a one-hour break, during which time Plaintiff and her counsel reviewed the Video, alone, "four or five times." *Id.* at 80:8–19, 88:19–24.

Immediately after the break, Plaintiff's counsel, Mr. Zavareei provided the following apology to Defendants' counsel, Mr. Harder: "I want to clarify that we did in fact receive the disk -- or the thumb drive at your last production. . . . We did not see that because of a technical error on our part, and I apologize for -- for what I said. It was inappropriate, and I regret it." *Id.* at 80:20–81:3.

Plaintiff answered no questions about the Video until after this one-hour break. Plaintiff then confirmed during her deposition that the Video depicted her interaction with Mr. Trump on August 24, 2016, in the campaign RV in Tampa, Florida. *Id.* at 91:9–15.

In light of the foregoing, the date of Defendants' receipt of the Video is irrelevant.

**D.    The Video is Authentic, Full-Length and Unedited**

In her Motion, Plaintiff suggests that examination by her purported expert has raised "some serious questions regarding the provenance, authenticity, and completeness"[4] of the

---

[3] Pursuant to the Court's request, Defense counsel provided copies of Plaintiff's deposition transcript and exhibits by email on July 10 and 16, 2019.

{00102181;2}                                         10

Video.  Motion to Reopen Discovery, July 26, 2019 [Dkt. No. 85] at 2.  It does not, and there are none.

Plaintiff's Motion conspicuously cites to **no** rules, statutes or case law.  Rather, the sole basis for the Motion is a declaration from a purported forensic "expert" named Matt Danner who has not been qualified as an expert witness in this case and with respect to whom Plaintiff has not complied with any disclosure, report and deposition procedures otherwise applicable to expert witnesses.  *See* Fed. R. Evid. 701–706, Fed. R. Civ. P. 26(a)(2).  As such, Mr. Danner is not competent to testify and his proffered declaration is inadmissible.

Further, his declaration does not even state what Plaintiff attempts to tease out of it, namely, that the Video is supposedly an excerpt from a longer video file.  Mr. Danner makes no such definitive conclusion.  Rather, he states that a difference between certain digital timestamps could be **"consistent with"** such an **interpretation**.  Declaration of Matt Danner, July 24, 2019 [Dkt. No. 85-3] ¶ 18.  Mr. Danner says nothing about the provenance or authenticity of the Video, as Plaintiff's counsel inaccurately represents to this Court.

### E. Plaintiff's Motion Constitutes a Continuation of Her Political Lawsuit

Plaintiff's Motion is consistent with her persistent efforts to turn this case into a political lawsuit from the outset.  *See* Order, June 14, 2019 [Dkt. No. 55] at 2 ("the Complaint presents a political lawsuit, not a tort and wages lawsuit.  Plaintiff will receive a fair day in court, but the Court will try a tort and wages dispute—not a political one.  If Plaintiff wishes to make a political statement or bring a claim for political purposes, this is not the forum."); *see also*

---

[4] Insofar as the completeness of the Video might be concerned, counsel for Plaintiff already addressed that issue during the telephonic hearing on July 11, 2019, in response to a direct question from the Court.  Transcript, July 11, 2019, at 4:15–5:3.  The Court presumably took counsel's point into consideration when it entered its Order that same day.  *See id.* at 4:25–5:2 (Mr. Zavareei: "So we don't know when it began and ended. We don't know if there's more to the tape, and we have no way of knowing when -- you know, the exact time . . .").

Transcript, June 5, 2019 [Dkt. No. 54] at 37:22–24 (Court to Plaintiff's counsel: "You know, let's don't pretend. Okay? This is all about politics. All right? I've read your complaint.").

The activities of Plaintiff and her counsel since the filing of this lawsuit, from the content of the Complaint (much of which has been stricken), to the more than 84 communications they had with members of the news media and on social media platforms within days of filing this lawsuit, including national television news interviews, national print media interviews, press releases, dozens of tweets, dozens of Facebook posts, posting content on Plaintiff's law firms' websites and social media, posting content at Public Justice's website and social media, and publishing an opinion article about the case at NBC News, were all designed to cause as much negative publicity and harm to the President and the Campaign as possible. *See* Declaration of Charles Harder, July 10, 2019 [Dkt. No. 73-3] Ex. T.

