UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALVA JOHNSON, individually and on
behalf of all others similarly situated,**

    Plaintiff,

v.                                      Case No. 8:19-cv-00475-T-02SPF

**DONALD J. TRUMP,**
in his individual capacity and
**DONALD J. TRUMP FOR
PRESIDENT, INC.,**

    Defendants.

_____/

**REPLY IN SUPPORT OF MOTION TO
<u>REOPEN DISCOVERY FOR LIMITED PURPOSE</u>**

    Plaintiff Alva Johnson, through counsel, respectfully submits this Reply in support of her motion to open discovery for the limited purpose of obtaining information and evidence surrounding the provenance and authenticity of a video produced by Defendants that shows Defendant Donald J. Trump's interactions with Ms. Johnson at a campaign event in 2016.

**I.    Introduction**

    In Defendants' Opposition To Plaintiff's Motion To Reopen Discovery ("Opposition" or "Opp."), Defendants spill a lot of ink attacking the motives of Ms. Johnson and her attorneys. (Dkt. 89) But their 13-page Opposition elides the simple and central questions presented by the Motion. Defendants could have provided answers that might have put this entire issue to rest—either as part of the lengthy meet and confer that Ms. Johnson pursued or in response to the Motion. Instead, they (1) put forth another untested declaration that generates more answers than questions, (2) attack Ms. Johnson's motives, (3) mischaracterize the video at issue, and (4) complain that there is no operative complaint.

1

What they do not explain, however, speaks volumes. Most critically, they make no effort to explain why there is a February 25, 2019 "Creation Date" on the metadata of a video that was filmed in August of 2016 and produced to Ms. Johnson in July of 2019. Similarly, they do not tell the Court how they obtained the video from Mr. Hayes. Nor do they state whether there are additional videos or photographs possessed by Mr. Hayes from that same day. While they claim to put the issue to rest with another declaration from Mr. Hayes that states that the video was not a clip of a larger video, their failure to answer these simple questions, together with the underhanded manner in which they handled the video in the first instance (stripping it of its metadata, splicing it into the end of an 8.5 hour video and producing it on the eve of Ms. Johnson's deposition), makes it difficult to simply accept Mr. Hayes at his word. Perhaps Defendants are too embarrassed to tell the Court when and how they obtained the video because it sheds light on unsavory (and potentially sanctionable) discovery gamesmanship. Or, perhaps they have something more to hide. Either way, something here is amiss.

While Ms. Johnson will briefly address the arguments made by Defendants below, she asks the Court to not lose sight of the unusual circumstances that brought us to this juncture, and Defendants' strident refusal to explain the facts surrounding the video and its use in this case.

## II. Discussion

### A. The Discovery is Not Premature.

Defendants claim that discovery regarding the video they produced is premature because there is no operative complaint in this case. That ignores the practical realities of this case and special circumstances at play here. Most notably, the Court has observed that Ms. Johnson's case is at an "inflection point," and that she must make the difficult decision whether to proceed with her battery case. And the reason that inflection point is occurring now—as opposed to before the dismissal of the complaint—is because Defendants held on to a video that they appear to have had

2

since the inception of this lawsuit instead of producing it when they provided their Initial Disclosures on May 17, 2019, as was required.

Moreover, the absence of an operative complaint did not serve as an impediment to Defendants pushing forward with written discovery, filing two motions to compel, and taking Ms. Johnson's deposition. In response to that aggressive litigation tactic, Ms. Johnson spent thousands of dollars on locating and downloading Electronically Stored Information (ESI) and dedicated significant time of several attorneys to review and produce over 5,000 pages of documents to Defendants. Notwithstanding the dismissal without prejudice, this has been a very actively litigated case, and there would be no prejudice to Defendants in allowing Ms. Johnson to get to the bottom of the curious facts and questions surrounding the production of the video.

### B. The video may or may not be full-length and unedited.

Defendants spend less than one page of their 13-page brief arguing that the video is not edited. They do not respond to the expert report other than to claim it is inadmissible—incorrectly suggesting that expert disclosures would be required for a discovery motion. They do not attempt to explain the anomalous "Creation Date" of February 25, 2019. Instead, they mischaracterize the expert report as saying nothing about the authenticity of the video. In fact, Mr. Danner—whose expert credentials and opinions are unrebutted—clearly stated that the difference in timestamps "indicates that the video named 'Exhibit A to Declaration of Brian Hayes' was a video clip of another video." (Dkt. 85-3, at 4). This is not a definitive conclusion. But in light of the suspicious circumstances surrounding the unexplained metadata and the belated production of the video, it is enough to warrant some very limited discovery.