It has been conclusively established that Plaintiff's counsel are registered Democrats who have made numerous contributions to Democratic Party candidates, including current Democratic Party Presidential frontrunner Joe Biden, and Secretary Hillary Clinton who lost to President Trump in the 2016 Presidential election. *Id.* Ex. S.

Furthermore, Plaintiff herself reached out to the Presidential campaign of U.S. Senator Kamala Harris (currently running #2 in the polls in the Democratic Primary race) **after** filing this lawsuit, making specific reference to **her claims in this lawsuit.** *Id.* Ex. P. Moreover, Plaintiff has produced an exchange of emails (after this lawsuit was filed) with a friend who states: "…focus on any of these states to help **make sure Trump does not get reelected**: Texas, Florida, Ohio, Georgia and North Carolina" *Id.* Ex. Q at 3 (emphasis added).

Plaintiff's Motion is the latest in the continued political attack by Plaintiff and her counsel against the President and his re-election Campaign.

## IV.   CONCLUSION

For the foregoing reasons, the Campaign respectfully requests that the Court deny the Motion in its entirety.

Dated this 31st day of July, 2019

Respectfully Submitted,

*/s/ Charles J. Harder*
Charles J. Harder
Trial Counsel
CHarder@HarderLLP.com
Admitted *Pro Hac Vice*
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:  (424) 203-1600
Facsimile:   (424) 203-1601

Dawn Siler-Nixon
Florida Bar No. 993360
DSiler-Nixon@FordHarrison.com
Tracey K. Jaensch
Florida Bar No. 907057
TJaensch@FordHarrison.com
FORD**HARRISON** LLP
101 E. Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile:  (813) 261-7899

Attorneys for Defendants
Donald J. Trump and
Donald J. Trump for President, Inc.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on July 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will electronically send a notice of electronic filing upon the following:

Brian W. Warwick
bwarwick@varnellandwarwick.com
Janet Varnell
jvarnell@varnellandwarwick.com
Varnell & Warwick, PA
P.O. Box 1870
Lady Lakes, FL  32158-1870

Hassan A. Zavareei
hzavareei@tzlegal.com
Katherine M. Aizpuru
kaizpuru@tzlegal.com
Tycko & Zavareei LLP
1828 L Street NW, Suite 1000
Washington, D.C.  20036

Tanya S. Koshy
tkoshy@tzlegal.com
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA  94612

F. Paul Bland
pbland@publicjustice.net
Karla Gilbride
kgilbride@publicjustice.net
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC  20036

Jennifer Bennett
jbennett@publicjustice.net
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA  94612

                                */s/ Charles J. Harder*
                                Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALVA JOHNSON,
**Individually and On Behalf of All Others Similarly Situated,**

    Plaintiff,

Case No. 8:19-cv-00475-WFJ-SPF

v.

**DONALD J. TRUMP,
In his Individual Capacity and
DONALD J. TRUMP FOR
PRESIDENT, INC.**

    Defendants.
_____/

# DECLARATION OF BRIAN HAYES IN SUPPORT OF OPPOSITION TO MOTION TO REOPEN DISCOVERY

1. I have personal and firsthand knowledge of the matters set forth in this declaration and could and would testify competently to its contents if called upon to do so.

2. As indicated in my previous declaration dated July 2, 2019 [Dkt. No. 73-2], I was present in the recreational vehicle when Alva Johnson encountered Donald Trump during a campaign event on August 24, 2016 in Tampa, Florida.

3. The approximately 15-second audiovisual recording (attached as Exhibit A to my prior declaration) showing their brief interaction, which I created using the video camera function on my smart telephone, **is the entire video**. It is **not** an excerpt or clip

1

of a longer recording. That 15-second video also was not edited or otherwise altered in any way.

4. I personally witnessed the interaction between Mr. Trump and Ms. Johnson in the RV, and the video accurately depicts what occurred.

5. There are no other recordings of the interaction between Mr. Trump and Ms. Johnson in my possession, custody or control, nor am I aware of the existence of any others.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of July, 2019, at Orlando, Florida.

BRIAN HAYES