### C. It is not clear what impact this discovery might have on the case.

Having hidden evidence for months, Defendants now claim that this evidence determines everything and it would be pointless to allow further discovery. Opp. at 8. While Ms. Johnson

appreciates the Court's concerns and view of the video, the fact is that context matters. Indeed, Defendants repeatedly claim that Ms. Johnson's immediate reaction after the kiss shows that the interaction was not offensive to her. Opp. at 4, 8; *see also* Motion for Protective Order at 2-3 (Dkt. 73). . What happened before that? What happened after that? We do not know those answers because Defendants will not even tell us if there are other videos taken in the RV on that day in their possession or in Mr. Hayes' possession. Instead, they carefully state that they have produced "**all of the video footage of the interaction between Plaintiff and Mr. Trump** within Defendants' possession, custody or control." Opp. at 1 (emphasis in original). This carefully worded declaration appears to exclude: (1) photographs of the interaction, (2) video or photographs in the possession or control of Mr. Hayes, and (3) video or photographs taken immediately before and after the interaction.

Do the Defendants expect Ms. Johnson and the Court to believe that Mr. Hayes was volunteering for Mr. Trump's campaign, got to meet the candidate, and the only pictures or videos who captured were of an interaction with Ms. Johnson? That is simply not credible.

To be clear, Ms. Johnson does not know whether there is anything missing from the video. She also does not know what other videos or photographs would show. But under these circumstances—where Defendants seem to be going out of their way to avoid clearing the fog of suspicion enveloping their handling of this video—she should be permitted to at least take Mr. Hayes' deposition and seek forensic examination of his iPhone.

### D. The evidence indicates that Defendants did not timely produce the video.

Defendants claim that their production of the video was timely because it was produced before Ms. Johnson's deposition. What they do not explain, however, is why they elected to bury the video in over eight hours of other video footage. They also fail to explain why they did not produce it sooner instead of literally the last business day before her deposition in the middle of the Fourth

4

of July holiday. Nor do they tell the Court when they first obtained the video—which bears a "Creation Date" of February 25, 2019.

Defendants were required to provide a copy of this video or at least describe it with sufficient specificity to alert Ms. Johnson to its existence in their initial disclosures. Fed. R. Civ. P. 26(a)(1).[1] Instead, the closest they came was the following vague description which might generously be construed to include the video: "Media of the relevant events of August 24, 2016 in Tampa, Florida." In addition to failing their obligations under Rule 26, Defendants evaded and delayed responding to Plaintiffs' discovery requests specifically seeking such video. Defendants finally served responses to those requests on June 20, 2019—after Ms. Johnson agreed to three extensions of time to respond. And they made their first document production on June 24, 2019, which consisted of 492 pages of documents, but no videos. Ironically, at this same time, defense counsel was pushing Ms. Johnson to rapidly produce documents, and repeatedly asserted that her document production should be completed at the same time that her responses and objections were served—which was done without any extensions.

The bottom line is this: defense counsel deliberately sandbagged the production of this video in an attempt to surprise Ms. Johnson in her deposition. Ultimately, that worked, and Defendants perfectly executed a scheme to keep the video from Ms. Johnson until they showed it to her at her

---

[1] *Blair v. TransAm Trucking, Inc.*, No. 09-2443-EFM-KGG, 2017 WL 2684296, at *2 (D. Kan. June 21, 2017) ("The disclosures required by Rule 26 are intended to provide sufficient detail and clarity to permit the receiving party to make informed decisions about the discovery necessary to address the specific claims directed against that party, and to prepare for trial." (internal citations omitted)); *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004) ("Initial disclosures should be complete and detailed" (internal citations omitted)); *2P Commercial Agency S.R.O. v. SRT USA, Inc.*, No. 2:11-CV-652-FtM-29SPC, 2012 WL 1660614, at *1 (M.D. Fla. May 11, 2012) (stating that Rule 26 requires "the Defendant to state the location of any documents or electronic production disclosed under the Rule").

deposition.[2] The facts show that Defendants did not produce the video in a timely manner. Instead, they played games with discovery, which casts a shadow on the provenance of the video.

E. **Arguments about the supposed political nature of this lawsuit are a distraction.**

Defendants spill a lot of ink repeating their assertions that this is a political lawsuit. Opp. at 2, 3, 11, 12. This is nonsense. Ms. Johnson was a genuine supporter of President Trump for almost a full year and worked hard to get him elected. After she left the campaign, Ms. Johnson continued to work in Republican politics. Likewise, both opt-in Plaintiffs—Omarosa Manigault Newman and Corina Cotenescu—have been vocal supporters of President Trump and other Republican political causes in recent years. In fact, in 2018, Ms. Cotenescu sought election to the New York State Assembly for District 69, running as a Republican.

The primary support for this argument are campaign contributions made by Ms. Johnson's counsel. The fact that Ms. Johnson's counsel are Democrats and contribute to Democratic candidates proves only that they are Democrats and contribute to Democratic candidates. Mr. Harder donated $500 to the 2016 senate campaign of Kamala Harris, and his partners made numerous contributions to other prominent democrats, including Beto O'Rourke, Joe Donnelly, Claire McCaskill and Heidi Heitcamp. Does this show that he cannot adequately represent President Trump? Of course not. This silliness about this being a politically motivated lawsuit is pure

---

[2] At that time Ms. Johnson's counsel expressed alarm that the video had not been produced before the deposition. Factually, Ms. Johnson's counsel was incorrect. The video was produced as part of the 8.5 hour video that was served on July 5, 2019. The apology referenced by Defendants' in their opposition was offered as professional courtesy because Ms. Johnson's counsel incorrectly believed the video had not been produced at all. He was incorrect in that regard and he felt he owed an apology for that. But that does not in any excuse the discovery games played by Defendants who appear to have had this video for the entire duration of the case but failed to produce it in a timely manner.

speculation that has nothing to do with the merits of the issues before the Court. It should not even be entertained by the Court.[3]

In any event, numerous courts, including in this District, have found that speculation as to a party's motives based on an opponent's unsupported allegations is improper. *See, e.g., Sec. & Exch. Comm'n v. Nodurft*, 2009 WL 10671156, at *2 (M.D. Fla. June 17, 2009) (citing *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001)) ("Defendant has utterly failed to demonstrate any improper motives on the part of Plaintiff … All Defendant offers is the unsubstantiated and unverified representations and conclusions of defense counsel which this Court is precluded from relying on in making a determination of fact."); *see also Smith v. Gribertz*, 887 F. Supp. 583, 589 (S.D.N.Y. 1995) ("Plaintiff has not made any more specific allegations that would lead us to conclude that the District Attorney's prosecution of plaintiff is improperly motivated by political concerns. Certainly, we should not interfere … on the basis of plaintiff's conclusory contention.") In fact, a plaintiff's motives for bringing suit are almost never relevant in *any* context. *See, e.g., Smith v. Specialty Pool Contractors*, 2009 WL 799748, at *5 (W.D. Pa. Mar. 25, 2009) ("Impugning the Plaintiff's motive for bringing this lawsuit does nothing to rebut the merits of the claim"); *Dargan v. Ingram*, 2009 WL 1437564, at *6 (W.D. Wash. May 22, 2009) ("Both defendants question plaintiff's motives for bringing the present action … Defendants' unsupported assumptions and personal attacks against plaintiff are irrelevant and unpersuasive"); *Mercer v. Duke Univ.*, 401 F.3d 199, 205 (4th Cir. 2005) ("…the subjective motives of the plaintiff are not relevant to determining whether the plaintiff is a prevailing party"); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 542 (6th Cir. 2014) ("Plaintiff's motive in bringing this case was all

---

[3] Defendants also try to make much of Ms. Johnson's private emails to friends indicating that she wants to prevent Mr. Trump from being reelected. Again, what does that prove? Of course she does not want the man who she believes committed battery against her to serve as the President of the United States.

7

but irrelevant…"); *Sierra Club v. Union Elec. Co.*, 2015 WL 9583394, at *5 (E.D. Mo. Dec. 31, 2015) ("The Court agrees with Plaintiff that discovery relating to Plaintiff's alleged motive for bringing this lawsuit … is irrelevant to any issue in this case"); *Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) ("the court's ruling that the motive of plaintiff in bringing the action is irrelevant is consistent with well-settled law"); *Lee v. Kucker & Bruh, LLP*, 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) ("The motivation of the plaintiff in bringing suit is irrelevant to an alleged violation by the defendants of the FDCPA"); *Samsung Elecs. Co. v. NVIDIA Corp.*, No. 3:14CV757, 2016 WL 754547, at *2 (E.D. Va. Feb. 24, 2016) ("a plaintiff's motive for bringing suit is irrelevant, except in the face of certain equitable defenses, bad faith, or questions of witness bias."); *Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc.*, 2005 WL 5632057, at *7 (S.D. Fla. Aug. 17, 2005) ("Putting aside this Plaintiff's motives, ultimately this case will be decided upon whether Defendants' facility complies with the ADA").

### III. Conclusion

Ms. Johnson does not know what additional discovery will show. But something strange is going on with this video. Defendants still will not explain when they obtained the video or why it has metadata indicating it was created on same day this lawsuit was filed. But she should be allowed to at least seek limited discovery of Mr. Hayes to try to get answers to her simple questions.

Dated:        August 1, 2019                    Respectfully Submitted,

                                                            /s/ Hassan A. Zavareei
                                                Hassan A. Zavareei (*pro hac vice*)
                                                Katherine M. Aizpuru (*pro hac vice*)
                                                TYCKO & ZAVAREEI LLP
                                                1828 L Street, N.W., Suite 1000
                                                Washington, D.C. 20036
                                                Telephone: 202-973-0900
                                                Facsimile: 202-973-0950
                                                hzavareei@tzlegal.com

kaizpuru@tzlegal.com

Janet Varnell (Fla. Bar No. 71072)
Brian W. Warwick, (Fla. Bar No. 0605573)
VARNELL & WARWICK, PA
P.O. Box 1870
Lady Lake, FL 32158-1870
P: 352-753-8600
F: 352-503-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com

F. Paul Bland (*pro hac vice*)
Karla Gilbride (*pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600

Jennifer Bennett (*pro hac vice*)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150

*Counsel for Plaintiff*